1
2
3
4

Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

5
6
7
8

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
dan@stratlaw.org
www.stratlaw.com

9

Attorneys for Plaintiff
JAMES EDWARD CUPP

10

11

12      **THE UNITED STATES DISTRICT COURT**

13      **IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

14

15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| JAMES EDWARD CUPP<br><br>          Plaintiff,<br><br>     vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT.<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Case No.**<br><br>**COMPLAINT FOR MONETARY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

26

27

28

**- 1 -**

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

**COMPLAINT**

**COMES NOW** Plaintiff JAMES EDWARD CUPP ("Plaintiff") by and through his attorneys of record, and complains of KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;    UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014:

**JURISDICTION AND VENUE**

1.      Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.      This Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

3.      Plaintiff's seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

4.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant HARRIS resides in this judicial district.

**THE PARTIES**

5.      Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

6.    At all relevant times, CUPP was traveling through California with his travel trailer, and only staying temporarily for a few weeks visiting a friend.

7.    Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby the California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law."

8.    Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over sheriffs and police chiefs, including the power to require written applications and fees regarding firearms.

9.    On January 3, 2011, KAMALA D. HARRIS was sworn in as the 32nd Attorney General of the State of California.

10.   On November 4, 2014 she was re-elected to a second term in office.  As stated on the government's official website, she is the first woman, the first African American, and the first South Asian to hold the office in the history of California.  See her website: https://oag.ca.gov/about

11.   Defendant HARRIS is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report to her.

12.   Defendant HARRIS is the State of California Attorney General, and as such is responsible for promulgation of administrative rules regarding firearms and weapons used for personal self defense.

13.   Defendant HARRIS is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the  State of California, CITY OF CITRUS HEIGHTS and Defendant CHRISTOPHER W. BOYD complained of in this action.

14.   Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

**- 3 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

15.   Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief is sought.

16.   Defendant CITY OF CITRUS HEIGHTS  is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

17.   Defendant CITY OF CITRUS HEIGHTS is a municipality created under the Constitution and Laws of the State of California.

18.   Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer acting under color of law in both his individual and official capacities.

19.   Defendant CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

20.   Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

21.   Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official capacities.

22.   Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

23.   Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

24.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

25. UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

26. Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT have not been located, but they will be added to this complaint upon uncovering their names through discovery.

**BACKGROUND FACTS**

27. The Second Amendment right to keep and bear applies to all lawful arms, includes knives and edged tools, that are also traditionally used by law enforcement since law enforcement is limited to the use of only "reasonable force".

28. Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are "typically used for lawful purposes."

29. Widespread law enforcement use of a particular firearm, weapon or magazine, or edged weapon proves that particular arms are common and typically used for lawful purposes, rather than "dangerous and unusual."

30. Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally; *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

31. Standard magazine bans are dangerous because they reduce typical defensive fire. They shift risk of injury from violent aggressors to law-abiding innocents.

32. Typically, an in officer shooting of an unarmed civilian, they discharge more than 10 rounds

**- 5 -**

1    to stop a person.

2    33.    Commencing in the 1999 (the time after when most police switched to semi-automatic pistols from revolvers) shooting death of an underlined 23-year-old Guinean immigrant in New York City, the victim, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of his apartment. Diallo's case is anything but anomalous in today's America.

34.    A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on him following a high-speed chase down an area freeway. The same month, New York police fired at a suspected murderer 84 times.

35.    Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

36.    Officer Wilson shot Michael Brown in the back 12 times.
https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

37.    In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two separate incidents in the early morning hours of February 7, 2013, police fired on people who turned out to be unrelated to Dorner and that Dorner (an African-American male) was not present at either incident and no firearms were involved in either incident (i.e. the police victims were unarmed).
https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidentifications

38.    Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic females.  Remarkably, they survived.

39.    Approximately 25 minutes after that incident, officers from the Torrance Police Department struck and opened fire on another vehicle.  Like the first shooting, the white male was unarmed and did not match the description of Dorner.  Over 30 bullets were fired at him.

40.    Therefore, since HARRIS and the State of California have determined that discharging more

than 10 rounds for purposes of self defense is a reasonable use of force, then the Second Amendment protects the rights of all citizens to posses magazines and firearms holding more than 10 rounds.

41.   Defendant HARRIS has made her career pushing for more government control over the people of the State of California, and depriving them of their fundamental constitutional rights, privileges and immunities, especially those that the Framers of the Fourteenth Amendment sought to protect the most.

