Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

# THE UNITED STATES DISTRICT COURT

# IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual )<br><br>Plaintiff, )<br><br>vs. )<br><br>KAMALA D. HARRIS Attorney General of the ) State of California, in her official capacity only; ) CITY OF CITRUS HEIGHTS; Citrus Heights ) Police Department Chief CHRISTOPHER W. ) BOYD, in both his individual and official ) capacity; Citrus Heights Police Officer ) CHRISTIAN BAERRESEN, # 371; Citrus ) Heights Police Officer THOMAS LAMB, # ) 315; UNKNOWN CITRUS HEIGHTS POLICE ) OFFICER Badge Number 323; ) UNKNOWN CITRUS HEIGHTS POLICE ) OFFICER who prepared Report Number ) CH14-02589 on 03/26/2014; TWO ) UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512; COUNTY OF PLACER; | **Case No.**  16-CV-00523-TLN-KJN<br><br>**FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

**First Amended Complaint**

EDWARD N. BONNER, in his official capacity
as Sheriff of County of Placer; Placer County
Deputy MASON, # 181; Placer County Deputy
HINTZE, # 101.

          Defendants.

---

# COMPLAINT

## JURISDICTION AND VENUE

1.    Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.    The Second Amendment is the only right which requires <u>access</u> and <u>ownership</u> of a tangible item (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the right to have access to "arms" by way of sale or self manufacture.

3.    This Court has supplemental jurisdiction over Plaintiffs' state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

4.    Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

5.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant HARRIS resides in this judicial district.

## THE PARTIES

6.    Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

7.    Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of

---

1    the United States of America, and at all relevant times a legal resident of County of

2    Sacramento, California.  He is also a Veteran and Native-American.

3    8.    At all relevant times, CUPP was traveling through California with his travel trailer, and only

4          staying temporarily for a few weeks visiting a friend.

5    9.    Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby

6          the California Constitution Article V, section 13 grants the Attorney General a supervisory

7          role over "every district attorney and sheriff and over such other law enforcement officers as

8          may be designated by law."

9    10.   Article V, section 13 is fleshed out in several California statutes which grants full authority

10         and power to the Attorney General with direct supervisory power over sheriffs and police

11         chiefs, including the power to require written applications and fees regarding firearms.

12   11.   On January 3, 2011, KAMALA D. HARRIS was sworn in as the 32nd Attorney General of

13         the State of California.

14   12.   On November 4, 2014 she was re-elected to a second term in office.  As stated on the

15         government's official website, she is the first woman, the first African American, and the first

16         South Asian to hold the office in the history of California.  See her website:

17         https://oag.ca.gov/about

18   13.   Defendant HARRIS is the State of California Attorney General, and is the chief law

19         enforcement officer of the State whereby all other named Defendants report to her.

20   14.   Defendant HARRIS is the State of California Attorney General, and as such is responsible for

21         promulgation of administrative rules regarding firearms and weapons used for personal self

22         defense.

23   15.   Defendant HARRIS is the State of California Attorney General, and as such is responsible for

24         executing and administering the laws, customs, practices, and policies of the State of

25         California, under whose direction all defendants complained of in this action have acted on

26         behalf of.

27   16.   Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting

28         under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for

**First Amended Complaint**

1  enforcing the code sections complained of in this action.

2  17.  Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief

3  is sought.

4  18.  Defendants CITY OF CITRUS HEIGHTS, COUNTY OF SACRAMENTO, and COUNTY

5  OF PLACER (hereinafter simply "MUNICIPAL DEFENDANTS") are a "person" acting

6  under color of state law within the meaning of 42 U.S.C. § 1983.

7  19.  MUNICIPAL DEFENDANTS are created under the Constitution and Laws of the State of

8  California.

9  20.  Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer

10  acting under color of law in both his individual and official capacities.

11  21.  Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police,

12  and as such is responsible for executing and administering the laws, customs, practices, and

13  policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

14  22.  Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant

15  CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42

16  U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this

17  action.

18  23.  Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official

19  capacities.

20  24.  Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

21  employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

22  HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

23  responsible for enforcing the code sections complained of in this action.

24  25.  Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

25  of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

26  used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

27  this action.

28  26.  UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

- 4 -

**First Amended Complaint**

servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

27.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

28.   Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT have not been located, but they will be added to this complaint upon uncovering their names through discovery.

29.   SCOTT JONES, is named in his official capacity as Sheriff of County of Sacramento, is responsible for executing and administering the laws, customs, practices, and policies of HARRIS complained of in this action.

30.   Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of law.

