1  Gary W. Gorski (SBN 166526)
   LAW OFFICES OF GARY W. GORSKI
2  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
3  916-758-1100
   CivilRightsAttorney@outlook.com
4  www.lonewolflaw.com

5  Daniel M. Karalash (SBN 176422)
   Strategic Law Command
6  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
7  (916) 787-1234
   dan@stratlaw.org
8  www.stratlaw.com

9  Attorneys for Plaintiffs
   JAMES EDWARD CUPP and
10 LAWRENCE "WOLF" HAVEN

11

12

13            THE UNITED STATES DISTRICT COURT

14      IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

15
   JAMES EDWARD CUPP, an individual;      )   Case No.  16-CV-00523-TLN-KJN
16 LAWRENCE "WOLF" HAVEN, an individual  )
                                          )
17             Plaintiff,                 )
                                          )   SECOND AMENDED COMPLAINT FOR
18     vs.                                )   MONETARY DAMAGES,
                                          )   DECLARATORY AND INJUNCTIVE
19 KAMALA D. HARRIS Attorney General of the )  RELIEF
   State of California, in her official capacity only; )
20 CITY OF CITRUS HEIGHTS; Citrus Heights )   (42 U.S.C. § 1983)
   Police Department Chief CHRISTOPHER W. )
21 BOYD, in both his individual and official )
   capacity; Citrus Heights Police Officer )   DEMAND FOR JURY TRIAL
22 CHRISTIAN BAERRESEN, # 371; Citrus    )
   Heights Police Officer THOMAS LAMB, #  )
23 315; UNKNOWN CITRUS HEIGHTS POLICE )
   OFFICER Badge Number 323;              )
24 UNKNOWN CITRUS HEIGHTS POLICE        )
   OFFICER who prepared Report Number     )
25 CH14-02589 on 03/26/2014; TWO
   UNKNOWN NAMED PEACE OFFICERS OF
26 THE CITRUS HEIGHTS POLICE
   DEPARTMENT; COUNTY OF
27 SACRAMENTO; SCOTT JONES, in his
   official capacity as Sheriff of County of
28 Sacramento; Sacramento Deputy Sheriff JESSE

                              - 1 -

                   **Second Amended Complaint**

BRUCKER, # 512; COUNTY OF PLACER;
EDWARD N. BONNER, in his official capacity
as Sheriff of County of Placer; Placer County
Deputy MASON, # 181; Placer County Deputy
HINTZE, # 101.

          Defendants.

_____

**COMPLAINT**

**JURISDICTION AND VENUE**

1.    Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.    The Second Amendment is the only right which requires <u>access</u> and <u>ownership</u> of a tangible item (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the right to have access to "arms" by way of sale or self manufacture.

3.    This Court has supplemental jurisdiction over Plaintiffs' state law claims asserted herein under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the federal claims.

4.    Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

5.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant HARRIS resides in this judicial district.

**THE PARTIES**

6.    Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

7.    CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996),

until he changed his residency to South Dakota, which requires no such license as open carry is allowed.

8.    CUPP has no criminal record.

9.    His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, CUPP continuously travels through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

10.   CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

11.   As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

12.   CUPP presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

13.   CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving through Los Angeles during a civil protest in the course and scope of his employment as a trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

14.   CUPP desires to travel with firearms and knives, which as a citizen of the state of South Dakota is legal, into the state of California to protect himself, his family, his property, and his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and while performing various other activities such as carrying large sums of money associated with his work.

15.   Moreover, CUPP specifically has concern for the safety of himself and his cargo because of

- 3 -

**Second Amended Complaint**

truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

16.   In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

17.   CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

18.   Thus, because CUPP is continuously harassed for carrying knives exposed, it is Plaintiffs' position that he wants to carry them concealed on his person so that he is not profiled by law enforcement.

19.   CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while traveling into and through California, and taking up temporary residence for purposes of work.

20.   CUPP has unconstitutionally been prevented from doing so because of the code sections challenged and complained of herein, and because of Defendants' unconstitutional application and enforcement of those same sections.

21.   CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit or prior permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess of open carried and/or concealed weapon on his person, in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a permit or prior permission authorizing him to do so.

22.   Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

23.   At all relevant times, CUPP had temporary abode was parked at a friend's house, which was docked, plugged, and his truck was parked in another location.

