PLACER COUNTY COUNSEL'S OFFICE
DAVID K. HUSKEY (SBN 109329)
175 Fulweiler Avenue
Auburn, California 95603
Telephone:    (530) 889-4044
Facsimile:    (530) 889-4069

Attorneys for Defendants COUNTY OF PLACER; EDWARD N. BONNER;
DEPUTY ERIC HINTZE; DEPUTY MICHAEL MASON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual,<br><br>Plaintiff;<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, #371; Citrus Heights Police Officer THOMAS LAMB #315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge #323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 3/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Sheriff Deputy Sheriff JESSE BRUCKER, #512; COUNTY OF PLACER; EDWARD N. BONNER; in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZ, #101.<br><br>Defendants. | No. 2:16-CV-00523-TLN-KJN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT [F.R.C.P. 12(b)(6)]**<br><br>Date:       November 17, 2016<br>Time:       2:00 p.m.<br>Courtroom: 2, 15th Floor<br>Judge:      Hon. Troy L. Nunley |

1

# INTRODUCTION

Pursuant to FRCP Rule 12(b)(6), individually named defendants, Placer County Sheriff's Deputies Mason and Hintze, move to dismiss plaintiff Haven's Ninth, Tenth, and Eleventh claims for relief in plaintiffs' Second Amended Complaint (SAC) for failure to state a claim because the facts alleged show that defendants are entitled to the qualified immunity of good faith. In those claims, plaintiff Haven appears to allege that defendants Mason and Hintze arrested him without probable cause in violation of his Fourth Amendment right to be free of illegal searches and seizures and/or took his property in violation of the Fifth Amendment. These moving defendants are not named in any other claims for relief pled in the SAC, and plaintiff Cupp has not stated any claims for relief against these moving defendants.

To the extent that the Ninth, Tenth, and Eleventh claims assert a *Monell* theory against the County of Placer and/or Sheriff Bonner in his official capacity, the County of Placer and Sheriff Bonner in his official capacity move to dismiss the Ninth, Tenth, and Eleventh claims for failure to allege facts that showing a custom, habit, or practice of allegedly unlawful arrests in violation of the Second Amendment for possession of slungshots – in fact, plaintiffs have alleged only one such arrest, that of Mr. Haven.

Defendant Sheriff Bonner, sued in his official capacity, moves to dismiss the Ninth, Tenth, and Eleventh Section 1983 claims seeking money damages against him because plaintiff has also named the County of Placer as a defendant, and the inclusion of Sheriff Bonner in his official capacity is therefore redundant, and the legal equivalent of naming the County of Placer twice. Sheriff Bonner is not named in any other claims for relief in the SAC.

Finally, deputies Mason and Hintze are not proper defendants for a Fifth Amendment claim for deprivation of private property without due process of law, since such claims address government action, not individual action. Therefore, the tenth claim for relief should be dismissed as to deputies Mason and Hintze.

//

//

# I

# FACTS ALLEGED PERTAINING TO

# THE ARREST OF MR. HAVEN

On or about February 8, 2016, Mr. Haven was riding his motorcycle with "an ornamental and common 'horse lead' (thick nylon rope with a metal quick release – identical to a dog leash but thicker.)" (Paragraphs 222 and 223 of complaint.) The officers' comments suggested that they believed that Mr. Haven was associated with outlaw motorcycle gangs. (Paragraph 226.) Mr. Haven does not allege that he had any horse, or dog, travelling with him for which he might use the "horse lead" in question. Mr. Haven suggests that he decorated his motorcycle with the "horse lead" for "ornamental" purposes. (Paragraph 223.) Exhibit B, the criminal complaint, alleges that Mr. Haven was initially pulled over for speeding. Mr. Haven alleges that he was stopped because of the "slungshot" / "horse lead." (Paragraph 222.) Either way, the complaint appears to contest the legitimacy of Mr. Haven's arrest for possession of the slungshot, not the legitimacy of the stop in the first instance.

# II

# APPLYING QUALIFIED IMMUNITY TO FOURTH

# AMENDMENT SEIZURE CASES

The qualified immunity of good faith "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. A peace officer is entitled to qualified immunity unless (1) the officer's conduct violated a constitutional right and (2) that right was clearly established at the time of the violation. *See id.* at 232. A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC

constitutional question beyond debate." *Id.* at 2093 (citation and quotation marks omitted). While there need not be a "case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), the plaintiff nonetheless "bears the burden of proving that the rights she claims were 'clearly established' at the time of the alleged violation." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197(1984)).  In short, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id*. at 966. "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)). The probable cause inquiry is objective, and focuses on the facts known to the officer at the scene. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)  As stated in *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006), "If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it."

