1    KAMALA D. HARRIS, State Bar No. 146672
     Attorney General of California
2    MARC A. LEFORESTIER, State Bar No. 178188
     Supervising Deputy Attorney General
3    KEVIN A. CALIA, State Bar No. 227406
     Deputy Attorney General
4      1300 I Street, Suite 125
       P.O. Box 944255
5      Sacramento, CA 94244-2550
       Telephone:  (916) 322-6114
6      Fax:  (916) 324-8835
       E-mail:  Kevin.Calia@doj.ca.gov
7    *Attorneys for Defendant*
     *Attorney General Kamala D. Harris*

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| 11 | | |
|----|---|---|
| 12 | JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual, | 2:16-cv-00523-TLN-KJN |
| 13 | Plaintiffs, | |
| 14 | v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 15 | KAMALA D. HARRIS Attorney General of the State of California, in her official capacity | **DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S MOTION TO** |
| 16 | only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief | **DISMISS** |
| 17 | CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights | Date:        November 17, 2016 |
| 18 | Police Officer CHRISTIAN BAERRESEN, #371; Citrus Heights Police Officer THOMAS | Time:        2:00 p.m. Dept:        2 |
| 19 | LAMB, #315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number | Judge:       Hon. Troy L. Nunley |
| 20 | 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report | Action Filed:  3/11/2016 |
| 21 | Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF | |
| 22 | THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF | |
| 23 | SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of | |
| 24 | Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, #512; COUNTY OF | |
| 25 | PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; | |
| 26 | Placer County Deputy MASON, #181; Placer County Deputy HINTZE, #101, | |
| 27 | Defendants. | |
| 28 | | |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................................... 1

Legal and Factual Background .......................................................................................... 2

    I.     Plaintiffs' Allegations ......................................................................................... 2

    II.    California's Laws Relating to Carrying Firearms in Public ................................. 3

Legal Standards ................................................................................................................. 4

Argument .......................................................................................................................... 5

    I.     The Complaint Fails to Comply with Rule 8. ..................................................... 5

    II.    Plaintiffs Lack Standing to Challenge the Firearms Regulations at Issue ............. 7

    III.   Sovereign Immunity Bars Plaintiffs' Fourth Amendment and Fifth
          Amendment Claims Against Attorney General Harris. .......................................... 9

    IV.   Plaintiffs' Second Amendment Claims Should be Dismissed for Failure to
          State a Claim Under Rule 12(b)(6). .................................................................... 11

          A.    Large-Capacity Magazines ................................................................ 13

          B.    Unsafe Handgun Act ......................................................................... 14

          C.    Law Enforcement Gun Release Process ............................................ 14

          D.    Slungshot ........................................................................................... 15

    V.    Plaintiffs' Equal Protection Claim Should be Dismissed for Failure to State
          a Claim Under Rule 12(b)(6). ............................................................................ 16

          A.    Plaintiffs' Equal Protection Claims Are Subsumed By Their Second
                Amendment Claims ............................................................................ 16

          B.    Plaintiffs Do Not Allege a Group that Is Similarly Situated to
                Active or Honorably Retired Peace Officers. ..................................... 16

          C.    The Challenged Exemptions for Peace Officers Satisfy Rational
                Basis Scrutiny. .................................................................................. 18

Conclusion ...................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page**

C ASES

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................................................4

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) .....................................................................................5

*Bauer v. Harris*
    94 F. Supp. 3d 1149, 1155 (E.D. Cal. 2015) ...........................................................15

*Cervantes v. Countrywide Home Loans, Inc.*
    656 F.3d 1034 (9th Cir. 2011) ...................................................................................5

*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010) ...................................................................................5

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
    473 U.S. 432 (1985) ............................................................................................16, 18

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ................................................................................................7, 9

*Clapper v. Amnesty Int'l USA*
    133 S.Ct. 1138 (2013) .................................................................................................7

*Coal. to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012) ............................................................................10, 11

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ....................................................................................12, 15, 17

*Epstein v. Wash. Energy Co.*
    83 F.3d 1136 (9th Cir. 1996) .....................................................................................5

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995) ...................................................................................17

*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015) ......................................................................12, 13, 15

*Heller v. Doe*
    509 U.S. 312 (1993) ..................................................................................................18

*Hodgers-Durgin v. De la Vina*
    199 F.3d 1037 (9th Cir. 1999) ...................................................................................9

# TABLE OF AUTHORITIES
### (continued)

Page

*Jackson v. City & County of San Francisco*
746 F.3d 953 (9th Cir. 2014)..................................................................12

*Kwong v. Bloomberg*
723 F.3d 160 (2d Cir. 2013)...................................................................15

*Los Angeles County Bar Ass'n v. Eu*
979 F.2d 697 (9th Cir. 1992)..................................................................10

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)............................................................................7, 8

*McHenry v. Renne*
84 F.3d 1172 (9th Cir. 1996)............................................................5, 6, 7

*Merrifield v. Lockyer*
547 F.3d 978 (9th Cir. 2008)..................................................................18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
540 F.3d 1049 (9th Cir. 2008)..................................................................5

*N. Star Int'l v. Ariz. Corp. Comm'n*
720 F.2d 578 (9th Cir. 1983)....................................................................5

*Nichols v. Brown*
No. CV 11-09916 SJO (SS), 2013 WL 3368922 (C.D. Cal. July 3, 2013) .......18, 19

*Nordlinger v. Hahn*
505 U.S. 1 (1992)..................................................................................18

*Nordyke v. King*
681 F.3d 1041 (9th Cir. 2012)................................................................18

*Peña v. Lindley*
No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684 (E.D. Cal. Feb. 26, 2015)...................4, 14

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984)............................................................................9, 10

*People v. Fannin*
91 Cal. App. 4th 1399 (2001)..................................................................15

*Peruta v. County of San Diego*
824 F.3d 919, 942 (9th Cir. 2016)......................................................11, 15

**TABLE OF AUTHORITIES**
(continued)

Page

*Peterson v. Farrow*
  No. 2:15-CV-00801-JAM-EFB, 2016 WL 3653441 (E.D. Cal. July 8, 2016) ........................20

*Quern v. Jordan*
  440 U.S. 332 (1979) ..............................................................................................................10

*Rosenbaum v. City and County of San Francisco*
  484 F.3d 1142 (9th Cir. 2007) ...............................................................................................17

*S. Pac. Transp. Co. v. City of Los Angeles*
  922 F.2d 498 (9th Cir. 1990) ..................................................................................................10

*San Diego County Gun Rights Comm. v. Reno*
  98 F.3d 1121 (9th Cir. 1996) ...............................................................................................7, 8

