Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; et al.<br><br>Defendants. | Case No.  16-CV-00523-TLN-KJN<br><br>**PLAINTIFFS' OPPOSITION TO KAMALA D. HARRIS Attorney General of the State of California MOTION TO DISMISS SECOND AMENDED COMPLAINT (SAC)**<br><br>Date: November 17, 2016<br>Time: 2:00 p.m.<br>Dept: 2<br>Judge: Hon. Troy L. Nunley<br>Action Filed: March 11, 2016 |

## SUMMARY OF ARGUMENT

The Second Amendment is the only right which cannot be exercised without possession, access and ownership of a tool (i.e. gun, knife, taser, horse leash, dog leash, and even a pencil.).

To exercise this right, it explicitly includes the right to have access to "arms" by way of purchase, gift or self manufacture.  Defendants presently employ and enforce a legal juggernaut of statutes, ordinances, and policies suppressing the Right to Keep and Bear Arms, in violation of the Second Amendment; in sum, defendant law enforcement agencies blatantly snub the United States

Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, ⎯⎯ U.S. ⎯⎯, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) and most recently *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

I.   **THE SECOND AMENDED COMPLAINT COMPLIES WITH RULE 8**

First, the necessity of the lengthy SAC is necessary due to the numerous government agencies involved.  The SAC is clear as to what is being challenged:

> Plaintiffs are seeking to enjoin the State of California and defendants from enforcing current firearm statutes which infringe upon their constitutional rights as follows (which is clearly stated in the SAC):
> a. To purchase off-roster handguns, which are legal under federal law.
> b. To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,
> c. To travel interstate with magazines which contain more than 10 rounds of ammunition.
> d. To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.  SAC ¶s 67.
>
> This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers in several very specific ways:
> a. Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.
> b. Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)
> c. Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are  subjected to (this is especially important since it allows interstate travel with a loaded firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)
> d. If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)
> e. Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense, which they can keep even after their government service is terminated.
>
> Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which:
> a. Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.
> b. Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.
> c. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.
> d. Limit plaintiffs' ability to carry either a concealed weapon or

openly carried weapon.

SAC ¶s 67, 116, 269, 273-274.

Most of the averments pertain to SAC ¶ 66 [emphasis added], which states:

> When it comes to self-defense, providing retired peace officers with superior rights to that of ordinary law-abiding citizens does not further either an important or compelling state interest, and more importantly, since <u>law enforcement can only use reasonable force in self-defense, then the hand-guns they use are presumptively the type of firearm protected by the Second Amendment</u>.

Paragraphs 73 through 113 are necessary to negate the following defenses government always raises as it relates to gun control. For example, the government always states the notion that somehow law enforcement officers are superiorly trained and vetted entitling them to greater access to commonly used firearms and greater magazine capacity. According to this logic, a 21 year old police officer who never owned or fired a gun, but attends an 8 week POST academy, is more qualified than all other gun owners, including military veterans.

In addition, law enforcement cannot deploy any firearm that would be deemed unsafe and most police shootings involve more than 10 shots to stop a suspect, (e.g. SAC ¶s 98-107), therefore, the SAC states the facts which negate the notion of public safety and superior training.

If the government is willing to state that there is no evidence that somehow both active and retired peace officers are not similarly situated to plaintiffs, then SAC ¶s 98-107 would not be necessary. Besides, standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

In sum, plaintiffs have complied with Rule 8.

## II. PLAINTIFFS HAVE STANDING.

It is important to note that not a single defendant has stated that they do not and will not enforce the challenged statutes. Plaintiffs fear of prosecution and arrest is not misplaced, for each Plaintiff has already been arrested for possession of protected "arms", as clearly defined by the Supreme Court in *Caetano*, and which were not even firearms. CUPP SAC ¶s 58-59, 139, 169, 177; HAVEN SAC ¶s 58-59, 223-225.

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

If HAVEN can be arrested for a horse leash and CUPP for an open-carry knife, then the threat of arrest for the felonious possession of the banned weapons and magazines in this case is real and certain.

> When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. See Steffel v. Thompson, 415 U. S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); see also MedImmune, Inc. v. Genentech, Inc., 549 U. S. 118, 128-129, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"). Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Babbitt v. Farm Workers, 442 U. S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). Several of our cases illustrate the circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III.

*Susan B. Anthony List v. Driehaus,* 573 U.S. ___, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014).

