PLACER COUNTY COUNSEL'S OFFICE
DAVID K. HUSKEY (SBN 109329)
175 Fulweiler Avenue
Auburn, California 95603
Telephone:   (530) 889-4044
Facsimile:    (530) 889-4069

Attorneys for Defendants COUNTY OF PLACER; EDWARD N. BONNER; DEPUTY ERIC HINTZE; DEPUTY MICHAEL MASON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual, <br><br> Plaintiff; <br><br> vs. <br><br> KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, #371; Citrus Heights Police Officer THOMAS LAMB #315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge #323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 3/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Sheriff Deputy Sheriff JESSE BRUCKER, #512; COUNTY OF PLACER; EDWARD N. BONNER; in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZ, #101. <br><br> Defendants. | No.  2:16-CV-00523-TLN-KJN <br><br> **PLACER COUNTY DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT [F.R.C.P. 12(b)(6)]** <br><br> Date:         November 17, 2016 <br> Time:         2:00 p.m. <br> Courtroom: 2, 15th Floor <br> Judge:        Hon. Troy L. Nunley |

1

Placer County Defendants' Reply to Opposition to Motion to Dismiss SAC

**INTRODUCTION**

Plaintiff Haven does not contest Defendants' motion to dismiss Sheriff Edward Bonner in his official capacity as a redundant defendant in light of the fact that he has also sued the County of Placer. Nor does Mr. Haven oppose the motion to dismiss the Section 1983 *Monell* claim pled, if one was pled, against the County of Placer and/or Sheriff Bonner.

Plaintiff's opposition focuses on the issue of qualified immunity. He argues that neither Deputy Mason nor Deputy Hintze could have reasonably believed that the horse lead attached to his motorcycle was a slungshot, otherwise, "all an officer would have to do is hand around horse stables and arrest everyone for possession of a deadly "slungshot." Mr. Haven does not address the case of *People v. Fannin*, 91 Cal App. 4th 1399, 1401-1405 (2001) cited by defendants for the proposition that ordinary objects may be considered slungshots depending upon the context in which those ordinary objects are used, and the impact of that decision upon what an objectively reasonable officer could have believed when Mr. Haven was arrested. Notably, Mr. Haven does not plead that he was arrested at a horse stable, or leading a horse around, or with a German Shepard. Without benefit of examining the law pertaining to slungshots, Mr. Haven argues in essence that it is so obvious that a horse lead is not a weapon, the qualified immunity should be denied.

**I**

**THE LAW RELATED TO SLUNGSHOTS**

**IS NOT CLEARLY ESTABLISHED**

As shown by the *Fannin* case, whether or not an object could be considered a slungshot depends greatly on context. According to the complaint, the context here was the arrest of plaintiff on a motorcycle with the slungshot attached to the handlebars for quick release. There were no horses, dogs, nor barns nearby, nor were there any other indications that Mr. Haven intended to use the horse lead for its intended purpose as a horse lead. Mr. Haven alleges that he used it for decorative purposes, which certainly would not be one of the typical uses of a horse lead. It was obvious from the circumstances on February 8, 2016, that Mr. Haven was not using

1   his horse lead for its intended purpose of leading horses.  He clearly had it on the handlebars of
2   his motorcycle for some other purpose.  One of the other potential purposes for having such an
3   object handy would be to use as a weapon in a fight; i.e. for either self-defense or aggression.

4         The law was not clear on February 8, 2016 that slungshots cannot be banned under the
5   Second Amendment.  Mr. Haven is trying to hold officers liable for not predicting the impact of
6   Supreme Court decisions interpreting the Second Amendment on issues that have not yet been
7   decided by the Supreme Court, which has not specifically addressed whether or not slungshots
8   can be banned as the type of weapon that would not ordinarily be used by a law abiding citizen.
9   See discussion in *Peruta v. City of San Diego*, 834 F3d 919, 937-938 (9th Cir. 2016) of the long-
10  standing tradition of prohibiting weapons associated with criminals and assassins.  The courts are
11  plainly working out the reach of *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016) and
12  *District of Columbia v. Heller*, 544 U.S. 570, 592 (2008), so the Second Amendment law
13  pertaining to slungshots is not clearly established, and certainly was not on the date of Mr.
14  Haven's arrest, February 8, 2016 – a month before the Supreme Court issued the *Caetano*
15  decision.

16        Again, qualified immunity protects all but the plainly incompetent and those who
17  knowingly violate the law.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an objectively
18  reasonable officer in the position of Officers Mason and Hintze could have believed that Mr.
19  Haven intended to use his horse lead as a weapon, so that it was in fact a slungshot under
20  California law, Deputies Mason and Hintze are entitled to the qualified immunity of good faith.

### CONCLUSION

22        Because the facts alleged show that objectively reasonable officers in the position of
23  Deputies Mason and Hintze could have believed that Mr. Haven intended to use his "horse lead"
24  for violent purposes rather than for decoration, the defendant deputies are entitled to qualified
25  immunity, and the claims against them (Nos. 9, 10, and 11) should be dismissed.  In addition,
26  plaintiff has not alleged sufficient facts to support a *Monell* claim for money damages against
27  either the County of Placer or Sheriff Edward Bonner in his official capacity.  Therefore, to the
28

1  extent that suing the County of Placer and Sheriff Bonner in his official capacity for money
2  damages under 42 U.S.C. Section 1983 implies an effort to allege *Monell* claims, those *Monell*
3  claims should be dismissed as well (Claim nos. 9, 10, and11).  Furthermore, it is improper to
4  name both the County of Placer and Sheriff Bonner in his official capacity in a *Monell* claim for
5  money damages; therefore, Sheriff Bonner should be dismissed from any such claims contained
6  in plaintiff's claim nos.9, 10, and 11.  Finally, Fifth Amendment claims for deprivation of private
7  property without due process of law are claims against the government, not individuals; therefore,
8  the eleventh claim should be dismissed as to deputies Mason and Hintze.

DATED: November 10, 2016             PLACER COUNTY COUNSEL'S OFFICE


                                      By:    /s/ DAVID K. HUSKEY
                                             DAVID K. HUSKEY
                                             Attorneys for COUNTY OF PLACER,
                                             SHERIFF EDWARD N. BONNER,
                                             DEPUTY MASON, DEPUTY HINTZE