KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARC A. LEFORESTIER, State Bar No. 178188
Supervising Deputy Attorney General
KEVIN A. CALIA, State Bar No. 227406
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-6114
 Fax: (916) 324-8835
 E-mail: Kevin.Calia@doj.ca.gov
*Attorneys for Defendant*
*Attorney General Kamala D. Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, #371; Citrus Heights Police Officer THOMAS LAMB, #315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, #512; COUNTY OF PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, #181; Placer County Deputy HINTZE, #101, <br><br> Defendants. | 2:16-cv-00523-TLN-KJN <br><br><br> **REPLY IN SUPPORT OF DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S MOTION TO DISMISS** <br><br> Date: November 17, 2016 <br> Time: 2:00 p.m. <br> Dept: 2 <br> Judge: Hon. Troy L. Nunley <br><br> Action Filed: 3/11/2016 |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................................ 1

Argument .................................................................................................................................... 1

    I.    The Complaint Fails to Comply with Rule 8. .......................................................... 1

    II.    Plaintiffs Lack Standing to Challenge the Firearms Regulations at Issue .............. 2

    III.    Sovereign Immunity Bars Plaintiffs' Fourth Amendment and Fifth Amendment Claims Against Attorney General Harris. ........................................... 5

    IV.    Plaintiffs' Second Amendment Claims Should be Dismissed for Failure to State a Claim Under Rule 12(b)(6). ....................................................................... 6

    V.    Plaintiffs' Equal Protection Claim Should be Dismissed for Failure to State a Claim Under Rule 12(b)(6). ................................................................................... 9

Conclusion ................................................................................................................................ 10

i

Reply in Support of Attorney General's Motion to Dismiss
(2:16-cv-00523-TLN-KJN)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bauer v. Harris*
  94 F. Supp. 3d 1149, 1155 (E.D. Cal. 2015)..................................................................9

*Caetano v. Massachusetts*
  136 S. Ct. 1027 (2016) .................................................................................................7, 8

*Central Delta Water Agency v. United States*
  306 F.3d 938 (9th Cir. 2002) .........................................................................................4

*Coal. to Defend Affirmative Action v. Brown*
  674 F.3d 1128 (9th Cir. 2012) .......................................................................................5

*Denney v. Deutsche Bank AG*
  443 F.3d 253 (2d Cir. 2006) ..........................................................................................4

*District of Columbia v. Heller*
  554 U.S. 570 (2008).......................................................................................................8, 10

*Ezell v. City of Chicago*
  651 F.3d 684 (7th Cir. 2011) .........................................................................................4

*Freeman v. City of Santa Ana*
  68 F.3d 1180 (9th Cir. 1995) .........................................................................................10

*Fyock v. Sunnyvale*
  779 F.3d 991 (9th Cir. 2015) .........................................................................................7, 8

*Headwaters Forest Defense v. County of Humboldt*
  211 F.3d 1121, 1126 n.2 (9th Cir. 2000) .......................................................................5

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) .....................................................................................7

*Jackson v. City & County of San Francisco*
  746 F.3d 953 (9th Cir. 2014) .........................................................................................8

*Kwong v. Bloomberg*
  723 F.3d 160 (2d Cir. 2013) ..........................................................................................9

*LaLonde v. County of Riverside*
  204 F.3d 947 (9th Cir. 2000) .........................................................................................6

*Larez v. City of Los Angeles*
  946 F.2d 630 (9th Cir. 1991) .........................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

*Los Angeles County Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)...................................................................................................5

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992).................................................................................................................4

*McHenry v. Renne*
    84 F.3d 1172 (9th Cir. 1996)....................................................................................................1

*Monell v. Department of Social Services*
    436 U.S. 658 (1978).................................................................................................................6

*Nichols v. Brown*
    No. CV 11-09916 SJO (SS), 2013 WL 3368922 (C.D. Cal. July 3, 2013) ...........................10

*Nordyke v. King*
    681 F.3d 1041 (9th Cir. 2012)................................................................................................10

