Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

## THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual )<br><br>Plaintiff, )<br><br>vs. )<br><br>KAMALA D. HARRIS Attorney General of the ) State of California, in her official capacity only; ) et al. )<br><br>Defendants. )<br>_____ ) | **Case No.**  16-CV-00523-TLN-KJN<br><br>PLAINTIFF JAMES EDWARD CUPP'S MOTION FOR PRELIMINARY EQUITABLE AND INJUNCTIVE RELIEF AGAINST DEFENDANTS XAVIER BECERRA (formerly KAMALA D. HARRIS) Attorney General of the State of California (Now XAVIER BECERRA); Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity<br><br>**Date:** May 3, 2018<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2, 15th floor<br>**Judge:** Hon. Troy L. Nunley<br>**Action Filed:** March 11, 2016 |

## INTRODUCTION

California's gun laws are complicated. See *Peruta v. County of San Diego*, 824 F.3d 919, 925 (9th Cir. 2016) (en banc), cert. denied, 2017 WL 176580 (June 26, 2017)("California has a multifaceted statutory scheme regulating firearms.").  In California, the State has enacted, over the span of two decades, an incrementally more burdensome web of restrictions on the rights of

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1   law-abiding responsible gun owners to buy, borrow, acquire, modify, use, or possess firearms,

2   ammunition, magazines, and accessories. The enforcement of those laws has resulted in plethora of

3   other gun regulations, the end result of which is the disarming of its citizens.

4       Enforcement of the current laws represents a total shift from the paradigm that holds gun

5   ownership as an unalienable right to a more post-modern view of gun ownership as a privilege

6   bestowed — or revoked — by government in degrees. This case is brought before this Court to

7   challenge the constitutionality of state law and law enforcement's policy relating to the confiscation

8   of firearms in the course of a weapons charge which was dismissed, but the firearms are never

9   returned even though they were unrelated to the underlying charge, which in this case was the open-

10  carry of two hunting knives.  Cupp Decl. ¶s 12, 14, 18, 19, 21, 22, Exhibit "B" property sheet.

11      WE THE PEOPLE have the right to stay silent and not incriminate ourselves, we have the

12  right to an attorney, we have the right to face our accusers, and we have the right to know what we

13  are being charged with. We have other rights as well, rights that handcuff the government while they

14  investigate us. The government must get a warrant to search our property or to listen to our private

15  conversations. The government must show probable cause to get those warrants, and the government

16  must prove their case beyond a reasonable doubt.

17      Sometimes the government oversteps its boundaries in its zeal to prosecute criminals.  This is

18  a textbook example of what happens when onerous gun laws are passed and enforced without any

19  regard for the Second Amendment.  In its zeal to appease political constituents and disregard the

20  Second Amendment, government enters the homes of those arrested and confiscates firearms,

21  ammunition, and various accouterments completely unrelated to the crime charged (i.e. concealed

22  knife) — without a warrant, and in violation of the Fourth Amendment!

23      Plaintiff James Edward Cupp (the "Plaintiff" or "Carroll") is seeking a preliminary injunction

24  preventing government, during the pendency of this action from retaining possession of firearms that

25  it confiscated from his home, and their immediate return.

26      Fundamentally, this case involves law enforcement's application of state law, which all

27  parties agree is the relevant police policy and law authorizing the confiscation of firearms in certain

28  cases and incidents.

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1   Years have now passed without any return of property/firearms nor has the order for return of
2   property been complied with, despite the fact that all criminal charges were summarily dismissed and
3   no order of protection was issued; and he is not otherwise disqualified from owning or possessing a
4   firearm.

