Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

# THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE | **Case No.**  16-CV-00523-TLN-KJN<br><br>**DECLARATION OF JAMES EDWARD CUPP** |

BRUCKER, # 512; COUNTY OF PLACER;
EDWARD N. BONNER, in his official capacity
as Sheriff of County of Placer; Placer County
Deputy MASON, # 181; Placer County Deputy
HINTZE, # 101.

        Defendants.

---

### DECLARATION OF JAMES EDWARD CUPP

**I, JAMES EDWARD CUPP, hereby make this declaration under the penalty of perjury.**

1.      I am a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.  All times hereinafter, I will identify myself in the <u>third person</u> as simply CUPP for ease of reference.

2.      CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996), until he changed his residency to South Dakota, which requires no such license as open carry is allowed.

3.      CUPP has no criminal record.

4.      His home is a Fifth Wheel, made by KZ, Escalade.  CUPP only lives in his mobile home, and does not own a house affixed to land, nor does he rent any fixed home. Therefore, CUPP continuously travels through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

5.      CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

6.      As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

7.      CUPP presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic

rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

8.  CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving through Los Angeles during a civil protest in the course and scope of his employment as a trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

9.  CUPP desires to travel with firearms and knives, which as a citizen of the state of South Dakota is legal, into the state of California to protect himself, his family, his property, and his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and while performing various other activities such as carrying large sums of money associated with his work.

10.  Moreover, CUPP specifically has concern for the safety of himself and his cargo because of truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

11.  Attached hereto as **Exhibit "A"** is a true and correct copy of the Sacramento Superior Court case docket noting the charge for PC 21310, carrying a concealed knife and a picture of the visible knife on the outside part of CUPP's leather vest.

12.  Attached hereto as **Exhibit "B"** is a true and correct copy of the inventory sheet denoting the firearms confiscated by the police, and incorporated herein.

13.  Prior to March 25, 2014, CUPP had physically walked into CITRUS HEIGHTS POLICE DEPARTMENT and into SACRAMENTO SHERIFF'S DEPARTMENT headquarters with the very same knife vest he was later arrested for.  The Sheriff's department simply said he has to leave the vest outside.  No threat of arrest was ever made.

14.  On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER

who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

15.   CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

16.   On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

17.   California Penal Code Section 21310 violates the Second Amendment, Privileges and Immunities Clause of the 14th Amendment.

18.   On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

19.   Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

20.   At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

21.   To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, and $1,000.

- 4 -

22. CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

23. In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

24. The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" was created by Defendant HARRIS in or around January 2012.

25. On or about February 27, 2015, CUPP, through his attorney, filed a Claim for Damages (Tort Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

26. In addition, this Claim was also an internal affairs complaint.

27. In a letter dated March 23, 2015 rejecting both CUPP's tort claim and demand for return of his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an unconstitutional law and creating a undue burden on CUPP.

28. Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer acting under color of law in both his individual and official capacities.

29. Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

30. Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this

1    action.

2    31.   Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official

3          capacities.

4    32.   Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

5          employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

6          HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

7          responsible for enforcing the code sections complained of in this action.

8    33.   Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

9          of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

10         used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

11         this action.

12   34.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

13         servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

14         CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. §

15         1983, and is responsible for enforcing the code sections complained of in this action.

16   35.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

17         02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant

18         CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under

19         color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing

20         the code sections complained of in this action.

21   36.   Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

22         POLICE DEPARTMENT have not been located, but they will be added to this complaint

23         upon uncovering their names through discovery.

24   37.   Plaintiff seeks monetary relief for being deprived of his right and property.

25   38.   Plaintiff seeks inThe Fourth Amendment guarantees law-abiding citizens to be secure in their

26         persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

27         violated, and no warrants shall issue, but upon probable cause, supported by oath or

28         affirmation, and particularly describing the place to be searched, and the persons or things to

39. CUPP was arrested and his property confiscated without probable cause for carrying a concealed weapon, protected by the Second Amendment, and which was not concealed, but instead, carried in a sheath as all fixed blade knives are carried that way.

40. The Fifth Amendment guarantees that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property".

41. CUPP was arrested and his property confiscated without due process for carrying a concealed weapon, protected by the Second Amendment, and which was not concealed, but instead, carried in a sheath as all fixed blade knives are carried that way.

42. However, former government workers have expansive Second Amendment rights, while all others have their rights continuously being stripped with no end in sight.

