Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

**THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>          Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; et al.<br><br>          Defendants. | **Case No.**  16-CV-00523-TLN-KJN<br><br>PLAINTIFF LAWRENCE "WOLF" HAVEN'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION AND FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANTS KAMALA D. HARRIS Attorney General of the State of California (Now XAVIER BECERRA) AND EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer<br><br>**Date:** May 3, 2018<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2, 15th floor<br>**Judge:** Hon. Troy L. Nunley<br>**Action Filed:** March 11, 2016 |

### INTRODUCTION

California Penal Code Section 22210 states that it is a criminal offense for "any person in this state who ... possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or **slungshot**." [emphasis added]

In addition, California Penal Code Section 22290 mandates that any leaded cane or any

instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or **slungshot** is a nuisance and "shall be subject to confiscation and summary destruction whenever found within the state."

First, what is a "slungshot"? Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the Peloponnesian Wars, man's weapon of choice was a rock with a rope attached to it. A "slungshot" is actually a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States. Have Decl. ¶ 5. It was a simple weapon, which itself had been modified to become a slingshot. In sum, it was an "arm" used prior to the invention of gunpowder.

Today various horse leads and other leather fringes hanging off a motorcycle are used for strictly aesthetic reasons, and like most things they have a history of their own. Back in the days , these leather leads and tassels were usually made with the motorcycle club colors, besides showing off their club colors the leads could be quickly released in case of emergency if , for example, the lead gets snagged on the motorcycle which could endanger the rider — or an improvised weapon just as simply as a rock could be used. When a motorcyclist has a long horse colored lead hanging from his or hers handlebars blowing in the breeze, its purpose becomes obviously – it is a public display which catch the eye of other riders and drivers. The lead will fan out while riding, and give the motorcycle a very distinctive look – just like a custom pain job. The panic snap is commonly used in the horse field to release an out of control horse – or, as here, if the cord became entangled with the motorcycle whereby the steering is affected. See **Exhibits A", "C" and "D"** attached to the declaration of Haven depicting just a small sample of expressive speech and uses of the so-called "slungshot".

Plaintiff Lawrence "Wolf" Haven (the "Plaintiff' or "Haven") is seeking a preliminary injunction enjoining government from enforcing California Penal Code Sections 22210 and 22290 as those provisions are unconstitutional as-written and as-applied under the Second Amendment which guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes, and arms includes more than just firearms; it includes all non-lethal weapons for purposes of self defense, including a leaded cane, or any instrument or weapon of the kind commonly known as a billy,

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

blackjack, sandbag, sandclub, sap, or <u>slungshot</u>.  See *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078, decided March 21, 2016.

Fundamentally, this case involves law enforcement's application of state law, which all parties agree is the relevant police policy and law authorizing the confiscation of non-lethal arms, as enumerated in California Penal Code Section 22210, which states that it is a criminal offense for "any person in this state who ... possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot."  In conjunction with § 22210, California Penal Code § 22290 mandates that any leaded cane or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot is a nuisance and "shall be subject to confiscation and summary destruction whenever found within the state."

## FACTS

In a classic case of the abuse of police power to seize a person and their property, Deputies MASON and HINTZE arrested plaintiff Haven and booked him on felony weapons charges for lawfully riding his Harley Davidson motorcycle on February 8, 2016 with a so-called "slungshot". In other words, defendant Placer County Sheriff's Department stopped Haven for a horse leash ornamentally dangling from his motorcycle's (affectionately known as his "iron horse") handlebar and what the government falsely alleged was an "illegal weapon". Haven Decl.¶ 9-14, 23, and **Exhibit "A"**; see also **"Exhibits "C and "D".**

Haven had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash, but sturdier). The horse lead depicted in **Exhibit "A"** was a gift to Haven, and had much sentimental value to him. Haven Decl.¶ 10, 13.

On March 3, 2016, the Placer County District Attorney filed charges against Defendant Haven for violating California Penal Code section 22210.  Haven was arraigned on the charges in Placer County Superior Court, and his property was mandated destroyed. **Exhibit "B"** is the Criminal Complaint filed against Haven for "possession" of a horse lead. Haven Decl.¶ 12-14.

California and its law enforcement are enforcing laws which criminalize any "potential" arm, including ornamental motorcycle accouterments found at the local feed and equestrian shops, or possessed by horse and dog owners. Haven Decl. ¶ 23.

Haven is a citizen of the State of California and the United States and resides in the County of Sacramento. Haven Decl. ¶ 1. Haven has no criminal record, but does have permanently on his record a felony arrest for an illegal "slungshot" and subsequent criminal complaint. Haven Decl. ¶ 2.

