Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

**THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; et al.<br><br>Defendants. | Case No.  16-CV-00523-TLN-KJN<br><br>PLAINTIFF LAWRENCE "WOLF" HAVEN'S POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY EQUITABLE AND INJUNCTIVE RELIEF AGAINST DEFENDANTS KAMALA D. HARRIS (now XAVIER BECERRA) Attorney General of the State of California, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento<br><br>**Date:** May 3, 2018<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2, 15th floor<br>**Judge:** Hon. Troy L. Nunley<br>**Action Filed:** March 11, 2016 |

**INTRODUCTION**

There is a destructive, delusional meme spreading like a virus among many ill-informed Americans and politicians regarding the Bill of Rights. It pushes the idea that the mob and government can pick and choose which rights codified in the Bill of Rights are not worthy of

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

1 protection. This delusion is predicated on the concept that a popular majority or a state can nullify a

2 constitutional right of every "individual."

3 Or, as United States District Judge Roger T. Benitez (Southern District of California) stated

4 in *Duncan V. Becerra*, Case 3:17-cv-01017-BEN-JLB Document 28 Filed 06/29/17 Page 65 of 66:

> The Court does not lightly enjoin a state statute, even on a preliminary basis. However, just as the Court is mindful that a majority of California voters approved Proposition 63 and that the government has a legitimate interest in protecting the public from gun violence, it is equally mindful that the Constitution is a shield from the tyranny of the majority. Plaintiffs' entitlements to enjoy Second Amendment rights and just compensation are not eliminated simply because they possess "unpopular" magazines holding more than 10 rounds.

In *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008), the Supreme Court rejected the idea that the Second Amendment should be treated differently from all other rights.

This case is brought before this Court to challenge the constitutionality of state law and law enforcement's policy relating to the confiscation of firearms when there is no arrest or probable cause to believe a crime has been committed and the firearms are never returned. Haven Decl. ¶s 10-15, 36, Exhibit "A" property sheet. As a veteran of this country, Haven find's this is offensive.

California Penal Code Section 12125 and 12126 address the definition of "off roster firearms." In summary, a handgun sold by an FFL dealer must be on the approved roster of firearms in the State of California. However there is an exemption that allows peace officers to purchase off roster firearms for their own personal use. See Haven Decl. Exhibit "B" ¶ 14 and Exhibit "F" (Roster of Handguns Certified for Sale in California). As a veteran of this country, Haven find's this is equally offensive – and scarey.

California and named defendants overstep their boundaries in their zeal to seize guns and prosecute gun cases. This is a textbook example of what happens when onerous gun laws are passed and enforced without any regard for the Second Amendment. In their zeal to appease political constituents and disregard the Second Amendment, defendants enter the homes of firearms owners and confiscate firearms and ammunition without an arrest, criminal complaint, citation or restraining order — all in violation of the Second, Fourth and Fifth Amendments.

Fundamentally, this case involves law enforcement's application of state law, which all parties agree is the relevant police policy and law authorizing the banning and confiscation of

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

firearms. Years have now passed without the government returning Haven's firearms.

## FACTS

Haven is a citizen of the State of California and the United States. Haven Decl. ¶ 1. Haven has no criminal record. Haven Decl. ¶ 2. Haven has always intended to fully exercise the rights and privileges thereof as a free person of the United States, and as Native American and as a naval veteran receiving an Honorable Discharge in 1983. Haven belongs to the same class as any active duty or honorably retired peace officer when it comes to the use of a handgun for self defense purposes. Haven Decl. ¶ 3-4. However, California and its law enforcement are using the laws of the State of California to confiscate property and firearms of individuals who are not active duty or retired peace officers, and permanently disarm Haven by seizing his firearms, then banning from repurchase the very firearm legally owned and seized by the government. Haven Decl. ¶ 3-9, 25, 36; *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

On February 14, 2016, Deputy BRUCKER acting color of law and the authority of HARRIS, and SHERIF JONES, and acting without consent, a warrant or probable cause, illegally entered the residence of Haven and seized three firearms. Haven Decl. ¶ 9-13; Exhibit "A"Property Receipt dated 2/14/2016. Haven was not arrested nor charged with a crime and the government has failed to return Haven's three firearms and ammunition seized from his house. Haven Decl. ¶s 6-12.

