Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE | **Case No.** 16-CV-00523-TLN-KJN<br><br>**DECLARATION OF LAWRENCE "WOLF" HAVEN IN SUPPORT OF MOTION FOR PRELIMINARY EQUITABLE AND INJUNCTIVE RELIEF AGAINST DEFENDANTS KAMALA D. HARRIS Attorney General of the State of California (Now XAVIER BECERRA) AND SCOTT JONES, Sheriff of County of Sacramento** |

BRUCKER, # 512; COUNTY OF PLACER;
EDWARD N. BONNER, in his official capacity
as Sheriff of County of Placer; Placer County
Deputy MASON, # 181; Placer County Deputy
HINTZE, # 101.

      Defendants.

# DECLARATION OF LAWRENCE "WOLF" HAVEN

**I, LAWRENCE "WOLF" HAVEN, hereby make this declaration under the penalty of perjury.**

1. I, LAWRENCE "WOLF" HAVEN, am a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of California, and a citizen of the state of California. Plaintiff LAWRENCE "WOLF" HAVEN is a legal resident of County of Sacramento, California. All times hereinafter, I will identify myself in the third person as simply HAVEN for ease of reference. .

2. Haven has no criminal record, other than being arrested for a felony (the subject matter of the action against Placer County in this case) and having his DNA and property seized for possession of a horse leash.

3. Haven is a Native American, a Veteran (1979-1983 U.S.N. Honorable Discharge) a hunter, a motorcyclist and owner of firearms which were confiscated by the government without due process or probable cause. As a Veteran and Native-American, Haven belongs to a class which consists of a long tradition of keeping and bearing arms, especially handguns.

4. While serving in the U.S. Navy, the United States entrusted Haven with a security clearance to work on heavy explosives and ordinances without much ado.

5. SCOTT JONES, is named in his official capacity as Sheriff of County of Sacramento, is responsible for executing and administering the laws, customs, practices, and policies of HARRIS complained of in this action. Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of law and in accord with HARRIS and JONES policies.

6. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in

his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of Haven and seized three firearms. Attached hereto **Exhibit "A"** is a true and correct copy of the Sacramento County Sheriff's Department Property Receipt/Report, report number 16-43771, dated 2/14/2016.

7. Haven was not present to give a consent and was unaware of the entry of BRUCKER.

8. Haven first became aware of the illegal search when he arrived home, and found **Exhibit "A"** in his house and then checking to determine if in fact his firearms were missing – they were.

9. While in Haven's residence without informing Haven of such entry, BRUCKER seized the property of Haven consisting of three firearms, including a shotgun, AR-7 semi-automatic rifle and a standard issue military semi-automatic pistol.

10. Haven was never arrested and no criminal complaint was ever filed; and the government has failed to return Haven's three firearms and ammunition.

11. Haven seeks immediate return of the following property seized by BRUCKER, HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES and acting without consent, a warrant or probable cause:

   a. Stevens Model 320 12 gauge Shotgun, serial # 122333P.
   b. 12 gauge shotgun shells loaded in firearm.
   c. Colt 1911 MKIV 45. Cal., serial # FG54400.
   d. .45 Cal. Bullets loaded in firearm.
   e. 2 Colt 1911 Magazines.
   f. Armalite AR-7 .22 Cal., serial # 109802.

12. Haven wants to exercise his Second Amendment rights, but California has prevented Haven from purchasing modern firearms which are available to the general public in all other states and California peace officers.  Instead, California has created a system whereby not only are Haven's guns confiscated, they must be replaced and with handguns with antiquated firing mechanisms lacking external thumb safeties.

13. Plaintiff is a law-abiding California resident who seeks to protect himself and his loved ones with pistols owned and in common use by millions of Americans for self-defense. California clearly infringes upon that right by completely barring Haven from acquiring, transferring, or

possessing commonly owned pistols that it pejoratively labels "unsafe handguns" or "dangerous weapons" — non-technical, political terms of ever-changing definition and scope with no connection to the public safety interests that the law purports to serve.

14. It is my experience that California's sweeping "Unsafe Handgun Act" prohibits the most popular handgun models in the country, which are lawfully owned and safely operated by millions of Americans in all states. To achieve such a broad ban, California classifies as "Unsafe Handgun" hundreds of specific, popular handguns by their make and model along with any other newly released handgun. None of these features that qualify a handgun for the State's prohibition have anything to do with rate of fire, ammunition capacity, power, or anything else linked to the handgun's potential to be used in a crime. The term "Unsafe Handgun" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of semi-automatic handguns so as to allow an attack on as many newly released into commerce handguns as possible on the basis of undefined danger exploited for crime. To the contrary, their purpose is to promote ergonomic comfort, accuracy, and safe handling—that is, to make the handguns safer and more effective for the core lawful purpose of self-defense. In sum, California's prohibition of handguns "in common use … for lawful purposes like self-defense" is based on distinctions that have nothing to do with public safety or any other valid government objective.

15. By criminalizing handguns that were lawful when purchased based on arbitrarily selected features—many of which actually make firearms that are commonly owned and used safer and more effective for self-defense—the Unsafe Handgun Act violates the Second Amendment.

16. And by severely constraining the right of firearm owners to transfer lawfully acquired firearms, and eliminating entirely the right of firearms owners "to pass on" their lawfully acquired property to their family members or heirs— "one of the most essential sticks in the bundle of" property rights, which has "been part of the Anglo-American legal system since feudal times"—without compensation, the Unsafe Handgun Act violates the Takings Clause.

