PLACER COUNTY COUNSEL'S OFFICE
JULIA M. REEVES (SBN 241198)
175 Fulweiler Avenue
Auburn, California 95603
Telephone: (530) 889-4044
Facsimile: (530) 889-4069

Attorneys for Defendants COUNTY OF PLACER; EDWARD N. BONNER; DEPUTY ERIC HINTZE; DEPUTY MICHAEL MASON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual,

Plaintiff;

vs.

KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, #371; Citrus Heights Police Officer THOMAS LAMB #315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge #323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 3/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Sheriff Deputy Sheriff JESSE BRUCKER, #512; COUNTY OF PLACER; EDWARD N. BONNER; in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZ, #101.

Defendants.

No. 2:16-CV-00523-TLN-KJN

**EDWARD N. BONNER'S OPPOSITION TO PLAINTIFF LAWRENCE "WOLF" HAVEN'S MOTION FOR PRELIMINARY INJUNCTION**

Date: May 3, 2018
Time: 2:00 p.m.
Courtroom: 2, 15th Floor
Judge: Hon. Troy L. Nunley

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL ARGUMENT ..... 2

A. Legal Standards Governing Motions for Preliminary Injunctions ..... 2

B. Irreparable Harm Will Result to Placer County and its Citizens if Injunctive Relief is Granted, Not Plaintiff ..... 3

1. History Regarding Sections 22210 and 22290 ..... 3

2. The County Will Be Irreparably Harmed if It is not Permitted to Enforce the Penal Code ..... 4

C. The Moving Party is Unlikely to Prevail on the Merits ..... 5

1. Second Amendment ..... 5

2. Takings Cause ..... 6

3. Fourth Amendment ..... 6

4. The Penal Code Sections are not Void for Vagueness ..... 8

D. Balance of Potential Harm/Public Interest ..... 9

E. Plaintiff Seeks to Obtain All of the Relief Sought by Way of Preliminary Injunction ..... 9

IV. CONCLUSION ..... 9

## TABLE OF AUTHORITIES

### CASES

*Amoco Production Co. v. Village of Gambell*,
AK, 480 U.S. 531, 542 (1987) ........ 2

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741 (2011) ........ 7

*Davis v. Scherer*,
468 U.S. 183, 197(1984) ........ 7

*Devenpeck v. Alford*,
543 U.S. 146, 153 (2004) ........ 7

*DISH Network Corp. v. F.C.C.*,
653 F.3d 771, 776 (9th Cir. 2011) ........ 2

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........ 6

*Dogloo, Inc. v. Doskocil Mfg. Co., Inc.*,
893 F.Supp. 911, 917 (C.D. Cal. 1995) ........ 1, 2

*Dubner v. City & County of San Francisco*,
266 F.3d 959, 964 (9th Cir. 2001) ........ 7

*Grossman v. Portland*,
33 F. 3d 1200, 1210 (9th Cir. 1994) ........ 8

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982) ........ 7

*Illinois v. Gates*,
462 U.S. 213, 246 (1983) ........ 7

*Jaime Caetano v. Massachusetts*,
577 U.S. ___ (2016) ........ 6

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ........ 6

*Malley v. Briggs*,
475 U.S. 335, 341 (1986) ........ 7

*Maryland v. King*,
567 U.S. 1301 (2012) ........ 4, 5

*Moran v. Washington*,
147 F.3d 839, 844 (9th Cir. 1998)........................................................................ 7

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*,
434 U.S. 1345 (1977)........................................................................................ 4

*Pearson v. Callahan*,
555 U.S. 223, 231 (2009).................................................................................. 7

*People v. Fannin*,
91 Cal.App.4th 1399 (2001)............................................................................... 4, 8

*Peruta v. County of San Diego*,
824 F.3d 919 (9th Cir. 2016)............................................................................. 4

*Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*,
734 F.3d 406, 419 (5th Cir. 2013.)..................................................................... 4

*Schrier v. University of Co.*,
427 F.3d 1253, 1258 (10th Cir. 2005)................................................................. 1, 2, 3, 9

