LONGYEAR, O'DEA & LAVRA, LLP
John A. Lavra, CSB No.: 114533
Amanda L. McDermott, CSB No.: 253651
Mark P. O'Dea, CSB No.: 186061
3620 American River Drive, Suite 230
Sacramento, CA 95864
Phone: 916-974-8500
Facsimile: 916-974-8510

Attorney for Defendants
City of Citrus Heights,
Chief Christopher Boyd,
Officer Christian Baerrensen, and
Officer Thomas Lamb

**UNITED STATES DISTRICT COURT,**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512; COUNTY OF PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZE, # 101.<br><br>　　　　Defendants | Case No.: 2:16-CV-00523-TLN-KJN<br><br>**CITRUS HEIGHTS POLICE DEPARTMENT CHIEF CHRISTOPHER W. BOYD'S OPPOSITION TO PLAINTIFF JAMES CUPP'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Date:**　　　May 3, 2018<br>**Time:**　　　2:00 p.m.<br>**Courtroom:**　2, 15th floor<br>**Judge:**　　　Hon. Troy L. Nunley<br>**Action Filed:** March 11, 2016 |

**TABLE OF CONTENTS**

                                                                                               **Page**

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL BACKGROUND ....................................................................... 1

III. RELEVANT FACTUAL BACKGROUND ........................................................ 1

    A. Facts Set Forth In The Second Amended Complaint And The Cupp Declaration ...... 1

    B. Other Relevant Facts ................................................................................... 2

IV. LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS .................. 4

V. ARGUMENT ....................................................................................................... 6

    A. THE REQUEST FOR THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS IN THIS ACTION .................................................................................. 6

    B. PLAINTIFF CANNOT DEMONSTRATE ANY LIKELIHOOD OF SUCCESS ON THE MERITS OF THIS ACTION BECAUSE THE RELIEF HE SEEKS IS SPECIFICALLY PROHIBITED BY CALIFORNIA STATE LAW .................................. 7

        1. The Police Department Was Required Under California Law To Remove Any Firearms Found In Plaintiff's Possession At The Time Of His Arrest On Suspicion Of Domestic Violence ................................................................ 7

    C. THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF CANNOT DEMONSTRATE THAT HE IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF THE ISSUANCE OF AN INJUNCTION ........................................................................................ 11

    D. THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE SUCH AN INJUNCTION WOULD CONTRAVENE THE PUBLIC POLICY OF THE STATE OF CALIFORNIA AND WOULD ALSO CAUSE IRREPARABLE HARM TO THE PEOPLE OF THE STATE OF CALIFORNIA ......... 12

VI. CONCLUSION.................................................................................................. 13

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

Maryland v. King, 133 S. Ct. 1 (2012) ................................................................................ 6

Maryland v. King, 567 U.S. 1301 (2012) ............................................................................ 6

Nken v. Holder, 556 U.S. 418, 129 S. Ct. 1749 (2009) ...................................................... 6

Salazar v. Buono, 559 U.S. 700, 130 S. Ct. 1803 (2010) ................................................... 5

State of California. In Md. v. King, 133 S. Ct. 1 (2012) ................................................... 12

United States v. First Nat'l City Bank, 379 U.S. 378, 85 S. Ct. 528 (1965) ...................... 5

Winter v. NRDC, Inc., 129 S. Ct. 365 (2008) ..................................................................... 4

Winter v. NRDC, Inc., 555 U.S. 7, 129 S. Ct. 365 (2008) .................................................. 5

**Federal Court Opinions**

Am. Trucking Ass'ns v. City of L.A., 559 F.3d 1046 (9th Cir. 2009) ................................. 4

Apple, Inc. v. Samsung Elecs. Co., 678 F.3d 1314 (Fed. Cir. 2012) .................................. 6

Bailey v. Clovis Unified Sch. Dist., No. 08-CV-0146-AWI-GSA, 2008 U.S. Dist. LEXIS 10347, 2008 WL 410613, at *3 (E.D. Cal. Feb. 11, 2008) ................................................ 5

