Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

**THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; et al.<br><br>Defendants. | Case No.  16-CV-00523-TLN-KJN<br><br>PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION<br><br>**Date:** May 3, 2018<br>**Time:** 2:00 p.m.<br>**Courtroom:** 2, 15th floor<br>**Judge:** Hon. Troy L. Nunley<br>**Action Filed:** March 11, 2016 |

## INTRODUCTION

For brevity purposes, this reply is to the oppositions of all defendants since they each raise common arguments against injunctive relief and the lack of evidence produced attending each of their oppositions.  The three key differences noted in each opposition is the following: 1) the State argues 11th Amendment, 2) Sacramento County Sheriff Jones destroy Haven's guns and property within the last few months while this action was pending, 2) Citrus Heights Police Department Chief Christopher W. Boyd still has Cupp's property

1  stored, 3) and Placer County Sheriff Edward N. Bonner argues consent to destruction even
2  though Haven was under threat of prosecution as though that is acceptable.
3     The common denominator in each opposition is that the laws, policies and tactics
4  employed against each plaintiff will not be changed or altered, and none of Plaintiffs'
5  evidence was countered with opposing declarations supporting the probable cause for arrest
6  and seizure of property.
7     Not a single affidavit was produced explaining exactly how the Fourth and Fifth
8  Amendments were NOT violated. All of the Defendants focus on the LEGR form, without
9  addressing how the firearms were seized without a warrant, and then the exacting process for
10 their return other than phone calls. It should be apparent to the Court what is really happening
11 here is that the government has profiled bikers by their looks; only to find out that they are
12 not convicted felons and narcotics traffickers, that they are law abiding citizens who express
13 themselves differently than an attorney in a suit, and that they should be subjected to
14 selective enforcement simply because of the way they express themselves.
15    As if an unconstitutional law is OK because it was passed by the majority, the
16 government claims that the offending statues are "duly enacted by the people of the state of
17 California to promote and safeguard the safety and well-being of its citizens." Sacramento
18 County Opposition page 1, line 8. Ergo, it is acceptable to allow the majority to violate the
19 minority's civil liberties — and to think the one most important point of contention between
20 the Federalists, who advocated a strong national government, and Anti-Federalists, who
21 wanted power to remain with the People, was the Constitution's lack of a bill of rights that
22 would place specific limits on government power. Federalists argued that the Constitution
23 did not need a bill of rights, because the people and the states kept any powers not given to
24 the federal government. The Anti-Federalists held that a bill of rights was necessary to
25 safeguard individual liberty.  Thankfully, the Anti-Federalists won out and now the Plaintiffs
26 are protected by the mob rule of California, and only by way of the 14th Amendment.
27    Before government attorneys argue against the Bill of Right simply because an elected
28 body passed a law, they would be well advised to read, for example, Horace G. Flack, *The*

*Adoption of the Fourteenth Amendment* (Johns Hopkins 1908). As Professor Flack points out, Senator Saulsbury of Delaware, opposed the Fourteenth Amendment Privileges or Immunities Clause, the Freeman's Bureau, and the Civil Rights Bills since they "**deprive the state of their police power**, and would nullify the laws of his State which forbade negroes to keep-arms or ammunition." Flack at 22, 25, 38 (emphasis added). On the other hand, there was Senator Trumbull who recognized "the right to keep and bear arms was a right all were entitled" Senator Trumble was adamant that the "privileges or immunities clause" was necessary to "destroy the discrimination made against the negro in the laws of the Southern States . . . .", citing the reenactment of slave codes prohibiting the right to travel and firearm ownership. *Id.* at 20-22.

Statutes disarming law-abiding responsible citizen gun owners reflect an opinion on gun policy. Courts are not free to impose their own policy choices on sovereign states. But as *Heller* explains, the Second Amendment takes certain policy choices and removes them beyond the realm of debate. Disarming California's law-abiding citizenry without any process and making them pay to have their property returned is not a constitutionally-permissible policy choice.

**REPLY**

*INJUNCTIVE RELIEF*

"It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to '(their) old ways." *Allee v. Medrano*, 416 U.S. 802, 811 (1974)*,* citing *Gray v. Sanders*, 372 U.S. 368, 376; *Walling v. Helmerich & Payne, Inc.*, 323U.S. 37, 43; *United States v. W. T. Grant Co.*, 345 U.S. 629, 632; *NLRB v. Raytheon Co.*, 398 U.S. 25, 27; *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 406.

While this Court is dealing with a relatively small number of individuals who have had their property and firearms seized, the seizures have been the result of a clear statewide law and policy in violation of the Second, Fourth and Fifth Amendments, which has continued and will continue as is clearly evident from the oppositions. See *United States v.*

*Calandra*, 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974) ("The purpose of the Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's person, house, papers, or effects. The wrong condemned is the unjustified governmental invasion of these areas of an individual's life. That wrong ... is fully accomplished by the original search without probable cause."); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir.1992) (holding that "given the fundamental right involved, namely, the right to be free from unreasonable searches" the plaintiff had sufficiently shown likelihood of irreparable harm for preliminary injunction purposes); *Cerro Metal Prods. v. Marshall*, 620 F.2d 964, 974 (3d Cir.1980) (holding that "an [OSHA] inspection violating the Fourth Amendment would constitute irreparable injury for which injunctive relief would be appropriate").

