Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

# THE UNITED STATES DISTRICT COURT

# IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual )<br><br>Plaintiff, )<br><br>vs. )<br><br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity only; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT.<br><br>Defendants. | **Case No.**  16-CV-00523-TLN-KJN<br><br><br>**THIRD AMENDED COMPLAINT FOR MONETARY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF (42 U.S.C. § 1983)**<br><br><br>**DEMAND FOR JURY TRIAL** |

# JURISDICTION AND VENUE

- 1 -

**Third Amended Complaint**

1. Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2. The Second Amendment is a right which requires the possession of an "arm" for personal self defense.

3. The Second Amendment is the only right which requires <u>access</u> to, and <u>ownership</u> of, a tangible piece of property (a protected "arm").

4. To exercise this right, it essentially includes the right to have access to "arms" by way of possession and control over such arms, which is most acute in the home.

5. *Heller* clearly established the fundamental right to posses arms in the home, and the government was well advised of this right prior to depriving plaintiffs or their arms in their respective homes.

6. Defendants, under color of state law, entered the homes of plaintiffs and confiscated their arms, in violation of the Second Amendment.

7. Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant HARRIS resides in this judicial district.

9. The state's conduct and law is inherently impermissible, regardless of any protected or remedial procedures.  There is no distinction between personal liberties and property rights under 42 U.S.C. § 1983.

**THE PARTIES**

10. Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

**- 2 -**

**Third Amended Complaint**

11.     CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996), until he changed his residency to South Dakota, which requires no such license as open carry is allowed.

12.     CUPP has no criminal record.

13.     His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, CUPP continuously travels through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

14.     CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

15.     As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

16.     CUPP presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

17.     CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving through Los Angeles during a civil protest in the course and scope of his employment as a trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

18.     CUPP desires to travel with firearms and knives, which as a citizen of the state of South Dakota is legal, into the state of California to protect himself, his family, his property, and his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and while performing various other activities such as carrying large sums of money associated with his work.

**Third Amended Complaint**

19. Moreover, CUPP specifically has concern for the safety of himself and his cargo because of truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

20. In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

21. CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

22. Thus, because CUPP is continuously harassed for carrying knives exposed, it is Plaintiffs' position that he wants to carry them concealed on his person so that he is not profiled by law enforcement.

23. CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while traveling into and through California, and taking up temporary residence for purposes of work.

24. CUPP has unconstitutionally been prevented from doing so because of the code sections challenged and complained of herein, and because of Defendants' unconstitutional application and enforcement of those same sections.

25. CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit or prior permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess of open carried and/or concealed weapon on his person, in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a permit or prior permission authorizing him to do so.

26. Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

27. At all relevant times, CUPP had temporary abode was parked at a friend's house, which docked, plugged, and his truck was parked in another location.

28. At all relevant times, CUPP was traveling through California with his travel trailer, and only staying temporarily for a few weeks visiting a friend.

- 4 -

**Third Amended Complaint**

29.  Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of County of Sacramento, California.  He is a Veteran and Native-American, and as such belongs to a class which consists of a long tradition of keeping and bearing arms.

30.  Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an avid hunter and owner of firearms.  Veterans and Native Americans have a long tradition of carrying and using California banned and prohibited weapons, especially firearms.

31.  While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy explosives and ordinances.

32.  The standard military side arm of the time was a .45 Caliber Semi-Automatic pistol, the type which California now seeks to ban.

33.  Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby the California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law."

34.  Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over sheriffs and police chiefs, including the power to require written applications and fees regarding firearms.

35.  Defendant HARRIS is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report to her.

36.  Defendant HARRIS is the State of California Attorney General, and as such is responsible for promulgation of administrative rules regarding firearms and weapons used for personal self defense.

37.  Defendant HARRIS is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, under whose direction all defendants complained of in this action have acted on behalf of.

38.  Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting

**Third Amended Complaint**

1   under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for

2   enforcing the code sections complained of in this action.

3   39.   Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief

4   is sought.

5   40.   Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

6   employee of CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

7   used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

8   this action.

9   41.   Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

10   of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

11   used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

12   this action.

