1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  BENJAMIN M. GLICKMAN, State Bar No. 247907
   Supervising Deputy Attorney General
3  ANTHONY P. O'BRIEN, State Bar No. 232650
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 210-6002
6    Fax:  (916) 324-8835
     E-mail:  Anthony.OBrien@doj.ca.gov
7  *Attorneys for Defendants Kamala D. Harris, in her*
   *official capacity as former Attorney General of*
8  *California, and Xavier Becerra, in his official*
   *capacity as Attorney General of California*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                  FOR THE EASTERN DISTRICT OF CALIFORNIA
11

12

13 | JAMES EDWARD CUPP, an individual;        | 2:16-cv-00523-TLN-KJN
   | LAWRENCE "WOLF" HAVEN, an               |
14 | individual;                             | **MEMORANDUM OF POINTS AND**
   |                                         | **AUTHORITIES IN SUPPORT OF**
15 |                            Plaintiffs,  | **DEFENDANTS HARRIS'S AND**
   |                                         | **BECERRA'S MOTION TO DISMISS**
16 |                  v.                     | **PLAINTIFFS' THIRD AMENDED**
   |                                         | **COMPLAINT**
17
18 | KAMALA D. HARRIS, formerly Attorney      | Date:           January 24, 2018
   | General of the State of California, in her | Time:          2:00 p.m.
19 | official capacity only; XAVIER BECERRA   | Courtroom:      2
   | Attorney General of the State of California, in | Judge:      The Honorable Troy L. Nunley
   | his official capacity only; CITY OF CITRUS | Trial Date:   None Set
20 | HEIGHTS; Citrus Heights Police Department | Action Filed:  March 11, 2016
   | Chief CHRISTOPHER W. BOYD, in both his   |
21 | individual and official capacity; Citrus Heights |
   | Police Officer CHRISTIAN BAERRESEN,      |
22 | #371; Citrus Heights Police Officer THOMAS |
   | LAMB, #315; UNKNOWN CITRUS               |
23 | HEIGHTS POLICE OFFICER Badge Number     |
   | 323; UNKNOWN CITRUS HEIGHTS              |
24 | POLICE OFFICER who prepared Report       |
   | Number CH14-02589 on 03/26/2014; TWO    |
25 | UNKNOWN NAMED PEACE OFFICERS OF          |
   | THE CITRUS HEIGHTS POLICE                |
26 | DEPARTMENT,                              |
27 |                            Defendants.   |

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL AND FACTUAL BACKGROUND ..................................................................... 1

   I.    Plaintiffs' Allegations ................................................................................. 1

   II.   Plaintiffs' Challenges to State Firearms Laws and Return Policies ........................ 2

   III.   Plaintiffs' Allegations Related to Prior Seizure of Weapons ................................. 3

LEGAL STANDARDS ....................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

   I.    The Third Amended Complaint Fails to Comply with Rule 8. ............................... 4

   II.   Plaintiffs Lack Standing to Challenge the Firearms Regulations at Issue ............. 6

   III.   Sovereign Immunity Bars Plaintiffs' Claims for Relief Against Attorney General Harris. ...................................................................................... 9

   IV.   Plaintiffs' Second Amendment Claims Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6). ....................................................... 11

        A.   Large Capacity Magazines ................................................... 12

        B.   Unsafe Handgun Act ............................................................ 13

        C.   Law Enforcement Gun Release Process ............................... 14

        D.   Slungshot ............................................................................. 15

   V.   Plaintiffs' Equal Protection Claim Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6). ....................................................... 16

        A.   Plaintiffs' Equal Protection Claims Are Subsumed by their Second Amendment Claims ..................................................... 16

        B.   Plaintiffs Do Not Allege a Group that Is Similarly Situated to Active or Honorably Retired Peace Officers. .............................. 17

        C.   The Challenged Exemptions for Peace Officers Satisfy Rational Basis Scrutiny. ...................................................................... 18

   VI.   The Court Should Dismiss the Third Amended Complaint with Prejudice .......... 19

CONCLUSION ................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abagninin v. AMVAC Chemical Corp.*
    545 F.3d 733 (9th Cir. 2008)...................................................................19

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..............................................................................3

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990)...................................................................4

*Bauer v. Harris*
    94 F. Supp. 3d 1149 (E.D. Cal. 2015).......................................................15

*Cervantes v. Countrywide Home Loans, Inc.*
    656 F.3d 1034 (9th Cir. 2011)..................................................................4

*Chandler v. State Farm Mut. Auto. Ins. Co.*
    598 F.3d 1115 (9th Cir. 2010)..................................................................4

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
    473 U.S. 432 (1985) ..........................................................................17, 18

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) .............................................................................6, 8

*Clapper v. Amnesty Int'l USA*
    133 S.Ct. 1138 (2013) ............................................................................6

*Coal. to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012)...............................................................9, 10

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ..........................................................................12, 15

*Duncan v. Becerra*
    265 F.Supp.3d 1106 (S.D. Cal. 2017) .......................................................8, 12

*Epstein v. Wash. Energy Co.*
    83 F.3d 1136 (9th Cir. 1996)...................................................................4

*FCC v. Beach Commc'ns, Inc.*
    508 U.S. 307 (1993) .............................................................................18

ii

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3
*Foman v. Davis*
    371 U.S. 178 (1962) ................................................................................................19

4

*Freeman v. City of Santa Ana*
    68 F.3d 1180 (9th Cir. 1995)...............................................................................17

5

6
*Fyock v. Sunnyvale*
    779 F.3d 991 (9th Cir. 2015)..............................................................12, 13, 15

7

8
*Heller v. District of Columbia*
    670 F.3d 1244 (D.C. Cir. 2011) .........................................................................13

9

*Heller v. Doe*
    509 U.S. 312 (1993) ................................................................................................18

10

11
*Hodgers-Durgin v. De la Vina*
    199 F.3d 1037 (9th Cir. 1999).............................................................................8

12

13
*Jackson v. City & County of San Francisco*
    746 F.3d 953 (9th Cir. 2014).......................................................................11, 12

14

*Kwong v. Bloomberg*
    723 F.3d 160 (2d Cir. 2013).................................................................................15

15

16
*Los Angeles County Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)...............................................................................10

17

18
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ..............................................................................................6, 7

19

*McHenry v. Renne*
    84 F.3d 1172 (9th Cir. 1996)..........................................................................4, 5, 6

20

21
*Merrifield v. Lockyer*
    547 F.3d 978 (9th Cir. 2008)...............................................................................18

22

23
*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
    540 F.3d 1049 (9th Cir. 2008).............................................................................4

24

*N. Star Int'l v. Ariz. Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983)...............................................................................4

25

26
*Nevijel v. North Coast Life Ins. Co.*
    651 F.2d 671 (9th Cir. 1981)...............................................................................5

27

28

iii

Memorandum of Points and Authorities in Support of Defendants Harris's and Becerra's
Motion to Dismiss Plaintiffs' Third Amended Complaint (2:16-cv-00523-TLN-KJN)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Nordlinger v. Hahn*
   505 U.S. 1 (1992) ..................................................................................................18

