Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual;<br>LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; et al.<br><br>Defendants. | Case No.  16-CV-00523-TLN-KJN<br><br>**PLAINTIFFS' OPPOSITION TO KAMALA D. HARRIS Attorney General of the State of California MOTION TO DISMISS THIRD AMENDED COMPLAINT (TAC)**<br><br>Date: January 24, 2018<br>Time: 2:00 p.m.<br>Dept: 2<br>Judge: Hon. Troy L. Nunley<br>Action Filed: March 11, 2016 |

## SUMMARY OF ARGUMENT

California's gun laws are complicated. See *Peruta v. County of San Diego*, 824 F.3d 919, 925 (9th Cir. 2016) (en banc), cert. denied, 137 S. Ct. 1995 (June 26, 2017)("California has a multifaceted statutory scheme regulating firearms."). Each year, California adds one more layer of complexity to its Penal Code relating to firearms.

The counties and California have chipped away at the Plaintiffs' right to bear arms by enacting first a concealed weapons licensing scheme that is tantamount to a complete ban on concealed weapons, and then by enacting an open carry ban. Constitutional

- 1 -

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

rights would become meaningless if states could obliterate them by enacting incrementally more burdensome restrictions while arguing that a reviewing court must evaluate each restriction by itself when determining constitutionality.

*Id.* at 953 (Callahan, J., dissenting)

The operative pleading provides sufficient facts and focused legal issues whereby the state is placed on notice as to the constitutional challenge and specific remedies being sought. Plaintiffs argue that it is unnecessary to determine whether intermediate or strict scrutiny applies because the challenged laws will not pass intermediate scrutiny.

Indeed, at this stage of the litigation, *District of Columbia v. Heller*, 554 U.S. 570 (2008) gave us the framework for addressing Second Amendment challenges. First, Heller evaluated whether the firearms regulations fell within "the historical understanding of the scope of the [Second Amendment] right." *Id.* at 625. The Court indicated that determining the scope of the Second Amendment's protections requires a textual and historical analysis of the Amendment. *Id.* at 576-605. Though the Court expressly left for future evaluation the precise level of scrutiny to be applied to laws relating to Second Amendment rights (*Id.* at 626-27, 634-35); the Court did, however, reject a rational basis standard of review, thus signaling that courts must at least apply intermediate scrutiny. *Id.* at 628 n.27.

To exercise this right, it explicitly includes the right to have access to "arms" by way of purchase, gift or self manufacture. Defendant Attorney General presently employs and enforces a legal juggernaut of statutes and policies suppressing the Right to Keep and Bear Arms, in violation of the Second Amendment.  The chief law enforcement officer of the State blatantly snubs the United States Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, ⎯⎯ U.S. ⎯⎯, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) and most recently *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

It is odd for the California Attorney General to lead the "resistance" to purported government oppression but is equally resistant to the fundamental right to keep and bear arms as protected by the Second Amendment. See *California attorney general leads Trump resistance into 2019*, Washington Post, January 4, 2019.

It is wrong to use some constitutional provisions as spring-boards for major social

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

change while treating others like senile relatives to be cooped up in a nursing home until they quit annoying us. *As guardians of the Constitution, we must be consistent in interpreting its provisions*. ... Expanding some to gargantuan proportions while discarding others like a crumpled gum wrapper is *not faithfully applying the Constitution*; it's using our power as federal judges [or attorney generals] to *constitutionalize our personal preferences*.

*Silveira v. Lockyer*, 328 F.3d 567, 568-569 (9th Cir. 2003)(emphasis added).

> Despite the clarity with which we described the Second Amendment's core protection for the right of self-defense, lower courts, including the ones here, have *failed to protect it*.

*Jackson v. City & Cty. of S.F.*, 576 U. S. ____, 135 S. Ct. 2799, 192 L. Ed. 2d 865 (2015)(Thomas, J., dissenting from the denial of certiorari)(emphasis added).

> I would grant certiorari to prevent the Seventh Circuit from relegating the Second Amendment to a *second-class right.*

*Friedman v. City of Highland Park*, 577 U. S. ____, 136 S. Ct. 447, 450 (2015)(Justices Thomas and Scalia dissenting from denial of certiorari) (emphasis added).

