UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES EDWARD CUPP, et al.,

Plaintiffs,

v.

KAMALA HARRIS, et al.,

Defendants.

No. 2:16-cv-00523-TLN-KJN

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court pursuant to a Motion to Dismiss filed by Defendants Kamala Harris, in her capacity as former Attorney General of the State of California, and Xavier Becerra, in his official capacity as Attorney General of the State of California, (hereafter "Defendant"[1]). Defendant moves to dismiss Plaintiffs' Third Amended Complaint ("TAC"). (ECF No. 74.) Plaintiffs James Edward Cupp ("Cupp") and Lawrence Haven ("Haven") (collectively, "Plaintiffs") filed an opposition (ECF No. 76), and Defendant filed a reply (ECF No. 77). For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss with leave to amend only Claims Two and Nine.

///

1 For ease of reading and because Becerra has merely replaced Harris as the Attorney General, Defendants will be collectively referred to as a singular "Defendant" herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit on March 11, 2016. (ECF No. 1.) On September 21, 2018, the Court granted Defendant's Motion to Dismiss the Second Amended Complaint ("SAC"), granting Plaintiffs leave to amend six of the original twelve causes of action (specifically, the First, Second, Third, Sixth, Ninth, and Twelfth). (ECF No. 61.) Plaintiffs thereafter filed the operative TAC reasserting six causes of action arising from various alleged violations of Plaintiffs' Second and Fourteenth Amendment rights. (ECF No. 65.) In response, Defendant filed the Motion to Dismiss presently before the Court. (ECF No. 74.)

Plaintiffs' TAC is strikingly similar to their SAC and makes various allegations concerning unrelated events and unrelated legal issues, united only by a common Defendant: the Attorney General. Plaintiffs themselves are two unrelated individuals: Cupp is a resident of South Dakota who intends to travel to California with firearms currently not legal under certain sections of the California Penal Code ("C.P.C.") (ECF No. 65 ¶ 18); Haven — a Native American and Veteran — is a resident of Sacramento, California, and an avid hunter and "owner of firearms" (*Id.* ¶¶ 29–30). Plaintiffs claim California's safe-gun list and magazine ban (C.P.C. § 32310), which prohibits the possession of magazines capable of holding more than ten rounds, violates their Second Amendment rights as well as the Takings and Due Process Clauses of the United States Constitution. (ECF No. 65 ¶ 71.) Plaintiffs therefore contend there is an "actual and present controversy" between the parties and that they are "presently and continuously injured by Defendants' enforcement of § 32310 . . . ." (*Id.* ¶¶ 70–71.)

Additionally, both Plaintiffs claim their firearms were illegally seized, depriving them of their Second Amendment rights. (ECF No. 65 ¶ 103.) Local authorities have allegedly refused to return the seized firearms due to a requirement that Plaintiffs must first complete the Law Enforcement Gun Release ("LEGR") application required under C.P.C. § 33850. (*Id.* ¶¶ 106, 108.) Plaintiffs assert the Attorney General enforces C.P.C §§ "33850 (application for return of firearm), 33855 (authority of law enforcement to enforce), 33860, and 33880 (fee)" in violation of the Second Amendment. (*Id.* ¶¶ 108, 111.)

In addition to these broad constitutional challenges against California's firearm laws, Plaintiffs purport to assert additional Second Amendment claims arising from three specific, unrelated incidents. First, Cupp alleges Citrus Heights police officers unlawfully arrested him on March 25, 2014, for carrying a concealed knife in violation of C.P.C. § 21310. (ECF No. 65 ¶¶ 120, 122.) Cupp also claims the officers searched his home without a warrant and illegally seized six firearms, ammunition, magazines, and two non-folding hunting knives. (*Id.* ¶ 120.) The district attorney dismissed the case against Cupp two months after his arrest and Cupp's two knives were returned to him, but he claims his firearms and "other firearm related tools and equipment" were not returned. (*Id.* ¶ 124.) Second, Haven alleges a Placer County Sheriff's Deputy unlawfully arrested him on February 8, 2014, for illegally possessing a slungshot (a metal weight attached to a flexible handle for use as a weapon). (*Id.* ¶¶ 146, 148.) Haven claims this infringed on his constitutional rights because the Second Amendment "protects all 'arms' and is not just applicable to firearms." (*Id.* ¶ 153.) Third, Haven alleges that on February 14, 2016, a Sacramento County Sheriff's Deputy searched his residence without a warrant and without probable cause and seized three firearms. (*Id.* ¶ 137.) No criminal charges were filed. (*Id.* ¶ 138.) Haven alleges this unlawful confiscation of firearms violates his Second Amendment rights. (*Id.* ¶¶ 134, 139.)

