LONGYEAR & LAVRA, LLP
John A. Lavra, CSB No.: 114533
Amanda L. McDermott, CSB No.: 253651
3620 American River Drive, Suite 230
Sacramento, CA 95864
Phone: 916-974-8500
Facsimile: 916-974-8510

Attorney for Defendant Thomas Lamb

# UNITED STATES DISTRICT COURT,
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual,<br>　　　　　Plaintiff,<br>vs.<br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity only; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT.<br>　　　　　Defendants | Case No.: 2:16-CV-00523-TLN-KJN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THOMAS LAMB'S MOTION TO DISMISS**<br><br>Date:　　January 21, 2021<br>Time:　　2:00 p.m.<br>CtRm:　　2, 15th Floor<br>Judge:　　Honorable Judge Nunley |

DEFENDANT THOMAS LAMB, an officer of the Citrus Heights Police Department (herein "Officer Lamb"), brings this motion to dismiss Plaintiffs' Fifth Amended Complaint on the grounds that Plaintiff Cupp fails to state a claim upon which relief can be granted because Officer Lamb is entitled to qualified immunity.

///

## I.   RELEVANT FACTS AND ALLEGATIONS IN THE PLEADING

On or around March 25, 2014 Plaintiff Cupp was arrested by Citrus Heights Police Department ("CHPD") officers for violation of California Penal Code section 21310 which makes it illegal to carry a concealed knife. See ECF No. 83 at ¶¶ 114-115; Cal. Penal Code § 21310. Cupp contends that the two non-folding hunting knives he was carrying were not concealed but carried openly. *Id.* at ¶¶ 114-115. Cupp acknowledges that he was issued a temporary restraining order. *Id.* at ¶ 115. That restraining order was more specifically an Emergency Protective Order premised on a domestic violence allegation, and prohibited Cupp from owning or possessing firearms or ammunition and required that he turn in any firearms he had to law enforcement. See Request for Judicial Notice, Exhibit 1 filed herewith.

Cupp further contends that Officer Lamb and other CHPD officers searched his temporary residence, approximately 8 miles away from the location of the arrest, without a warrant, and seized firearms, ammunition and magazines. *Id.* at ¶ 115. The knives that he was carrying on his person were also seized. *Id.* The knives carried by Cupp were contained in a black sheath affixed to the outside of his leather vest. *See* ECF Nos. 12 at ¶ 138 and 12-1, Exhibit A. The vest, sheath and knife handles were all black. *Id.*

## II.   PROCEDURAL HISTORY

The original complaint asserted ten (10) claims for relief, at least four (4) of which were asserted against the City of Citrus Heights and its employees for violations of the Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution based on Plaintiff Cupp's arrest and the seizure of various weapons. See ECF No. 1.  Plaintiffs then submitted a First Amended Complaint containing similar claims for relief. See ECF No. 5. The parties stipulated to allow Plaintiffs to file a Second Amended Complaint ("SAC"). See ECF No. 11. In the SAC, Plaintiff Cupp asserted three claims for relief against Citrus Heights and its employees for violations of his Second, Fourth and Fifth Amendment rights. See ECF No. 12 at 18:25-23:25 (the third, fourth, and fifth claims for relief).

Defendants City of Citrus Heights and Christopher Boyd, Chief of the Citrus Heights Police Department, filed a motion to dismiss the three claims for relief asserted against them for

failure to state a claim upon which relief could be granted. See ECF Nos. 16, *et seq.* This Court granted in part and denied in part that motion.[1] See ECF No. 60. Pursuant to that order, all claims against the City of Citrus Heights and Chief Boyd were dismissed with prejudice and the Fifth Cause of Action for violation of Cupp's Fifth Amendment rights was dismissed with prejudice.

Neither Plaintiff Cupp's Third Cause of Action for Second Amendment violations nor his Fourth Cause of Action for Fourth Amendment violations was dismissed as to Officer Lamb or the other individual officers.

On October 22, 2018 Plaintiffs filed a Third Amended Complaint ("TAC"). See ECF No. 65. Therein, Plaintiff Cupp asserted a single cause of action against Officer Lamb and the other individual officers for violation of the Second Amendment premised on the open carry of knives and seizure of firearms. See ECF No. 65 at 16:20-18:9. On November 5, 2018, pursuant to stipulation of the parties, Officer Lamb answered the complaint. See ECF Nos. 68, 70.

