Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 758-1100
CivilRightsAttorney@BlackWolfLaw.com

Daniel M. Karalash (SBN 176422)
STRATEGIC LAW COMMAND
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

**THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity; *et al.*<br><br>Defendants. | Case No.  16-CV-00523-TLN-KJN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT THOMAS LAMB'S MOTION TO DISMISS MOTION TO DISMISS FIFTH AMENDED COMPLAINT (5thAC)**<br><br>Date: November 21, 2021<br>Time: 2:00 p.m.<br>Dept: 2<br>Judge: Hon. Troy L. Nunley<br>Action Filed: March 11, 2016 |

## OPPOSITION

The Second Amendment is a right which cannot be exercised without the ability to bear an arm, which also means it must be in a person's possession.  The law was well established in California the carrying of an unconcealed knife is constitutionally protected and consistent with United States Supreme Courts rulings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and most recently *Caetano v. Massachusetts*, 577 U.S. ___, 136 S. Ct. 1027, 194 L. Ed. 2d 99 (2016).

**Plaintiffs' Opposition to Motion to Dismiss Fifth Amended Complaint**

LAMB attempts to introduce evidence at the pleading stage that the TRO is related to the ultimate arrest and charge of carrying a concealed dirk or dagger. CUPP had a single charge filed against him, and that was for the carrying of his arms in a manner proscribed by law – in the open. He was never charged for domestic violence as is alleged in the defendant's motion.

At the time his knives were confiscated, it was not under the a procedure for the restraining order because that procedure only applies to firearms, ammunition, and magazines. Knives are not included in that category. The arrest was for the method of openly carrying the knives. Because the knives were visible to, the arrest and confiscation of the knives constitutes a deprivation of the CUPP's right to keep and bear arms. The arms were returned in court without any payment of fee or signing a LEGR.

As the Supreme Court explained in *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008), the Second Amendment protects the right of individuals to keep and bear arms that are in common use for lawful purposes, such as self-defense, sport, hunting, and maintaining preparedness for service in the militia. See also *Duncan v. Becerra*, 366 F. Supp.3d 1131 (S.D. Cal. 2019)

Plaintiff fears prosecution and arrest is not misplaced, for Plaintiff has already been arrested for possession of protected "arms", as clearly defined by the Supreme Court in *Caetano*, and which were not even firearms.  (CUPP 5thAC ¶s 37-44.)

If CUPP can be arrested for the open-carry of a knife; then it is clear that the threat of arrest is real. LAMB is standing by the his enforcement of the statute; by way of his motion, LAMB has confirmed the way he applied the statute was correct; and that he can still enforce the law in the future in the same manner as the knives were beared by CUPP.

> When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. See *Steffel v. Thompson*, 415 U. S. 452, 459, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); see also *MedImmune, Inc. v. Genentech, Inc.*, 549 U. S. 118, 128-129, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"). Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,

and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers*, 442 U. S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). Several of our cases illustrate the circumstances under which plaintiffs may bring a preenforcement challenge consistent with Article III.

*Susan B. Anthony List v. Driehaus,* 573 U.S. ___, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014).

Plaintiff has standing.

### A. Plaintiff's Second Amendment Claim is *Per Se* Actionable.

There is no doubt CUPP's knives were visible, and not concealed. The complaint spells this out:

111. California law permits the open carry of knives.

112. Knives are protected arms under the Second Amendment.

113. At all times, the law was well established as to the Second Amendment.

114. CUPP was charged with PC 21310, carrying a concealed knife which was not concealed.

Besides, what arms are protected by the Second Amendment came before the Supreme Court by the blanket prohibition of Massachusetts against the possession of a stun gun. The Massachusetts Supreme Court upheld the blanket banishment of stun guns as weapons that were not protected by the Second Amendment under three separate and distinct theories. First Massachusetts asserted that since Stun Guns were not in common use at the time of the Second Amendment's enactment, they did not fall under its protections. Second Massachusetts asserted Stun Guns are dangerous per se at common law and unusual, they fell out the protections of the Second Amendment. Finally, Massachusetts argued that stun guns were not readily adaptable to use in the military and therefore were outside the scope of the Second Amendment.

In *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078), the Supreme Court of the United States summarily rejected all of Massachusetts arguments. In vacating the judgment of the Supreme Judicial Court of Massachusetts in its unanimous per curiam opinion, the court has told us that a blanket prohibition of arms is *per se* unconstitutional.

### THERE IS NO QUALIFIED IMMUNITY

Courts analyze qualified immunity through a two-pronged test. The first prong asks whether, viewed in the light most favorable to plaintiffs, "the facts alleged show the [defendants'] conduct

**Plaintiffs' Opposition to Motion to Dismiss Fifth Amended Complaint**

violated a constitutional right"; the second prong asks whether that constitutional right was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), receded from in *Pearson*, 555 U.S. at 236 (reconsidering *Saucier*'s procedural order; deciding two prongs can be addressed in any sequence).

After reversing "a number of . . . federal courts in qualified immunity cases," the Supreme Court recently "reiterate[d] the longstanding principle that "'clearly established law' should not be defined at a high level of generality"; instead, it must be "particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation and quotations omitted).  Qualified immunity applies unless the law was sufficiently clear that every reasonable official confronting the same scenario at that time would have understood the specific response was unlawful.  *Id*.

Here, immunity depends on how a fact finder weighs the officers' credibility and the competing evidence regarding what exactly happened on the night of the officers' encounter with CUPP.  Granting or denying qualified immunity, based on this record, would be premature.

Besides, there must have come a point in time that the officer realized the knives were not concealed when they disarmed CUPP by removing his vest, which was then returned back to him in court. The Deputy DA had no problem determining the knives were not concealed. The constitutional violation occurred at the moment CUPP's vest and knives were taken from him, and continued thereafter until returned.

The arrest for the knives is independent of any reason proffered for the restraining order – the two independent events. The arrest for the knives is a completely different crime than what was alleged in a restraining order. Because officer knew a crime had not been committed justifying the removal of the guns; the officers arrested CUPP on a bogus charge of carrying a concealed knife.

## **CONCLUSION**

For the above stated reasons, defendant's motion is properly denied.

Dated: January 5, 2021                THE LAW OFFICES OF GARY W. GORSKI
                                      Respectfully Submitted,
                                       /s/ Gary W. Gorski
                                      Gary W. Gorski
                                      Attorney for Plaintiffs

**Plaintiffs' Opposition to Motion to Dismiss Fifth Amended Complaint**