ROB BONTA, State Bar No. 202668
Attorney General of California
BENJAMIN M. GLICKMAN, State Bar No. 247907
Supervising Deputy Attorney General
ANTHONY P. O'BRIEN, State Bar No. 232650
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6002
Fax: (916) 324-8835
E-mail: Anthony.OBrien@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES EDWARD CUPP,**<br><br>Plaintiff,<br><br>**v.**<br><br>**ROB BONTA, in his official capacity as Attorney General of California, et al.,**<br><br>Defendants. | Case No. 2:16-cv-00523-TLN-KJN<br><br>**DEFENDANT BONTA'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE SEPTEMBER 15, 2022 COURT ORDER**<br><br>Dept: Courtroom 2, 15th Floor<br>Judge: The Honorable Troy L. Nunley<br>Trial Date: None Set<br>Action Filed: March 11, 2016 |

[1] Rob Bonta has succeeded former Attorneys General Kamala D. Harris and Xavier Becerra as the Attorney General of the State of California. Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Bonta, in his official capacity, is substituted as one of the defendants in this case.

# TABLE OF CONTENTS

Page

INTRODUCTION ........ 1
FACTUAL AND PROCEDURAL BACKGROUND ........ 2
I. Plaintiffs' Allegations ........ 2
A. Challenge to the State's LEGR Process ........ 2
B. Challenge to the State's Prohibition of Slungshots ........ 3
II. Procedural History ........ 3
ARGUMENT ........ 4
I. *Bruen* Altered the Legal Standard for Analyzing Second Amendment Claims ........ 4
II. Applying the Textual Inqury Required by *Bruen*, the Court Should Grant the Attorney General's Motion to Dismiss ........ 6
A. The LEGR Process Does Not Regulate Conduct Covered by the Plain Text of the Second Amendment ........ 6
B. The Slungshot Prohibition Does Not Regulate Conduct Covered by the Plain Text of the Second Amendment ........ 8
III. Additional Expert Discovery on the Nation's Historical Tradition Will Be Necessary if the Court Concludes That the LEGR law or Slungshot Ban Implicate the Plain Text of the Second Amendment ........ 8
CONCLUSION ........ 10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Adams v. Johnson*
355 F.3d 1179 (9th Cir. 2004) ..... 4

*Caetano v. Massachusetts*
577 U.S. 411 (2016) ..... 7

*District of Columbia v. Heller*
554 U.S. 570 (2008) ..... *passim*

*Fyock v. City of Sunnyvale*
779 F.3d 991 (9th Cir. 2015) ..... 8

*McDonald v. City of Chicago*
561 U.S. 742 (2010) ..... 4

*New York Rifle & Pistol Ass'n., Inc. v. Bruen*
142 S. Ct. 2111 (2022) ..... *passim*

*Peña v. Lindley*
898 F.3d 969 (9th Cir. 2018) ..... 1, 3

*People v. Fannin*
91 Cal. App. 4th 1399 (2001) ..... 8

*Teixeira v. County of Alameda*
873 F.3d 670 (9th Cir. 2017) ..... 7

*United States v. Henry*
688 F.3d 637 (9th Cir. 2012) ..... 8

**STATUTES**

California Penal Code
§ 16590(m) ..... 3
§ 22210 ..... 3
§ 33850 ..... 2, 7
§ 33855 ..... 2, 7
§ 33855(a) ..... 2
§ 33855(b) ..... 2
§ 33860 ..... 2, 7
§ 33860(a) ..... 2
§ 33880 ..... 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Amendment II ........................................................................ 6

**INTRODUCTION**

Pursuant to the Court's September 15, 2022 Order (ECF No. 102), Defendant Rob Bonta, in his official capacity as Attorney General of California, submits this supplemental brief regarding his Motion to Dismiss the Fifth Amended Complaint—filed on December 4, 2020 (ECF No. 84) and granted by this Court on September 28, 2021 (ECF No. 91)—in light of the Supreme Court's decision in *New York Rifle & Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In *Bruen*, the Supreme Court announced a new framework for analyzing Second Amendment claims. In lieu of the "two-step test" that the Ninth Circuit and most other federal courts of appeals had adopted for resolving those claims, *Bruen* held that courts must apply a standard "rooted in the Second Amendment's text, as informed by history." *Id*. at 2127. Under this new approach, courts must initially assess whether the "Second Amendment's plain text covers" the regulated conduct. *Id*. at 2129. If the answer is no, there is no violation of the Second Amendment. If the answer is yes, the government can still justify its regulation—and overcome a constitutional challenge—by showing that the challenged law is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. The Court also provided important guidance about how that historical analysis should be conducted. *See id*. at 2131-2134.