42.   At the same time, HARRIS and the State of California has pushed for the militarization of the police state by exempting California Peace Officers (both active and retired) from the very same firearms and magazines prohibited to the rest of the population.

43.   California Penal Code Section 32405 provides an exemption for peace officers from the prohibition on the sale to, lending to, transfer to, purchase by, receipt of, importation into California of, a large-capacity magazine as set forth in California Penal Code Section 32310.

44.   California provides an exception to the Unsafe Handgun Act allowing spouses of peace officers killed in the line of duty to receive their spouse's service weapon.

45.   Defendant HARRIS has shown a blatant disregard of the rights of citizens to travel with firearms, which was one of the first and most important rights bestowed upon the newly freed slaves of the South after the civil war with the passage of the Fourteenth Amendment.

46.   As historian Flack noted in *The Adoption of the Fourteenth Amendment* 7 (Johns Hopkins 1908),  written at a time when gun control was not a political issue seized by those in power for political gain; the central theme throughout all the debates over the Fourteenth Amendment focused on the newly freed slaves rights to travel, vote, own property and possess and bear arms to enforce their rights when the government couldn't.  See also Antieau, *The Intended Significance of the Fourteenth Amendment* (Wm. Hein, Buffalo, N.Y. 1997), citing Royall, *The Fourteenth Amendment: The Slaughter House Cases*, 4 So. L. Rev. (N.S.) 558, 563 (1879).   [All of the authorities the Supreme Court's central holding in" *District of Columbia v. Heller*, 554 U. S. 570 (2008), was "that the Second Amendment

- 7 -

protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald v. Chicago*, 561 U. S. 742, 780 (2010) (plurality opinion). And in *McDonald*, the Supreme Court recognized that the Second Amendment applies fully against the States as well as the Federal Government. *Id.*, at 750; id., at 805 (THOMAS, J., concurring in part and concurring in judgment).]

47. Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass and enforce laws resulting in categorical and constructive bans on firearms and attachments thereto that millions of Americans, veterans, and retired peace officers commonly own for lawful purposes, which then results in constructive ban on the right to travel.

48. Other than California, only six other states (which obviously include Connecticut, New York and New Jersey) have unconstitutional draconian firearms laws which no other state even remotely mandates, including limitations on the carrying or possession of specific weapons and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine bans).

49. California cannot ban and confiscate the free citizens right to keep and posses arms.

50. "Full Faith and Credit Clause" of Article IV, Section 1 of the United States Constitution, provides that California must recognize the right of free citizens who are not California residents.

51. Defendant HARRIS is the top ranking law enforcement official in the state of California, promulgating rules and regulations which deprived Plaintiff of right to keep and bear arms as protected under the Second Amendment, and enforced laws which deprived Plaintiff of his property rights in his firearms, and denied him equal protection of the law.

52. Plaintiff is an avid sportsman and extremely familiar with firearms and the safe operation thereof, and in particular semi-automatic hand guns with magazine capacities greater than 10 rounds and semi-automatic rifles capable of holding magazines containing more than 10 rounds of ammunition.

- 8 -

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

**FACTS**

53.   Plaintiff has been an avid hunter and owner of firearms his since the age of 12, starting off with .22s and shotguns.  In sum, he has owned and used firearms his whole life.

54.   He previously had a CCW from the State of Oregon for approximately 8 years (1996), until he changed his residency to South Dakota.

55.   His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, he continuously passes through states which prohibit the possession and certain arms and weapons, which are protected.

56.   Plaintiff is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

57.   Plaintiff's mother lives in Citrus Heights, plaintiff drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

58.   Plaintiff had temporary abode was parked at a friend's house, which was docked, plugged, and his truck was parked in another location.

59.   On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by Plaintiff, and two non-folding hunting knives that he carried openly on his person.

60.   Plaintiff was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

61.   On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against Plaintiff for violation of penal code section 21310, which

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

62.    California Penal Code Section 21310 violates the Second Amendment, Privileges and Immunities Clause of the 14th Amendment.

63.    On 05/30/2014, the case against Plaintiff was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to Plaintiff illegally seized.

64.    Plaintiff's two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

65.    At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;    UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

66.    To this day, under color of law, Defendants have maintained possession over plaintiff's personal property, including ammunition, speed loaders, holsters, $1,000.

67.    Plaintiff owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

68.    As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation Plaintiff has on firearm ownership is that which is prohibited by federal law.