31.   EDWARD N. BONNER is named in his official capacity as Sheriff of County of Placer.

32.   At all times, Placer County Deputy MASON, # 181 and Placer County Deputy HINTZE, # 101 were acting under color of law.

**BACKGROUND FACTS**

33.   No person shall make an application to purchase more than one handgun within any 30-days period . Exemptions to the one-handgun-per-30-days limit include pawn returns, intra-familial transfers and private party transfers . (Pen . Code, § 27540) As stated by Defendant HARRIS online.

34.   California Penal Code section 25400 does not prohibit a citizen of the United States over 18 years of age who is in lawful possession of a handgun, and who resides or is temporarily in California, from transporting the handgun by motor vehicle provided it is unloaded and stored in a locked container . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

- 5 -

**First Amended Complaint**

35.   It is illegal for any person to carry a handgun concealed upon his or her person or concealed in a vehicle without a license issued pursuant to Penal Code section 26150 . (Pen . Code, § 25400)  A firearm locked in a motor vehicle's trunk or in a locked container carried in the vehicle other than in the utility or glove compartment is not considered concealed within the meaning of the Penal Code section 25400; neither is a firearm carried within a locked container directly to or from a motor vehicle for any lawful purpose . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

36.   It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place, on any public street, or in any place where it is unlawful to discharge a firearm . (Pen . Code, § 25850, subd . (a))  As stated by Defendant HARRIS online.

37.   Nonconcealable firearms (rifles and shotguns) are not generally covered within the provisions of California Penal Code section 25400 and therefore are not required to be transported in a locked container . However, as with any firearm, nonconcealable firearms must be unloaded while they are being transported . A rifle or shotgun that is defined as an assault weapon pursuant to Penal Code section 30510 or 30515 must be transported in accordance with Penal Code section 25610.  As stated by Defendant HARRIS online.

38.   Peace officers and honorably retired peace officers having properly endorsed identification certificates may carry a concealed weapon at any time. Otherwise, these exemptions apply only when the firearm is carried within the scope of the exempted conduct, such as hunting or target shooting, or within the course and scope of assigned duties, such as an armored vehicle guard transporting money for his employer. A person who carries a loaded firearm outside the limits of the applicable exemption is in violation of the law, notwithstanding his or her possession of an occupational license or firearms training certificate. (Pen . Code, § 12031(b).)  As stated by Defendant HARRIS online.

39.   AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic Partner of Peace Officer Killed in the Line of Duty: Provides an exception to the Unsafe Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of duty to purchase their spouse/domestic partner's service weapon and hi-capacity magazines.

**First Amended Complaint**

(Pen . Code, § 32000.)

40. Extends to ammunition, current authority for a city or county to impose a charge relating to the seizure, impounding, storage, or release of a firearm. (Pen . Code, § 33880).

41. The Second Amendment right to keep and bear applies to all lawful arms, includes slungshots (a horse leash), knives and edged tools, that are also traditionally used by law enforcement since law enforcement is limited to the use of only "reasonable force".

42. Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are "typically used for lawful purposes" and are deemed presumptively reasonable as active duty and retired law enforcement are granted the rights and privileges to use them.

43. Widespread law enforcement use of a particular firearm, weapon or magazine, or edged weapon proves that particular arms are common and typically used for lawful purposes, rather than "dangerous and unusual."

44. Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

45. Standard magazine bans are dangerous because they reduce typical defensive fire power. They shift risk of injury from violent aggressors to law-abiding innocents.

46. Typically, in an officer shooting of an unarmed civilian, they discharge more than 10 rounds to stop a person.

47. Commencing in the 1999 (the time after when most police switched to semi-automatic pistols from revolvers), there began a spike in the total number of rounds expended by police shooting innocent people.

48. In 1999, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of his apartment in New York City.  He committed no crime and was unarmed.  The shooting death of an <u>unarmed</u> 23-year-old Guinean immigrant in New York City is anything but anomalous in today's America.

**First Amended Complaint**

49. A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on him following a high-speed chase down an area freeway. The same month, New York police fired at a suspected murderer 84 times.

50. Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

51. Officer Wilson shot Michael Brown in the back 12 times.
https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

52. In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two separate incidents in the early morning hours of February 7, 2013, police fired on people who turned out to be unrelated to Dorner and that Dorner (an African-American male) was not present at either incident and no firearms were involved in either incident (i.e. the police victims were unarmed).
https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidentifications

53. Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic females.  Remarkably, they survived.

54. Approximately 25 minutes after that incident, officers from the Torrance Police Department struck and opened fire on another vehicle.  Like the first shooting, the white male was unarmed and did not match the description of Dorner.  Over 30 bullets were fired at him.