24.   At all relevant times, CUPP was traveling through California with his travel trailer, and only staying temporarily for a few weeks visiting a friend.

25.   Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of

- 4 -

**Second Amended Complaint**

the United States of America, and at all relevant times a legal resident of County of Sacramento, California.  He is a Veteran and Native-American, and as such belongs to a class which consists of a long tradition of keeping and bearing arms.

26.  Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an avid hunter and owner of firearms.  Veterans and Native Americans have a long tradition of carrying and using California banned and prohibited weapons, especially firearms.

27.  While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy explosives and ordinances.

28.  The standard military side arm of the time was a .45 Caliber Semi-Automatic pistol, the type which California now seeks to ban.

29.  Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby the California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law."

30.  Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over sheriffs and police chiefs, including the power to require written applications and fees regarding firearms.

31.  On January 3, 2011, KAMALA D. HARRIS was sworn in as the 32nd Attorney General of the State of California.

32.  On November 4, 2014 she was re-elected to a second term in office.  As stated on the government's official website, she is the first woman, the first African American, and the first South Asian to hold the office in the history of California.  See her website: https://oag.ca.gov/about

33.  Defendant HARRIS is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report to her.

34.  Defendant HARRIS is the State of California Attorney General, and as such is responsible for promulgation of administrative rules regarding firearms and weapons used for personal self defense.

**Second Amended Complaint**

35.  Defendant HARRIS is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, under whose direction all defendants complained of in this action have acted on behalf of.

36.  Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

37.  Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief is sought.

38.  Defendants CITY OF CITRUS HEIGHTS, COUNTY OF SACRAMENTO, and COUNTY OF PLACER (hereinafter simply "MUNICIPAL DEFENDANTS") are a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

39.  MUNICIPAL DEFENDANTS are created under the Constitution and Laws of the State of California.

40.  Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer acting under color of law in both his individual and official capacities.

41.  Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

42.  Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

43.  Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official capacities.

44.  Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

- 6 -

**Second Amended Complaint**

HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

45. Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

46. UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

47. UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

48. Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT have not been located, but they will be added to this complaint upon uncovering their names through discovery.

49. SCOTT JONES, is named in his official capacity as Sheriff of County of Sacramento, is responsible for executing and administering the laws, customs, practices, and policies of HARRIS complained of in this action.

50. Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of law.

51. EDWARD N. BONNER is named in his official capacity as Sheriff of County of Placer.

52. At all times, Placer County Deputy MASON, # 181 and Placer County Deputy HINTZE, # 101 were acting under color of law.

53. At all times, plaintiffs legally possessed and owned handguns and long-rifles, which were never illegal, even under California law, to possess and own.

- 7 -

54.   At the direction of state law and HARRIS, plaintiffs had their firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned.

**FIRST CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

55.   Plaintiffs incorporate the above allegations as if set forth fully here.

56.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

57.   Plaintiffs are a extremely familiar with firearms and the safe operation thereof, and in particular semi-automatic handguns with magazine capacities greater than 10 rounds and semi-automatic rifles capable of holding magazines containing more than 10 rounds of ammunition

58.   Plaintiffs intend to travel in and out the State of California with ammunition magazines which hold more than ten rounds, and they intend to purchase, possess, and use handguns which are not on California's approved list.

59.   However, because of the threat of enforcement, and actual enforcement, plaintiffs seek a permanent injunction enjoining HARRIS and the State of California from enforcing the magazine ban and safe gun list ban.

60.   Dealers may not sell any new handgun unless it is listed in the state Department of Justice roster of handguns certified for sale.

61.   The prohibition of purchasing the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.

62.   The lack of these safety features have resulted in an inordinate amount of accidental

**Second Amended Complaint**

1   discharges by law enforcement, including the state's own experts who shot themselves.

2   63.   Plaintiffs have the same rights active and retired officers have to purchase (and use for

3   personal self-defense) the best and safest tool for the job.

4   64.   California active and retired officers legally purchased 7,600 banned assault weapons

5   through a legal exemption promulgated by the Attorney General

6   (http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-assault-weapo

7   ns-ill/), and now the municipalities are jumping on the bandwagon of carving rights and

8   privileges for only the chosen few (i.e. retired law enforcement).

9   http://www.washingtontimes.com/news/2015/dec/3/retired-lapd-cops-exempted-ban-high-ca

10   pacity-magaz/

11   65.   Given this mash of government laws and regulation, this action seeks to put an end to

12   government selecting who gets to exercise their rights under the Second Amendment.  This is

13   the equivalent of the government mandating which books the People can read to exercise

14   their First Amendment Rights.