Where the issue is an arrest based on the enforcement of an allegedly unconstitutional statute, qualified immunity protects the officer from a civil lawsuit where the law is not so obviously unconstitutional as to require a reasonable officer not to enforce it.  As stated in *Grossman v. Portland*, 33 F. 3d 1200, 1210 (9th Cir. 1994), "where a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional."

//

//

## III

## DEPUTIES MASON AND HINTZE ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE ARREST OF MR. HAVEN

Deputies Mason and Hintze arrested Mr. Haven for possession of a "slungshot" in violation of California Penal Code Section 22210, which states in pertinent part, ". . . any person . . . who . . . possesses . . . any leaded cane, or any instrument of weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot, is punishable by imprisonment in a county jail not exceeding one year . . . ." As described in the complaint, a "slungshot" is a weapon comprised of a weight on a strap that can be swung at a person to cause serious bodily harm. (See Paragraphs 220 and 221 of the FAC.)

Under California law, common objects that are not illegal can be considered "slungshots" if carried for use as a weapon. See *People v. Fannin*, 91 Cal App. 4th 1399, 1401-1405 (2001). In *Fannin*, the defendant admitted that his chain and lock, both legal items to possess, were for self-defense, and the Court therefore upheld his conviction for possession of a slungshot. *Id*. at 1405-1406. Thus, the fact that Mr. Haven's "horse lead" is sold for the purpose of leading horses and large dogs does not mean that the officers lacked probable cause to arrest him. Mr. Haven's intent in possessing the "horse lead," whether for ornamental purposes or for self-defense, determines the legality of his possession of that "horse lead" under the case law interpreting California Penal Code Section 22210 and its predecessor statute. *Id.*

If on February 8, 2015, an objectively reasonable officer in the position of Deputies Mason and Hintze could have believed that Mr. Haven was carrying the "horse lead" on the handlebars of his motorcycle for purposes of self-defense, then Deputies Mason and Hintze are entitled to qualified immunity from Mr. Haven's Fourth Amendment unreasonable seizure claims. The photographs show that the "horse lead" has the heft to cause serious physical injury if vigorously swung at the head or body of another person. Plaintiff's challenge to the statute (Penal Code Section 22210 erroneously referred to as Penal Code Section 12210 in the SAC) belies the assertion that the "horse lead" was attached to the handlebars of his motorcycle merely for

1  decoration.  Plaintiff alleges that the statute unlawfully "interferes with the right to possess non-
2  lethal weapons for purposes of self-defense."  (Paragraph 218 of the SAC.)  Plaintiff further
3  alleges that the "horse lead" was attached to the handle bars by a quick release mechanism, and it
4  is reasonable to assume that easy access facilitates its potential for use as weapon.  (Paragraphs 32
5  and 233 of the FAC).

6  Plaintiff cites the case of *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016) in
7  support of his argument that the deputies should have known that Penal Code Section 22210
8  violated the Fourth Amendment.[1]  Defendants note that the *Caetano* case was decided one month
9  *after* plaintiff's February 8, 2016 arrest, and so could not have provided defendants Mason and
10 Hintze guidance about the constitutionality of the statute in question.  Whether or not plaintiff
11 may ultimately prevail on his Second Amendment challenge to the statute, the law was not
12 "clearly established" on February 8, 2016 that Penal Code Section 22210 was unconstitutional.
13 Objectively reasonable officers in the position of Deputies Mason and Hintze could have believed
14 that Mr. Haven possessed the "horse lead" for use as a slungshot in self-defense; therefore, they
15 are entitled to qualified immunity from Mr. Haven's Section 1983 claim that his February 8, 2016
16 arrest was an unlawful seizure in violation of the Fourth Amendment.