*Silveira v. Lockyer*
  312 F.3d 1052 (9th Cir. 2002) .........................................................................................17, 19

*Snoeck v. Brussa*
  153 F.3d 984 (9th Cir. 1998) ..................................................................................................10

*Teixeira v. County of Alameda*
  822 F.3d 1047 (9th Cir. 2016) .........................................................................................16, 18

*Thomas v. Anchorage Equal Rights Comm'n*
  220 F.3d 1134 (9th Cir. 2000) ..........................................................................................7, 8, 9

*United States v. Chovan*
  735 F.3d 1127 (9th Cir. 2013) .........................................................................................11, 12

*United States v. Henry*
  688 F.3d 637 (9th Cir. 2012) ..................................................................................................15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
  454 U.S. 464 (1982) .................................................................................................................7

*W. Mining Council v. Watt*
  643 F.2d 618 (9th Cir. 1981) ....................................................................................................5

*Wilson v. Lynch*
  No. 14-15700, 2016 WL 4537376 (9th Cir. Aug. 31, 2016) ..............................................8, 12

*Wolfson v. Brammer*
  616 F.3d 1045 (9th Cir. 2010) ..................................................................................................9

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Ex parte Young*
  209 U.S. 123 (1908)...............................................................................10

4

5

**STATUTES**

6

California Penal Code
  § 16640.......................................................................................3
  § 17030.......................................................................................3

7

  § 22210......................................................................................15

8

  § 25400.......................................................................................3
  § 25450.......................................................................................3

9

  § 25505.......................................................................................4
  § 25525.......................................................................................4

10

  § 25605.......................................................................................4
  § 25610.......................................................................................4

11

  § 25620.......................................................................................3

12

  § 25630.......................................................................................3
  § 25640.......................................................................................3

13

  § 25650.......................................................................................3
  § 25850.......................................................................................3

14

  § 25900.......................................................................................3
  § 26030.......................................................................................3

15

  § 26045.......................................................................................4

16

  § 26150.......................................................................................4
  § 26155.......................................................................................4

17

  § 26160.......................................................................................4
  § 26350.......................................................................................3

18

  § 26400.......................................................................................3

19

  § 26405.......................................................................................3
  § 29900......................................................................................14

20

  § 31900.......................................................................................4
  § 31910.......................................................................................4

21

  § 32000......................................................................................14
  § 32015.......................................................................................4

22

  § 32310......................................................................................13

23

  § 33850..................................................................................3, 14

24

California Welfare & Institutions Code
  § 8103.......................................................................................14

25

26

27

28

# TABLE OF AUTHORITIES
**(continued)**

Page

**RULES**

Federal Rules of Civil Procedure
    Rule 8 ............................................................................................................1, 5, 6
    Rule 12(b)(1).........................................................................................................5
    Rule 12(b)(6).........................................................................................................5

Memorandum of Points and Authorities in Support of
Attorney General's Motion to Dismiss (2:16-cv-00523-TLN-KJN)

**INTRODUCTION**

Amidst numerous irrelevant or indecipherable allegations, the Second Amended Complaint for Monetary Damages, Declaratory and Injunctive Relief ("Complaint" or "Compl.") purports to assert twelve causes of action.  Plaintiffs James Edward Cupp and Lawrence "Wolf" Haven bring constitutional challenges under the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment seeking to challenge multiple, separate statutory schemes dealing with a variety of unrelated firearms regulation issues (*e.g.*, unsafe handguns, concealed-carry permits, large-capacity magazines, and assault weapons).  In addition, plaintiffs attempt to bring claims under the Second Amendment, Fourth Amendment, and Fifth Amendment against California Attorney General Kamala D. Harris and various law enforcement officers and agencies from the City of Citrus Heights, Sacramento County, and Placer County arising from three separate incidents involving arrests, searches, or seizures of weapons.

As explained below, the Court should dismiss the claims against the Attorney General for multiple, separate reasons.  First, the entire Complaint should be dismissed under Federal Rule of Civil Procedure 8 because it fails to provide simple, concise, and direct allegations setting forth who is being sued, for what relief, and on what theory.  Second, to the extent that plaintiffs challenge various California Penal Code sections regulating firearms, plaintiffs have failed allege a concrete plan to violate any of those laws.  Thus, they are unable to establish standing to bring a pre-enforcement challenge to those laws.  Third, plaintiffs' Fourth and Fifth Amendment claims are not supported by any allegations to show that the Attorney General was involved in the challenged arrest, searches, or seizures.  Without such allegations, the Attorney General is entitled to sovereign immunity and plaintiffs cannot state a plausible claim against the Attorney General based on her general duty to enforce state law.  Fourth, plaintiffs' Second Amendment challenges do not state a claim for which relief may be granted, because the challenged firearm regulations do not run afoul of the Second Amendment.  Fifth, plaintiffs cannot state a cognizable equal protection claim by repackaging their Second Amendment claims, and, in any event, the challenged exemptions from firearms regulations that apply to active or retired peace officers pass rational basis scrutiny.

1

**LEGAL AND FACTUAL BACKGROUND**

**I.   PLAINTIFFS' ALLEGATIONS**

Plaintiffs are two unrelated individuals, James Edward Cupp and Lawrence "Wolf" Haven. Cupp is a resident of South Dakota who sometimes travels to California, including to visit his mother or friends.  (Compl. ¶¶ 6, 22, 24.)  Haven is a resident of Sacramento County.  (Compl. ¶ 25.)  Plaintiffs assert twelve causes of action purportedly brought against Attorney General Kamala D. Harris under the Second Amendment, Fourth Amendment, Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

Plaintiffs frame their Second Amendment and Equal Protection Clause claims (the first and twelfth claims for relief) as a "constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code, §§ 26950, 27650)" that allegedly results in a "**massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers**" because current and former peace officers are exempted from some parts of California's firearms regulations. (Compl. ¶¶ 116, 273.) Plaintiffs say "this action seeks to put an end to government selecting who gets to exercise their rights under the Second Amendment."  (Compl. ¶ 65.) Plaintiffs thus request injunctive and declaratory relief which would grant them the same type of exemptions from California law as active or retired peace officers.  (Compl. ¶¶ 117, 274.)