Courts repeatedly find that conduct that creates a risk of future injury causes a present injury that satisfies Article III. In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), the court found that "[a]n injury-in-fact may simply be the fear or anxiety of future harm." Where "emotional and psychological harms" are accompanied by "economic costs" that include "preventative steps" associated with the future risk, the showing of injury is only strengthened. *Id.* at 265. In *Central Delta Water Agency v. United States*, the court noted the general rule that "the possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes injury in fact." 306 F.3d 938, 947 (9th Cir. 2002) (internal quotation omitted).

In addition, the Federal Declaratory Judgment Act (28 U.S.C.S. §§ 2201 et seq.) was enacted to dispel difficulties involved with respect to injunctive relief against unconstitutional state statutes, Congress intending declaratory relief to act as alternative to stronger remedy of injunction and to be utilized to test constitutionality of state criminal statutes in cases where injunctive relief would be unavailable. *Steffel v Thompson,* 415 U.S. 452 (1974).

Plaintiffs challenge the state penal code sections under the Second, Fourth, Fifth and Fourteenth Amendments' since those statutes restrict possession of not just firearms, the necessary

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

attachment and parts to firearms, and all other types of arms used for self defense. Plaintiffs have standing since plaintiffs are: (A) seriously affected by the statutes, (B) in the zone of interests impacted, and © would risk prosecution by possessing said arms and parts openly or concealed on their persons, in their homes and in their vehicles.

Plaintiffs HAVEN and CUPP have suffered actual injury in that their firearms have been confiscated, without cause, and face a credible threat of prosecution under the challenged laws. See *Susan B. Anthony List v. Driehaus*, 573 U.S. ___ (2014), 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014). Individual plaintiffs have standing to challenge the gun control statutes, as they owned rifles and pistols regulated by the statutes and desire to acquire weapons that the statute rendered illegal; see also *Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011) (deciding that plaintiffs, who wished to engage in range training, had standing to bring a Second Amendment challenge to a Chicago ordinance banning firing ranges, <u>reasoning that the very existence of the ordinance implied a threat to prosecute</u>). Plaintiffs have standing.

### III.   SOVEREIGN IMMUNITY IS NOT AN ISSUE.

Again, the State and local municipalities have point the finger at each other for responsibility of enforcing unconstitutional laws. For example, HARRIS claims sovereign immunity but the COUNTY OF SACRAMENTO states that "Sheriff Jones Acts On Behalf Of The State Of California, Not Sacramento County, When Enforcing The State's Gun Laws". COUNTY OF SACRAMENTO Motion to Dismiss 4:18.

In California, a sheriff is not designated by the constitution as a member of the executive branch, which is defined in Article V, titled "Executive." Instead, sheriffs in California are defined in Article XI of the Constitution, titled "Local Government". The California Constitution recognizes two forms of local government: counties and cities, with the sheriff designated as the chief law enforcement officer of the county. See Cal. Const. art. XI, §§ 1, 2. See, e.g., *Robinson v. Solano County*, 00 C.D.O.S. 5735, 5737 (9th Cir. July 12, 2000); *Headwaters Forest Defense v. County of Humboldt*, 211 F.3d 1121, 1126 n. 2 (9th Cir.2000); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir.2000).

California Constitution Article V, section 13 grants the Attorney General a supervisory role

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law." Thus, the Attorney General is a proper party for the case and controversy requirement.

**IV.   PLAINTIFFS' HAVE COGNIZABLE CLAIMS UNDER THE SECOND AMENDMENT.**

In addition, all the sections challenged in this action related to "arms" in "common use by law-abiding citizens." *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1252 (D.C. Cir. 2011). Like a number of courts that have previously considered this question, there is little difficulty in concluding that the banned semi-automatic rifles and pistols are in common use by law-abiding citizens. See, e.g., *Heller II*, 670 F.3d at 1261 ("We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend.") "There may well be some capacity above which magazines are not in common use but, if so, the record is devoid of evidence as to what that capacity is; in any event, that capacity surely is not ten." *Heller II*, 670 F.3d at 1261.

What arms are protected by the Second Amendment came before the Supreme Court by the blanket prohibition of Massachusetts against the possession of a stun gun. The Massachusetts Supreme Court upheld the blanket banishment of stun guns as weapons that were not protected by the Second Amendment under three separate and distinct theories. First Massachusetts asserted that since Stun Guns were not in common use at the time of the Second Amendment's enactment, they did not fall under its protections. Second Massachusetts asserted Stun Guns are dangerous per se at common law and unusual, they fell out the protections of the Second Amendment. Finally, Massachusetts argued that stun guns were not readily adaptable to use in the military and therefore were outside the scope of the Second Amendment.