*Orin v. Barclay*
    272 F.3d 1207 (9th Cir. 2001)..................................................................................................9

*Peña v. Lindley*
    No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684 (E.D. Cal. Feb. 26, 2015)........................8

*People v. Fannin*
    91 Cal. App. 4th 1399 (2001)...................................................................................................9

*Peruta v. County of San Diego*
    824 F.3d 919, 942 (9th Cir. 2016).......................................................................................7, 9

*Robinson v. Solano County*
    278 F.3d 1007 (9th Cir. 2002) (en banc).................................................................................6

*Romer v. Evans*
    517 U.S. 620 (1996)...............................................................................................................10

*San Diego County Gun Rights Committee v. Reno*
    98 F.3d 1121 (9th Cir. 1996)............................................................................................3, 4, 5

*Silveira v. Lockyer*
    312 F.3d 1052 (9th Cir. 2002)................................................................................................10

*Steffel v. Thompson*
    415 U.S. 452 (1974).................................................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

*Stoianoff v. Montana*
    695 F.2d 1214 (9th Cir. 1983) ................................................................................5

*Susan B. Anthony List v. Driehaus*
    134 S. Ct. 2334 (2014) ..........................................................................................2, 3

*Teixeira v. County of Alameda*
    822 F.3d 1047 (9th Cir. 2016) ................................................................................9, 10

*United States v. Henry*
    688 F.3d 637 (9th Cir. 2012) ..................................................................................8

*Watkins v. City of Oakland*
    145 F.3d 1087 (9th Cir. 1988) ................................................................................6

*Wilson v. Lynch*
    No. 14-15700, 2016 WL 4537376 (9th Cir. Aug. 31, 2016) ...................................3, 8

## INTRODUCTION

As the Attorney General explained in her opening brief, the Court should dismiss the claims against the Attorney General for multiple, separate reasons. In their opposition, plaintiffs fail to address the Attorney General's key arguments or to acknowledge or distinguish the governing Ninth Circuit cases that were cited by the Attorney General. Accordingly, the Second Amended Complaint ("Complaint") should be dismissed because it fails to comply with Rule 8, fails to demonstrate that plaintiffs have standing to bring pre-enforcement challenges to the numerous criminal laws at issue, fails to allege any participation by the Attorney General in the alleged Fourth and Fifth Amendment violations, and fails to state a claim under either the Second Amendment or the Equal Protection Clause.

## ARGUMENT

### I. THE COMPLAINT FAILS TO COMPLY WITH RULE 8.

As shown in the Attorney General's opening brief (ECF No. 19 at 5-7), the Complaint should be dismissed under Federal Rule of Civil Procedure 8 because it does not clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *See McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996).

In response, plaintiffs assert that "[t]he SAC is clear as to what is being challenged" and proceed to block quotes three lengthy paragraphs of the Complaint, without further explanation. (ECF No. 22 at 2-3.) Because plaintiffs do not respond to the arguments raised by the Attorney General, they do not clear up any of the problems identified in the Attorney General's opening brief. Plaintiffs do not deny that the Complaint includes a mash of claims regarding guns, knives, and slungshots on behalf of unrelated plaintiffs arising out of unrelated incidents. They do not clarify the meaning of the Complaint's long string cites to unconnected portions of the Penal Code such as "Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code, §§ 26950, 27650)." (ECF No. 22 at 2 (quoting from Complaint paragraph 116, but failing to provide any further explanation).) They not only fail to deny that the Complaint cites to outdated sections of the Penal Code, but block quote the Complaint's references to those sections, without providing any explanation. (ECF No. 22 (citing Penal Code section 12031(b).) And they

1

do not clarify whether plaintiffs seek to assert claims regarding the "Privileges and Immunities Clause of the 14th Amendment" (Compl. ¶ 142), the "Privileges or Immunities clause of the Fourteenth Amendment (Compl. at Prayer for Relief ¶ 10), or the constitutional "right to travel" (*e.g.*, Compl. ¶ 112; Compl. at Prayer for Relief ¶ 10), none of which are included among the twelve causes of action asserted in the Complaint.