5                                                    **FACTS**

6   Cupp is a citizen of the State of South Dakota. Cupp Decl. ¶ 1. Cupp has no criminal record.
7   Cupp Decl. ¶3. As a resident of the state of South Dakota, and fully exercising the rights and
8   privileges thereof as a free person of that state, and under the laws of the State of California, the
9   property and firearms seized by the government were and are legal to possess.  Cupp Decl. ¶ 6;
10  *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

11  On March 25, 2014, Cupp's home was a Fifth Wheel, made by KZ, Escalade. CUPP only
12  lives in his mobile home, and does not own a house affixed to land, nor does he rent any fixed home.
13  Therefore, CUPP continuously travels through California which the possession of certain arms and
14  weapons are not protected, though allowed in every other western state. Cupp Decl. ¶ 4.

15  On March 25, 2014, while under arrest, and handcuffed, Defendants agents entered the home
16  of Cupp and seized his property without probable cause, even though they had sufficient time to
17  obtain a warrant and no exigency existed.  Cupp's RV was miles away, locked, and unoccupied.
18  Cupp Decl. ¶s 13-15.

19  On March 25, 2014, the following property owned by Cupp was seized without a warrant,
20  pursuant to state law and municipal policy.

21      a.      Winchester 12 gauge Shotgun serial number 159604A.
22      b.      Savage 30.06 Bolt Action Rifle serial number F426673.
23      c.      Marlin .22 Caliber Rifle serial number 06156981.
24      d.      Browning .22 Caliber Pistol serial number 65SNV01591.
25      e.      Raven .22 Caliber Pistol serial number 188422.
26      f.      Smith and Wesson .357 Caliber Pistol serial number BUF2660.
27      g.      Ammo Can containing 260 rounds of 30.06 ammunition.
28      h.      Black Holster.

**- 3 -**

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1    i.    10 rounds of .22 Caliber ammunition.

2    j.    6 rounds of .25 Caliber ammunition. Cupp Decl. ¶s 12, 14, 18, 19, 21, 22, Exhibit "B"

3          property sheet.

4    On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number

5    14M02083) was filed against Cupp for violation of penal code section 21310, which provides.

6    "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any

7    person in this state who carries concealed upon the person any dirk or dagger is punishable by

8    imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of

9    Section 1170."  Cupp Decl. ¶ 5.

10    On 05/30/2014, the case against Cupp was dismissed with prejudice on the Sacramento

11    District Attorney's own motion as the two knives were not daggers nor were they concealed.  This

12    fact resulted in an order for return of all property to Cupp which was seized. Cupp Decl. ¶ 18.

13    Plaintiff's two knives were returned to him which were arms protected by the Second

14    Amendment per *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078), but not

15    his six firearms and other firearm related tools and equipment which were also protected by the

16    Second Amendment. Cupp Decl. ¶ 19; *Caetano v. Massachusetts*, 577 U.S. ___, (March 21,

17    2016)(No. 14-10078).

18    ## ARGUMENT

19

20    A federal "district court should grant a preliminary injunction if plaintiffs show either: (1)

21    probable success on the merits and a possibility of irreparable injury; or (2) sufficiently serious

22    questions on the merits as to make them fair ground for litigation and a balance of hardships tipping

23    decidedly in plaintiffs' favor . . . These two tests are not separate, but 'merely extremes of a single

24    continuum.'"  *Matsumoto v. Pua*, 775 F.2d 1393, 1395 (9th Cir. 1985)

25    "The district court must also consider whether the public interest favors issuance of the

26    injunction." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir.

27    2003) (en banc) (per curiam). Applying these traditional equitable principles the United States

28    Supreme Court has recognized, and assuming the government had a very temporary interest in

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1   disarming plaintiff; it is perfectly clear that the governmental infringes upon a Second Amendment
2   right when it permanently deprives plaintiff from his arms he safely and lawfully possessed at the
3   time of seizure, at the time this action was filed in 2016, and the time of this request for preliminary
4   relief in 2018.