43. Even active duty, part-time and retired Arson-Inspectors are included within the group of those who are not subject to the draconian laws of California.  See **Exhibit "C"** attached.

44. As stated in **Exhibit "D"**, law enforcement officers can purchase an unlimited amount of firearms, without restriction or limited to specific type of caliber or capacity, nor are they limited to the safe gun list, exercising their Second Amendment rights without any of the burdens placed the plaintiffs.

45. Plaintiffs seeks:

   a. To purchase and travel through California with off-roster handguns, which are legal under federal law.

   b. To possess and purchase and travel through California with standard size handgun and rifle magazines which most exceed 10 rounds,

   c. To travel interstate with magazines which contain more than 10 rounds of ammunition.

   d. To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

46. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950,

27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

    a.    Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

    b.    Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

    c.    Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are subjected to (this is especially important since it allows interstate travel with a loaded firearm under federal law). Penal Code §§ 25450, 25475, 12031(b)

    d.    If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm. Penal Code §§ 25455, 25465, 12031(b)

    e.    Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense, which they can keep even after their government service is terminated.

47.    In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

48.    CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

49.    Thus, because CUPP is continuously harassed for carrying knives exposed, it is CUPP's position that he wants to carry them concealed on his person so that he is not profiled by law enforcement or that he causes unnecessary worry to citizens carrying constitutional protected arms.

50.    CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while

traveling into and through California, and taking up temporary residence for purposes of work.

51.  CUPP has unconstitutionally been prevented from doing so because of the code sections challenged and complained of herein, and because of Defendants' unconstitutional application and enforcement of those same sections.

52.  CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit or prior permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess of open carried and/or concealed weapon on his person, in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a permit or prior permission authorizing him to do so.

53.  Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

54.  At all relevant times, CUPP had temporary abode was parked at a friend's house, which was docked, plugged, and his truck was parked in another location.

55.  At all relevant times, CUPP was traveling through California with his travel trailer, and only staying temporarily for a few weeks visiting a friend.

56.  Plaintiff intends to travel in and out the State of California with ammunition magazines which hold more than ten rounds, and they intend to purchase, possess, and use handguns which are not on California's approved list.

57.  However, because of the threat of enforcement, and actual enforcement, plaintiff seeks a permanent injunction enjoining HARRIS and the State of California from enforcing the magazine ban and safe gun list ban.

58.  Dealers may not sell any new handgun unless it is listed in the state Department of Justice roster of handguns certified for sale.

59.  The prohibition of purchasing and/or transportation of the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P320, the

Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.

60.   The lack of these safety features have resulted in an inordinate amount of accidental discharges by law enforcement, including the state's own experts who shot themselves.

61.   Plaintiff has the same rights active and retired officers have to purchase (and use for personal self-defense) the best and safest tool for the job.

62.   California active and retired officers legally purchased 7,600 banned assault weapons through a legal exemption promulgated by the Attorney General (http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-assault-weapons-ill/), and now the municipalities are jumping on the bandwagon of carving rights and privileges for only the chosen few (i.e. retired law enforcement). http://www.washingtontimes.com/news/2015/dec/3/retired-lapd-cops-exempted-ban-high-capacity-magaz/

63.   Plaintiff are seeks:

    a.   To purchase and travel through California with off-roster handguns, which are legal under federal law.

    b.   To possess and purchase and travel through California with standard size handgun and rifle magazines which most exceed 10 rounds,

    c.   To travel interstate with magazines which contain more than 10 rounds of ammunition, and travel through California.

    d.   To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

64.   The Second Amendment to the United States Constitution provides:

> A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

65.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

- 10 -

66.   The Second Amendment is incorporated to the states through the Fourteenth Amendment.

67.   The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

68.   The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

69.   Unlike California, the majority of the population of the United States are armed, and permitted to purchase, transport and carry commonly used handguns and rifles.

70.   Semi-Automatic firearms and large capacity ammunition magazines are banned in only five states: California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore) Massachusetts, New Jersey (Camden, Newark, Jersey City), New York (New York) and D.C. (Hawaii's ban applies only to such magazines used with handguns).

71.   As a result, these states also have the highest murder rates and crime ridden cities in the U.S.

72.   Residents of Washington, D.C., with the lowest private gun ownership rate in the country, are more than five (5) times more likely to be the victim of a violent crime as compared to residents of Wyoming, with the highest private gun ownership rate in the country.