As a resident of the state of California, Haven has always intended to fully exercise the rights and privileges thereof as a free person of the United States, and as Native American and a veteran thereof. However, California and its law enforcement are using the laws of the State of California to confiscate property and arms, and permanently disarm Haven by seizing his firearms and so-called "slungshot", then banning from repurchase the very arms legally owned and seized by the government. Haven Decl. ¶ 3-28; *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

Haven is a Navy Veteran and Native-American, and as such belongs to a class which consists of a long tradition of keeping and bearing arms for defense of himself and his nations, and slungshots used by sailors in the Navy since this nation first had a navy. Haven Decl. ¶ 3-8.  In addition, Haven expresses his biker and Native American heritage, and for that, he was arrested.

## ARGUMENT

Plaintiff is prohibited from purchasing an identical replacement of the horse lead as the government has shown its proclivity to arresting citizens whom they deem undesirable by employing an antiquated statutory regime (California Penal Code Section 22210, 22290) that criminalizes "arms" which are less lethal than a firearm or knife, and are fully protected under the Second Amendment, and the statutory scheme which <u>mandates</u> seizure and destruction of the protected arms.

Haven did not possess an illegal weapon. The horse lead was a decorative addition to his "iron horse."  Without conceding that the horse lead is an illegal slungshot, Haven contends that even assuming the Deputies are correct, it is unconstitutional to claim it illegal to possess a historic weapon under the Second Amendment.  If anything, it would be considered a curio or relic, which is also entitled to be legally possessed, but which California even excludes from exemption. See Curio or Relic Firearm Report, California Penal Code section 27565, which only applies to "firearms", and not "arms".

Haven challenges the government to answer the following questions:

Is **Exhibit "A"** attached to Haven's Declaration a "slungshot" as used in California Penal Code Sections 22210, or is it a horse lead or tack (see https://en.wikipedia.org/wiki/Lead_(tack))?

Is a common horse leash or horse lead a "slungshot" as used in California Penal Code Sections 22210?

If Haven had the horse leash or horse lead in his saddlebag on his motorcycle, would that fact change the definition of a "slungshot"?

At what point does a leather or nylon cord with a quick release convert from either a dog leash or horse lead to a "slungshot"? What measurement of thickness and/or weight, and/or length?

What notice is provided to the public that a common animal lead can be deemed a "slungshot" by law enforcement per California Penal Code Sections 22210?

Explain how California Penal Code Sections 22210 defines a "slungshot" as a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement?

A federal "district court should grant a preliminary injunction if plaintiffs show either: (1) probable success on the merits and a possibility of irreparable injury; or (2) sufficiently serious questions on the merits as to make them fair ground for litigation and a balance of hardships tipping decidedly in plaintiffs' favor . . . These two tests are not separate, but 'merely extremes of a single continuum.'" *Matsumoto v. Pua*, 775 F.2d 1393, 1395 (9th Cir. 1985)

"The district court must also consider whether the public interest favors issuance of the injunction." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per curiam). Applying these traditional equitable principles the United States Supreme Court has recognized, and assuming the government had a very temporary interest in disarming plaintiff; it is perfectly clear that the governmental infringes upon a Second Amendment right when it permanently deprives plaintiff from his arms he safely and lawfully possessed at the time of seizure, at the time this action was filed in 2016, and the time of this request for preliminary relief in 2018.

Finally, Plaintiff is not only likely to succeed on the merits but is also likely to satisfy the other preliminary injunction requirements. Denial of a constitutional right is the quintessential

- 5 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

irreparable injury, and the need for immediate relief is only more evident when the injury involves physical dispossession of property necessary to exercise a right. There is no public interest in inflicting a likely constitutional violation, especially when the status quo can be preserved with no demonstrable harm to anyone. To be clear, Plaintiff seeks to enjoin the enforcement of California Penal Code Sections 22210 and 22290 as-written and as-applied, as the selective abusive enforcement is clear in this case.

In addition, the Federal Declaratory Judgment Act (28 U.S.C.. §§ 2201 et seq.) was enacted to dispel difficulties involved with respect to injunctive relief against unconstitutional state statutes, Congress intending declaratory relief to act as alternative to stronger remedy of injunction and to be utilized to test constitutionality of state criminal statutes in cases where injunctive relief would be unavailable. *Steffel v Thompson,* 415 U.S. 452 (1974).