Haven seeks immediate return of the following property seized by BRUCKER, HARRIS, and SCOTT JONES and acting without consent, a warrant or probable cause:

    a.    Stevens Model 320 12 gauge Shotgun, serial # 122333P.
    b.    12 gauge shotgun shells loaded in firearm.
    c.    Colt 1911 MKIV 45. Cal., serial # FG54400.
    d.    .45 Cal. Bullets loaded in firearm.
    e.    Armalite AR-7 .22 Cal., serial # 109802.

Plaintiff is even prohibited from purchasing a replacement of the Colt 1911, even though California peace officers can purchase it. Haven Decl. ¶ 13-36; Exhibits "B" through "F".

Haven seeks a positive injunction for BRUCKER, HARRIS and JONES to release and return all firearms and ammunition seized, and to enjoin California from enforcing any law which prohibits Haven and the public from purchasing the same "off-roster" handguns which law enforcement personal are allowed to carry while off duty. See Haven Decl. Exhibits "B" through "F".

In sum, Haven owned a Colt 1911 MKIV, not just because it was a for self-defense, but also because it was a curio and relic of a bygone era of firearms – therefore, it had great sentimental value to him as well. The government enters Haven's house without a warrant, and seizes his Colt 1911 MKIV, for unknown reasons still today. Now, the government takes his 1911 without just compensation and without a warrant or probable cause, and that particular firearm is now banned in California. So, Haven owned a gun which was legal to possess in California, government takes the gun, and then government tells him he is not allowed to purchase another Colt 1911 because they are no longer on the DOJ's "Roster of Handguns Certified for Sale". Haven Decl. ¶s 36 , Exhibits "A" and "F".  However, peace officers can purchase as many Colt 1911s they want.

## ARGUMENT

Plaintiff is a law-abiding California resident and U.S. Naval Veteran who simply seeks to protect himself and his loved ones with pistols owned and in common use by millions of Americans for self-defense. California clearly infringes upon that right by completely barring Haven from acquiring or possessing commonly owned pistols that it pejoratively labels "unsafe handguns" or "dangerous weapons" – non-technical, political terms of ever-changing definition and scope with no connection to the public safety interests that the law purports to serve.  Haven Decl. ¶ 13-14. The true offense, however, is that Haven is treated differently than those affiliated with law enforcement.

A federal "district court should grant a preliminary injunction if plaintiffs show either: (1) probable success on the merits and a possibility of irreparable injury; or (2) sufficiently serious questions on the merits as to make them fair ground for litigation and a balance of hardships tipping decidedly in plaintiffs' favor . . . These two tests are not separate, but 'merely extremes of a single continuum.'" *Matsumoto v. Pua*, 775 F.2d 1393, 1395 (9th Cir. 1985). "The district court must also consider whether the public interest favors issuance of the injunction." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003)(en banc)(per curiam).

Finally, Plaintiff is not only likely to succeed on the merits but is also likely to satisfy the other preliminary injunction requirements. Denial of a constitutional right is the quintessential irreparable injury, and the need for immediate relief is only more evident when the injury involves physical dispossession of property necessary to exercise a right. To be clear, Plaintiff seeks a return

of his arms seized from his home; and to further enjoin the State of California from impeding plaintiff Haven's ability to purchase anyone of the modern striker fired handguns with a manual thumb safety released to the civilian market since banned by the Unsafe Handgun Act (Cal. Penal Code §§ 31910, 32015(a)) and its evil twin – the Crime Gun Identification Act ("CGIA"). Assem. B. 1471, 2007-2008 Leg., Reg. Sess. § 1 (Cal. 2007).