17. Desiring to acquire, possess, use, and/or transfer these constitutionally protected firearms for

lawful purposes including self-defense, but justifiably fearing prosecution if they do, Plaintiffs respectfully request this Court: (1) declare that California Penal Code sections and regulatory scheme which results in a band of handguns which are safer, more accurate, and more reliable that what is currently allowed to be sold to plaintiff be declared unconstitutional in that it infringes the general populations constitutional rights; and (2) permanently enjoin Defendants from enforcing each of those sections to the extent they prevent law-abiding Californians, like Haven, from acquiring, possessing, using or transferring constitutionally protected arms.

18. Not only has Haven's Colt 1911 been illegally seized, he is prohibited from purchasing the same model or any other modern firearm which is available to all California active and retired peace officers, such as Sig Sauer p320, and at half the price of California approved antiquated firearms.

19. California and its law enforcement have prohibited the public from purchasing the safest, most technologically advanced striker handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P320, the Taurus 24/7 Series, and the Beretta APX.  Instead, Haven is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.

20. It is general public knowledge, however, that California peace officers purchase hundreds of handguns due to their exemptions to California law.

21. Since at least 2011, as stated in **Exhibit "B"** (a copy of an Order for Partially Unsealing Search Warrant and Related Documents and Affidavit in Support of a Search Warrant), California has had knowledge that law enforcement officers were purchasing an unlimited amount of firearms for their own personal use and enjoyment, to the exclusion of Haven and all other citizens who are not law enforcement. Specifically, California has created exemptions for law enforcement to purchase "off-roster" handguns which are not approved by California, and provide them with superior Second Amendment rights without any of the burdens placed upon plaintiff.  See https://oag.ca.gov/firearms/exemptpo

22. In fact, because of exemptions granted to law enforcement in California, the U.S. Department of Justice issued a "LAW ENFORCEMENT ADVISORY" on March 31, 2017, attached hereto as **Exhibit "C"**, outlining the blatant abuses by California peace officers ability to purchase "off-roster" firearms for their own use and enjoyment, completely unrelated to law enforcement activities.

23. For example, a police lieutenant had in his possession 61 guns, including at least 18 pistols that were "off roster." See **Exhibit "D"** attached hereto.

24. Attached hereto as **Exhibit "E"** is a copy of a news article headlined: "California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement", written by Greg Moran of the San Diego Union Tribune, greg.moran@sduniontribune.com, dated May 4, 2017.

25. As reported in the San Diego Union-Tribune, "California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement", and as noted in the article, the privilege to purchase off-roster handguns was expanded to employees of "water districts", "welfare fraud investigators", and employees of the Department of Motor Vehicles.  See **Exhibit "E"** attached hereto. Haven takes this as a California flaunting the privileges bestowed on behalf of employees of government, but yet, as a veteran does not receive the same privileges.

26. Haven is aware of the incident of trucker Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots. http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

27. Haven desires to travel with firearms and other arms, which as a citizen of the United States is legal and a constitutional right. Haven intends to travel in and out the State of California with ammunition magazines which hold more than ten rounds, and they intend to purchase, possess, and use handguns which are not on California's approved list.

28. Haven has called the Sacramento County Sheriff's Department on three occasions, attempting to obtain his firearms. Each time, no one knows anything and he is given the run around.

29. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned.

30. Haven had his firearms seized from his residences, without a warrant, without being charged, tried or convicted of a crime.

31. The firearms illegally seized have not been returned to plaintiff.

32. By failing to immediately return plaintiff's firearms once it was determined that no crime had been committed, HARRIS has deprived plaintiff's of his ability to exercise his Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech.

33. Plaintiff is even prohibited from purchasing a new Colt 1911 MKIV as California has now banned that particular firearm, and all other Colt products.

34. Plaintiff seeks a positive injunction for HARRIS and JONES to release and return all firearms and ammunition seized and confiscated.

35. The standard military side arm of the time Haven was in the Navy was a Colt 1911 .45 Caliber Semi-Automatic pistol, the modern version of which California has now banned and seized. Haven is even prohibited from purchasing an identical replacement of the Colt 1911seized as California has banned that particular firearm, and most other Colt products; the one exception is that California peace officers are allowed to purchase thousands of handguns, including the Colt 1911, which are not available to the public in violation of the Equal Protection Clause. See **Exhibits "B" through "F".**

36. In sum, Haven owned a Colt 1911 MKIV, not just because it was a for self-defense, but also because it was a curio or relic of a bygone era of firearms which was the first semiautomatic pistol built for the military https://en.wikipedia.org/wiki/M1911_pistol – therefore, it had great sentimental value to him as well. The government enters Haven's house without a warrant, and seizes his Colt 1911 MKIV, for unknown reasons still today. Now, the government takes his 1911 without just compensation and without a warrant or probable cause, and that particular firearm is now banned in California.  So, Haven owned a gun which was legal to possess in California, government takes gun, and then government tells him he is not allowed to purchase another Colt 1911 because they are no longer on the DOJ's "Roster of Handguns Certified for Sale" (**Exhibit "F"** is the latest version of the Roster)

## VERIFICATION

I, LAWRENCE "WOLF" HAVEN, have read the foregoing Declaration and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe them to be true. I declare under the penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on March 30, 2018, in Folsom, California.

*[signature]*
LAWRENCE "WOLF" HAVEN
Declarant