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
739 F.2d 1415, 1422 (9th Cir. 1984) ................................................................. 3

*Tatum v. City & County of San Francisco*,
441 F.3d 1090, 1094 (9th Cir. 2006)................................................................... 7

*U.S. v. Matthew Henry*,
688 F.3d 637 (9th Cir. 2012)............................................................................. 6

*United States v. Gourde*,
440 F.3d 1065, 1069 (9th Cir. 2006)................................................................... 7

*Weinberger v. Romero-Barcelo*,
456 U.S. 305, 312 (1982).................................................................................. 2

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7, 20 (2008)........................................................................................ 2

**CONSTITUTIONAL PROVISIONS**

California Constitution:

Article 5, Section 13............................................................................................ 5

**STATUTES**

California Government Code:

Section 26601 .......... 5

California Penal Code:

Section 22210 .......... 3, 4, 8

Section 22290 .......... 3, 4, 8

**RULES**

Federal Rules of Civil Procedure

Rule 65 .......... 1

**OTHER AUTHORITIES**

Senate Rules Committee, Senate Floor Analysis of SB 1080, 4/7/10 .......... 4

## I. INTRODUCTION

In the instant Motion for Preliminary Injunction, Plaintiff seeks to enjoin Placer County Sheriff Edward Bonner from enforcing duly enacted California Penal Code sections prohibiting possession, manufacture or sale of a potentially deadly slungshot weapon. Of critical importance is that the instant Motion for Preliminary Injunction arises out of an incident that occurred over two years ago – on February 8, 2016. This significant lapse of time strongly disfavors the granting of a preliminary injunction, which by its very definition is a temporary, emergency measure to be employed to preserve the status quo. Moreover, Plaintiff is unable to satisfy any of the requirements of traditional four part test that applies whenever a preliminary injunction is sought. (*Dogloo, Inc. v. Doskocil Mfg. Co., Inc.*, 893 F.Supp. 911, 917 (C.D. Cal. 1995).) Finally, if the requested injunction were to be granted, it would provide Plaintiff with essentially *all* of the relief obtainable on a trial on the merits. Preliminary injunctions which provide all of the requested relief without the opportunity for a trial on the merits are heavily disfavored. (*Schrier v. University of Co*., 427 F.3d 1253, 1258 (10th Cir. 2005).) As such, Defendant Bonner respectfully requests that the instant Motion be denied.

## II. FACTUAL BACKGROUND

On or about February 8, 2016, Mr. Haven was riding his motorcycle with “an ornamental and common ‘horse lead’ (thick nylon rope with a metal quick release – identical to a dog leash but thicker.)” (¶¶ 222 and 223 of Complaint.) The officers’ comments suggested that they believed that Mr. Haven was associated with outlaw motorcycle gangs. (¶ 226.) Mr. Haven does not allege that he had any horse, or dog travelling with him for which he might use the “horse lead” in question. Rather, Mr. Haven suggests in his Complaint and in the instant Motion that he decorated his motorcycle, which he refers to as his “iron horse” with the “horse lead” for “ornamental” purposes. (¶ 223; p. 3 of Plaintiff’s Motion for Preliminary Injunction and Equitable Relief.) Exhibit B, the criminal complaint, alleges that Mr. Haven was initially pulled over for speeding. Mr. Haven alleges that he was stopped because of the “slungshot” / “horse lead.” (¶ 222.)

## III. LEGAL ARGUMENT

### A. Legal Standards Governing Motions for Preliminary Injunctions

Federal Rule of Civil Procedure 65 is the governing statute regarding preliminary injunctions. The United States Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." (*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); internal citations omitted.) An injunction never issues as a matter of course. "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." (*Amoco Production Co. v. Village of Gambell*, AK, 480 U.S. 531, 542 (1987).) As noted by the Supreme Court in *Amoco Production*, "[a]lthough particular regard should be given to the public interest, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." (*Ibid*.) "Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be granted only in cases where the necessity for it is clearly established." (*Schrier v. University of Co*., *supra*, 427 F.3d 1253 at p. 1258.)