Cal. Pharmacists Ass'n v. Maxwell-Jolly, 596 F.3d 1098 (9th Cir. 2010) ......................... 5

Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073 (9th Cir. 2014) ...................................... 6

Flexible Lifeline Sys. v. Precision Lift, Inc., 654 F.3d 989 (9th Cir. 2011) ....................... 5

In re Worldwide Educ. Servs., 494 B.R. 494 (Bankr. C.D. Cal. 2013) .............................. 5

Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644 (9th Cir. 2009) ............ 5

LGS Architects, Inc. v. Concordia Homes, 434 F.3d 1150 (9th Cir. 2006) ....................... 5

League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton, 752 F.3d 755 (9th Cir. 2014) ...................................................................................................... 5

Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236 (3d Cir. 2011) ............................. 6

N. Cheyenne Tribe v. Hodel, 851 F.2d 1152 (9th Cir. 1988) .............................................. 6

New Motor Vehicle Bd. of Cal. V. Orrin W Fox Co., 434 U.S. 1345, 1351 (1977) ......... 12

NewPath Networks, L.L.C. v. City of Davis, No. 2:10-cv-00236-GEB-KJM, 2010 U.S. Dist. LEXIS 40043 (E.D. Cal. Mar. 18, 2010) ................................................................... 4

Pashby v. Delia, 709 F.3d 307 (4th Cir. 2013) .................................................................. 6

Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott, 734 F.3d 406 (5th Cir. 2013) ................................................................................................................................ 6

Sierra Forest Legacy v. Rey, 577 F.3d 1015 (9th Cir. 2009) ........................................... 4

Sierra Forest Legacy v. Rey, No. 2:05-cv-00205-MCE-GGH, 2010 U.S. Dist. LEXIS 24122, 2010 WL 715846, at *1 (E.D. Cal. Feb. 26, 2010) ................................................ 4

Stanley v. Univ. of S. Cal., 13 F.3d 1313 (9th Cir. 1994) ............................................... 5

Thalheimer v. City of San Diego, 645 F.3d 1109 (9th Cir. 2011) .................................... 6

United States ex rel. Ragman v. Oncology Assocs., 198 F.3d 489 (4th Cir. 1999) ........ 5

**State Statutes**

Cal. Penal Code § 5150 (Deering) ................................................................................... 8

Cal. Penal Code § 8103 (Deering) ................................................................................... 8

Cal. Penal Code § 830.1 (Deering) .................................................................................. 7

Cal. Penal Code § 18100 (Deering) ................................................................................. 7

Cal. Penal Code § 18250 (Deering) ................................................................................. 7

Cal. Penal Code § 18265 (Deering) ................................................................................. 7

Cal. Penal Code § 18400 (Deering) ................................................................................. 7

Cal. Penal Code § 33850 (Deering) ........................................................................ 2,7, 8, 9

Cal. Penal Code § 33850(a)(4) (Deering) ...................................................................... 10

Cal. Penal Code § 8103(d)(2) (Deering) .......................................................................... 8

Cal. Penal Code § 8103(f)(1) (Deering) .......................................................................... 8

## I. INTRODUCTION

Plaintiff James Cupp moves this court to exercise its equitable powers to issue an order compelling the Police Chief of the Citrus Heights Police Department to return six firearms taken into custody by the police department at the time of the plaintiff's arrest on March 25, 2014. The motion should be denied in its entirety because plaintiff does not even come close to meeting any of the elements necessary to establish his entitlement to the relief requested herein. Moreover, by requesting the relief he does herein, plaintiff is soliciting the assistance of this court in the plaintiff's misguided effort to avoid having to comply with valid statues duly enacted by the people of the state of California to promote and safeguard the safety and wellbeing of its citizens. Plaintiff provides no compelling reason or rationale why this court should assist him in violating valid state law and the court should decline his invitation to do so.