Indeed, this circuit has upheld injunctions against pervasive violations of the Fourth Amendment. In *Conner v. City of Santa Ana*, 897 F.2d 1487 (9th Cir.), cert. denied, 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990), an injunction was upheld against the City of Santa Ana to prevent it from entering Conner's property without a warrant to remove old, inoperable automobiles, without questioning whether such a violation of the Conner's Fourth Amendment rights would result in irreparable harm. *Id*. at 1493–94. In *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir.1986), the Ninth Circuit affirmed the district court's finding that absent an injunction, a labor union, five employers, and nine employees of Hispanic ancestry would suffer irreparable harm from INS searches and arrests at factories that violated the Fourth Amendment. See also *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir.1983) (American citizens of Mexican descent and Mexican citizens legally in the United States who were subjected to searches of their residences without consent, and detention without reasonable suspicion that they were illegal aliens, were entitled to a preliminary injunction against the INS where they had "demonstrated a possibility or irreparable injury by showing violations of their constitutional rights which, if proven at trial, could not be compensated adequately by money damages").

Furthermore, a statewide injunction should be issued as "an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit-even if it is not a class action- <u>if such breadth is necessary to give prevailing parties the relief to which they are entitled</u>." *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir.1987) (emphasis in original). Because the law and policy regarding "arms" is formulated on a statewide level, other law enforcement agencies follow the Attorney General's policy, it would ensure consistency in how the laws are enforced.

Plaintiff does not need to show threat of harm for self defense purposes to suffer an injury under the Second Amendment. The denial of arms legally owned and possessed by Plaintiff is an injury *per se.*

Apparently, any person who has had their firearms seized by law enforcement (with or without probable cause), and who legally owned the firearms and is not prohibited by law of possessing firearms, that person must do the following without any formal notice or process whatsoever: 1) Phone a law enforcement agency to find out how to get the firearms returned, 2) fill out some government form called a LEGR and pay for a background check and firearm registration check which was previously conducted by the local agency, 3) pay to have this check on a computer which was already conducted, 4) and even when this form is filled out, the Plaintiffs must then wait 30 days for the return of property, even though to buy a new gun there is only a 10-day waiting period. Again, to buy a firearm, a fee is paid and a background check is conducted with only a 10-day waiting period. This fact alone makes the law unconstitutional.

***SOVEREIGN IMMUNITY***

Counties are not generally considered to have sovereign immunity, even when they "exercise a 'slice of state power'". *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391 (1979).

Article III standing analysis recognizes that, where threatened action by government is

concerned, courts do not require a plaintiff to expose himself to criminal liability before bringing suit. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129 (2007); *Steffel v. Thompson*, 415 U.S. 452 (1974).

Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), prospective relief against a state official in his official capacity to prevent future federal constitutional or federal statutory violations is not barred by the Eleventh Amendment. The Court in *Young* reasoned that a state official who violated federal law is "stripped of his official or representative character" and, therefore, did not act for the state, but as an individual.

Because the Eleventh Amendment protects states and state entities, and not individuals, the claim for prospective relief is not barred by the Eleventh Amendment. The rationale behind the *Young* doctrine is fictitious because its prospective relief operates in substance against the state, and may have a substantial impact on the state treasury. The Young doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

To determine whether a plaintiff has alleged a proper *Young* claim, the federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). Declaratory relief is within the *Young* doctrine's reach, when there are ongoing or threatened violations of federal law. *Green v. Mansour*, 474 U.S. 64, 73 (1985).

The Attorney General offers inadequate and ad hoc justifications for the law which have been well addressed in the moving papers.

Among the relevant facts is the immediate availability of criminal and mental health background information through the federal National Instant Check System [NICS], a system designed and instituted by the federal government for the purpose of providing states with a resource to quickly, efficiently, and effectively determine if a firearm buyer is someone that

should not take possession of a firearm.

The Attorney General's argument in favor of the laws reflects the forlorn hope that the courts will not take Second Amendment rights seriously.

In other circumstances where legislation impinges upon a fundamental right, the Supreme Court has applied strict scrutiny. See, e.g., *Clark v. Jeter*, 286 U.S. 456, 461 (1988)("classifications affecting fundamental rights are given the most exacting scrutiny").

Plaintiffs embrace the idea of a background check, and this lawsuit does not question the legitimacy of such screening. In an earlier time, before the relevant federal and state databases allowed for essentially instant verification, some delay to permit a records check might have been arguably appropriate. Now, however, both the NICS and PAPF systems are available on-line, and using them will clear all but a handful of prospective purchasers.

Dated: April 26, 2018         THE LAW OFFICES OF GARY W. GORSKI
                              Respectfully Submitted,
                               /s/ Gary W. Gorski
                              Gary W. Gorski
                              Attorney for Plaintiffs