13   42.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

14   servant, and/or employee of CITY OF CITRUS HEIGHTS, acting under color of state law as

15   that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections

16   complained of in this action.

17   43.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

18   02589 on or about 03/26/2014 is an agent, servant, and/or employee of CITY OF CITRUS

19   HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

20   responsible for enforcing the code sections complained of in this action.

21   44.   Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

22   POLICE DEPARTMENT have not been located, but they will be added to this complaint

23   upon uncovering their names through discovery.

24   45.   Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of

25   law.

26   46.   At all times, plaintiffs legally possessed and owned handguns and long-rifles, which were

27   never illegal, even under California law, to possess and own.

28   47.   At the direction of state law and HARRIS, plaintiffs had their firearms confiscated by

**Third Amended Complaint**

HARRIS and law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned.

**FIRST CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

48. Plaintiffs incorporate the above allegations as if set forth fully here.

49. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

50. The United States Supreme Court has concluded that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and . . . individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting Heller, 554 U.S. at 628). The Court has held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" is unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." Heller, 554 U.S. at 628.

51. The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens for lawful purposes" today. See, e.g., *id*. at 624-25; see also *Caetano v. Massachusetts*, -- U.S. --, 136 S. Ct. 1027, 1027-28 (2016). The Second Amendment's protection also includes the handguns, ammunition and magazines necessary to meaningfully keep and bear arms for self-defense. See *Jackson*, 746 F.3d at 967-68; *Fyock*, 779 F.3d at 998. As such, the Second Amendment protects handguns, magazines and the firearms equipped with them that are in common use for lawful purposes.

52. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state and local governments. *McDonald*, 561 U.S. at 750.

53. In 1999, the California legislature enacted Senate Bill 23 ("SB 23"), making it a crime, beginning January 1, 2000, to manufacture, import, sell, or transfer any "largecapacity

- 7 -

**Third Amended Complaint**

magazine" in the state of California. S. B. 23, 1999-2000 Reg. Sess. (Cal. 1999) (codified at Cal. Penal Code § 32310 [formerly Cal. Penal Code § 12020(a)(2)]).8 SB 23 defined "large-capacity magazine" as "any ammunition feeding device with the capacity to accept more than 10 rounds," but not including feeding devices that have been permanently altered to accommodate no more than 10 rounds or any .22 caliber tube ammunition feeding device. Cal. Penal Code § 16740 (formerly Cal. Penal Code § 12020(c)(25)).

54.    As originally enacted, California's restriction did not include "possession" as one of the prohibited activities relating to magazines over ten rounds. This meant that individuals who lawfully possessed such magazines prior to the enactment of SB 23 did not have to dispose of them.

55.    Penal Code Section 31910(b)(7)(A) establishes the "microstamping" requirement. That section stated: Commencing January 1, 2010, for all semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it is not designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one manufacturer unencumbered by any patent restrictions.

56.    In July 2016, however, the California legislature passed and the Governor signed Senate Bill 1446 ("SB 1446"), amending Section 32310 to also prohibit the mere possession of magazines capable of holding more than 10 rounds. S. B. 1446, 2015-2016 Reg. Sess. (Cal. 2016). On November 8, 2016, California voters approved Proposition 63, which made effectively the same amendment as SB 1446 did to Section 32310, prohibiting (again) the possession of magazines capable of holding more than 10 rounds.

57.    On July 1, 2017, any previously law-abiding person in California who still possesses a firearm magazine capable of holding more than 10 rounds will begin their new life of crime. That is because California Penal Code § 32310 was amended last fall by the passage of a

California ballot initiative, Proposition 63. With this change, § 32310(c) requires persons who lawfully possess these magazines today to dispossess them or face criminal penalties of up to one year in a county jail and a fine of $100 per magazine, or both.

58.   Section 32310 prohibits magazines that come standard with or are commonly used in firearms that are "typically possessed by law-abiding citizens for lawful purposes," Heller, 554 U.S. at 624-25, throughout the United States. Indeed, millions of firearms—including the most popular models—that come stock from the factory with magazines over ten rounds have been sold in the United States. People also buy such magazines aftermarket by the millions. Notwithstanding California's description of the prohibited magazines as being "large capacity," magazines with capacities of more than ten rounds are, instead, standard-capacity for many common firearms that are lawfully possessed in the clear majority of states.