4

*Nordyke v. King*

5

   681 F.3d 1041 (9th Cir. 2012) ..............................................................................18

6

*Orin v. Barclay*

7

   272 F.3d 1207 (9th Cir. 2001) ..............................................................................16

8

*Peña v. Lindley*
   898 F.3d 969 (9th Cir. 2018) ........................................................................ *passim*

9

*Peña v. Lindley*

10

   No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684 (E.D. Cal. Feb. 26, 2015)..........................2

11

*Pennhurst State Sch. & Hosp. v. Halderman*

12

   465 U.S. 89 (1984) ..................................................................................................9

13

*People v. Fannin*
   91 Cal. App. 4th 1399 (2001) ................................................................................16

14

*People v. Williams*

15

   100 Cal. App. 149 (1929) ......................................................................................16

16

*Peruta v. County of San Diego*

17

   824 F.3d 919 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 1995 (2017) ..................11, 15

18

*Quern v. Jordan*
   440 U.S. 332 (1979) ................................................................................................9

19

*Romer v. Evans*

20

   517 U.S. 620 (1996) ..............................................................................................18

21

*Rosenbaum v. City and County of San Francisco*

22

   484 F.3d 1142 (9th Cir. 2007) ..............................................................................17

23

*S. Pac. Transp. Co. v. City of Los Angeles*
   922 F.2d 498 (9th Cir. 1990) ..................................................................................9

24

*San Diego County Gun Rights Comm. v. Reno*

25

   98 F.3d 1121 (9th Cir. 1996) ..................................................................................7

26

*Silveira v. Lockyer*

27

   312 F.3d 1052 (9th Cir. 2002) ........................................................................17, 19

28

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Snoeck v. Brussa*
   153 F.3d 984 (9th Cir. 1998)...................................................................................9

*Teixeira v. County of Alameda*
   822 F.3d 1047 (9th Cir. 2016).........................................................................16, 18

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000).........................................................................6, 7, 8

*United States v. Aguilar*
   883 F.2d 662 (9th Cir. 1989).................................................................................17

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013).........................................................................11, 12

*United States v. Henry*
   688 F.3d 637 (9th Cir. 2012).................................................................................15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
   454 U.S. 464 (1982)................................................................................................6

*Von Poppenheim v. Portland Boxing & Wrestling Comm.*
   442 F.2d 1047 (9th Cir. 1971)................................................................................5

*W. Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981)..................................................................................4

*Wilson v. Lynch*
   835 F.3d 1083 (9th Cir. Aug. 31, 2016)...........................................................7, 12

*Wolfson v. Brammer*
   616 F.3d 1045 (9th Cir. 2010)................................................................................8

*Ex parte Young*
   209 U.S. 123 (1908)................................................................................................9

**STATUTES**

United States Code
   Title 28, §§ 2201–2202 ..........................................................................................9
   Title 42, § 1983 .......................................................................................................9

v

Memorandum of Points and Authorities in Support of Defendants Harris's and Becerra's
Motion to Dismiss Plaintiffs' Third Amended Complaint (2:16-cv-00523-TLN-KJN)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

California Penal Code

4
§ 12021.2 ............................................................................................................6
§ 12210 ...............................................................................................................5

5
§ 22210 .............................................................................................................15
§ 29800 .............................................................................................................15

6
§ 29805 .............................................................................................................15
§ 29900 .............................................................................................................15

7
§ 31900 ...............................................................................................................2
§ 31910 ...........................................................................................................2, 6

8
§ 31910(b)(7)(A) ................................................................................................2

9
§ 32000 .......................................................................................................13, 14
§ 32015(a) ...........................................................................................................2

10
§ 32310 .................................................................................................2, 5, 6, 12
§ 32310(a) .........................................................................................................12

11
§ 32310(b) .........................................................................................................12
§ 32310(c) ....................................................................................................8, 12

12
§ 32310(d) ...........................................................................................................8
§ 33850 .........................................................................................................2, 14

13

14
California Welfare and Institutions Code
§ 8103 ...............................................................................................................15

15

16
**COURT RULES**

17
Federal Rules of Civil Procedure
Rule 8 .................................................................................................................4

18
Rule 8(a)(2) ........................................................................................................4
Rule 8(d) .............................................................................................................5

19
Rule 8(d)(1) ........................................................................................................4
Rule 12(b)(1) ......................................................................................................3

20
Rule 12(b)(6) ...................................................................................4, 5, 11, 16

21
Rule 15(a)(2) ....................................................................................................19

22

23

24

25

26

27

28

1

## INTRODUCTION

2      In this action, Plaintiffs alleges that the Attorney General—both former Attorney General

3  Kamala D. Harris and current Attorney General Xavier Becerra—violated their Second and

4  Fourteenth Amendment rights by enforcing the State's prohibition of large capacity magazines

5  (i.e., magazines holding more than 10 rounds of ammunition) and firearms not listed on the

6  state's roster of handguns.  On September 21, 2018, this Court dismissed these very same claims,

7  holding that the allegations in Plaintiffs' Second Amended Complaint were "indecipherable," and

8  that Plaintiffs lacked standing to bring the constitutional claims because they "failed to allege an

9  imminent, concrete injury."  ECF No. 61 at 6:17, 9:13-15.

10      The Court allowed Plaintiffs leave to amend six of the twelve causes of action.  *Id*. at 9:23-

11  24.  But the Third Amended Complaint merely repeats the dismissed claims and fails for the same

12  reasons already started by this Court.  Again, Plaintiffs fail to provide simple, concise, and direct

13  allegations stating who is being sued, for what relief, and on what theory.  And Plaintiffs again

14  fail to show a threat of imminent prosecution necessary to have standing to challenge the State's

15  firearms regulations.  Even if Plaintiffs' could survive these jurisdictional bars—and they

16  cannot—their constitutional claims fail as a matter of law.  Both Supreme Court and Ninth Circuit

17  precedent bar Plaintiffs' Second Amendment challenges, and Plaintiffs' cannot state a equal

18  protection cause of action by repackaging their Second Amendment claims.  Moreover, the

19  challenged exemptions for active or retired peace officers pass rational basis scrutiny.

20      For all of these reasons, the Court should grant Attorney General Becerra's and former

21  Attorney General Harris's motion to dismiss the Third Amended Complaint.  Moreover, such

22  dismissal should be with prejudice as Plaintiffs have repeatedly been unable to state a claim for

23  relief in this action.

24

## LEGAL AND FACTUAL BACKGROUND

25  **I.   PLAINTIFFS' ALLEGATIONS**

26      Plaintiffs are two unrelated individuals, James Edward Cupp and Lawrence "Wolf" Haven.

27  Cupp is a resident of South Dakota who sometimes travels to California, including to visit his

28  mother or a friend.  Third Amended Complaint ("TAC"), ¶¶ 10-28.  Haven is a resident of

1

1  Sacramento County.  TAC, ¶ 29.  Plaintiffs assert six causes of action purportedly brought against

2  former Attorney General Kamala D. Harris and current Attorney General Xavier Becerra under

3  the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment.