In *Caetano v. Massachusetts*, 577 U. S. ____, 136 S. Ct. 1027 (2016) the Supreme Court recognized the dangers of states usurping the rights of the People.

> If the fundamental right of self-defense does not protect Caetano, then the safety of all Americans is left to the *mercy of state authorities* who may be more concerned about disarming the people than about keeping them safe.

*Id.* (concurring opinion)(emphasis added)

> The approach taken by the en banc court is indefensible, and the petition raises important questions that this Court should address. I see no reason to await another case.

*Peruta v. County of San Diego*, 582 U. S. ____ Peruta v. California, 137 S. Ct. 1995 (2017)(Justice Thomas, with whom Justice Gorsuch joins, dissenting from the denial of certiorari).

**I.  THE THIRD AMENDED COMPLAINT COMPLIES WITH RULE 8**

First, the skip in Cause of Action numbering was to show which cause of actions were removed from the Second Amended Complaint. The TAC is clear as to what is being challenged and exactly what conduct is being enjoined:

a. Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

b. Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and

safe firearms.

c. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

TAC ¶ 90.

The state's magazine ban must be harmonized with the hand-gun ban, and cannot be considered as separate claims. The current injunction applies only to magazines. Modern semi-automatic handguns come standard with magazines holding more than 10 rounds of ammunition. California bans handguns from being sold which were designed with standard magazines holding more than ten rounds.

Plaintiffs are seeking to enjoin the State of California Attorney General from enforcing any law which would prohibit the purchase or possession of a modern handgun which comes standard with a magazine holding more than 10 rounds of ammunition. For example, a Beretta 92, M9 or APX, or a Sig Sauer P320.  TAC ¶s 87-90, 96.

Besides, standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

In addition, both Plaintiffs had their firearms confiscated, Haven without even being charged with a crime.  Then, the government states that they must pay money and submit to a weapons check. Plaintiffs seek an order mandating that Defendants turn over all firearms and their accessories which were illegally seized by Defendants, without just compensation and without probable cause.

The fact that Haven does not want to get arrested again for possession of a horse lead is perfectly clear for notice purposes.

In sum, plaintiffs have complied with Rule 8.

## II.     PLAINTIFFS HAVE STANDING.

The State manipulates the doctrine of standing whenever it involves a case of individual rights applying to the Second Amendment.

Injury-in-fact: Plaintiffs have had their firearms confiscated, and not returned, even though

- 4 -

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

they have not been convicted of any crime. Even their arms, which were not firearms, were confiscated. Even at this time, the Attorney General is defending the actions of law enforcement and the constitutionality of the statutes challenged. The fact that handguns with magazines attached are prohibited to carry, possess or purchase is sufficient for standing and injury in fact.

However, there is one constant: DOJ law enforcement agents surveil gun individuals at gun shows with the intent to entrap citizens attempting to exercise a fundamental right. See e.g., *People v. Verches*, H041967, slip. op., 2017 WL 1880968, at *1-3 (Cal. Ct.App. May 9, 2017). TAC ¶s 70-81.

If the laws were not going to be enforced, then why does California carve out an exemption (immunity from prosecution) for retired and active-duty law enforcement? TAC ¶ 20. There is a credible threat of prosecution. TAC ¶ 76. The government has not indicated that it would not be enforcing the challenged provisions. To the contrary, the Attorney General has vigorously enforced all gun laws.

It is important to note that not a single defendant has stated that they do not and will not enforce the challenged statutes.  Plaintiffs fear of prosecution and arrest is not misplaced, for each Plaintiff has already been arrested for possession of protected "arms", as clearly defined by the Supreme Court in *Caetano*, and which were not even firearms.

If HAVEN can be arrested for a horse leash and CUPP for an open-carry knife, then the threat of arrest for the felonious possession of the banned weapons with attached magazines in this case is real and certain.

> When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. See *Steffel v. Thompson*, 415 U. S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); see also *MedImmune, Inc. v. Genentech, Inc.*, 549 U. S. 118, 128-129, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"). Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U. S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). Several of our cases illustrate the

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III.