In addition to Second Amendment claims, Plaintiffs also allege California's open or conceal carry, safe-gun list, and magazine ban violate the Equal Protection Clause under the Fourteenth Amendment. (ECF No. 65 ¶¶ 158, 161.) More specifically, Plaintiffs claim California's current firearms regulations grant more rights to "law enforcement and retirees" while denying "law-abiding citizens their constitutional right to protect themselves." (*Id.* ¶ 158.)

## II. STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party, or the Court on its own initiative, to challenge the court's subject matter jurisdiction at any stage in the litigation. Fed. R. Civ. P. 12(b)(1) & (h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d

1169, 1175 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894, 899 (9th Cir. 2011). If the court determines at any time that it lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

In addition, Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim...is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the...laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims...across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III. ANALYSIS**

Plaintiffs assert six causes of action against Defendant, asserting Second Amendment and Equal Protection challenges to California gun laws as well as alleged Second Amendment violations arising out of multiple and distinct incidents involving purportedly unlawful searches and seizures of various weapons. By way of the present Motion, Defendant moves to dismiss all six causes of action, arguing Plaintiffs fail to comply with Rule 8, fail to establish standing to challenge firearms regulations, and fail to state a cognizable claim under Rule 12(b)(6). Defendant additionally argues sovereign immunity bars Claims Three, Six, and Nine.

A. Failure to Comply with Rule 8

As a preliminary matter, Plaintiff's amendments as set forth in the operative complaint do not cure the deficiencies identified in the Court's previous Order dismissing the six potentially viable causes of action with leave to amend. (ECF No. 61.) Rule 8(d)(1) requires that "each averment of a pleading shall be simple, concise, and direct." *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"). To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." Even if the factual elements of a cause of action are present, but are scattered throughout the complaint and not organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is proper. *Id*. at 1178. Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *Id*. at 1179. Indeed, Rule 8(d)'s requirement that each averment of a pleading be "'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *Id.*

Much like the SAC, the TAC is anything but simple, concise, and direct. Instead, the TAC reiterates scattershot challenges by two unrelated Plaintiffs to multiple, separate statutory

schemes that deal with unrelated weapons regulation issues. In dismissing the SAC for failure to comply with Rule 8, this Court stated these scattershot challenges leave Defendant "guessing as to what constitutional violations have been alleged." (ECF No. 61 at 7.) These deficiencies have not been cured in the TAC; the six remaining causes of action remain unclear and substantively deficient.

Furthermore, Plaintiffs do not ameliorate the burdensome and extraneous allegations the Court explicitly admonished in its previous Order, such as those regarding Rodney King and Reginald Denny. (ECF No. 61 at 7.) Rather, these allegations remain verbatim in the TAC. (ECF No. 65 ¶ 17.) Worse still, the TAC again leaves the Court to sift through a multitude of extraneous allegations. These allegations include, but are not limited to, passing singular references to the Takings Clause and Due Process Clause (*Id.* ¶ 70), erroneous and outdated statutory references to C.P.C. § 12210 (*Id.* ¶¶ 144, 148),[2] and a completely unrelated accidental weapon discharge by law enforcement in which, according to Plaintiff, "the state's own experts shot themselves." (*Id.* ¶ 88.) It is once again not the Court's job to sift through voluminous allegations to attempt to determine whether there may be a possible hidden cause of action. *Walker v. Bowler*, No. 5:17-cv-01687-AG-JC, 2018 WL 2392152, at *19 (C.D. Cal. May 24, 2018) (collecting cases) ("It is not the Court's responsibility to hunt through plaintiff's prolix and rambling allegations in an attempt to determine whether plaintiff might have some adequate basis for bringing an action in federal court."); *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Accordingly, Plaintiffs' TAC as asserted against Defendants Harris and Becerra is DISMISSED in its entirety with leave to amend only Claims Two and Nine, as discussed below.