The TAC also included multiple causes of action against Defendants Kamala Harris and Xavier Becerra, in their official capacities as the current and former Attorney General of the State of California, respectively (herein "State Defendants"). On November 20, 2018 the State Defendants filed a motion to dismiss the TAC. See ECF No. 72. On September 24, 2020 this Court granted the State Defendants' motion, dismissing all claims against the State Defendants in their entirety "with leave to amend only Claims Two and Nine," both of which are Second Amendment challenges to state statutes. See ECF No. 79.

On October 15, 2020 Plaintiffs filed a Fourth Amended Complaint against only the State Defendants. See ECF No. 80 *et seq*. As Plaintiffs did not intend to dismiss or abandon the Third Claim for Relief for Second Amendment violations against individual CHPD officers that had previously been asserted in the TAC, the parties stipulated to allow Plaintiffs' to file a Fifth Amended Complaint. See ECF No. 82.

On November 20, 2020 Plaintiffs filed a Fifth Amended Complaint against the State

---

[1] In its order this Court stated that it was granting in part and denying in part a motion to dismiss submitted by Defendants "City of Citrus Heights ('Citrus Heights'), Citrus Heights Police Department Chief Christopher W. Boyd ('Boyd'), Christian Baerresen ('Baerresen'), and Thomas Lamb's ('Lamb') (collectively, 'Citrus Heights Defendants')." See ECF No. 60 at 1:18-21. However, Defendants Baerresen and Lamb were not parties to the Citrus Heights motion to dismiss (ECF No. 16, *et seq*) and did not respond to the Second Amended Complaint or appear in the case at that time. See ECF Nos. 16, 70.

Defendants, Officer Lamb, and other individual CHPD officers. See ECF No. 83. The Fifth Amended Complaint asserts three causes of action, all for alleged violations of the Second Amendment to the United States Constitution. *Id.* The only claim asserted against Officer Lamb and other CHPD officers is the Third Cause of Action which states a Second Amendment claim premised on open carry of knives and seizure of firearms. *Id.* at 14:19-23.

Therein, Plaintiff Cupp claims that Lamb and the other officers violated Cupp's Second Amendment rights by arresting him for openly carrying a knife, which he alleges is permitted by California law, and then issuing a temporary restraining order against him, searching his residence and seizing various firearms and knives. See ECF No. 83 at ¶¶ 110-115. Through this causes of action, Plaintiff Cupp "seeks monetary relief for being deprived of his Second Amendment right in that his property seized are protected arms under the Second Amendment" and "seeks injunctive and declaratory relief for the return of his firearms and other property." See *Id.* at ¶¶ 123-124. Unlike prior versions of the complaint, Plaintiff Cupp did not assert a cause of action for violation of the Fourth Amendment and makes no reference or claim that his Fourth Amendment rights have been violated. See ECF Nos. 1 at 22:6-23:6, 5 at 23:24-25:22, and 12 at 22:16-23:7.

### III.  LEGAL STANDARD

A claim may be dismissed if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint or of any claim within it "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). "[C]onclusory allegations of law and unwarranted

inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). Further, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated… laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

When ruling on a motion to dismiss, the court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matter properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Ninth Circuit has adopted two exceptions to this rule in order to prevent plaintiffs from avoiding dismissal "by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may consider documents where (1) "the complaint necessarily relies upon the document" or (2) "the contents of the document are alleged in the complaint, the document's authenticity is not in question, and the document's relevance is not in dispute." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may also "take judicial notice of adjudicative facts not subject to reasonable dispute." *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); Fed. R. Evid. § 201(a)-(f).