Applying *Bruen* to this case, neither of Plaintiffs' claims implicate any Second Amendment protections. California's Law Enforcement Gun Release (LEGR) process is not covered by the "plain text" of the Second Amendment because it does not prohibit firearm possession, but only requires completion of a short application, payment of a nominal fee, and completion of a background check. Cal. Penal Code, §§ 33850, 33855, 33860;[2] *see also Bruen*, 142 S. Ct. at 2138 n.9. Similarly, the State's prohibition of "dangerous and unusual weapons," such as slungshots, falls outside of the scope of the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). For these reasons alone, the Court can and should dismiss this matter with prejudice.

[2] All subsequent statutory references are to the California Penal Code, unless otherwise noted.

If, however, the Court determines that Plaintiffs' claims are covered by the plain text of the Second Amendment, the Attorney General requests that the Court permit the parties to conduct focused expert discovery to prepare a full record responsive to the historical standard and analysis set forth in *Bruen*.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PLAINTIFFS' ALLEGATIONS

This matter proceeds from the Fifth Amended Complaint, filed on November 20, 2020. ECF No. 83 ("Complaint" or "FAC"). Plaintiffs' two remaining claims from that complaint include the following:[3]

#### A. Challenge to the State's LEGR Process

Plaintiffs challenge the LEGR process (§§ 33850, 33855, 33860, 33880) for return of firearms seized by local authorities. FAC, ¶¶ 25-80. Applicants seeking the return of the seized firearm must complete an application and submit a modest fee ($20 per firearm, plus $3 for any additional firearms) to allow for the law enforcement agency to complete the background check ensuring that the applicant is the registered owner of the firearm in question. §§ 33850, 33860(a). The agency then conducts a background check to ensure that: (1) the claimed owner is eligible to possess a firearm; (2) the firearm is not stolen; and (3) the firearm is registered "in the name of the individual who seeks its return." § 33855(a), (b). Here, Plaintiff Cupp seeks the return of six firearms and "firearm related tools and equipment" confiscated by the Citrus Heights Police Department during an arrest on March 25, 2014. FAC, ¶¶ 37, 43-44. Plaintiff Haven seeks the return of three firearms confiscated by the Sacramento County Sheriff's Department on February 14, 2016. FAC, ¶¶ 45, 47.

---

[3] The Fifth Amended Complaint also includes a third claim alleging that several Citrus Heights Police Officers violated Plaintiff Cupp's Second Amendment rights by seizing six firearms, ammunition, and two hunting knives on March 25, 2014. FAC, ¶¶ 110-126. Plaintiffs do not allege any wrongdoing by the Attorney General with respect to this claim. As such, the Attorney General does not address the Third Claim for Relief in his motion to dismiss.

**B. Challenge to the State's Prohibition of Slungshots**

Plaintiff Haven also challenges enforcement of sections 16590(m) (which identifies "generally prohibited weapons," including a slungshot) and 22210 (which states that anyone who possesses as slungshot may be punished with up to one year in prison). FAC, ¶ 83. Haven alleges that he was arrested by a Placer County Sheriff's deputy on February 8, 2016, for illegally possessing a "slungshot" (a metal weight attached to a flexible handle for use as a weapon) in violation of section 22210. FAC, ¶¶ 88-93. The Placer County District Attorney eventually dropped charges against Haven, but also destroyed his slungshot in the process. FAC, ¶¶ 98, 103.

## II. Procedural History

Plaintiffs have filed six versions of the complaint since March 11, 2016. ECF Nos. 1, 5, 12, 65, 80, 83. In response, the Attorney General filed two previous motions to dismiss in response to Plaintiffs' Second and Third Amended Complaints. ECF Nos. 18, 74. The Court has granted the Attorney General's motion in each instance without oral argument, allowing Plaintiffs leave to amend at least some of their claims. ECF No. 61, 79. After granting the Attorney General's Motion to Dismiss the Third Amended Complaint, the Court granted Plaintiffs leave to amend the claims alleging that the LEGR process and the slungshot prohibition violated their Second Amendment rights. ECF No. 79 at 11:3-5, 14:3-4.