69.    Plaintiff presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-

automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

70. Plaintiff is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving through Los Angeles during a civil protest in the course and scope of his employment as a trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

71. Plaintiff desires to travel with firearms and knives, which as a citizen of the state of South Dakota is legal, into the state of California to protect himself, his family, his property, and his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and while performing various other activities such as carrying large sums of money associated with his work.

72. Moreover, Plaintiff specifically has concern for the safety of himself and his cargo because of truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

73. In addition, plaintiff rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

74. Plaintiff also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

75. Thus, because Plaintiff is continuously harassed for carrying knives exposed, it is Plaintiff's position that he wants to carry them concealed on his person so that he is not profiled by law enforcement.

76. Plaintiff presently intends to exercise his constitutionally guaranteed right to self-defense while traveling into and through California, and taking up temporary residence for purposes of work.

77. Plaintiff has unconstitutionally been prevented from doing so because of the code sections

- 11 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

challenged and complained of herein, and because of Defendants' unconstitutional

application and enforcement of those same sections.

78.   Plaintiff fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit or prior permission authorizing him to do so.

79.   P.C. 21310 is unconstitutionally vague and violates the Second Amendment which prohibits everyone except active and retired law enforcement from carrying concealed upon the person any dirk or dagger.

80.   Plaintiff fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess of open carried and/or concealed weapon on his person, in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a permit or prior permission authorizing him to do so.

81.   In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring Plaintiff to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

82.   The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (Exhibit "1" attached hereto and incorporated herein.) was created by Defendant HARRIS in or around January 2012.

83.   On or about February 27, 2015, Plaintiff, through his attorney, filed a Claim for Damages (Tort Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

**- 12 -**

84.   In addition, this Claim was also an internal affairs complaint.

85.   In a letter dated March 23, 2015 rejecting both Plaintiff's tort claim and demand for return of his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an unconstitutional law and creating a undue burden on Plaintiff.

86.   Defendants' obstructionist behavior and unconstitutional policies regarding the return of Plaintiff's firearms made it impossible for Plaintiff to exercise a fundamental right to keep and bear arms in protection of himself.

87.   Such policies violate Plaintiff's rights under both the federal Constitution and the Constitution and laws of the State of California.

88.   Defendants HARRIS and BOYD enforce a clearly unconstitutional law, regulation and policy, and as such they are responsible for executing and administering the laws, customs, practices, and policies complained of in this action whereby plaintiff's rights are continuously violated each day his firearm arms are not returned to him.

89.   At all times, Defendants were and still are acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

## INTRODUCTION AND SUMMARY OF AVERMENTS

90.   Plaintiff incorporates the above allegations as if set forth fully here.

91.   Plaintiff brings this suit to challenge Defendants' enforcement and application of California Penal Code, §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

92.   Family Code section 6389(a) is unconstitutional, which provides that "[a] person subject to a protective order, as defined in Section 6218, shall not own, possess, purchase, or receive a firearm while that protective order is in effect." This section also requires the immediate relinquishment of any firearm in the possession of the restrained party.

93.   In the case of a peace officer, however, the code does allow the Court to permit a peace officer to continue to carry a firearm, either on duty or off duty, if it finds by a preponderance

- 13 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

of the evidence that the officer does not pose a threat of harm to others. Prior to making this finding, the Court shall require a mandatory psychological evaluation of the peace officer and may require the peace officer to enter into counseling or other remedial treatment program to deal with any propensity for domestic violence.

94. Defendants enforce firearm laws which are technically complex, and used to chill the free exercise a fundamental right of the Second Amendment, which is ready access to a loaded firearm for purposes of self-defense.

95. Defendants enforce laws that prevent plaintiff from exercising his fundamental right to posses and transport a loaded firearm (either openly or concealed) into the state of California with a large-capacity magazine (able to accept more than 10 rounds). (Pen. Code, §§16150, subd. (b), 30305, 32310.)

96. Defendants enforce laws that prevent plaintiff from exercising his fundamental right to posses and transport a loaded firearm (either openly or concealed) into the state of California. (Pen. Code, §§ 25400-25700, 26150-26225.)

97. Defendants enforce laws that prevent plaintiff from exercising his fundamental right to posses and transport a unloaded or loaded firearm (either openly or concealed) into the state of California which is semi-automatic and contains an ammunition feeding device with a capacity greater than ten rounds, or any other firearm that is deemed a so-called "assault weapon".  (Pen. code, §§ 17000, subd. (a), 27560.)