55. Therefore, since HARRIS and the State of California have determined that discharging more than 10 rounds for purposes of self defense is a reasonable use of force, then the Second Amendment protects the rights of all citizens to posses magazines and firearms holding more than 10 rounds, and no more than 30, since the average magazine for all makes and models of firearms is between 11 to 30 rounds.

56. Defendant HARRIS has made her career pushing for more government control over the people of the State of California, and depriving them of their fundamental constitutional

**First Amended Complaint**

1   rights, privileges and immunities, especially those that the Framers of the Fourteenth

2   Amendment sought to protect the most.

3   57.   At the same time, HARRIS and the State of California have pushed for the militarization of

4   the police state by exempting California Peace Officers (both active and retired) from the

5   very same firearms and magazines prohibited to the rest of the population.

6   58.   Defendant HARRIS has shown a blatant disregard of the rights of citizens to travel with

7   firearms, which was one of the first and most important rights bestowed upon the newly freed

8   slaves of the South after the civil war with the passage of the Fourteenth Amendment.

9   59.   As historian Flack noted in *The Adoption of the Fourteenth Amendment* 7 (Johns Hopkins

10   1908),  written at a time when gun control was not a political issue seized by those in power

11   for political gain; the central theme throughout all the debates over the Fourteenth

12   Amendment focused on the newly freed slaves rights to travel, vote, own property and

13   possess and bear arms to enforce their rights when the government couldn't.  See also

14   Antieau, *The Intended Significance of the Fourteenth Amendment* (Wm. Hein, Buffalo, N.Y.

15   1997), citing Royall, *The Fourteenth Amendment: The Slaughter House Cases*, 4 So. L. Rev.

16   (N.S.) 558, 563 (1879).   [All of the authorities the Supreme Court's central holding in"

17   *District of Columbia v. Heller*, 554 U. S. 570 (2008), was "that the Second Amendment

18   protects a personal right to keep and bear arms for lawful purposes, most notably for

19   self-defense within the home." *McDonald v. Chicago*, 561 U. S. 742, 780 (2010) (plurality

20   opinion).  And in *McDonald*, the Supreme Court recognized that the Second Amendment

21   applies fully against the States as well as the Federal Government.  *Id.*, at 750; id., at 805

22   (THOMAS, J., concurring in part and concurring in judgment).]

23   60.   Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald*

24   *v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass

25   and enforce laws resulting in categorical and constructive bans on firearms and attachments

26   thereto that millions of Americans, veterans, and retired peace officers commonly own for

27   lawful purposes, which then results in constructive ban on the right to travel.

28   61.   Other than California, only six other states (which obviously include Connecticut, New York

- 9 -

and New Jersey) have unconstitutional draconian firearms laws which no other state even remotely mandates, including limitations on the carrying or possession of specific weapons and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine bans).

62. California cannot ban and confiscate the free citizens right to keep and posses arms.

63. "Full Faith and Credit Clause" of Article IV, Section 1 of the United States Constitution, provides that California must recognize the right of free citizens who are not California residents.

64. Defendant HARRIS is the top ranking law enforcement official in the state of California, promulgating rules and regulations which deprived Plaintiff of right to keep and bear arms as protected under the Second Amendment, and enforced laws which deprived Plaintiff of his property rights in his firearms, and denied him equal protection of the law.

65. Plaintiffs are a avid sportsmen and extremely familiar with firearms and the safe operation thereof, and in particular semi-automatic handguns with magazine capacities greater than 10 rounds and semi-automatic rifles capable of holding magazines containing more than 10 rounds of ammunition.

66. California does not issue permits to carry non-lethal weapons or any other weapon besides a handgun.

67. Plaintiffs seek an order which would enjoin defendants from enforcing laws which would not otherwise be enforced against them had they been active or retired peace officers, since officers are afforded the full panoply of protections afforded by the Second Amendment, Fourth Amendment, and Equal Protection Clause as bestowed upon other government officials, such as retired peace officers, spouses of peace officers, retired correctional officers, and other members of the government.

**FACTS PERTAINING TO <u>CUPP</u> (CITRUS HEIGHTS)**

68. Plaintiff has been an avid hunter and owner of firearms since the age of 12, starting off with .22s and shotguns.  In sum, he has owned and used firearms his whole life.

69. He previously had a CCW from the State of Oregon for approximately 8 years (1996), until

**- 10 -**

**First Amended Complaint**

he changed his residency to South Dakota.

70. His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, he continuously passes through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

71. CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

72. Plaintiffs' mother lives in Citrus Heights, CUPP drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

73. CUPP had temporary abode was parked at a friend's house, which was docked, plugged, and his truck was parked in another location.