15   66.   When it comes to self-defense, providing retired peace officers with superior rights to that of

16   ordinary law-abiding citizens does not further either an important or compelling state

17   interest, and more importantly, since law enforcement can only use reasonable force in

18   self-defense, then the hand-guns they use are presumptively the type of firearm protected by

19   the Second Amendment.

20   67.   Plaintiffs are seeking to enjoin the State of California and defendants from enforcing current

21   firearm statutes which infringe upon their constitutional rights as follows (which is clearly

22   stated in the SAC):

23         a.      To purchase off-roster handguns, which are legal under federal law.

24         b.      To possess and purchase standard size handgun and rifle magazines which most

25                 exceed 10 rounds,

26         c.      To travel interstate with magazines which contain more than 10 rounds of

27                 ammunition.

28         d.      To either be issued a lifetime CCW upon application at the same cost that retired

- 9 -

**Second Amended Complaint**

officers pay or be permitted to carry a weapon openly.

68.   The Second Amendment to the United States Constitution provides:

> A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

69.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

70.   The Second Amendment is incorporated to the states through the Fourteenth Amendment.

71.   The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

72.   Regulations infringing upon that right must meet heightened scrutiny.

73.   Defendants implement policy and enforce laws which militarize law enforcement agencies, arming them in such a manner that they are no longer a police force, but rather a standing army.

74.   The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

75.   By definition, criminals do not abide by the laws.

76.   Therefore, gun control legislation has only a minimal effect on a violent criminal's ability to obtain and use a firearm.

77.   Unlike California, the majority of the population of the United States are armed, and permitted to purchase, transport and carry commonly used handguns and rifles.

78.   Semi-Automatic firearms and large capacity ammunition magazines are banned in only five states: California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore) Massachusetts, New Jersey (Camden, Newark, Jersey City), New York (New York) and D.C. (Hawaii's ban applies only to such magazines used with handguns).

79.   As a result, these states also have the highest murder rates and crime ridden cities in the U.S.

80.   Residents of Washington, D.C., with the lowest private gun ownership rate in the country, are more than five (5) times more likely to be the victim of a violent crime as compared to residents of Wyoming, with the highest private gun ownership rate in the country.

**- 10 -**

**Second Amended Complaint**

81. In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period."

82. Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

83. The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

84. Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

85. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker.

86. Accordingly, Plaintiffs seeks declaratory and injunctive relief to enjoin Defendants' unconstitutional enforcement of defendants laws and policies.

87. California Penal Code section 25400 does not prohibit a citizen of the United States over 18 years of age who is in lawful possession of a handgun, and who resides or is temporarily in California, from transporting the handgun by motor vehicle provided it is unloaded and stored in a locked container . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

88. It is illegal for any person to carry a handgun concealed upon his or her person or concealed in a vehicle without a license issued pursuant to Penal Code section 26150 . (Pen . Code, § 25400)  A firearm locked in a motor vehicle's trunk or in a locked container carried in the vehicle other than in the utility or glove compartment is not considered concealed within the meaning of the Penal Code section 25400; neither is a firearm carried within a locked container directly to or from a motor vehicle for any lawful purpose . (Pen . Code, § 25610) As stated by Defendant HARRIS online.

89. It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place,

**- 11 -**

**Second Amended Complaint**

on any public street, or in any place where it is unlawful to discharge a firearm . (Pen . Code, § 25850, subd . (a))  As stated by Defendant HARRIS online.

90. Nonconcealable firearms (rifles and shotguns) are not generally covered within the provisions of California Penal Code section 25400 and therefore are not required to be transported in a locked container . However, as with any firearm, nonconcealable firearms must be unloaded while they are being transported . A rifle or shotgun that is defined as an assault weapon pursuant to Penal Code section 30510 or 30515 must be transported in accordance with Penal Code section 25610.  As stated by Defendant HARRIS online.

91. Peace officers and <u>honorably</u> retired peace officers having properly endorsed identification certificates <u>may carry a concealed weapon at any time</u>. Otherwise, these exemptions apply only when the firearm is carried within the scope of the exempted conduct, such as hunting or target shooting, or within the course and scope of assigned duties, such as an armored vehicle guard transporting money for his employer. A person who carries a loaded firearm outside the limits of the applicable exemption is in violation of the law, notwithstanding his or her possession of an occupational license or firearms training certificate. (Pen . Code, § 12031(b).)  As stated by Defendant HARRIS online.

92. AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic Partner of Peace Officer Killed in the Line of Duty: Provides an exception to the Unsafe Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of duty to purchase their spouse/domestic partner's service weapon and hi-capacity magazines. (Pen . Code, § 32000.)

93. This extends to ammunition, current authority for a city or county to impose a charge relating to the seizure, impounding, storage, or release of a firearm. (Pen . Code, § 33880).

94. Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are "typically used for lawful purposes" and are deemed presumptively reasonable as active duty and retired law enforcement are granted the rights and privileges to use them when applying reasonable force.

95. Widespread law enforcement use of a particular firearm, weapon or magazine, or edged

**Second Amended Complaint**

weapon proves that particular arms are common and typically used for lawful purposes, rather than "dangerous and unusual."

96.  Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

97.  Standard magazine bans are dangerous because they reduce typical defensive fire power. They shift risk of injury from violent aggressors to law-abiding innocents.

98.  Typically, in an officer shooting of an unarmed civilian, they discharge more than 10 rounds to stop a person.

99.  Commencing in the 1999 (the time after when most police switched to semi-automatic pistols from revolvers), there began a spike in the total number of rounds expended by police shooting innocent people.

100.  In 1999, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of his apartment in New York City.  He committed no crime and was unarmed.  The shooting death of an unarmed 23-year-old Guinean immigrant in New York City is anything but anomalous in today's America.

101.  A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on him following a high-speed chase down an area freeway. The same month, New York police fired at a suspected murderer 84 times.

102.  Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

103.  Officer Wilson shot Michael Brown in the back 12 times.
https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

104.  In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two separate incidents in the early morning hours of February 7, 2013, police fired on people who

**Second Amended Complaint**

turned out to be unrelated to Dorner and that Dorner (an African-American male) was not present at either incident and no firearms were involved in either incident (i.e. the police victims were unarmed).

https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidentifications

105. Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic females.  Remarkably, they survived.

106. Approximately 25 minutes after that incident, officers from the Torrance Police Department struck and opened fire on another vehicle.  Like the first shooting, the white male was unarmed and did not match the description of Dorner.  Over 30 bullets were fired at him.

107. Therefore, since HARRIS and the State of California have determined that discharging more than 10 rounds for purposes of self defense is a reasonable use of force by law enforcement, then the Second Amendment and 14th Amendment protects the rights of all citizens to posses magazines and firearms holding more than 10 rounds, and no more than 30, since the average magazine for all makes and models of firearms is between 11 to 30 rounds.

108. Defendant HARRIS has made her career pushing for more government control over the people of the State of California, and depriving them of their fundamental constitutional rights, privileges and immunities, especially those that the Framers of the Fourteenth Amendment sought to protect the most.

109. At the same time, HARRIS and the State of California have pushed for the militarization of the police state by exempting California Peace Officers (both active and retired) from the very same firearms and magazines prohibited to the rest of the population.

110. Defendant HARRIS has shown a blatant disregard of the rights of citizens to travel with firearms, which was one of the first and most important rights bestowed upon the newly freed slaves of the South after the civil war with the passage of the Fourteenth Amendment.

111. As historian Flack noted in *The Adoption of the Fourteenth Amendment* 7 (Johns Hopkins 1908),  written at a time when gun control was not a political issue seized by those in power

for political gain; the central theme throughout all the debates over the Fourteenth Amendment focused on the newly freed slaves rights to travel, vote, own property and possess and bear arms to enforce their rights when the government couldn't.  See also Antieau, *The Intended Significance of the Fourteenth Amendment* (Wm. Hein, Buffalo, N.Y. 1997), citing Royall, *The Fourteenth Amendment: The Slaughter House Cases*, 4 So. L. Rev. (N.S.) 558, 563 (1879).   [All of the authorities the Supreme Court's central holding in" *District of Columbia v. Heller*, 554 U. S. 570 (2008), was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald v. Chicago*, 561 U. S. 742, 780 (2010) (plurality opinion).  And in *McDonald*, the Supreme Court recognized that the Second Amendment applies fully against the States as well as the Federal Government.  *Id.*, at 750; id., at 805 (THOMAS, J., concurring in part and concurring in judgment).]

112. Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass and enforce laws resulting in categorical and constructive bans on firearms and attachments thereto that millions of Americans, veterans, and retired peace officers commonly own for lawful purposes, which then results in constructive ban on the right to travel.

113. Other than California, only six other states (which obviously include Connecticut, New York and New Jersey) have unconstitutional draconian firearms laws which no other state even remotely mandates, including limitations on the carrying or possession of specific weapons and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine bans).

114. Defendant HARRIS is the top ranking law enforcement official in the state of California, promulgating rules and regulations which deprived Plaintiff of right to keep and bear arms as protected under the Second Amendment, and enforced laws which deprived Plaintiff of his property rights in his firearms, and denied him equal protection of the law.

115. Plaintiffs seek an order which would enjoin defendants from enforcing laws which would not otherwise be enforced against them had they been active or retired peace officers, since

**Second Amended Complaint**

officers are afforded the full panoply of protections afforded by the Second Amendment, Fourth Amendment, and Equal Protection Clause as bestowed upon other government officials, such as retired peace officers, spouses of peace officers, retired correctional officers, and other members of the government.

116. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

   a.   Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

   b.   Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

   c.   Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are subjected to (this is especially important since it allows interstate travel with a loaded firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

   d.   If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

   e.   Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense, which they can keep even after their government service is terminated.

117. Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which:

   a.   Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

**Second Amended Complaint**

b.  Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

c.  Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

d.  Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon. Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

118.  Further, plaintiffs request a positive injunction to either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

119.  Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

120.  Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SECOND CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Unconstitutional Statute - Confiscation of Firearms)
(Injunctive and Declaratory Relief Only For Return of Firearms)

121.  Plaintiffs incorporate the above allegations as if set forth fully here.

122.  Penal Code Sections 18250-18275 allow law enforcement officers to confiscate firearms without any form of due process, even for false allegations of a crime being committed.

123.  Based upon information and belief, plaintiffs' firearms were illegally seized pursuant to this statutory section.  If another section was relied upon, then this challenge is to the offending statute.

124.  On January 1, 2005, the Law Enforcement Gun Release (LEGR) process became effective with the addition of Penal Code (PC) section 12021.3.

125.  This process requires any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned to submit a LEGR Application form for a determination by the California Department of Justice (the Department) as to whether he or she is eligible to possess a firearm.

**- 17 -**

126. Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s) that is in the custody or control of a court or law enforcement agency must submit a LEGR Application along with the appropriate fees to the Department.

127. Additionally, if an individual is seeking the return of a long gun purchased prior to January 1, 2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted along with the appropriate fees.

128. In violation of the Second Amendment, Defendant HARRIS and MUNICIPAL DEFENDANTS enforce a statutory scheme pursuant to Penal Code Section Penal Code Section 33850 (application for return of firearm), 33855 (authority of law enforcement to enforce), 33860, 33880 (fee),  requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application", and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

129. Both plaintiffs have had their firearms seized from their residences, without a warrant, without being charged, tried or convicted of a crime.

130. The firearms illegally seized have not been returned to plaintiffs.

131. By failing to immediately return plaintiffs firearms once it was determined that no crime had been committed, HARRIS has deprived plaintiffs of their ability to exercise their Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech.

132. Plaintiffs seek a positive injunction for HARRIS to release and return all firearms and ammunition illegally confiscated.

133. Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

134. Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**THIRD CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment**
(Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;

**- 18 -**

UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 only)
(Confiscation of Firearms and Knives)
(Declaratory, Injunctive and Monetary relief)

135.    Plaintiffs incorporate the above allegations as if set forth fully here.

136.    Only injunctive relief is sought against HARRIS.

137.    At all times, the law was well established as to the Second Amendment.

138.    Attached hereto as **Exhibit "A"** is a true and correct copy of the Sacramento Superior Court case docket noting the charge for PC 21310, carrying a concealed knife and a picture of the visible knife on the outside part of CUPP's leather vest.

139.    On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

140.    CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

141.    On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

142.    California Penal Code Section 21310 violates the Second Amendment, Privileges and Immunities Clause of the 14th Amendment.

**- 19 -**

**Second Amended Complaint**

143.   On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

144.   Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

145.   At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

146.   To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, $1,000.

147.   CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

148.   In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

149.   The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" was created by Defendant HARRIS in or around January 2012.