17 The *Caetano* decision reemphasized the prior Supreme Court decision in *District of*
18 *Columbia v. Heller* 544 U.S. 570, 592 (2008) that weapons (a stun gun in *Caetano*) do not lose
19 Second Amendment protection because they did not exist at the time that the Second Amendment
20 was enacted.  *Caetano*, 136 U.S. at 1030-1031.  The Court in *Caetano* also rejected the argument
21 that stun guns were both dangerous and unusual; i.e., the type of weapon that can still be
22 restricted following *Heller*.  *Caetano*, 136 U.S. at 1031.  According to *Heller*, 554 U.S. at 625,
23 the Second Amendment does not protect those weapons not "typically possessed by law-abiding
24 citizens for lawful purposes, such as sawed off shotguns."  The courts are currently sorting out the
25 types of weapons that may still be illegal following *Heller* because they are not the type of

---

[1] The case of *McDonald v. City of Chicago*, 561, U.S. 742, 748 (2010) held that the Second Amendment right to keep and bear arms in self-defense is applicable to the states through incorporation by the Fourteenth Amendment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC

weapons commonly used for lawful purposes. For example, the Eastern District of New York is considering whether or not "nunchaku" are a weapon "commonly used for lawful purposes" and therefore potentially illegal following *Heller*. See *Malony v. Singas*, 2016 U.S. Dist. LEXIS 80749 (Eastern Dist. N. Y. April 15, 2016).

In *Peruta v. City of San Diego*, 824 F.3d 919, 937 -938 (9th Cir. 2016) (en banc), the Ninth Circuit canvassed state laws similar to California Penal Code Section 22210 which criminalizes the possession of weapons not ordinarily used by law abiding citizens, and the enumerated unusual weapons include "slungshots." While *Peruta* addressed the question of whether carrying concealed weapons was protected by the Second Amendment, and concluded that the Second Amendment does not protect the concealed carrying of weapons (*Peruta*, 824 F.3d at 939), and did not specifically address the question of the types of weapons commonly used by law abiding citizens for self-defense outside of the context of concealed carry, its canvassing of the history of laws pertaining to the prohibition of weapons shows a long-standing tradition of prohibiting the weapons associated with criminals and assassins; i.e. brass knuckles, billy clubs, saps, and slungshots. *Peruta,* 824 F.3d at 937-938.

Defendants have not found any case or cases that "clearly establish," as of the February 8, 2016 date of Mr. Haven's arrest, that the possession of weapons in the category of "slungshots" is protected by the Second Amendment, and/or that laws such as Penal Code Section 22210 making possession of slungshots illegal violate the Second Amendment. Indeed, when they arrested Mr. Haven on February 8, 2016, deputies Mason and Hintze were merely enforcing statutory law that had not been repealed or invalidated by judicial decision. Therefore, they are entitled to qualified immunity and should be dismissed from plaintiff's lawsuit.

## IV

## PLAINTIFFS HAVE NOT PLED FACTS SUPPORTING A *MONELL* CLAIM FOR MONEY DAMAGES

It is unclear to defendants whether or not Mr. Haven is making a *Monell* claim for money damages arising out of his arrest by deputies Mason and Hintze against defendants County of

Placer and/or Sheriff Bonner in his official capacity.  Nonetheless, the facts alleged cannot support such a *Monell* claim arising from Mr. Haven's arrest.

Public entities are not liable through *respondeat superior* for the alleged constitutional torts of its employees.  *City of St. Louis v. Propotnik*, 485 US 112, 126 (1988).  As stated in *Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992), there are three ways to establish a *Monell* claim directly against a county:

> First, the plaintiff may prove that [an] . . . employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or customwhich constitutes the 'standard operating procedure' of the local governmental entity.'" [Citations omitted.]  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. [Citations omitted.]  . . . . Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  [Citations omitted.]"

Plaintiff has not alleged any custom, practice, or established policy of treating "horse leads" as slungshots on the part of Placer County, but has alleged only a single event where he was riding his motorcycle through Placer County with his "horse lead" attached to the handlebars of his motorcycle that resulted in his arrest by deputies Mason and Hintze.  A single arrest does not suggest a custom, practice, or policy on the part of the County of Placer.  See *Hunter v. County of Sacramento,* 652 F. 3d 1225, 1233 (9th Cir. 2011)

Clearly, deputies Mason and Hintze do not have the authority to be considered policymakers for the County of Placer.  See discussion in *Moore v. County of LA*, 2012 US Dist. LEXIS 115193, at 9-11 (Central Dist. CA, 2012).  While Sheriff Bonner is a policymaker for the County of Placer, plaintiff has not alleged that Sheriff Bonner was either directly involved or that he made "a conscious, affirmative choice" with respect to any aspect of Mr. Haven's arrest. *Gillette*, *supra*, 979 at 1347, see also *Larez v. City of LA*, 946 F.2d 630, 647-648 (9th Cir. 1991) for an example of the type of evidence necessary to support a "ratification" by a policymaker theory for *Monell* liability.