In addition to these broad challenges to California's firearms regulation, plaintiffs purport to assert claims against the Attorney General and various law enforcement officers and agencies from the City of Citrus Heights, Sacramento County, and Placer County.  These claims arise from three separate incidents.  First, Cupp sues about his arrest by Citrus Heights police officers on or about March 25, 2014, on a charge of carrying a concealed knife, and a search of his "temporary residence without a warrant" later that day.  (Compl. ¶¶ 139-141.)  The case against Cupp was dismissed by the district attorney two months later.  (Compl. ¶ 143.)  Second, Haven sues about his arrest by a Placer County sheriff's deputy on February 8, 2014, on a charge of illegally possessing a slungshot (a metal weight attached to a flexible handle for use as a weapon).

2

(Compl. ¶¶ 222-230.)  Third, Haven sues about the alleged seizure of his property by a Sacramento County sheriff's deputy on February 14, 2016.  (Compl. ¶¶ 185-187.)

Each plaintiff brings claims under the Second Amendment, Fourth Amendment, and Fifth Amendment related to each incident (the third through eleventh claims for relief).  Local authorities have allegedly refused to return firearms that were seized from plaintiffs because plaintiffs have refused to complete the Law Enforcement Gun Release application that is required by California Penal Code section 33850.  (Compl. ¶¶ 124-126, 128, 148-149, 152, 189.)  This required form was allegedly created by Attorney General Harris in or around January 2012.  (Compl. ¶ 149.)  Thus, plaintiffs allege that the refusal to return their firearms is "[a]t the direction of state law and HARRIS."  (Compl. ¶¶ 54, 189, 201, 210.)  Plaintiffs appear to seek injunctive relief that would require the return of their firearms without completing the form or paying the fee required by the California Penal Code (in the second, third, and sixth claim for relief).  (Compl. ¶¶ 132, 163, 191.)

## II.   CALIFORNIA'S LAWS RELATING TO CARRYING FIREARMS IN PUBLIC

California law generally prohibits the carrying of loaded firearms and unloaded handguns,[1] whether open or concealed, in public places in incorporated cities and in unincorporated areas where discharging a firearm is prohibited.  Cal. Penal Code §§ 25400, 25850, 26350, 17030.  California law also generally prohibits the carrying of unloaded firearms that are not handguns in public places in incorporated cities.  *Id*. § 26400.

There are exceptions to these prohibitions for persons holding particular types of positions, such as peace officers, military personnel, and persons in private security.  Cal. Penal Code, §§ 25450, 25620, 25630, 25650, 25900, 26030, 26405.  There are also exceptions for persons engaged in particular activities, such as hunting.  *Id*. §§ 25640, 26405.  And, unloaded firearms that are not handguns may be carried openly in unincorporated areas.  *Id*. § 26400.

Notwithstanding the general prohibition on carrying a handgun on the person, a California resident who is over 18 (and not prohibited from possessing a firearm) may keep a loaded

---

[1] Handguns are firearms that are capable of being concealed on a person.  Cal. Penal Code § 16640.  Handguns are thus a subset of firearms.

3

1   handgun in his or her home or business, and transport the gun in a vehicle provided it is unloaded

2   and in a locked container.  Cal. Penal Code, §§ 25505, 25525, 25605, 25610.  Under appropriate

3   circumstances, an individual may carry a loaded firearm when he or she reasonably believes that

4   any person or the property of any person is in immediate, grave danger and that the carrying of

5   the weapon is necessary for the preservation of that person or property.  *Id.* § 26045.

6       In addition, California law recognizes that some persons, based on their particular

7   circumstances, may have a need to carry a concealed weapon for self-defense.  California law

8   therefore also permits any resident of good moral character to seek a permit to carry a concealed

9   handgun, even in an urban or residential area, for "[g]ood cause."  Cal. Penal Code, §§ 26150,

10   26155.  Local licensing authorities (generally, county sheriffs or city police chiefs) have the

11   authority to make determinations concerning what constitutes "good cause" for obtaining a permit

12   to carry a concealed weapon.  *Id.* §§ 26150, 26155, 26160.  In counties with a population of less

13   than 200,000 persons, local licensing authorities may issue a license to carry a handgun in a

14   loaded and exposed manner, in that county only.  *Id.* §§ 26150, 26155.

15       Plaintiffs seek injunctive and declaratory relief against the Attorney General that would

16   grant them exemptions to these laws for which they would not otherwise qualify.  (Compl. ¶¶ 117,

17   274.)  In addition, plaintiffs seek injunctive and declaratory relief that would allow them to

18   possess, transport, and purchase magazines that contain more than 10 rounds and to "keep, bear,

19   and travel with" handguns that are not listed on California's roster of handguns authorized for

20   sale in California.[2]  (Compl. ¶¶ 117, 274.)

21                          **LEGAL STANDARDS**

22       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

23   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

---

24       [2] California's Unsafe Handgun Act is a penal statute that prohibits the manufacture, sale,
gifting, or lending of handguns in California if they do not meet certain requirements.  *Peña v.*
25   *Lindley*, No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684, at *1 (E.D. Cal. Feb. 26, 2015).
"Unsafe handguns" are those revolvers or semiautomatic pistols that are not listed on a roster of
26   handguns that have been subject to independent laboratory testing and certification by the
California Department of Justice as "determined not to be unsafe."  *Id.* at *1-2; Cal. Penal Code
27   §§ 31900, 31910, 32015(a).  The Complaint sometimes refers to guns not listed on the roster as
"off-roster" handguns.  (Compl. ¶¶ 67, 116, 117, 269, 273, 274.)
28

4

1   662, 678 (2009) (citations and quotations omitted).

2       Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a claim for lack of

3   subject-matter jurisdiction.  The court's "[r]eview is limited to the complaint, materials

4   incorporated into the complaint by reference, and matters of which the court may take judicial

5   notice." *See, e.g., Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.

6   2008).  Although the court must accept the allegations of the complaint as true, the burden of

7   proof is on the party asserting federal subject-matter jurisdiction.  *See Chandler v. State Farm*

8   *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  The court need not accept as true

9   unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in

10  the form of factual allegations.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

11      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

12  sufficiency of the claims in the complaint.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

13  581 (9th Cir. 1983).  Dismissal of the complaint or of any claim within it "can be based on the

14  lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

15  legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

16  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

17  dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.

18  1996) (citation omitted).