In *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078), the Supreme Court of the United States summarily rejected all of Massachusetts arguments. In vacating the judgment of the Supreme Judicial Court of Massachusetts in its unanimous per curiam opinion, the court has told us that a blanket prohibition of arms is *per se* unconstitutional.

Therefore, the criminalization and/or ban of horse leashes (offensively called "slungshot")

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

(SAC ¶s 221-224, 227, 252), knives (SAC ¶s 58-59, 139, 169, 177), magazines holding more than 10 rounds (SAC ¶s 12, 21, 57-67), prohibition on the purchase of safe and highly functional handguns (SAC ¶s 61, 63, 67, 116, 269, 273), and seizing and retention of firearms without an active criminal case or conviction of a crime (SAC ¶s 54, 122, 129-131) all violate the Second Amendment.

Penal Code Sections 18250-18275 is equally applied to plaintiffs as each plaintiff has had their firearms confiscated without any form of prosecution for a crime. Both plaintiffs have had their firearms seized from their residences, without a warrant, without being charged, tried or convicted of a crime. The firearms illegally seized have not been returned to plaintiffs. By failing to immediately return plaintiffs firearms once it was determined that no crime had been committed, HARRIS has deprived plaintiffs of their ability to exercise their Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech. SAC ¶s 122- 127, 130-131.

Morever, the government allows officers to purchase the most modern, safest handguns, but prohibits plaintiffs from purchasing safe handguns. Where is the logic for that?!

> 61. The prohibition of purchasing the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.
> 62. The lack of these safety features have resulted in an inordinate amount of accidental discharges by law enforcement, including the state's own experts who shot themselves.

The government is mandating that plaintiffs use lead pencils while they get to use ballpoint pens to exercise First Amendment rights. The Second Amendment protects the rights of individual persons to keep and bear arms for personal, family, business and community defense, without state-decreed monopolization. Therefore, plaintiffs have viable Second Amendment claims.

V. **PLAINTIFFS HAVE VIABLE CLAIMS UNDER THE EQUAL PROTECTION CLAUSE**

When a state statute burdens a fundamental right, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause. *Romer v. Evans*, 517 U.S. 620, 631

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

(1996).

Similar exemptions from gun control laws for retired peace officers was struck down in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents).  Though *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) was abrogated by *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Equal Protection analysis is still valid, except as to the level scrutiny.  At that, an exemption could not even survive rational basis.  Now, it is obvious that the strict scrutiny applies.  *Silveira* implicitly stated that retired police officers are "similarly situated" to private citizens.  See *Silveira*, 312 F.3d at 1090-91.

The issue regarding possession of a weapon being *per se* illegal was addressed by the Supreme Court of the *United States in District of Columbia v. Heller*, (2008) 554 U.S. 570.  The court came to two distinct and applicable rulings.

> What is more, in all six other provisions of the Constitution that mention "the people," the term unambiguously refers to all members of the political community, not an unspecified subset. As we said in United States v. Verdugo-Urquidez, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990):
>
> "'[T]he people' seems to have been a term of art employed in select parts of the Constitution. . . . [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."
> This contrasts markedly with the phrase "the militia" in the prefatory clause. As we will describe below, the "militia" in colonial America consisted of a subset of "the people"--those who were male, able bodied, and within a certain age range. Reading the Second Amendment as protecting only the right to "keep and bear Arms" in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as "the people."
>
> **We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans.**

*District of Columbia v. Heller* 554 U.S. 570, 580-581 (2008)(emphasis added.)

The plaintiffs are prohibited from possessing and purchasing the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead they are relegated to purchasing 20+ year old Sig Sauer's, Glocks and 100 year old revolvers, none of which have manual thumb safeties.

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**

1  Plaintiffs have the same rights active and retired officers have to purchase (and use for
2  personal self-defense) the best and safest tool for the job, and that includes modern functional
3  handguns with a magazine capacity of more than 10 rounds.

## CONCLUSION

For the above stated reasons, defendant's motion is properly denied. If granted, plaintiffs request leave to amend in accordance with this court's ruling.

Dated: November 3, 2016         THE LAW OFFICES OF GARY W. GORSKI
                                Respectfully Submitted,
                                 /s/ Gary W. Gorski
                                Gary W. Gorski
                                Attorney for Plaintiffs

**Plaintiff's Opposition to Motion to Dismiss Second Amended Complaint**