Rather than addressing any of these problems, plaintiffs merely attempt to justify the inclusion of some of the extraneous material in the Complaint by arguing that these allegations "negate the notion of public safety and superior training" that might support treating current and former law enforcement officers differently from plaintiffs. (ECF No. 22 at 3.) But plaintiffs ignore the Attorney General's actual argument for why it is reasonable for the legislature to treat active and retired peace officers differently from other citizens: the heightened need for protection and safety of active and retired peace officers. (ECF No. 19 at 18-20.) Plaintiffs do not dispute that the Attorney General's argument has been accepted by numerous courts, as discussed in the opening brief and in the section below addressing plaintiffs' equal protection claim. In any event, even if some of these extraneous allegations and citations to Wikipedia pages were relevant, those allegations do nothing to clarify the numerous other problems with the Complaint that leave the Attorney General guessing as to what constitutional violations have been alleged. Accordingly, the Complaint should be dismissed for failure to comply with Rule 8.

## II. PLAINTIFFS LACK STANDING TO CHALLENGE THE FIREARMS REGULATIONS AT ISSUE

As shown in the Attorney General's opening brief, plaintiffs have the burden of establishing standing. (ECF No. 19 at 7.) Plaintiffs argue that they have standing because they are "(A) seriously affected by the statutes, (B) in the zone of interests impacted, and (C) would risk prosecution by possessing" certain firearms or large-capacity magazines. (ECF No. 22 at 5.) This argument ignores the applicable Ninth Circuit law, cited in the Attorney General's opening brief, and finds no support in the cases cited by plaintiffs.

To start, *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014), does not support plaintiffs. That case stands for the undisputed proposition that a plaintiff can bring a pre-

enforcement challenge to a criminal law when the circumstances render threatened enforcement "sufficiently imminent." *Id.* at 2342.  To make this showing a plaintiff must allege "an intentional course of conduct arguably affected with constitutional interest, but proscribed by a statute" *and* "a credible threat of prosecution thereunder." *Id.*  For example, in *Driehaus*, the plaintiffs "pleaded specific statements they intended to make" that were arguably prohibited by the Ohio statute at issue and a specific time they intended to make those statements — "in future election cycles." *Id.* at 2343.

In contrast, plaintiffs have not pleaded which of the challenged statutes they would violate (*e.g.*, unsafe handguns, concealed-carry permits, large-capacity magazines, and assault weapons), much less any particular time or place that plaintiffs plan to violate any of these challenged statutes.  Instead, plaintiffs provided a long list of Penal Code sections that they do not like accompanied only by vague allegations that Cupp "intends" or "desires" to travel in public with guns, large-capacity magazines, or other weapons in ways that are not permitted by California law (Compl. ¶¶ 12, 14, 17-19), but that he has been "unconstitutionally prevented from doing so" because he "fears arrest, criminal prosecution, a fine, and imprisonment." (Compl. ¶ 21.)  Plaintiffs fail to point to any more specific allegations in their Complaint.  Nor do plaintiffs dispute that the Complaint fails to allege that either plaintiff owns any firearm that is restricted in California either because it is an assault weapon or because it is an "off-roster" handgun.

Cupp's "indefinite intention[s]" are exactly the kind of allegations that the Ninth Circuit has said are insufficient to confer standing in *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996).[1]  Plaintiffs do not cite *San Diego County Gun Rights Committee* or offer any argument that would distinguish it.  *San Diego County Gun Rights Committee* remains the governing law, and has been applied by the Ninth Circuit as recently as August, 2016.  *See Wilson v. Lynch*, No. 14-15700, 2016 WL 4537376, at *4 (9th Cir. Aug. 31,

---

[1] Plaintiffs also seek an injunction requiring the return of firearms seized from them, and without requiring them to complete the Law Enforcement Gun Release application or pay the required processing fees.  The Attorney General does not challenge plaintiffs' standing to assert this claim, but the claim should be dismissed on the merits for the reasons discussed below and in the Attorney General's opening brief (ECF No. 19 at 14-15).