5        Finally, Plaintiff is not only likely to succeed on the merits but is also likely to satisfy the
6   other preliminary injunction requirements. Denial of a constitutional right is the quintessential
7   irreparable injury, and the need for immediate relief is only more evident when the injury involves
8   physical dispossession of property necessary to exercise a right. There is no public interest in
9   inflicting a likely constitutional violation, especially when the status quo can be preserved with no
10  demonstrable harm to anyone. To be clear, Plaintiff merely seeks a return of his property in the same
11  manner in which his two knives were returned; nothing more.

12  **A. Plaintiff Is Likely To Succeed On The Merits.**

13       First, a government seizure of arms "in common use" by law-abiding citizens for self-defense
14  plainly violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).
15  The state can point to no justification—let alone one sufficient to withstand heightened scrutiny—for
16  permanently seizing firearms lawfully and safely owned by approximately 70 to 100 million
17  Americans to defend themselves.  Second, physically dispossessing gun owners of their private
18  property without just compensation from the government violates the Takings Clause. It is no answer
19  that the owner of a firearm confiscated by the state without any form of process can simply go out
20  and buy another firearm. Whatever expectations people may have regarding regulation of their
21  property, they do not expect it to be "occupied or taken away." *Horne v. Dep't of Agric.*, 135 S. Ct.
22  2419, 2427 (2015)(leading Taking case regarding personal property). Third, because it permanently
23  deprives owners of lawfully acquired firearms without advancing the government's interest in public
24  safety, the seizure of firearms violates the Due Process Clause. There is simply no reason to believe
25  that this will not continue.

26       Cupp's firearms (i.e. property) were taken without any process whatsoever, and this
27  deprivation results from enforcement of the established state procedures and from actions by officials
28  with authority to both cause deprivations and provide post-deprivation process.  The defendants are

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1   all considered state officials as the joint purpose is to in fact confiscate firearms without due process

2   under state law, no different than district attorneys being considered state officials when prosecuting

3   crimes and controlling the return of property.

4       "To set forth a procedural due process violation, a plaintiff, first, must establish that his

5   protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant

6   deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109,

7   1114 (8th Cir. 1999) (per curiam) (citation omitted). "The requirements of due process are not rigid;

8   rather, they `call[] for such procedural protections as the particular situation demands."' *Mickelson v.*

9   *Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (quoting *Greenholtz v. Inmates of Neb. Penal &*

10  *Corr. Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).

11      Here, the interest affected is the use and possession of property necessary to exercise a

12  fundamental right – the right to keep and bear arms.  No one can dispute that Cupp has a property

13  interest in his firearms that entitles him to process. This property interest is significant and resulted

14  in an indefinite deprivation of firearms following a frivolous criminal charge.

15      The government had no right to enter the home of Cupp; as there was adequate time to obtain

16  a warrant, and no immediate danger existed. Then, after Fourth Amendment violation, the

17  government violates both the Second and Fifth Amendment by retaining the firearms for over several

18  years.  The Court must consider "`the likelihood of an erroneous deprivation of the private interest

19  involved as a consequence of the procedures used."'  *Mickelson*, 823 F.3d at 926 (quoting *Mackey v.*

20  *Montrym*, 443 U.S. 1, 13 (1979)).

21      Once the government seized the firearms, there was no process for their return along with all

22  the other property wrongfully seized. There are two Eighth Circuit decisions which are on point.  See

23  *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001), and *Walters v. Wolf*, 660 F.3d 307 (8th Cir.

24  2011).

25      In *Lathon*, police seized firearms from plaintiff per a valid search warrant but then refused to

26  return them, absent a court order, even after it became clear the firearms were not contraband or

27  needed as evidence and no criminal charges were to be filed.

28      In *Walters*, the plaintiff's firearm was seized per a valid arrest. The plaintiff demanded the

- 6 -

1  return of his firearm on several occasions, but though all charges against him had been dismissed or

2  resolved, the chief of police refused to return the firearm without a court order.