73.   In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period."

74.   Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

75.   The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

76.   Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

77.   California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when

**- 11 -**

1   confronted by an armed attacker.

2   78.   California Penal Code section 25400 does not prohibit a citizen of the United States over 18

3   years of age who is in lawful possession of a handgun, and who resides or is temporarily in

4   California, from transporting the handgun by motor vehicle provided it is unloaded and

5   stored in a locked container . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

6   79.   It is illegal for any person to carry a handgun concealed upon his or her person or concealed

7   in a vehicle without a license issued pursuant to Penal Code section 26150 . (Pen . Code, §

8   25400)  A firearm locked in a motor vehicle's trunk or in a locked container carried in the

9   vehicle other than in the utility or glove compartment is not considered concealed within the

10   meaning of the Penal Code section 25400; neither is a firearm carried within a locked

11   container directly to or from a motor vehicle for any lawful purpose . (Pen . Code, § 25610)

12   As stated by Defendant HARRIS online.

13   80.   It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place,

14   on any public street, or in any place where it is unlawful to discharge a firearm . (Pen . Code,

15   § 25850, subd . (a))  As stated by Defendant HARRIS online.

16   81.   Nonconcealable firearms (rifles and shotguns) are not generally covered within the provisions

17   of California Penal Code section 25400 and therefore are not required to be transported in a

18   locked container . However, as with any firearm, nonconcealable firearms must be unloaded

19   while they are being transported . A rifle or shotgun that is defined as an assault weapon

20   pursuant to Penal Code section 30510 or 30515 must be transported in accordance with Penal

21   Code section 25610.  As stated by Defendant HARRIS online.

22   82.   Peace officers and honorably retired peace officers having properly endorsed identification

23   certificates may carry a concealed weapon at any time. Otherwise, these exemptions apply

24   only when the firearm is carried within the scope of the exempted conduct, such as hunting or

25   target shooting, or within the course and scope of assigned duties, such as an armored vehicle

26   guard transporting money for his employer. A person who carries a loaded firearm outside the

27   limits of the applicable exemption is in violation of the law, notwithstanding his or her

28   possession of an occupational license or firearms training certificate. (Pen . Code, §

**- 12 -**

1   12031(b).)  As stated by Defendant HARRIS online.

2   83.   AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic

3   Partner of Peace Officer Killed in the Line of Duty: Provides an exception to the Unsafe

4   Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of

5   duty to purchase their spouse/domestic partner's service weapon and hi-capacity magazines.

6   (Pen . Code, § 32000.)

7   84.   This extends to ammunition, current authority for a city or county to impose a charge relating

8   to the seizure, impounding, storage, or release of a firearm. (Pen . Code, § 33880).

9   85.   Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are

10   "typically used for lawful purposes" and are deemed presumptively reasonable as active duty

11   and retired law enforcement are granted the rights and privileges to use them when applying

12   reasonable force.

13   86.   Widespread law enforcement use of a particular firearm, weapon or magazine, or edged

14   weapon proves that particular arms are common and typically used for lawful purposes,

15   rather than "dangerous and unusual."

16   87.   Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national

17   consensus" against a law which existed in only six states, and not federally); *Kerr v.*

18   *Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws

19   "consider the rarity of state enactments in determining whether they are constitutionally

20   permissible.").

21   88.   Standard magazine bans are dangerous because they reduce typical defensive fire power.

22   They shift risk of injury from violent aggressors to law-abiding innocents.

23   89.   Typically, in an officer shooting of an <u>unarmed</u> civilian, they discharge more than 10 rounds

24   to stop a person.

25   90.   Commencing in the 1999 (the time after when most police switched to semi-automatic pistols

26   from revolvers), there began a spike in the total number of rounds expended by police

27   shooting innocent people.

28   91.   In 1999, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of

**- 13 -**

his apartment in New York City.  He committed no crime and was unarmed.  The shooting death of an <u>unarmed</u> 23-year-old Guinean immigrant in New York City is anything but anomalous in today's America.

92.  A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on him following a high-speed chase down an area freeway. The same month, New York police fired at a suspected murderer 84 times.

93.  Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

94.  Officer Wilson shot Michael Brown in the back 12 times.
https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

95.  In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two separate incidents in the early morning hours of February 7, 2013, police fired on people who turned out to be unrelated to Dorner and that Dorner (an African-American male) was not present at either incident and no firearms were involved in either incident (i.e. the police victims were unarmed).
https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidentifications

96.  Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic females.  Remarkably, they survived.