Since the County of Sacramento concedes that "Sheriff Jones Acts On Behalf Of The State Of California, Not Sacramento County, When Enforcing The State's Gun Laws" (County of Sacramento Motion to Dismiss 4:18) Bonner must therefore be acting on behalf the state as well. Besides, California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law." Therefore, the Sheriff is making a policy decision when enforcing an unconstitutional law or a constitutional law in an unconstitutional manner.

**A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

**i. Second Amendment**

First, a government seizure of arms "in common use" by law-abiding citizens for self-defense plainly violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). The state can point to no justification—let alone one sufficient to withstand heightened scrutiny—for permanently seizing arms even if the property seized can be used as a horse lead, a decorative accouterment to motorcycle, as a slungshot on fishing boat, or as a weapon for personal self-defense — *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) is clear on this point.

**ii. Takings Clause**

Second, physically dispossessing citizens of their private property without just compensation

- 6 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

from the government violates the Takings Clause. It is no answer that the owner of a horse lead or slungshot confiscated by the government without any form of process can simply go out and buy another horse lead. Whatever expectations people may have regarding regulation of their property, they do not expect it to be "occupied or taken away." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015)(leading Taking case regarding personal property).

Third, because it permanently deprives owners of lawfully acquired arms without advancing the government's interest in public safety, the seizure of arms violates the Due Process Clause. There is simply no reason to believe that this will not continue. The Due Process Clause of the Fourteenth Amendment provides that "No state shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); see, e.g., *County. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (collecting cases). Thus, a statute that deprives an individual of life, liberty, or property arbitrarily or irrationally—that is, without serving "any legitimate governmental objective"— violates the Due Process Clause. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 541 (2005)

Haven's property (i.e."arms") was taken without any process whatsoever, and this deprivation results from enforcement of the established state procedures and from actions by officials with authority to both cause deprivations and provide post-deprivation process. The defendants are all considered state officials as the joint purpose is to in fact confiscate arms without due process under state law, no different than district attorneys being considered state officials when prosecuting crimes and controlling the return of property.

"To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). "The requirements of due process are not rigid; rather, they `call[] for such procedural protections as the particular situation demands.'" *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

Here, the interest affected is the use and possession of property necessary to exercise a fundamental right – the right to keep and bear arms.  No one can dispute that Haven has a property interest in his horse lead that entitles him to process. This property interest is significant and resulted in physical destruction of the property following a frivolous criminal charge.

The Court must consider "`the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used.'" *Mickelson*, 823 F.3d at 926 (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)).

Once the government seized the so-called "slungshot", there was no process for its return because of the mandated destruction of that property wrongfully seized.

### iii. Void for Vagueness

California Penal Code Sections 22210 is unconstitutionally vague since a "slungshot" is not defined as a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement; which this case clearly represents. See *Skilling v. United States*, 561 U.S. 358 (2010)

To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson* , 461 U. S. 352, 357 (1983) . The void-for-vagueness doctrine embraces these requirements.

Section 22210 meets neither of the two due process essentials. First, the word "slungshot" is not adequately defined as to what behavior it bars. Second, § 22210's standardless sweep allows law enforcement officers and prosecutors to pursue their personal predilections, thereby facilitating opportunistic and arbitrary prosecutions. See *Kolender v. Lawson* , 461 U. S. 352, 358 (1983).

In this case, the government seized Haven's so-called slungshot, relying upon a plethora of laws and policies with a single objective – the confiscation of arms for the slightest of reasons – and then destroy them. The Supreme Court in *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078)  has held that "the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."

Defendants presently employ and enforce a legal juggernaut of statutes, ordinances, and

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

policies suppressing the Right to Keep and Bear Arms, in violation of the Second Amendment; in sum, defendant law enforcement agencies blatantly snub the United States Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and most recently *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

"Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (quoting Monell ).  See *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997); S*treit v. County of Los Angeles*, 236 F.3d 552, 564 (9th Cir.2001).

The custom and policy of Bonner is to enforce state weapons laws, and obviously this is a wide-spread policy.

The Second Amendment is the only right which cannot be exercised without possession, access and ownership of a tool (i.e. gun, knife, taser, horse leash, dog leash, and even a pencil.).

Defendants are liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others. See *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)). The arrest, seizure and taking of property violated Haven's rights – there is <u>no immunity</u> or excuse as the law was clearly established when he was arrested.

    **B.**    **Plaintiff Undeniably Faces The Possibility of Irreparable Injury In The Absence Of An Injunction.**

If this Court concludes that Plaintiff is likely to succeed on one or more of his alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights irreparable harm *per se. Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. See *McDonald v. Chicago*, 561 U.S. 742, 780 (2010) (refusing to treat the Second Amendment as a second-class right subject to different rules); see also *Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law").