The Federal Declaratory Judgment Act (28 U.S.C. §§ 2201 et seq.) also facilitates the relief sought by this motion. See *Steffel v Thompson,* 415 U.S. 452 (1974).

The ban prohibits the public from purchasing the safest, most technologically advanced striker handguns, which have manual thumb safeties and standard magazine capacities (more than 10 rounds), such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P320, the Taurus 24/7 Series, and the Beretta APX.  Instead, Haven is relegated to purchasing 100 year old revolvers. See also *Ivan Peña, et al., Plaintiffs, v. Stephen Lindley*, United States District Court, E.D. Cal. No. 2:09-CV-01185-KJM-CKD (February 25, 2015) as to the factual nuances. If revolvers are so good, then why don't the police carry them?

**A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.**

The three constitutional issues being presented are 1) Second Amendment, 2) Takings Clause, and 3) Equal Protection; all three of which are as-written and as-applied challenges.

**i. Second Amendment**

**Seizure of arms:** First, a government seizure of arms "in common use" by law-abiding citizens for self-defense plainly violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). There is no dispute of the seizure. Therefore, the Second Amendment was violated *per se.* See *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

**Handgun/Magazine Ban:** Second, a law-abiding responsible citizen has the right to defend his or her home from criminals using whatever common handgun and magazine size he or she judges best suits the situation. Furthermore, that same citizen has the right to keep and bear a common semi-automatic handgun and magazine that is useful for service in a militia. In addition to Haven's arms being seized, he is then burdened with a ban on modern firearms to replace the ones seized by the state, even after *Jaime Caetano v. Massachusetts*, 577 U.S. ___ (2016) was published.

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

If it was not clear at the time this District Court rendered its decision in *Ivan Peña, et al., v. Stephen Lindley*, United States District Court, E.D. California. No. 09-CV-01185-KJM-CKD (February 25, 2015), it is should now be clear since *Caetano* that the microstamping requirement, Cal. Penal Code § 31910(b)(7)(A), of the California Unsafe Handgun Act ("UHA") amounts to a *de facto* ban on modern firearms protected by the Second Amendment – both, as the statutes are written and as they are applied. See also decision which struck down the federal interstate handgun transfer ban, 18 U.S.C. §§ 922(a)(3), 922(b)(3), 27 C.F.R. § 478.99. *Mance v. Holder,* No. 4:14-CV-539-O, 2015 U.S. Dist. LEXIS 16679 (N.D. Tex. Feb. 11, 2015).

### ii. Takings Clause

Third, physically dispossessing gun owners of their private property without just compensation from the government violates the Takings Clause. It is no answer that the owner of a firearm confiscated by the state without any form of process can simply go out and buy another firearm (which Haven can't as to his 1911 handgun as Colt products are now banned). Whatever expectations people may have regarding regulation of their property, they do not expect it to be "occupied or taken away." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015)(leading Taking case regarding personal property).

Besides the Second Amendment claim, the confiscation of Haven's arms constitute a taking of property without just compensation, in violation of the Fifth Amendment. As the Supreme Court recognized a decade before *Heller*, "[g]uns in general are not 'deleterious devices or products or obnoxious waste materials." *Staples v. United States*, 511 U.S. 600, 610 (1994)."

Fourth, because the state permanently deprives owners of lawfully acquired firearms without advancing the government's interest in public safety, the seizure of firearms violates the Due Process Clause. There is simply no reason to believe that this will not continue. Haven's firearms (i.e. property) were taken without any process whatsoever, and this deprivation results from enforcement of the established state procedures and from actions by officials with authority to both cause deprivations and provide post-deprivation process.

The defendants are all considered state officials as the joint purpose is to in fact confiscate firearms without due process under state law, no different than district attorneys being considered

state officials when prosecuting crimes and controlling the return of property. "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). "The requirements of due process are not rigid; rather, they `call[] for such procedural protections as the particular situation demands.'" *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)).