Under the so-called "traditional test," a party seeking a preliminary injunction must establish each of the following four factors: 1) the moving party will suffer irreparable injury if the relief is denied; 2) the moving party will probably prevail on the merits; 3) the balance of potential harm favors the moving party; and, depending on the nature of the case, 4) the public interest favors granting relief. (*Dogloo, Inc. v. Doskocil Mfg. Co., Inc.*, *supra*, 893 F.Supp. at p. 917.) This four part test has been held to apply whenever preliminary relief is sought. (*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).)

Certain "disfavored" cases are subject to heightened scrutiny on motions for preliminary injunction. Such cases include: 1) preliminary injunctions that alter the status quo; 2) mandatory preliminary injunctions; and 3) preliminary injunctions which would provide substantially all of the relief the movant would obtain after a full trial on the merits. (*Schrier v. University of Co.*,

*supra*, 427 F.3d 1253, 1259.) The rationale is because the limited purpose of a preliminary injunction "is merely to *preserve* the relative positions of the parties until a trial on the merits can be held." (*Ibid*, emphasis added.)

**B. Irreparable Harm Will Result to Placer County and its Citizens if Injunctive Relief is Granted, Not Plaintiff**

Plaintiff has not articulated facts demonstrating irreparable harm if the injunction sought is not granted. Mr. Haven was arrested and his slungshot confiscated over two years ago. Moreover, he stipulated to forfeiture of the slungshot. (See Ex. "1" to Declaration of Julia M. Reeves). The function of a preliminary injunction is to preserve the status quo and prevent irreparable loss of rights prior to judgment. (*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).) Injunctive relief sought years after the events in question and seeking to enjoin an issue which he himself stipulated to is the exact opposite of preserving the status quo and preventing irreparable loss of rights.

Conversely, there will be significant harm to Placer County and its residents if the Sheriff's Office is not permitted not enforce Penal Code Sections 22210 and 22290.

1. <u>History Regarding Sections 22210 and 22290</u>

California Penal Code Section 22210 provides as follows:

> Except as provided in Section 22215 and Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot, is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

Section 22290 states that:

> Except as provided in Section 22215 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any leaded cane or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot is a nuisance and is subject to Section 18010.

Sections 22210 and 22290 were enacted in 2010 and became operative in 2012 via Senate Bill 1080. The bill was the result of direction by the Legislature to the California Law Revision

Commission to study and non-substantively revise the deadly weapon statutes, to improve organization, without making any change to criminal liability under those statutes. (Senate Rules Committee, Senate Floor Analysis of SB 1080, 4/7/10.) Section 22210, which in its former iteration, was codified as Penal Code Section 12020, and Section 22290, which was formerly Penal Code Section 12029, have long prohibited possession of slungshots in California. This prohibition has been reiterated in court decisions. For example, the Ninth Circuit in *Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) catalogued the long history of prohibitions against carrying concealable weapons most often used for criminal purposes, including specific references to slungshots. (See also, *People v. Fannin*, 91 Cal.App.4th 1399 (2001).)

2. The County Will Be Irreparably Harmed if It is not Permitted to Enforce the Penal Code

"When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." (*Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013.) For example, *New Motor Vehicle Bd. of California v. Orrin W. Fox Co*., 434 U.S. 1345 (1977) involved an attempt to enjoin enforcement of a statute in a non-criminal context, which the Supreme Court held was improper. In *New Motor*, retail automobile dealers brought an action seeking to enjoin enforcement of requirements under the California Automobile Franchise Act requiring notice when they sought to open a new franchise, claiming that enforcement of the Act violated due process rights. The District Court enjoined the New Motor Vehicle Board of the State of California from enforcing provisions of the California Automobile Franchise Act. On appeal, the Supreme Court stayed the injunction, noting that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (*Id*. at p. 1351.)