## II. PROCEDURAL BACKGROUND

Plaintiff's Second Amended Complaint was filed on August 15, 2016. Therein, plaintiff James Cupp asserts three claims for relief against the City of Citrus Heights and its police department Chief and officers for alleged violations of his rights pursuant to the Second, Fourth, Fifth Amendments to the US Constitution. The claims arise out of Cupp's arrest by the Citrus Heights Police Department on March 25, 2014 for domestic violence.

Plaintiff Haven does not assert any claims against the Citrus Heights-related-defendants, and does not seek injunctive relief at this time against Citrus Heights either.

On September 30, 2016, the Citrus Heights defendants filed their motion to dismiss the complaint pursuant to FRCP 12(b)(6), and defendant's motion is pending before the court at this time.

Additionally, all of the defendants in this action have filed their own motions to dismiss the complaint, and all of those motions remain pending at this time.

## III. RELEVANT FACTUAL BACKGROUND

### A. Facts Set Forth In The Second Amended Complaint And The Cupp Declaration

Plaintiff Cupp was arrested by the Citrus Heights Police Department on March 25, 2014

and subsequently booked into the Sacramento County Jail (Second Amended Complaint, ¶ 136, 140). Six firearms were taken into custody by the Police Department at the time of Mr. Cupp's arrest (Second Amended Complaint ¶ 39). On May 30, 2014, the case against Cupp was dismissed by the Sacramento County District Attorney's Office (Second Amended Complaint ¶ 143). Two knives also seized from the plaintiff at the time of his arrest were returned to him following the dismissal of his pending criminal cases. However, his six firearms have remained in possession of the Citrus Heights Police Department (Second Amended Complaint ¶ 143, 146). Plaintiff is aware that the State of California has adopted certain procedures pursuant to Penal Code § 33855, which requires the plaintiff to:

    1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application"; and

    2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun (Second Amended Complaint ¶ 148; Cupp Declaration ¶ 104, 105, 106).

Cupp is aware that the Law Enforcement Gun Release process has been in effect in the state of California since the addition of Penal Code § 12021.3 in 2005 (Cupp Declaration ¶ 103). (Penal Code § 12021.3 was repealed and replaced with § 33850 in 2010)

**B.  Other Relevant Facts**

In the declaration of Police Lieutenant Alex Turcotte, filed contemporaneously with this opposition in support hereof, Lieutenant Turcotte attests to the following additional facts:

James Cupp was arrested on March 25, 2014 on suspicion of domestic battery as well as possession of a concealed dirk or dagger. At the time of his arrest six firearms were taken into custody by the Police Department from Cupp's residence and later booked into the Citrus Heights Police Department property room for safekeeping. The items so seized were inventoried. The Police Department took into its possession six firearms found in the plaintiff's residence, and those firearms remain in possession of the Police Department at this time. (Declaration of Alex Turcotte ¶ 3)

Four items of property belonging to Mr. Cupp other than the firearms were taken into possession at the time of his arrest and then were subsequently returned to Mr. Cupp, including keys, knives, and clothing. The firearms were retained for safekeeping, initially pending disposition of the criminal charges pending against Mr. Cupp, and subsequently pending the receipt of confirmation from the State of California, Department of Justice that the firearms had been cleared for release into the plaintiff's possession. (Declaration of Alex Turcotte ¶ 4)

On April 1, 2014, Mr. Cupp contacted the Department after receiving a letter describing the property the Department retained in safekeeping. He was advised that he had already received the property that was authorized to be released to him at that time. He was further advised that the firearms could not be released to him until his pending criminal case had been adjudicated. (Declaration of Alex Turcotte ¶ 5)

Mr. Cupp contacted the Department again on May 12, 2014, to inquire regarding the status of his firearms. He was advised at that time that his criminal case was still pending and that the Police Department was unable to release anything to him until that matter had been adjudicated. He was also advised that the Department would not dispose of any of his firearms without receiving specific instructions from the Sacramento County District Attorney's Office. (Declaration of Alex Turcotte ¶ 6)