59.   A semi-automatic handgun is barred from the approved handgun roster if "[i]t does not have a positive manually operated safety device, as determined by standards relating to imported guns promulgated by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives." Cal. Penal Code § 31910(b)(1).

60.   Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or transferring these commonly owned magazines implicates and violates their Second Amendment rights. A total ban on standard-issue, commonly possessed magazines is not remotely tailored to increasing public safety. To the contrary, limiting magazine capacity to ten rounds decreases public safety.

61.   All semi-automatic handguns not on the approved roster prior to 2010 are barred from the approved handgun roster unless they employ so-called "microstamping technology," in that they are " designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one

- 9 -

**Third Amended Complaint**

manufacturer unencumbered by any patent restrictions." Cal. Penal Code § 31910(b)(7)(A). "The Attorney General may also approve a method of equal or greater reliability and effectiveness in identifying the specific serial number of a firearm from spent cartridge casings discharged by that firearm than that which is set forth in this paragraph . . ." Cal. Penal Code § 31910(b)(7)(B).

62. The microstamping requirement of Cal. Penal Code § 31910 became effective on May 17, 2013. On that date, the California Department of Justice issued  Information Bulletin No.: 2013-BOF-03, wherein the Attorney General announced that the Department had determined that the technology described in Penal Code § 31910 is now available to more than one manufacturer unencumbered by any patent restrictions.

63. Micro-stamping technology is not a safety device and has no rational relationship to the safety of the owner/buyer/consumer of semi-automatic pistols.

64. On information and belief, as of this writing, there are no commercially available semiautomatic handguns manufactured in the United States utilizing the microstamping technology required by Cal. Penal Code §31910(b)(7).

65. California Penal Code § 32000 provides an additional exemption for law enforcement, regardless of type and caliber of handgun.

66. California prohibits the acquisition of handguns of the kind in common use for traditional lawful purposes, including self-defense, unless they lack features that are either rejected by the market or are unavailable – which constitutes a de facto ban.

67. California law presumes that all handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." Cal. Penal Code § 31910.

68. [A]ny person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends any unsafe handgun shall be punished by imprisonment in a county jail not exceeding one year. Section 32000.

69. As of May 17, 2013, all semiautomatic handguns not already rostered cannot be submitted for roster listing unless they employ socalled "microstamping technology." To comply,

**Third Amended Complaint**

handguns must be: designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired . . . . Section 31910(b)(7)(A).

70.   There is an actual and present controversy between the parties. Plaintiffs contend that Section 32310 infringes on Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments to the United States Constitution, by generally prohibiting commonly possessed ammunition feeding devices that it deems "largecapacity magazines." Plaintiffs also contend that Section 32310 violates the Takings Clause by requiring owners who lawfully purchased "large-capacity magazines" to surrender physical possession of their property to the government rather than keeping it in their possession. And Plaintiffs contend that Section 32310 violates the Due Process Clause by banning lawfully acquired magazines based on a feature (capacity to accept more than 10 rounds) that has no relation to enhancing public safety or any other valid governmental objective. Defendants deny these contentions. Plaintiffs desire a judicial declaration that the California Penal Code section 32310 violates Plaintiffs' constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights.

71.   Plaintiffs are presently and continuously injured by Defendants' enforcement of California Penal Code section 32310 insofar as that provision violates Plaintiffs' rights under the Second Amendment, the Takings Clause, and the Due Process Clause by precluding the acquisition, possession, and use of firearm magazines that are "typically possessed by law-abiding citizens for lawful purposes" nationwide.

72.   If not enjoined by this Court, Defendants will continue to enforce Section 32310 in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to California's ongoing enforcement of Section 32310.

**Third Amended Complaint**

73. Plaintiffs suffered an injury in fact, and that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

74. Article III standing analysis recognizes that, where threatened action by government is concerned, courts do not require a plaintiff to expose himself to criminal liability before bringing suit. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128-129 (2007); *Steffel v. Thompson*, 415 U.S. 452 (1974).