4  **II.    PLAINTIFFS' CHALLENGES TO STATE FIREARMS LAWS AND RETURN POLICIES**

5         Plaintiffs frame their Second Amendment and Equal Protection Clause claims as a

6  constitutional challenge to California statutes: (1) prohibiting the purchase and possession of

7  large capacity magazines (i.e., those magazines with holding more than 10 rounds); and

8  (2) prohibiting the purchase of "off-roster" handguns.[1]  TAC, ¶¶ 48-90.  In challenging

9  California's prohibition on large capacity magazines (Cal. Penal Code, § 32310), Plaintiffs allege

10 that the prohibition on "acquiring, keeping, possessing, and/or transferring these commonly

11 owned magazines implicates and violates their Second Amendment rights."[2]  TAC, ¶ 60.

12 Plaintiffs similarly allege that Penal Code section 31910, subdivision (b)(7)(A)—which requires

13 microstamping for semiautomatic pistols not on the approved roster of handguns before 2010—

14 violates the Second Amendment.  TAC, ¶¶ 59-69, 86-90.

15        Plaintiffs also challenge the Law Enforcement Gun Release (LEGR) process for return of

16 firearms after seizure by local authorities.  TAC, ¶¶ 102-114.  The Third Amended Complaint

17 fails to allege whether the Plaintiffs completed (or attempted to complete) the LEGR application

18 that is required by California Penal Code section 33850.  TAC, ¶¶ 104-108.  Plaintiffs instead

19 allege that, by failing to immediately return their seized firearms, Attorney General Becerra "has

20 deprived Plaintiffs of their ability to exercise their Second Amendment rights."  TAC, ¶ 111.

21

22         [1] California's Unsafe Handgun Act is a penal statute that prohibits the manufacture, sale,
23 gifting, or lending of handguns in California if they do not meet certain requirements.  *Peña v.
   Lindley*, No. 2:09-CV-01185-KJM-CKD, 2015 WL 854684, at *1 (E.D. Cal. Feb. 26, 2015).
24 "Unsafe handguns" are those revolvers or semiautomatic pistols that are not listed on a roster of
   handguns that have been subject to independent laboratory testing and certification by the
25 California Department of Justice as "determined not to be unsafe."  *Id.* at *1-2; Cal. Penal Code,
   §§ 31900, 31910, 32015(a).  The Third Amended Complaint sometimes refers to guns not listed
26 on the roster as "off-roster" handguns.  TAC, ¶¶ 90, 99, 157.

27         [2] Confusingly, Plaintiff's first cause of action—for "Violation of the Second
   Amendment"—also alleges that California's prohibition of large capacity magazines violates the
28 Takings and Due Process clauses.  TAC, ¶ 70.  It is not clear if these allegations are intended to
   raise an additional claim and, if so, against which defendants.

2

Plaintiffs seek declaratory and injunctive relief that would require the return of their firearms without completing the form or paying the fee required by California law.  TAC, ¶¶ 108-114.

Plaintiffs seek injunctive and declaratory relief that would allow them to possess, transport, and purchase magazines that contain more than 10 rounds and "purchase off-roster handguns, which are legal under federal law."  TAC, ¶ 90.

### III.  PLAINTIFFS' ALLEGATIONS RELATED TO PRIOR SEIZURE OF WEAPONS

In addition to these broad challenges to California's firearms regulation, Plaintiffs purport to assert claims against former Attorney General Harris and local law enforcement arising from three separate incidents.  First, Cupp sues about his arrest by Citrus Heights police officers on or about March 25, 2014, on a charge of carrying a concealed knife, and a search of his "temporary residence without a warrant" later that day.  TAC, ¶¶ 115-132.  The case against Cupp was dismissed by the district attorney two months later.  TAC, ¶ 123.  Second, Haven sues about the alleged seizure of his property by a Sacramento County sheriff's deputy on February 14, 2016.  TAC, ¶¶ 133-141.  Third, Haven sues about his arrest by a Placer County Sheriff's deputy on February 8, 2016, on a charge of illegally possessing a "slungshot" (a metal weight attached to a flexible handle for use as a weapon).  TAC, ¶¶ 142-154.  Plaintiffs do not allege that the Attorney General played any role in these arrests or weapon seizures, but nonetheless name former Attorney General Harris as a defendant in these first two incidents "only for the purposes of injunctive and declaratory relief."  TAC, ¶¶ 131, 140.  Plaintiffs do not include any allegations against either Defendants Harris regarding the February 8, 2018 arrest of Plaintiff Haven by the Placer County Sheriff's deputy.  *See* TAC, ¶¶ 142-154.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a claim for lack of subject-matter jurisdiction.  The court's "[r]eview is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial

3

1    notice." *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.

2    2008). Although the court must accept the allegations of the complaint as true, the burden of

3    proof is on the party asserting federal subject-matter jurisdiction. *See Chandler v. State Farm*

4    *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). The court need not accept as true

5    unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in

6    the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

7         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

8    sufficiency of the claims in the complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

9    581 (9th Cir. 1983). Dismissal of the complaint or of any claim within it "can be based on the

10   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

11   legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

13   dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.

14   1996) (citation omitted).

15        Dismissal without leave to amend is appropriate when deficiencies in the complaint could

16   not possibly be cured by amendment. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*,

17   656 F.3d 1034, 1041 (9th Cir. 2011).

18                                        **ARGUMENT**

19   **I.    THE THIRD AMENDED COMPLAINT FAILS TO COMPLY WITH RULE 8.**

20        The entire Third Amended Complaint should be dismissed, because its indecipherable

21   allegations do not comply with Federal Rule of Civil Procedure 8(d)(1), which requires that "each

22   averment of a pleading . . . be simple, concise, and direct." To comply with Rule 8, a complaint

23   should clearly and fully set forth "who is being sued, for what relief, and on what theory, with

24   enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996).

25   Even where the factual elements of a cause of action are present, but they are scattered throughout

26   the complaint and not organized into a "short and plain statement of the claim," dismissal for

27   failure to satisfy Rule 8(a)(2) is proper. *Id.* at 1178. Further, "[t]he propriety of dismissal for

28   failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit."

                                              4

1   *Id.* at 1179.  Indeed, Rule 8(d)'s requirement that each averment of a pleading be "'simple,

2   concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal

3   independent of Rule 12(b)(6)."  *Id.* (construing former Rule 8(e), now 8(d)) (citing *Nevijel v.*

4   *North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981) and *Von Poppenheim v. Portland*

5   *Boxing & Wrestling Comm.*, 442 F.2d 1047, 1053 n.4 (9th Cir. 1971)).