*Susan B. Anthony List v. Driehaus,* 573 U.S. ___, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014).

Courts repeatedly find that conduct that creates a risk of future injury causes a present injury that satisfies Article III. In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), the court found that "[a]n injury-in-fact may simply be the fear or anxiety of future harm." Where "emotional and psychological harms" are accompanied by "economic costs" that include "preventative steps" associated with the future risk, the showing of injury is only strengthened. *Id.* at 265. In *Central Delta Water Agency v. United States*, the court noted the general rule that "the possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes injury in fact." 306 F.3d 938, 947 (9th Cir. 2002) (internal quotation omitted).

In addition, the Federal Declaratory Judgment Act (28 U.S.C.S. §§ 2201 et seq.) was enacted to dispel difficulties involved with respect to injunctive relief against unconstitutional state statutes, Congress intending declaratory relief to act as alternative to stronger remedy of injunction and to be utilized to test constitutionality of state criminal statutes in cases where injunctive relief would be unavailable. *Steffel v Thompson,* 415 U.S. 452 (1974). Here, it is not just the statute which is being challenged, it also includes a positive injunction prohibiting the arrest for possession of a horse leash, knife, and handgun with a magazine exceeding 10 rounds; and prohibiting any action which would interfere with their purchase.

Plaintiffs HAVEN and CUPP have suffered actual injury in that their firearms have been confiscated, without cause, and face a credible threat of prosecution under the challenged laws. See *Susan B. Anthony List v. Driehaus*, 573 U.S. ___ (2014), 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014). Individual plaintiffs have standing to challenge the gun control statutes, as they owned rifles and pistols regulated by the statutes and desire to acquire weapons that the statute rendered illegal; see also *Ezell v. City of Chicago*, 651 F.3d 684, 695-96 (7th Cir. 2011) (deciding that plaintiffs, who wished to engage in range training, had standing to bring a Second Amendment challenge to a Chicago ordinance banning firing ranges, <u>reasoning that the very existence of the ordinance implied a threat to prosecute</u>). Plaintiffs have standing.

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

### III. SOVEREIGN IMMUNITY IS NOT AN ISSUE.

Again, the State and local municipalities have point the finger at each other for responsibility of enforcing unconstitutional laws. For example, HARRIS claims sovereign immunity but the COUNTY OF SACRAMENTO states that "Sheriff Jones Acts On Behalf Of The State Of California, Not Sacramento County, When Enforcing The State's Gun Laws". COUNTY OF SACRAMENTO Motion to Dismiss SAC 4:18.

In California, a sheriff is not designated by the constitution as a member of the executive branch, which is defined in Article V, titled "Executive." Instead, sheriffs in California are defined in Article XI of the Constitution, titled "Local Government". The California Constitution recognizes two forms of local government: counties and cities, with the sheriff designated as the chief law enforcement officer of the county. See Cal. Const. art. XI, §§ 1, 2. See, e.g., *Robinson v. Solano County*, 00 C.D.O.S. 5735, 5737 (9th Cir. July 12, 2000); *Headwaters Forest Defense v. County of Humboldt*, 211 F.3d 1121, 1126 n. 2 (9th Cir.2000); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir.2000).

California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law." Thus, the Attorney General is a proper party for the case and controversy requirement.

### IV. PLAINTIFFS' HAVE COGNIZABLE CLAIMS UNDER THE SECOND AMENDMENT.

United States District Judge Roger T. Benitez for the Southern District of California explains the State's newly minted Second Amendment test and its departure from *Heller*.

> For a Second Amendment challenge, the Ninth Circuit uses what might be called a *tripartite binary test with a sliding scale and a reasonable fit*. In other words, there are three different two-part tests, after which the sliding scale of scrutiny is selected. ... It is, unfortunately, an overly complex analysis that people of ordinary intelligence cannot be expected to understand.

*Duncan v. Becerra*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017)(emphasis added).

However, *Heller* spells out the test to be applied in this case. Justice Scalia wrote that "the inherent right of self-defense has been central to the Second Amendment right." *Heller*, 554 U.S. at

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

628. Further, the Court recognized that "the American people have considered the handgun to be the quintessential self-defense weapon." *Heller*, 554 U.S. at 629.