/ / /

/ / /

/ / /

---

[2] As discussed below, Plaintiffs' references to § 12210 appear to be a typographical error. Nonetheless, the error remains in the TAC and contributes to the lack of clarity and ultimate failure to meet the requirements of Rule 8.

B. Failure to Establish Standing

In addition to Plaintiffs' general failure to comply with Rule 8, Defendant moves to dismiss all claims challenging the constitutionality of firearms regulations, arguing Plaintiffs lack Article III standing. (ECF No. 74-1 at 6.) Specifically, Defendant claims Plaintiffs have again failed to show "a genuine threat of imminent prosecution or a 'concrete plan' to violate any of the Penal Code sections they challenge." (*Id.* at 7.) Plaintiffs oppose, arguing that "the State manipulates the doctrine of standing whenever it involves a case of individual rights applying to the Second Amendment." (ECF No. 76 at 4.) More specifically, Plaintiffs argue the injury-in-fact is twofold: (1) their firearms have been confiscated; and (2) they face a "credible threat of prosecution" under the allegedly unconstitutional C.P.C. sections. (*Id.* at 6.) Plaintiffs further equate previous arrests for a slungshot and open-carry knives to "real and certain" threats of future arrests for the possession of banned firearms. (*Id.* at 5.)

"To establish standing, a plaintiff must show that '(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.'" *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (quoting *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To determine whether an injury is definite and concrete for standing purposes, courts "consider whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citation omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

In the context of a pre-enforcement challenge to a statute, "neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Id.* Rather, "a 'genuine threat of imminent prosecution' . . . is generally required of plaintiffs raising pre-enforcement challenges to criminal statutes outside the First Amendment

context." *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016) (quoting *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). Courts consider the following factors in determining whether there is a genuine threat of prosecution: "(1) 'whether the plaintiffs have articulated a "concrete plan" to violate the law in question,' (2) 'whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings,' and (3) 'the history of past prosecution or enforcement under the challenged statute.'" *Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018) (quoting *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006)). The Court finds Plaintiffs have not cured the deficiencies identified in the previous order concerning standing, with one exception discussed below.

Plaintiffs repeat the same causes of action based on the same concerns with state law, and on the whole, fail to establish a cognizable injury. More specifically, Plaintiffs have again failed to establish a "concrete plan" to violate the challenged firearm laws. Rather, they continue to allege only that they "intend" to travel with and "intend to purchase, possess, and use" large-capacity magazines and handguns not on California's approved firearms list. (ECF No. 65 ¶ 84.) These allegations are identical to those set forth in the previously dismissed SAC and are again insufficient to allege an injury-in-fact. As the Court previously noted, the Ninth Circuit has explicitly rejected this type of ambiguous language, holding that an assertion that plaintiffs "wish and intend to engage in activities prohibited by" gun control law is too vague to support a finding of an injury-in-fact. *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996). "'[S]ome day' intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Plaintiffs have again failed to allege an imminent and concrete injury, and therefore fail to establish standing.

Moreover, the previous confiscations of firearms by law enforcement cannot establish injury-in-fact for Plaintiffs' Second and Fourteenth Amendment challenges[3] because Plaintiffs do

---

[3] This appears to be the basis for Plaintiffs' Third, Sixth, and Ninth Causes of Action, as opposed to the First and Twelfth Causes of Action, which seem to be premised on Plaintiffs'

not point to any corresponding allegations indicating the purportedly unlawful confiscations were the result of law enforcement applying the challenged statutes. More to the point, Plaintiffs do not allege the seizures of their various weapons as discussed in Claims Three and Six were performed pursuant to any statute they wish to challenge. Indeed, Plaintiffs assert the Attorney General is named for purposes of declaratory and injunctive relief but provide no connection to any law they wish to enjoin.[4] The single exception to this analysis is with regard to Claim Nine as brought by Plaintiff Haven.