## IV.    ARGUMENT

**A.    Officer Lamb Is Entitled To Qualified Immunity For The Arrest of Cupp and Seizure of Weapons.**

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 731 (2011). To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Taylor v. Barkes*, 575 U.S. 822 (2015) (internal citation omitted). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'"

Ashcroft v. al-Kidd, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is the plaintiff's burden to prove that the right allegedly violated was clearly established at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

In analyzing whether qualified immunity applies, a court must address two questions: 1) did the defendant's conduct violate a constitutional right, and 2) was the right at issue clearly established such that a reasonable officer would have understood his conduct to be unlawful in the situation that he confronted. *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001), *overruled on other grds. in Pearson v. Callahan*, 555 U.S. 223 (2009). The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Whether a right was clearly established must be examined "in light of the specific context of the case, not as a broad general proposition" or "at a high level of generality." *Saucier*, at 200; *Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014). This second prong of the qualified immunity analysis is "an inquiry into the objective reasonableness of the officer's belief in the necessity of his actions." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (original emphasis). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. at 743.

While the qualified immunity analysis is a two-step process, the court may address the two questions in any order that will facilitate the fair and efficient disposition of the case. *Pearson v. Callahan*, 555 U.S. at 242.

    **1.    Officer Lamb Is Entitled To Qualified Immunity For The Alleged Second Amendment Violation Based On Arrest For Openly Carrying A Dirk or Dagger.**

Plaintiff Cupp claims his Second Amendment rights were violated when Officer Lamb and other CHPD officers arrested him for carrying a concealed weapon that was not concealed. Put differently, Cupp claims CHPD officers violated the Second Amendment by arresting him for openly carrying knives. Still, Cupp admits that the officers charged him with a violation of Penal Code Section 21310 which makes it a crime for a person to carry concealed upon his or her

person any dirk or dagger.[2] See ECF No. 83 at ¶ 114.

    *a. It Was Not Clearly Established At The Time Of Cupp's Arrest That He Had A Second Amendment Right To Openly Carry A Dirk Or Dagger In The Manner That He Did.*

  The Second Amendment to the Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has interpreted the Second Amendment to "guarantee the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). The Supreme Court also applied this right to the states. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Both *Heller* and *McDonald* involved challenges to gun-control statutes and ordinances, not directly to an individual's right to a particular firearm or other weapon. The Supreme Court advised that the right to bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 625; *McDonald*, 561 U.S. at 786 (2010).

  Cupp's arrest for carrying the knife in a sheath on his leather vest merely regulated the manner in which he carried the knife but did not completely ban his possession of the weapon or his ability to carry it lawfully pursuant to California knife laws. *See U.S. v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010); *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011); Cal. Penal Code § 20200. Therefore, it is questionable whether Second Amendment protections extend to an individual arrest premised on a potential misapplication of state law or mistake of fact as to whether the knife in question was concealed.

  At the time of Cupp's arrest in 2014, neither the Supreme Court nor the Ninth Circuit had determined whether and to what extent the Second Amendment protects an individual's right to possess a particular knife or to carry that knife in any particular manner. Any reliance on *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016), a case regarding stun guns, is misplaced as it was decided two (2) years after the arrest at issue. Moreover, *Caetano* does little more than reinforce the Supreme Court's holding in *Heller* that the Second Amendment extends to

---

[2] A "'dirk' or 'dagger' is a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. Cal. Penal Code § 16470.

"bearable arms" that were not in existence at the time the amendment was established. *Id.* (quoting *Heller*, 554 U.S. at 882). In March of 2014, it was not clearly established that the Second Amendment protects the right to openly carry a dirk or dagger like that in Cupp's possession or to carry it in the manner he did—disguised on the outside of an article of clothing. Further, it was not clearly established at the time of Cupp's arrest that the Second Amendment would protect him from arrest for carrying such a knife in the manner he did.

Other cases holding that the Second Amendment protections extend beyond the home or to weapons other than firearms are immaterial to the question of whether it was clearly established that the Second Amendment protects the right to openly carry a dirk or dagger or to carry it in the manner Cupp did. Establishing a general right is not enough. The Supreme Court has held that in order to impose liability for a constitutional violation there must be clear precedent that would have alerted the official that his or her actions were unconstitutional. See *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The Ninth Circuit has followed this approach stating that,

> "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' [citation] This question must be answered 'not as a broad general proposition,' but with reference to the facts of specific cases. [citation] 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'"

*Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) (internal quotation marks omitted) (emphasis in original). No relevant authority existed at the time that would have put Officer Lamb or the other CHPD officers on notice that their actions would violate the Second Amendment.