Plaintiffs subsequently filed a Fourth Amended Complaint (ECF No. 80), and—with leave of Court (ECF No. 82)—the operative Fifth Amended Complaint that included both the challenges to the LEGR process and slungshot prohibition. ECF No. 83 at ¶¶ 25-109. On September 28, 2021, this Court granted the Attorney General's motion to dismiss. ECF No. 91. With regards to Plaintiffs' challenge to the LEGR process, the Court held that Plaintiffs "have failed to allege new facts that would justify a departure from the Court's analysis when this issue was last raised," when it concluded that "laws imposing conditions or qualifications, rather than prohibitions, on the commercial sale of firearms are presumptively lawful." ECF. No. 91 at 5:26-6:2, citing ECF No. 79 at 12-14 and *Peña v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018).[4]

[4] The Court also acknowledged that "the presumption of legality outlined in *Heller* and *Peña* is not directly on point here because the LEGR regulation is not a condition on the

Regarding the slungshot prohibition, the Court noted California's "longstanding prohibition on possession of slungshots as a weapon" and that "Plaintiffs fail[ed] to plead *facts* tending to show the slungshot is protected by the Second Amendment." ECF No. 91 at 8:7-13, *citing Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (emphasis in Court order).

Plaintiff filed a notice of appeal on October 26, 2021. ECF No. 96. On July 18, 2022, while the appellate matter was pending, the Attorney General filed a stipulated motion to vacate this Court's decision and remand the matter for further proceedings consistent with the Supreme Court's decision in *Bruen*. *Cupp v. Bonta*, No. 21-16809, ECF No. 22. The Ninth Circuit granted the stipulated motion on August 19, 2022. *Id.*, ECF No. 23.

## ARGUMENT

### I. *BRUEN* ALTERED THE LEGAL STANDARD FOR ANALYZING SECOND AMENDMENT CLAIMS

In *Bruen*, petitioners challenged the constitutionality of a New York law requiring that individuals show "proper cause" to obtain a license to carry a firearm in public. *Bruen*, 142 S. Ct. at 2123. The petitioners claimed that the law violated their Second Amendment rights. *Id*. at 2125. Before turning to the merits, the Supreme Court recognized that most federal courts of appeals had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Id*. The Court "decline[d] to adopt" that "'two-step' framework" and explained that its earlier decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "d[id] not support applying means-end scrutiny in the Second Amendment context." 142 S. Ct. at 2126-2127. It then announced a new standard for analyzing Second Amendment claims "centered on constitutional text and history." *Id.* at 2128-2129. Under this new approach,

/ / /

/ / /

---

commercial *sale* of firearms." ECF No. 91 at 6:6-8, emphasis in order. The Court, therefore, proceeded on the *assumption* that the LEGR process imposed a burden on Plaintiff's Second Amendment rights, holding that—under the second part of the pre-*Bruen* Second Amendment analysis—the LEGR process satisfied intermediate scrutiny. *Id*. at 6:8-7:12.

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 2129–2130. The Court also provided guidance on how the historical inquiry and analysis should be performed, and noted that governments are not required to identify a "historical twin," but only need to identify a "well-established and representative historical analogue." *Id*. at 2131-2133.

Applying this new approach to the case before it, the Court held that New York's "proper cause" requirement was inconsistent with the Second Amendment's text and history, and therefore unconstitutional. *Id*. at 2134–2156. New York defined "proper cause" as a showing of "special need for self-protection distinguishable from that of the general community." *Id*. at 2123. This was a "demanding" standard, *id*., and made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," *id*. at 2156 (Alito, J., concurring). The Supreme Court had "little difficulty" concluding that the "plain text" of the Second Amendment protected the conduct that the *Bruen* plaintiffs wished to engage in—"carrying handguns publicly for self-defense"—reasoning that the term "'bear' naturally encompasses public carry." *Id*. at 2134. The Court explained that because "self-defense is 'the *central component* of the [Second Amendment] right itself,'" and because "[m]any Americans hazard greater danger outside the home than in it," it would make "little sense" to confine that right to the home. *Id*. at 2135 (*quoting Heller*, 554 U.S. at 599, emphasis in *Heller and Bruen*).

Because the plain text of the Second Amendment covered the regulated conduct in *Bruen*, the burden then shifted to the government to show that the prohibition was consistent with an accepted historical tradition of firearm regulation. *Id*. at 2135. After conducting a lengthy survey of "the Anglo-American history of public carry," the Court held that New York failed to justify its proper-cause requirement. *Id*. at 2156. The Court concluded that this history showed that the Second Amendment guaranteed a right to bear "commonly used arms" in public, "subject to certain reasonable, well-defined restrictions," which had not historically included a requirement

that "law-abiding, responsible citizens ... 'demonstrate a special need for self-protection distinguishable from that of the general community' in order to carry arms in public.'" *Id.*