98. Defendants enforce laws that prevent plaintiff from exercising his fundamental right since his firearms have been confiscated without due process or just cause pursuant to statute, custom, policy and practice. (Penal Code § 33850) https://oag.ca.gov/firearms/pubfaqs#9

99. As applied and on their faces, each of the aforementioned code sections violate Plaintiff's constitutional rights under the Second, Fourteenth, and Fifth Amendments to the United States Constitution.

100. The Second Amendment to the United States Constitution provides:

> A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

**- 14 -**

_____

101. The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

102. The Second Amendment is incorporated to the states through the Fourteenth Amendment.

103. The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

104. Regulations infringing upon that right must meet heightened scrutiny.

105. Plaintiff concedes that states retain the ability to (a) prohibit the carrying of handguns in specific, narrowly-defined, sensitive locations; (b) prohibit the carrying of arms that are not within the scope of Second Amendment protection; and (c) disqualify specific, particularly dangerous, individuals (*e.g.*, felons convicted of violent crimes) from carrying handguns.

106. (a) States may not completely ban the carrying of handguns for self-defense;

(b) deny individuals the right to carry handguns in non-sensitive places;

(c) deprive individuals of the right to carry handguns in an arbitrary or capricious manner;

(d) impose regulations on the right to carry handguns that are inconsistent with the Second Amendment; or

(d) limit the right of citizens to travel into California by imposing unduly burdensome restrictions of the type of firearm used for self-defense purposes or magazines which hold more than 10 rounds.

107. Defendants implement policy and enforce laws which militarize law enforcement agencies, arming them in such a manner that they are no longer a police force, but rather a standing army.

108. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

109. By definition, criminals do not abide by the laws.

110. Therefore, gun control legislation has only a minimal effect on a violent criminal's ability to obtain and use a firearm.

111. Criminals who desire to have guns will get them and use them regardless of legislation

- 15 -

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

enacted by Congress, state legislatures, and county or city officials.

112.   In 2008, roughly 185,173 Californians fell victim to violent crimes.

113.   That means roughly 504 per 100,000 Californians fall victim to violent crimes annually. *Id*.

114.   Current gun control legislation has had a statistically insignificant effect on violent crime.

115.   In Idaho, another Western state, only about 229 per 100,000 Idahoans fell victim to violent crimes in 2008.

116.   That means Californians are more than twice as likely to fall victim to a violent crime as compared to Idahoans.

117.   California and Idaho employ very different gun control tactics.

118.   Unlike California, the majority of the population of Idaho is armed, and are permitted to purchase, transport and carry commonly used handguns and rifles.

119.   Five states (California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore) Massachusetts, New Jersey (, and New York) and D.C., the ban applies to large capacity ammunition magazines used with any firearm. The Hawaii ban applies only to such magazines used with handguns.

120.   More than 50% of Idahoans are gun owners. *Id*.

121.   Wyoming has the largest percentage of private gun owners of any state in the Union.

122.   Wyoming also employs a "shall issue" policy for the issuance of concealed weapons permits.

123.   Wyoming has one of the lowest violent crime rates in the country at only about 232 per 100,000.

124.   Conversely, Washington, D.C. has the lowest private gun ownership rate in the country at roughly 3.8%.

125.   Also, until recently when the U.S. Supreme Court upheld the District Court's striking down of a number of the District's gun control laws in *Heller*, Washington, D.C. employed some of the strictest gun control laws in the country.

126.   Washington, D.C., with the lowest private gun ownership rate in the county, and formerly the strictest gun control laws, has the highest violent crime rate in the nation at nearly 1,500 per

- 16 -

**Complaint for Monetary Damages, Declaratory And Injunctive Relief And Demand For Jury Trial**

1    100,000.

2    127.   Residents of Washington, D.C., with the lowest private gun ownership rate in the country,

3    are more than five (5) times more likely to be the victim of a violent crime as compared to

4    residents of Wyoming, with the highest private gun ownership rate in the country. (*See*

5    Exhibits 20 & 22 attached hereto and incorporated herein.)

6    128.   In Vermont, one of the safest states in the country, "citizens can carry a firearm without

7    getting permission ... without paying a fee ... or without going through any kind of

8    government-imposed waiting period."

9    129.   Less than about 136 per 100,000 individuals fell victim to violent crime in Vermont in 2008.

10   130.   Recently Australia banned most private gun ownership nationwide.

11   131.   Since Australia's ban went into effect in 1996, crime has risen dramatically in that country.