74. On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

75. CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

76. On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

77. California Penal Code Section 21310 violates the Second Amendment, Privileges and

- 11 -

**First Amended Complaint**

Immunities Clause of the 14th Amendment.

78.  On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

79.  Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

80.  At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;   UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

81.  To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, $1,000.

82.  CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

83.  As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

84.  CUPP presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

85.  CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving

through Los Angeles during a civil protest in the course and scope of his employment as a

trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

86.    CUPP desires to travel with firearms and knives, which as a citizen of the state of South

Dakota is legal, into the state of California to protect himself, his family, his property, and his

friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and

while performing various other activities such as carrying large sums of money associated

with his work.

87.    Moreover, CUPP specifically has concern for the safety of himself and his cargo because of

truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

88.    In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law

enforcement for carrying knives in a manner which is legal under California law, open and

exposed carry in a sheath.

89.    CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun

with a 11-15 round capacity in the saddle bag of his motorcycle.

90.    Thus, because CUPP is continuously harassed for carrying knives exposed, it is Plaintiffs'

position that he wants to carry them concealed on his person so that he is not profiled by law

enforcement.

91.    CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while

traveling into and through California, and taking up temporary residence for purposes of

work.

92.    CUPP has unconstitutionally been prevented from doing so because of the code sections

challenged and complained of herein, and because of Defendants' unconstitutional

application and enforcement of those same sections.

93.    CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a

concealed weapon on his person, in his vehicle, or in his RV without a permit or prior

permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and

imprisonment if he were to possess of open carried and/or concealed weapon on his person,

in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a

**First Amended Complaint**

permit or prior permission authorizing him to do so.

94.  In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

95.  The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" was created by Defendant HARRIS in or around January 2012.

96.  On or about February 27, 2015, CUPP, through his attorney, filed a Claim for Damages (Tort Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

97.  In addition, this Claim was also an internal affairs complaint.

98.  In a letter dated March 23, 2015 rejecting both CUPP's tort claim and demand for return of his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an unconstitutional law and creating a undue burden on CUPP.

**FACTS SPECIFIC TO HAVEN**

99.   Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an avid hunter and owner of firearms.  Veterans and Native Americans have a long tradition of carrying and using California banned and prohibited weapons, especially firearms and horse leashes.

100.  While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy explosives and ordinances.

101.  The standard military side arm of the time was a .45 Caliber Semi-Automatic pistol, the type which California now seeks to ban.

**- 14 -**

**First Amended Complaint**

102. **The CONFISCATION of firearms (SACRAMENTO COUNTY SHERIFF'S DEPT.):**

On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

103. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

104. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

105. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

106. **The "SLUNGSHOT"(PLACER COUNTY SHERIFF'S DEPT.):**  Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the Peloponnesian Wars, man's weapon of choice was rock with a rope attached to it.

107. A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States.  It was a simple weapon, which itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the invention of gunpowder.

108. On February 8, 2016, deputies from the Placer County Sheriff's Department stopped Defendant HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse."

109. HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

110. Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession of a slungshot in violation of PC 12210.

111. A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

**- 15 -**

**First Amended Complaint**

112.   While arresting HAVEN, HINTZE and MASON made various threatened comments to HAVEN that he was a associated with outlaw motorcycle gangs by his appearance and various bumper stickers on his motorcycle.

113.   The deputies motive for arresting HAVEN was his personal appearance and his various stickers, both protected by the First Amendment.

114.   Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

115.   On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN was arraigned on the charges in the above-entitled court.

116.   On or about March 21, 2016 the Supreme Court of the United States rendered its unanimous per curium opinion in *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078; decided March 21, 2016.  The holding of *Caetano* reiterated prior precedent and stated that the State's arguments for supporting draconian laws borders on the "frivolous", but yet, in 2016, California has only enhanced its draconian enforcement of arms of all types.

117.   Prior to *Caetano*, the law was clearly established that the Second Amendment protects all "arms", and is not just applicable to firearms.  To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, in excess of $2,000.

118.   Defendants' obstructionist behavior and unconstitutional policies regarding the return of Plaintiffs' firearms make it impossible for Plaintiffs to exercise a fundamental right to keep and bear arms in protection of themselves.

119.   At all times, Defendants were and still are acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

### INTRODUCTION AND SUMMARY OF AVERMENTS

120.   Plaintiffs incorporate the above allegations as if set forth fully here.

121.   Dealers may not sell any new handgun unless it is listed in the state Department of Justice

**- 16 -**

**First Amended Complaint**

1    roster of handguns certified for sale.