150.   On or about February 27, 2015, CUPP, through his attorney, filed a Claim for Damages (Tort

- 20 -

**Second Amended Complaint**

1    Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

2    151.   In addition, this Claim was also an internal affairs complaint.

3    152.   In a letter dated March 23, 2015 rejecting both CUPP's tort claim and demand for return of

4    his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an

5    unconstitutional law and creating a undue burden on CUPP.

6    153.   Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer

7    acting under color of law in both his individual and official capacities.

8    154.   Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of

9    Police, and as such is responsible for executing and administering the laws, customs,

10    practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this

11    action.

12    155.   Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant

13    CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42

14    U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this

15    action.

16    156.   Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official

17    capacities.

18    157.   Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

19    employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

20    HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

21    responsible for enforcing the code sections complained of in this action.

22    158.   Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

23    of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

24    used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

25    this action.

26    159.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

27    servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

28    CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. §

**- 21 -**

**Second Amended Complaint**

1983, and is responsible for enforcing the code sections complained of in this action.

160. UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

161. Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT have not been located, but they will be added to this complaint upon uncovering their names through discovery.

162. Plaintiff seeks monetary relief for being deprived of his right and property.

163. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

164. Plaintiff has been damaged according to proof.

165. HARRIS is named only for purposes of injunctive and declaratory relief only.

166. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**FOURTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Fourth Amendment**
(Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 only)
(Arrest, Confiscation of Firearms and Knives, without probable cause)
(Declaratory, Injunctive and Monetary relief)

167. Plaintiffs incorporate the above allegations as if set forth fully here.

168. The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

169. CUPP was arrested and his property confiscated without probable cause for carrying a concealed weapon, protected by the Second Amendment, and which was not concealed, but

- 22 -

_____

**Second Amended Complaint**

1    instead, carried in a sheath as all fixed blade knives are carried that way.

2    170.   Plaintiff seeks monetary relief for being deprived of his right and property.

3    171.   Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

4            property.

5    172.   Plaintiff has been damaged according to proof.

6    173.   HARRIS is named only for purposes of injunctive and declaratory relief only.

7    174.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**FIFTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Fifth Amendment**
(Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 only)
(Confiscation of Firearms and Knives, without due process)
(Declaratory, Injunctive and Monetary relief)

14   175.   Plaintiffs incorporate the above allegations as if set forth fully here.

15   176.   The Fifth Amendment guarantees that "due process of law" be part of any proceeding that

16           denies a citizen "life, liberty or property".

17   177.   CUPP was arrested and his property confiscated without due process for carrying a

18           concealed weapon, protected by the Second Amendment, and which was not concealed, but

19           instead, carried in a sheath as all fixed blade knives are carried that way.

20   178.   Plaintiff seeks monetary relief for being deprived of his right and property.

21   179.   Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

22           property.

23   180.   Plaintiff has been damaged according to proof.

24   181.   HARRIS is named only for purposes of injunctive and declaratory relief only.

25   182.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SIXTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment**
(Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE

- 23 -

BRUCKER, # 512;  only)
(Confiscation of Firearms)
(Declaratory, Injunctive and Monetary relief)

183.  Plaintiffs incorporate the above allegations as if set forth fully here.

184.  The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

185.  On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

186.  HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

187.  While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

188.  No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

189.  At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned.

190.  Plaintiff seeks monetary relief for being deprived of his right and property.

191.  Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

192.  Plaintiff has been damaged according to proof.

193.  HARRIS is named only for purposes of injunctive and declaratory relief only.

194.  Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SEVENTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Fourth Amendment**
(Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512;  only)
(Arrest, Confiscation of Firearms and Knives, without due process)

**- 24 -**

**Second Amended Complaint**

(Declaratory, Injunctive and Monetary relief)

195. Plaintiffs incorporate the above allegations as if set forth fully here.

196. The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

197. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

198. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

199. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

200. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

201. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned.

202. Plaintiff seeks monetary relief for being deprived of his right and property.

203. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

204. Plaintiff has been damaged according to proof.

205. HARRIS is named only for purposes of injunctive and declaratory relief only.

206. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**EIGHT CLAIM FOR RELIEF:**
**Fifth Amendment**
(Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512 only)

**Second Amended Complaint**

(Arrest, Confiscation of Firearms and Knives, without due process)
(Declaratory, Injunctive and Monetary relief)

207. Plaintiffs incorporate the above allegations as if set forth fully here.

208. The Fifth Amendment guarantees that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property". In this case, there was never a proceeding.

209. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, deprived HAVEN of his property without due process.

210. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

211. Plaintiff seeks monetary relief for being deprived of his right and property.

212. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

213. Plaintiff has been damaged according to proof.

214. HARRIS is named only for purposes of injunctive and declaratory relief only.

215. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**NINTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in
his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer
County Deputy HINTZE, # 101 only)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

216. Plaintiffs incorporate the above allegations as if set forth fully here.

217. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

218. P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

219. Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed

**- 26 -**

_____

**Second Amended Complaint**

against plaintiff, along with pictures of the purported "Slingshot", none of which could be mistaken for an illegal weapon.

220. Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the Peloponnesian Wars, man's weapon of choice was rock with a rope attached to it.

221. A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States.  It was a simple weapon, which itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the invention of gunpowder.

222. On February 8, 2016, deputies from the Placer County Sheriff's Department stopped Defendant HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse."

223. HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

224. Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession of a slungshot in violation of P.C. 12210.

225. A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

226. While arresting HAVEN, HINTZE and MASON made various threatened comments to HAVEN that he was a associated with outlaw motorcycle gangs by his appearance and various bumper stickers on his motorcycle.

227. No reasonable officer or person would deem a horse leash as an illegal weapon.

228. The deputies motive for arresting HAVEN was his personal appearance and his various stickers, both protected by the First Amendment.

229. Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

230. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN

**Second Amended Complaint**

was arraigned on the charges in the above-entitled court.

231. On or about March 21, 2016 the Supreme Court of the United States rendered its unanimous per curium opinion in *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078; decided March 21, 2016.  The holding of *Caetano* reiterated prior precedent and stated that the State's arguments for supporting draconian laws borders on the "frivolous", but yet, in 2016, California has only enhanced its draconian enforcement of arms of all types.

232. Prior to *Caetano*, the law was clearly established that the Second Amendment protects all "arms", and is not just applicable to firearms.

233. Plaintiff seeks monetary relief for being deprived of his right and property.

234. Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

235. Plaintiff has been damaged according to proof.

236. HARRIS is named only for purposes of injunctive and declaratory relief only.

237. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**TENTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Fourth Amendment**
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZE, # 101 only)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

238. Plaintiffs incorporate the above allegations as if set forth fully here.

239. The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

240. P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

241. Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed against plaintiff, along with pictures of the purported "Slungshot", none of which could be mistaken for an illegal weapon.

**- 28 -**

_____

**Second Amended Complaint**

242. No reasonable officer or person would deem a horse leash as an illegal weapon, and as such, defendants lacked probable cause to seize plaintiff and his property.

243. Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

244. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN was arraigned on the charges in the above-entitled court.

245. The Second Amendment protects all "arms", and is not just applicable to firearms.

246. Plaintiff seeks monetary relief for being deprived of his right and property.

247. Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

248. Plaintiff has been damaged according to proof.

249. HARRIS is named only for purposes of injunctive and declaratory relief only.

250. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

Section 1988.

**ELEVENTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Fifth Amendment**
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZE, # 101 only)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

251. Plaintiffs incorporate the above allegations as if set forth fully here.

252. The Fifth Amendment guarantees that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property".  In this case, there was never a proceeding as to the confiscation of the horse/dog leash.

253. P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

254. Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed against plaintiff, along with pictures of the purported "Slungshot", none of which could be mistaken for an illegal weapon.

255. No reasonable officer or person would deem a horse leash as an illegal weapon, and as such, defendants lacked probable cause to seize plaintiff and his property.

256. Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

257. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN was arraigned on the charges in the above-entitled court.

258. The Second Amendment protects all "arms", and is not just applicable to firearms.

259. Plaintiff seeks monetary relief for being deprived of his right and property.

260. Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

261. Plaintiff has been damaged according to proof.

262. HARRIS is named only for purposes of injunctive and declaratory relief only.

263. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**TWELFTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Open or Conceal Carry, Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

264. Plaintiffs incorporate the above allegations as if set forth fully here.

265. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

266. However, former government workers have expansive Second Amendment rights, while all others have their rights continuously being stripped with no end in sight.

267. Even active duty, part-time and retired Arson-Inspectors are included within the group of those who are not subject to the draconian laws of California.  See **Exhibit "C"** attached.