8

# V

## SHERIFF BONNER IS A REDUNDANT DEFENDANT

## WHO SHOULD BE DISMISSED

Even if a *Monell* claim were properly alleged in the SAC, plaintiffs should not be permitted to name both Sheriff Bonner in his official capacity and the County of Placer as defendants. A suit alleging constitutional torts pursuant to 42 U.S.C. Section 1983 brought against Sheriff Bonner in his official capacity is the same as a suit against the County of Placer; therefore, Sheriff Bonner should be dismissed as a redundant defendant.

The case of *Burns v. City of Concord*, 2014 U.S. Dist. LEXIS 158119, 38-40 (N.D. Cal. Nov. 6, 2014) summarizes the case law on this issue as follows:

> Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The U.S. Supreme Court has further explained:
>
>> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.
>
> *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citations omitted).
>
> An official capacity action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099, 87 L.Ed.2d 114. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008).
>
> Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98

S.Ct. 2018, 56 L.Ed.2d 611. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal.1997) (citing *Vance*, 928 F. Supp. at 996). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir.2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F. Supp. at 204. As the district court in *Luke*, 954 F. Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

*Arres v. City of Fresno*, No. CV F 10-1628 LJO SMS, 2011 U.S. Dist. LEXIS 10425, 2011 WL 284971, at 5-6 (E.D. Cal. Jan. 26, 2011) (dismissing claims against government officials who were named in their official capacities in light of the claims against the entities they worked for).

Based on the foregoing, Defendant Sheriff Bonner, sued in his official capacity, respectfully requests that he be dismissed from this case because his inclusion is redundant. *Id.*

/ /

/ /

/ /

/ /

/ /

/ /

/ /

10

# VI

## DEPUTIES MASON AND HINTZE CANNOT BE LIABLE

## FOR THE ALLEGED DEPRIVATION OF

## MR. HAVEN'S HORSE LEAD

In his eleventh claim for relief, Mr. Haven alleges that he was deprived of property without due process in violation of the Fifth Amendment, the property being his "horse lead." The takings clause of the Fifth Amendment states, "Nor shall property be taken for public use, without just compensation." As noted above, qualified immunity should protect Deputies Mason and Hintze from liability for taking the "horse lead" and booking it into evidence. As to the alleged failure to return the "horse lead" to Mr. Haven once the prosecution was dismissed, and the theory that such failure was a taking of private property without due process, such a theory can only be maintained against the government, not an individual. A physical taking occurs when the government injures private property. See *Levald, Inc. v. City of Palm Desert*, 998 F.2d 689, 684 (9th Cir. 1993). The claim for such constitutional deprivation is against the government, not against individual government actors. See *id*. Therefore, Mr. Haven's eleventh claim for relief should be dismissed against defendants Mason and Hintze.

## CONCLUSION

Because the facts alleged show that objectively reasonable officers in the position of Deputies Mason and Hintze could have believed that Mr. Haven intended to use his "horse lead" for violent purposes rather than for decoration, the defendant deputies are entitled to qualified immunity, and the claims against them (Nos. 9, 10, and 11) should be dismissed. In addition, plaintiff has not alleged sufficient facts to support a *Monell* claim for money damages against either the County of Placer or Sheriff Edward Bonner in his official capacity. Therefore, to the extent that suing the County of Placer and Sheriff Bonner in his official capacity for money damages under 42 U.S.C. Section 1983 implies an effort to allege *Monell* claims, those *Monell* claims should be dismissed as well (Claim nos. 9, 10, and11). Furthermore, it is improper to name both the County of Placer and Sheriff Bonner in his official capacity in a *Monell* claim for

money damages; therefore, Sheriff Bonner should be dismissed from any such claims contained in plaintiff's claim nos.9, 10, and 11.  Finally, Fifth Amendment claims for deprivation of private property without due process of law are claims against the government, not individuals; therefore, the eleventh claim should be dismissed as to deputies Mason and Hintze.

                                      Respectfully submitted,

DATED: September 30, 2016        PLACER COUNTY COUNSEL'S OFFICE

By:   /s/ DAVID K. HUSKEY
       DAVID K. HUSKEY
       Attorneys for COUNTY OF PLACER,
       SHERIFF EDWARD N. BONNER,
       DEPUTY MASON, DEPUTY HINTZE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SAC