19      Dismissal without leave to amend is appropriate when deficiencies in the complaint could

20  not possibly be cured by amendment.  *See, e.g., Cervantes v. Countrywide Home Loans, Inc.*, 656

21  F.3d 1034, 1041 (9th Cir. 2011).

22                          **ARGUMENT**

23  I.   THE COMPLAINT FAILS TO COMPLY WITH RULE 8.

24      Federal Rule of Civil Procedure 8(d)(1) requires that "each averment of a pleading shall be

25  simple, concise, and direct."  To comply with Rule 8, a complaint should clearly and fully set

26  forth "who is being sued, for what relief, and on what theory, with enough detail to guide

27  discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996).  Even if the factual

28  elements of a cause of action are present, but are scattered throughout the complaint and are not

5

1    organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule

2    8(a)(2) is proper.  *Id.* at 1178.  Further, "[t]he propriety of dismissal for failure to comply with

3    Rule 8 does not depend on whether the complaint is wholly without merit."  *Id.* at 1179.  Indeed,

4    Rule 8(d)'s requirement that each averment of a pleading be "'simple, concise, and direct,'

5    applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)."

6    *Id.* (construing former Rule 8(e), now 8(d)) (citing *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d

7    671, 673 (9th Cir. 1981) and *Von Poppenheim v. Portland Boxing & Wrestling Comm.*, 442 F.2d

8    1047, 1053 n.4 (9th Cir. 1971)).

9         The Complaint contains an indecipherable mix of potential claims within twelve purported

10   causes of action purportedly brought against the Attorney General regarding guns, knives, and

11   slingshots on behalf of unrelated plaintiffs arising out of unrelated incidents.  The Complaint

12   provides long string cites to unconnected portions of the Penal Code without adequate

13   explanation.  (*E.g.*, Compl. ¶¶ 116, 273; Prayer for Relief.)  It includes erroneous or outdated

14   statutory references in multiple places.  (Compl. ¶ 91 (referencing Penal Code § 12031(b));

15   Compl. ¶¶ 218, 224, 240, 253 (referencing Penal Code § 12210).)  It references the "Privileges

16   and Immunities Clause of the 14th Amendment" (Compl. ¶ 142) and the "Privileges or

17   Immunities clause of the Fourteenth Amendment (Compl. at Prayer for Relief ¶ 10), but does not

18   purport to bring any of its twelve claims under either the "privileges and immunities" clause of

19   Article IV of the United States Constitution or "the "privileges or immunities" clause of the

20   Fourteenth Amendment.  Likewise, the Complaint references the constitutional "right to travel"

21   (*e.g.*, Compl. ¶ 112; Compl. at Prayer for Relief ¶ 10) without alleging this legal theory as the

22   basis for any of its twelve causes of action.  Worse still, the Complaint leaves the defendants and

23   the Court to sift through voluminous, extraneous allegations to guess at whether pertinent

24   allegations might be hiding somewhere in the Complaint.  (*E.g.*, Compl. ¶ 13 (allegations

25   regarding "Rodney King riots" and Reginald Denny), Compl. ¶¶ 99-106 (irrelevant allegations

26   regarding officer-involved shootings complete with links to Wikipedia articles).)

27        The disorganized nature of plaintiffs' scattershot challenges to multiple, separate statutory

28   schemes that deal with unrelated weapons regulation issues leaves the Attorney General guessing

6

1    as to what constitutional violations have been alleged.  Given this mash of claims, the Complaint

2    does not clearly allege "who is being sued, for what relief, and on what theory, with enough detail

3    to guide discovery," and should be dismissed.  *See McHenry*, 84 F.3d at 1177-78.

4    **II.    PLAINTIFFS LACK STANDING TO CHALLENGE THE FIREARMS REGULATIONS AT
         ISSUE**

5

6        Plaintiffs say this case is a "constitutional challenge to the complex statutory scheme set

7    forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code,

8    §§ 26950,27650)."  (Compl. ¶¶ 116, 273.)  The listed Penal Code sections implicate separate

9    statutory schemes dealing with a variety of unrelated firearms regulation issues (*e.g.*, unsafe

10   handguns, concealed-carry permits, large-capacity magazines, and assault weapons).  Plaintiffs

11   lack standing to obtain equitable relief regarding any of these regulatory schemes because they

12   have not sufficiently alleged a concrete plan or intention to violate any of these laws.

13       An Article III case or controversy requires (1) an "injury in fact," (2) a sufficient "causal

14   connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the

15   injury "will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

16   560-61 (1992) (internal quotation marks omitted).  These constitutional requirements are

17   "rigorous," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,

18   454 U.S. 464, 475 (1982), and plaintiffs bear the burden of establishing standing.  *Clapper v.*

19   *Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013).  An injury sufficient to satisfy Article III must

20   be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.' "  *Id.*,

21   at 560 (some internal question marks omitted).  Standing to obtain prospective equitable relief

22   also requires a "likelihood of substantial and immediate irreparable injury."  *City of Los Angeles v.*

23   *Lyons*, 461 U.S. 95, 111 (1983).

24       Plaintiffs cannot establish standing by merely listing Penal Code sections that they do not

25   like.  "[N]either the mere existence of a proscriptive statute nor a generalized threat of

26   prosecution satisfies the 'case or controversy' requirement."  *Thomas v. Anchorage Equal Rights*

27   *Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing *San Diego County Gun Rights Comm. v.*

28   *Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996)).  Rather, a "genuine threat of imminent

7

1   prosecution . . . is generally required of plaintiffs raising pre-enforcement challenges to criminal

2   statutes outside the First Amendment context." *Wilson v. Lynch*, No. 14-15700, 2016 WL

3   4537376, at *4 (9th Cir. Aug. 31, 2016) (internal quotation marks omitted, citing *San Diego*

4   *County Gun Rights Comm.*, 98 F.3d at 1126).

5        "A genuine threat of imminent prosecution requires a 'concrete plan' to violate the law in

6   question." *Thomas*, 220 F.3d at 1139.  "[E]ven if 'concrete plan' does not mean cast in stone, the

7   Constitution requires something more than a hypothetical intent to violate the law . . . .  A general

8   intent to violate a statute at some unknown date in the future does not rise to the level of an

9   articulated, concrete plan." *Id*.  Where a complaint has failed to "specify any particular time or

10  date on which plaintiffs intend to violate" a challenged law, the Ninth Circuit has found generic

11  allegations that plaintiffs "wish and intend to engage in [prohibited] activities" to be insufficient

12  to establish a genuine threat of prosecution.  *San Diego County Gun Rights Comm.*, 98 F.3d at

13  1127 (finding no standing to challenge federal assault weapons ban).  Similarly, the Ninth Circuit

14  found no standing when plaintiffs offered no specific allegations of intent to violate laws

15  prohibiting discrimination in housing rentals on the basis of marital status: "[plaintiffs] claim that

16  they have refused to rent to unmarried couples in the past, yet they cannot say when, to whom,

17  where, or under what circumstances.  They pledge their intent to do so in the future, yet again

18  they cannot specify when, to whom, where, or under what circumstances." *Thomas*, 220 F.3d at

19  1139.  As the Supreme Court has held, "[s]uch 'some day' intentions—without any description of

20  concrete plans, or indeed even any specification of *when* the some day will be—do not support a

21  finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564.