3

2016) (plaintiff lacked standing to challenge federal law criminalizing possession of a firearm by an unlawful drug user because plaintiff did not allege she was an unlawful drug user or that she had received a firearm).  Under the governing law, plaintiffs' "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury." *San Diego County Gun Rights Comm.*, 98 F.3d at 1127 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)).

None of the other cases cited by plaintiffs can overcome plaintiffs' failure to allege a concrete plan to violate the challenged laws.[2]  Plaintiffs appear to argue that their request for declaratory relief could allow them to avoid meeting the constitutional standing requirements. (ECF No. 22 at 4.)  Plaintiffs ignore that *San Diego County Gun Rights Committee* also involved a request for declaratory relief.  98 F.3d at 1124 ("Seeking declaratory and injunctive relief, plaintiffs allege that they 'wish and intend' to engage in unspecified conduct prohibited by the Act.")  Nothing in *Steffel v. Thompson*, 415 U.S. 452 (1974) allows plaintiffs to establish standing without alleging concrete plans to violate the challenged statutes, as evidenced by the Ninth Circuit's citation of that case in *San Diego County Gun Rights Committee*. 98 F.3d at 1127. Moreover, in *Steffel*, the plaintiff had already violated the statute at issue, had been warned to stop distributing handbills at the shopping center, had had his companion arrested for criminal trespass, had alleged a specific desire to return to a specific shopping center to distribute handbills, and the parties had stipulated that if the plaintiff returned and refused to stop handbilling, he would be arrested.  415 U.S. at 455-56.  In short, the plaintiff had alleged concrete plans to violate the law at issue and an imminent threat of enforcement.

Plaintiffs also argue that the Seventh Circuit, in *Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011), reasoned that the "very existence of the ordinance implied a threat to prosecute." (ECF No. 22 at 5.)  The Ninth Circuit, however, has "repeatedly admonished" that "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not

---

[2] Several cases cited by plaintiffs are inapposite because they do not involve pre-enforcement challenges to criminal laws.  (ECF No. 22 at 4 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) and *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).)

4

sufficient to create a case or controversy within the meaning of Article III." *San Diego County Gun Rights Committee*, 98 F.3d at 1126 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)). At least in the Ninth Circuit, "a general threat of prosecution is not enough to confer standing." *Id.* at 1127.

### III. SOVEREIGN IMMUNITY BARS PLAINTIFFS' FOURTH AMENDMENT AND FIFTH AMENDMENT CLAIMS AGAINST ATTORNEY GENERAL HARRIS.

The Attorney General showed in her opening brief that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." (ECF No. 19 at 9-11); *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted). Such a generalized duty to enforce state law is insufficient to overcome Eleventh Amendment sovereign immunity. *See, e.g.*, *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). Plaintiffs do not cite or respond to any of the cases cited by the Attorney General.

Instead, plaintiffs appear to conflate sovereign immunity with standing, arguing that "the Attorney General is a proper party for the case and controversy requirement." (ECF No. 22 at 6.) Worse still, plaintiffs concede that their theory of liability against the Attorney General for their Fourth Amendment and Fifth Amendment claims[3] rests solely on the allegation that the Attorney General has the constitutional power to supervise every district attorney and sheriff in the state. (ECF No. 22 at 5-6 (citing Cal. Const. Art. V., § 13).) As the cases cited by the Attorney General make clear, that constitutional provision does not permit a suit against the Attorney General over every allegedly unconstitutional search or arrest committed by any law enforcement officer in the state without any allegations that the Attorney General was involved in any of the relevant events.