3       In both cases, the Eighth Circuit concluded that two separate deprivations had occurred: the

4  first, valid deprivation per a warrant or arrest, and a second, invalid deprivation that occurred when

5  something changed (police determined the weapons were not contraband or evidence, criminal

6  charges were dropped or resolved), with the result that the police no longer had a legal basis to retain

7  the weapons. See *Walters*, 660 F.3d at 314 ("A second deprivation occurred requiring a new due

8  process analysis when the defendants, with no legal grounds, refused to return Walter's property.");

9  *Lathon*, 242 F.3d at 843 ("The pivotal deprivation in this case was not the initial seizure of the

10  ammunition and weapons, but the refusal to return them without a court order after it was determined

11  that these items were not contraband or required as evidence in a court proceeding."). In both cases,

12  because the second deprivation occurred per official policy in accordance with state law, when the

13  police no longer had grounds to hold the firearms, and without "attendant exigencies prohibiting or

14  making impractical a reasonable predeprivation process," *Walters*, 660 F.3d at 314, the court

15  concluded that available post-deprivation process would not suffice. See *id.* at 315; *Lathon*, 242 F.3d

16  at 843-44.

17       These holdings turned both on the "second" deprivation — at which point something had

18  changed and the police no longer had reason to hold the firearms — and, as the Eighth Circuit later

19  explained in *Mickelson v. County of Ramsey*, the "the inherently `lengthy and speculative' nature of

20  the post-deprivation remedy available — an action in tort" is not a procedure at all. *Mickelson*, 823

21  F.3d at 928 (quoting Walters, 660 F.3d at 313-14); see also *Lathon*, 242 F.3d at 844 (explaining that

22  even if a post-deprivation remedy could suffice, the court would not find the one available adequate

23  because the plaintiff's firearms had been distributed among four different Missouri counties and the

24  plaintiff's only recourse was to file four separate replevin actions to secure the return of his

25  weapons). "Our court since has suggested that post-deprivation administrative remedies are innately

26  distinguishable," a reading "consistent with the fact that our decision in *Walters* made much of the

27  city's failure to afford any independent administrative process through which an arrestee could

28  contest the city's retention of his property, even after the dismissal of charges." *Mickelson*, 823 F.3d

1  at 928. In some cases, then, "post-deprivation process may suffice, even when the deprivation occurs

2  pursuant to established state policy." *Id.*

3      In this case, the police seized Cupp's firearms, relying upon a plethora of laws and policies

4  with a single objective – the confiscation of firearms for the slightest of reasons – and then to retain

5  them when the purported "reason" has passed.  There was no reason to search Cupp's trailer miles

6  away and then seize his property.  Like *Lathon* and *Walters*, seizure was part of a criminal case

7  where the police no longer had reason to hold the firearms, resulting in a second, "constitutionally

8  impermissible deprivation." *Cf. Walters*, 660 F.3d at 315.

9      Defendants City of Citrus Heights, Chief Christopher Boyd, Christian Baerresen, and Thomas

10  Lamb seized six firearms legally owned and possessed by Cupp. Till this date, not one of those

11  firearms have been returned.  For over two years, Cupp's has been prohibited from exercising his

12  right to "keep" and "bear" arms as this right explicitly includes the right to have access to

13  "arms"without government interference to the slightest degree. Defendants presently employ and

14  enforce a legal juggernaut of statutes, ordinances, and policies suppressing the Right to Keep and

15  Bear Arms, in violation of the Second Amendment; in sum, defendant law enforcement agencies

16  blatantly snub the United States Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S.

17  570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and most recently *Caetano v.*

18  *Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

19      "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an

20  appropriate decision maker may fairly subject a municipality to liability on the theory that the

21  relevant practice is so widespread as to have the force of law." (quoting Monell ).  See *McMillian v.*

22  *Monroe County*, 520 U.S. 781, 783 (1997); S*treit v. County of Los Angeles*, 236 F.3d 552, 564 (9th

23  Cir.2001).

24      The custom and policy of Boyd is to enforce state gun laws, and obviously this is a wide-

25  spread policy. Cupp was first arrested for a knife openly carried. See SAC Exhibit "A".  Next, miles

26  away, defendants illegally search his home and confiscated all his firearms, to never been seen again.