97.  Approximately 25 minutes after that incident, officers from the Torrance Police Department struck and opened fire on another vehicle.  Like the first shooting, the white male was unarmed and did not match the description of Dorner.  Over 30 bullets were fired at him.

98.  Therefore, since HARRIS and the State of California have determined that discharging more than 10 rounds for purposes of self defense is a reasonable use of force by law enforcement, then the Second Amendment and 14th Amendment protects the rights of all citizens to posses magazines and firearms holding more than 10 rounds, and no more than 30, since the average

1    magazine for all makes and models of firearms is between 11 to 30 rounds.

2    99.    Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald*

3    *v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass

4    and enforce laws resulting in categorical and constructive bans on firearms and attachments

5    thereto that millions of Americans, veterans, and retired peace officers commonly own for

6    lawful purposes, which then results in constructive ban on the right to travel.

7    100.   Other than California, only six other states (which obviously include Connecticut, New York

8    and New Jersey) have unconstitutional draconian firearms laws which no other state even

9    remotely mandates, including limitations on the carrying or possession of specific weapons

10   and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine

11   bans).

12   101.   Plaintiff seeks injunctive relief to enjoin HARRIS and the State of California from enforcing

13   laws, rules and regulations which:

14   a.     Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are

15   legal under federal law.

16   b.     Limit plaintiffs' ability to possess, transport and purchase standard size handgun and

17   rifle magazines which most exceed 10 rounds, as these are basic parts to modern

18   operational and safe firearms.

19   c.     Limit plaintiffs' ability to travel interstate with magazines which contain more than

20   10 rounds of ammunition.

21   d.     Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon.

22   Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

23   102.   Based upon information and belief, plaintiffs' firearms were illegally seized pursuant to this

24   statutory section.  If another section was relied upon, then this challenge is to the offending

25   statute.

26   103.   On January 1, 2005, the Law Enforcement Gun Release (LEGR) process became effective

27   with the addition of Penal Code (PC) section 12021.3.

28   104.   This process requires any person who claims title to any firearm that is in the custody or

**- 15 -**

1   control of a court or law enforcement agency and who wishes to have the firearm returned to
2   submit a LEGR Application form for a determination by the California Department of Justice
3   (the Department) as to whether he or she is eligible to possess a firearm.

4   105.   Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s)
5          that is in the custody or control of a court or law enforcement agency must submit a LEGR
6          Application along with the appropriate fees to the Department.

7   106.   Additionally, if an individual is seeking the return of a long gun purchased prior to January 1,
8          2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted
9          along with the appropriate fees.

10  107.   In violation of the Second Amendment, Defendant HARRIS and MUNICIPAL
11         DEFENDANTS enforce a statutory scheme pursuant to Penal Code Section Penal Code
12         Section 33850 (application for return of firearm), 33855 (authority of law enforcement to
13         enforce), 33860, 33880 (fee),  requiring CUPP to: 1) fill out and sign a document under the
14         penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF
15         FIREARMS Law Enforcement Gun Release Application", and 2) pay a processing fee of
16         $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

17  108.   CUPP had his firearms seized from his residences, without a warrant, without being charged,
18         tried or convicted of a crime.

19  109.   The firearms illegally seized have not been returned to plaintiffs.

20  110.   By failing to immediately return plaintiffs firearms once it was determined that no crime had
21         been committed, HARRIS has deprived plaintiffs of their ability to exercise their Second
22         Amendment rights by taking the very instruments necessary for exercising such a right, akin
23         to confiscating a paper and pen preventing the free exercise of speech.

24  111.   Plaintiffs seek a positive injunction for HARRIS to release and return all firearms and
25         ammunition illegally confiscated.  And for an injunction prohibiting enforcement of any
26         magazine law (so called High Capacity Magazine Ban) and handguns which are not included
27         on the Safe Gun list, for example, the Beretta M9a3, and handgun based upon the M9 service
28         pistol with slight modifications geared to men and women with smaller hands.

**- 16 -**

1

2                                                    VERIFICATION

3          I, Jim Cupp, have read the foregoing Declaration and it is true of my own knowledge, except
   as to those matters stated on information or belief, and as to those matters, I believe them to be true.
4  I declare under the penalty of perjury under the laws of the State of California and United States that
   the foregoing is true and correct.

5
          Executed on Thursday, September 20, 2016, in Roseville, California.
6

7                                          James Cupp

8                                          Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    - 17 -