The constitutional violations alone are enough to satisfy the irreparable harm factor, but the circumstances here make the irreparable harm unmistakable.

The need for immediate injunctive relief is even more apparent because the harm is a physical taking of property that cannot be remedied easily if at all—a quintessential example of irreparable injury. See, e.g., *Taylor v. Westly*, 488 F.3d 1197, 1202 (9th Cir. 2007) ("[W]ithout a preliminary injunction, plaintiffs run the risk that California will permanently deprive them of their property . . . . Once the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite 'irreparable harm.' ")

Finally, the property taken and destroyed is not only a personal item with sentimental value, it is constitutionally protected under both the First and Second Amendment. See *Heller*, 554 U.S. at 595. The irreparable harm could hardly be clearer.

### C.     The Balance Of Hardships Strongly Favors Plaintiff.

California and government officials blatantly pass and enforce clearly unconstitutional laws and policies which have a direct and distinct impact on the right to "keep" arms and the right to display expressive property; it is Plaintiff who suffers under the "balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011).  The state suffers no harm from a preliminary injunction. The state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); see *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted). But even absent the constitutional

dimension of this lawsuit, the balance of harms tips in Plaintiffs' favor.

### D. The Public Interest Overwhelmingly Favors An Injunction.

What arms are protected by the Second Amendment came before the Supreme Court by the blanket prohibition of Massachusetts against the possession of a stun gun. The Massachusetts Supreme Court upheld the blanket banishment of stun guns as weapons that were not protected by the Second Amendment under three separate and distinct theories. First Massachusetts asserted that since Stun Guns were not in common use at the time of the Second Amendment's enactment, they did not fall under its protections. Second Massachusetts asserted Stun Guns are dangerous *per se* at common law and unusual, they fell out the protections of the Second Amendment. Finally, Massachusetts argued that stun guns were not readily adaptable to use in the military and therefore were outside the scope of the Second Amendment.

In *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078), the Supreme Court of the United States summarily rejected all of Massachusetts arguments. In vacating the judgment of the Supreme Judicial Court of Massachusetts in its unanimous per curiam opinion, the court has told us that a blanket prohibition of arms is *per se* unconstitutional.

Therefore, the criminalization and/or ban of horse leashes (offensively called "slungshot") violates the Second Amendment. We the People have the right to keep and bear arms. We, the People, have the right to stay silent and not incriminate ourselves, we have the right to an attorney, we have the right to face our accusers, and we have the right to know what we are being charged with. We have other rights as well; rights that handcuff the government while they investigate us. The government must get a warrant to search our property or to listen to our private conversations. The government must show probable cause to get those warrants, and the government must prove their case beyond a reasonable doubt. The government must provide due process and just compensation when it seizes our property. The public interest favors issuance of the requested injunction. Plaintiff seeks to vindicate his constitutional rights. In light of the fundamental nature of the right to keep and bear arms, and the vagueness of the statute, there is no doubt that protection of those rights are unquestionably in the public interest.

When challenging government action that affects the exercise of constitutional rights, "[t]he

- 11 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (emphasis added). Here, Plaintiff seeks to vindicate his fundamental Second Amendment rights, as well as his rights under the Takings and Due Process Clauses. As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). Thus, not only are Haven's rights at stake, but so are the rights of all citizens seeking to exercise their rights under the First and Second Amendment. The public interest tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208.

Moreover, the government has no plausible argument that returning the property will endanger public safety. After all, there is nothing prohibiting Haven from owning and possessing the horse lead seized; and that is why the seizure without probable cause violated his Constitutional rights.

## CONCLUSION

While WE THE PEOPLE want to support those who work to protect us from criminals – we must remind them that the checks on their power are in place to protect us, the innocent, from them. It may make prosecuting criminals harder or protecting the public – but it makes protecting the rights of the innocent easier.

As the Supreme Court has recognized, the right to keep and bear arms is no less precious than any other right being subjected to a prior restraint. In a free country, politicians don't get to use its citizens as pawns for their own political and selfish gain – and giving a voice to mob rule in California.

Defendants continue to undermine the "precious" right to keep and bear arms, repeatedly disenfranchising thousands of citizens caught up in a criminal justice system that is very quick to arrest its citizens and seize "arms" without any process. Defendants must be enjoined from enforcing California Penal Code §§ 22210 and 22290.

Dated: April 2, 2018    THE LAW OFFICES OF GARY W. GORSKI
Respectfully Submitted,
/s/ Gary W. Gorski
Gary W. Gorski
Attorney for Plaintiffs

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**