Here, the interest affected is the use and possession of property necessary to exercise a fundamental right – the right to keep and bear arms. No one can dispute that Haven has a property interest in his firearms that entitles him to process. This property interest is significant and resulted in an indefinite deprivation of firearms following a frivolous criminal charge.

The government had no right to enter the home of Haven; as there was adequate time to obtain a warrant, and no immediate danger existed – Haven was not home nor was he under arrest. Then, after the Fourth Amendment violation, the government violates both the Second and Fifth Amendment by retaining the firearms for over several years. The Court must consider "`the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used.'" *Mickelson*, 823 F.3d at 926 (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)).

There are two Eighth Circuit decisions which are on point. See *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001) and *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011).

In *Lathon*, police seized firearms from plaintiff per a valid search warrant but then refused to return them, absent a court order, even after it became clear the firearms were not contraband or needed as evidence and no criminal charges were to be filed.

In *Walters*, the plaintiff's firearm was seized per a valid arrest. The plaintiff demanded the return of his firearm on several occasions, but though all charges against him had been dismissed or resolved, the chief of police refused to return the firearm without a court order.

In both cases, the Eighth Circuit concluded that two separate deprivations had occurred: the first, valid deprivation per a warrant or arrest, and a second, invalid deprivation that occurred when

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

something changed (police determined the weapons were not contraband or evidence, criminal charges were dropped or resolved), with the result that the police no longer had a legal basis to retain the weapons. See *Walters*, 660 F.3d at 314 ("A second deprivation occurred requiring a new due process analysis when the defendants, with no legal grounds, refused to return Walter's property."); *Lathon*, 242 F.3d at 843 ("The pivotal deprivation in this case was not the initial seizure of the ammunition and weapons, but the refusal to return them without a court order after it was determined that these items were not contraband or required as evidence in a court proceeding."). In both cases, because the second deprivation occurred per official policy in accordance with state law, when the police no longer had grounds to hold the firearms, and without "attendant exigencies prohibiting or making impractical a reasonable predeprivation process," *Walters*, 660 F.3d at 314, the court concluded that available post-deprivation process would not suffice. See *id.* at 315; *Lathon*, 242 F.3d at 843-44.

These holdings turned both on the "second" deprivation — at which point something had changed and the police no longer had reason to hold the firearms — and, as the Eighth Circuit later explained in *Mickelson v. County of Ramsey*, the "the inherently `lengthy and speculative' nature of the post-deprivation remedy available — an action in tort" is not a procedure at all. *Mickelson*, 823 F.3d at 928 (quoting Walters, 660 F.3d at 313-14); see also *Lathon*, 242 F.3d at 844.

In this case, the police seized Haven's firearms, relying upon a plethora of laws and policies with a single objective – the confiscation of firearms for the slightest of reasons – and then to retain them when the purported "reason" has passed. There was no reason to search Haven's house, let alone seize his property.

Defendants Sacramento Deputy Sheriff JESSE BRUCKER, Attorney General HARRIS, and Sheriff SCOTT JONES, and acting without a warrant or probable cause, illegally entered the residence of Haven and seized three firearms. See Exhibit "A" - Sacramento County Sheriff's Department Property Receipt/Report, report number 16-43771, dated 2/14/2016. These three firearms were legally owned and possessed by Haven. Till this date, not one of those firearms has been returned. For over two years, Haven has been prohibited from exercising his right to "keep" and "bear" arms as this right explicitly includes the right to have access to "arms" without government

interference to the slightest degree.