This interest is heightened when criminal justice issues are at play. As explained by the United States Supreme Court in *Maryland v. King*, 567 U.S. 1301 (2012), when criminal justice issues are at play, in addition to the irreparable harm of denying the public interest in the enforcement of its laws, there is "an ongoing and concrete harm to [the state's] law enforcement

and public safety interests." *Maryland v. King* concerned collection of DNA samples for use in investigation of unsolved crimes. The Court concluded that because collection of DNA samples provided a valuable tool for investigating unsolved crimes and helped to remove violent offenders from the general population, it would constitute "ongoing and concrete" irreparable harm to the State of Maryland if it was not permitted to employ a duly enacted statute.

In the instant case, two duly enacted California Penal Code sections are at issue. Law enforcement agencies in California, including the Placer County Sheriff's Office, are bound to enforce the California Penal Code, which plays a critical role in public safety. As set forth in Government Code Section 26601, "[t]he sheriff shall arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense." Article 5, Section 13 of the California Constitution provides that:

> It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. The Attorney General shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices, and may require any of said officers to make reports concerning the investigation, detection, prosecution, and punishment of crime in their respective jurisdictions as to the Attorney General may seem advisable.

Placer County and its residents would be irreparably harmed if the Sheriff's Office were enjoined from enforcing these long-standing statutes. While not in common use, slungshots are indisputably dangerous weapons with the capacity to inflict death, and the Sheriff's Office must have the ability to guard against them when required to do so. The Sheriff's Office must maintain the ability to ensure compliance with the Penal Codes in order to protect public safety and maintain peace.

**C. The Moving Party is Unlikely to Prevail on the Merits**

1. <u>Second Amendment</u>

Plaintiff claims that a government seizure of arms "in common use" for self-defense violates the Second Amendment. This argument ignores the fact that Plaintiff has not provided any evidence supporting their argument that slungshots are in common use today in Placer County - in fact, Plaintiff has alleged only one such arrest, that of Mr. Haven. Moreover, Plaintiff

relies heavily upon historical use of slungshots and related weapons, when the relevant inquiry is whether the weapon is in wide use today. (*Jaime Caetano v. Massachusetts*, 577 U.S. ___ (2016).) For example, in *Jaime Caetano v. Massachusetts*, 577 U.S. ___ (2016), the Court considered whether a statute prohibiting stun-guns was unconstitutional and in ruling that it was, relied, in part, upon the fact that stun-guns are in widely owned and accepted today.

Moreover, *District of Columbia v. Heller*, 554 U.S. 570 (2008) is distinguishable from the case at hand. *Heller* specifically considered whether a ban on handguns violated the Second Amendment. As set forth in *Heller*, 554 U.S. at 625, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." It does not protect those weapons not "typically possessed by law-abiding citizens for lawful purposes, such as sawed off shotguns" and notes that this is "an important limitation" on the Second Amendment. (*Ibid*.) The Court, in *U.S. v. Matthew Henry*, 688 F.3d 637 (9th Cir. 2012), in ruling that the Second Amendment did not extend to possession of a homemade machine gun, reiterated that "dangerous and unusual weapons" are not protected by the Second Amendment. "An object is 'dangerous' when it is 'likely to cause serious bodily harm.'" (*Id*. at p. 640.) Weapons are "unusual" when they have long been prohibited by State law – as is the case with slungshots as set forth above.

Because there is no Second Amendment right to slungshots, Plaintiff is unlikely to prevail on the merits.

2. <u>Takings Clause</u>

The takings clause of the Fifth Amendment states, "Nor shall property be taken for public use, without just compensation." Plaintiff fails to allege and there is no evidence to support a violation of the takings clause by Sheriff Bonner or his staff. Moreover, it is established that the due process component of the 5th Amendment only applies to the Federal Government, not local governments or their personnel. (*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).)

3. <u>Fourth Amendment</u>

Plaintiff is unlikely to prevail on his Fourth Amendment claims because Fourth Amendment Qualified Immunity applies to search and seizure cases. The qualified immunity of good faith "protects government officials 'from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) Qualified immunity "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." (*Id*. at 244.) A peace officer is entitled to qualified immunity unless (1) the officer's conduct violated a constitutional right and (2) that right was clearly established at the time of the violation. (See *Id*. at 232). A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." (*Id*. at 2093, citation and quotation marks omitted.) While there need not be a "case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), the plaintiff nonetheless "bears the burden of proving that the rights she claims were 'clearly established' at the time of the alleged violation." (*Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183, 197(1984)). In short, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." (*Malley v. Briggs*, 475 U.S. 335, 341 (1986).)