On May 30, 2014, the pending charges against Mr. Cupp were dismissed and his criminal matter was concluded. (Declaration of Alex Turcotte ¶ 7)

On June 3, 2014, Mr. Cupp appeared in person at the Citrus Heights City Hall to make a complaint about the Department's continued possession of his firearms, and was advised that there was a procedure requiring him to contact the Department of Justice and complete a form which would need to be approved before the firearms could be returned to him. On June 4, 2014, Mr. Cupp was advised again that he should contact the Department of Justice and pursue the procedure required by state law, including the completion of the required law enforcement gun release form, before the firearms could be returned to him. In the meantime, the Department had determined that none of the firearms retrieved from Mr. Cupp were registered to him in the State of California. The Police Department contacted the Department of Justice on or about June 4,

2014 and was advised that since Mr. Cupp had an out-of-state address, the firearms did not need to be registered in his name. However, Mr. Cupp would first have to complete the appropriate application and have the request reviewed before the firearms could be released to him under California law. Mr. Cupp was so informed, and responded that he would pursue the law enforcement gun release procedure and then advise the Department when he had been approved for return of the firearms. (Declaration of Alex Turcotte ¶ 8)

On December 19, 2014, Mr. Cupp made contact with the Police Department, at which time he stated that he wanted to confirm that the firearms had not been destroyed. He further advised that he had retained counsel to assist him in recovering his firearms. Mr. Cupp was advised at that time that the firearms had not been destroyed. (Declaration of Alex Turcotte ¶ 9)

At this time the firearms remain in the custody of the Citrus Heights Police Department and moreover, because the firearms are now the subject of the instant litigation, the firearms have been placed on a "Do Not Destroy" list and will be maintained and preserved by the City of Citrus Heights Police Department pending the outcome of this matter. (Declaration of Alex Turcotte ¶ 10)

### IV. LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS

In *NewPath Networks, LLC. v. City of Davis,* 2010 U.S. Dist. LEXIS 40043 E.D. Cal. The court said the following:

> A plaintiff seeking a *preliminary injunction* must establish that he is (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of *preliminary* relief"; (3) "the balance of equities tips in his favor"; and (4) "a *preliminary injunction* is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., U.S., 129 S. Ct. 365, 374, 172 L. Ed. 2d 249.d 249 (2008)); see also *Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009)* (adopting the *preliminary injunction* standard articulated in Winter). A *preliminary injunction* is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter, 129 S. Ct. at 376*. "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." *Sierra Forest Legacy v. Rey, 691F. Supp. 2d 1204, 2010 U.S. Dist. LEXIS 24122, 2010 WL 715846, at *1 (E.D. Cal. 2010)* (citing *Winter, 129 S. Ct. at 376*). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Indep. Living Ctr. of S. Cal.*

*Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009) (quoting *Winter* 129 S. Ct. at 376).

The purpose of a *preliminary injunction* is to preserve the relative positions of the parties - the status quo - until a trial on the merits can be conducted. *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)). "*Injunctions* are classified as 'prohibitory' or 'mandatory,' depending on their effect on the party enjoined. A prohibitory *injunction* preserves the status quo, while a mandatory *injunction* goes beyond simply maintaining [the] status quo and compels the performance of an affirmative act." *Bailey v. Clovis Unified Sch. Dist.*, No. 08-CV-0146-AWI-GSA, 2008 U.S. Dist. LEXIS 10347, 2008 WL 410613, at *3 (E.D. Cal. Feb. 12, 2008) (citing *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)). "A party enjoined by a mandatory *injunction* must undo the wrong or injury with which he or she is charged." Id. Therefore, "[a] mandatory *injunction* goes well beyond simply maintaining the status quo pendent lite and is particularly disfavored. When a mandatory *preliminary injunction* is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Stanley, 13 F.3d at 1320* (quotations and citations omitted). (*NewPath Networks, LLC. v. City of Davis at *3-4.*)