75. Under 32310, merely continuing to possess a magazine able to hold more than 10 rounds may be charged as a criminal misdemeanor. The injury will be immediate and concrete. See *Jackson v. City & County of San Francisco*, 829 F. Supp. 2d 867, 871-872 (N.D. Cal. 2011).

76. There is a credible threat of prosecution.

77. The Attorney General has not indicated that § 32310 (c) & (d) will not be enforced, nor the state has definitively enforced the California's Unsafe Handgun Act, California Penal Code, §§ 31900, et seq. as plaintiffs are barred from purchasing any new semi-automatic handgun not on the list.

78. The Attorney General has vigorously enforced all gun laws.

79. In fact, California law enforcement agents surveil gun shows in Nevada, with the objective to identify suspected California residents who entered Nevada to purchase weapons or accessories that would be illegal in California. See e.g., *People v. Verches*, H041967, slip. op., 2017 WL 1880968, at *1-3 (Cal. Ct.App. May 9, 2017).

80. Defendant XAVIER BECERRA is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Becerra is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Becerra also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers. Defendant Becerra's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California, including restrictions on certain magazines classified as "large-capacity magazines." He is sued in his official

**Third Amended Complaint**

1      capacity.

2   81.   Moreover, the State has vigorously enforced all gun laws in the past.

3   82.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for

4         self-defense purposes.

5   83.   Plaintiffs are a extremely familiar with firearms and the safe operation thereof, and in

6         particular semi-automatic handguns with magazine capacities greater than 10 rounds and

7         semi-automatic rifles capable of holding magazines containing more than 10 rounds of

8         ammunition

9   84.   Plaintiffs intend to travel in and out the State of California with ammunition magazines

10        which hold more than ten rounds, and they intend to purchase, possess, and use handguns

11        which are not on California's approved list.

12  85.   However, because of the threat of enforcement, and actual enforcement, plaintiffs seek a

13        permanent injunction enjoining XAVIER BECERRA and the State of California from

14        enforcing the magazine ban and safe gun list ban.

15  86.   Dealers may not sell any new handgun unless it is listed in the state Department of Justice

16        roster of handguns certified for sale.

17  87.   The prohibition of purchasing the safest, most technologically advanced handguns, which

18        have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory

19        9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series,

20        and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock

21        and 100 year old revolvers, none of which have manual thumb safeties.

22  88.   The lack of these safety features have resulted in an inordinate amount of accidental

23        discharges by law enforcement, including the state's own experts who shot themselves.

24  89.   Plaintiffs have the same rights active and retired officers have to purchase (and use for

25        personal self-defense) the best and safest tool for the job.

26  90.   Plaintiffs are seeking to enjoin the State of California and defendants from enforcing current

27        firearm statutes which infringe upon their constitutional rights as follows:

28        a.     To purchase off-roster handguns, which are legal under federal law.

- 13 -

**Third Amended Complaint**

b.   To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

c.   To travel interstate with magazines which contain more than 10 rounds of ammunition.

91.   The Second Amendment to the United States Constitution provides:

A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

92.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

93.   The Second Amendment is incorporated to the states through the Fourteenth Amendment.

94.   The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

95.   The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

96.   Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are "typically used for lawful purposes" and are deemed presumptively reasonable as active duty and retired law enforcement are granted the rights and privileges to use them when applying reasonable force.

97.   Widespread law enforcement use of a particular firearm, weapon or magazine, or edged weapon proves that particular arms are common and typically used for lawful purposes, rather than "dangerous and unusual."

98.   Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

99.   Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which:

**Third Amended Complaint**

a.      Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

b.      Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

c.      Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

100.   Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

101.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SECOND CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Unconstitutional Statute - Confiscation of Firearms and LEGR)
(Injunctive and Declaratory Relief Only For Return of Firearms)

102.   Plaintiffs incorporate the above allegations as if set forth fully here.

103.   Based upon information and belief, plaintiffs' firearms were illegally seized, and therefore, they were deprived of their Second Amendment rights.

104.   After the illegal seizure of the firearms, California mandates the payment of a fee for the return of plaintiffs' right to keep and bear arms, and the apparent application for such called a Law Enforcement Gun Release (LEGR) process Penal Code (PC) section 12021.3.