6        In its order granting the Attorney General's Motion to Dismiss the Second Amended

7   Complaint, this Court observed that six of Plaintiffs' twelve causes of action "leave[ ] Harris

8   guessing as to what constitutional violations have been alleged."  ECF No. 61 at 7:15-16.  The

9   Third Amended Complaint, which repeats almost verbatim those six causes of action, again fails

10  to clearly articulate any claims against former Attorney General Harris and current Attorney

11  General Becerra.  Instead, the Third Amended Complaint scatters factual allegations, legal

12  theories, and potential claims among six purported causes of action purportedly brought against

13  the Attorney General.  These "claims" relate variously to guns, knives, and slingshots, arise out

14  of unrelated incidents, and are brought on behalf of unrelated plaintiffs.  Their connection to each

15  other or the Attorney General is unclear.  Further confusing matters, the Third Amended

16  Complaint includes erroneous or outdated statutory references in multiple places.  TAC, ¶¶ 144,

17  148, Prayer for Relief (referencing Cal. Penal Code § 12210).  Worse still, the Third Amended

18  Complaint again leaves the defendants and the Court to sift through extraneous allegations to

19  guess at whether pertinent allegations might be hiding somewhere in the Complaint.  *E.g.*, TAC,

20  ¶¶ 16 (allegations regarding Plaintiff Cupp's travel "through dangerous areas of California, such

21  as Richmond, Oakland, and Los Angeles"), 17 (allegations regarding "Rodney King riots" and

22  Reginald Denny), 19 (allegations regarding "truckers being hijacked and their cargo being stolen

23  by gangs and drug cartels"), 70 (passing reference to Takings Clause and Due Process challenges

24  to Penal Code section 32310), 88 (allegations regarding "the state's own who shot themselves"),

25  89 (alleging that "Plaintiffs have the same rights active and retired officers have to purchase . . .

26  the best and safest tool for the job").

27        The disorganized nature of Plaintiffs' scattershot challenges to multiple, separate statutory

28  schemes that deal with unrelated weapons regulation issues leaves the Attorney General guessing

5

1  as to what constitutional violations have been alleged, and against whom.  Given this mash of

2  claims, the Third Amended Complaint does not clearly allege "who is being sued, for what relief,

3  and on what theory, with enough detail to guide discovery," and should be dismissed.  *See*

4  *McHenry*, 84 F.3d at 1177-78.

5  **II.   PLAINTIFFS LACK STANDING TO CHALLENGE THE FIREARMS REGULATIONS AT**
   **ISSUE.**

6

7         As this Court previously held, Plaintiffs lack Article III standing to challenge the state

8  firearms regulations at issue in this case.  An Article III case or controversy requires (1) an

9  "injury in fact," (2) a sufficient "causal connection between the injury and the conduct

10  complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable

11  decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks

12  omitted).  These constitutional requirements are "rigorous," *Valley Forge Christian Coll. v. Ams.*

13  *United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982), and Plaintiffs bear the

14  burden of establishing standing.  *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013).  An

15  injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or

16  imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (some internal question

17  marks omitted).  Standing to obtain prospective equitable relief also requires a "likelihood of

18  substantial and immediate irreparable injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111

19  (1983).

20         In dismissing the Second Amended Complaint, the Court granted Plaintiffs leave to amend

21  on six causes of action, providing them one final opportunity to establish some injury incurred as

22  a result of the Attorney General's alleged violations.  ECF No. 61 at 9:15-17.  Instead of taking

23  this opportunity to remedy the fatal deficiencies identified by the Court, Plaintiffs merely repeat

24  the same causes of action, and their same concerns with various state laws—such as California

25  Penal Code sections 12021.2, 31910, and 32310—they dislike.  TAC, ¶¶ 48-101, 104.  But this is

26  not enough to establish the injury-in-fact necessary to show standing.  "[N]either the mere

27  existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or

28  controversy' requirement."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139

6

1   (9th Cir. 2000) (citing *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th

2   Cir. 1996)).  Rather, a "genuine threat of imminent prosecution . . . is generally required of

3   plaintiffs raising pre-enforcement challenges to criminal statutes outside the First Amendment

4   context." *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. Aug. 31, 2016) (internal quotation

5   marks omitted, citing *San Diego County Gun Rights Comm.*, 98 F.3d at 1126).

6   "A genuine threat of imminent prosecution requires a 'concrete plan' to violate the law in

7   question." *Thomas*, 220 F.3d at 1139.  "[E]ven if 'concrete plan' does not mean cast in stone, the

8   Constitution requires something more than a hypothetical intent to violate the law . . . .  A general

9   intent to violate a statute at some unknown date in the future does not rise to the level of an

10   articulated, concrete plan." *Id*.  Where a complaint has failed to "specify any particular time or

11   date on which plaintiffs intend to violate" a challenged law, the Ninth Circuit has found generic

12   allegations that Plaintiffs "wish and intend to engage in [prohibited] activities" to be insufficient

13   to establish a genuine threat of prosecution.  *San Diego County Gun Rights Comm.*, 98 F.3d at

14   1127 (finding no standing to challenge federal assault weapons ban).  Similarly, the Ninth Circuit

15   has held plaintiff lacked standing where they offered no specific allegations of an intent to violate

16   laws prohibiting discrimination in housing rentals on the basis of marital status: "[plaintiffs] claim

17   that they have refused to rent to unmarried couples in the past, yet they cannot say when, to

18   whom, where, or under what circumstances.  They pledge their intent to do so in the future, yet

19   again they cannot specify when, to whom, where, or under what circumstances." *Thomas*, 220

20   F.3d at 1139.  As the Supreme Court has held, "[s]uch 'some day' intentions—without any

21   description of concrete plans, or indeed even any specification of *when* the some day will be—do

22   not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S.

23   at 564.

24   Here, Plaintiffs again have failed to allege a genuine threat of imminent prosecution or a

25   "concrete plan" to violate any of the Penal Code sections they challenge.  Instead, Plaintiffs allege

26   only that they "intend" to travel with large capacity magazines and "intend to purchase, possess,

27   and use handguns which are not on California's approved list" of firearms.  TAC, ¶¶ 84.  Plaintiff

28   Cupp also alleges that he "fears arrest criminal prosecution, a fine, and imprisonment if he were

7

1   to possess" a concealed weapon or a firearm "which holds more than 10 rounds without a permit

2   or prior permission authorizing him to do so."  TAC, ¶ 25.  Haven does not even allege these

3   "intentions," but merely that a .45 Caliber Semi-Automatic pistol was "[t]he "standard military

4   side arm" at the time of his service in the Navy between 1979 and 1983, and that this is "the type

5   [of firearm] which California now seeks to ban."  TAC, ¶¶ 30-32.  Neither Plaintiff alleges that he

6   owns any firearm that is not permitted in California either because it is an assault weapon or

7   because it is an "off-roster" handgun.  Instead, Plaintiffs allege the opposite: "At all times,

8   plaintiffs legally possessed and owned handguns and long-rifles, which were never illegal, even

9   under California law, to possess and own."  TAC, ¶ 46.  To the extent that Plaintiffs claim that