The right asserted here is recognized as squarely individual; the "militia" referred to in the preface of the Second Amendment was and is a popular militia. *Heller* rejects any requirement of participation in the National Guard or another organized militia for the right to be asserted. Here, plaintiffs assert the right to travel in the state with standard military sidearms historically designed utilizing full capacity magazines, and which have been legal in this country for over 50+ years.

Though modern firearms may have additional safety features, like a thumb safety, the basic fundamental semi-automatic handgun has not changed. The State makes no attempt to argue the historical significance of magazine capacity relating to handguns, even though addressed in the TAC at ¶s 87-90.  If these handguns have had widespread availability for self-defense by law enforcement, military and civilians, what has changed to reduced a civilians right of self defense, and exempting current and FORMER government officials?

 What Purposes Does the Right Protect? Although the *Heller* Court acknowledges in passing that an armed populace is "better able to resist tyranny," the great weight of its discussion of the right to arms focuses on "the core lawful purpose of self-defense. The basic category of "Arms" is very broad: "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.*

The Second Amendment includes the right to possess, not only firearms, but also other common personal defensive weapons such as pepper spray.

In addition, all the sections challenged in this action related to "arms" in "common use by law-abiding citizens." *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244, 1252 (D.C. Cir. 2011).  Like a number of courts that have previously considered this question, there is little difficulty in concluding that the banned semi-automatic pistols are in common use by law-abiding citizens. See, e.g., *Heller II*, 670 F.3d at 1261 ("We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use,' as the plaintiffs contend.")  "There may well be some capacity above which magazines are not in common use but, if so, the record is devoid of evidence as to what that capacity is; in any event, that capacity surely is

not ten." *Heller II*, 670 F.3d at 1261.

What arms are protected by the Second Amendment came before the Supreme Court by the blanket prohibition of Massachusetts against the possession of a stun gun. The Massachusetts Supreme Court upheld the blanket banishment of stun guns as weapons that were not protected by the Second Amendment under three separate and distinct theories. First Massachusetts asserted that since Stun Guns were not in common use at the time of the Second Amendment's enactment, they did not fall under its protections. Second Massachusetts asserted Stun Guns are dangerous per se at common law and unusual, they fell out the protections of the Second Amendment. Finally, Massachusetts argued that stun guns were not readily adaptable to use in the military and therefore were outside the scope of the Second Amendment.

In *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078), the Supreme Court of the United States summarily rejected all of Massachusetts arguments. In vacating the judgment of the Supreme Judicial Court of Massachusetts in its unanimous per curiam opinion, the court has told us that a blanket prohibition of arms is *per se* unconstitutional.

Therefore, the criminalization and/or ban of horse leashes (offensively called "slungshot") and handguns with magazines holding more than 10 rounds even though they are safer and highly functional, and seizing and retention of firearms without an active criminal case or conviction of a crime all violate the Second Amendment.

The **First Claim for Relief** seeks a declaration to the statute and conduct challenged and exactly what conduct is being enjoined under the Second Amendment, which is any law enforcement action which:

    a. Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

    b. Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

    c. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

TAC ¶ 90.

The state's magazine ban must be harmonized with the hand-gun ban, and cannot be

considered as separate claims. The current injunction applies only to magazines. Modern semi-automatic handguns come standard with magazines holding more than 10 rounds of ammunition. California bans handguns from being sold which were designed with standard magazines holding more than ten rounds.

Plaintiffs are seeking to enjoin the State of California Attorney General from enforcing any law which would prohibit the <u>purchase</u> or <u>possession</u> of a modern handgun which comes standard with a magazine holding more than 10 rounds of ammunition. For example, a Beretta 92, M9 or APX, or a Sig Sauer P320.  TAC ¶s 87-90, 96.

Besides, standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

The **Second Claim for Relief** seeks a declaration as to the unconstitutionality of those statutory provisions which provide for the confiscation of firearms without their return if there is no criminal complaint filed, or if one is filed, there is no return of the arms without payment of a fee and a LEGR, in violation of the Second Amendment, the Takings Clause, and the Due Process Clause.