The Ninth Cause of Action alleges Haven was arrested and charged for the illegal possession of a slungshot under C.P.C. § 22210.[5] (ECF No. 65 ¶¶ 148, 151.) Haven alleges § 22210 violates his Second Amendment rights because it "interferes with the right to possess non-lethal weapons for purposes of self[-]defense." (ECF No. 65 ¶¶ 143, 144.) According to the heading of Claim Nine, it is brought to challenge C.P.C. § 22210 both as written and as applied, and Haven seeks injunctive and declaratory relief prohibiting further arrest and enjoining the state from enforcing the law. (*Id.* at ¶ 154.) But it is not clear to the Court whether Haven intends to raise a facial challenge to C.P.C. § 22210. To the extent he does, he falls short of pleading a clear and concise claim under Rule 8 such that the Court is unable to decipher the claim and declines to address standing. To the extent he challenges the law as applied to him, however, Haven appears

---

unspecified desire and intent to violate certain gun control laws. Regardless, the Court's analysis applies to all five causes of action. Defendant does not challenge Plaintiffs' standing to bring their Second Cause of Action.

[4] To the extent the injunctive relief sought is the return of weapons seized, the Attorney General is not properly named because there is no connection between the Attorney General and the allegedly illegal actions of the officers involved in the incidents. Plaintiffs allege only that the Sacramento Deputy Sheriff was acting under "the authority of the state of California, Office of the Attorney General" and allege no facts demonstrating Defendant's actual involvement or a sufficient connection to bring Defendant within the *Ex parte Young* exception to Eleventh Amendment immunity. *See L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.").

[5] The TAC makes multiple references to C.P.C. § 12210. As noted above, it appears this may be a typographical error intending to refer to C.P.C. § 22210, which outlaws slungshots.

to be challenging the constitutionality of a state law under which he was previously arrested. The Court therefore finds he likely has standing to assert a Second Amendment challenge to C.P.C. § 22210 as alleged in the Ninth Cause of Action. This cause of action as pleaded, however, nevertheless fails to meet the pleading standard of Rule 8, as generally discussed above, and so it is DISMISSED with leave to amend.[6]

Claims One, Three, Six, and Twelve, however, lack a similar concrete injury tied to any constitutional challenge. Accordingly, the Court dismisses Plaintiffs' First, Third, Sixth, and Twelfth causes of action on this additional ground.[7]

C. Second Cause of Action: Failure to State a Claim Under 12(b)(6)[8]

In their Second Claim, Plaintiffs challenge the constitutionality of a mandatory Law Enforcement Gun Release (LEGR) application process that is required for the return of their seized firearms. (ECF No. 65 ¶¶ 102-114.) As an initial matter, this claim is repeated almost verbatim from the SAC, which the Court dismissed under Rule 8. (ECF No. 65 ¶¶ 102-114.) In its previous Order granting Defendant's Motion to Dismiss, the Court explicitly noted in a footnote that Plaintiffs had "provided no explanation in either the SAC or their opposition explaining why the LEGR requirements violate the Second Amendment." (ECF No. 61 at 7 n. 2.) Despite the Court's warning and the opportunity to do so, Plaintiffs fail to cure this deficiency in the TAC and once again fail to explain what about the LEGR requirement violates the Second

---

6 The Ninth Cause of Action also makes a passing reference to a Fourth Amendment violation. (*Id.* ¶ 149.) To the extent Plaintiff intends to assert a Fourth Amendment claim, it does not meet the requirements of Rule 8 as set forth above.

7 The Court is aware of the Ninth Circuit's recent decision in *Duncan v. Becerra*, No. 19-55379, 2020 WL 4730668 (9th Cir., Aug. 14, 2020), affirming the district court's summary judgment in favor of plaintiffs challenging C.P.C. § 32310, which banned possession of large capacity magazines. That ruling does not impact this Court's finding that Plaintiffs here lack standing to assert the causes of action discussed herein.

8 The Court does not discuss all of Defendant's 12(b)(6) arguments herein. Instead, because the Court has found Plaintiffs' First, Third, Sixth, and Twelfth Causes of Action fail for lack of standing, the Court will address only Plaintiffs' Second Cause of Action under Rule 12(b)(6). The Court declines to address the Ninth Cause of Action under Rule 12(b)(6) because the claim is dismissed under Rule 8 with leave to amend to clarify Plaintiff's claim.