        **b.**    ***It Was Not Unreasonable For CHPD Officers To Believe That Cupp Was Committing A Crime By The Manner In Which He Was Carrying His Knives.***

Plaintiff Cupp contends that the CHPD officers did not have probable cause to arrest him because he was openly carrying his knives. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."

*United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Even officers who mistakenly conclude probable cause is present are entitled to immunity as long as their mistake is reasonable. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

California law permits a person to carry a dirk or dagger openly in public provided that the knife is contained within a sheath, and the sheath is worn suspended from the person's waste. Cal. Penal Code § 20200. The picture provided by Cupp clearly shows that the sheath containing the knives in question were on his leather vest, not suspended from his waste. *See* ECF Nos. 12 at ¶ 138 and 12-1, Exhibit A. Based thereon, Cupp was not in compliance with the open carry parameters of California's knife laws. It was not unreasonable for an officer to conclude that the knives affixed to a leather vest and disguised thereon were not in compliance with Penal Code § 20200 and were thus concealed for purposes of Penal Code § 21310. Therefore, even if the officers made a mistake, they are entitled to qualified immunity for the arrest. *Hunter,* 502 U.S. at 227.

### 2. Officer Lamb Is Entitled To Qualified Immunity For The Alleged Second Amendment Violation Based The Seizure Of Firearms And Other Related Items Following His Arrest.

Cupp contends that firearms, ammunition, and magazines, as well as the knives he was carrying at the time of the arrest, were unlawfully seized by Officer Lamb and other CHPD officers in violation of his Second Amendment rights. The Eighth Circuit has held that "even an unlawful retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms." *Boudette v. Buffington*, Civil Action No. 18-cv-02420-CMA-MEH, 2020 U.S. Dist. LEXIS 143286, at *15 (D. Colo. Aug. 11, 2020) (quoting *Rodgers v. Knight*, 781 F.3d 932, 941-42 (8th Cir. 2015)). Neither the Supreme Court nor the Ninth Circuit have specifically held that the seizure of a particular firearm or knife by law enforcement constitutes a violation of the Second Amendment. Again, it was not clearly established at the time of the incident that seizure of Cupp's weapons would violate his Second Amendment rights and therefore Officer Lamb is entitled to qualified immunity.

The Supreme Court has held that probable cause for an arrest might justify the seizure of

weapons or other evidence or instruments of crime without a warrant. *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973) (citing Cf. *Chimel v. California*, 395 U.S. 752, 764 (1969); *id*., at 773-774 (WHITE, J., dissenting); *Preston v. United States*, 376 U.S. 364, 367 (1964)). The knives were the basis of Cupp's arrest. As established above, it was reasonable for the officers to believe that Cupp was in violation of California laws pertaining to the permissible carrying of dirks and daggers. Therefore, it was reasonable for the officers to seize the knives incident to Cupp's arrest.

Further, it was not unreasonable for CHPD officers to seize Cupp's firearms, ammunition, and related materials following the issuance of the restraining order which prohibited him from being in possession of said items. See RJN, Exhibit 1. The Emergency Protective Order issued at the time of the incident prohibited Cupp from owning or possessing firearms or ammunition and required that he dispose of or relinquish his firearms. *Id.* Further, it was not unreasonable for Officer Lamb or the other CHPD officers to believe exigent circumstances existed to obtain the weapons and remove them from Cupp's possession in light of the issuance of an "*Emergency* Protective Order" based on a domestic violence incident. That protective order required that the firearms and ammunition be seized or otherwise turned over to law enforcement by Cupp. Therefore, Officer Lamb is entitled to qualified immunity for the seizure of Cupp's firearms and related property to the extent he participated in said seizure.

## V.   CONCLUSION

Based on the foregoing, and because the facts alleged show that an objectively reasonable officer in the position of Officer Lamb would not have understood his actions to violate Plaintiff Cupp's Second Amendment rights, Defendant Lamb is entitled to qualified immunity and the claims against him should be dismissed.

Dated: December 4, 2020          LONGYEAR & LAVRA, LLP

By:  */s/ Amanda L. McDermott*
     JOHN A. LAVRA
     AMANDA L. MCDERMOTT