While *Bruen* announced a new method for analyzing Second Amendment claims, it also made clear that governments may continue to adopt reasonable gun regulations. The Court recognized that the Second Amendment is not a "regulatory straightjacket." *Id*. at 2133. Nor is it a right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purposes." *Id*. at 2128 (*quoting Heller*, 554 U.S. at 626). And Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to underscore the "limits of the Court's decision." *Id*. at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh reiterated *Heller's* observation that "the Second Amendment allows a 'variety' of gun regulations." *Id*. at 2162 (*quoting Heller*, 554 U.S. at 636). And he emphasized that the "presumptively lawful measures" that *Heller* identified—including "longstanding prohibitions on the possession of firearms by felons and the mentally ill"; laws "forbidding the carrying of firearms in sensitive places"; laws "imposing conditions and qualifications on the commercial sale of arms"; and laws prohibiting the keeping and carrying of "dangerous and unusual weapons"—remained constitutional, and that this was not an "exhaustive" list. *Id*. at 2162 (*quoting Heller*, 554 U.S. at 626-627, 627 n.26).

## II. APPLYING THE TEXTUAL INQURY REQUIRED BY *BRUEN*, THE COURT SHOULD GRANT THE ATTORNEY GENERAL'S MOTION TO DISMISS

### A. The LEGR Process Does Not Regulate Conduct Covered by the Plain Text of the Second Amendment

The Supreme Court's decision in *Bruen*, with its emphasis on the plain text of the Second Amendment, supports the Attorney General's argument that California's LEGR process does not violate the Second Amendment. Under the new text-and-history approach laid out in *Bruen*, courts must first assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at 2126—in other words, whether the regulation at issue prevents any "people" from "keep[ing]" or "bear[ing]" "Arms." U.S. Const. amend. II.

In applying this new approach to New York's "proper cause" requirement in *Bruen*, the Court held, at the threshold stage of the inquiry, that the regulated conduct was covered by the "plain text" of the Second Amendment. 142 S. Ct. at 2134. No party disputed that the "ordinary,

law-abiding, adult citizens" who were plaintiffs in the case were "part of 'the people' whom the Second Amendment protects." *Id*. And no party disputed that the handguns that the plaintiffs sought to carry in public qualified as protected "Arms" because handguns are "'in common use' today for self-defense." *Id*. (*citing Heller*, 554 U.S. at 627, and *Caetano v. Massachusetts*, 577 U.S. 411, 411-12 (2016)). The only textual question remaining for the Court to resolve was whether the plaintiffs' "proposed course of conduct—carrying handguns publicly for self-defense"—fell within the terms "keep" or "bear." *Id*.

The same type of analysis applies here. The Attorney General does not dispute that the Plaintiffs Cupp and Haven are part of "the People." The Attorney General also does not dispute that Plaintiffs seek to keep "Arms." Thus, the only question remaining is whether California's LEGR process prevents Plaintiffs from "keep[ing]" or "bear[ing]" "Arms." The answer is no. The right to "keep arms" refers to possessing arms, and the right to "bear arms" refers to carrying arms "for a particular purpose—confrontation." *Heller*, 554 U.S. at 583-584. The Court in *Bruen* also emphasized that "self-defense is 'the central component of the [Second Amendment] right itself." *Bruen*, 142 S. Ct. at 2135 (citations omitted). Although the ability to acquire firearms is necessary in order to keep and bear arms for self-defense, it is not an unconditional right. *See Teixeira v. County of Alameda*, 873 F.3d 670, 677-78 (9th Cir. 2017). The Supreme Court recognized that background checks—such as those employed in the LEGR process to determine the applicant's eligibility to possess the seized firearm (§ 33855)—do not impede an individual's right to "keep" or "bear" arms. *See Bruen*, 142 S. Ct. at 2138 n.9 (recognizing that States may require individuals who wish to carry firearms in public to successfully complete a background check prior to being authorized to carry); *see also id.* at 2162 (Kavanaugh, J., concurring) (noting that conditioning the right to public carry on "a background check" is "constitutionally permissible, subject of course to an as-applied challenge").

In this case, California's LEGR process only requires completion of an application plus a modest fee to allow for the completion of the background check. §§ 33850, 33860. The LEGR law does not prevent anyone from acquiring firearms for self-defense, keeping them for those purposes, and bearing the firearms for confrontation. As such, the LEGR process does not

prevent an individual from "keeping" or "bearing" arms, and thus is not covered by the plain text of the Second Amendment.