12   132.   After Australian lawmakers passed widespread gun bans, owners were forced to surrender

13   about 650,000 weapons, which were later slated for destruction.

14   133.   In 2000, four (4) years after the ban took effect:

15        a.      Nationwide homicides were up 3.2%;

16        b.      Assaults were up 8.6%;

17        c.      Armed robberies increased nearly 45%; and

18        d.      In the Australian state of Victoria, gun homicides climbed a staggering 300%.

19   134.   Interestingly, there was also a reported "dramatic increase" in home burglaries and assaults

20   on the elderly.

21   135.   In the twenty five (25) years before the gun ban went into effect, crime in Australia had been

22   steadily declining.

23   136.   In England the results were similar to those in Australia.

24   137.   In 1997 lawmakers in England passed a sweeping gun ban.

25   138.   According to BBC news, in the two (2) years following the ban, handgun crime in the United

26   Kingdom rose by roughly 40%.

27   139.   When law-abiding citizens are disarmed, criminals have less to fear, and as a result violent

28

- 17 -

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**

crime increases.

140.   In a 2004 report from the Gun Owners' Foundation (the "Foundation"), the Foundation found that in the United States, "[g]uns are used 2.5 million times a year in self-defense" which translates into 6,850 self-defense uses per day nationwide. (*See* Exhibit 21 attached hereto and incorporated herein.)

141.   Armed citizens shoot and kill at least twice as many criminals per year as their law enforcement counterparts (roughly 1,527 to 606).

142.   These numbers prove that there is a substantial need for individuals to protect themselves.

143.   Police protection alone is simply not adequate.

144.   Armed citizens fending off their attackers do so in a safer manner than do law enforcement officers.

145.   Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

146.   The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

147.   The Foundation (as well as the work of John Lott, notable economist) found that concealed carry laws have reduced murder and crime rates in the states that have enacted them.

148.   Issuing concealed weapons permits does not increase the crime rate or gun violence.

149.   Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

150.   An armed law-abiding citizen is safer than a citizen living in a jurisdiction with strict gun control laws which prevent the citizen from defending himself or herself.

151.   California's current "may issue" policy simply does not pass constitutional muster.

152.   California's current system denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted

1    by an armed attacker.

2    153.   Because Defendants refuse to issue CCW permits to law-abiding citizens, Californian's are

3           faced with two (2) choices when it comes to the protection of themselves and their families.

4    154.   First, they can succumb to an armed criminal and place themselves at the criminal's mercy.

5    155.   Second, they can become criminals themselves by choosing to protect themselves and their

6           families by carrying a concealed weapon without a permit.

7    156.   Therefore, Plaintiff, on behalf of himself, his family, and all law-abiding Californians,

8           challenges the code sections named herein and set forth below.

9    157.   Defendants' application and enforcement of the code sections challenged herein significantly

10          impairs Plaintiff's and others' ability to exercise their constitutionally guaranteed right to

11          self-defense without the due process of law, and their right to travel.

12   158.   Defendants' application and enforcement of the code sections challenged herein are therefore

13          in violation of the Due Process and Privileges and Immunities clause of the Fourteenth

14          Amendment.

15   159.   Accordingly, Plaintiff seeks declaratory and injunctive relief to invalidate Defendants'

16          unconstitutional enforcement of defendants laws and policies.

17                                  **FIRST CLAIM FOR RELIEF:**
                                **UNCONSTITUTIONALITY (as written)**
18              **Violation of the Second Amendment Right to Keep and Bear Arms**

19   160.   Plaintiff incorporates the above allegations as if set forth fully here.

20   161.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for

21          self-defense purposes.

22   162.   Plaintiff incorporates the above allegations as if set forth fully here.

23   163.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry

24          operational handguns, rifles and knives for self-defense.

25   164.   States may not completely ban the carrying of weapons for self-defense.

26   165.   States may not deny individuals the right to carry weapons in non-sensitive places.

27   166.   States may not deprive individuals of the right to carry weapons in an arbitrary or capricious

28

                                            **- 19 -**
_____

manner.

167. States may not impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

168. The Fourteenth Amendment to the United States Constitution provides in part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

169. All rights and privileges guaranteed to the people by the Second Amendment extend through the Fourteenth Amendment so as to apply to against state and local governmental entities, including Defendants.

170. But for Defendants' enforcement of the code sections complained of herein, Plaintiff would have possession of his firearms legally owned by him, and his right to travel would not be interfered with.