2    122.  The prohibition of purchasing the safest, most technologically advanced handguns, which

3    have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory

4    9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series,

5    and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock

6    and 100 year old revolvers, none of which have manual thumb safeties.

7    123.  The lack of these safety features have resulted in an inordinate amount of accidental

8    discharges by law enforcement, including the state's own experts who shot themselves.

9    124.  Plaintiffs have the same rights active and retired officers have to purchase (and use for

10   personal self-defense) the best and safest tool for the job.

11   125.  California active and retired officers legally purchased 7,600 banned assault weapons through

12   a legal exemption promulgated by the Attorney General

13   (http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-assault-weapo

14   ns-ill/), and now the municipalities are jumping on the bandwagon of carving rights and

15   privileges for only the chosen few (i.e. retired law enforcement).

16   http://www.washingtontimes.com/news/2015/dec/3/retired-lapd-cops-exempted-ban-high-cap

17   acity-magaz/

18   126.  Given this mash of government laws and regulation, this action seeks to put an end to

19   government selecting who gets to exercise their rights under the Second Amendment.  This is

20   the equivalent of the government mandating which books the People can read to exercise

21   their First Amendment Rights.

22   127.  When it comes to self-defense, providing retired peace officers with superior rights to that of

23   ordinary law-abiding citizens does not further either an important or compelling state interest,

24   and more importantly, since law enforcement can only use reasonable force in self-defense,

25   then the hand-guns they use are presumptively the type of firearm protected by the Second

26   Amendment.

27   128.  What are seeking to enjoin the State of California and defendants from enforcing are current

28   firearm statutes which infringe upon their constitutional rights as follows (which is clearly

- 17 -

**First Amended Complaint**

stated in the SAC):

    a.    To purchase off-roster handguns, which are legal under federal law.

    b.    To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

    c.    To be able to purchase firearms without a waiting period or and exceeding 1 firearm per month.

    d.    To be issued a lifetime CCW, at the same cost that retired officers pay.

    e.    To have the same due process rights retired officers have before their firearms can be revoked.

    f.    For an immediate return of their firearms.

    g.    To enjoin any further arrests for possession of a knife, concealed or open carry.

    h.    To enjoin any further arrests for possession of a leash, which the government argues is a "slungshot". Defendants enforce firearm laws which are technically complex, and used to chill the free exercise a fundamental right of the Second Amendment, which is ready access to a loaded firearm for purposes of self-defense, or any other non-lethal weapon, such as a knife or leash. As applied and on their faces, each of the aforementioned code sections violate Plaintiffs' constitutional rights under the Second, Fourteenth, and Fifth Amendments to the United States Constitution.

129. The Second Amendment to the United States Constitution provides:

    A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

130. The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

131. The Second Amendment is incorporated to the states through the Fourteenth Amendment.

132. The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

133. Regulations infringing upon that right must meet heightened scrutiny.

134. Defendants implement policy and enforce laws which militarize law enforcement agencies,

**- 18 -**

**First Amended Complaint**

arming them in such a manner that they are no longer a police force, but rather a standing army.

135. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

136. By definition, criminals do not abide by the laws.

137. Therefore, gun control legislation has only a minimal effect on a violent criminal's ability to obtain and use a firearm.

138. Unlike California, the majority of the population of the United States are armed, and permitted to purchase, transport and carry commonly used handguns and rifles.

139. Semi-Automatic firearms and large capacity ammunition magazines are banned in only five states: California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore) Massachusetts, New Jersey (Camden, Newark, Jersey City), New York (New York) and D.C. (Hawaii's ban applies only to such magazines used with handguns).

140. As a result, these states also have the highest murder rates and crime ridden cities in the U.S.

141. Residents of Washington, D.C., with the lowest private gun ownership rate in the country, are more than five (5) times more likely to be the victim of a violent crime as compared to residents of Wyoming, with the highest private gun ownership rate in the country.

142. In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period."

143. Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

144. The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

145. Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

**First Amended Complaint**

146.   California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker.

147.   Accordingly, Plaintiffs seeks declaratory and injunctive relief to enjoin Defendants' unconstitutional enforcement of defendants laws and policies.