268. As stated in **Exhibit "D"**, law enforcement officers can purchase an unlimited amount of firearms, without restriction or limited to specific type of caliber or capacity, nor are they limited to the safe gun list, exercising their Second Amendment rights without any of the burdens placed the plaintiffs.

**- 30 -**

269. Plaintiffs are seeking to enjoin the HARRIS and the State of California and defendants from enforcing current firearm statutes which infringe upon their constitutional rights as follows:

    a.    To purchase off-roster handguns, which are legal under federal law.

    b.    To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

    c.    To travel interstate with magazines which contain more than 10 rounds of ammunition.

    d.    To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

270. Regulations infringing upon that right must meet heightened scrutiny.

271. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

272. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker, while at the same time law enforcement and retirees are permitted to pick and choose the weapon of choice to be used for self defense.

273. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

    a.    Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

    b.    Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

    c.    Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are

**Second Amended Complaint**

1   subjected to (this is especially important since it allows interstate travel with a loaded

2   firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

3       d.    If a peace officer is honorably retired, California law requires that the agency from

4   which he retired issue the officer an identification certificate containing an

5   endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

6       e.    Allows officers to purchase semi-automatic rifles not otherwise available to the

7   public for self defense, which they can keep even after their government service is

8   terminated.

9   274.   Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing

10   laws, rules and regulations which:

11       a.    Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are

12   legal under federal law.

13       b.    Limit plaintiffs' ability to possess, transport and purchase standard size handgun and

14   rifle magazines which most exceed 10 rounds, as these are basic parts to modern

15   operational and safe firearms.

16       c.    Limit plaintiffs' ability to travel interstate with magazines which contain more than

17   10 rounds of ammunition.

18       d.    Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon.

19   Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

20   275.   Further, plaintiffs request a positive injunction to either be issued a lifetime CCW upon

21   application at the same cost that retired officers pay or be permitted to carry a weapon

22   openly.

23   276.   Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

24   277.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

25   278.   As a direct and proximate result of Defendants' violation of Plaintiffs' Equal Protection

26   rights under the Fourteenth Amendment, Plaintiffs have suffered irreparable and immediate

27   harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and

28   2202.

**- 32 -**

1

2
**PRAYER FOR RELIEF**

3
WHEREFORE, Plaintiffs respectfully requests that judgment be entered in his favor and

4
against Defendants as follows:

5
1.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305,

6
32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Second

7
Amendment to the United States Constitution.

8
2.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305,

9
32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Second

10
Amendment to the United States Constitution.

11
3.) A declaration that Defendants' enforcement of California Penal Code section §§

12
16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et*

13
*al.* violates the Equal Protection Clause of the Fourteenth Amendment to the United States

14
Constitution.

15
4.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.

16
Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of

17
the Fourteenth Amendment to the United States Constitution.

18
5.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.

19
Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of

20
the Fourteenth Amendment to the United States Constitution.

21
6.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen.

22
Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of

23
the Fourteenth Amendment to the United States Constitution.

24
7.) A declaration that Defendants' enforcement of the Law Enforcement Officers

25
Safety Act violates the Equal Protection clause of the Fourteenth Amendment to the United States

26
Constitution.

27
8.) A declaration §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700,

28
26150-26225; Penal Code § 33850, *et al.* violates the Constitution and laws of the State of

**- 33 -**

California.

9.) A declaration C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Constitution and laws of the State of California.

10.) A declaration that Defendants application and enforcement of C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* violates Plaintiffs' right to travel guaranteed by both Article IV, Section 2 of the United States Constitution and the Privileges or Immunities clause of the Fourteenth Amendment.

11.) A declaration that Defendants application and enforcement of C.P.C. §§ 12050, *et al.* and 12025 violate Plaintiffs' right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

12.) An injunction permanently enjoining Defendants from enforcing C.P.C.§§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

13.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

14.) An order mandating that Defendants turn over all firearms and their accessories which were illegally seized by Defendants.

15.) Damages for deprivation of a rights, property, and privileges, and such other relief as this Court deems just and equitable, including general and specific damages.

Dated: August 15, 2016                    THE LAW OFFICES OF GARY W. GORSKI
                                          Respectfully Submitted,
                                          /s/ Gary W. Gorski
                                          Gary W. Gorski
                                          Attorney for Plaintiffs

**Second Amended Complaint**