22       Here, plaintiffs have failed to allege a genuine threat of imminent prosecution or a

23  "concrete plan" to violate any of the Penal Code sections they challenge.  Instead, plaintiffs allege

24  that Cupp "intends" or "desires" to travel in public with guns, large-capacity magazines, or other

25  weapons in ways that are not permitted by California law (Compl. ¶¶ 12, 14, 17-19), but that he

26  has been "unconstitutionally prevented from doing so" because he "fears arrest, criminal

27  prosecution, a fine, and imprisonment."  (Compl. ¶ 21.)  Haven does not even allege these

28  "intentions" or "desires" in the Complaint, but merely that a ".45 Caliber Semi-Automatic pistol"

8

1   was the "standard military side arm" at the time of his service in the Navy between 1979 and

2   1983.  (Compl. ¶¶ 26-28.)  Neither plaintiff alleges that he owns any firearm that is not permitted

3   in California either because it is an assault weapon or because it is an "off-roster" handgun.

4   Instead, plaintiffs allege the opposite: "At all times, plaintiffs legally possessed and owned

5   handguns and long-rifles, which were never illegal, even under California law, to possess and

6   own."  (Compl. ¶ 53.)  To the extent that plaintiffs claim that they would rather have different

7   firearms or larger magazines, or that they would prefer to carry their firearms in ways that would

8   violate California law (*e.g.*, concealed in their vehicles), these generalized allegations of intent or

9   desire are not sufficient to establish standing under *Thomas* and *San Diego County Gun Rights*

10  *Committee*.[3]

11      Plaintiffs' failure to establish injury-in-fact means that they have also failed to demonstrate

12  an imminent threat of irreparable harm, as required for standing to obtain declaratory and

13  injunctive relief.  "The equitable remedy is unavailable absent a showing of irreparable injury, a

14  requirement that cannot be met where there is no showing of any real or immediate threat that the

15  plaintiff[s] will be wronged" in the future.  *Lyons*, 461 U.S. at 111.  Plaintiffs thus lack standing

16  to obtain the equitable relief they purport to seek from their challenge to the listed Penal Code

17  sections.  Accordingly, those claims should be dismissed for lack of subject matter jurisdiction.

18  **III.   SOVEREIGN IMMUNITY BARS PLAINTIFFS' FOURTH AMENDMENT AND FIFTH
            AMENDMENT CLAIMS AGAINST ATTORNEY GENERAL HARRIS.**

19

20      The Eleventh Amendment bars lawsuits against states in federal court unless the state has

21  unequivocally consented to such a suit.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

22  89, 100 (1984).  The Eleventh Amendment likewise "bars a suit against state officials when the

23  state is the real, substantial party in interest."  *Id.* at 101 (citation and internal quotation marks

24  omitted).  The Eleventh Amendment's jurisdictional bar applies regardless of the nature of the

---

25      [3] Where, as here, an allegation of injury is conjectural or hypothetical, concepts of
26  standing and ripeness overlap, providing an additional basis for dismissal.  *See, e.g.*, *Wolfson v.
    Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010); *see also Hodgers-Durgin v. De la Vina*, 199 F.3d
27  1037, 1044 (9th Cir. 1999) ("A claim [for declaratory relief] is not ripe for adjudication if it rests
    upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")
28  (citations and internal quotations omitted).

9

relief sought, including declaratory and injunctive relief.  *See id.*; *see also S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir. 1990) (affirming dismissal of declaratory and injunctive relief claims).  California has neither consented to nor waived its sovereign immunity with regard to the legal theories asserted in plaintiffs' Fourth Amendment and Fifth Amendment claims against Attorney General Harris.[4]  Nor did Congress abrogate such immunity when it enacted 28 U.S.C. §§ 2201–2202 or 42 U.S.C. § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 341 (1979).

The Supreme Court recognized a limited exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* exception allows "actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012).  However, this exception applies only where "it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quotations omitted).  "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted).

Plaintiff's Fourth Amendment and Fifth Amendment claims focus on the confiscation of firearms, knives, and a slungshot from plaintiffs in at least three separate incidents.  These claims seek monetary relief against other defendants, but name the Attorney General "only for purposes of injunctive and declaratory relief only [sic]."  (Compl. ¶¶ 173, 181, 205, 214, 249, 262.)  There are no allegations that Attorney General Harris had any involvement in the searches, seizures, or arrests that form the basis of these claims.  Rather, plaintiffs appear to rely on boilerplate conclusions that the Attorney General has a "supervisory role" over all law enforcement officers in California such that the other defendants allegedly "report to her."  (Compl. ¶¶ 29, 33.)  To

---

[4] These claims are set forth in the fourth, fifth, seventh, eighth, tenth, and eleventh claims for relief.  (Compl. ¶¶ 167-182, 195-215, 238-263.)

10

1    those conclusions, Haven adds the conclusion that his firearms were "confiscated by HARRIS

2    and law enforcement officers" and "[a]t the direction of state law and HARRIS" to two of his

3    claims.  (Compl. ¶¶ 201, 210.)  The Complaint alleges, however, that it was Deputy Sheriff

4    Brucker who took possession of the firearms at issue (Compl. ¶¶ 197-199, 209), and does not

5    allege any facts to support the conclusion that Deputy Sheriff Brucker was acting under the

6    "authority of HARRIS" (Compl. ¶¶ 197, 209).

7        Plaintiffs' allegations in support of their Fourth Amendment and Fifth Amendment claims

8    against Attorney General Harris amount to nothing more than that she is the "chief law

9    enforcement officer of the State."  (Compl. ¶ 33.)  Such a generalized duty to enforce state law is

10   insufficient to overcome Eleventh Amendment sovereign immunity.  *See, e.g.*, *Affirmative Action*,

11   674 F.3d at 1134.  Even if the Attorney General were not immune from these claims, the

12   Complaint contains no allegations that would plausibly state a claim for which relief could by

13   granted against the Attorney General.  Accordingly, plaintiffs' Fourth Amendment and Fifth

14   Amendment claims against the Attorney General should be dismissed with prejudice.

15   **IV.   PLAINTIFFS' SECOND AMENDMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE
          TO STATE A CLAIM UNDER RULE 12(B)(6).**
16

17       Plaintiffs appear to challenge a number of different California laws on Second Amendment

18   grounds.  Plaintiffs' allegations, however, fail to state a Second Amendment claim for which

19   relief may be granted, and should be dismissed.