The cases cited by plaintiffs undermine, rather than support, plaintiffs' argument. First, none of them involved claims brought against the Attorney General based on her supervisory role over sheriffs. Second, none of these cases appears to allow claims to proceed against individuals who were not personally involved in the relevant events. For example, in *Headwaters Forest*

---

[3] These claims are set forth in the fourth, fifth, seventh, eighth, tenth, and eleventh claims for relief. (Compl. ¶¶ 167-182, 195-215, 238-263.)

5

*Defense v. County of Humboldt*, the Ninth Circuit held that, to succeed on claims against a sheriff or deputy sheriff, "plaintiffs must establish that these defendants 'set in motion' the acts committed by the arresting officers and that these defendants 'knew or reasonably should have known' that such acts would cause constitutional injury, or that these defendants failed 'in the training, supervision, or control' of these officers." 211 F.3d 1121, 1126 n.2 (9th Cir. 2000) (citing and quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1988) and *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). Similarly, these cases require more than a mere allegation of supervisory authority to hold a county liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (proving county's liability required evidence that officer putting knee in plaintiff's back was "in accordance with the official policy of the Riverside County's Sheriff's Department"); *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002) (en banc) (under *Monell*, county is liable only if it "has adopted an illegal or unconstitutional policy or custom," not on a respondeat superior theory based on conduct of individual law enforcement officers).[4] These cases offer no support for plaintiffs' claims against the Attorney General based on boilerplate allegations that the Attorney General has a "supervisory role" over all law enforcement officers in California. (Compl. ¶¶ 29, 33.)

The Attorney General is immune from suit over searches, seizures, or arrests in which there is no allegation of any personal involvement of the Attorney General. These claims should therefore be dismissed.

**IV.  PLAINTIFFS' SECOND AMENDMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).**

Plaintiffs also fail to meaningfully engage with the Ninth Circuit law that requires dismissal of their Second Amendment claims on the merits. Most importantly, plaintiffs do not deny that a large part of their claims focus on their alleged desire to carry *concealed* weapons. (Compl. ¶¶

---

[4] Plaintiffs appear to cite the earlier, panel decision, which was vacated when the Ninth Circuit took the case en banc. (ECF No. 22 at 5 (citing July 12, 2000 ruling reported at 218 F.3d 1030).) Neither decision supports plaintiffs' claims against the Attorney General.

12, 21, 67, 88, 91, 116, 117, 118, 273, 274, 275.)  As shown in the Attorney General's opening brief (ECF No. 19 at 11), these claims are foreclosed on the merits by *Peruta v. County of San Diego*, which held that "the Second Amendment does not protect, in any degree, the carrying of concealed firearms by members of the general public."  824 F.3d 919, 942 (9th Cir. 2016) (en banc).  Plaintiffs do not acknowledge *Peruta* or make any effort to distinguish it.  All claims asserting a right to carry concealed weapons must be dismissed for this reason alone.

As to the remaining claims, plaintiffs appear to argue that, if a weapon or magazine is in "common use by law-abiding citizens," it cannot be regulated.  (ECF No. 22 at 6.)  None of the cases cited by plaintiffs support this proposition.  *Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011) found that "semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,'" as plaintiffs argue (ECF No. 22 at 6).  But plaintiffs ignore that the court went on to find that the regulations at issue passed intermediate scrutiny because there is "a substantial relationship between the prohibition of both semi-automatic rifles and magazines holding more than ten rounds and the objectives of protecting police officers and controlling crime."  *Id.* at 1264.  Accordingly, the court held that "the bans do not violate the plaintiffs' constitutional right to keep and bear arms."  *Id.*  Plaintiffs likewise ignore the Ninth Circuit's decision in *Fyock v. Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015), which cited *Heller II* in upholding a law restricting possession of large-capacity magazines.  Plaintiffs do not say anything that would undermine the Ninth Circuit's conclusions that (1) such laws restrict "possession of only a subset of magazines that are over a certain capacity" and thus leave open alternative channels for self-defense and (2) the government's interests in reducing violent crime and reducing the danger of gun violence, "particularly in the context of mass shootings and crimes against law enforcement," were substantial and important government interests.  *Id.* at 999-1000.[5]

Nothing in *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016), changes the law set forth in

---

[5] Plaintiffs argue that bans on large-capacity magazines are "unusual."  (ECF No. 22 at 3 (citing cases that did not involve large-capacity magazines or the Second Amendment).)  This is irrelevant.  As shown above, such bans have been upheld both inside and outside the Ninth Circuit.  *See id.*; *Heller II*, 670 F.3d at 1264.