27  He was jailed but never prosecuted.  His firearms are still in defendants possession.  Ultimately,

28  Boyd and the Attorney General dictate whether those arms are to be returned.  The officers seize the

1    property, and the policy maker keeps the property.  SAC ¶s 58-59, 139, 169, 177.

2        The Second Amendment is the only right which cannot be exercised without possession,

3    access and ownership of a tool (i.e. gun, knife, taser, horse leash, dog leash, and even a pencil.).

4        Defendants seized Cupp's firearms, presumably pursuant to Penal Code Sections

5    18250-18275, by failing to immediately return plaintiffs firearms once it was determined that no

6    crime had been committed, defendants had a duty to immediately return those firearms.

7        It is Cupp's position that just like individual, non-supervisory defendants may be liable if

8    they knew or reasonably should have known that their conduct would lead to the deprivation of a

9    plaintiff's constitutional rights by others. See *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir.

10   2012)("The requisite causal connection is satisfied if [the defendants] set in motion a series of events

11   that [the defendants] knew or reasonably should have known would cause others to deprive [the

12   plaintiffs] of [their] constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir.

13   2006)).

14       There is no doubt defendants entered Cupp's home, confiscated his firearms, and till this day,

15   they are still in the government's possession.  Defendants have made no effort to return the property,

16   the Fourth and Fifth Amendment violations are clear on these facts.  The search, seizure and taking

17   of property violated Cupp's rights – there is <u>no immunity</u> or excuse as the law was clearly

18   established when the criminal complaint was dismissed on the District Attorney's own motion.

19       The Fifth Amendment guarantees that "due process of law" be part of any proceeding that

20   denies a citizen "life, liberty or property".

21   **B.    Plaintiff Undeniably Faces The Possibility of Irreparable Injury In The Absence
         Of An Injunction.**

22       If this Court concludes that Plaintiff is likely to succeed on one or more of his alleged

23   constitutional violations, the remaining preliminary injunction factors follow readily. "It is well

24   established that the deprivation of constitutional rights 'unquestionably constitutes irreparable

25   injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S.

26   347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed.

27   1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no

28

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights irreparable harm *per se*. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. See *McDonald v. Chicago*, 561 U.S. 742, 780 (2010) (refusing to treat the Second Amendment as a second-class right subject to different rules); see also *Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law").

The constitutional violations alone are enough to satisfy the irreparable harm factor, but the circumstances here make the irreparable harm unmistakable.

The need for immediate injunctive relief is even more apparent because the harm is a physical taking of property that cannot be remedied easily if at all—a quintessential example of irreparable injury. See, e.g., *Taylor v. Westly*, 488 F.3d 1197, 1202 (9th Cir. 2007) ("[W]ithout a preliminary injunction, plaintiffs run the risk that California will permanently deprive them of their property . . . . Once the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite 'irreparable harm.' ")

Finally, the property being taken is not just any personal item, but one that is constitutionally protected for the most essential purpose—defense of a person's life against harm. See *Heller*, 554 U.S. at 595. The irreparable harm could hardly be clearer.

**C.    The Balance Of Hardships Strongly Favors Plaintiff.**

California and government officials blatantly pass and enforce clearly unconstitutional laws and policies which have a direct and distinct impact on the right to "keep" arms and it is Plaintiff who suffers under the "balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011).  The state suffers no harm from a preliminary injunction. The state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); see *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted). But even absent the constitutional dimension of this lawsuit, the balance

**- 10 -**

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

of harms tips in Plaintiffs' favor.