Anticipating the government will argue nothing stopped Haven from purchasing another firearm – well, that is not even close to being reasonable under any standard. First, two of the three firearms seized cannot be purchased in California anymore. Second, even assuming Haven had the resources to purchase his 1911 (value estimated at $1,100), he would opt instead to purchase a modern firearm which is more reliable, safer (e.g. not required to be cocked and locked), lighter, and can handle modern ammunition in the same manner in which a California peace officer can purchase the best and safest handgun of their own choice – but because California's laws are ultimately designed to disarm citizens or relegate them to antiquated firearms, this is constitutionally impermissible as recognized by the Supreme Court in *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078) – The Court has held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding,"

Defendants presently employ and enforce a legal juggernaut of statutes, ordinances, and policies suppressing the Right to Keep and Bear Arms, in violation of the Second Amendment; in sum, defendant law enforcement agencies blatantly snub the United States Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and most recently *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

"Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." (quoting Monell ).  See *McMillian v. Monroe County*, 520 U.S. 781, 783 (1997); S*treit v. County of Los Angeles*, 236 F.3d 552, 564 (9th Cir.2001).

The custom and policy of the Sheriff is to enforce state gun laws, and obviously this is a wide-spread policy. Haven was never arrested. Defendants illegally search his home and confiscated all his firearms, to never been seen again. No criminal complaint was filed. His firearms are still in defendants possession. Ultimately, the Sheriff and the Attorney General dictate whether those arms are to be returned. The officers seize the property, and the policy maker keeps the property.  SAC ¶s

58-59, 139, 169, 177.

The Second Amendment is the only right which cannot be exercised without possession, access and ownership of a tool (i.e. gun, knife, taser, horse leash, dog leash, and slungshot.). Defendants seized Haven's firearms; and by failing to immediately return Haven's firearms once it was determined that no crime had been committed, defendants had a duty to immediately return those firearms.

Defendants are liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others. See *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.")(quoting *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)).

There is no doubt defendants entered Haven's home, confiscated his firearms, and till this day, Haven's firearms are still in the government's possession. Defendants have made no effort to return the property (even after this action had been filed); the Fourth and Fifth Amendment violations are clear on these facts. The search, seizure and taking of property violated Haven's rights – there is <u>no immunity</u> or excuse as the law was clearly established when there was no arrest or restraining order.

### iii. Equal Protection

This case also involves California's ban on certain commonly owned semiautomatic, centerfire pistols with detachable magazines, but California peace officers are exempted from this burden and permitted to purchase in mass quantities any semiautomatic handgun available to all citizens of the United States, except in California. If the police are allowed to possess semiautomatic handguns with magazines holding more than 10 rounds for purposes of defense of self or others only, then there is no explanation as to why Haven is not entitled to possess the same type of handguns used by law enforcement officers <u>off-duty and when they retire</u>.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)

(citation omitted). Strict scrutiny usually applies to government classifications that "impinge on personal rights protected by the Constitution." *Id.* at 440 (citations omitted). "Where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized." *Hussey v. City of Portland*, 64 F.3d 1260, 1265 (9th Cir. 1995) (quoting *Harper v. Virginia Board of Elections*, 383 U.S. 663, 670 (1966)).

The sort of classifications created by the handgun roster and microstamping requirements are unacceptable under any sort of scrutiny reserved for enumerated rights. While most consumers are barred from accessing unrostered guns, the law privileges similarly situated people who cannot be said to deserve handguns more than others, or benefit less from the roster program's supposed advantages. For all its restrictions, the law allows the police to essentially buy handguns, then sell them to a dealer, and the dealer then sells them to the public. See Exhibits "B" through "E". This exemption makes no sense — how many handguns do peace officers need off-duty?

Nor does it matter that the act targets sellers rather than purchasers. Courts have found that sales restrictions directed at dealers inflict Article III injuries on putative handgun consumers. See *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 191-92 (5th Cir. 2012) ("NRA"); *Mance v. Holder*, No. 4:14-cv-539-O, 2015 U.S. Dist. LEXIS 16679, at *9-*11 (N.D. Tex. Feb. 11, 2015); accord *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 750-57 (1976); but see *Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012). As Judge Easterbrook noted under similar circumstances, "Plaintiffs' claim . . . is direct rather than derivative: every interstate sale has two parties, and entitlement to transact . . . is as much a constitutional right of consumers as it is of shippers—if it is a constitutional right at all." *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 850 (7th Cir. 2000).