"A claim for unlawful arrest is cognizable under §1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." (*Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).) "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." (*Id*. at 966.) "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." (*United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983).) The probable cause inquiry is objective, and focuses on the facts known to the officer at the scene. (See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).) As stated in *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006), "If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it."

///

Where the issue is an arrest based on the enforcement of an allegedly unconstitutional statute, qualified immunity protects the officer from a civil lawsuit where the law is not so obviously unconstitutional as to require a reasonable officer not to enforce it. As stated in *Grossman v. Portland*, 33 F. 3d 1200, 1210 (9th Cir. 1994), "where a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional." If on February 8, 2015, an objectively reasonable officer in the position of Deputies Mason and Hintze could have believed that Mr. Haven was carrying the "horse lead" on the handlebars of his motorcycle for purposes of self-defense, then Deputies Mason and Hintze are entitled to qualified immunity from Mr. Haven's Fourth Amendment unreasonable seizure claims. The photographs show that the "horse lead" has the heft to cause serious physical injury if vigorously swung at the head or body of another person. Plaintiff's challenge to the statute belies the assertion that the "horse lead" was attached to the handlebars of his motorcycle merely for decoration. Plaintiff alleges that the statute unlawfully "interferes with the right to possess non-lethal weapons for purposes of self-defense." (¶ 218 of the SAC.) Plaintiff further alleges that the "horse lead" was attached to the handle bars by a quick release mechanism, and it is reasonable to assume that easy access facilitates its potential for use as weapon. (¶¶ 32 and 233 of the FAC).

4. <u>The Penal Code Sections are not Void for Vagueness</u>

Plaintiff argues that Penal Code Section 22210 and 22290 are unconstitutionally vague. A similar argument was rejected by the Court in *People v. Fannin*, *supra*, 91 Cal.App.4th 1399. In *Fannin*, Fannin contended that a "slung- shot" is an archaic term that is no longer commonly known, and therefore the statute fails to meet the due process requirement of providing reasonable notice of what it prohibits. The Court disagreed, holding that Section 22210 satisfied the requirement that "[c]riminal statutes must be sufficiently definite to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and to give the police guidelines definite enough to prevent arbitrary and discriminatory enforcement." (*Id.* at p. 1401.) Here the text of the statute is clear as to what is prohibited. As such, this argument should be rejected.

**D. Balance of Potential Harm/Public Interest**

The balance of potential harm and the public interest also weigh against granting the instant injunction. As discussed, it is in the public interest for the Sheriff's Office to continue to be able to enforce Penal Code provisions regarding slungshots. As discussed above, whether a public entity is enjoined from enforcing a statute, it is indisputable that harm results. Conversely, there is little, if any, harm to Mr. Havens when the events in question occurred over two years ago and he himself stipulated to forfeiture of the slungshot in question. Certainly, any arguable harm that could exist would be greatly outweighed by restricting the ability of the Sheriff's Office to continue to protect the public safety of its citizens.

**E. Plaintiff Seeks to Obtain All of the Relief Sought by Way of Preliminary Injunction**

If the requested injunction were to be granted, it would have the impact of providing Plaintiff with essentially all of the relief sought in this matter, without the ability for defendants to have a trial on the merits. Such injunctions are heavily disfavored and are subject to heightened scrutiny on motions for preliminary injunction. (*Schrier v. University of Co.*, *supra*, 427 F.3d 1253, 1259.) The rationale is because the limited purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." (*Ibid*, emphasis added.)

## IV. CONCLUSION

For the foregoing reasons, the Placer County Defendants respectfully request that the instant Motion be denied.

DATED: April 19, 2018

PLACER COUNTY COUNSEL'S OFFICE

By: /s/ *Julia M. Reeves*
JULIA M. REEVES, Attorneys for COUNTY OF PLACER, EDWARD N. BONNER, DEPUTY MASON, DEPUTY HINTZE