In exercising their sound discretion, courts of equity "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[*Winter v. Natural Resources Defense Council, Inc.* (2008) 555 US 7, 24, 129 S. Ct. 365, 376-377; *Salazar v. Buono* (2010) 559 US 700, 714, 130 S. Ct. 1803, 1816; *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.* (9th Cir. 2011) 654 F3d 989, 996-997; *In re Worldwide Education Services, Inc.* (CD CA 2013) 494 BR 494, 502 (citing text)]

This "public interest" inquiry generally addresses the impact upon nonparties of granting or withholding injunctive relief. [*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton* (9th Cir. 2014) 752 F3d 755, 766-public interest element "deserves special attention in cases where the public interest may be affected"]

But if the injunction goes beyond the parties, carrying with it a potential for public consequences, the "public interest" becomes relevant to whether an injunction should issue: "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." [*United States v. First Nat'l City Bank* (1965) 379 US 378, 383, 85 S. Ct. 528, 531 (internal quotes omitted); *United States ex rel. Ragman v. Oncology Assocs., P.C.* (4th Cir. 1999) 198 F3d 489, 497; *California Pharmacists Ass'n v. Maxwell-Jolly* (9th Cir. 2010) 596 F3d 1098, 1114-1115 (vacated on other grounds in *Douglas v. Independent Living Ctr. Of Southern Calif., Inc.* (2012) 565 US 606, 132 S. Ct. 1204) (recognizing public interest in safeguarding access to health care for those eligible for Medicaid);

Determination on the record: In deciding whether the injunction would affect the public interest, the court must expressly consider the public interest *on the record*. Failure to do so constitutes an abuse of discretion. [*Northern Cheyenne Tribe v. Hodel* (9th Cir. 1988) 851 F2d 1152, 1157]

There is a public interest in upholding the law and having parties abide by their legal duties. As such, several courts have found that establishing likelihood of success may also satisfy the public interest factor at least when "other considerations" do not meaningfully weigh on the factors. [*Pashby v. Delia* (4th Cir. 2013) 709 F3d 307, 330; *Apple, Inc. v. Samsung Electronics Co., Ltd.* (Fed. Cir. 2012) 678 F3d 1314, 1318-public best served by enforcing patents that are likely valid and infringed; *Thalheimer v. City of San Diego* (9th Cir. 2011) 645 F3d 1109, 1125-1129.

Suit against government: Assessing the harm to the opposing and weighing the public interest "merge when the Government is the opposing party." [*Nken v. Holder* (2009) 556 US 418, 435, 129 S. Ct. 1749, 1762; *Drakes Bay Oyster Co. v. Jewell* (9th Cir. 2014) 747 F3d 1073, 1092; *Minard Run Oil Co. v. Unites States Forest Service* (3rd Cir. 2011) 670 F3d 236, 256]

And , "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." [*Maryland v. King* (2012) 567 US 1301,__, Maryland v. King, 133 S. Ct. 1, 3 (2012) (internal quotes omitted); *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott* (5th Cir. 2013) 734 F3d 406, 419]

### V.     ARGUMENT

**A.     THE REQUEST FOR THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS IN THIS ACTION**

As a threshold matter, the court cannot conclude that plaintiff can demonstrate any significant likelihood of success on the merits of the claims asserted in his complaint because all defendants in this action have moved to dismiss the complaint and the court has not yet made a determination that the plaintiff has actually stated any viable legal claims that should be allowed to proceed. Defendant Boyd hereby incorporates into this opposition as if set forth fully herein all of the arguments made by him in support of his motion to dismiss the plaintiff's claims, and requests that the court consider those arguments in making a determination as to plaintiff's likelihood of succeeding on the merit. Boyd contends, in opposition to this motion, that the complaint does not state any valid claims as against Chief Boyd, does not entitle the plaintiff to any relief, and until this court decides that the

complaint actually does state valid claims, it cannot be the basis for the relief sought by the plaintiff by this motion.