105.   This process requires any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned to submit a LEGR Application form for a determination by the California Department of Justice (the Department) as to whether he or she is eligible to possess a firearm.

106.   Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s) that is in the custody or control of a court or law enforcement agency must submit a LEGR Application along with a payment of money to the XAVIER BECERRA.

107.   Additionally, if an individual is seeking the return of a long gun purchased prior to January 1, 2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted

**- 15 -**

**Third Amended Complaint**

1    along with the a fees to XAVIER BECERRA.

2    108.   In violation of the Second Amendment, XAVIER BECERRA enforces a statutory scheme

3    pursuant to Penal Code Section Penal Code Section 33850 (application for return of firearm),

4    33855 (authority of law enforcement to enforce), 33860, 33880 (fee), requiring CUPP to: 1)

5    fill out and sign a document under the penalty of perjury called the "CALIFORNIA

6    DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release

7    Application", and 2) pay a processing fee of $20.00 for the first firearm (long gun or

8    handgun), and $3.00 for each additional gun.

9    109.   Both plaintiffs have had their firearms seized from their residences, without a warrant,

10    without being charged, tried or convicted of a crime.

11    110.   The firearms illegally seized have not been returned to plaintiffs.

12    111.   By failing to immediately return plaintiffs firearms once it was determined that no crime had

13    been committed, XAVIER BECERRA has deprived plaintiffs of their ability to exercise their

14    Second Amendment rights by taking the very instruments necessary for exercising such a

15    right, akin to confiscating a paper and pen preventing the free exercise of speech.

16    112.   Plaintiffs seek a positive injunction for XAVIER BECERRA to release and return all

17    firearms and ammunition illegally confiscated.

18    113.   Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

19    114.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

20    **THIRD CLAIM FOR RELIEF:**
**Second Amendment**

21    (Plaintiff CUPP; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights
Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with

22    Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report
Number CH14-02589  only)

23    (Open Carry of Knives and Seizure of Firearms)
(Declaratory, Injunctive and Monetary relief)

24

25    115.   Plaintiffs incorporate the above allegations as if set forth fully here.

26    116.   California law permits the open carry of knives.

27    117.   Knives are protected arms under the Second Amendment.

28    118.   At all times, the law was well established as to the Second Amendment.

119.   CUPP was charged with PC 21310, carrying a concealed knife which was not concealed.

120.   On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

121.   CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

122.   On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

123.   On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

124.   Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

125.   At all times, Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

126.   To this day, under color of law, Defendants have maintained possession over Plaintiffs'

**- 17 -**

**Third Amended Complaint**

personal property, including ammunition, speed loaders, holsters, $1,000.

127. CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

128. Plaintiff seeks monetary relief for being deprived of his right and property.

129. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

130. Plaintiff has been damaged according to proof.

131. HARRIS is named only for purposes of injunctive and declaratory relief only.

132. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SIXTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment**
(Plaintiff HAVEN and Defendants HARRIS)
(Confiscation of Firearms)
(Declaratory, Injunctive and Monetary relief)

133. Plaintiffs incorporate the above allegations as if set forth fully here.

134. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

135. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of state law and the authority of the state of California, Office of the Attorney General HARRIS at the time.

136. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

137. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

138. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

139. At the direction of state law, plaintiff had his firearms confiscated by law enforcement officers, though no crime had been committed.  To this date, the arms have not been returned and Sacramento County states the firearms were destroyed since there was no release by the

**- 18 -**

**Third Amended Complaint**

1    state.

2    140.   HARRIS is named only for purposes of injunctive and declaratory relief only.

3    141.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**NINTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiff HAVEN and Defendant HARRIS)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

142.   Plaintiffs incorporate the above allegations as if set forth fully here.

143.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for

self-defense purposes.

144.   P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self

defense.

145.   A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long

cord, which pre-existed the founding of the United States.  It was a simple weapon, which

itself had been modified to become a slungshot.  In sum, it was an "arm" used prior to the

invention of gunpowder.

146.   On February 8, 2016, deputies from the Placer County Sheriff's Department stopped HAVEN

for what they falsely alleged an "illegal weapon" hanging from the handle bars of his

motorcycle, affectionately known as his "iron horse."