10  they would rather have different firearms or larger magazines, or that they would prefer to carry

11  their firearms in ways that would violate California law (*e.g.*, concealed in their vehicles), these

12  generalized allegations of intent or desire are not sufficient to establish standing under *Thomas*

13  and *San Diego County Gun Rights Committee*.[3]

14      Plaintiffs' failure to establish injury-in-fact means that they have also failed to demonstrate

15  an imminent threat of irreparable harm, as required for standing to obtain declaratory and

16  injunctive relief.  "The equitable remedy is unavailable absent a showing of irreparable injury, a

17  requirement that cannot be met where there is no showing of any real or immediate threat that the

18  plaintiff[s] will be wronged" in the future.  *Lyons*, 461 U.S. at 111.  Plaintiffs thus lack standing

19  to obtain the equitable relief they purport to seek from their challenge to the listed Penal Code

20  sections.[4]

21

22

23      [3] Where, as here, an allegation of injury is conjectural or hypothetical, concepts of
    standing and ripeness overlap, providing an additional basis for dismissal.  *See, e.g.*, *Wolfson v.*
24  *Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010); *see also Hodgers-Durgin v. De la Vina*, 199 F.3d
    1037, 1044 (9th Cir. 1999) ("A claim [for declaratory relief] is not ripe for adjudication if it rests
25  upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")
    (citations and internal quotations omitted).
26
        [4] Moreover, there is no threat of enforcement of the statute banning possession of large
27  capacity magazines—Penal Code section 32310(c) and (d)—because it has been enjoined by the
    Southern District of California in *Duncan v. Becerra*, 265 F.Supp.3d 1106, 1139-1140 (S.D. Cal.
28  2017), aff'd, 2018 WL 3433828 (9th Cir. 2018) (Wallace, J., dissenting).

8

1    For these reasons, Plaintiffs' claims purporting to challenge various California firearms

2    regulations—and seeking declaratory and injunctive relief—should be dismissed for lack of

3    subject matter jurisdiction.

4    **III.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' CLAIMS FOR RELIEF AGAINST ATTORNEY GENERAL HARRIS.**

5

6    The Eleventh Amendment bars lawsuits against states in federal court unless the state has

7    unequivocally consented to such a suit.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

8    89, 100 (1984).  The Eleventh Amendment likewise "bars a suit against state officials when the

9    state is the real, substantial party in interest."  *Id.* at 101 (citation and internal quotation marks

10   omitted).  The Eleventh Amendment's jurisdictional bar applies regardless of the nature of the

11   relief sought, including declaratory and injunctive relief.  *See id.*; *see also S. Pac. Transp. Co. v.*

12   *City of Los Angeles*, 922 F.2d 498, 508 (9th Cir. 1990) (affirming dismissal of declaratory and

13   injunctive relief claims).  California has neither consented to nor waived its sovereign immunity

14   with regard to the legal theories asserted in Plaintiffs' Third, Sixth, and Ninth Claims for Relief

15   against Attorney General Harris.[5]  Nor did Congress abrogate such immunity when it enacted

16   28 U.S.C. §§ 2201–2202 or 42 U.S.C. § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 341 (1979).

17   The Supreme Court has recognized a limited exception to Eleventh Amendment immunity

18   in *Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* exception allows "actions for

19   prospective declaratory or injunctive relief against state officers in their official capacities for

20   their alleged violations of federal law."  *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

21   1128, 1134 (9th Cir. 2012).  However, this exception applies only where "it is plain that such

22   officer must have some connection with the enforcement of the act, or else it is merely making

23   him a party as a representative of the State, and thereby attempting to make the State a party."

24   *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quotations omitted).  "This connection must

25

26   [5] In the Third Amended Complaint, Plaintiffs identifies the claims for relief out of order; the "Sixth Claim for Relief" identified by Plaintiffs (TAC, ¶¶ 133-141) is the fourth claim listed

27   in the pleading, and the "Ninth Claim for Relief" (TAC, ¶¶ 142-154) is really the fifth claim. However, to ensure consistency between the answer and this document, Defendants will cite to

28   the claims of relief using Plaintiffs' non-sequential references.

9

1   be fairly direct; a generalized duty to enforce state law or general supervisory power over the

2   persons responsible for enforcing the challenged provision will not subject an official to suit."

3   *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citations omitted).

4          Plaintiffs' claims focus on the confiscation of firearms, knives, and a slungshot from

5   Plaintiffs by local law enforcement during at least three separate incidents.  These claims seek

6   monetary relief against other defendants, but name former Attorney General Harris "only for

7   purposes of injunctive and declaratory relief only [sic]."  TAC, ¶¶ 130-131, 140.[6]  There are no

8   allegations that former Attorney General Harris had any involvement in the searches, seizures, or

9   arrests that form the basis of these claims.  Rather, Plaintiffs appear to rely on boilerplate

10  conclusions that the Attorney General has a "supervisory role" over "every district attorney and

11  sheriff and such other law enforcement officers as may be designated by law."  TAC, ¶¶ 33, *see*

12  *also* TAC, ¶ 80 (making similar statements regarding Attorney General Becerra).  The Third

13  Amended Complaint also include the conclusory (and inconsistent) allegation that Plaintiff

14  Havens's firearms were "confiscated by HARRIS and law enforcement officers" and "[a]t the

15  direction of state law and HARRIS" to two of his claims.  TAC, ¶ 47, 139.  The Third Amended

16  Complaint alleges, however, that it was Deputy Sheriff Brucker who took possession of the

17  firearms at issue (TAC ¶¶ 136-137), and does not allege any facts showing that Deputy Sheriff

18  Brucker was acting under the "authority of HARRIS" or at her direction.  TAC, ¶ 135.

19         Plaintiffs' amended allegations in support of their claims against former Attorney General

20  Harris remain nothing more than that the unremarkable assertion that she is the "chief law

21  enforcement officer of the State."  TAC, ¶ 35.  Such a generalized duty to enforce state law is

22  insufficient to overcome Eleventh Amendment sovereign immunity.  *See, e.g.*, *Affirmative Action*,

23  674 F.3d at 1134.  Even if former Attorney General Harris were not immune from these claims,

24  the Third Amended Complaint contains no allegations that would plausibly state a claim for

25  which relief could be granted against her.  Accordingly, Plaintiffs' claims against the Attorney

26  General Harris should be dismissed with prejudice.

---

27         [6] Plaintiffs' claim regarding the confiscation of Plaintiff Haven's slungshot does not name
     former Attorney General Harris at all, but rather generally seeks to "enjoin[ ] the state from
28   enforcing the law."  TAC, ¶ 154.  What law is not clear.

10

## IV.   PLAINTIFFS' SECOND AMENDMENT CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

Plaintiffs appear to challenge a number of different California laws on Second Amendment grounds.  To the extent Plaintiffs' claims seek to enjoin future enforcement of various California laws (as with their claims regarding large capacity magazines and off-roster handguns), Plaintiffs lack standing to assert these claims for the reasons discussed above.  If the Court dismisses Plaintiffs' claims for lack of standing, the Court need not reach merits issues regarding those claims.  And in the event the Court considers the merits, under controlling Ninth Circuit law, Plaintiffs' allegations fail to state a Second Amendment claim for which relief may be granted, and should be dismissed.