Penal Code Sections 18250-18275 is equally applied to plaintiffs as each plaintiff has had their firearms confiscated without any form of prosecution for a crime. Both plaintiffs have had their firearms seized from their residences, without a warrant, without being charged, tried or convicted of a crime.  The firearms illegally seized have not been returned to plaintiffs. By failing to immediately return plaintiffs firearms once it was determined that no crime had been committed, the State has deprived plaintiffs of their ability to exercise their Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech.  This is an ongoing injury and will continue.

A government seizure of arms "in common use" by law-abiding citizens for self-defense plainly violates the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). The state can point to no justification—let alone one sufficient to withstand heightened scrutiny—for permanently seizing firearms lawfully and safely owned by approximately 70 to 100 million

Americans to defend themselves.  Second, physically dispossessing gun owners of their private property without just compensation from the government violates the Takings Clause. It is no answer that the owner of a firearm confiscated by the state without any form of process can simply go out and buy another firearm. Whatever expectations people may have regarding regulation of their property, they do not expect it to be "occupied or taken away." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015)(leading Taking case regarding personal property). Third, because it permanently deprives owners of lawfully acquired firearms without advancing the government's interest in public safety, the seizure of firearms violates the Due Process Clause. There is simply no reason to believe that this will not continue.

      Plaintiffs' firearms (i.e. property) were taken without any process whatsoever, and this deprivation results from enforcement of the established state procedures and from actions by officials with authority to both cause deprivations and provide post-deprivation process, i.e. LEDG.  The defendants are all considered state officials as the joint purpose is to in fact confiscate firearms without due process under state law, no different than district attorneys being considered state officials when prosecuting crimes and controlling the return of property.

      "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). "The requirements of due process are not rigid; rather, they `call[] for such procedural protections as the particular situation demands.'" *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 924 (8th Cir. 2016) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)).

      Here, the interest affected is the use and possession of property necessary to exercise a fundamental right – the right to keep and bear arms. This property interest is significant and resulted in an indefinite deprivation of firearms following frivolous criminal charges.

      The government had no right to enter the home of CUPP, and especially HAVEN; as there was adequate time to obtain a warrant, and no immediate danger existed. Then, after the Fourth Amendment violation, the government violates both the Second and Fifth Amendment by retaining

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

the firearms for over several years. The Court must consider "`the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used.'" *Mickelson*, 823 F.3d at 926 (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)).

Once the government seized the firearms, there was no process for their return along with all the ammunition wrongfully seized. There are two Eighth Circuit decisions which are on point. See *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001) and *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011).

In *Lathon*, police seized firearms from plaintiff per a valid search warrant but then refused to return them, absent a court order, even after it became clear the firearms were not contraband or needed as evidence and no criminal charges were to be filed.

In *Walters*, the plaintiff's firearm was seized per a valid arrest. The plaintiff demanded the return of his firearm on several occasions, but though all charges against him had been dismissed or resolved, the chief of police refused to return the firearm without a court order.

In both cases, the Eighth Circuit concluded that two separate deprivations had occurred: the first, valid deprivation per a warrant or arrest, and a second, invalid deprivation that occurred when something changed (police determined the weapons were not contraband or evidence, criminal charges were dropped or resolved), with the result that the police no longer had a legal basis to retain the weapons. See *Walters*, 660 F.3d at 314 ("A second deprivation occurred requiring a new due process analysis when the defendants, with no legal grounds, refused to return Walter's property."); *Lathon*, 242 F.3d at 843 ("The pivotal deprivation in this case was not the initial seizure of the ammunition and weapons, but the refusal to return them without a court order after it was determined that these items were not contraband or required as evidence in a court proceeding."). In both cases, because the second deprivation occurred per official policy in accordance with state law, when the police no longer had grounds to hold the firearms, and without "attendant exigencies prohibiting or making impractical a reasonable predeprivation process," *Walters*, 660 F.3d at 314, the court concluded that available post-deprivation process would not suffice. See *id.* at 315; *Lathon*, 242 F.3d at 843-44.