Amendment. Rather, the only substantial amendment to this cause of action is an additional claim that "plaintiffs' firearms were illegally seized, and therefore, they were deprived of their Second Amendment rights." (ECF No. 65 ¶ 103.) This does not cure the deficiency explicitly noted by the Court, and the claim continues to fail under both Rule 8 and Rule 12(b)(6).

Presumably, Plaintiffs allege that the required application and processing fee ($20 plus $3 for each additional firearm) prevents the immediate return of their seized firearms and is therefore an unconstitutional deprivation of Plaintiffs' "ability to exercise their Second Amendment rights." (*Id.* ¶¶ 108, 111.) To the extent this is Plaintiffs' intended claim, it fails to state a claim for relief as discussed below.

The Ninth Circuit has identified a two-step inquiry for determining whether a regulation violates the Second Amendment. *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018). The Court first considers if the regulation "burdens conduct protected by the Second Amendment," and if it does, they "apply an appropriate level of scrutiny." *Id.* The appropriate level of scrutiny "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). In evaluating the first question, longstanding regulations remain presumptively lawful, meaning they are "presumed not to burden conduct within the scope of the Second Amendment." *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). And as set forth in *Heller* and applied by the district court in *Pena*, laws imposing conditions or qualifications, rather than prohibitions, on the commercial sale of firearms are presumptively lawful. *See Pena*, 898 F.3d at 975.

On the first question, the Court notes the burden of the LEGR application is analogous to the firearm sale provisions burden in *Pena* because it imposes a condition rather than a prohibition on the return of seized firearms. As a result, it may be that the regulation is presumptively legal and therefore unnecessary for the Court to engage in the second step of the analysis. *See id.* The Court acknowledges, however, that the presumption of legality outlined in *Heller* is not directly on point here because the LEGR regulation is not a condition on the *commercial sale of firearms*. The Court therefore assumes for the sake of argument that the

LEGR imposes a burden on conduct that is protected by the Second Amendment, and considers the second prong of the test.

To that end, even if the LEGR imposes a burden on protected conduct, the Ninth Circuit has applied only intermediate scrutiny to laws that "regulate only the manner in which persons may exercise their Second Amendment rights." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014). Intermediate scrutiny requires (1) a significant, substantial, or important government objective, and (2) a "reasonable fit" between the challenged law and the asserted objective. *Id.* at 965. Here, the TAC acknowledges that "such forms are submitted for a determination by the California Department of Justice . . . as to whether [the applicant] is eligible to possess a firearm." (ECF No. 65 ¶ 105.) LEGR's objective, then, is one of public safety: keeping firearms out of the hands of those who — under California law — are not eligible to possess them. Requiring completion of a form and a relatively small processing fee is certainly a "reasonable fit" with this important public safety objective. *See Wilson v. Lynch*, 835 F.3d 1083, 1097 (9th Cir. 2016) (finding that violent crime is an important government interest and that preventing certain individuals from acquiring firearms furthers this interest by preventing gun violence); *see also Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."). Plaintiffs fail to allege otherwise and fail to assert facts supporting the inference that there is no reasonable fit between the LEGR process and the government's objective.

Moreover, to the extent Plaintiffs assert the fee itself is unconstitutional, "imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (finding that a $340 licensing fee did not impose an unconstitutional burden on the exercise of Second Amendment rights). Here, the required $20 fee (plus $3 for each additional firearm) is an administrative processing fee, intended "to cover [the] reasonable costs for processing [LEGR] applications." Cal. Penal Code § 33860. Because the fee is permissible under the general "fee jurisprudence" and because Plaintiffs fail to sufficiently

allege an unconstitutional burden, the Court finds Plaintiffs fail to state a claim under Rule 12(b)(6). Consequently, Defendant's motion to dismiss the Second Claim is GRANTED on this additional ground with final leave to amend to clearly and concisely state facts supporting a claim that the LEGR is somehow unconstitutional.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss. (ECF No. 74-1.) Plaintiffs' Third Amended Complaint (ECF No. 65) as it is asserted against Defendants Harris and Becerra is DISMISSED with leave to amend only as to Claims Two and Nine. Plaintiffs may file an amended complaint not later than 21 days after the date of electronic filing of this Order.

IT IS SO ORDERED.

DATED: September 23, 2020

Troy L. Nunley
United States District Judge