### B. The Slungshot Prohibition Does Not Regulate Conduct Covered by the Plain Text of the Second Amendment

Plaintiff Haven's challenge to the State's slungshot prohibition also fails under the first part of the Supreme Court's *Bruen* test. As previously noted by this Court, the State's prohibition of "dangerous and unusual weapons," such as slungshots, falls outside the scope of the Second Amendment. ECF No. 91 at 7:23-8:2, citing *Heller*, 554 U.S. at 627; *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). "Regulation of a weapon not typically possessed by law-abiding citizens for lawful purposes does not implicate the Second Amendment." *Fyock v. City of Sunnyvale*, 779 F.3d 991, 997-98 (9th Cir. 2015) (citing cases). California has long prohibited slungshots and similar weapons because they are "ordinarily used for criminal and improper purposes." *See People v. Fannin*, 91 Cal. App. 4th 1399, 1402 (2001) (citations omitted). The Fifth Amended Complaint does not allege any facts showing that Plaintiff Haven's rights under the Second Amendment encompass possession of such weapons.

Because the Second Amendment does not protect the possession of exotic weapons, the slungshot should not be considered the type of "arms" protected under the plain language of the Second Amendment. *See Heller*, 554 U.S. at 625 ("Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes"). Therefore, as with Plaintiff's challenge to the LEGR process, the Court can and should grant the motion to dismiss as to Plaintiff's challenge to the slungshot ban in reliance on the textual inquiry set forth in *Bruen*.

## III. Additional Expert Discovery on the Nation's Historical Tradition Will Be Necessary if the Court Concludes That the LEGR Law or Slungshot Ban Implicate the Plain Text of the Second Amendment

If the Court were to conclude that the text of the Second Amendment covers the LEGR law or the prohibition on slungshots, the Attorney General would still be able to defend its law by showing that it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. But this would require expert discovery directed at *Bruen*'s historical inquiry

as well as supplemental briefing discussing the results of that discovery.[5] The parties previously litigated—and the Court decided—this case under the now-defunct two-step approach. See ECF Nos. 84, 86, 88, 91. Therefore, it would serve the interests of the parties to allow them a full and fair opportunity to address the new approach required under *Bruen*.

In some cases, the historical inquiry will be "fairly straightforward," such as when a challenged law addresses a "general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. But in others—particularly those where the challenged laws address "unprecedented societal concerns or dramatic technological changes"—this historical analysis requires a "more nuanced approach." *Id.* at 2132. In particular, governments can justify regulations of that sort by "reasoning by analogy," a process that requires the government to show that its regulation is "'relevantly similar'" to a "well-established and representative historical analogue." *Id*. at 2133 (emphasis omitted). And while the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," it did identify "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* Under *Bruen*, a modern regulation is consistent with the Second Amendment if it "impose[s] a comparable burden on the right of armed self-defense" as its historical predecessors, and the modern and historical laws are "comparably justified." *Id.*; *see also id.* (modern-day regulation need not be a "dead ringer" for historical precursors or a "historical *twin*" to "pass constitutional muster").

To be clear, the Attorney General is not seeking open-ended discovery. Rather, limited expert discovery—focused on addressing the historical questions raised by *Bruen*—is warranted *only if* the Court determination that the challenged state laws implicate Plaintiffs' Second Amendment rights. The parties would be free to rely on the existing record to support their claims and defenses, to the extent that record remains relevant.

[5] If the Court prefers to decide this case with the benefit of briefing addressing on both the textual and historical inquiries, the additional expert discovery would be necessary to bring the historical analysis before the Court.

**CONCLUSION**

California's LEGR laws and slungshot prohibition do implicate the plain text of the Second Amendment because they do not limit the Plaintiffs' abilities to "keep" and "bear" "Arms." Therefore, even under the Supreme Court's *Bruen* analysis, the Court should grant the Attorney General's motion to dismiss the Fifth Amended Complaint.

To the extent the Court finds that the plain text of the Second Amendment covers the LEGR process or slungshot ban, the Court should permit the parties to meet and confer on a schedule to conduct expert discovery and at an appropriate time submit additional briefing regarding the historical questions and analysis required by *Bruen.*

Dated: September 30, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General

*/S/ ANTHONY P. O'BRIEN*
ANTHONY P. O'BRIEN
Deputy Attorney General
*Attorneys for Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of California*

SA2016102600
36600249.docx

# CERTIFICATE OF SERVICE

Case Name: **Cupp, James Edward v. Kamala D. Harris, et al.** No. **2:16-cv-00523-TLN-KJN**

I hereby certify that on September 30, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT BONTA'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE SEPTEMBER 15, 2022 COURT ORDER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 30, 2022, at Sacramento, California.

| Eileen A. Ennis | */s/ Eileen A. Ennis* |
|---|---|
| Declarant | Signature |

SA2016102600
36600491.docx