171. California prohibits individuals in California or traveling into California from carrying a loaded weapon:

    a.    within any vehicle under his or her control or direction;

    b.    on his or her person;

    c.    within any vehicle in which he or she is an occupant.

172. The Second Amendment, incorporated through the Fourteenth Amendment, guarantees the right of law-abiding citizens to publically carry operational handguns for self-defense.

173. In violation of the Second Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring Plaintiff to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit 1 attached hereto and incorporated herein.), and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

174. Defendants' continued enforcement of unconstitutional laws and policies under color of state

1   law impermissibly infringes upon Plaintiff's constitutional rights, including his right to keep

2   and bear arms as guaranteed by the Second Amendment.

3   175.   As a direct and proximate result of Defendants' violation of Plaintiff's Second Amendment

4   rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory

5   and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

6   **SECOND CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY (as applied)**
7   **Violation of the Second Amendment Right to Keep and Bear Arms**

8   176.   Plaintiff incorporates the above allegations as if set forth fully here.

9   177.   In violation of the Second Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS,

10   and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code

11   Section 33855 requiring Plaintiff to: 1) fill out and sign a document under the penalty of

12   perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS

13   Law Enforcement Gun Release Application" (See Exhibit 1 attached hereto and incorporated

14   herein.), and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun),

15   and $3.00 for each additional gun.

16   178.   Defendants enforce laws per California Penal Code, §§ 16150, subd. (b), 30305, 32310; Pen.

17   Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 which are designed and enforced

18   to interfere with the right to keep and bear arms is a fundamental right guaranteed by the

19   United States Constitution.

20   179.   Regulations infringing upon a fundamental right must meet heightened scrutiny.

21   180.   California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§

22   25400-25700, 26150-26225; Penal Code § 33850, *et al.* cannot pass constitutional muster

23   under either intermediate or strict scrutiny review because of the unbridled discretion left to

24   sheriffs and police chiefs regarding an individual's Second Amendment right to keep and

25   bear arms.

26   181.   Defendants' continued enforcement of §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§

27   25400-25700, 26150-26225; Penal Code § 33850, *et al.* under color of state law

28   

**- 21 -**

_____

impermissibly infringes upon Plaintiff's constitutional rights, including his right to keep and bear arms as guaranteed by the Second Amendment.

182.   As a direct and proximate result of Defendants' violation of Plaintiff's Second Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**THIRD CLAIM FOR RELIEF:**
**Violation of the Fourth Amendment** - LACK OF PROBABLE CAUSE
(Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014)

183.   Plaintiff incorporates the above allegations as if set forth fully here.

184.   In or around March 25, 2014, Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;     UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 falsely arrested Plaintiff, searched his temporary residence, and illegally seized six (6) firearms legally owned by Plaintiff, and two non-folding hunting knives that he carried openly on his person.

185.   Plaintiff was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, and deprived of his freedom, dignity, firearms, property, money and knives.

186.   On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against Plaintiff for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

187.   On 05/30/2014, the case against Plaintiff was dismissed with prejudice on the District Attorney's own motion, resulting in an order for return of property to Plaintiff illegally seized.

**- 22 -**

_____

188.   Plaintiff's two knives were returned to him, but not his six firearms and related property.

189.   Plaintiff was falsely physically arrested without probable cause in violation of the Fourth Amendment.

190.   As a direct and proximate result of Defendants' violation of Plaintiff's Fourth and Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**FOURTH CLAIM FOR RELIEF:**
**(Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014)**
**Violation of the <u>Fifth Amendment</u> (property rights)**

191.   Plaintiff incorporates the above allegations as if set forth fully here.

192.   In or around March 2014, approximately Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 falsely arrested Plaintiff, searched his temporary residence, and illegally seized six (6) firearms legally owned by Plaintiff, and two non-folding hunting knives that he carried openly on his person.

193.   Plaintiff's two knives were returned to him, but not his six firearms and related property.

194.   Plaintiff was falsely physically arrested without probable cause in violation of the Fourth Amendment.

195.   As a direct and proximate result of Defendants' violation of Plaintiff's Fourth and Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**FIFTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12027.1**
**Violation of the Equal Protection clause of the Fourteenth Amendment**

196.   Plaintiff incorporates the above allegations as if set forth fully here.

197.   California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700,

**- 23 -**

26150-26225; Penal Code § 33850 provides for a scheme that allows retired peace officers to lawfully carry concealed weapons without applying for or being issued CCW permits.