**FIRST CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY (as written)**
**Violation of the Second Amendment Right to Keep and Bear Arms**

148.   Plaintiffs incorporate the above allegations as if set forth fully here.

149.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

150.   This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

a.   Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

b.   Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

c.   Officers exemption from the 10 Day Waiting Period Exemption. (Penal Code § 26815)

d.   No person shall make an application to purchase more than one handgun within any 30-days period . Exemptions to the one-handgun-per-30-days limit include pawn returns, intra-familial transfers and private party transfers . (Penal Code § 27540)

e.   Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are subjected to (this is especially important since it allows interstate travel with a loaded

**- 20 -**

---

**First Amended Complaint**

firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

f.     If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

g.     Provides due process before a firearm can be confiscated and seized, in the method and manner that plaintiffs had theirs seized, but which were not afforded due process.

h.     Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense.

i.     6389 PC Relinquishment Of Firearms Prohibits person subject to a Domestic Violence protective order from owning or possessing a firearm while protective order is in effect.  Exemption granted to peace officers.  Penal Code §12028.5 PC mandates that police remove all firearms at domestic violence scenes, but exempts themselves from the same law via a due process hearing. (Penal Code Section 33855)

j.     Provides an exception to the Unsafe Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of duty to purchase their spouse/domestic partner's service weapon . Pen . Code, § 32000.

151.   States may not completely ban the carrying of weapons for self-defense.

152.   States may not deny individuals the right to carry weapons in non-sensitive places.

153.   States may not deprive individuals of the right to carry weapons in an arbitrary or capricious manner.

154.   States may not impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

155.   The Fourteenth Amendment to the United States Constitution provides in part:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

156.   All rights and privileges guaranteed to the people by the Second Amendment extend through the Fourteenth Amendment so as to apply to against state and local governmental entities,

**- 21 -**

---

**First Amended Complaint**

including Defendants.

157. But for Defendants' enforcement of the code sections complained of herein, Plaintiffs would have possession of their firearms legally owned by them, and their right to travel would not be interfered with.

158. California prohibits individuals in California or traveling into California from carrying a loaded weapon, knife, or leash:

    a.    within any vehicle under his or her control or direction;

    b.    on his or her person;

    c.    within any vehicle in which he or she is an occupant.

159. The Second Amendment, incorporated through the Fourteenth Amendment, guarantees the right of law-abiding citizens to publically carry operational handguns for self-defense.

160. In violation of the Second Amendment, Defendants HARRIS and MUNICIPAL DEFENDANTS enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application", and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

161. No such paperwork has even been offered to HAVEN, though he has made numerous demands for his firearms.

162. Defendants' continued enforcement of unconstitutional laws and policies under color of state law impermissibly infringes upon Plaintiffs' constitutional rights, including his right to keep and bear arms as guaranteed by the Second Amendment.

163. As a direct and proximate result of Defendants' violation of Plaintiffs' Second Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

### SECOND CLAIM FOR RELIEF:
### UNCONSTITUTIONALITY (as applied)
### Violation of the Second Amendment Right to Keep and Bear Arms

164. Plaintiffs incorporate the above allegations as if set forth fully here.

165. In violation of the Second Amendment, Defendants enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit 1 attached hereto and incorporated herein.), and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

166. Defendants enforce laws per California Penal Code, §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 which are designed and enforced to interfere with the right to keep and bear arms is a fundamental right guaranteed by the United States Constitution.

167. Regulations infringing upon a fundamental right must meet heightened scrutiny.

168. California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* cannot pass constitutional muster under either intermediate or strict scrutiny review because of the unbridled discretion left to sheriffs and police chiefs regarding an individual's Second Amendment right to keep and bear arms.

169. Defendants' continued enforcement of §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* under color of state law impermissibly infringes upon Plaintiffs' constitutional rights, including his right to keep and bear arms as guaranteed by the Second Amendment.

170. As a direct and proximate result of Defendants' violation of Plaintiffs' Second Amendment rights, CUPP has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**THIRD CLAIM FOR RELIEF:**
**Violation of the Fourth Amendment** - LACK OF PROBABLE CAUSE

171. Plaintiffs incorporate the above allegations as if set forth fully here.

172. In or around March 25, 2014, Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS

**First Amended Complaint**

HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 falsely arrested CUPP, searched his temporary residence, and illegally seized six (6) firearms legally owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

173.   CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, and deprived of his freedom, dignity, firearms, property, money and knives.

174.   On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

175.   On 05/30/2014, the case against CUPP was dismissed with prejudice on the District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

176.   Plaintiffs' two knives were returned to him, but not his six firearms and related property.

177.   CUPP was falsely physically arrested without probable cause in violation of the Fourth Amendment.

178.   **The CONFISCATION of firearms (SACRAMENTO COUNTY SHERIFF'S DEPT.):** On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

179.   HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

180.   While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

181.   No criminal charges were ever filed, and the government has failed to return HAVEN's three

**First Amended Complaint**

firearms and ammunition.

182. **The "SLUNGSHOT"(PLACER COUNTY SHERIFF'S DEPT.):**  Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the Peloponnesian Wars, man's weapon of choice was rock with a rope attached to it.

183. A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States.  It was a simple weapon, which itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the invention of gunpowder.