20       A large part of plaintiffs' claims focus on their alleged desire to carry *concealed* weapons.

21   (Compl. ¶¶ 12, 21, 67, 88, 91, 116, 117, 118, 273, 274, 275.)  In addition to plaintiffs' lack of

22   standing, discussed above, these claims are foreclosed on the merits by the Ninth Circuit's recent

23   decision in *Peruta v. County of San Diego*, which held that "the Second Amendment does not

24   protect, in any degree, the carrying of concealed firearms by members of the general public."  824

25   F.3d 919, 942 (9th Cir. 2016) (en banc).  To the extent plaintiffs assert a Second Amendment

26   right to carry a concealed firearm, those claims should be dismissed under *Peruta*.

27       The remaining allegations must be evaluated under the Ninth Circuit's two-step inquiry for

28   determining whether a law violates the Second Amendment.  *United States v. Chovan*, 735 F.3d

11

1127, 1136 (9th Cir. 2013).  First, a court must consider "whether the challenged law burdens conduct protected by the Second Amendment."  *Id.*  If so, the second step is to "apply an appropriate level of scrutiny."  *Id.*  The appropriate level of scrutiny "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right."  *Id.* at 1138.  Even where a law burdens the core Second Amendment right, *i.e.* "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," the Ninth Circuit has applied only intermediate scrutiny to laws that "regulate only the manner in which persons may exercise their Second Amendment rights" and "leave open alternative channels for self-defense."  *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014); *Wilson*, 2016 WL 4537376, at *6.  The Supreme Court has likewise made clear that the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

Intermediate scrutiny "require[s] (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective."  *Chovan*, 735 F.3d at 1139; *Wilson*, 2016 WL 4537376, at *6.  The Ninth Circuit has found several government interests significant enough to justify regulations of the manner in which individuals may exercise their Second Amendment rights, including the substantial interest in preventing gun violence, *Wilson*, 2016 WL 4537376, at *6, promoting "public safety by reducing the harm of intentional and accidental gun use," *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015), reducing "the number of gun-related injuries and deaths from having an unlocked handgun in the home," *Jackson*, 746 F.3d at 965, and "reducing the lethality of ammunition sold and used" in a particular city, *id.* at 969.  The degree of fit between these government interests and the challenged regulation must be "reasonable," but need not be "airtight."  *Wilson*, 2016 WL 4537376, at *8.  Intermediate scrutiny "does not require the least restrictive means of furthering a given end."  *Jackson*, 746 F.3d at 969.

Plaintiffs' various challenges to California law do not state a claim for a Second Amendment violation under these standards.  To the extent plaintiffs' claims seek to enjoin future enforcement of various California laws (as with their claims regarding large-capacity magazines

1   and off-roster handguns), plaintiffs' lack standing to assert these claims for the reasons discussed

2   above.  If the Court dismisses plaintiffs' claims for lack of standing, the Court need not reach

3   merits issues regarding those claims.

4       A.      **Large-Capacity Magazines**

5       Plaintiffs seek to enjoin California's enforcement of Penal Code sections that limit

6   possessing, transporting, and purchasing handgun and rifle magazines that contain more than 10

7   rounds of ammunition on the theory that this restriction violates the Second Amendment.  (Compl.

8   ¶ 117; Penal Code § 32310.)

9       If the Court reaches the merits, it should hold, as a matter of law, that California's

10  restrictions on large-capacity magazines are constitutional.  In *Fyock*, the Ninth Circuit analyzed a

11  similar restriction, and affirmed the denial of a preliminary injunction because the prohibition on

12  large-capacity magazines was likely to survive intermediate scrutiny.  779 F.3d at 1001.

13  Specifically, even assuming that restrictions on large-capacity magazines regulate conduct within

14  the scope of the Second Amendment, the burden was "not substantial" and "warranted

15  intermediate scrutiny review." *Id.* at 999 (citing *Heller v. District of Columbia*, 670 F.3d 1244,

16  1262 (D.C. Cir. 2011) ("*Heller II*")).  Such laws restrict "possession of only a subset of

17  magazines that are over a certain capacity" and thus leave open alternative channels for self-

18  defense. *Id.*

19      The Ninth Circuit also found it "self-evident" that the government's interests in reducing

20  violent crime and reducing the danger of gun violence, "particularly in the context of mass

21  shootings and crimes against law enforcement," were substantial and important government

22  interests. *Id.* at 1000.  The Ninth Circuit also pointed to studies showing that restrictions on

23  large-capacity magazines are reasonably related to those compelling government interests. *Id.*

24  Plaintiffs allege that restrictions on large-capacity magazines are "dangerous because they reduce

25  typical defensive fire power" (Compl. ¶ 97) or because in some examples of officer shootings the

26  officers "typically" "discharge more than 10 rounds" (Compl. ¶ 98).  These allegations are not

27  relevant because California is not required to choose the least restrictive means of achieving its

28  important public safety interests. *See Fyock*, 779 F.3d at 1001.

13

**B.     Unsafe Handgun Act**

Plaintiffs also seek to enjoin laws which "[l]imit plaintiffs' ability to keep, bear, and travel with off-roster handguns." (Compl. ¶ 117; Cal. Penal Code § 32000.)  But the statute at issue "does not criminalize the purchase or mere possession of an unlisted weapon." *Peña*, 2015 WL 854684, at *6.  Thus, plaintiffs are not prohibited from keeping, bearing, or traveling with off-roster handguns.  Instead, they are prohibited from selling, giving, or lending such handguns or importing them or keeping them for sale.  Cal. Penal Code § 32000; *Peña*, 2015 WL 854684, at *6.  In any event, plaintiffs' Second Amendment rights would be satisfied by access to nearly 1000 types of firearms that are on the roster.  *Peña*, 2015 WL 854684, at *12.  Plaintiffs are not entitled to insist on particular guns that can be sold in California.  Such a claim "falls outside the historical scope of the Second Amendment." *Id.* at *13.  Accordingly, plaintiffs' challenge to the Unsafe Handgun Act should be dismissed.

**C.     Law Enforcement Gun Release Process**

Plaintiffs appear to seek an injunction requiring the return of firearms seized from them, and without any requirement that they complete the Law Enforcement Gun Release application or pay the $20 (plus $3 for each additional firearm) processing fee that is required by California law. (Compl. ¶¶ 124-129, 144, 148-149, 152, 163, 189, 191; Cal. Penal Code § 33850.)  Plaintiffs appear to allege that requiring the completion of the form and the payment of the processing fee would violate their rights under the Second Amendment.  (Compl. ¶ 131, 148.)