7

the Attorney General's opening brief describing the two-step inquiry the Ninth Circuit uses to evaluate whether a law violates the Second Amendment. (ECF No. 19 at 11-12.) In *Caetano*, the Supreme Judicial Court of Massachusetts had found that stun guns were not protected by the Second Amendment because they "were not in common use at the time of the Second Amendment's enactment." *See Caetano*, 136 S. Ct. at 1027-28. This conclusion, and the Massachusetts court's other reasoning, directly contradicted the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that the Second Amendment extends to weapons that "were not in existence at the time of the founding." *See Caetano*, 136 S. Ct. at 1027-28 (quoting *Heller* 554 U.S. at 582). For that reason, a unanimous Supreme Court vacated and remanded. *Id.* at 1028.

*Caetano* does not change the framework set out in *Heller* and applied by the Ninth Circuit in numerous cases. *Heller* makes clear that the Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Accordingly, courts in the Ninth Circuit have upheld regulations that leave open ample alternative channels for self-defense. *See, e.g.*, *Fyock*, 779 F.3d at 999 (restrictions on large-capacity magazines passed intermediate scrutiny); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961, 970 (9th Cir. 2014) (restrictions on hollow-point ammunition passed intermediate scrutiny); *Wilson*, 2016 WL 4537376, at *6 (noting that plaintiff could have purchased firearms before acquiring a registry card allowing her to possess marijuana); *Peña v. Lindley*, No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684, at *12 (E.D. Cal. Feb. 26, 2015) (plaintiffs' Second Amendment rights would be satisfied by access to nearly 1000 types of firearms that are on the roster of handguns that are not deemed unsafe). Plaintiffs fail to acknowledge or distinguish any of these cases.

*Caetano* also does not change the law that the regulation of "dangerous and unusual weapons" falls entirely outside the scope of the Second Amendment. *See Heller*, 554 U.S. at 627; *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). As shown in the Attorney General's opening brief (ECF No. 19 at 15-16), "[r]egulation of a weapon not typically possessed by law-abiding citizens for lawful purposes does not implicate the Second Amendment." *Fyock*, 779

8

F.3d at 997-98 (citing cases). Accordingly, California can regulate weapons such as slungshots, which are "ordinarily used for criminal and improper purposes," without violating the Second Amendment. *See People v. Fannin*, 91 Cal. App. 4th 1399, 1402 (2001) (citations omitted); *Peruta*, 824 F.3d at 937-38 (citing Texas case from 1871 and West Virginia case from 1891 upholding statutes that prohibited possession of slungshots).

Finally, plaintiffs argue that a failure to "immediately return" the firearms that were seized "has deprived plaintiffs of their ability to exercise their Second Amendment rights." (ECF No. 22 at 7.) Plaintiffs do not dispute that they could obtain the return of these firearms by completing a short form and paying a small fee. They cite no case that would support the argument that requiring them to complete the form and pay the fee violates their Second Amendment rights. Nor do they acknowledge or distinguish the cases cited by the Attorney General that have upheld other form and fee requirements because they serve important purposes by helping to keep guns out of the hands of convicted felons and the mentally ill. (ECF No. 19 at 14-15); *Bauer v. Harris*, 94 F. Supp. 3d 1149, 1155 (E.D. Cal. 2015) (upholding $19 fee on firearms transactions); *Kwong v. Bloomberg*, 723 F.3d 160, 167-69 (2d Cir. 2013) (upholding handgun licensing process and $340 fee for three-year license).