The balance of equities also favors litigants who seek only "to preserve, rather than alter, the status quo while they litigate the merits of th[eir] action." *Rodde v. Bonta*, 357 F.3d 988, 999 n.14 (9th Cir. 2004). Here, granting the relief Plaintiff now seeks will merely maintain the status quo while the case moves forward on the merits, which further "strengthens their position" in the analysis of the equitable injunction factors. *Id*. Plaintiff was not prevented from lawfully possessing the firearms in California before they were seized; there is no reason why he is not entitled to the return of those same arms.

In fact, federal does not allow California to enforce its gun laws against non-resident individuals passing through the state.  See 18 U.S.C. 926A (the "Safe Passage" act).

California is imposing "legal trap" for gun owners passing through the state. However, gun owners who are eligible and comply with a provision of federal law may lawfully travel through California despite state or local laws to the contrary.

In 1986, the 1968 Gun Control Act was revised by the enactment of the Firearms Owners' Protection Act ("FOPA"). Among the various FOPA provisions, the Act added 18 U.S.C. 926A (the "Safe Passage" act) to the Federal Criminal Code. This section applies to any person not prohibited under federal law from possessing firearms. Such persons may transport firearms from any place where they can lawfully possess and carry such firearms, to any other place where they can lawfully possess and carry such firearms.

**D.      The Public Interest Overwhelmingly Favors An Injunction.**

The public interest favors issuance of the requested injunction. Plaintiff seeks to vindicate his constitutional rights, and those who just happen to be passing through the state legally possessing firearms.  In light of the fundamental nature of the right to keep and bear arms, there is no doubt that protection of that right is unquestionably in the public interest.

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (emphasis added). Here, Plaintiffs seek to vindicate their fundamental Second Amendment rights, as well as their rights under the Takings and Due Process

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1 Clauses. As the Ninth Circuit has made clear, "all citizens have a stake in upholding the

2 Constitution" and have "concerns [that] are implicated when a constitutional right has been

3 violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). Thus, not only

4 are Cupp's rights at stake, but so are the rights of all citizens seeking to excercise their rights under

5 the Second Amendment. The public interest tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208.

6     Moreover, the government has no plausible argument that returning the property will

7 endanger public safety. After all, there is nothing prohibiting Cupp from owning and possessing the

8 firearms seized in violation of his Second, Fourth and Fifth Amendment rights.

9 **CONCLUSION**

10     While WE THE PEOPLE want to support those who work to protect us from criminals – we

11 must remind them that the checks on their power are in place to protect us, the innocent, from them.

12 It may make prosecuting criminals harder – but it makes protecting the rights of the innocent easier.

13     As the Supreme Court has recognized, the right to keep and bear arms is no less precious than

14 any other right being subjected to a prior restraint.  In a free country, politicians don't get to use its

15 citizens as pawns for their own political and selfish gain – and giving a voice to mob rule.

16     Defendants continue to undermine the "precious" right to keep and bear arms, repeatedly

17 disenfranchising thousands of citizens caught up in a criminal justice system that is very quick to

18 remove arms from its citizens without any process, but not so quick to return them. An injunction

19 must therefore issue for return of the following items of property:

20     a. Winchester 12 gauge Shotgun serial number 159604A.
    b. Savage 30.06 Bolt Action Rifle serial number F426673.
21     c. Marlin .22 Caliber Rifle serial number 06156981.
    d. Browning .22 Caliber Pistol serial number 65SNV01591.
22     e. Raven .22 Caliber Pistol serial number 188422.
    f. Smith and Wesson .357 Caliber Pistol serial number BUF2660.
23     g. Ammo Can containing 260 rounds of 30.06 ammunition.
    h. Black Holster.
24     i. 10 rounds of .22 Caliber ammunition.
    j. 6 rounds of .25 Caliber ammunition. Cupp Decl. ¶s 12, 14, 18, 19, 21, 22, Exhibit "B"
25 property sheet.

26 Dated: March 14, 2018       THE LAW OFFICES OF GARY W. GORSKI
                            Respectfully Submitted,
27                             /s/ Gary W. Gorski
                            Gary W. Gorski
28                             Attorney for Plaintiffs

- 12 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**