California's wide exemptions for law enforcement personnel, allowing them to purchase unrostered guns for personal use, is completely irrational. If a gun is unacceptably dangerous, it is odd to allow it to those perhaps most likely to use it. And if the harm to be ameliorated is the unauthorized use of guns by people not knowledgeable in their use, police weapons, including those owned privately by police officers, are no less likely to be stolen or mishandled by unauthorized users.

The law enforcement exemption (Section 32000(b)(4).), allows governmental institutional purchases; and separately, without qualification, the law provides that "[t]his section does not prohibit the sale to, or purchase by, sworn members of these agencies of a handgun," *id.*, a circumstance that has led to allegations that some police officers combine their personal exemption with the private-party transfer exemption to illegally deal unrostered handguns to the public. See Indictment, *United States v. McGowan*, U.S. Dist. Ct. E.D. Cal. No.: 2:12-CR-00207-TN, Dkt. 1, at ¶ 4 (May 31, 2012); see also Haven's Decl. ¶s 21-25, 35; Exhibits "B" through "E".

In any event, police officers, unlike other people, do get to take home handguns deemed "unsafe" in California. Even under rational basis review, the 9th Circuit struck down an exemption from California's Assault Weapons Control Act allowing retired police officers to purchase, for private non-law enforcement purposes, guns barred as too dangerous to others. *Silveira v. Lockyer*, 312 F.3d 1052, 1089-92 (9th Cir. 2002), abrogated on other grounds, *Heller*, 554 U.S. 570.

If unrostered handguns are dangerous, they are dangerous to everyone—including law enforcement employees, actors, newcomers to the state, individuals who already possess these "unsafe" handguns, those who would acquire them through private party and familial transfer, and indeed, those who lawfully possess such guns today.

One question the defendants cannot answer is why in almost every police shooting, the unarmed citizen is killed with more than 10 rounds of ammunition?  It appears a handgun with more than a 10 round capacity is an absolute necessity for the handgun to be an effective tool. Therefore, it is absolutely clear that Haven is entitled to purchase a modern handgun with a standard 15 to 17 round capacity, just like law enforcement is entitled to purchase.  See SAC ¶ 98-107.

It is anticipated that the government will argue no one except trained law enforcement should be able to possess these dangerous handguns and magazines. However, that rationale is anathema to the United States Constitution's Bill of Rights guarantee of a right to keep and bear arms. It is a right naturally possessed by regular, law-abiding responsible citizens, whom are neither reliant upon, nor subservient to, a privileged, powerful, professional police state.

When the government creates a separate category of superior rights and privileges for those employed by government, the government is actually giving them the status of nobility. Granting

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

such status to individuals is an unconstitutional Title Grant of Nobility, in violation of the United States Constitution, Article I, section 10, clause 1.

### B. Plaintiff Undeniably Faces The Possibility of Irreparable Injury In The Absence Of An Injunction.

If this Court concludes that Plaintiff is likely to succeed on one or more of his alleged constitutional violations, the remaining preliminary injunction factors follow readily. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit has imported the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights irreparable harm *per se. Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. See *McDonald v. Chicago*, 561 U.S. 742, 780 (2010) (refusing to treat the Second Amendment as a second-class right subject to different rules); see also *Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law").

The constitutional violations alone are enough to satisfy the irreparable harm factor, but the circumstances here make the irreparable harm unmistakable.