### B. PLAINTIFF CANNOT DEMONSTRATE ANY LIKELIHOOD OF SUCCESS ON THE MERITS OF THIS ACTION BECAUSE THE RELIEF HE SEEKS IS SPECIFICALLY PROHIBITED BY CALIFORNIA STATE LAW

#### 1. The Police Department Was Required Under California Law To Remove Any Firearms Found In Plaintiff's Possession At The Time Of His Arrest On Suspicion Of Domestic Violence

As the declaration of Alex Turcotte and the police report both established, plaintiff was arrested upon suspicion of domestic violence on March 25, 2014. At that time, he had in his possession the six firearms which are the subject of this motion for preliminary injunction. The Citrus Heights Police Department took those firearms into custody pursuant to, and as required by, California Penal Code § 18250. California Penal Code § 18250 provides, in relevant part, as follows:

> (a) If any of the following persons is at the scene of a domestic violence incident involving a threat to human life or a physical assault, is serving a protective order as defined in 6218 of the Family Code, or is serving a gun violence restraining order issued pursuant to Division 3.2 (commencing with Section 18100 ), that person shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the peace officer or other persons present:
>
> (1) A sheriff, undersheriff, deputy sheriff, marshal, deputy marshal, or police officer of a city, as defined in subdivision (a) of Section 830.1. (California Penal Code § 18250)

Additionally, weapons taken into custody under § 18250 must be retained for a minimum of 48 hours, but cannot be retained any more than 5 business days after the owner or person who was in lawful possession of the firearms has demonstrated compliance with Penal Code § 33850 et seq., as required by Penal Code § 18265, which provides as follows:

> (a) No firearm or other deadly weapon taken into custody pursuant to this division shall be held less than 48 hours.
>
> (b) Except as provided in Section 18400 , if a firearm or other deadly weapon is not retained for use as evidence related to criminal charges brought as a result of the domestic violence incident or is not retained because it was illegally possessed, the firearm or other

> deadly weapon shall be made available to the owner or person who was in lawful possession 48 hours after the seizure, or as soon thereafter as possible, but no later than five business days after the owner or person who was in lawful possession demonstrates compliance with Chapter 2 (commencing with Section 33850 ) of Division 11 of Title 4.

Incidentally, California law does not single out alleged perpetrators of domestic violence as being the subject of potential weapons seizures. There are many provisions of California state law which require relinquish of all firearms in the possession of a person who has been convicted of certain provisions of law. For example, under Welfare and Institutions Code § 8103 a person found not guilty by reason of insanity of murder or certain other violent crimes becomes disqualified from any further ownership or possession of firearms. Persons found by a court to be mentally incompetent to stand trial are similarly legally disqualified from owning firearms and under Welfare and Institutions Code § 8103 (d)(2) the court is required to notify the Department of Justice of the issuance of a court order finding such a person to be mentally incompetent. Similarly, under Welfare and Institutions Code §8103 (f)(1) a person taken into custody under section 5150 becomes legally disqualified from owning or possessing firearms, and any facility into which a person has been placed pursuant to section 5150 is required to submit a report to the Department of Justice containing the identity of the person.

In recognition of the fact that people and their circumstances change, California law also authorizes procedures whereby persons who have been deprived of their firearms can pursue a process to have the seized firearms returned to the owner's possession. That person may request that the Department of Justice perform a firearms eligibility check for that individual, which includes a criminal background check, in order to confirm that the individual may lawfully continue to possess his firearm(s).

Here, at the time of his arrest, such a procedure was available to the plaintiff under California Penal Code § 33850, which provides as follows:

> (a)  Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm.  The application shall include the following:

(1) The applicant's name, date and place of birth, gender, telephone number, and complete address.

(2) Whether the applicant is a United States citizen. If the applicant is not a United States citizen, the application shall also include the applicant's country of citizenship and the applicant's alien registration or I-94 number.