147.   HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick

nylon rope with a metal quick release - identical to a dog leash but thicker).

148.   Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession

of a slungshot in violation of P.C. 12210.

149.   A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr.

HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth

Amendment rights.

150.   Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out

of impound.

**- 19 -**

**Third Amended Complaint**

151.   On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN was arraigned on the charges in the above-entitled court.

152.   On or about March 21, 2016 the Supreme Court of the United States rendered its unanimous per curium opinion in *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078; decided March 21, 2016.  The holding of *Caetano* reiterated prior precedent and stated that the State's arguments for supporting draconian laws borders on the "frivolous", but yet, in 2016, California has only enhanced its draconian enforcement of arms of all types.

153.   Prior to *Caetano*, the law was clearly established that the Second Amendment protects all "arms", and is not just applicable to firearms.

154.   Plaintiff seeks injunctive and declaratory relief prohibiting further arrest, and enjoining the state from enforcing the law.

**TWELFTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Open or Conceal Carry, Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

155.   Plaintiffs incorporate the above allegations as if set forth fully here.

156.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

157.   Plaintiffs are seeking to enjoin the State of California from enforcing current firearm statutes which grants more rights to law enforcement for purposes of self defense by allowing them:

   a.   To purchase off-roster handguns, which are legal under federal law.

   b.   To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

   c.   To travel interstate with magazines which contain more than 10 rounds of ammunition.

158.   California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when

- 20 -

1   confronted by an armed attacker, while at the same time law enforcement and retirees are

2   permitted to pick and choose the weapon of choice to be used for self defense.Allows

3   officers to purchase semi-automatic rifles not otherwise available to the public for self

4   defense, which they can keep even after their government service is terminated.

5   159.   Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

6   160.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

7   161.   As a direct and proximate result of Defendants' violation of Plaintiffs' Equal Protection

8        rights under the Fourteenth Amendment, Plaintiffs have suffered irreparable and immediate

9        harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and

10        2202.

11

12                              **PRAYER FOR RELIEF**

13        WHEREFORE, Plaintiffs respectfully requests that judgment be entered in his favor and

14   against Defendants as follows:

15        1.) Enter a declaratory judgment under 28 U.S.C. § 2201 that California Penal Code

16   section 32310 and Penal Code Section 31910 is unconstitutional on its face or, alternatively, to the

17   extent its prohibitions apply to law-abiding adults seeking to acquire, use, or possess firearms and

18   magazines that are in common use by the American public for lawful purposes, because such

19   unlawfully infringes on the right of the People to keep and bear arms in violation of the Second and

20   Fourteenth Amendments to the United States Constitution, unconstitutionally takes property without

21   compensation in violation of the Takings Clause, and arbitrarily deprives Plaintiffs of protected

22   property interests under the Due Process Clause. 2. 3.

23        2.) Issue an injunction enjoining Defendants and their officers, agents, and employees

24   from enforcing California Penal Code section 32310 and Section 31910 in its entirety, or,

25   alternatively, to the extent such can be segregated from the rest of the statute, any provision that

26   prohibits the acquiring, using, or possessing of firearms and magazines that are in common use by

27   the American public for lawful purposes;

28        3.) Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys'

**Third Amended Complaint**

1  fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

2          4.) A declaration that California Penal Code P.C. 12210 violates the Second

3  Amendment and that a so-called slungshot is a protected arm.

4          5.) A declaration that California Penal Code §P.C. 12210 does not include horse

5  leads.

6          6.) An injunction permanently enjoining Defendants from enforcing C.P.C.§ P.C.

7  12210.

8          7.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of

9  reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

10          8.) An order mandating that Defendants turn over all firearms and their accessories

11  which were illegally seized by Defendants.

12          9.) Damages for deprivation of a rights, property, and privileges, and such other relief

13  as this Court deems just and equitable, including general and specific damages.

14

15      Dated: October 22, 2018      THE LAW OFFICES OF GARY W. GORSKI

16                           Respectfully Submitted,
                          /s/ Gary W. Gorski

17                           Gary W. Gorski
                         Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

**Third Amended Complaint**