A large part of Plaintiffs' claims center on their alleged desire to carry *concealed* weapons.  TAC, ¶¶ 16, 22, 25, 119, 120.  In addition to Plaintiffs' lack of standing, discussed above, these claims are foreclosed on the merits by the Ninth Circuit's en banc decision in *Peruta v. County of San Diego*, which held that "the Second Amendment does not protect, in any degree, the carrying of concealed firearms by members of the general public."  824 F.3d 919, 942 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 1995 (2017).  To the extent Plaintiffs assert a general Second Amendment right to carry a concealed firearm, those claims must be dismissed under *Peruta*.

The remaining allegations must be evaluated under the Ninth Circuit's two-step inquiry for determining whether a law violates the Second Amendment.  *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).  First, a court must consider "whether the challenged law burdens conduct protected by the Second Amendment."  *Id.*  If so, the second step is to "apply an appropriate level of scrutiny."  *Id.*  The appropriate level of scrutiny "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right."  *Id.* at 1138.  Even where a law burdens the core Second Amendment right, *i.e.* "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," the Ninth Circuit has applied only intermediate scrutiny to laws that "regulate only the manner in which persons may exercise their Second Amendment rights" and "leave open alternative channels for self-defense."  *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014);

11

1  *Wilson*, 835 F.3d at 1092-1093.  The Supreme Court has likewise made clear that the Second

2  Amendment right is "not a right to keep and carry any weapon whatsoever in any manner

3  whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

4      Intermediate scrutiny "require[s] (1) the government's stated objective to be significant,

5  substantial, or important; and (2) a reasonable fit between the challenged regulation and the

6  asserted objective." *Chovan*, 735 F.3d at 1139; *Wilson*, 835 F.3d at 1093.  The Ninth Circuit has

7  found several government interests significant enough to justify regulations of the manner in

8  which individuals may exercise their Second Amendment rights, including the substantial interest

9  in preventing gun violence, *Wilson*, 835 F.3d at 1093, promoting "public safety by reducing the

10  harm of intentional and accidental gun use," *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir.

11  2015), reducing "the number of gun-related injuries and deaths from having an unlocked handgun

12  in the home," *Jackson*, 746 F.3d at 965, and "reducing the lethality of ammunition sold and used"

13  in a particular city, *id.* at 969.  The degree of fit between these government interests and the

14  challenged regulation must be "reasonable," but need not be "airtight."  *Wilson*, 835 F.3d at 1094.

15  Intermediate scrutiny "does not require the least restrictive means of furthering a given end."

16  *Jackson*, 746 F.3d at 969.

17      Plaintiffs' various challenges to California law do not state a claim for a Second

18  Amendment violation under these standards.

19      **A.   Large Capacity Magazines**

20      Plaintiffs seek to enjoin California's enforcement of Penal Code sections that limit

21  possessing, transporting, and purchasing handgun and rifle magazines that contain more than 10

22  rounds of ammunition on the theory that this restriction violates the Second Amendment.  TAC,

23  ¶¶ 48-54, 70-85; Cal. Penal Code § 32310.  But as noted above, the ban on possession of large

24  capacity magazines (under Penal Code section 32310(c) and (d)) is already enjoined under the

25  *Duncan v. Becerra*, 265 F.Supp.3d at 1139-1140.  Therefore, Plaintiffs' claim related to large

26  capacity magazines focuses only on the existing prohibitions against manufacturing, purchasing

27  and transporting large capacity magazines into California.  Cal. Penal Code, § 32310(a), (b).

28

12

1    If the Court reaches the merits, it should hold, as a matter of law, that California's

2    restrictions on the purchase, manufacture and transport of large capacity magazines are

3    constitutional.  In *Fyock*, the Ninth Circuit analyzed a similar restriction, and affirmed the denial

4    of a preliminary injunction because the prohibition on large capacity magazines was likely to

5    survive intermediate scrutiny.  779 F.3d at 1001.  Specifically, even assuming that restrictions on

6    large capacity magazines regulate conduct within the scope of the Second Amendment, the

7    burden was "not substantial" and "warranted intermediate scrutiny review."  *Id.* at 999 (citing

8    *Heller v. District of Columbia*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*")).  Such laws

9    restrict "possession of only a subset of magazines that are over a certain capacity" and thus leave

10   open alternative channels for self-defense.  *Id.*

11   The Ninth Circuit also found it "self-evident" that the government's interests in reducing

12   violent crime and reducing the danger of gun violence, "particularly in the context of mass

13   shootings and crimes against law enforcement," were substantial and important government

14   interests.  *Id.* at 1000.  The Ninth Circuit also pointed to studies showing that restrictions on large

15   capacity magazines are reasonably related to those compelling government interests.  *Id.*

16   Plaintiffs allege that "[a] total ban" on large capacity magazines "is remotely tailored to

17   increasing public safety."  TAC, ¶ 60.  This allegation is not relevant because California is not

18   required to choose the least restrictive means of achieving its important public safety interests.

19   *See Fyock*, 779 F.3d at 1001.

20   **B.    Unsafe Handgun Act**

21   Plaintiffs also seek to enjoin several provisions of California's Unsafe Handgun Act, which

22   "[l]imit plaintiffs' ability to keep, bear, and travel with off-roster handguns."  TAC, ¶ 99(a); Cal.

23   Penal Code § 32000.  But the Ninth Circuit recently held that the Act does not violate the Second

24   Amendment or Equal Protection Clause, foreclosing Plaintiffs' claims.  *Peña v. Lindley*, 898 F.3d

25   969 (9th Cir. 2018).  As the Ninth Circuit explained, the Unsafe Handgun Act "does not restrict

26   possession of handguns in the home or elsewhere."  *Id.* at 977.  Rather, it "only regulates

27   commercial sales, not possession, and does so in a way that does not impose a substantial burden

28   on Purchasers."  *Id.* at 973.  Indeed, the statute includes a number of exemptions for purchasers.

13

1    "For example, the statute does not affect the sale of off-roster existing handguns in private sales

2    transactions. Nor are out-of-state sales regulated." *Id.* at 978.  Thus, Plaintiffs are not prohibited

3    from purchasing, keeping, bearing, or traveling with off-roster handguns.  Instead, they are

4    prohibited from selling, giving, or lending such handguns or importing them or keeping them for

5    sale. Cal. Penal Code § 32000.  Moreover, any hypothetical burden on Plaintiffs' rights is

6    lessened by the numerous exceptions to the Act, including the ability to purchase hundreds of

7    types of firearms that are "grandfathered" on the roster and to buy off-roster handguns in private

8    transactions. *Peña*, 898 F.3d at 979.  "Plaintiffs are not entitled to insist on particular guns that

9    can be sold in California. *See id.* at 978 ("[B]eing unable to purchase a subset of semiautomatic

10   weapons, without more, does not significantly burden the right to self-defense in the home.")