These holdings turned both on the "second" deprivation — at which point something had

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

changed and the police no longer had reason to hold the firearms — and, as the Eighth Circuit later explained in *Mickelson v. County of Ramsey*, the "the inherently `lengthy and speculative' nature of the post-deprivation remedy available — an action in tort" is not a procedure at all. *Mickelson*, 823 F.3d at 928 (quoting Walters, 660 F.3d at 313-14); see also *Lathon*, 242 F.3d at 844 (explaining that even if a post-deprivation remedy could suffice, the court would not find the one available adequate because the plaintiff's firearms had been distributed among four different Missouri counties and the plaintiff's only recourse was to file four separate replevin actions to secure the return of his weapons). "Our court since has suggested that post-deprivation administrative remedies are innately distinguishable," a reading "consistent with the fact that our decision in *Walters* made much of the city's failure to afford any independent administrative process through which an arrestee could contest the city's retention of his property, even after the dismissal of charges." *Mickelson*, 823 F.3d at 928. In some cases, then, "post-deprivation process may suffice, even when the deprivation occurs pursuant to established state policy." *Id.*

In this case, the police seized firearms, relying upon a plethora of laws with a single objective – the confiscation of firearms for the slightest of reasons – and then to retain them when the purported "reason" has passed. Furthermore, unlike *Lathon* and *Walters*, seizure HAVEN's firearms was not part of any criminal case and the government had no reason to seize and hold the firearms to start; and first constitutional was a result of unlawful search of Haven's home, an unlawful seizure of his firearms, an a third "constitutionally impermissible deprivation" by holding the firearms without process for an indefinite period of time.  See *Cf. Walters*, 660 F.3d at 315.

### V. PLAINTIFFS HAVE VIABLE CLAIMS UNDER THE EQUAL PROTECTION CLAUSE

When a state statute burdens a fundamental right, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause.  *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Similar exemptions from gun control laws for retired peace officers was struck down in *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir.)(Reinhardt, J), rehearing en banc denied, 328 F.3d 567 (9th Cir. 2003)(six dissents).  Though *Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) was

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**

abrogated by *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Equal Protection analysis is still valid, except as to the level scrutiny. At that, an exemption could not even survive rational basis. Now, it is obvious that the strict scrutiny applies. *Silveira* implicitly stated that retired police officers are "similarly situated" to private citizens. See *Silveira*, 312 F.3d at 1090-91.

The issue regarding possession of a weapon being *per se* illegal was addressed by the Supreme Court of the *United States in District of Columbia v. Heller*, (2008) 554 U.S. 570. The court came to two distinct and applicable rulings.

> What is more, in all six other provisions of the Constitution that mention "the people," the term unambiguously refers to all members of the political community, not an unspecified subset. As we said in United States v. Verdugo-Urquidez, 494 U.S. 259, 265, 110 S. Ct. 1056, 108 L. Ed. 2d 222 (1990):
>
> "'[T]he people' seems to have been a term of art employed in select parts of the Constitution. . . . [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."
> This contrasts markedly with the phrase "the militia" in the prefatory clause. As we will describe below, the "militia" in colonial America consisted of a subset of "the people"--those who were male, able bodied, and within a certain age range. Reading the Second Amendment as protecting only the right to "keep and bear Arms" in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as "the people."
>
> **We start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans.**

*District of Columbia v. Heller* 554 U.S. 570, 580-581 (2008)(emphasis added.)

The plaintiffs are prohibited from possessing and purchasing the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead they are relegated to purchasing 20+ year old Sig Sauer's, Glocks and 100 year old revolvers, none of which have manual thumb safeties.

Plaintiffs have the same rights active and retired officers have to purchase and possess (and use for personal self-defense) the best and safest tool for the job, and that includes modern functional handguns with a magazine capacity of more than 10 rounds.

## CONCLUSION

For the above stated reasons, defendant's motion is properly denied. If granted, plaintiffs request leave to amend in accordance with this court's ruling.

Dated: January 10, 2019         THE LAW OFFICES OF GARY W. GORSKI
                                Respectfully Submitted,
                                /s/ Gary W. Gorski
                                Gary W. Gorski
                                Attorney for Plaintiffs

**Plaintiff's Opposition to Motion to Dismiss Third Amended Complaint**