198. The section provides for either an "endorsement" or "identification certificate" which allows the retired officer to lawfully carry a concealed firearm without going through the CCW permit application process required of all other citizens.

199. An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement may be revoked only after a hearing.

200. While a sheriff or police chief may deny a law-abiding citizen, without giving any reason whatsoever, from exercising the right to even carry a concealed weapon in the first place, a retired peace officer is entitled to a hearing before he or she has that right taken from him or her.

201. When it comes to self-defense, providing retired peace officers with superior rights to those of ordinary law-abiding citizens does not further either an important or compelling state interest.

202. As such, C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment.

203. Defendants' continued enforcement of C.P.C. § §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850  under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

204. As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**SIXTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12031(b)**
**Violation of the Deprivation of Property rights without Due Process clause of the Fifth and Fourteenth Amendment**

205. Plaintiff incorporates the above allegations as if set forth fully here.

**- 24 -**

206.   In violation of the Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring Plaintiff to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit 1 attached hereto and incorporated herein.), and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

207.   Defendants continued enforcement of C.P.C. § 12031(b) under color of state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

208.   As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**SEVENTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY** Penal Code Section 33855
**Violation of the Equal Protection Clause of the Fourteenth Amendment**

209.   Plaintiff incorporates the above allegations as if set forth fully here.

210.   As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**EIGHTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §§** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850
**Violation of the Second Amendment**

211.   Plaintiff incorporates the above allegations as if set forth fully here.

212.   California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* & 12025 violate the Constitution.

213.   California law and public policy authorize law-abiding Californians to use firearms in self-defense and for the defense of others in their homes and businesses.

- 25 -

214. Under California law, government agencies and law enforcement officers have no duty to protect individual citizens from harm.

215. In *Zelig*, the California Supreme Court unanimously held that, "the general rule is that although the government may assume responsibility for providing adequate police protection against third party violence, this does not create a legal duty that normally will give rise to civil liability."

216. It is the responsibility of individual citizens to protect themselves from violence.

217. The California Constitution guarantees certain inalienable rights, including the right to defend one's life, liberty, and property.

218. California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 guarantees the right of peace officers to have superior weapons than that of citizens for use while traveling.

219. Implicit in C.P.C. § 12026(b), is the right to possess, carry, use, and discharge a handgun for the defense of self, family, home and/or business, if and when necessary.

220. Defendants' unconstitutional application and enforcement of C.P.C. §§ 12050, *et al.* & 12025 prevent Plaintiff and others from lawfully possessing, carrying, using, and discharging a firearm for self-defense and the defense of others if and when necessary.

221. Defendants' continued enforcement of C.P.C. §§ 12050, *et al.* & 12025 under color of state law impermissibly infringes upon Plaintiff's rights guaranteed by the Constitution and laws of the State of California.

222. As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief.

**NINTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§
25400-25700, 26150-26225; Penal Code § 33850**, *et al.***
**Violation of Plaintiff's Right to Travel Guaranteed by both the**
**United States Constitution and the Fourteenth Amendment**

223. Plaintiff incorporates the above allegations as if set forth fully here.

224. The United States Constitution guarantees citizens the right to travel.

**- 26 -**

_____

225. Plaintiff not only wishes to protect himself by carrying a concealed weapon within the State of California, but also wishes to avail himself of that same protection when he travels.

226. Arizona, Idaho, Indiana, Kentucky, Missouri, Montana, Oklahoma, South Dakota, Tennessee, Texas, and Utah all honor CCW permits issued by the State of California.

227. But for Defendants' denial of Plaintiff's CCW application, Plaintiff could travel to these states and lawfully protect himself with a concealed weapon.

228. However, because of Defendants' denial of his application, Plaintiff is deterred from traveling interstate because he is not able to adequately protect himself.

229. Thus, C.P.C. § 12050, *et al.* is in violation of the United States Constitution.

230. Defendants' continued enforcement of C.P.C. § 12050, *et al.* under color of state law impermissibly infringes upon Plaintiff's rights guaranteed by the Constitution and the Fourteenth Amendment.

231. As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief.

**TENTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850**, *et al.***
**Violation of the Due Process Clause of the Fourteenth Amendment**

232. Plaintiff incorporates the above allegations as if set forth fully here.

233. The Second Amendment to the United States Constitution guarantees citizens the right to keep and bear arms for the purpose of self-defense.