184. On February 8, 2016, deputies from the Placer County Sheriff's Department stopped Defendant HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse."

185. HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

186. Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession of a slungshot in violation of PC 12210.

187. A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

188. Plaintiffs were damaged according to proof.

189. As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**FOURTH CLAIM FOR RELIEF:**
Violation of the <u>Fifth Amendment</u> **(property rights)**

190.  Plaintiffs incorporate the above allegations as if set forth fully here.

191. In or around March 2014, approximately Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS

HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 falsely arrested CUPP, searched his temporary residence, and illegally seized six (6) firearms legally owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

192. Plaintiffs' two knives were returned to him, but not his six firearms and related property.

193. CUPP was falsely physically arrested without probable cause in violation of the Fourth Amendment.

194. **The CONFISCATION of firearms (SACRAMENTO COUNTY SHERIFF'S DEPT.):** On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

195. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

196. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

197. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

198. **The "SLUNGSHOT"(PLACER COUNTY SHERIFF'S DEPT.):**  Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the Peloponnesian Wars, man's weapon of choice was rock with a rope attached to it.

199. A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States.  It was a simple weapon, which itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the invention of gunpowder.

200. On February 8, 2016, deputies from the Placer County Sheriff's Department stopped Defendant HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse."

201.   HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

202.   Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession of a slungshot in violation of PC 12210.

203.   A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

204.   Plaintiffs were damaged according to proof.

205.   As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**FIFTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12027.1**
**Violation of the Equal Protection clause of the Fourteenth Amendment**

206.   Plaintiffs incorporate the above allegations as if set forth fully here.

207.   Plaintiffs were damaged according to proof.

208.   As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**SIXTH CLAIM FOR RELIEF:**
**UNCONSTITUTIONALITY OF C.P.C. § 12031(b)**
**Violation of the Deprivation of Property rights without Due Process clause of the Fifth and Fourteenth Amendment**

209.   Plaintiffs incorporate the above allegations as if set forth fully here.

210.   In violation of the Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants enforce a statutory scheme that shifts specific constitutional rights from the people to the government.

211.   Plaintiffs were damaged according to proof.

212.   As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled

**First Amended Complaint**

to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**SEVENTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY** Penal Code Section 33855
**Violation of the Equal Protection Clause of the Fourteenth Amendment**

213. Plaintiffs incorporate the above allegations as if set forth fully here.

214. Plaintiffs were damaged according to proof.

215. As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**EIGHTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §§** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850
**Violation of the Second Amendment**

216. Plaintiffs incorporate the above allegations as if set forth fully here.

217. California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* & 12025 violate the Constitution.

218. California law and public policy authorize law-abiding Californians to use firearms in self-defense and for the defense of others in their homes and businesses.

219. Under California law, government agencies and law enforcement officers have no duty to protect individual citizens from harm.

220. In *Zelig*, the California Supreme Court unanimously held that, "the general rule is that although the government may assume responsibility for providing adequate police protection against third party violence, this does not create a legal duty that normally will give rise to civil liability."

221. It is the responsibility of individual citizens to protect themselves from violence.

222. The California Constitution guarantees certain inalienable rights, including the right to defend one's life, liberty, and property.

223. California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 guarantees the right of peace officers to have superior weapons than that of citizens for use while traveling.

**- 28 -**

**First Amended Complaint**

224.   Implicit in C.P.C. § 12026(b), is the right to possess, carry, use, and discharge a handgun for the defense of self, family, home and/or business, if and when necessary.

225.   Defendants' unconstitutional application and enforcement of C.P.C. §§ 12050, *et al.* & 12025 prevent CUPP and others from lawfully possessing, carrying, using, and discharging a firearm for self-defense and the defense of others if and when necessary.

226.   Defendants' continued enforcement of C.P.C. §§ 12050, *et al.* & 12025 under color of state law impermissibly infringes upon Plaintiffs' rights guaranteed by the Constitution and laws of the State of California.

227.   As a direct and proximate result of Defendants' violation of Plaintiffs' rights, CUPP has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief.

**NINTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.*
**Violation of Plaintiffs' Right to Travel Guaranteed by both the**
**United States Constitution and the Fourteenth Amendment**

228.   Plaintiffs incorporate the above allegations as if set forth fully here.

229.   The United States Constitution guarantees citizens the right to travel.

230.   Defendants' continued enforcement of C.P.C. § 12050, *et al.* under color of state law impermissibly infringes upon Plaintiffs' rights guaranteed by the Constitution and the Fourteenth Amendment.

231.   Plaintiffs were damaged according to proof.

232.   As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered irreparable and immediate harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and 2202.