Given the minimal burden of completing a short form and paying a small fee, this regulation falls outside the historical scope of the Second Amendment right.  However, even assuming that intermediate scrutiny applies, the requirement to complete the form and pay the fee would easily pass constitutional muster.  The Complaint itself alleges the government's important purpose in requiring the completion of the form:  such forms are submitted "for a determination by the California Department of Justice (the Department) as to whether he or she is eligible to possess a firearm." (Compl. ¶ 125.)  California law prohibits convicted felons and those found by a court to be dangerous because of mental illness, among others, from possessing firearms.  *See* Cal. Penal Code § 29900; Cal. Welf. & Inst. Code § 8103.  These types of restrictions were

14

1    recognized as valid by the Supreme Court.  *Heller*, 554 U.S. at 626 ("nothing in our opinion

2    should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons

3    and the mentally ill").  Keeping guns out of the hands of convicted felons and the mentally ill is

4    self-evidently an important government interest that furthers public safety.  Whatever small

5    burden falls on citizens who are not prohibited from possessing firearms, by requiring them to

6    complete a short form and pay a small fee, is justified by the reasonable relationship between the

7    process and the government's purpose in keeping firearms out of the hands of ineligible persons.

8    *See Bauer v. Harris*, 94 F. Supp. 3d 1149, 1155 (E.D. Cal. 2015).  Indeed, significantly greater

9    fees have been upheld for these reasons.  *See Kwong v. Bloomberg*, 723 F.3d 160, 167-69 (2d Cir.

10   2013) (upholding handgun licensing process and $340 fee for three-year license).  Accordingly,

11   plaintiffs' challenge to the Law Enforcement Gun Release process should be dismissed.

12        **D.    Slungshot**

13        Haven alleges that Penal Code section 22210's prohibition on possession of "any

14   instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap,

15   or slungshot" violates his Second Amendment rights.  (Compl. ¶¶ 216-237.)  However, the

16   longstanding regulation of such "dangerous and unusual weapons" falls outside the scope of the

17   Second Amendment.  *See Heller*, 554 U.S. at 627; *United States v. Henry*, 688 F.3d 637, 640 (9th

18   Cir. 2012).  "Regulation of a weapon not typically possessed by law-abiding citizens for lawful

19   purposes does not implicate the Second Amendment."  *Fyock*, 779 F.3d at 997-98 (citing cases).

20        The Ninth Circuit's decision in *Peruta* recently catalogued the long history of prohibitions

21   against carrying concealable weapons most often used for criminal purposes, including specific

22   references to slungshots.  824 F.3d at 937-38 (citing Texas case from 1871 and West Virginia

23   case from 1891 upholding statutes that prohibited possession of slungshots).  Consistent with this

24   long history, California has prohibited slungshots and similar weapons because they are

25   "ordinarily used for criminal and improper purposes."  *See People v. Fannin*, 91 Cal. App. 4th

26   1399, 1402 (2001) (citations omitted).  *Fannin* cited cases going back to at least 1929 dealing

27   with all manner of homemade slungshots that fit the definition of "a small mass of metal or stone

28   fixed on a flexible handle, strap or the like, used as a weapon."  *Id.* at 1401-02 (citing *People v.*

15

*Williams*, 100 Cal. App. 149 (1929)).  And the Complaint admits that slungshots are weapons. (Compl. ¶¶ 220-221.)  Because there is no Second Amendment right to possess such a weapon, Haven's challenge to California's prohibition on possessing slungshots (the ninth claim for relief) should be dismissed.

## V.    PLAINTIFFS' EQUAL PROTECTION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

In the twelfth cause of action, plaintiffs repackage their Second Amendment "challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950,27650)" as an equal protection claim.  (Compl. ¶ 273.) Plaintiffs say these many distinct firearms laws violate equal protection because they distinguish between "active and honorably retired peace officers" and "all others" or "law-abiding citizens." (Compl. ¶¶ 265-266, 273.)  For at least three reasons, plaintiffs fail to state a cognizable equal protection claim.

### A.    Plaintiffs' Equal Protection Claims are Subsumed by their Second Amendment Claims.

First, plaintiffs' attempt to repackage their Second Amendment claims is not cognizable as an equal protection claim.  The Ninth Circuit has held that where a "[plaintiff's] equal protection challenge is 'no more than a [Second] Amendment claim dressed in equal protection clothing,' it is 'subsumed by, and coextensive with' the former, and therefore is not cognizable under the Equal Protection Clause." *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016) (quoting *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)).

### B.    Plaintiffs Do Not Allege a Group that Is Similarly Situated to Active or Honorably Retired Peace Officers.

The Equal Protection Clause of the Fourteenth Amendment guarantees that the government treats similar individuals in a similar manner.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV, § 1 (prohibiting states from "deny[ing] to any person within its jurisdiction the equal protection of the laws").  "'The first step in equal protection analysis is to identify the [government's] classification of groups'" and, "[o]nce the

16

plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citation omitted); *see also Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570 ("[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately.") (citation omitted).  As a preliminary matter, plaintiffs do not allege that they (or any broader class of "others" or "law-abiding citizens") are similarly situated to the active or honorably retired peace officers covered by the challenged exemptions.

In their Complaint, plaintiffs do not define the parameters or characteristics of any similarly situated "control group" against which active or retired peace officers can be compared.  *See Freeman*, 68 F.3d at 1187 ("The similarly situated group is the control group." (quoting *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989)).  Plaintiffs allege that the challenged exemptions "result[] in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers**" (Compl. ¶ 273), which suggests that plaintiffs' proposed control group consists of at least the two plaintiffs named in the Complaint.  It is unclear, however, who else plaintiffs' control group includes and what, if any, additional characteristics are shared by the individuals in such a group.  *See Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1154 (9th Cir. 2007) (plaintiffs' "undifferentiated control group" "was not comparable because these groups were not similarly situated because of their varying characteristics").

Even if plaintiffs could define a control group, plaintiffs do not allege sufficient facts to establish—or even a conclusory allegation—that their proposed group is "similarly situated" to active or retired peace officers covered by the challenged exemptions.  Because plaintiffs have failed to identify a similarly situated class of individuals to compare against active or honorably retired peace officers covered by the challenged exemptions, plaintiffs have failed to meet their threshold burden in attempting to state an equal protection claim.