### V. PLAINTIFFS' EQUAL PROTECTION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

Plaintiffs also fail to acknowledge or distinguish the cases that require dismissal of their equal protection claim. Most importantly, plaintiffs ignore *Teixeira v. County of Alameda*, 822 F.3d 1047 (9th Cir. 2016), cited in the Attorney General's opening brief (ECF No. 19 at 16). Because plaintiffs' "equal protection challenge is 'no more than a [Second] Amendment claim dressed in equal protection clothing,' it is 'subsumed by, and coextensive with' the former, and therefore is not cognizable under the Equal Protection Clause." *Id.* at 1052 (quoting *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)). For this reason alone, plaintiffs' equal protection claim should be dismissed.

As shown in the Attorney General's opening brief (ECF No. 19 at 16-17), the Complaint also fails to define the parameters or characteristics of any similarly situated "control group"

9

against which active or retired peace officers can be compared. This is a threshold requirement for stating an equal protection claim. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Plaintiffs' opposition addresses this requirement obliquely, if at all. Perhaps the block quote from *Heller* suggests that plaintiffs intend the control group to be "all Americans" or "the people," as that phrase is used in the Constitution. (ECF No. 22 at 8.) In any event, plaintiffs do not point to any allegations in the Complaint to show that their proposed control group is "similarly situated" to the active or retired peace officers covered by the challenged exemptions. Such allegations are required to state a claim for an equal protection violation. *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002), abrogated on other grounds by *Heller*, 554 U.S. 570 ("[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately.") (citation omitted).

Without acknowledging or distinguishing the cases cited by the Attorney General that applied rational basis review (ECF No. 19 at 18-20), plaintiffs argue that strict scrutiny applies. (ECF No. 22 at 7-8 (citing *Romer v. Evans*, 517 U.S. 620, 631 (1996)).) Because the challenged restrictions do not violate the Second Amendment, as explained above, rational basis review applies. *See, e.g.*, *Teixeira*, 822 F.3d at 1052; *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012); *Nichols v. Brown*, No. CV 11-09916 SJO (SS), 2013 WL 3368922, at *6 (C.D. Cal. July 3, 2013). Plaintiffs also ignore the numerous cases, cited in the Attorney General's opening brief, that recognized that retired peace officers are in "greater need of self-protection" or face "heightened personal security risks" as compared to ordinary citizens, and therefore concluded that the challenged exemptions are rational. (ECF No. 19 at 19-20.) Thus, any "implicit[]" conclusion that retired peace officers and ordinary citizens were similarly situated in *Silveira* (ECF No. 22 at 8), was focused on the desire to "use for their personal pleasure military-style weapons," 312 F.3d at 1090-91, and is not relevant here. (*See, e.g.*, ECF No. 20-1 at 10-11 (*Garcia v. Harris* slip op.) (distinguishing *Silveira*).)

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against the Attorney General.

10

Reply in Support of Attorney General's Motion to Dismiss
(2:16-cv-00523-TLN-KJN)

| | |
|---|---|
| Dated: November 10, 2016 | Respectfully Submitted, |
| | KAMALA D. HARRIS<br>Attorney General of California<br>MARC A. LeFORESTIER<br>Supervising Deputy Attorney General |
| | _____/s/ Kevin A. Calia_____<br>KEVIN A. CALIA<br>Deputy Attorney General<br>*Attorneys for Defendant*<br>*Attorney General Kamala D. Harris* |

## CERTIFICATE OF SERVICE

Case Name:   **Cupp, James Edward v. Kamala D. Harris, et al.**   No.   **2:16-cv-00523-TLN-KJN**

I hereby certify that on November 10, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF DEFENDANT ATTORNEY GENERAL KAMALA D. HARRIS'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 10, 2016, at Sacramento, California.

| Eileen A. Ennis | *Eileen A. Ennis* |
|---|---|
| Declarant | Signature |

SA2016102600
12495425.doc