The need for immediate injunctive relief is even more apparent because the harm is a physical taking of property that cannot be remedied easily if at all—a quintessential example of irreparable injury. See, e.g., *Taylor v. Westly*, 488 F.3d 1197, 1202 (9th Cir. 2007) ("[W]ithout a preliminary injunction, plaintiffs run the risk that California will permanently deprive them of their property . . . . Once the property is sold, it may be impossible for plaintiffs to reacquire it, thus creating the requisite 'irreparable harm.'")

Finally, the property being taken is not just any personal item, but one that is constitutionally protected for the most essential purpose—defense of a person's life against harm. See *Heller*, 554 U.S. at 595. The irreparable harm could hardly be clearer.

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

### C.      The Balance Of Hardships Strongly Favors Plaintiff.

California and government officials blatantly pass and enforce clearly unconstitutional laws and policies which have a direct and distinct impact on the right to "keep" arms and it is Plaintiff who suffers under the "balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011).  The state suffers no harm from a preliminary injunction. The state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); see *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (citations omitted). But even absent the constitutional dimension of this lawsuit, the balance of harms tips in Plaintiffs' favor.

The balance of equities also favors litigants who seek only "to preserve, rather than alter, the status quo while they litigate the merits of th[eir] action." *Rodde v. Bonta*, 357 F.3d 988, 999 n.14 (9th Cir. 2004). Here, granting the relief Plaintiff now seeks will merely maintain the status quo while the case moves forward on the merits, which further "strengthens their position" in the analysis of the equitable injunction factors. *Id*. Plaintiff was not prevented from lawfully possessing the firearms in California before they were seized; there is no reason why he is not entitled to the return of those same arms.

### D.      The Public Interest Overwhelmingly Favors An Injunction.

The public interest favors issuance of the requested injunction. Plaintiff seeks to vindicate his constitutional rights. In light of the fundamental nature of the right to keep and bear arms, there is no doubt that protection of that right is unquestionably in the public interest.

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (emphasis added). Here, Plaintiff seeks to vindicate his fundamental Second Amendment rights, as well as his rights under the Takings and Due Process Clauses. As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*,

422 F.3d 815, 826 (9th Cir. 2005) (emphasis added). Thus, not only are Haven's rights at stake, but so are the rights of all citizens seeking to exercise their rights under the Second Amendment. The public interest tips sharply in Plaintiffs' favor. *Klein*, 584 F.3d at 1208.

Moreover, the government has no plausible argument that returning the property will endanger public safety. After all, there is nothing prohibiting Haven from owning and possessing the firearms seized; and that is why the seizure without a warrant or probable cause violated his Second, Fourth and Fifth Amendment rights.

## CONCLUSION

Defendants continue to undermine the "precious" right to keep and bear arms, repeatedly disenfranchising thousands of citizens caught up in a criminal justice system that is very quick to remove arms from its citizens without any process, but not so quick to return them when a mistake is made. An injunction must therefore issue for return of the following items of property:

a. Stevens Model 320 12 gauge Shotgun, serial # 122333P.
b. 12 gauge shotgun shells loaded in firearm.
c. Colt 1911 MKIV 45. Cal., serial # FG54400.
d. .45 Cal. Bullets loaded in firearm.
e. 2 Colt 1911 Magazines.
f. Armalite AR-7 .22 Cal., serial # 109802.

Furthermore, Haven seeks an order enjoining defendants from enforcing any law, policy, rule, or regulation which interferes with the Haven's and the public's ability to purchase handguns "off-roster" handguns which are not banned under federal law, and available to law enforcement officers.

Defendant Attorney General Xavier Becerra and all his employees, and all state, local, and federal peace officers who gain knowledge of this injunction order are enjoined from enforcing the statute. Further, the defendant shall give actual notice of this order to all law enforcement personnel who are responsible for implementing or enforcing the enjoined statute. The government shall file a declaration establishing proof of such notice.

Dated: April 3, 2018          THE LAW OFFICES OF GARY W. GORSKI
                              Respectfully Submitted,
                               /s/ Gary W. Gorski
                              Gary W. Gorski
                              Attorney for Plaintiffs