(3) If the firearm is a handgun, and commencing January 1, 2014, any firearm, the firearm's make, model, caliber, barrel length, handgun type, country of origin, and serial number, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, there shall be a place on the application to note that fact.

(4) For residents of California, the applicant's valid California driver's license number or valid California identification card number issued by the Department of Motor Vehicles. For nonresidents of California, a copy of the applicant's military identification with orders indicating that the individual is stationed in California, or a copy of the applicant's valid driver's license from the applicant's state of residence, or a copy of the applicant's state identification card from the applicant's state of residence. Copies of the documents provided by non-California residents shall be notarized.

(5) The name of the court or law enforcement agency holding the firearm.

(6) The signature of the applicant and the date of signature.

(7) Any person furnishing a fictitious name or address or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4), shall be guilty of a misdemeanor.

(b) A person who owns a firearm that is in the custody of a court or law enforcement agency and who does not wish to obtain possession of the firearm, and the firearm is an otherwise legal firearm, and the person otherwise has right to title of the firearm, shall be entitled to sell or transfer title of the firearm to a licensed dealer.

(c) Any person furnishing a fictitious name or address, or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4) of subdivision (a), is punishable as a misdemeanor.

Thus, upon dismissal of the charges pending against Cupp, he was entitled to avail himself of the procedures set forth under Penal Code § 33850 which authorized him to submit an application to the California Department of Justice so that that department could make a

determination as to whether or not he was eligible to have the firearms returned to him. Cupp's status as an out of state resident is irrelevant to his ability to pursue these procedures inasmuch as he was simply required to provide his driver's license from his own state or some other state-issued identification card in order to meet the requirements under Penal Code § 33850 (a)(4).

Plaintiff Cupp acknowledges his awareness of the existence of the state law procedure to request return of seized firearms. However, nowhere in his complaint, his declaration, or his motion does he assert that he ever made any effort whatsoever to avail himself of the state law procedures to request the return of his firearms. For example, he does not allege that he completed an application, but his application was denied for some improper purpose. He does not assert that the Department of Justice determined that he was eligible to possess firearms in the State of California, but has been prevented from doing so because Chief Boyd has refused to return the firearms to the plaintiff. Plaintiff does not assert, and cannot assert, that defendants apply the state law procedures in an unconstitutional or improper way so as to deny otherwise qualified individuals from regaining possession of their firearms. In fact, plaintiff does not articulate a single reason why he did not avail himself of the state law procedures back in 2014 after being notified that the criminal matter had been dismissed. Instead, plaintiff asserts generally that the state procedure infringes upon his constitutional rights, however, inasmuch as he has never attempted to avail himself of the state procedure, plaintiff cannot establish that the state law provisions actually would have or did violate any constitutional rights or permanently deprive him of his firearm. Moreover, the procedure is specifically designed to result in the return of firearms to their legal owners who have sufficiently demonstrated that they are not disqualified due to mental health issues, criminal background, or other reasons from further ownership and possession of firearms. Additionally, as discussed below, the State of California has a significant interest in ensuring that its laws are followed inasmuch as they are designed to promote the safety and wellbeing of the citizenry and to keep firearms out of the hands of persons who are legally disqualified from having them.

/ / /

### C. THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PLAINTIFF CANNOT DEMONSTRATE THAT HE IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF THE ISSUANCE OF AN INJUNCTION

A preliminary injunction is inappropriate here because the plaintiff fails to identify any actual and imminent harm that he will suffer if an injunction does not issue. There is nothing in plaintiff's declaration filed in support of this motion, nor in the motion itself which demonstrates any significant or imminent harm which the plaintiff will actually suffer if his firearms are not immediately returned to him. Moreover, any such claim would be belied by the fact that plaintiff has waited four years since his firearms were removed from his possession before seeking the instant relief.