11   Accordingly, Plaintiffs' challenge to the Unsafe Handgun Act should be dismissed.

12        **C.    Law Enforcement Gun Release Process**

13        Plaintiffs appear to seek an injunction requiring the return of firearms seized from them,

14   without any requirement that they complete the Law Enforcement Gun Release application or pay

15   the $20 (plus $3 for each additional firearm) processing fee that is required by California law.

16   TAC, ¶¶ 102-114; Cal. Penal Code § 33850.  Plaintiffs appear to allege that requiring the

17   completion of the form and the payment of the processing fee would violate their rights under the

18   Second Amendment.  TAC, ¶¶ 108, 111.

19        Given the minimal burden of completing a short application and paying a nominal fee, this

20   regulation falls outside the historical scope of the Second Amendment right, and the Court's

21   analysis need go no further. *See Peña*, 898 F.3d at 975.  However, even assuming that

22   intermediate scrutiny applies, the requirement to complete the form and pay the fee would easily

23   pass constitutional muster.  The Third Amended Complaint itself acknowledges the government's

24   important purpose in requiring the completion of the application:  such forms are submitted "for a

25   determination by the California Department of Justice (the Department) as to whether [the

26   applicant] is eligible to possess a firearm."  TAC, ¶ 105.

27        Determining eligibility for firearm possession serves the state's interest in promoting public

28   safety.  California law prohibits convicted felons, certain other violent offenders, and those found

                                        14

by a court to be dangerous because of mental illness, among other reasons, from possessing

firearms. *See* Cal. Penal Code §§ 29800, 29805, 29900; Cal. Welf. & Inst. Code § 8103. These

types of restrictions were recognized as valid by the Supreme Court. *Heller*, 554 U.S. at 626

("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the

possession of firearms by felons and the mentally ill."). Keeping guns out of the hands of

convicted felons, violent offenders, and the mentally ill is self-evidently an important government

interest that furthers public safety.

Whatever small burden this may impose on citizens who are not prohibited from possessing

firearms, by requiring them to complete a short form and pay a small fee, is easily justified by the

reasonable relationship between the process and the government's purpose in keeping firearms

out of the hands of ineligible persons. *See Bauer v. Harris*, 94 F. Supp. 3d 1149, 1155 (E.D. Cal.

2015). Indeed, significantly greater fees have been upheld for these reasons. *See Kwong v.*

*Bloomberg*, 723 F.3d 160, 167-69 (2d Cir. 2013) (upholding handgun licensing process and $340

fee for three-year license). Accordingly, Plaintiffs' challenge to the Law Enforcement Gun

Release process should be dismissed.

### D.   Slungshot

Plaintiff Haven alleges that Penal Code section 22210's prohibition on possession of "any

instrument or weapon of the kind commonly known as a "slungshot" violates his Second

Amendment rights. TAC, ¶¶ 142-154.[7] However, the longstanding regulation of such

"dangerous and unusual weapons" falls outside the scope of the Second Amendment. *See Heller*,

554 U.S. at 627; *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). "Regulation of a

weapon not typically possessed by law-abiding citizens for lawful purposes does not implicate the

Second Amendment." *Fyock*, 779 F.3d at 997-98 (citing cases).

The Ninth Circuit has catalogued the long history of prohibitions against carrying

concealable weapons most often used for criminal purposes, including specific references to

slungshots. *Peruta*, 824 F.3d at 937-38 (citing Texas case from 1871 and West Virginia case

---

[7] As previously noted, Haven's slungshot claim does not include any allegations against
the Attorney General (TAC, ¶¶ 142-154), and it therefore is not clear whether, or how, the
allegations pertain to the State.

from 1891 upholding statutes that prohibited possession of slungshots).  Consistent with this long

history, California has long prohibited slungshots and similar weapons because they are

"ordinarily used for criminal and improper purposes."  *See People v. Fannin*, 91 Cal. App. 4th

1399, 1402 (2001) (citations omitted).  *Fannin* cited cases going back to at least 1929 dealing

with all manner of homemade slungshots that fit the definition of "a small mass of metal or stone

fixed on a flexible handle, strap or the like, used as a weapon."  *Id.* at 1401-02 (citing *People v.

Williams*, 100 Cal. App. 149 (1929)).  And the Third Amended Complaint freely admits that

slungshots are weapons.  TAC, ¶¶ 144-145.  Because there is no Second Amendment right to

possess such a weapon, Haven's challenge to California's prohibition on possessing slungshots

(Ninth Claim for Relief) should be dismissed.

## V.   PLAINTIFFS' EQUAL PROTECTION CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

In the Twelfth Claim for Relief (TAC, ¶¶ 155-161), Plaintiffs simply repackage their

Second Amendment challenge to the large capacity magazine and off-roster handgun bans as an

Equal Protection claim.  TAC, ¶ 157.  Plaintiffs allege that these firearm laws violate equal

protection rights because they distinguish between "law enforcement [officers] and retirees" and

"law-abiding citizens."  TAC, ¶ 158.  For at least three reasons, Plaintiffs fail to state a cognizable

equal protection claim.

### A.   Plaintiffs' Equal Protection Claims are Subsumed by their Second Amendment Claims.

First, Plaintiffs' attempt to repackage their Second Amendment claims is not cognizable as

an equal protection claim.  The Ninth Circuit has held that where a "[plaintiff's] equal protection

challenge is 'no more than a [Second] Amendment claim dressed in equal protection clothing,' it

is 'subsumed by, and coextensive with' the former, and therefore is not cognizable under the

Equal Protection Clause." *Teixeira v. County of Alameda*, 822 F.3d 1047, 1052 (9th Cir. 2016)

(quoting *Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001)); *Peña*, 898 F.3d at 986

(rejecting equal protection challenge to Unsafe Handgun Act).

16

**B.**     **Plaintiffs Do Not Allege a Group that Is Similarly Situated to Active or Honorably Retired Peace Officers.**

The Equal Protection Clause of the Fourteenth Amendment guarantees that the government treats similar individuals in a similar manner. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV, § 1 (prohibiting states from "deny[ing] to any person within its jurisdiction the equal protection of the laws"). "'The first step in equal protection analysis is to identify the [government's] classification of groups'" and, "[o]nce the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (citation omitted); *see also Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570 ("[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately.") (citation omitted). As a preliminary matter, Plaintiffs do not allege that they (or any broader class of "others" or "law-abiding citizens") are similarly situated to the active or honorably retired peace officers covered by the challenged exemptions.