234. The Constitution and laws of the State of California authorize law-abiding Californians to use firearms in self-defense and for the defense of others in their homes and businesses.

235. Defendants' application and enforcement of the code sections challenged herein significantly impairs Plaintiff's, and others, ability to exercise their constitutionally guaranteed right to self-defense without the due process of law.

236. Defendants' application and enforcement of the code sections challenged herein are therefore in violation of the Due Process clause of the Fourteenth Amendment.

237. Defendants continued enforcement of the code sections challenged herein under color of

- 27 -

state law impermissibly infringes upon Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

238.   As a direct and proximate result of Defendants' violation of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

## DECLARATORY JUDGMENT AVERMENTS

239.   Plaintiff incorporates the above allegations as if set forth fully here.

240.   There is an actual and present controversy between the parities hereto.

241.   Plaintiff contends that Defendants' enforcement of C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, violate his constitutional rights.

242.   However, Defendants continue to enforce these sections.

243.   A declaration by this Court enjoining Defendants from enforcing C.P.C.§§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, would resolve the controversy between the parties.

## INJUNCTIVE RELIEF AVERMENTS

244.   Plaintiff incorporates the above allegations as if set forth fully here.

245.   If an injunction does not issue enjoining Defendants from enforcing C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, Plaintiff will continue to be subject to substantial and immediate irreparable injury.

246.   Plaintiff is presently and continuously injured by Defendants' enforcement of these sections.

247.   If not enjoined by this Court, Defendants will continue to unconstitutionally enforce C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

248.   Further, Plaintiff does not have an adequate remedy at law.

249.   Damages are indeterminate and/or unascertainable and any remedy at law would not fully redress the harm suffered by Plaintiff.

250. Plaintiff's right to protect himself and others cannot be replaced by money.

251. Ultimately, Defendants' continued unconstitutional infringement of Plaintiff's constitutional right could result in severe bodily injury or even death to Plaintiff.

252. Further, enjoining Defendants' enforcement of these code sections is in the public interest.

253. Other law-abiding citizens similarly situated to Plaintiff are also injured by Defendants unconstitutional enforcement of these sections.

254. Accordingly, injunctive relief is appropriate.

**DEMAND FOR JURY TRIAL**

255. Plaintiff demands a trial by jury.

**REQUEST FOR ATTORNEYS' FEES**

256. If Plaintiff is the prevailing party, Plaintiff respectfully requests remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants as follows:

1.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Second Amendment to the United States Constitution.

2.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Second Amendment to the United States Constitution.

3.) A declaration that Defendants' enforcement of California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.

_____

1  Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of
2  the Fourteenth Amendment to the United States Constitution.

3          5.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.
4  Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of
5  the Fourteenth Amendment to the United States Constitution.

6          6.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.
7  Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of
8  the Fourteenth Amendment to the United States Constitution.

9          7.) A declaration that Defendants' enforcement of the Law Enforcement Officers
10  Safety Act violates the Equal Protection clause of the Fourteenth Amendment to the United States
11  Constitution.

12          8.) A declaration §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700,
13  26150-26225; Penal Code § 33850, *et al.* violates the Constitution and laws of the State of
14  California.

15          9.) A declaration C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§
16  25400-25700, 26150-26225; Penal Code § 33850 violates the Constitution and laws of the State of
17  California.

18          10.) A declaration that Defendants application and enforcement of C.P.C. §§ 16150,
19  subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.*
20  violates Plaintiff's right to travel guaranteed by both Article IV, Section 2 of the United States
21  Constitution and the Privileges or Immunities clause of the Fourteenth Amendment.

22          11.) A declaration that Defendants application and enforcement of C.P.C. §§ 12050,
23  *et al.* and 12025 violate Plaintiff's right to Due Process guaranteed by the Fourteenth Amendment to
24  the United States Constitution.

25          12.) An injunction permanently enjoining Defendants from enforcing C.P.C.§§
26  16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

27          13.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of

28

**- 30 -**

_____

**Complaint for Monetary Damages, Declaratory And Injunctive Relief**
**And Demand For Jury Trial**

1  reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

2          14.) Such other relief as this Court deems just and equitable, including general and

3  specific damages.

4

5          Dated: March 11, 2016              THE LAW OFFICES OF GARY W. GORSKI
                                              Respectfully Submitted,
6                                              /s/ Gary W. Gorski_____
                                              Gary W. Gorski
7                                             Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complaint for Monetary Damages, Declaratory And Injunctive Relief
And Demand For Jury Trial**