**TENTH CLAIM FOR RELIEF:**
**INVALIDITY OF SECTION C.P.C. §** §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.*
**Violation of the Due Process Clause of the Fifth and Fourteenth Amendment**

233.   Plaintiffs incorporate the above allegations as if set forth fully here.

234.   The Second Amendment to the United States Constitution guarantees citizens the right to keep and bear arms for the purpose of self-defense.

- 29 -

**First Amended Complaint**

235.  Plaintiffs had their property and fundamentally protected firearms removed from their residences without a due process hearing.

236.  The Constitution and laws of the State of California authorize law-abiding Californians to use firearms in self-defense and for the defense of others in their homes and businesses.

237.  Defendants' application and enforcement of the code sections challenged herein significantly impairs Plaintiffs', and others, ability to exercise their constitutionally guaranteed right to self-defense without the due process of law.

238.  Defendants' application and enforcement of the code sections challenged herein are therefore in violation of the Due Process clause of the Fourteenth Amendment.

239.  Defendants continued enforcement of the code sections challenged herein under color of state law impermissibly infringes upon Plaintiffs' constitutional rights guaranteed by the Fourteenth Amendment.

240.  As a direct and proximate result of Defendants' violation of Plaintiffs' Fourteenth Amendment rights, CUPP has suffered irreparable and immediate harm and is entitled to declaratory and injunctive relief under 42 U.S.C. §§ 2201 and 2202.

**DECLARATORY JUDGMENT AVERMENTS**

241.  Plaintiffs incorporate the above allegations as if set forth fully here.

242.  There is an actual and present controversy between the parities hereto.

243.  CUPP contends that Defendants' enforcement of C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, violate his constitutional rights.

244.  However, Defendants continue to enforce these sections.

245.  A declaration by this Court enjoining Defendants from enforcing C.P.C.§§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, would resolve the controversy between the parties.

**INJUNCTIVE RELIEF AVERMENTS**

246.  Plaintiffs incorporate the above allegations as if set forth fully here.

247.  If an injunction does not issue enjoining Defendants from enforcing C.P.C. §§ 16150, subd.

**First Amended Complaint**

(b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, CUPP will continue to be subject to substantial and immediate irreparable injury.

248. CUPP is presently and continuously injured by Defendants' enforcement of these sections.

249. If not enjoined by this Court, Defendants will continue to unconstitutionally enforce C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

250. Further, CUPP does not have an adequate remedy at law.

251. Damages are indeterminate and/or unascertainable and any remedy at law would not fully redress the harm suffered by CUPP.

252. Plaintiffs' right to protect himself and others cannot be replaced by money.

253. Ultimately, Defendants' continued unconstitutional infringement of Plaintiffs' constitutional right could result in severe bodily injury or even death to CUPP.

254. Further, enjoining Defendants' enforcement of these code sections is in the public interest.

255. Other law-abiding citizens similarly situated to CUPP are also injured by Defendants unconstitutional enforcement of these sections.

256. Accordingly, injunctive relief is appropriate.

## DEMAND FOR JURY TRIAL

257. Plaintiffs demand a trial by jury.

## REQUEST FOR ATTORNEYS' FEES

258. Plaintiffs respectfully requests remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in his favor and against Defendants as follows:

1.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Second Amendment to the United States Constitution.

2.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305,

**First Amended Complaint**

32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Second Amendment to the United States Constitution.

3.) A declaration that Defendants' enforcement of California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

5.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

6.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

7.) A declaration that Defendants' enforcement of the Law Enforcement Officers Safety Act violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

8.) A declaration §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* violates the Constitution and laws of the State of California.

9.) A declaration C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Constitution and laws of the State of California.

10.) A declaration that Defendants application and enforcement of C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* violates Plaintiffs' right to travel guaranteed by both Article IV, Section 2 of the United States Constitution and the Privileges or Immunities clause of the Fourteenth Amendment.

**First Amended Complaint**

11.) A declaration that Defendants application and enforcement of C.P.C. §§ 12050, *et al.* and 12025 violate Plaintiffs' right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

12.) An injunction permanently enjoining Defendants from enforcing C.P.C.§§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

13.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

14.) An order mandating that Defendants turn over all firearms and their accessories which were illegally seized by Defendants.

15.) Such other relief as this Court deems just and equitable, including general and specific damages.

Dated: June 3, 2016          THE LAW OFFICES OF GARY W. GORSKI
                             Respectfully Submitted,
                              /s/ Gary W. Gorski
                             _____
                             Gary W. Gorski
                             Attorney for Plaintiffs

- 33 -

**First Amended Complaint**