1

### C.   The Challenged Exemptions for Peace Officers Satisfy Rational Basis Scrutiny.

2

3      Rational basis review is the appropriate level of scrutiny for examining the challenged

4  exemptions because the challenged laws neither violate a fundamental right (including the Second

5  Amendment) nor employ a suspect classification.  *See Nordyke v. King*, 681 F.3d 1041, 1043 n.2

6  (9th Cir. 2012) ("As to the [plaintiffs'] equal protection claim, because the ordinance does not

7  classify shows or events on the basis of a suspect class, and *because we hold that the ordinance*

8  *does not violate either the First or Second Amendments*, rational basis scrutiny applies." (citations

9  omitted and emphasis added)); *Teixeira*, 822 F.3d at 1052 ("[W]e will uphold a legislative

10  classification so long as it 'neither burdens a fundamental right nor targets a suspect class,' and

11  'bears a rational relation to some legitimate end.'") (quoting *Romer v. Evans*, 517 U.S. 620, 631

12  (1996)); *Nichols v. Brown*, No. CV 11-09916 SJO (SS), 2013 WL 3368922, at *6 (C.D. Cal. July

13  3, 2013) (holding that, with respect to plaintiff's equal protection challenge, the statutory

14  exemption for retired peace officers to open carry licensing requirements would be subject to

15  rational basis scrutiny).

16      Under rational basis review, "the general rule is that legislation is presumed to be valid and

17  will be sustained if the classification drawn by the statute is rationally related to a legitimate state

18  interest."  *City of Cleburne*, 473 U.S. at 439.  The party attacking the classification bears the

19  burden of demonstrating that there is no reasonable basis for the challenged distinction and to

20  "negative every conceivable basis which might support it."  *Heller v. Doe*, 509 U.S. 312, 320

21  (1993) (citation omitted); *see also Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008)

22  (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  The legislative record need

23  not contain empirical evidence to support the classification so long as the legislative choice is a

24  reasonable one.  *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) ("The Equal Protection Clause does

25  not demand for purposes of rational-basis review that a legislature or governing decision-maker

26  actually articulate at any time the purpose or rationale supporting its classification.").

27      Here, the challenged exemptions are reasonably related to a legitimate government interest:

28  the protection and safety of retired peace officers.  Plaintiffs complain that active and honorably

18

1  retired peace officers are permitted to purchase off-roster handguns, to possess and purchase

2  large-capacity magazines, and to carry concealed firearms.  (Compl. ¶ 273.)  Plaintiffs then seek

3  injunctive relief that would make certain of these exemptions apply to plaintiffs.[5]  (Compl. ¶ 273-

4  276.)  Plaintiffs, however, do not allege that the government lacks a legitimate reason to create

5  less restrictive rules for active and retired law enforcement officers.

6       Courts have upheld other exemptions for both active and retired peace officers in other

7  contexts.  In *Silveira*, the Ninth Circuit held that it is "manifestly rational for at least most

8  categories of peace officers to possess and use firearms more potent than those available to the

9  rest of the populace in order to maintain public safety."  312 F.3d at 1089.  This reasoning

10  extended to off-duty officers who were permitted to use otherwise-prohibited assault weapons for

11  law enforcement purposes.  *Id.*  Although an exemption that allowed retired police officers to

12  "use for their personal pleasure military-style weapons" was struck down, *id.* at 1090-91, other

13  courts have distinguished that situation from exemptions that are grounded in the government's

14  interest in providing for the protection and safety of retired peace officers.   For example, *Nichols*

15  *v. Brown* addressed a challenge to a California statute that treated retired peace officers

16  differently than other citizens and concluded that "the California Legislature could have

17  reasonably believed that certain groups, such as retired police officers, were in greater need of

18  self-protection and thus should be allowed to openly carry a firearm."  2013 WL 3368922, at *6

19  (C.D. Cal. July 3, 2013).  Likewise, the court in *Garcia v. Harris*, dismissed an equal protection

20  challenge to an exemption that allowed retired peace officers to possess a firearm within a school

21  zone because of the government interest in "the protection and safety of retired peace officers."

22  Declaration of Kevin A. Calia in Support of Defendant Attorney General Kamala D. Harris's

23  Motion to Dismiss ("Calia Decl.") Ex. A at 8-9.  The court in *Garcia* relied on an earlier decision

24  written by Judge England that had reached the same conclusion when analyzing an exemption

25  _____

26  [5] Plaintiffs purport to challenge California's entire "complex statutory scheme."  (Compl. ¶ 273.)  However, plaintiffs actually take issue only with these laws' purported "exemptions" for active or honorably discharged peace officers.  (*Id.* (subparagraphs a-e).)  It is axiomatic that if an exemption to a general law violates equal protection, it alone should be struck down—not the entire general scheme.

27

28

19

1  that allowed retired peace officers to carry concealed weapons without demonstrating good cause

2  to receive a permit.  *Id.* at 9.  In that case, *Mehl v. Blanas*, Judge England ruled that the exemption

3  was justified by the government interest in allowing retired officers "to carry concealed weapons

4  to protect themselves from the enemies they may have made in performing their duties."  Calia

5  Decl. Ex. B at 11.  Judge Mendez also followed *Mehl* in dismissing a challenge to similar

6  exemptions in *Rothery v. Blanas*, Calia Decl. Ex. C at 2, and dismissed equal protection claims

7  based on the same theory in *Peterson v. Farrow*, No. 2:15-CV-00801-JAM-EFB, 2016 WL

8  3653441 (E.D. Cal. July 8, 2016), finding, among other things, that it "would be reasonable for

9  the legislature to conclude that former police officers face heightened personal security risks."  *Id.*

10  at *6.

11       For the same reasons as in these cases, plaintiffs' challenges to the exemptions for active

12  and honorably retired peace officers should be dismissed because the challenged exemptions

13  advance legitimate government interests.

14                                    **CONCLUSION**

15       For the foregoing reasons, the Court should dismiss all claims against the Attorney General.

16

17  Dated:  September 30, 2016                    Respectfully Submitted,

18                                               KAMALA D. HARRIS
                                                 Attorney General of California
19                                               MARC A. LEFORESTIER
                                                 Supervising Deputy Attorney General

20

21

22              _____/s/ Kevin A. Calia_____
                                                 KEVIN A. CALIA
23                                               Deputy Attorney General
                                                 *Attorneys for Defendant*
24                                               *Attorney General Kamala D. Harris*

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Cupp, James Edward v. Kamala**          No.     **2:16-cv-00523-TLN-KJN**
                   **D. Harris, et al.**

I hereby certify that on <u>September 30, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 30, 2016</u>, at Sacramento, California.

|                        |                        |
| :--------------------: | :--------------------: |
| Eileen A. Ennis        | /s/ Eileen A. Ennis    |
| Declarant              | Signature              |

SA2016102600
12449908.doc