The plaintiff contends in support of this motion that his firearms are necessary for self-defense, however, he makes no showing that he is at risk of significant injury or harm, nor that he has an immediate need to defend himself with the very weapons which are the subject of this motion. Plaintiff asserts that it is his intention to continue to enter the state of California for work and personal reasons and to drive vehicles through the state, however he is concerned for his safety and about his ability to defend himself. In support of his claim that he has a valid concern regarding his personal safety he mentions the beating of trucker Reginald Denny in the city of Los Angeles in 1992, more than 25 years ago, and also states that he has concern for his safety because of his awareness of incidents where truckers have been hijacked and their cargo stolen by "gangs and drug cartels in California" (Cupp Declaration ¶ 8, 9). Plaintiff does not state that he was actually involved in either of those incidents nor that anything else has occurred while he has been in California which resulted in a need for him to exercise his right of self-defense. Moreover, plaintiff apparently admits that he owns other firearms which presumably would be available for his stated need of self-defense in the unlikely event that he is targeted by gangs and drug cartels while going about his business in the State of California. See, for example, Cupp Declaration ¶ 2 where he asserts that he "owns multiple firearms, and possesses them within his home." As a result, Cupp has made no showing whatsoever that he is likely to suffer any actual injury or imminent harm in the event that the requested relief is not immediately granted.

Moreover, as set forth in the declaration of Lieutenant Alex Turcotte, the firearms in question have been maintained and stored at the Citrus Heights Police Department and continue to be maintained and stored as of today's date and have been placed on a "DO NOT DESTROY" list, which alleviates any concern that the firearms will be destroyed or lost if they are not immediately returned to the plaintiff. In short, plaintiff has not come close to meeting his burden of demonstrating an essential element of a preliminary injunction, the likelihood of irreparable harm in the absence of such an injunction, and his motion should be denied.

**D.   THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE SUCH AN INJUNCTION WOULD CONTRAVENE THE PUBLIC POLICY OF THE STATE OF CALIFORNIA AND WOULD ALSO CAUSE IRREPARABLE HARM TO THE PEOPLE OF THE STATE OF CALIFORNIA**

As set forth above, the relief requested herein by the plaintiff would, in effect, allow him to violate and ignore validly enacted constitutional provisions of law without having to make any showing as to why he should be singled out for special treatment and should be allowed to avoid compliance with the law. The statutes enacted by the State of California to remove firearms from the hands of people who are mentally or criminally disqualified from having them reflect a public policy designed to protect the citizenry from the risk of injury or death caused by the discharge of firearms by such individuals. Ignoring these laws and allowing someone such as the plaintiff to come into federal court and obtain the instant order results in presumptive harm to the people of the State of California. In *Maryland v. King,* 133 S. Ct. 1 (2012) the U. S. Supreme Court stayed a judgment that had successfully challenged a Maryland statute, noting that "any time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" Maryland, supra, at 3, citing New Motor Vehicle Bd. of Cal. V. Orrin W Fox Co., 434 U.S. 1345, 1351 (1977). Plaintiff cannot make any showing that the interest of the State of California in protecting its citizens from unnecessary injuries and death occasioned by irresponsible firearm use is outweighed by his own interests in having his firearms returned to him without a determination having first been made as to whether it would be appropriate to do so.

/ / /

### VI. CONCLUSION

Plaintiff has known since the time of his arrest that he needed to complete an application and to be approved before his firearms could be returned to him. He deliberately chose not to avail himself of that process and cannot state a single reason why his reasonably diligent pursuit of that process would not have resulted in the return of his firearms. Instead, he waited four years, and now demands that this court do for him what he would not do for himself. He has not demonstrated that he is entitled to the relief sought herein and the motion should be denied in its entirety.

Dated: April 19, 2018                                   LONGYEAR, O'DEA & LAVRA, LLP

By: */S/ Mark P. O'Dea*
       JOHN A. LAVRA
       AMANDA L. MCDERMOTT
       MARK P. O'DEA