In the Third Amended Complaint, Plaintiffs do not define the parameters or characteristics of any similarly situated "control group" against which active or retired peace officers can be compared. *See Freeman*, 68 F.3d at 1187 ("The similarly situated group is the control group." (quoting *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989)). Plaintiffs allege that the challenged exemptions "denies [*sic*] law-abiding citizens their constitutional right to protect themselves and their families . . . while at the same time law enforcement and retirees are permitted to pick and choose the weapon of choice." TAC, ¶ 158. This suggests that Plaintiffs' proposed control group consists of at least Cupp and Haven—the two Plaintiffs named in the Third Amended Complaint. It is unclear, however, who else Plaintiffs' control group includes and what, if any, additional characteristics are shared by the individuals in such a group. *See Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1154 (9th Cir. 2007) (plaintiffs' "undifferentiated control group" "was not comparable because these groups were not similarly situated because of their varying characteristics").

17

Even if Plaintiffs could define a control group, they do not allege sufficient facts to establish—or even a conclusory allegation—that their proposed group is "similarly situated" to active or retired peace officers covered by the challenged exemptions.  Because Plaintiffs have failed to identify a similarly situated class of individuals to compare against active or honorably retired peace officers covered by the challenged exemptions, they have failed to meet their threshold burden in attempting to state an equal protection claim.

### C.   The Challenged Exemptions for Peace Officers Satisfy Rational Basis Scrutiny.

Rational basis review is the appropriate level of scrutiny for examining the challenged exemptions because the challenged laws neither violate a fundamental right (including the Second Amendment) nor employ a suspect classification.  *See Peña*, 898 F.3d at 986 (holding that equal protection challenge to Unsafe Handgun Act's peace officer exemption is subject to rational basis review); *Nordyke v. King*, 681 F.3d 1041, 1043 n.2 (9th Cir. 2012) ("As to the [plaintiffs'] equal protection claim, because the ordinance does not classify shows or events on the basis of a suspect class, and *because we hold that the ordinance does not violate either the First or Second Amendments*, rational basis scrutiny applies." (citations omitted and emphasis added)); *Teixeira*, 822 F.3d at 1052 ("[W]e will uphold a legislative classification so long as it 'neither burdens a fundamental right nor targets a suspect class,' and 'bears a rational relation to some legitimate end.'") (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).

Under rational basis review, "the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne*, 473 U.S. at 439.  The party attacking the classification bears the burden of demonstrating that there is no reasonable basis for the challenged distinction and to "negative every conceivable basis which might support it."  *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citation omitted); *see also Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  The legislative record need not contain empirical evidence to support the classification so long as the legislative choice is a reasonable one.  *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992) ("The Equal Protection Clause does

18

1   not demand for purposes of rational-basis review that a legislature or governing decision-maker

2   actually articulate at any time the purpose or rationale supporting its classification.").

3        Here, the challenged exemptions are reasonably related to a legitimate government interest:

4   the protection and safety of retired peace officers.  Plaintiffs complain that active and honorably

5   retired peace officers are permitted to purchase off-roster handguns, to possess and purchase large

6   capacity magazines, and to carry concealed firearms.  TAC, ¶¶ 89, 158.)  Plaintiffs then seek

7   injunctive relief that would make certain of these exemptions apply to them as well.  TAC, ¶¶ 90,

8   157.  Plaintiffs, however, do not allege that the government lacks a legitimate reason to create less

9   restrictive rules for active and retired law enforcement officers.

10       Courts have upheld other exemptions for both active and retired peace officers in other

11  contexts.  Indeed, the Ninth Circuit recently reaffirmed that "'[i]t is manifestly rational for at least

12  most categories of peace officers to possess and use firearms more potent than those available to

13  the rest of the populace in order to maintain public safety.'"  *Peña*, 898 F.3d at 987 (quoting

14  *Silveira*, 312 F.3d at 1089).  This exception is not limited to use during "official duties," but

15  rationally extends to off-duty officers.  *Id.*  As the Court explained, "the legislature could

16  rationally conclude that because law enforcement officers receive extensive training and are

17  expected to respond to emergencies even when off duty, such safety provisions might not be

18  necessary for them. That is a rational explanation."  *Id.*  Because the same reason holds true here,

19  the Court should dismiss Plaintiffs' equal protection challenge to California's exemptions for

20  active and honorably retired peace officers.

21  **VI.   THE COURT SHOULD DISMISS THE THIRD AMENDED VII. COMPLAINT WITH
22         PREJUDICE.**

23       Plaintiffs' repeated failures to cure the deficiencies in their complaint provides this Court

24  with a basis to dismiss this action with prejudice.  While leave to amend a complaint may be

25  "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), the court may deny such leave if

26  other factors—such as "repeated failure to cure deficiencies by amendments previously allowed"

27  and futility of amendment"—are present in the matter.  *Foman v. Davis*, 371 U.S. 178, 182

28  (1962); *see also Abagninin v. AMVAC Chemical Corp*., 545 F.3d 733, 742 (9th Cir. 2008)

19

1   (affirming denial of leave to amend when "previous amendment failed to cure [complaint's]

2   deficiency).

3          Here, the Court should dismiss all of Plaintiffs' remaining claims with prejudice, because

4   Plaintiffs have failed to cure the deficiencies noted by the Court in the prior motion to dismiss,

5   and because further amendments would be futile.  In dismissing the Second Amended Complaint,

6   the Court noted that Plaintiffs failed to establish any injury in fact, or show any past violations of

7   the laws they were challenging.  ECF No. 61 at 9:2-17.  But after receiving an additional

8   opportunity to cure these defects, Plaintiffs have again failed to establish standing.  This repeated

9   failure shows that further amendment would be futile.  Plaintiffs have now had four opportunities

10  to submit a complaint that satisfies basic pleading rules and constitutional requirements, and have

11  proven unable to do so.  There is no reason for a fifth bite at the apple.  Therefore, the Court

12  should grant this motion to dismiss and deny any further leave to amend.

13                                     **CONCLUSION**

14         For the foregoing reasons, the Court should dismiss all claims against former Attorney

15  General Harris and Attorney General Becerra with prejudice.

16  Dated:  November 20, 2018                    Respectfully Submitted,

17                                               XAVIER BECERRA
                                                 Attorney General of California
18                                               BENJAMIN M. GLICKMAN
                                                 Supervising Deputy Attorney General
19

20

21                                               */s/ Anthony P. O'Brien*
                                                 ANTHONY P. O'BRIEN
22                                               Deputy Attorney General
                                                 *Attorneys for Defendants Kamala D.*
23                                               *Harris, in her official capacity as former*
                                                 *Attorney General of California, and Xavier*
24                                               *Becerra, in his official capacity as*
                                                 *Attorney General of California*
25  SA2016102600

26  13338542.docx

27

28

                                            20

# CERTIFICATE OF SERVICE

Case Name: **Cupp, James Edward v.**                No.    **2:16-cv-00523-TLN-KJN**
**Kamala D. Harris, et al.**

I hereby certify that on <u>November 20, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS HARRIS'S AND BECERRA'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>November 20, 2018</u>, at Sacramento, California.

|  |  |
|---|---|
| Eileen A. Ennis | */s/ Eileen A. Ennis* |
| Declarant | Signature |

SA2016102600
13338558.docx