1  **Gary W. Gorski CBN: 166526**
   **Attorney at Law**
2  3017 Douglas Blvd., Suite 150
   Roseville, CA  95661
3  Cell: (775) 720-1000
   Fax: (916) 520-3930
4  CivilRightsAttorney@BlackWolfLaw.com
5

6  **Daniel M. Karalash (SBN 176422)**
   **STRATEGIC LAW COMMAND**
7  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
8  (916) 787-1234
   dan@stratlaw.org
9  www.stratlaw.com
   Attorneys for Plaintiffs JAMES EDWARD CUPP,
10 an individual; LAWRENCE "WOLF" HAVEN,
    an individual
11

12

13

14

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17

18  JAMES EDWARD CUPP, an individual;        CASE NO.: 2:16-CV-00523-TLN-KJN
    LAWRENCE "WOLF" HAVEN, an
19  individual
20                                           REQUEST FOR JUDICIAL NOTICE
              Plaintiff,
21
22        vs.

23
    KAMALA D. HARRIS, formerly Attorney
24  General of the State of California, in her
    official capacity only; XAVIER
25  BECERRA Attorney General of the State
    of California, in his official capacity; et al.
26
              Defendants.
27

28

                              1

**REQUEST FOR JUDICIAL NOTICE**

Plaintiffs' Request for Judicial Notice of the following EXCERPTS OF RECORD

attached hereto

Respectfully Submitted,

Date: September 30, 2022

Gary W. Gorski CBN: 166526
Attorney at Law
3017 Douglas Blvd., Suite 150
Roseville, CA  95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com

2

No. 21-16809

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

JAMES CUPP; LAWRENCE "WOLF" HAVEN,

*Plaintiffs-Appellants*,

v.

KAMALA HARRIS, ET AL

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Easter District of California
No. 16-cv-00523-TLN-KJN
Hon. Troy L. Nunley

_____

## EXCERPTS OF RECORD
Volume 1 of 1

_____

Gary W. Gorski (SBN 166526)
*VETERANS LAW CENTER*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(406) 266-1000 / (775) 720-1000 (cell)
CivilRightsAttorney@BlackWolfLaw.com
www.veteranslawcenter.com

Daniel M. Karalash (SBN 176422)
*STRATEGIC LAW COMMAND*
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234 / (916) 223-9884 (cell)
dan@stratlaw.org  / www.stratlaw.org
*Attorneys for Appellants*

# INDEX

Judgment
Docket No. 95 (filed October 1, 2021) ....................................................................3

Order
Docket No. 91 (filed September 28, 2021) ...............................................................4

Fifth Amended Complaint
Docket No. 83 (filed November 20, 2020) .............................................................15

Order Granting Defendants' Motion to Dismiss
Docket No. 79 (filed September 24, 2020) .............................................................47

Third Amended Complaint
Docket No. 65 (filed October 22, 2018) .................................................................61

Order Denying Plaintiffs' Motions for Preliminary Injunctions
Docket No. 63 (filed October 9, 2018) ...................................................................83

Order Granting Kamala D. Harris's Motion to Dismiss
Docket No. 61 (filed September 21, 2018) .............................................................85

Plaintiff Lawrence "Wolf" Haven's Motion and Declaration for Preliminary
Injunction
Docket No. 40 (filed April 3, 2018) .......................................................................95

Plaintiff Lawrence "Wolf" Haven's Motion and Declaration for Preliminary
Injunction
Docket No. 39 (filed April 2, 2018) .....................................................................127

Plaintiff James Edward Cupp's Motion and Declaration for Preliminary Injunction
Docket No. 35 (filed March 16, 2018) .................................................................161

Second Amended Complaint
Docket No. 12 (August 15, 2016) ........................................................................185

Notice of Appeal
Docket No. 96 (filed October 26, 2021) ...............................................................267

District Court Docket Sheet ................................................................................272

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

**JUDGMENT IN A CIVIL CASE**

**JAMES EDWARD CUPP, ET AL.,**

CASE NO: **2:16−CV−00523−TLN−KJN**

v.

**KAMALA HARRIS, ET AL.,**

---

**Decision by the Court.** This action came before the Court. The issues have been tried, heard or decided by the judge as follows:

IT IS ORDERED AND ADJUDGED

**THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER FILED ON 09/28/2021**

**Keith Holland**
Clerk of Court

ENTERED:  **October 1, 2021**

by: /s/ M. Krueger
Deputy Clerk

**ER-3**



1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    JAMES EDWARD CUPP, et al.,

12              Plaintiffs,                          No. 2:16-cv-00523-TLN-KJN

13

14        v.                                         **ORDER**

15    KAMALA HARRIS, et al.,

16              Defendants,

17

18          This matter is before the Court on two motions to dismiss.  The first is filed by Defendants

19    Kamala Harris and Xavier Becerra, in their capacities as former Attorneys General of the State of

20    California, and Rob Bonta, in his official capacity as Attorney General of the State of California

21    (collectively, the "Attorney General"[1]).  (ECF No. 84.)  The second is filed by Defendant Thomas

22    Lamb ("Officer Lamb").  (ECF No. 85.)  The Attorney General and Officer Lamb move to

23    dismiss Plaintiffs' Fifth Amended Complaint ("FAC").  (ECF No. 83.)  Plaintiff James Edward

24    Cupp ("Cupp") and Lawrence Haven ("Haven") (collectively, "Plaintiffs") filed oppositions to

25    _____

26    [1]     Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor is
      automatically substituted as a party" when a public officer "ceases to hold office while the action
27    is pending."  Fed. R. Civ. P. 25(d).  The Clerk of the Court is directed to update the docket as
      necessary.  Additionally, for ease of reading and consistency with the Court's prior orders, all
28    three Defendants will be collectively referred to in the singular as the "Attorney General" herein.

**ER-4**

1   both motions.  (ECF Nos. 86, 87.)  The Attorney General and Officer Lamb filed replies.  (ECF

2   Nos. 88, 89.)  For the reasons set forth below, the Court GRANTS both motions without leave to

3   amend.

4       **I.      FACTUAL AND PROCEDURAL BACKGROUND**

5           Plaintiffs initiated this lawsuit on March 11, 2016.  (ECF No. 1.)  Since then, Plaintiffs

6   have amended five times.  (*See* ECF Nos. 5, 12, 65, 80, 83.)  The Court has dismissed portions of

7   Plaintiffs' action five times.  (*See* ECF Nos. 58, 59, 60, 61, 79.)  Plaintiffs filed the operative FAC

8   on November 20, 2020.  (ECF No. 83.)  In response, the Attorney General and Officer Lamb filed

9   the instant motions to dismiss on December 4, 2020.  (ECF Nos. 84, 85.)

10          Plaintiffs' FAC is strikingly similar to the Third Amended Complaint ("TAC"), which the

11  Court previously dismissed in its entirety, as asserted against the Attorney General.  (ECF No.

12  79.)  The FAC asserts three claims.  (ECF No. 83.)  First, Plaintiffs allege the Attorney General's

13  enforcement of a statutory scheme pursuant to Cal. Pen. Code § 33855 that requires Plaintiffs to

14  complete California's Law Enforcement Gun Release ("LEGR") application and pay a fee of $20

15  for the first weapon and $3 for each thereafter, violates their Second Amendment right to bear

16  arms.  (*Id.* at ¶ 62.)  Second, Haven alleges the Attorney General violated his Second Amendment

17  rights when a Placer County Sheriff's Deputy arrested him for illegally possessing a "slungshot"[2]

18  pursuant to Cal. Pen. Code § 22210.  (*Id.* at ¶¶ 88, 94.)  Third, Cupp alleges Officer Lamb and

19  other officers of the Citrus Heights Police Department violated Cupp's Second Amendment rights

20  by arresting him for carrying a concealed knife pursuant to Cal. Pen. Code § 21310 and seizing

21  knives and firearms from Cupp's home.  (*Id.* at ¶¶ 114, 115.)

22  ///

23  ///

24  ///

25  ───────────────

26  [2]      According to Plaintiffs' FAC, a slungshot is "a maritime tool consisting of a weight, or
    'shot,' affixed to the end of a long cord."  (ECF No. 83 ¶ 86.)  Under California law, a slungshot

27  is "a small mass of metal or stone fixed on a flexible handle, strap or the like, used as a weapon."
    *People v. Fannin*, 91 Cal. App. 4th 1399, 1402 (2001) (citing *People v. Williams*, 100 Cal. App.

28  149, 151 (1929)).

**ER-5**

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

3

**ER-6**

1  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

2  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

3    Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

4  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

5  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

7  680. While the plausibility requirement is not akin to a probability requirement, it demands more

8  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility

9  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

10 experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or

11 her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

12 dismissed. *Id.* at 680 (internal quotations omitted).

13   In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

14 thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

15 *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

16 *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

17 *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

18 allegations that contradict matters properly subject to judicial notice).

19   If a complaint fails to state a plausible claim, "[a] district court should grant leave to

20 amend even if no request to amend the pleading was made, unless it determines that the pleading

21 could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

22 (9th Cir. 2000) (en banc); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009)

23 (finding no abuse of discretion in denying leave to amend when amendment would be futile).

24 Although a district court should freely give leave to amend when justice so requires under Rule

25 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has

26 previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713

27 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th

28 Cir. 2004)).

<center>4</center>

<center>**ER-7**</center>

1    **III.   ANALYSIS**

2    The Attorney General moves to dismiss Plaintiffs' first two claims for failure to state a

3    claim under Rule 12(b)(6). (ECF No. 84.) Officer Lamb argues qualified immunity bars Claim

4    Three. (ECF No. 85.) The Court will address each motion in turn.

5        A.   Claims Against the Attorney General

6    In their FAC, Plaintiffs challenge the constitutionality of the mandatory LEGR application

7    required for the return of their seized firearms and California's prohibition on possession of

8    slingshots. (ECF No. 83 ¶¶ 62, 88, 94.) The Court will evaluate each claim in turn.

9        *i.   Claim One: Constitutionality of the LEGR Process*

10   The Attorney General argues the LEGR process does not burden Plaintiffs' rights under

11   the Second Amendment, or, in the alternative, the LEGR process passes intermediate scrutiny.

12   (ECF No. 84-1 at 11–13.) In opposition, Plaintiffs argue LEGR is a burden on their Second

13   Amendment rights because it requires them to complete unnecessary applications and pay fees to

14   exercise their right to possess firearms. (ECF No. 86 at 6.) In reply, the Attorney General

15   contends Plaintiffs fail to allege any actual deprivation of their firearms beyond the payment of

16   the nominal LEGR administrative fee. (ECF No. 88 at 6.)

17   The Ninth Circuit has identified a two-step inquiry for determining whether a regulation

18   violates the Second Amendment. *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018). The court

19   first considers if the regulation "burdens conduct protected by the Second Amendment," and if it

20   does, the court "appl[ies] an appropriate level of scrutiny." *Id.* The appropriate level of scrutiny

21   "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2)

22   the severity of the law's burden on the right." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th

23   Cir. 2013) (internal quotation marks omitted). In evaluating the first question, longstanding

24   regulations remain presumptively lawful, meaning they are "presumed not to burden conduct

25   within the scope of the Second Amendment." *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir.

26   2011). Similarly, laws imposing conditions or qualifications, rather than prohibitions, on the

27   commercial sale of firearms are presumptively lawful. *See Pena*, 898 F.3d at 975 (quoting

28   *District of Columbia v. Heller¸* 554 U.S. 570, 626–27 & n.26). Plaintiffs have failed to allege

**ER-8**

1     new facts that would justify a departure from the Court's analysis when this issue was last raised.

2     (*See* ECF No. 79 at 12–14.) On the first question, the Court notes the burden of the LEGR

3     application is analogous to the firearm sale provisions burden in *Pena* because it imposes a

4     condition rather than a prohibition on the return of seized firearms. As a result, it may be that the

5     regulation is presumptively legal and therefore unnecessary for the Court to engage in the second

6     step of the analysis. *See Pena*, 898 F.3d at 976. The Court acknowledges, however, that the

7     presumption of legality outlined in *Heller* and *Pena* is not directly on point here because the

8     LEGR regulation is not a condition on the commercial *sale* of firearms. The Court therefore

9     assumes for the sake of argument that the LEGR imposes a burden on conduct protected by the

10     Second Amendment.

11        As to the appropriate level of scrutiny, the Ninth Circuit has applied only intermediate

12     scrutiny to laws that "regulate only the 'manner in which persons may exercise their Second

13     Amendment rights.'" *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 961 (9th Cir. 2014)

14     (emphasis omitted) (quoting *Chovan*, 735 F.3d at 1138). Intermediate scrutiny requires (1) a

15     significant, substantial, or important government objective and (2) a "reasonable fit" between the

16     challenged law and the asserted objective. *Id.* at 965. Here, the FAC acknowledges, as did the

17     TAC, that the LEGR application is used to determine eligibility to possess a firearm. (ECF No.

18     83 ¶ 53.) LEGR's objective, then, is one of public safety: keeping firearms out of the hands of

19     those who — under California law — are not eligible to possess them. Requiring completion of a

20     short form and the payment of a nominal processing fee is certainly a "reasonable fit" with this

21     important public safety objective. *See Wilson v. Lynch*, 835 F.3d 1083, 1097 (9th Cir. 2016)

22     (finding violent crime is an important government interest and preventing certain individuals

23     from acquiring firearms furthers this interest by preventing gun violence); *see also Heller*, 554

24     U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions

25     on the possession of firearms by felons and the mentally ill . . . .").

26        The only additional fact Plaintiffs allege in their FAC affecting this analysis is that the

27     Attorney General can perform the "eligibility check" without an application completed by

28     Plaintiffs. (ECF No. 83 ¶¶ 50, 57.) Assuming this is true, it does not address governments' long-

**ER-9**

1  recognized ability to impose fees relating to the exercise of constitutional rights when those fees
2  are designed to defray the administrative costs of regulating the protected activity. *See Kwong v.*
3  *Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013) (applying First Amendment "fee jurisprudence" in
4  the Second Amendment context and finding that a $340 licensing fee did not impose an
5  unconstitutional burden on the exercise of Second Amendment rights). California's ability to
6  determine whether Plaintiffs are eligible to own firearms under California law absent the LEGR
7  application does not undermine the "reasonable fit" between the administrative fee and the State's
8  interest in ensuring the firearms it releases are lawfully owned. *Jackson*, 746 F.3d at 961.
9  Because the fee is permissible under the general "fee jurisprudence" and because Plaintiffs fail to
10  sufficiently allege an unconstitutional burden, the Court finds Plaintiffs fail to state a claim under
11  Rule 12(b)(6).[3]  Accordingly, the Attorney General's motion to dismiss Claim One is
12  GRANTED.

13  　　　　　　　　　　　*ii.*　　　*Claim Two: Constitutionality of the Prohibition on Slungshots*

14  　　　　The Attorney General argues slungshots are not protected under the Second Amendment,
15  so the state prohibition on their possession does not burden Haven's Second Amendment rights.
16  (ECF No. 84-1 at 13–14.)  In opposition, Plaintiffs assert slungshots are protected under the
17  Second Amendment because they are not dangerous or unusual. (ECF No. 86 at 12 (citing
18  *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring)).)  In reply, the
19  Attorney General argues Plaintiffs' reliance on *Caetano* is misplaced because "*Caetano* did not
20  alter *Heller*'s clear pronouncement that the Second Amendment right is 'not a right to keep and
21  carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'"  (ECF No.
22  88 at 8 (citing *Heller*, 554 U.S. at 626).)

23  　　　　The parties agree that the Second Amendment does not protect weapons that are both
24  dangerous and unusual. (*See* ECF No. 84-1 at 13–14 (citing *Heller*, 554 U.S. at 627; *United*

25  ────────────
   [3]　　　Plaintiffs argue the Court should apply strict scrutiny because the LEGR application is
26  analogous to a procedural due process violation. (ECF No. 86 at 8–11.)  The Court declines to do
   so.  Strict scrutiny is not applied to procedural due process violations. *See Mathews v. Eldridge*,
27  424 U.S. 319, 334–35 (1976).  Further, Plaintiffs make no attempt to grapple with the well-
   established Second Amendment test in the 9th Circuit or explain why it should not be applied in
28  the instant action.

7

**ER-10**

1  *States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012)); ECF No. 86 at 12 (citing *Caetano*, 577 U.S.

2  at 417 (Alito, J., concurring)).) The parties disagree, however, about whether slungshots fall

3  outside the scope of Second Amendment protection. (*See* ECF No. 84-1 at 14; ECF No. 86 at

4  12.) California has long banned possession of slungshots for use as a weapon, as have other

5  states. *Fannin*, 91 Cal. App. 4th at 1402–03; *see Peruta v. Cnty. of San Diego*, 824 F.3d 919,

6  937–38 (9th Cir. 2016) (en banc) (citing *English v. State*, 35 Tex. 473 (1871); *State v. Workman*,

7  35 W.Va. 367 (1891)). Plaintiffs' conclusory assertions that the "slungshot has a long tradition

8  and history of use as an arm protected by the Second Amendment" (ECF No. 83 ¶ 87) and "the

9  slungshot is an arm in common use" (ECF No. 86 at 12) are insufficient to overcome the

10 longstanding prohibition on possession of the slungshot as a weapon. *See Adams*, 355 F.3d at

11 1183. Because Plaintiffs fail to plead *facts* tending to show the slungshot is protected by the

12 Second Amendment, the Court finds Plaintiffs fail to state a claim under Rule 12(b)(6).

13 Accordingly, the Attorney General's motion to dismiss Claim Two is GRANTED.

14      The Court indicated in its September 24, 2020 Order dismissing Plaintiffs' TAC that

15 Plaintiffs would have a *final* opportunity to amend. (ECF No. 79 at 14.) Plaintiffs have again

16 failed to adequately state claims. As such, the Court will not permit Plaintiffs a seventh attempt

17 at filing a viable complaint. Thus, the Attorney General's motion to dismiss Claims One and

18 Two is GRANTED without leave to amend.

19                    B.    Claim Against Officer Lamb

20      Officer Lamb moves to dismiss Claim Three of the FAC on the grounds that he is entitled

21 to qualified immunity. (ECF No. 85-1.) Specifically, Officer Lamb argues it was not clearly

22 established at the time of Cupp's arrest that Cupp had a Second Amendment right to carry a dirk

23 or dagger in the way he did. (*Id.* at 7–8.) In addition, Officer Lamb argues it was reasonable for

24 him to seize Cupp's weapons after Cupp's arrest because an emergency protective order

25 prohibited Cupp from possessing weapons. (*Id.* at 9–10.)[4] In opposition, Cupp asserts qualified

26 _____

27 [4]      Officer Lamb requests the Court take judicial notice of the emergency protective order
   granted by Judicial Officer Twiss of the Sacramento County Superior Court on March 25, 2014.
   (ECF No. 85-2.) The Court GRANTS Officer Lamb's request because this is a public record the
28 authenticity of which is undisputed. Fed. R. Evid. 201; *see School v. Rodrigues*, No. 2:20-cv-

                                    8

**ER-11**

1  immunity depends on how a factfinder weighs the officer's credibility and the competing

2  evidence regarding what happened on the night of the arrest. (ECF No. 87 at 4.) In reply, Officer

3  Lamb argues Cupp has failed to meet his burden to show the law regarding the constitutionality

4  of arrests for carrying knives outside the home or seizing weapons in response to a domestic

5  violence injunction was settled at the time of Cupp's arrest. (ECF No. 89 at 3–4.)[5]

6      Qualified immunity shields government officials performing discretionary functions from

7  liability for civil damages "insofar as their conduct does not violate clearly established statutory

8  or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth*,

9  472 U.S. 511, 517 (1985). Qualified immunity requires a two-prong test: (1) whether the facts

10  alleged show the defendants' conduct violated a constitutional right; and (2) whether the right

11  was clearly established at the time of the violation. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915

12  (9th Cir. 2012) (en banc). Both prongs must be answered in the affirmative and either may be

13  addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

14      The cornerstone of the qualified immunity analysis is reasonableness. *See Anderson v.*

15  *Creighton*, 483 U.S. 635, 638–39 (1987); *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th

16  Cir. 2011). With respect to the second prong, "[b]ecause the focus is on whether the officer had

17  fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the

18  law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "The dispositive

19  question is whether the violative nature of the *particular* conduct is clearly established.

20  [E]xisting precedent must have placed the . . . constitutional question beyond debate." *Isayeva v.*

21  *Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) (internal quotation marks and

22  citations omitted) (emphasis in original). The plaintiff bears the burden of proving the right

23  allegedly infringed was clearly established at the time of the conduct at issue. *Davis v. Scherer*,

24  468 U.S. 183, 197 (1984); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).

_____

25  00004-JAM-JDP (PS), 2021 WL 3883794, at *1 n.2 (E.D. Cal. Aug. 31, 2021) (report and

26  recommendation).

27  [5]    Officer Lamb also argues Cupp fails to state a claim under Rule 12(b)(6). (ECF No. 89 at
2.) Because Officer Lamb failed to raise this argument in his moving papers, the Court will not

28  consider it. *See Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990).

9

**ER-12**

1    Here, Cupp fails to carry his burden. The United States Supreme Court only recently

2    recognized an individual constitutional right to bear arms. *Compare Heller*, 554 U.S. at 595, *and*

3    *McDonald v. Chicago*, 561 U.S. 742, 767 (2010), *with United States v. Miller*, 307 U.S. 174, 178

4    (1939). Accordingly, the full scope of the right is still undefined. *See Young v. Hawaii*, 992 F.3d

5    765, 782 (9th Cir. 2021) (noting that *Heller* declined to explain how far the right extended and

6    federal courts conflict on the scope of the Second Amendment). A California appellate court has

7    upheld the statute under which Cupp was arrested against a Second Amendment challenge.

8    *People v. Mitchell*, 209 Cal. App. 4th 1364, 1375–79 (2012) (reviewing the constitutionality of

9    Cal. Pen. Code § 12020, later renumbered to § 21310 without substantive changes). In so doing,

10   the *Mitchell* court implicitly reasoned the right to bear arms encompasses the right to possess "a

11   sharp instrument for self-defense." *See id.* at 1374; *see also People v. Pickett*, No. B241373,

12   2013 WL 6072156 (Cal. Ct. App. Nov. 19, 2013). However, the *Mitchell* court held that right

13   does not extend to carrying concealed knives outside the home. *Mitchell*, 209 Cal. App. 4th at

14   1375–78. To the extent that Officer Lamb misapplied California law and erroneously arrested

15   Cupp, as Cupp alleges (ECF No. 83 ¶ 114), Cupp has provided no authority establishing a Second

16   Amendment right to openly carry a knife, or any weapon, outside the home. It is not clear to the

17   Court such a right has been clearly established, even seven years after Cupp's arrest. *Cf. Young*,

18   992 F.3d at 773 (holding the Second Amendment does not provide a right to openly carry

19   firearms in public).

20   Similarly, although the seizure of Cupp's firearms in response to the domestic violence

21   emergency protective order burdened his Second Amendment right to bear arms, *cf. Chovan*, 735

22   F.3d at 1137, he has not provided any authority that would show the seizure of weapons in

23   response to such an order was clearly unconstitutional at the time of the seizure. Rather, at the

24   time of Cupp's arrest, federal and state courts had upheld similar restrictions on possession of

25   firearms. *See id.*; *United States v. Mahin*, 668 F.3d 119, 123–24 (4th Cir. 2012) (collecting

26   cases); *Glaser v. Meserve*, No. B240385, 2013 WL 1460339, at *7 (Cal. Ct. App. April 11, 2013).

27   Cupp has failed to provide evidence of clearly established law holding Officer Lamb's conduct

28   unconstitutional, existing at the time of the arrest, and of which Officer Lamb should reasonably

1    have been aware. Therefore, Officer Lamb is entitled to qualified immunity from Cupp's claim.

2    Thus, Officer Lamb's motion to dismiss Claim Three is GRANTED without leave to amend.

3    **IV.    CONCLUSION**

4        For the foregoing reasons, the Court hereby GRANTS the Attorney General's and Officer

5    Lamb's motions to dismiss without leave to amend. (ECF Nos. 84, 85.) Plaintiffs' Fifth

6    Amended Complaint (ECF No. 83) as it is asserted against Defendants Rob Bonta, Kamala

7    Harris, Xavier Becerra, and Thomas Lamb is DISMISSED without leave to amend.

8        IT IS SO ORDERED.

9    Dated: September 27, 2021

10

11

12                                    Troy L. Nunley
                                      United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

**ER-14**

Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

## THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity only; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT<br><br>Defendants. | **Case No.** 16-CV-00523-TLN-KJN<br><br><br>**FIFTH AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND MONETARY DAMAGES (42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

**Plaintiffs aver as follows:**

### JURISDICTION AND VENUE

**- 1 -**

1. Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all DEFENDANTS reside in the State of California and Defendant HARRIS resides in this judicial district.

3. The state's conduct and law is inherently impermissible, regardless of any protected or remedial procedures. There is no distinction between personal liberties and property rights under 42 U.S.C. § 1983.

**THE PARTIES**

4. Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

5. CUPP has no criminal record.

6. His home is a Fifth Wheel, made by KZ, Escalade. Therefore, CUPP continuously travels through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

7. CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

8. As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

9. Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of County of Sacramento, California. He is a Veteran and Native-American, and as such belongs to a

**- 2 -**

1     class which consists of a long tradition of keeping and bearing arms.

2 10.   Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an

3     avid hunter and owner of firearms. Veterans and Native Americans have a long tradition of

4     carrying and using California banned and prohibited weapons, especially firearms.

5 11.   While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy

6     explosives and ordinances. The standard military side arm of the time was a .45 Caliber

7     Semi-Automatic pistol, the type which California confiscated without due process.

8 12.   This action therefore seeks to vindicate the right of the people of the State of California,

9     including Plaintiffs, and others similarly situated, to keep and bear arms under the Second

10     Amendment, as incorporated to the states, which prohibits infringement of a core right to

11     keep and use commonly-possessed firearms for lawful purposes, including self-defense.

12 13.   Defendant KAMALA D. HARRIS was formerly Attorney General of the State of California,

13     in her official capacity and Defendant XAVIER BECERRA was HARRIS' elected successor

14     in interest as Attorney General of the State of California whereby the California Constitution

15     Article V, section 13 grants the Attorney General a supervisory role over "every district

16     attorney and sheriff and over such other law enforcement officers as may be designated by

17     law." Defendant KAMALA D. HARRIS and Defendant XAVIER BECERRA are hereby

18     "Defendant" for the purposes of this pleading.

19 14.   Article V, section 13 is fleshed out in several California statutes which grants full authority

20     and power to the Attorney General with direct supervisory power over sheriffs and police

21     chiefs, including the power to require written applications and fees regarding firearms.

22 15.   Defendant is the State of California Attorney General, and is the chief law enforcement

23     officer of the State whereby all other named Defendants report to him.

24 16.   Defendant is the State of California Attorney General, and as such is responsible for

25     promulgation of the standardized Law Enforcement Release Application, Penal Code Section

26     33850, application and implementing specific criteria for the applicant to respond. (Attached

27     hereto as **Exhibit "A"** is a true and correct copy of 2015 Law Enforcement Release

28     Application.) (Attached hereto as **Exhibit "B"** is a true and correct copy of 2020 Law

<div align="center">- 3 -</div>

Enforcement Release Application.)

17. Defendant XAVIER BECERRA is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California complained of in this action.

18. Defendant is an agent, servant, and/or employee of the State of California, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

19. Defendant is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report, and is therefore sued in official capacity.

20. Defendant Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

21. Defendant Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

22. Defendant UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

23. Defendant UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

- 4 -

24.  Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS
POLICE DEPARTMENT have not been located, but they will be added to this complaint
upon uncovering their names through discovery.

**FIRST CLAIM FOR RELIEF (previously SECOND):**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant BECERRA, formerly HARRIS only)
(California Penal Code §§ 33850, 33855, 33860, 33865, 33880, Unconstitutional Statute - LEGR)
(Injunctive and Declaratory Relief Only for Return of Firearms and Enjoining Enforcement)

25.  Plaintiffs incorporate the above allegations as if set forth fully here.

26.  At all times, Plaintiffs legally possessed and owned handguns and long-rifles, ammunition,
and magazines which were legally purchased and owned by Plaintiffs.

27.  At the direction of Defendant, Plaintiffs had their firearms confiscated by law enforcement in
perpetuity unless each plaintiff paid fees and surcharges, along with completing an
application called the Law Enforcement Release Application. (Attached hereto as **Exhibit
"A"** is a true and correct copy of 2015 Law Enforcement Release Application.) (Attached
hereto as **Exhibit "B"** is a true and correct copy of 2020 Law Enforcement Release
Application.)

28.  This application is separate and distinct from a property receipt in criminal or civil
proceeding in that Plaintiffs have to sign a document under the penalty of perjury in violation
of the right to remain silent, pay a fee and surcharge, and submit to additional background
checks that were performed at the time of arrest and confiscation.

29.  The Second Amendment to the United States Constitution declares that "the right of the
people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

30.  The United States Supreme Court has concluded that "[s]elf-defense is a basic right,
recognized by many legal systems from ancient times to the present day, and . . . individual
self-defense is 'the central component' of the Second Amendment right." *McDonald v. City
of Chicago*, 561 U.S. 742, 767 (2010) (quoting Heller, 554 U.S. at 628).

31.  The Second Amendment is a right which requires the possession of an "arm" for personal
self defense.

**- 5 -**

**Fifth Amended Complaint**  **ER-19**

32. The unlawful seizure of "arms" is also a seizure of rights, not just property.

33. The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens" for lawful purposes.

34. Plaintiffs requested a return of their arms from local law enforcement, and local law enforcement advised Plaintiffs that they have to pay a fee, fill out an application, and fill out a gun registration form with Defendant's agency to get their arms returned, and this happens when it is unknown if a criminal complaint is even going to be filed.

35. To confiscate arms without any process, Defendant employs a statutory scheme based upon the following California Penal Code provisions:

    a. Cal. Penal Code § 33850(a) "Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned **shall make application** for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm."

    b. § 33855. Requirements for return A **law enforcement agency** or court that has taken custody of any firearm, ammunition feeding device, or ammunition shall not return the firearm, ammunition feeding device, or ammunition to any individual unless all of the following requirements are satisfied: (a) The individual presents to the agency or court notification of a determination by the department pursuant to Section 33865 that the person is eligible to possess a firearm, ammunition feeding device, or ammunition. (b) If the seized property is a firearm and the agency or court has direct access to the Automated Firearms System, the agency or court has verified that the firearm is not listed as stolen pursuant to Section 11108.2, and that the firearm has been recorded in the Automated Firearms System in the name of the individual who seeks its return. © If the firearm has been reported lost or stolen pursuant to Section 11108.2, a law enforcement agency shall notify the owner or person entitled to possession pursuant to Section 11108.5. However, that person shall provide proof of eligibility to possess a firearm pursuant to Section 33865.

    c. This section does not prevent the local law enforcement agency from **charging the rightful owner** or person entitled to possession of the firearm the **fees** described in Section 33880. However, an individual who is applying for a background check to retrieve a firearm that came into the custody or control of a court or law enforcement agency pursuant to Section 33850 shall be exempt from the fees in Section 33860, provided that the court or agency determines the firearm was reported stolen to a law enforcement agency prior to the date the firearm came into custody or control of the court or law enforcement agency, or within five business days of the firearm being stolen from its owner. The court or agency shall notify the Department of Justice of this fee exemption in a manner prescribed by the department.

    d. Cal. Penal Code § 33860. **Fee per request** (a) "The Department of Justice shall establish a fee of twenty dollars ($20) per request for return of a firearm, ammunition feeding device, or any quantity of ammunition plus a three-dollar ($3) charge for each additional firearm being processed as part of the request to return a firearm, to cover its reasonable costs for processing applications submitted pursuant to this chapter."

e.      Cal. Penal Code § 33880. **Fee for seizure**, impounding, storage, or release of firearm, ammunition feeding device, or ammunition.

36.     Over time, Defendant expands the scope of seized arms to include ammunition and magazines. (Compare **Exhibit "A"** with **Exhibit "B".**)

*CUPP*

37.     On or around March 25, 2014, police officers of the City of Citrus Heights (i.e. Citrus Heights Police Officer (Report Number CH14-02589 on or about 03/26/2014) falsely arrested CUPP, under color of law, without probable cause, issued him a temporary restraining order, searched his residence without a warrant, which was 8-9 miles away from location of his arrest and without a warrant seized six (6) firearms legally owned by CUPP, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person. These arms were all purchased prior to January 1, 2014.

38.     CUPP was charged with California Penal Code § 21310, carrying a concealed knife which was not concealed.

39.     At all times, Citrus Heights Police Officers had time to obtain a warrant, and there was no exigent circumstance.

40.     Without any form of due process, CUPP was falsely arrested by officers of the Citrus Heights Police Department, whereby he was handcuffed and booked in the Sacramento County Jail, thus having to post bail, utilizing a bail bondsman, costing him damages, and none of his property, including arms, were not returned to him.

41.     On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides. "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

42.     On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of ALL property to CUPP

**- 7 -**

1    illegally seized.

2    43.   Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related

3          tools and equipment.

4    44.   The remaining arms in custody of the Citrus Heights Police Department awaiting clearance

5          from Defendant.

6          ***HAVEN***

7    45.   On February 14, 2016, a Sacramento Deputy Sheriff, acting color of law and the authority,

8          and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

9    46.   HAVEN was not present to give a consent and was unaware of the entry of the Sacramento

10         Deputy Sheriff.

11   47.   Without a warrant, the Sacramento Deputy Sheriff seized the property of HAVEN consisting

12         of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-

13         automatic 1911. These arms were all purchased prior to January 1, 2014.

14   48.   No criminal charges were ever filed, and the government never returned HAVEN's three

15         firearms and ammunition and magazines because he refused to pay a fee and sign a document

16         granting a firearms check to see if he is "eligible" to own a firearm.

17   49.   Prior to January 31, 2018, Defendant had actual knowledge of this action, and that Plaintiffs

18         had committed no crimes.

19   50.   Defendant has the ability to simple run a computer name and firearm clearance check and

20         simply order the local law enforcement to release the arms.

21   51.   When CUPP and HAVEN asked for the return of their arms from the seizing agencies, they

22         stated that they cannot return any arms unless given permission by the Attorney General's

23         office.

24   52.   Plaintiffs were both informed that only the Attorney General of California has the authority

25         to order the release of firearms when confiscated by law enforcement in California.

26   53.   Defendant's Law Enforcement Release process requires any person who was never charged

27         with a crime, or who had a criminal complaint dismissed *in toto*, and who claims title to any

28         firearm, ammunition or ammunition feeding device that is in the custody or control of a court

- 8 -

1    or law enforcement agency and who wishes to have the aforementioned items returned, to

2    submit a LER Application form (**Exhibit "B"**) to the State Attorney General, California

3    Department of Justice (the Defendant) to determine eligibility to possess a firearm,

4    ammunition and/or ammunition feeding device. (See California Penal Code section 33850)

5    54.   This release applies to any situation whereby guns and ammo are seized by law enforcement,

6          even if the no charges are filed against the citizen or the criminal case is dismissed because

7          of an erroneous arrest.

8    55.   The only way individuals seeking the return of a firearm, ammunition and/or ammunition

9          feeding device that is in the custody or control of a court or law enforcement agency must

10         submit a LER Application along with the **appropriate fees** to the Defendant Attorney

11         General, whose department processes the application and then grants a clearance to the local

12         law enforcement agency to release the arms.

13   56.   Additionally, if an individual is seeking the return of a long gun purchased prior to **January**

14         **1, 2014** which has not been subsequently recorded in their name by either a self reporting

15         application, or registered as an assault weapon or .50 BMG rifle, is mandated to submit a

16         Firearms **Ownership Report application (BOF 4542A),** along with the designated fees.

17   57.   Even though an "eligibility check" is done at the time the firearms are confiscated,

18         Defendant mandates additional "eligibility checks" with a mandated fee to be paid, even if

19         the arms are confiscated illegally by law enforcement or the citizen is innocent of

20         circumstances giving rise to the gun confiscation.

21   58.   Plaintiffs are lawfully eligible to possess firearms, ammunition and/or ammunition feeding

22         devices, the Defendant is well aware of this, and refuses to return all arms.

23   59.   After the illegal seizure of the firearms, California mandates the payment of a fee for the

24         return of Plaintiffs' right to keep and bear arms.

25   60.   Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s)

26         that is in the custody or control of a court or law enforcement agency must submit a LEGR

27         Application along with a payment of money to the XAVIER BECERRA.

28   61.   Additionally, if an individual is seeking the return of a long gun purchased prior to January 1,

- 9 -

1    2014, a Firearms Ownership Report application (BOF 4542A), is required to be submitted

2    along with the a fees to XAVIER BECERRA.

3  62.  In violation of the Second Amendment, XAVIER BECERRA enforces a statutory scheme

4    pursuant to Penal Code Section Penal Code Section 33850 (application for return of firearm),

5    33855 (authority of law enforcement to enforce), 33860, 33880 (fee), requiring Plaintiffs to:

6    1) fill out and sign **Exhibits "A" and "B"**, and any future iteration, under the penalty of

7    perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS

8    Law Enforcement Gun Release Application" during the statute of limitations for a criminal

9    proceeding to be instituted, and 2) pay a processing fee of $20.00 for the first firearm (long

10   gun or handgun), and $3.00 for each additional gun, and 3) pay a storage fee.

11  63.  Both Plaintiffs have had their firearms seized from their residences, without a warrant,

12    without being charged, tried or convicted of a crime.

13  64.  The firearms illegally seized were never returned to Plaintiffs.

14  65.  By failing to immediately return Plaintiffs firearms once it was determined that no crime had

15    been committed, XAVIER BECERRA has deprived Plaintiffs of their ability to exercise their

16    Second Amendment rights by taking the very instruments necessary for exercising such a

17    right, akin to confiscating a paper and pen preventing the free exercise of speech.

18  66.  Plaintiffs seek a positive injunction for XAVIER BECERRA to release and return all

19    firearms and ammunition illegally confiscated, and be enjoined from further enforcement of

20    the challenged codes as those sections were applied to Plaintiffs and others similarly situated.

21  67.  Plaintiffs have standing because they have demonstrated a direct injury of having to undergo

22    eligibility checks for the return of arms, pay a fee for each firearm, and beyond that, by being

23    placed at the mercy of paying a fee and filling out a form which is a *per se* Fifth Amendment

24    violation be eliciting a statement when there is a right to remain silent on the subject of the

25    arrest itself.

26  68.  But for the confiscation of their arms, Plaintiffs would exercise their constitutionally

27    guaranteed right to self-defense both inside and outside of home.

28  69.  Plaintiffs are being subjected to unconstitutionally been prevented from doing so because of

1    the code sections challenged and complained of herein, and because of Defendant's
2    unconstitutional application and enforcement of those same sections.

3    70.   Defendants, under color of state law, entered the homes of Plaintiffs and confiscated their
4          arms, in violation of the Second Amendment. Plaintiffs lawfully owned firearms at the time
5          they were seized by the government.

6    71.   Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28
7          U.S.C. § 1343.

8    72.   Plaintiffs, and those similarly situated, have no means of recovering their firearms except by
9          way of court order, or compliance with the statutory scheme including the payment of
10         money.

11   73.   Plaintiffs' firearms were illegally seized, and therefore, they were deprived of their Second
12         Amendment rights at the moment of seizure since all arms were seized.

13   74.   This is an actual injury to a legally protected interest, fairly traceable to the state statutes and
14         it is likely that this injury will be redressed by a favorable decision with a prohibition of
15         enforcing such payments, fees, and detailed information regarding the acquisition of arms
16         legally possessed and owned by Plaintiffs, and those similarly situated.

17   75.   Defendant's enforcement of the provisions of the "Return or Transfer of Firearm in Custody
18         or Control of Court or Law Enforcement Agency", Penal Code §§ 33850 — 33895 violates
19         the Second Amendment.

20   76.   But for this enforcement, Plaintiffs would forthwith retrieve such arms to exercise their
21         rights.

22   77.   Unless enjoined, Defendant will continue to violate the Second Amendment Rights of
23         Plaintiffs and others similarly situated.

24   78.   There is no mechanism for situations of false or frivolous arrests, and return of arms, without
25         the payment of money; even when the confiscation was illegal *per se.*

26   79.   Defendant is named only for purposes of injunctive and declaratory relief only.

27   80.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

28                          **SECOND CLAIM FOR RELIEF (previously NINTH)**

                                            **- 11 -**

                                    **Fifth Amended Complaint**

**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiff HAVEN and Defendant BECERRA, formerly HARRIS)
( California Penal Code § 22210 (see also § 16590(m)) - as-written and as-applied challenge)
(Declaratory and Injunctive Relief)

81. Plaintiffs incorporate the above allegations as if set forth fully here.

82. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes, including anything which resembles a "slungshot".

83. Plaintiff HAVEN was falsely arrested for violation of California Penal Code § 22210 (see also § 16590(m)) because his motorcycle had an ornamental horse lead hanging from his handlebars, which the statute describes as a "slungshot", which is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170.

84. California Penal Code § 16590(m) likewise references "slungshot" as prohibited by Section 22210.

85. Defendant's enforcement of §§ 16590(m) and 22210 interferes with the right to possess non-lethal weapons for purposes of self defense.

86. A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States. It was a simple weapon, which itself had been modified to become a slingshot. In sum, it was an "arm" used prior to the invention of gunpowder.

87. The slungshot has a long tradition and history of use as an arm protected by the Second Amendment.

88. On February 8, 2016, deputies from the Placer County Sheriff's Department stopped HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse." (Attached hereto as **Exhibit "C"** is red and black duplicate of the "illegal weapon" HAVEN had hanging off his motorcycle handlebar)

89. HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

**- 12 -**

---

**Fifth Amended Complaint**

90. Deputies arrested HAVEN for the illegal possession of a slungshot in violation of P.C. 22210.

91. A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

92. Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

93. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210. Defendant HAVEN was arraigned on the charges.

94. The law is clearly established that the Second Amendment protects all "arms", including "slungshots", and is not just applicable to firearms.

95. Plaintiff seeks injunctive and declaratory relief prohibiting further arrest, and enjoining the state from enforcing the law.

96. Plaintiff HAVEN fears additional arrests and prosecution for hanging what is depicted in **Exhibit "C"**, a lead identified by the State as a "slungshot".

97. Plaintiff HAVEN exercises his right to possess the arm identified in California Penal Code §§ 16590(m) and 22210, but is in fear of further arrest and prosecution because he cannot afford impoundment fees and weapons convictions that would prohibit him from owning a firearm.

98. Although the prosecution was dropped, Defendant continues to allow law enforcement arrest and charge citizens for violation of California Penal Code § 16590(m) and § 22210, and is still enforced because no corrective measures had been taken to insure that similar arrests and prosecutions would not occur.

99. In fact, similar arrests and prosecutions currently occur and will occur in the future.

100. Typically, citizens are charged with a crime, the slungshot is confiscated, the charges are dropped if the slungshot is allowed to be destroyed.

101. HAVEN will continue to engage in the conduct which led to his arrest and prosecution

1    earlier, in support of his Second Amendment right to bear "arms".

2    102.   Viewed in the context of previous arrests, current arrests, and the future promise of arrests,

3         make reasonable his fear of future arrest, or threat of arrest, and prosecution.

4    103.   In order for the charges to be dropped, HAVEN had to have his so called "slungshot"

5         destroyed by the government.

6    104.   This is an actual injury to a legally protected interest, fairly traceable to the state statutes and

7         it is likely that this injury will be redressed by a favorable decision with a prohibition of

8         enforcing such law.

9    105.   But for the confiscation of his arms, Plaintiff would exercise his constitutionally guaranteed

10        right to self-defense both inside and outside of home by carrying the arm in plain view on his

11        motorcycle.

12   106.   Plaintiff's burden of establishing irreparable injury in the absence of an injunction is neither

13        remote nor speculative, but actual and imminent and cannot be remedied by an award of

14        monetary damages alone as in order to exercise a right, the necessary tools must be returned

15        to exercise such a right.

16   107.   Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

17   108.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

18   109.   Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

19                          **THIRD CLAIM FOR RELIEF:**
                              **Second Amendment**
20      (Plaintiff CUPP; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights
     Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with
21   Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report
                              Number CH14-02589  only)
22               (Open Carry of Knives and Seizure of Firearms)
                     (Declaratory, Injunctive and Monetary relief)
23
24   110.   Plaintiffs incorporate the above allegations as if set forth fully here.

25   111.   California law permits the open carry of knives.

26   112.   Knives are protected arms under the Second Amendment.

27   113.   At all times, the law was well established as to the Second Amendment.

28   114.   CUPP was charged with PC 21310, carrying a concealed knife which was not concealed.

                                    **- 14 -**

                          ───────────────────────────────

                          **Fifth Amended Complaint**                    **ER-28**

115. On or around March 25, 2014, employees of the City of Citrus Heights Police Department (i.e. Defendants Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested CUPP, without probable cause for a concealed weapon; thereafter, issued him a temporary restraining order, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

116. CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

117. On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides. "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

118. On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP for all property illegally seized.

119. Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

120. At all times, Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

121. To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, $1,000.

122. CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

123. Plaintiff seeks monetary relief for being deprived of his Second Amendment right in that his property seized are protected arms under the Second Amendment.

124. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

125. Plaintiff has been damaged according to proof.

126. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant, and pray for relief as follows:

1. A preliminary injunction under rule 65 of the Federal Rules of Civil Procedure enjoining Defendant XAVIER BECERRA (formerly Kamala D. Harris) Attorney General of the State of California from enforcing California Penal Code §§ 33850, 33855, 33860, 33865, 33880, and permutations thereof, including **Exhibits "A" and "B"**.

2. A preliminary injunction under rule 65 of the Federal Rules of Civil Procedure enjoining Defendant XAVIER BECERRA (formerly Kamala D. Harris) Attorney General of the State of California from enforcing provisions of California Penal Code §§ 16590(m) and 22210 ("slungshot"), including, but not limited to, what is depicted in **Exhibit "C"**.

3. For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that California Penal Code §§ 33850, 33855, 33860, 33865, 33880 are unconstitutional and violate the Second Amendment as-written and as-applied to Plaintiffs;

4. For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that California Penal Code §§ 16590(m) and 22210 ("slungshot") are unconstitutional and violate the Second Amendment as-written and as-applied;

5. An injunction prohibiting Defendant from employing a statutory scheme, similar to that embodied in California Penal Code §§ 33850, 33855, 33860, 33865, 33880.

6. For declaratory judgment and injunctive relief, pursuant to 28 U.S.C. §§ 1983 and 2201,

- 16 -

1     Defendant be enjoined from enforcing California Penal Code §§ 16590(m) and 22210

2     ("slungshot") in its entirety, or, alternatively, to the extent such can be segregated from the

3     rest of the statute, any provision that prohibits the acquiring, using, or possessing of arms that

4     are in common use by the American public for lawful purposes, including a slungshot;

5  7.    For declaratory judgment and injunctive relief, pursuant to 28 U.S.C. §§ 1983 and 2201,

6     Defendant be enjoined from enforcing California Penal Code §§ 16590(m) and 22210

7     ("slungshot") as to that which is depicted in **Exhibit "C"**, in its entirety, or, alternatively, all

8     such ropes with a heavy metal end attached.

9  8.    Enter a declaratory judgment under 28 U.S.C. §§ 1983 and 2201 that California Penal Code

10     §§ 33850, 33855, 33860, 33865, 33880 is unconstitutional on its face or, alternatively, to the

11     extent its prohibitions apply to law-abiding adults who have had their right to acquire, use, or

12     possess firearms and magazines that are in common use by the American public for lawful

13     purposes, because such unlawfully infringes on the right of the People to keep and bear arms

14     in violation of the Second and Fourteenth Amendments to the United States Constitution,

15     unconstitutionally takes property without compensation in violation of the Takings Clause,

16     and arbitrarily deprives Plaintiffs of protected property interests under the Due Process

17     Clause.

18  9.    For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that California

19     Penal Code sections seizure of arms, magazines, ammunition and parts legal to posses and

20     own are included in the protection of "arms" under the Second Amendment.

21  10.   For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that the Law

22     Enforcement Release Application. (Attached hereto as **Exhibits "A" and "B"**, and any

23     further permutations) shall not be applied to any person who has not been charged with a

24     crime, or who has been arrested without a formal criminal complaint being filed, or has been

25     arrested and a criminal complaint filed, but later dismissed.

26  11.   For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that Defendant

27     cannot exact a fee, charge, or tax on the DROS Entry System, Automated Firearms System,

28     or any other database as a condition to return arms after confiscated by law enforcement

- 17 -

**Fifth Amended Complaint**

1    without an arrest or criminal complaint being filed after arrest, or filed, but later dismissed.

2  12.    For injunctive relief, consistent with declaratory relief sought herein, enjoining Defendant,

3    and their officers, agents and employees, from enforcing any of the provisions of California

4    Penal Code §§ 16590(m) and 22210 ("slungshot"), including, but not limited to, what is

5    depicted in **Exhibit "C"**.

6  13.    For declaratory judgment and relief, pursuant to 28 U.S.C. §§ 1983 and 2201, that all arms

7    confiscated by local law enforcement be returned without the payment of a fee or application,

8    other than the typical return of property receipt.

9  14.    Award remedies available under 42 U.S.C. § 1983 (including monetary damages under the

10    Third Cause of Action only) and all reasonable attorneys' fees, costs, and expenses under 42

11    U.S.C. § 1988, or any other applicable law; and

12  15.    As to the Third Cause of Action only, for all remedies available pursuant to 42 U.S.C. §

13    1983, including special and compensatory damages, and damages resulting from the mere

14    violation of CUPP's Second Amendment rights, and for an award of reasonable attorneys'

15    fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

16  16.    An order mandating that Defendants named in the Third Cause of Action turn over all

17    firearms and their accessories which were illegally seized by Defendants.

18  17.    As to the Third Cause of Action only, damages CUPP suffered for deprivation of his Second

19    Amendment rights, deprivation of arms, and privileges, and such other relief as this Court

20    deems just and equitable, including general and specific damages.

21

22    Dated: November 20, 2020    THE LAW OFFICES OF GARY W. GORSKI
23                         Respectfully Submitted,

24                         /s/ Gary W. Gorski
                         Gary W. Gorski
25                         Attorney for Plaintiffs

26

27

28

**Exhibit "A."**




# CALIFORNIA DEPARTMENT OF JUSTICE
## BUREAU OF FIREARMS
# Law Enforcement Gun Release Application

*Penal Code Section 33850*

*This form is to be used only by the owner of a firearm which is in the custody or control of a law enforcement agency or court to redeem the firearm. It only establishes the applicant's eligibility to lawfully possess firearms at the time the application is processed. It cannot be used to transfer a firearm, or to prove ownership of a firearm.*

*(Instructions and processing fee information on reverse.)*

## A. Owner Information

| Last Name: | First Name: | Middle Name: |
|---|---|---|

| Alias Last Name (if any): | Alias First Name: | Alias Middle Name: |
|---|---|---|

| Residence Street Address: | City: | State: | Zip Code: |
|---|---|---|---|

| Mailing Address (if different): | City: | State: | Zip Code: |
|---|---|---|---|

| Date of Birth (mm/dd/yyyy): | Place of Birth (state or country): | Sex: | Phone No. (include area code): |
|---|---|---|---|

U.S. Citizen? ○ Yes ○ No   If no, enter Alien Registration No. or I-94 No.:   Country of Citizenship:

Enter your California driver license (CDL), California ID (CID), Military ID (MIL), or Out-of-State ID (OSID) number in the ID number box to the right. If using military identification you <u>must</u> send a copy of your permanent duty station orders stating you are stationed in California. If using an out-of-state driver's license or identification number you must send a notarized copy of your driver's license or identification card.

ID Type (check one): CDL ☐ MIL ☐ CID ☐ OSID ☐   ID Number:

## B. Firearm(s) Information (To report additional firearm(s) copy and attach additional applications)

| Firearm Type: ○ Handgun ○ Rifle ○ Shotgun | Category: (select from list on page 2) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ○ IN. ○ CM. |

| Firearm Type: ○ Handgun ○ Rifle ○ Shotgun | Category: (select from list on page 2) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ○ IN. ○ CM. |

| Firearm Type: ○ Handgun ○ Rifle ○ Shotgun | Category: (select from list on page 2) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ○ IN. ○ CM. |

## C. Agency Information

Name of Law Enforcement Agency or Court in Possession of the Firearm(s):

| Address: | City: | Zip Code: | Case Number: |
|---|---|---|---|

## D. Declaration

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am the lawful owner of all firearms that I seek to have returned. I expressly authorize the Department of Justice to perform firearms eligibility checks of all relevant state and federal databases, including the Federal Bureau of Investigation's National Instant Criminal Background Check System. I also understand that if I currently possess or own firearms and the results of this check reveal that I am ineligible either to lawfully possess or purchase firearms, I must relinquish any and all firearms in my possession.

Signature _____   Date _____

### DOJ USE ONLY

☐ AFS REFLECTS APPLICANT AS OWNER.   ☐ UNABLE TO VERIFY OWNERSHIP OF FIREARMS VIA AFS. COURT OR LEA MUST CONFIRM.

| Date Received: | Date Paid: | Date Processed: | Processed By: | NTN#: |
|---|---|---|---|---|

**ER-34**




# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# Law Enforcement Gun Release Application

## Proper Use of the Law Enforcement Gun Release Application

This form is **only** to be used by the **owner** of the firearm who is seeking to redeem his/her firearm in the custody or control of a law enforcement agency or court. **The applicant must already have a record on file in the California Department of Justice (the Department) Automated Firearms System (AFS) reflecting that he or she is the lawful owner or possessor of the firearm.** It is the responsibility of the court or law enforcement agency with custody or control of the firearm to verify that the applicant is the lawful owner or possessor of the firearm.

## Application Submission Requirements

Individuals seeking the return of a firearm that is in the custody or control of a law enforcement agency or court must submit a complete application **with the appropriate fees** to the Department. A firearms eligibility check will be conducted to determine whether the person is eligible to possess firearms under state and federal law. A notice of results will be sent to the applicant via U.S. Mail. Incomplete applications will be returned without processing. If reporting more than three firearms, make extra copies of this form to meet your reporting needs. **Once issued, a determination notice is only valid for 30 days.** Be advised that any unclaimed firearm may be disposed of by a law enforcement agency or court 180 days after the owner has been notified that the firearm is available for return.

## Fee Submission Requirements

The processing fee for a Law Enforcement Gun Release is $20.00 for the first firearm, and $3.00 for each additional firearm. If the law enforcement agency agency or court determines the firearm was reported stolen pursuant to Penal Code section 33855, subdivision (d), the fees for the stolen firearm(s) will be waived. **Applicants must provide documentation from the law enforcement agency or court with this application to qualify for the waiver of fees.** The Department will process your application within 30 days from the date of receipt unless delayed by circumstances beyond the control of the Department.

*Submit completed application and fees to:*
**Department of Justice**
**Bureau of Firearms - LEGR**
**P.O. Box 820200**
**Sacramento, CA 94203-0200**

## Part A. Owner Information

Enter the information as requested. If you are using a military number for identification, you must submit a copy of your permanent duty station orders indicating you are stationed in California.

## Part B. Firearm Information

For each firearm, you must provide the identification information requested. Please refer to your firearm owner's manual, the firearms manufacturer's website, or the examples below to assist you in providing the required information:

- Firearm Type: Handgun, Rifle, or Shotgun

- Category: Bolt Action, Lever Action, Pump Action, Revolver, Semi-Automatic, or Single Shot

- Serial Number: Usually located on the frame of a handgun, or the receiver of a long gun. May be all numeric or a combination of alpha and numeric characters. (e.g., 98765, US54321G)

- Make: The manufacturer of the firearm. (e.g., Remington, Winchester, Glock, Smith & Wesson)

- Model: The model name of the firearm. (e.g., 870 Express, Model 70, 17C, 29-10)

- Caliber: The caliber of the firearm. (e.g., 12 gauge, .308 Winchester, 9 mm, .44 Magnum)

- Firearm Origin: The country of origin of the firearm. (e.g., United States, Russia, China, Italy)

- Barrel Length: Enter the barrel length as stated either in your owner's manual, manufacturer's website, or measure the barrel length by closing the action of the firearm and inserting a wooden dowel down the barrel until it stops. Mark the dowel with a pen at the muzzle. Remove the dowel and measure the distance between the inserted end of the dowel and the pen mark.

## Part C. Agency Information

Enter the name and address of the law enforcement agency or court in possession of the firearm(s).

## Part D. Declaration

You must sign and date the declaration on this application. For questions, refer to the Bureau of Firearms website: www.oag.ca.gov/firearms/

**ER-35**



**CALIFORNIA DEPARTMENT OF JUSTICE**
**BUREAU OF FIREARMS**
**Law Enforcement Gun Release Application**



## Privacy Notice

As Required by Civil Code § 1798.17

**Collection and Use of Personal Information.** The Bureau of Firearms in the Department of Justice collects the information requested on this form as authorized by Penal Code Section 33850. The Bureau of Firearms uses this information to process an application for the release of a firearm. In addition, any personal information collected by state agencies is subject to the limitations in the Information Practices Act and state policy. The Department of Justice's general privacy policy is available at **http://oag.ca.gov/privacy-policy**.

**Providing Personal Information.** All the personal information requested in the form must be provided. This form will not be processed for failure to provide all personal information requested.

**Access to Your Information.** You may review the records maintained by the Bureau of Firearms in the Department of Justice that contain your personal information, as permitted by the Information Practices Act. See below for contact information.

**Possible Disclosure of Personal Information.** In order to process an application for the release of a firearm, we may need to share the information you give us with any peace officer or other person designated by the Attorney General upon request.

The information you provide may also be disclosed in the following circumstances:

- In response to a Public Records Act request, as allowed by the Information Practices Act;

- To another government agency as required by state or federal law;

- In response to a court or administrative order, a subpoena, or a search warrant.

**Contact Information.** For questions about this notice or access to your records, you may contact the Department of Justice, Bureau of Firearms at P.O. Box 820200, Sacramento, CA 94203-0200 or (916) 227-7527.

**ER-36**

**Exhibit "B."**

Case 2:16-cv-06535-FLA-NKN Document 107-2 Filed 09/30/2022 Page 40 of 290





# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# Law Enforcement Release Application

*Penal Code Section 33850*

*This form is to be used only by the owner of a firearm, ammunition, or ammunition feeding device which is in the custody or control of a law enforcement agency or court to redeem the firearm, ammunition, or ammunition feeding device. It only establishes the applicant's eligibility to lawfully possess firearms, ammunition, or ammunition feeding devices at the time the application is processed. It cannot be used to transfer a firearm, ammunition, or an ammunition feeding device, or to prove ownership of a firearm.*

*(Instructions and processing fee information on page 3 of this form.)*

## A. Owner Information

| Last Name: | First Name: | Middle Name: |
|---|---|---|

| Alias Last Name (if any): | Alias First Name: | Alias Middle Name: |
|---|---|---|

| Residence Street Address: | City: | State: | Zip Code: |
|---|---|---|---|

| Mailing Address (if different): | City: | State: | Zip Code: |
|---|---|---|---|

| Date of Birth (mm/dd/yyyy): | Place of Birth (state or country): | Gender: | Phone No. (include area code): |
|---|---|---|---|

U.S. Citizen?  ◯ Yes  ◯ No   If no, enter Alien Registration No. or I-94 No.:   Country of Citizenship:

*Enter your California driver license (CDL), California ID (CID), Military ID (MIL), or Out-of-State ID (OSID) number in the ID number box to the right. If using military identification you must send a copy of your permanent duty station orders stating you are stationed in California. If using an out-of-state driver's license or identification number you must send a notarized copy of your driver's license or identification card.*

ID Type (check one): CDL ☐  MIL ☐  CID ☐  OSID ☐    ID Number:

## B. Firearm(s) Information (To report additional firearm(s), copy and attach additional applications)

| Firearm Type: ◯ Handgun ◯ Rifle ◯ Shotgun | Category: (select from list on page 4) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ◯ IN. ◯ CM. |

| Firearm Type: ◯ Handgun ◯ Rifle ◯ Shotgun | Category: (select from list on page 4) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ◯ IN. ◯ CM. |

| Firearm Type: ◯ Handgun ◯ Rifle ◯ Shotgun | Category: (select from list on page 4) | Serial Number: | | |
|---|---|---|---|---|
| Make: | Model: | Caliber: | Firearm Origin: | Color: | Barrel Length: ◯ IN. ◯ CM. |

## Ammunition or Ammunition Feeding Device(s) Information (Check all that apply)

◯ Ammunition        ◯ Ammunition Feeding Device

**ER-38**




# CALIFORNIA DEPARTMENT OF JUSTICE
## BUREAU OF FIREARMS
# Law Enforcement Release Application

## C. Agency Information

Name of Law Enforcement Agency or Court in Possession of the Firearm(s), Ammunition, or Ammunition Feeding Device(s):

| Address: | City: | Zip Code: | Case Number: |
|---|---|---|---|
| | | | |

## D. Declaration

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am the lawful owner of all firearms, ammunition, or ammunition feeding devices that I seek to have returned. I expressly authorize the Department of Justice to perform firearms eligibility checks of all relevant state and federal databases, including the Federal Bureau of Investigation's National Instant Criminal Background Check System. I also understand that if I currently possess or own firearms, ammunition, or ammunition feeding devices and the results of this check reveal that I am ineligible either to lawfully possess or purchase firearms, ammunition, or ammunition feeding devices, I must relinquish any and all firearms, ammunition, or ammunition feeding devices in my possession.*

_____          _____
Signature                                Date

| DOJ USE ONLY | | | | |
|---|---|---|---|---|
| ☐ AFS REFLECTS APPLICANT AS OWNER. | | ☐ UNABLE TO VERIFY OWNERSHIP OF FIREARMS VIA AFS. COURT OR LEA MUST CONFIRM. | | |
| Date Received: | Date Paid: | Date Processed: | Processed By: | NTN#: |

**ER-39**





# CALIFORNIA DEPARTMENT OF JUSTICE
# BUREAU OF FIREARMS
# Law Enforcement Release Application

## Proper Use of the Law Enforcement Release Application

This form is **only** to be used by the **owner** who is seeking to redeem his/her firearm, ammunition, or ammunition feeding device in the custody or control of a law enforcement agency or court. **If the seized property is a firearm, the applicant must already have a record on file in the California Department of Justice Automated Firearms System (AFS) reflecting that he or she is the lawful owner or possessor of the firearm.** It is the responsibility of the court or law enforcement agency with custody or control of the firearm to verify that the applicant is the lawful owner or possessor of the firearm.

## Application Submission Requirements

Individuals seeking the return of a firearm, ammunition, or ammunition feeding device that is in the custody or control of a law enforcement agency or court must submit a complete application **with the appropriate fees** to the Department. An eligibility check will be conducted to determine whether the person is eligible to possess firearms, ammunition, or ammunition feeding devices under state and federal law. A notice of results will be sent to the applicant via U.S. Mail. Incomplete applications will be returned without processing. If reporting more than three firearms, make extra copies of this form to meet your reporing needs. **Once issued, a determination notice is only valid for 30 days**. Be advised that any unclaimed firearm, ammunition, or ammunition feeding device may be disposed of by a law enforcement agency or court 180 days after the owner has been notified that those items are available for return.

## Fee Submission Requirements

The processing fee for a Law Enforcement Release is twenty dollars ($20) per application for return of a firearm, any quantity of ammunition, or ammunition feeding device, plus a three-dollar ($3) charge for each additional firearm being processed as part of the request to return a firearm (check or money order made payable to the Department of Justice). If the law enforcement agency or court determines the firearm, ammunition, or ammunition feeding device was reported stolen pursuant to Penal Code section 33855, subdivision (d), the fees for the stolen firearm(s) will be waived. **Applicants must provide documentation from the law enforcement agency or court with this application to qualify for the waiver of fees.** The Department will process your application within 30 days from the date of receipt unless delayed by circumstances beyond the control of the Department.

*Submit completed application and fees to:*
**Department of Justice**
**Bureau of Firearms - LER**
**P.O. Box 820200**
**Sacramento, CA 94203-0200**

**The following must be submitted with your application and fee:**

- A copy of your California driver license or identification card. (Cal. Code Reg., tit. 11, § 4045.1)
- If your California driver license or identification card has "FEDERAL LIMITS APPLY" on the front, you shall also submit proof of lawful presence in the United States, in the form of one of the following documents:

  (1) Valid, unexpired U.S. passport or passport card.
  (2) Certified copy of U.S. birth certificate.
  (3) Certification of Birth Abroad (FS-545), Certification of Report of Birth (DS-1350) or Consular Report of Birth Abroad of a Citizen of the United States of America (FS-240), issued by the U.S. Department of State.
  (4) Valid, unexpired foreign passport with valid U.S. immigrant visa and approved Record of Arrival/Departure (I-94) form.
  (5) Certified copy of birth certificate from a U.S. Territory.
  (6) Certificate of Naturalization or U.S. Citizenship.
  (7) Valid, unexpired Permanent Resident Card. (Cal. Code Reg., tit. 11, § 4045.1)

- If your name, as it appears on the "FEDERAL LIMITS APPLY" California driver license or identification card, differs from the name on the document(s) above, you shall also submit one of the following certified documents:

  (1) An adoption document that contains your legal name as a result of the adoption.
  (2) A name change document that contains your legal name both before and, as a result of, the name change.
  (3) A marriage certificate.
  (4) A dissolution of marriage document that contains your legal name as a result of the court action.
  (5) A certificate, declaration or registration document verifying the formation of a domestic partnership.
  (6) A dissolution of domestic partnership document that contains your legal name as a result of the court action. (Cal. Code Reg., tit. 11, § 4045.1)

**ER-40**





# CALIFORNIA DEPARTMENT OF JUSTICE
## BUREAU OF FIREARMS
## Law Enforcement Release Application

### Part A. Owner Information

Enter the information as requested. If you are using a military number for identification, you must submit a copy of your permanent duty station orders indicating you are stationed in California.

### Part B. Firearm(s), Ammunition, or Ammunition Feeding Device(s) Information

For each firearm, ammunition, or ammunition feeding device you must provide the information requested. Please refer to your firearm owner's manual, the firearms manufacturer's website, or the examples below to assist you in providing the required information:

**Firearm:**

Firearm Type: Handgun, Rifle, or Shotgun

Category: Bolt Action, Lever Action, Pump Action, Revolver, Semi-Automatic, or Single Shot

Serial Number: Usually located on the frame of a handgun, or the receiver of a long gun. May be all numeric or a combination of alpha and numeric characters. (e.g., 98765, US54321G)

Make: The manufacturer of the firearm. (e.g., Remington, Winchester, Glock, Smith & Wesson)

Model: The model name of the firearm. (e.g., 870 Express, Model 70, 17C, 29-10)

Caliber: The caliber of the firearm. (e.g., 12 gauge, .308 Winchester, 9 mm, .44 Magnum)

Firearm Origin: The country of origin of the firearm. (e.g., United States, Russia, China, Italy)

Barrel Length: Enter the barrel length as stated either in your owner's manual, manufacturer's website, or measure the barrel length by closing the action of the firearm and inserting a wooden dowel down the barrel until it stops. Mark the dowel with a pen at the muzzle. Remove the dowel and measure the distance between the inserted end of the dowel and the pen mark.

**Ammunition or Ammunition Feeding Device:**

Select either Ammunition or Ammunition Feeding Device, or both as needed.

### Part C. Agency Information

Enter the name and address of the law enforcement agency or court in possession of the firearm(s), ammunition, and/or ammunition feeding device(s).

### Part D. Declaration

You must sign and date the declaration on this application. For questions, refer to the Bureau of Firearms website:
www.oag.ca.gov/firearms/



## CALIFORNIA DEPARTMENT OF JUSTICE
## BUREAU OF FIREARMS
## Law Enforcement Release Application



# Privacy Notice

As Required by Civil Code § 1798.17

---

**Collection and Use of Personal Information:** The Division of Law Enforcement, Bureau of Firearms in the Department of Justice collects the information on this application pursuant to Penal Code section 33850. The Bureau of Firearms uses this information to process an application for the release of a firearm, ammunition, or ammunition feeding device. In addition, any personal information collected by state agencies is subject to the limitations in the Information Practices Act and state policy. The Department of Justice's general privacy policy is available at http://oag.ca.gov/privacy-policy.

**Providing Personal Information:** All personal information on this application is mandatory. Failure to provide the mandatory personal information will result in your application not being processed.

**Access to Your Information:** You may review the records maintained by the Division of Law Enforcement, Bureau of Firearms in the Department of Justice that contain your personal information, as permitted by the Information Practices Act. See below for contact information.

**Possible Disclosure of Personal Information:** In order to process an application for the release of a firearm, ammunition, or ammunition feeding device, we may need to share the information you provide us with any Bureau of Firearms representative or any other person designated by the Attorney General upon request. The information you provide may also be disclosed in the following circumstances:

- With other persons or agencies when necessary to perform their legal duties, and their use of your information is compatible and complies with state law, such as for investigations, licensing, certification, or regulatory purposes;

- To another government agency as required by state or federal law.

**Contact Information:** For questions about this notice or access to your records, you may contact the Staff Services Analyst in the Customer Support Center at (916) 210-2300, via email at firearms.bureau@doj.ca.gov, or by mail at P.O. Box 820200, Sacramento, CA 94203-0200.

**ER-42**

**Exhibit "C."**



ER-44





1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    JAMES EDWARD CUPP, et al.,              No.  2:16-cv-00523-TLN-KJN

12                   Plaintiffs,

13         v.                                 **ORDER GRANTING DEFENDANTS'**
                                              **MOTION TO DISMISS**
14    KAMALA HARRIS, et al.,

15                   Defendants.

16

17

18         This matter is before the Court pursuant to a Motion to Dismiss filed by Defendants

19    Kamala Harris, in her capacity as former Attorney General of the State of California, and Xavier

20    Becerra, in his official capacity as Attorney General of the State of California, (hereafter

21    "Defendant"[1]).  Defendant moves to dismiss Plaintiffs' Third Amended Complaint ("TAC").

22    (ECF No. 74.)  Plaintiffs James Edward Cupp ("Cupp") and Lawrence Haven ("Haven")

23    (collectively, "Plaintiffs") filed an opposition (ECF No. 76), and Defendant filed a reply (ECF

24    No. 77).  For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss

25    with leave to amend only Claims Two and Nine.

26    ///

27

28    _____

      [1]      For ease of reading and because Becerra has merely replaced Harris as the Attorney
      General, Defendants will be collectively referred to as a singular "Defendant" herein.

                                              1

                                                                        **ER-47**

1        **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

2        Plaintiffs initiated this lawsuit on March 11, 2016. (ECF No. 1.) On September 21, 2018,

3 the Court granted Defendant's Motion to Dismiss the Second Amended Complaint ("SAC"),

4 granting Plaintiffs leave to amend six of the original twelve causes of action (specifically, the

5 First, Second, Third, Sixth, Ninth, and Twelfth). (ECF No. 61.) Plaintiffs thereafter filed the

6 operative TAC reasserting six causes of action arising from various alleged violations of

7 Plaintiffs' Second and Fourteenth Amendment rights. (ECF No. 65.) In response, Defendant

8 filed the Motion to Dismiss presently before the Court. (ECF No. 74.)

9        Plaintiffs' TAC is strikingly similar to their SAC and makes various allegations

10 concerning unrelated events and unrelated legal issues, united only by a common Defendant: the

11 Attorney General. Plaintiffs themselves are two unrelated individuals: Cupp is a resident of

12 South Dakota who intends to travel to California with firearms currently not legal under certain

13 sections of the California Penal Code ("C.P.C.") (ECF No. 65 ¶ 18); Haven — a Native American

14 and Veteran — is a resident of Sacramento, California, and an avid hunter and "owner of

15 firearms" (*Id.* ¶¶ 29–30). Plaintiffs claim California's safe-gun list and magazine ban (C.P.C. §

16 32310), which prohibits the possession of magazines capable of holding more than ten rounds,

17 violates their Second Amendment rights as well as the Takings and Due Process Clauses of the

18 United States Constitution. (ECF No. 65 ¶ 71.) Plaintiffs therefore contend there is an "actual

19 and present controversy" between the parties and that they are "presently and continuously

20 injured by Defendants' enforcement of § 32310 . . . ." (*Id.* ¶¶ 70–71.)

21        Additionally, both Plaintiffs claim their firearms were illegally seized, depriving them of

22 their Second Amendment rights. (ECF No. 65 ¶ 103.) Local authorities have allegedly refused to

23 return the seized firearms due to a requirement that Plaintiffs must first complete the Law

24 Enforcement Gun Release ("LEGR") application required under C.P.C. § 33850. (*Id.* ¶¶ 106,

25 108.) Plaintiffs assert the Attorney General enforces C.P.C §§ "33850 (application for return of

26 firearm), 33855 (authority of law enforcement to enforce), 33860, and 33880 (fee)" in violation of

27 the Second Amendment. (*Id.* ¶¶ 108, 111.)

28

1　　　　In addition to these broad constitutional challenges against California's firearm laws,

2　Plaintiffs purport to assert additional Second Amendment claims arising from three specific,

3　unrelated incidents. First, Cupp alleges Citrus Heights police officers unlawfully arrested him on

4　March 25, 2014, for carrying a concealed knife in violation of C.P.C. § 21310. (ECF No. 65 ¶¶

5　120, 122.) Cupp also claims the officers searched his home without a warrant and illegally seized

6　six firearms, ammunition, magazines, and two non-folding hunting knives. (*Id.* ¶ 120.) The

7　district attorney dismissed the case against Cupp two months after his arrest and Cupp's two

8　knives were returned to him, but he claims his firearms and "other firearm related tools and

9　equipment" were not returned. (*Id.* ¶ 124.) Second, Haven alleges a Placer County Sheriff's

10　Deputy unlawfully arrested him on February 8, 2014, for illegally possessing a slungshot (a metal

11　weight attached to a flexible handle for use as a weapon). (*Id.* ¶¶ 146, 148.) Haven claims this

12　infringed on his constitutional rights because the Second Amendment "protects all 'arms' and is

13　not just applicable to firearms." (*Id.* ¶ 153.) Third, Haven alleges that on February 14, 2016, a

14　Sacramento County Sheriff's Deputy searched his residence without a warrant and without

15　probable cause and seized three firearms. (*Id.* ¶ 137.) No criminal charges were filed. (*Id.* ¶

16　138.) Haven alleges this unlawful confiscation of firearms violates his Second Amendment

17　rights. (*Id.* ¶¶ 134, 139.)

18　　　　In addition to Second Amendment claims, Plaintiffs also allege California's open or

19　conceal carry, safe-gun list, and magazine ban violate the Equal Protection Clause under the

20　Fourteenth Amendment. (ECF No. 65 ¶¶ 158, 161.) More specifically, Plaintiffs claim

21　California's current firearms regulations grant more rights to "law enforcement and retirees"

22　while denying "law-abiding citizens their constitutional right to protect themselves." (*Id.* ¶ 158.)

23　**II.　STANDARD OF LAW**

24　　　　Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party, or the Court on its own

25　initiative, to challenge the court's subject matter jurisdiction at any stage in the litigation. Fed. R.

26　Civ. P. 12(b)(1) & (h)(3); *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006). "A suit brought by

27　a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal

28　court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d

**ER-49**

1  1169, 1175 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02

2  (1998)).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule

3  12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction by putting

4  forth "the manner and degree of evidence required" by whatever stage of the litigation the case

5  has reached. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the motion to dismiss

6  stage, Article III standing is adequately demonstrated through allegations of "specific facts

7  plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. U.S. EPA*,

8  633 F.3d 894, 899 (9th Cir. 2011).  If the court determines at any time that it lacks subject matter

9  jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

10  In addition, Rule 8(a) requires that a pleading contain "a short and plain statement of the

11  claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

12  (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

13  of what the claim...is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S.

14  544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on

15  liberal discovery rules and summary judgment motions to define disputed facts and issues and to

16  dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

17  On a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint must

18  be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the

19  benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the

20  complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff

21  need not allege "'specific facts' beyond those necessary to state his claim and the grounds

22  showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

23  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

24  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

25  544, 556 (2007)).

26  Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

27  factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

28  1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

4

**ER-50**

1    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading

2    is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements

3    of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare

4    recitals of the elements of a cause of action, supported by mere conclusory statements, do not

5    suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not

6    alleged or that the defendants have violated the...laws in ways that have not been

7    alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

8    U.S. 519, 526 (1983).

9      Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

10   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

11   *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims...across

12   the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While

13   the plausibility requirement is not akin to a probability requirement, it demands more than "a

14   sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a

15   context-specific task that requires the reviewing court to draw on its judicial experience and

16   common sense." *Id.* at 679.

17      In ruling upon a motion to dismiss, the court may consider only the complaint, any

18   exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

19   Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

20   *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

21   1998).

22      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

23   amend even if no request to amend the pleading was made, unless it determines that the pleading

24   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

25   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir.

26   1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of

27   discretion in denying leave to amend when amendment would be futile). Although a district court

28   should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

1    discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended

2    its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

3    2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

4    **III.    ANALYSIS**

5        Plaintiffs assert six causes of action against Defendant, asserting Second Amendment and

6    Equal Protection challenges to California gun laws as well as alleged Second Amendment

7    violations arising out of multiple and distinct incidents involving purportedly unlawful searches

8    and seizures of various weapons.  By way of the present Motion, Defendant moves to dismiss all

9    six causes of action, arguing Plaintiffs fail to comply with Rule 8, fail to establish standing to

10   challenge firearms regulations, and fail to state a cognizable claim under Rule 12(b)(6).

11   Defendant additionally argues sovereign immunity bars Claims Three, Six, and Nine.

12   **A.    Failure to Comply with Rule 8**

13       As a preliminary matter, Plaintiff's amendments as set forth in the operative complaint do

14   not cure the deficiencies identified in the Court's previous Order dismissing the six potentially

15   viable causes of action with leave to amend.  (ECF No. 61.)  Rule 8(d)(1) requires that "each

16   averment of a pleading shall be simple, concise, and direct."  *See McHenry v. Renne*, 84 F.3d

17   1172, 1178 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix,

18   replete with redundancy, and largely irrelevant").  To comply with Rule 8, a complaint should

19   clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough

20   detail to guide discovery."  Even if the factual elements of a cause of action are present, but are

21   scattered throughout the complaint and not organized into a "short and plain statement of the

22   claim," dismissal for failure to satisfy Rule 8 is proper.  *Id.* at 1178.  Further, "[t]he propriety of

23   dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly

24   without merit."  *Id.* at 1179.  Indeed, Rule 8(d)'s requirement that each averment of a pleading be

25   "'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal

26   independent of Rule 12(b)(6)."  *Id.*

27       Much like the SAC, the TAC is anything but simple, concise, and direct.  Instead, the

28   TAC reiterates scattershot challenges by two unrelated Plaintiffs to multiple, separate statutory

6

**ER-52**

1   schemes that deal with unrelated weapons regulation issues.  In dismissing the SAC for failure to

2   comply with Rule 8, this Court stated these scattershot challenges leave Defendant "guessing as

3   to what constitutional violations have been alleged." (ECF No. 61 at 7.)  These deficiencies have

4   not been cured in the TAC; the six remaining causes of action remain unclear and substantively

5   deficient.

6          Furthermore, Plaintiffs do not ameliorate the burdensome and extraneous allegations the

7   Court explicitly admonished in its previous Order, such as those regarding Rodney King and

8   Reginald Denny.  (ECF No. 61 at 7.)  Rather, these allegations remain verbatim in the TAC.

9   (ECF No. 65 ¶ 17.)  Worse still, the TAC again leaves the Court to sift through a multitude of

10  extraneous allegations.  These allegations include, but are not limited to, passing singular

11  references to the Takings Clause and Due Process Clause (*Id.* ¶ 70), erroneous and outdated

12  statutory references to C.P.C. § 12210 (*Id.* ¶¶ 144, 148),[2] and a completely unrelated accidental

13  weapon discharge by law enforcement in which, according to Plaintiff, "the state's own experts

14  shot themselves."  (*Id.* ¶ 88.)  It is once again not the Court's job to sift through voluminous

15  allegations to attempt to determine whether there may be a possible hidden cause of action.

16  *Walker v. Bowler*, No. 5:17-cv-01687-AG-JC, 2018 WL 2392152, at \*19 (C.D. Cal. May 24,

17  2018) (collecting cases) ("It is not the Court's responsibility to hunt through plaintiff's prolix and

18  rambling allegations in an attempt to determine whether plaintiff might have some adequate basis

19  for bringing an action in federal court."); *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

20  1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

21         Accordingly, Plaintiffs' TAC as asserted against Defendants Harris and Becerra is

22  DISMISSED in its entirety with leave to amend only Claims Two and Nine, as discussed below.

23  / / /

24  / / /

25  / / /

26

27  [2]      As discussed below, Plaintiffs' references to § 12210 appear to be a typographical error.
    Nonetheless, the error remains in the TAC and contributes to the lack of clarity and ultimate
28  failure to meet the requirements of Rule 8.

7

**ER-53**

1                    B.    Failure to Establish Standing

2          In addition to Plaintiffs' general failure to comply with Rule 8, Defendant moves to

3    dismiss all claims challenging the constitutionality of firearms regulations, arguing Plaintiffs lack

4    Article III standing.  (ECF No. 74-1 at 6.)  Specifically, Defendant claims Plaintiffs have again

5    failed to show "a genuine threat of imminent prosecution or a 'concrete plan' to violate any of the

6    Penal Code sections they challenge." (*Id.* at 7.)  Plaintiffs oppose, arguing that "the State

7    manipulates the doctrine of standing whenever it involves a case of individual rights applying to

8    the Second Amendment." (ECF No. 76 at 4.)  More specifically, Plaintiffs argue the injury-in-

9    fact is twofold: (1) their firearms have been confiscated; and (2) they face a "credible threat of

10   prosecution" under the allegedly unconstitutional C.P.C. sections.  (*Id.* at 6.)  Plaintiffs further

11   equate previous arrests for a slingshot and open-carry knives to "real and certain" threats of

12   future arrests for the possession of banned firearms.  (*Id.* at 5.)

13         "To establish standing, a plaintiff must show that '(1) he or she has suffered an injury in

14   fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to

15   the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision.'"

16   *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (quoting

17   *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)).  "The party

18   invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of*

19   *Wildlife*, 504 U.S. 555, 561 (1992).  To determine whether an injury is definite and concrete for

20   standing purposes, courts "consider whether the plaintiffs face 'a realistic danger of sustaining a

21   direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is

22   too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rights*

23   *Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (citation omitted) (quoting *Babbitt v.*

24   *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

25         In the context of a pre-enforcement challenge to a statute, "neither the mere existence of a

26   proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy'

27   requirement." *Id.*  Rather, "a 'genuine threat of imminent prosecution' . . . is generally required

28   of plaintiffs raising pre-enforcement challenges to criminal statutes outside the First Amendment

                                            8

1    context." *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016) (quoting *San Diego Cty. Gun*

2    *Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)). Courts consider the following

3    factors in determining whether there is a genuine threat of prosecution: "(1) 'whether the

4    plaintiffs have articulated a "concrete plan" to violate the law in question,' (2) 'whether the

5    prosecuting authorities have communicated a specific warning or threat to initiate proceedings,'

6    and (3) 'the history of past prosecution or enforcement under the challenged statute.'" *Cal. Sea*

7    *Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018) (quoting *Sacks v. Office of Foreign*

8    *Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006)). The Court finds Plaintiffs have not cured the

9    deficiencies identified in the previous order concerning standing, with one exception discussed

10   below.

11         Plaintiffs repeat the same causes of action based on the same concerns with state law, and

12   on the whole, fail to establish a cognizable injury. More specifically, Plaintiffs have again failed

13   to establish a "concrete plan" to violate the challenged firearm laws. Rather, they continue to

14   allege only that they "intend" to travel with and "intend to purchase, possess, and use" large-

15   capacity magazines and handguns not on California's approved firearms list. (ECF No. 65 ¶ 84.)

16   These allegations are identical to those set forth in the previously dismissed SAC and are again

17   insufficient to allege an injury-in-fact. As the Court previously noted, the Ninth Circuit has

18   explicitly rejected this type of ambiguous language, holding that an assertion that plaintiffs "wish

19   and intend to engage in activities prohibited by" gun control law is too vague to support a finding

20   of an injury-in-fact. *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1127 (9th

21   Cir. 1996). "'[S]ome day' intentions — without any description of concrete plans, or indeed even

22   any specification of when the some day will be — do not support a finding of the 'actual or

23   imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Plaintiffs have again failed to

24   allege an imminent and concrete injury, and therefore fail to establish standing.

25         Moreover, the previous confiscations of firearms by law enforcement cannot establish

26   injury-in-fact for Plaintiffs' Second and Fourteenth Amendment challenges[3] because Plaintiffs do

27   

28   [3]    This appears to be the basis for Plaintiffs' Third, Sixth, and Ninth Causes of Action, as
     opposed to the First and Twelfth Causes of Action, which seem to be premised on Plaintiffs'

9

**ER-55**

1  not point to any corresponding allegations indicating the purportedly unlawful confiscations were

2  the result of law enforcement applying the challenged statutes.  More to the point, Plaintiffs do

3  not allege the seizures of their various weapons as discussed in Claims Three and Six were

4  performed pursuant to any statute they wish to challenge.  Indeed, Plaintiffs assert the Attorney

5  General is named for purposes of declaratory and injunctive relief but provide no connection to

6  any law they wish to enjoin.[4]  The single exception to this analysis is with regard to Claim Nine

7  as brought by Plaintiff Haven.

8       The Ninth Cause of Action alleges Haven was arrested and charged for the illegal

9  possession of a slungshot under C.P.C. § 22210.[5]  (ECF No. 65 ¶¶ 148, 151.)  Haven alleges §

10  22210 violates his Second Amendment rights because it "interferes with the right to possess non-

11  lethal weapons for purposes of self[-]defense."  (ECF No. 65 ¶¶ 143, 144.)  According to the

12  heading of Claim Nine, it is brought to challenge C.P.C. § 22210 both as written and as applied,

13  and Haven seeks injunctive and declaratory relief prohibiting further arrest and enjoining the state

14  from enforcing the law.  (*Id.* at ¶ 154.)  But it is not clear to the Court whether Haven intends to

15  raise a facial challenge to C.P.C. § 22210.  To the extent he does, he falls short of pleading a clear

16  and concise claim under Rule 8 such that the Court is unable to decipher the claim and declines to

17  address standing.  To the extent he challenges the law as applied to him, however, Haven appears

---

18

19  unspecified desire and intent to violate certain gun control laws.  Regardless, the Court's analysis
   applies to all five causes of action.  Defendant does not challenge Plaintiffs' standing to bring

20  their Second Cause of Action.

21  [4]     To the extent the injunctive relief sought is the return of weapons seized, the Attorney
   General is not properly named because there is no connection between the Attorney General and

22  the allegedly illegal actions of the officers involved in the incidents.  Plaintiffs allege only that the
   Sacramento Deputy Sheriff was acting under "the authority of the state of California, Office of

23  the Attorney General" and allege no facts demonstrating Defendant's actual involvement or a
   sufficient connection to bring Defendant within the *Ex parte Young* exception to Eleventh

24  Amendment immunity.  *See L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) ("This
   connection must be fairly direct; a generalized duty to enforce state law or general supervisory power

25  over the persons responsible for enforcing the challenged provision will not subject an official to

26  suit.").

27  [5]     The TAC makes multiple references to C.P.C. § 12210.  As noted above, it appears this
   may be a typographical error intending to refer to C.P.C. § 22210, which outlaws slungshots.

28

10

1  to be challenging the constitutionality of a state law under which he was previously arrested. The

2  Court therefore finds he likely has standing to assert a Second Amendment challenge to C.P.C. §

3  22210 as alleged in the Ninth Cause of Action. This cause of action as pleaded, however,

4  nevertheless fails to meet the pleading standard of Rule 8, as generally discussed above, and so it

5  is DISMISSED with leave to amend.[6]

6       Claims One, Three, Six, and Twelve, however, lack a similar concrete injury tied to any

7  constitutional challenge. Accordingly, the Court dismisses Plaintiffs' First, Third, Sixth, and

8  Twelfth causes of action on this additional ground.[7]

9              C.    <u>Second Cause of Action: Failure to State a Claim Under 12(b)(6)</u>[8]

10       In their Second Claim, Plaintiffs challenge the constitutionality of a mandatory Law

11  Enforcement Gun Release (LEGR) application process that is required for the return of their

12  seized firearms. (ECF No. 65 ¶¶ 102-114.) As an initial matter, this claim is repeated almost

13  verbatim from the SAC, which the Court dismissed under Rule 8. (ECF No. 65 ¶¶ 102-114.) In

14  its previous Order granting Defendant's Motion to Dismiss, the Court explicitly noted in a

15  footnote that Plaintiffs had "provided no explanation in either the SAC or their opposition

16  explaining why the LEGR requirements violate the Second Amendment." (ECF No. 61 at 7 n. 2.)

17  Despite the Court's warning and the opportunity to do so, Plaintiffs fail to cure this deficiency in

18  the TAC and once again fail to explain what about the LEGR requirement violates the Second

19

20  [6]     The Ninth Cause of Action also makes a passing reference to a Fourth Amendment

21  violation. (*Id.* ¶ 149.) To the extent Plaintiff intends to assert a Fourth Amendment claim, it does not meet the requirements of Rule 8 as set forth above.

22  [7]     The Court is aware of the Ninth Circuit's recent decision in *Duncan v. Becerra*, No. 19-

23  55379, 2020 WL 4730668 (9th Cir., Aug. 14, 2020), affirming the district court's summary judgment in favor of plaintiffs challenging C.P.C. § 32310, which banned possession of large

24  capacity magazines. That ruling does not impact this Court's finding that Plaintiffs here lack standing to assert the causes of action discussed herein.

25

26  [8]     The Court does not discuss all of Defendant's 12(b)(6) arguments herein. Instead, because the Court has found Plaintiffs' First, Third, Sixth, and Twelfth Causes of Action fail for

27  lack of standing, the Court will address only Plaintiffs' Second Cause of Action under Rule 12(b)(6). The Court declines to address the Ninth Cause of Action under Rule 12(b)(6) because

28  the claim is dismissed under Rule 8 with leave to amend to clarify Plaintiff's claim.

11

1  Amendment.  Rather, the only substantial amendment to this cause of action is an additional

2  claim that "plaintiffs' firearms were illegally seized, and therefore, they were deprived of their

3  Second Amendment rights."  (ECF No. 65 ¶ 103.)  This does not cure the deficiency explicitly

4  noted by the Court, and the claim continues to fail under both Rule 8 and Rule 12(b)(6).

5          Presumably, Plaintiffs allege that the required application and processing fee ($20 plus $3

6  for each additional firearm) prevents the immediate return of their seized firearms and is therefore

7  an unconstitutional deprivation of Plaintiffs' "ability to exercise their Second Amendment rights."

8  (*Id.* ¶¶ 108, 111.)  To the extent this is Plaintiffs' intended claim, it fails to state a claim for relief

9  as discussed below.

10          The Ninth Circuit has identified a two-step inquiry for determining whether a regulation

11  violates the Second Amendment.  *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018).  The Court

12  first considers if the regulation "burdens conduct protected by the Second Amendment," and if it

13  does, they "apply an appropriate level of scrutiny."  *Id.*  The appropriate level of scrutiny

14  "depend[s] on (1) how close the law comes to the core of the Second Amendment right and (2) the

15  severity of the law's burden on the right."  *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir.

16  2013).  In evaluating the first question, longstanding regulations remain presumptively lawful,

17  meaning they are "presumed not to burden conduct within the scope of the Second Amendment."

18  *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir. 2011).  And as set forth in *Heller* and applied by

19  the district court in *Pena*, laws imposing conditions or qualifications, rather than prohibitions, on

20  the commercial sale of firearms are presumptively lawful.  *See Pena*, 898 F.3d at 975.

21          On the first question, the Court notes the burden of the LEGR application is analogous to

22  the firearm sale provisions burden in *Pena* because it imposes a condition rather than a

23  prohibition on the return of seized firearms.  As a result, it may be that the regulation is

24  presumptively legal and therefore unnecessary for the Court to engage in the second step of the

25  analysis.  *See id.*  The Court acknowledges, however, that the presumption of legality outlined in

26  *Heller* is not directly on point here because the LEGR regulation is not a condition on the

27  *commercial sale of firearms*.  The Court therefore assumes for the sake of argument that the

28

12

1   LEGR imposes a burden on conduct that is protected by the Second Amendment, and considers

2   the second prong of the test.

3       To that end, even if the LEGR imposes a burden on protected conduct, the Ninth Circuit

4   has applied only intermediate scrutiny to laws that "regulate only the manner in which persons

5   may exercise their Second Amendment rights." *Jackson v. City & County of San Francisco*, 746

6   F.3d 953, 961 (9th Cir. 2014). Intermediate scrutiny requires (1) a significant, substantial, or

7   important government objective, and (2) a "reasonable fit" between the challenged law and the

8   asserted objective. *Id.* at 965. Here, the TAC acknowledges that "such forms are submitted for a

9   determination by the California Department of Justice . . . as to whether [the applicant] is eligible

10  to possess a firearm." (ECF No. 65 ¶ 105.) LEGR's objective, then, is one of public safety:

11  keeping firearms out of the hands of those who — under California law — are not eligible to

12  possess them. Requiring completion of a form and a relatively small processing fee is certainly a

13  "reasonable fit" with this important public safety objective. *See Wilson v. Lynch*, 835 F.3d 1083,

14  1097 (9th Cir. 2016) (finding that violent crime is an important government interest and that

15  preventing certain individuals from acquiring firearms furthers this interest by preventing gun

16  violence); *see also Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast

17  doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill.").

18  Plaintiffs fail to allege otherwise and fail to assert facts supporting the inference that there is no

19  reasonable fit between the LEGR process and the government's objective.

20      Moreover, to the extent Plaintiffs assert the fee itself is unconstitutional, "imposing fees

21  on the exercise of constitutional rights is permissible when the fees are designed to defray (and do

22  not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*,

23  723 F.3d 160, 165 (2d Cir. 2013) (finding that a $340 licensing fee did not impose an

24  unconstitutional burden on the exercise of Second Amendment rights). Here, the required $20 fee

25  (plus $3 for each additional firearm) is an administrative processing fee, intended "to cover [the]

26  reasonable costs for processing [LEGR] applications." Cal. Penal Code § 33860. Because the fee

27  is permissible under the general "fee jurisprudence" and because Plaintiffs fail to sufficiently

28

1   allege an unconstitutional burden, the Court finds Plaintiffs fail to state a claim under Rule

2   12(b)(6).  Consequently, Defendant's motion to dismiss the Second Claim is GRANTED on this

3   additional ground with final leave to amend to clearly and concisely state facts supporting a claim

4   that the LEGR is somehow unconstitutional.

5       **IV.    CONCLUSION**

6       For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss.

7   (ECF No. 74-1.)  Plaintiffs' Third Amended Complaint (ECF No. 65) as it is asserted against

8   Defendants Harris and Becerra is DISMISSED with leave to amend only as to Claims Two and

9   Nine.  Plaintiffs may file an amended complaint not later than 21 days after the date of electronic

10  filing of this Order.

11      IT IS SO ORDERED.

12  DATED:  September 23, 2020

13

14

15

16                                              Troy L. Nunley
                                                United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

14

**ER-60**

Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

# THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity only; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT.<br><br>Defendants. | **Case No.** 16-CV-00523-TLN-KJN<br><br><br>**THIRD AMENDED COMPLAINT FOR MONETARY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF (42 U.S.C. § 1983)**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

- 1 -

1.    Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.    The Second Amendment is a right which requires the possession of an "arm" for personal self defense.

3.    The Second Amendment is the only right which requires <u>access</u> to, and <u>ownership</u> of, a tangible piece of property (a protected "arm").

4.    To exercise this right, it essentially includes the right to have access to "arms" by way of possession and control over such arms, which is most acute in the home.

5.    *Heller* clearly established the fundamental right to posses arms in the home, and the government was well advised of this right prior to depriving plaintiffs or their arms in their respective homes.

6.    Defendants, under color of state law, entered the homes of plaintiffs and confiscated their arms, in violation of the Second Amendment.

7.    Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants reside in the State of California and Defendant HARRIS resides in this judicial district.

9.    The state's conduct and law is inherently impermissible, regardless of any protected or remedial procedures.  There is no distinction between personal liberties and property rights under 42 U.S.C. § 1983.

**THE PARTIES**

10.   Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South Dakota.

**- 2 -**

**Third Amended Complaint**

**ER-62**

11.    CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996), until he changed his residency to South Dakota, which requires no such license as open carry is allowed.

12.    CUPP has no criminal record.

13.    His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, CUPP continuously travels through California which the possession of certain arms and weapons are not protected, though allowed in every other western state.

14.    CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer, working in the petroleum industry between North Dakota and Texas.

15.    As a resident of the state of South Dakota, and fully exercising the rights and privileges thereof as a free person of that state, the only limitation CUPP has on firearm ownership is that which is prohibited by federal law.

16.    CUPP presently intends to travel, and has traveled into the state of California with firearms, including firearms with magazines containing more than ten rounds of ammunition, including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his temporary residence while working in California and loaded in his work vehicle (either concealed or open) while traveling through dangerous areas of California, such as Richmond, Oakland, and Los Angeles.

17.    CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving through Los Angeles during a civil protest in the course and scope of his employment as a trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

18.    CUPP desires to travel with firearms and knives, which as a citizen of the state of South Dakota is legal, into the state of California to protect himself, his family, his property, and his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and while performing various other activities such as carrying large sums of money associated with his work.

- 3 -

19. Moreover, CUPP specifically has concern for the safety of himself and his cargo because of truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

20. In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

21. CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

22. Thus, because CUPP is continuously harassed for carrying knives exposed, it is Plaintiffs' position that he wants to carry them concealed on his person so that he is not profiled by law enforcement.

23. CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while traveling into and through California, and taking up temporary residence for purposes of work.

24. CUPP has unconstitutionally been prevented from doing so because of the code sections challenged and complained of herein, and because of Defendants' unconstitutional application and enforcement of those same sections.

25. CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a concealed weapon on his person, in his vehicle, or in his RV without a permit or prior permission authorizing him to do so. CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess of open carried and/or concealed weapon on his person, in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a permit or prior permission authorizing him to do so.

26. Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

27. At all relevant times, CUPP had temporary abode was parked at a friend's house, which was docked, plugged, and his truck was parked in another location.

28. At all relevant times, CUPP was traveling through California with his travel trailer, and only staying temporarily for a few weeks visiting a friend.

- 4 -

29. Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of the United States of America, and at all relevant times a legal resident of County of Sacramento, California. He is a Veteran and Native-American, and as such belongs to a class which consists of a long tradition of keeping and bearing arms.

30. Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an avid hunter and owner of firearms. Veterans and Native Americans have a long tradition of carrying and using California banned and prohibited weapons, especially firearms.

31. While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy explosives and ordinances.

32. The standard military side arm of the time was a .45 Caliber Semi-Automatic pistol, the type which California now seeks to ban.

33. Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby the California Constitution Article V, section 13 grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law."

34. Article V, section 13 is fleshed out in several California statutes which grants full authority and power to the Attorney General with direct supervisory power over sheriffs and police chiefs, including the power to require written applications and fees regarding firearms.

35. Defendant HARRIS is the State of California Attorney General, and is the chief law enforcement officer of the State whereby all other named Defendants report to her.

36. Defendant HARRIS is the State of California Attorney General, and as such is responsible for promulgation of administrative rules regarding firearms and weapons used for personal self defense.

37. Defendant HARRIS is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, under whose direction all defendants complained of in this action have acted on behalf of.

38. Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting

**Third Amended Complaint**

1    under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for

2    enforcing the code sections complained of in this action.

3    39.    Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief

4           is sought.

5    40.    Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

6           employee of CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

7           used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

8           this action.

9    41.    Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

10          of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

11          used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

12          this action.

13   42.    UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

14          servant, and/or employee of CITY OF CITRUS HEIGHTS, acting under color of state law as

15          that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections

16          complained of in this action.

17   43.    UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

18          02589 on or about 03/26/2014 is an agent, servant, and/or employee of CITY OF CITRUS

19          HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

20          responsible for enforcing the code sections complained of in this action.

21   44.    Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

22          POLICE DEPARTMENT have not been located, but they will be added to this complaint

23          upon uncovering their names through discovery.

24   45.    Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of

25          law.

26   46.    At all times, plaintiffs legally possessed and owned handguns and long-rifles, which were

27          never illegal, even under California law, to possess and own.

28   47.    At the direction of state law and HARRIS, plaintiffs had their firearms confiscated by

- 6 -

**Third Amended Complaint**

**ER-66**

HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

**FIRST CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

48. Plaintiffs incorporate the above allegations as if set forth fully here.

49. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

50. The United States Supreme Court has concluded that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and . . . individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting Heller, 554 U.S. at 628). The Court has held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" is unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." Heller, 554 U.S. at 628.

51. The "arms" protected by the Second Amendment are those "typically possessed by law-abiding citizens for lawful purposes" today. See, e.g., *id*. at 624-25; see also *Caetano v. Massachusetts*, -- U.S. --, 136 S. Ct. 1027, 1027-28 (2016). The Second Amendment's protection also includes the handguns, ammunition and magazines necessary to meaningfully keep and bear arms for self-defense. See *Jackson*, 746 F.3d at 967-68; *Fyock*, 779 F.3d at 998. As such, the Second Amendment protects handguns, magazines and the firearms equipped with them that are in common use for lawful purposes.

52. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state and local governments. *McDonald*, 561 U.S. at 750.

53. In 1999, the California legislature enacted Senate Bill 23 ("SB 23"), making it a crime, beginning January 1, 2000, to manufacture, import, sell, or transfer any "largecapacity

- 7 -

**Third Amended Complaint**

1    magazine" in the state of California. S. B. 23, 1999-2000 Reg. Sess. (Cal. 1999) (codified at

2    Cal. Penal Code § 32310 [formerly Cal. Penal Code § 12020(a)(2)]).8 SB 23 defined

3    "large-capacity magazine" as "any ammunition feeding device with the capacity to accept

4    more than 10 rounds," but not including feeding devices that have been permanently altered

5    to accommodate no more than 10 rounds or any .22 caliber tube ammunition feeding device.

6    Cal. Penal Code § 16740 (formerly Cal. Penal Code § 12020(c)(25)).

7    54.    As originally enacted, California's restriction did not include "possession" as one of the

8            prohibited activities relating to magazines over ten rounds. This meant that individuals who

9            lawfully possessed such magazines prior to the enactment of SB 23 did not have to dispose

10           of them.

11   55.    Penal Code Section 31910(b)(7)(A) establishes the "microstamping" requirement. That

12           section stated: Commencing January 1, 2010, for all semiautomatic pistols that are not

13           already listed on the roster pursuant to Section 32015, it is not designed and equipped with a

14           microscopic array of characters that identify the make, model, and serial number of the

15           pistol, etched or otherwise imprinted in two or more places on the interior surface or internal

16           working parts of the pistol, and that are transferred by imprinting on each cartridge case

17           when the firearm is fired, provided that the Department of Justice certifies that the

18           technology used to create the imprint is available to more than one manufacturer

19           unencumbered by any patent restrictions.

20   56.    In July 2016, however, the California legislature passed and the Governor signed Senate Bill

21           1446 ("SB 1446"), amending Section 32310 to also prohibit the mere possession of

22           magazines capable of holding more than 10 rounds. S. B. 1446, 2015-2016 Reg. Sess. (Cal.

23           2016). On November 8, 2016, California voters approved Proposition 63, which made

24           effectively the same amendment as SB 1446 did to Section 32310, prohibiting (again) the

25           possession of magazines capable of holding more than 10 rounds.

26   57.    On July 1, 2017, any previously law-abiding person in California who still possesses a

27           firearm magazine capable of holding more than 10 rounds will begin their new life of crime.

28           That is because California Penal Code § 32310 was amended last fall by the passage of a

- 8 -

**Third Amended Complaint**

ER-68

California ballot initiative, Proposition 63. With this change, § 32310(c) requires persons who lawfully possess these magazines today to dispossess them or face criminal penalties of up to one year in a county jail and a fine of $100 per magazine, or both.

58. Section 32310 prohibits magazines that come standard with or are commonly used in firearms that are "typically possessed by law-abiding citizens for lawful purposes," Heller, 554 U.S. at 624-25, throughout the United States. Indeed, millions of firearms—including the most popular models—that come stock from the factory with magazines over ten rounds have been sold in the United States. People also buy such magazines aftermarket by the millions. Notwithstanding California's description of the prohibited magazines as being "large capacity," magazines with capacities of more than ten rounds are, instead, standard-capacity for many common firearms that are lawfully possessed in the clear majority of states.

59. A semi-automatic handgun is barred from the approved handgun roster if "[i]t does not have a positive manually operated safety device, as determined by standards relating to imported guns promulgated by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives." Cal. Penal Code § 31910(b)(1).

60. Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or transferring these commonly owned magazines implicates and violates their Second Amendment rights. A total ban on standard-issue, commonly possessed magazines is not remotely tailored to increasing public safety. To the contrary, limiting magazine capacity to ten rounds decreases public safety.

61. All semi-automatic handguns not on the approved roster prior to 2010 are barred from the approved handgun roster unless they employ so-called "microstamping technology," in that they are " designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one

- 9 -

1    manufacturer unencumbered by any patent restrictions." Cal. Penal Code § 31910(b)(7)(A).

2    "The Attorney General may also approve a method of equal or greater reliability and

3    effectiveness in identifying the specific serial number of a firearm from spent cartridge

4    casings discharged by that firearm than that which is set forth in this paragraph . . ." Cal.

5    Penal Code § 31910(b)(7)(B).

6    62.    The microstamping requirement of Cal. Penal Code § 31910 became effective on May 17,

7           2013. On that date, the California Department of Justice issued  Information Bulletin No.:

8           2013-BOF-03, wherein the Attorney General announced that the Department had determined

9           that the technology described in Penal Code § 31910 is now available to more than one

10          manufacturer unencumbered by any patent restrictions.

11   63.    Micro-stamping technology is not a safety device and has no rational relationship to the

12          safety of the owner/buyer/consumer of semi-automatic pistols.

13   64.    On information and belief, as of this writing, there are no commercially available

14          semiautomatic handguns manufactured in the United States utilizing the microstamping

15          technology required by Cal. Penal Code §31910(b)(7).

16   65.    California Penal Code § 32000 provides an additional exemption for law enforcement,

17          regardless of type and caliber of handgun.

18   66.    California prohibits the acquisition of handguns of the kind in common use for traditional

19          lawful purposes, including self-defense, unless they lack features that are either rejected by

20          the market or are unavailable — which constitutes a de facto ban.

21   67.    California law presumes that all handguns are "unsafe" and therefore, generally barred from

22          importation and sale, unless those handguns have been placed on the state's special roster of

23          handguns "determined not to be unsafe." Cal. Penal Code § 31910.

24   68.    [A]ny person in this state who manufactures or causes to be manufactured, imports into the

25          state for sale, keeps for sale, offers or exposes for sale, gives, or lends any unsafe handgun

26          shall be punished by imprisonment in a county jail not exceeding one year. Section 32000.

27   69.    As of May 17, 2013, all semiautomatic handguns not already rostered cannot be submitted

28          for roster listing unless they employ socalled "microstamping technology." To comply,

- 10 -

1   handguns must be: designed and equipped with a microscopic array of characters that

2   identify the make, model, and serial number of the pistol, etched or otherwise imprinted in

3   two or more places on the interior surface or internal working parts of the pistol, and that are

4   transferred by imprinting on each cartridge case when the firearm is fired . . . . Section

5   31910(b)(7)(A).

6   70.   There is an actual and present controversy between the parties. Plaintiffs contend that Section

7   32310 infringes on Plaintiffs' right to keep and bear arms under the Second and Fourteenth

8   Amendments to the United States Constitution, by generally prohibiting commonly

9   possessed ammunition feeding devices that it deems "largecapacity magazines." Plaintiffs

10  also contend that Section 32310 violates the Takings Clause by requiring owners who

11  lawfully purchased "large-capacity magazines" to surrender physical possession of their

12  property to the government rather than keeping it in their possession. And Plaintiffs contend

13  that Section 32310 violates the Due Process Clause by banning lawfully acquired magazines

14  based on a feature (capacity to accept more than 10 rounds) that has no relation to enhancing

15  public safety or any other valid governmental objective. Defendants deny these contentions.

16  Plaintiffs desire a judicial declaration that the California Penal Code section 32310 violates

17  Plaintiffs' constitutional rights. Plaintiffs should not be forced to choose between risking

18  criminal prosecution and exercising their constitutional rights.

19  71.   Plaintiffs are presently and continuously injured by Defendants' enforcement of California

20  Penal Code section 32310 insofar as that provision violates Plaintiffs' rights under the

21  Second Amendment, the Takings Clause, and the Due Process Clause by precluding the

22  acquisition, possession, and use of firearm magazines that are "typically possessed by

23  law-abiding citizens for lawful purposes" nationwide.

24  72.   If not enjoined by this Court, Defendants will continue to enforce Section 32310 in

25  derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate

26  remedy at law. Damages are indeterminate or unascertainable and, in any event, would not

27  fully redress any harm suffered by Plaintiffs because they are unable to engage in

28  constitutionally protected activity due to California's ongoing enforcement of Section 32310.

**- 11 -**

**Third Amended Complaint**

73. Plaintiffs suffered an injury in fact, and that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

74. Article III standing analysis recognizes that, where threatened action by government is concerned, courts do not require a plaintiff to expose himself to criminal liability before bringing suit. *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 128-129 (2007); *Steffel v. Thompson*, 415 U.S. 452 (1974).

75. Under 32310, merely continuing to possess a magazine able to hold more than 10 rounds may be charged as a criminal misdemeanor. The injury will be immediate and concrete. See *Jackson v. City & County of San Francisco*, 829 F. Supp. 2d 867, 871-872 (N.D. Cal. 2011).

76. There is a credible threat of prosecution.

77. The Attorney General has not indicated that § 32310 (c) & (d) will not be enforced, nor the state has definitively enforced the California's Unsafe Handgun Act, California Penal Code, §§ 31900, et seq. as plaintiffs are barred from purchasing any new semi-automatic handgun not on the list.

78. The Attorney General has vigorously enforced all gun laws.

79. In fact, California law enforcement agents surveil gun shows in Nevada, with the objective to identify suspected California residents who entered Nevada to purchase weapons or accessories that would be illegal in California. See e.g., *People v. Verches*, H041967, slip. op., 2017 WL 1880968, at *1-3 (Cal. Ct.App. May 9, 2017).

80. Defendant XAVIER BECERRA is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Becerra is charged by Article V, Section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Becerra also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers. Defendant Becerra's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California, including restrictions on certain magazines classified as "large-capacity magazines." He is sued in his official

- 12 -

1      capacity.

2   81.   Moreover, the State has vigorously enforced all gun laws in the past.

3   82.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for
4      self-defense purposes.

5   83.   Plaintiffs are a extremely familiar with firearms and the safe operation thereof, and in
6      particular semi-automatic handguns with magazine capacities greater than 10 rounds and
7      semi-automatic rifles capable of holding magazines containing more than 10 rounds of
8      ammunition

9   84.   Plaintiffs intend to travel in and out the State of California with ammunition magazines
10      which hold more than ten rounds, and they intend to purchase, possess, and use handguns
11      which are not on California's approved list.

12   85.   However, because of the threat of enforcement, and actual enforcement, plaintiffs seek a
13      permanent injunction enjoining XAVIER BECERRA and the State of California from
14      enforcing the magazine ban and safe gun list ban.

15   86.   Dealers may not sell any new handgun unless it is listed in the state Department of Justice
16      roster of handguns certified for sale.

17   87.   The prohibition of purchasing the safest, most technologically advanced handguns, which
18      have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory
19      9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series,
20      and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock
21      and 100 year old revolvers, none of which have manual thumb safeties.

22   88.   The lack of these safety features have resulted in an inordinate amount of accidental
23      discharges by law enforcement, including the state's own experts who shot themselves.

24   89.   Plaintiffs have the same rights active and retired officers have to purchase (and use for
25      personal self-defense) the best and safest tool for the job.

26   90.   Plaintiffs are seeking to enjoin the State of California and defendants from enforcing current
27      firearm statutes which infringe upon their constitutional rights as follows:

28     a.   To purchase off-roster handguns, which are legal under federal law.

**- 13 -**

---

**Third Amended Complaint**

b. To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

c. To travel interstate with magazines which contain more than 10 rounds of ammunition.

91. The Second Amendment to the United States Constitution provides:

A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

92. The Second Amendment guarantees the right of law-abiding citizens to publicly carry operational handguns and rifles for self-defense.

93. The Second Amendment is incorporated to the states through the Fourteenth Amendment.

94. The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

95. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

96. Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are "typically used for lawful purposes" and are deemed presumptively reasonable as active duty and retired law enforcement are granted the rights and privileges to use them when applying reasonable force.

97. Widespread law enforcement use of a particular firearm, weapon or magazine, or edged weapon proves that particular arms are common and typically used for lawful purposes, rather than "dangerous and unusual."

98. Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national consensus" against a law which existed in only six states, and not federally); *Kerr v. Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws "consider the rarity of state enactments in determining whether they are constitutionally permissible.").

99. Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which:

**- 14 -**

---

**Third Amended Complaint**

**ER-74**

a.   Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

b.   Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

c.   Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

100.  Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

101.  Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SECOND CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Unconstitutional Statute - Confiscation of Firearms and LEGR)
(Injunctive and Declaratory Relief Only For Return of Firearms)

102.  Plaintiffs incorporate the above allegations as if set forth fully here.

103.  Based upon information and belief, plaintiffs' firearms were illegally seized, and therefore, they were deprived of their Second Amendment rights.

104.  After the illegal seizure of the firearms, California mandates the payment of a fee for the return of plaintiffs' right to keep and bear arms, and the apparent application for such called a Law Enforcement Gun Release (LEGR) process Penal Code (PC) section 12021.3.

105.  This process requires any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned to submit a LEGR Application form for a determination by the California Department of Justice (the Department) as to whether he or she is eligible to possess a firearm.

106.  Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s) that is in the custody or control of a court or law enforcement agency must submit a LEGR Application along with a payment of money to the XAVIER BECERRA.

107.  Additionally, if an individual is seeking the return of a long gun purchased prior to January 1, 2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted

- 15 -

1    along with the a fees to XAVIER BECERRA.

2    108.  In violation of the Second Amendment, XAVIER BECERRA enforces a statutory scheme

3          pursuant to Penal Code Section Penal Code Section 33850 (application for return of firearm),

4          33855 (authority of law enforcement to enforce), 33860, 33880 (fee), requiring CUPP to: 1)

5          fill out and sign a document under the penalty of perjury called the "CALIFORNIA

6          DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release

7          Application", and 2) pay a processing fee of $20.00 for the first firearm (long gun or

8          handgun), and $3.00 for each additional gun.

9    109.  Both plaintiffs have had their firearms seized from their residences, without a warrant,

10         without being charged, tried or convicted of a crime.

11   110.  The firearms illegally seized have not been returned to plaintiffs.

12   111.  By failing to immediately return plaintiffs firearms once it was determined that no crime had

13         been committed, XAVIER BECERRA has deprived plaintiffs of their ability to exercise their

14         Second Amendment rights by taking the very instruments necessary for exercising such a

15         right, akin to confiscating a paper and pen preventing the free exercise of speech.

16   112.  Plaintiffs seek a positive injunction for XAVIER BECERRA to release and return all

17         firearms and ammunition illegally confiscated.

18   113.  Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

19   114.  Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

20                              **THIRD CLAIM FOR RELIEF:**
                                  **Second Amendment**
21   (Plaintiff CUPP; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights
     Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with
22   Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report
                                Number CH14-02589  only)
23                    (Open Carry of Knives and Seizure of Firearms)
                       (Declaratory, Injunctive and Monetary relief)
24
25   115.  Plaintiffs incorporate the above allegations as if set forth fully here.

26   116.  California law permits the open carry of knives.

27   117.  Knives are protected arms under the Second Amendment.

28   118.  At all times, the law was well established as to the Second Amendment.

                                    **- 16 -**

                            _Third Amended Complaint_                    **ER-76**

119. CUPP was charged with PC 21310, carrying a concealed knife which was not concealed.

120. On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

121. CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

122. On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

123. On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

124. Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

125. At all times, Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

126. To this day, under color of law, Defendants have maintained possession over Plaintiffs'

- 17 -

**Third Amended Complaint**

ER-77

1    personal property, including ammunition, speed loaders, holsters, $1,000.

2    127.  CUPP owns multiple firearms, and possesses them within his home, for both sporting use

3    and self-defense purposes.

4    128.  Plaintiff seeks monetary relief for being deprived of his right and property.

5    129.  Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

6    property.

7    130.  Plaintiff has been damaged according to proof.

8    131.  HARRIS is named only for purposes of injunctive and declaratory relief only.

9    132.  Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SIXTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment**
(Plaintiff HAVEN and Defendants HARRIS)
(Confiscation of Firearms)
(Declaratory, Injunctive and Monetary relief)

133.  Plaintiffs incorporate the above allegations as if set forth fully here.

134.  The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for

self-defense purposes.

135.  On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of

state law and the authority of the state of California, Office of the Attorney General HARRIS

at the time.

136.  HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

137.  While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of

HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard

issue military semi-automatic 1911.

138.  No criminal charges were ever filed, and the government has failed to return HAVEN's three

firearms and ammunition.

139.  At the direction of state law, plaintiff had his firearms confiscated by law enforcement

officers, though no crime had been committed.  To this date, the arms have not been returned

and Sacramento County states the firearms were destroyed since there was no release by the

**Third Amended Complaint**

1    state.

2    140.   HARRIS is named only for purposes of injunctive and declaratory relief only.

3    141.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**NINTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiff HAVEN and Defendant HARRIS)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

142.   Plaintiffs incorporate the above allegations as if set forth fully here.

143.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

144.   P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

145.   A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long cord, which pre-existed the founding of the United States.  It was a simple weapon, which itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the invention of gunpowder.

146.   On February 8, 2016, deputies from the Placer County Sheriff's Department stopped HAVEN for what they falsely alleged an "illegal weapon" hanging from the handle bars of his motorcycle, affectionately known as his "iron horse."

147.   HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick nylon rope with a metal quick release - identical to a dog leash but thicker).

148.   Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession of a slungshot in violation of P.C. 12210.

149.   A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr. HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth Amendment rights.

150.   Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

- 19 -

**Third Amended Complaint**

151. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210. Defendant HAVEN was arraigned on the charges in the above-entitled court.

152. On or about March 21, 2016 the Supreme Court of the United States rendered its unanimous per curium opinion in *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078; decided March 21, 2016. The holding of *Caetano* reiterated prior precedent and stated that the State's arguments for supporting draconian laws borders on the "frivolous", but yet, in 2016, California has only enhanced its draconian enforcement of arms of all types.

153. Prior to *Caetano*, the law was clearly established that the Second Amendment protects all "arms", and is not just applicable to firearms.

154. Plaintiff seeks injunctive and declaratory relief prohibiting further arrest, and enjoining the state from enforcing the law.

**TWELFTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Open or Conceal Carry, Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

155. Plaintiffs incorporate the above allegations as if set forth fully here.

156. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

157. Plaintiffs are seeking to enjoin the State of California from enforcing current firearm statutes which grants more rights to law enforcement for purposes of self defense by allowing them:

a. To purchase off-roster handguns, which are legal under federal law.

b. To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

c. To travel interstate with magazines which contain more than 10 rounds of ammunition.

158. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when

- 20 -

**Third Amended Complaint**

**ER-80**

1    confronted by an armed attacker, while at the same time law enforcement and retirees are

2    permitted to pick and choose the weapon of choice to be used for self defense.Allows

3    officers to purchase semi-automatic rifles not otherwise available to the public for self

4    defense, which they can keep even after their government service is terminated.

5    159.    Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

6    160.    Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

7    161.    As a direct and proximate result of Defendants' violation of Plaintiffs' Equal Protection

8    rights under the Fourteenth Amendment, Plaintiffs have suffered irreparable and immediate

9    harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and

10   2202.

11

12                              **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiffs respectfully requests that judgment be entered in his favor and

14   against Defendants as follows:

15           1.) Enter a declaratory judgment under 28 U.S.C. § 2201 that California Penal Code

16   section 32310 and Penal Code Section 31910 is unconstitutional on its face or, alternatively, to the

17   extent its prohibitions apply to law-abiding adults seeking to acquire, use, or possess firearms and

18   magazines that are in common use by the American public for lawful purposes, because such

19   unlawfully infringes on the right of the People to keep and bear arms in violation of the Second and

20   Fourteenth Amendments to the United States Constitution, unconstitutionally takes property without

21   compensation in violation of the Takings Clause, and arbitrarily deprives Plaintiffs of protected

22   property interests under the Due Process Clause. 2. 3.

23           2.) Issue an injunction enjoining Defendants and their officers, agents, and employees

24   from enforcing California Penal Code section 32310 and Section 31910 in its entirety, or,

25   alternatively, to the extent such can be segregated from the rest of the statute, any provision that

26   prohibits the acquiring, using, or possessing of firearms and magazines that are in common use by

27   the American public for lawful purposes;

28           3.) Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys'

1  fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law; and

2  4.) A declaration that California Penal Code P.C. 12210 violates the Second

3  Amendment and that a so-called slungshot is a protected arm.

4  5.) A declaration that California Penal Code §P.C. 12210 does not include horse

5  leads.

6  6.) An injunction permanently enjoining Defendants from enforcing C.P.C.§ P.C.

7  12210.

8  7.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of

9  reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

10  8.) An order mandating that Defendants turn over all firearms and their accessories

11  which were illegally seized by Defendants.

12  9.) Damages for deprivation of a rights, property, and privileges, and such other relief

13  as this Court deems just and equitable, including general and specific damages.

14

15  Dated: October 22, 2018          THE LAW OFFICES OF GARY W. GORSKI
                                    Respectfully Submitted,
16                                   /s/ Gary W. Gorski
                                    Gary W. Gorski
17                                  Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

**Third Amended Complaint**

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES EDWARD CUPP, an individual;        No.  2:16-cv-00523-TLN-KJN
     LAWRENCE "WOLF" HAVEN, an
12   individual,
                                              **ORDER DENYING PLAINTIFFS'**
13              Plaintiffs,                    **MOTIONS FOR PRELIMINARY**
                                              **INJUNCTIONS**
14        v.

15   KAMALA D. HARRIS, et al.,

16              Defendants.

17

18

19        This matter is before the Court pursuant to Plaintiffs James Edward Cupp ("Cupp") and

20   Lawrence Haven's ("Haven") (collectively, "Plaintiffs") Motions for Preliminary Injunctions

21   against Defendants Kamala D. Harris, Citrus Heights Police Department Chief Christopher W.

22   Boyd, Placer County Sheriff Edward N. Bonner, Sacramento County Sheriff Scott Jones, and

23   Sacramento Deputy Sheriff Jesse Brucker (collectively, "Defendants").  (ECF Nos. 35, 39, & 40.)

24   Plaintiffs seek injunctions for the return of their property, including various firearms and

25   ammunition.  (ECF Nos. 35, 39, & 40.)  Defendants have opposed the motions, (ECF Nos. 42, 43,

26   44, & 45), and Plaintiffs filed a reply, (ECF No. 46).

27        On September 21, 2018, the Court dismissed Defendants Kamala D. Harris, Citrus

28   Heights Police Department Chief Christopher W. Boyd, Placer County Sheriff Edward N.

                                              1

1    Bonner, and Sacramento County Sheriff Scott Jones. (ECF Nos. 58, 59, 60 & 61.) Thus, the only

2    remaining Defendant that Plaintiffs seek to enjoin in their preliminary injunction motions is

3    Sacramento Deputy Sheriff Jesse Brucker.[1] The only remaining cause of action against

4    Defendant Brucker is the Seventh Cause of Action alleging a Fourth Amendment violation

5    resulting out of Defendant Brucker's unreasonable search of Plaintiff Haven's home. However,

6    Plaintiff Haven does not contend that the Seventh Cause of Action is a basis for his preliminary

7    injunction motion. (*See* ECF No. 40.) Therefore, Plaintiffs have no operative complaint on

8    which to base their preliminary injunction motions. *See Alabama v. U.S. Army Corps of Eng'rs*,

9    424 F.3d 1117, 1134 (11th Cir. 2005) ("[I]njunctive relief must relate in some fashion to the relief

10    requested in the complaint."); *see also Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002)

11    ("When no complaint is filed, the court lacks jurisdiction to entertain the plaintiff's petition for

12    injunctive relief."). Furthermore, Plaintiff Haven's request for a preliminary injunction against

13    Defendants Jones and Brucker is moot because the Sacramento County Sheriff's department no

14    longer has Plaintiff Haven's firearms as they "were deemed abandoned and disposed of, due to

15    Haven's extended failure to claim them." (ECF No. 43 at 4.) Accordingly, Plaintiffs' Motions

16    for Preliminary Injunctions are denied.

17        For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motions for Preliminary

18    Injunctions. (ECF Nos. 35, 39, & 40.) In light of this ruling, Plaintiff Cupp's motion to strike the

19    declaration of Lieutenant Alex Turcotte is hereby DENIED as moot. (ECF No. 47.)

20        IT IS SO ORDERED.

21    Dated: October 9, 2018

22

23

24

25                           Troy L. Nunley
                              United States District Judge

26

27

28    [1] The Court severed Defendant Brucker from the instant case on September 21, 2018.

2

**ER-84**

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    JAMES EDWARD CUPP, an individual;          No. 2:16-cv-00523-TLN-KJN
      LAWRENCE "WOLF" HAVEN, an
12    individual,

13                      Plaintiffs,               **ORDER GRANTING DEFENDANT
                                                  KAMALA D. HARRIS'S MOTION TO
14           v.                                   DISMISS**

15    KAMALA D. HARRIS, et al.,

16                      Defendants.

17

18           This matter is before the Court pursuant to Defendant Kamala D. Harris's ("Harris")[1], in

19    her official capacity as Attorney General of the State of California, Motion to Dismiss Plaintiffs'

20    Second Amended Complaint ("SAC"). (Mot. to Dismiss Second Am. Compl., ECF No. 18.)

21    Plaintiffs James Edward Cupp ("Cupp") and Lawrence Haven ("Haven") (collectively,

22    "Plaintiffs") filed an opposition, (Opp'n to Mot. to Dismiss, ECF No. 22), and Harris filed a

23    reply, (Reply to Mot. to Dismiss, ECF No. 30). For the reasons set forth below, the Court hereby

24    GRANTS Harris's Motion to Dismiss. (ECF No. 15.)

25    ///

26    ///

27    _____

28    [1]      Harris was the California Attorney General when the lawsuit was filed. Xavier Becerra has replaced Harris
      as Attorney General.

                                                    1

**ER-85**

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2          Plaintiffs filed this suit on March 11, 2016.  (ECF No. 1.)  On June 3, 2016, Plaintiffs filed

3    a first amended complaint.  (ECF No. 5.)  On August 15, 2016, Plaintiffs filed the SAC against

4    Kamala D. Harris, Attorney General of the State of California, in her official capacity only; City

5    of Citrus Heights; Citrus Heights Police Department Chief Christopher W. Boyd, in both his

6    individual and official capacity; Citrus Heights Police Officer Christian Baerresen, # 371; Citrus

7    Heights Police Officer Thomas Lamb, # 315; Unknown Citrus Heights Police Officer Badge

8    Number 323; Unknown Citrus Heights Police Officer who prepared Report Number CH14-02589

9    on 03/26/2014; Two unknown named peace officers of the Citrus Heights Police Department;

10   County of Sacramento, Scott Jones, in his official capacity as Sheriff of County of Sacramento;

11   Sacramento Deputy Sheriff Jesse Brucker, # 512; County of Placer; Edward N. Bonner, in his

12   official capacity as Sheriff of County of Placer; Placer County Deputy Mason, # 181; and Placer

13   County Deputy Hintze, # 101 for various causes of action resulting out of various alleged

14   violations of Plaintiffs' Second, Fourth, Fifth, and Fourteenth Amendment rights.  (ECF No. 12.)

15         Plaintiffs' SAC pleads various allegations relating to completely unrelated events and

16   unrelated legal issues, united only by a common Defendant, Attorney General Kamala Harris.

17   Plaintiffs are two unrelated individuals, James Edward Cupp and Lawrence "Wolf" Haven.  Cupp

18   is a resident of South Dakota who sometimes travels to California, including to visit his mother or

19   friends.  (ECF No. 12 ¶¶ 6, 22, 24.)  Haven is a resident of Sacramento County.  (ECF No. 12

20   ¶ 25.)

21         Plaintiffs frame their Second Amendment and Equal Protection Clause claims (the first

22   and twelfth claims for relief) as a "constitutional challenge to the complex statutory scheme set

23   forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code,

24   §§ 26950, 27650)" that allegedly results in a "massive transfer of gun rights from plaintiffs to

25   active and honorably retired California peace officers" because current and former peace officers

26   are exempted from some parts of California's firearms regulations.  (ECF No. 12 ¶¶ 116, 273

27   (emphasis omitted).)  Plaintiffs allege "this action seeks to put an end to government selecting

28   who gets to exercise their rights under the Second Amendment."  (ECF No. 12 ¶ 65.)  Plaintiffs

2

**ER-86**

1    thus request injunctive and declaratory relief which would grant them the same type of

2    exemptions from California law as active or retired peace officers, including the ability to keep,

3    bear, and travel with off-roster handguns, to possess, transport, and purchase standard size

4    handgun and rifle magazines, to travel interstate with magazines that contain more than 10 rounds

5    of ammunition, and to carry either a concealed weapon or openly carried weapon.  (ECF No. 12

6    ¶¶ 117, 274.)  Plaintiffs also request an "injunction to either be issued a lifetime CCW upon

7    application at the same cost that retired officers pay or be permitted to carry a weapon openly."

8    ECF No. 12 ¶¶ 118, 275.)

9          In addition to these broad challenges to California's firearms regulations, Plaintiffs

10   purport to assert claims against the Attorney General and various law enforcement officers and

11   agencies from the City of Citrus Heights, Sacramento County, and Placer County.  These claims

12   arise from three separate alleged incidents.  First, Cupp alleges Citrus Heights police officers

13   unlawfully arrested him on or about March 25, 2014, on a charge of carrying a concealed knife.

14   (ECF No. 12 ¶¶ 139–141.)  Cupp also sues about events occurring later that same day, claiming

15   that officers searched his "temporary residence without a warrant" and illegally seized six

16   firearms and two non-folding hunting knives owned by Cupp.  (ECF No. 12 ¶¶ 139–141.)  The

17   case against Cupp was dismissed by the district attorney two months after his arrest, and Cupp's

18   two knives were returned to him.  (ECF No. 12 ¶¶ 143–144.)  Second, Haven alleges a Placer

19   County sheriff's deputy unlawfully arrested him on February 8, 2014, on a charge of illegally

20   possessing a slungshot (a metal weight attached to a flexible handle for use as a weapon).  (ECF

21   No. 12 ¶¶ 222–230.)  Third, Haven alleges that on February 14, 2016, a Sacramento County

22   sheriff's deputy searched his residence without a warrant and without probable cause, and

23   subsequently seized three of Haven's firearms.  (ECF No. 12 ¶¶ 185–187.)

24         Both Haven and Cupp bring claims under the Second Amendment, Fourth Amendment,

25   and Fifth Amendment related to each incident (the third through eleventh claims for relief).

26   Local authorities have allegedly refused to return firearms that were seized from Plaintiffs

27   because Plaintiffs have refused to complete the Law Enforcement Gun Release ("LEGR")

28   application that is required by California Penal Code § 33850.  (ECF No. 12 ¶¶ 124–128, 148–

**ER-87**

1  149, 152, 189.)  This required form was allegedly created by Attorney General Harris in or

2  around January 2012.  (ECF No. 12 ¶ 149.)  Thus, Plaintiffs allege that the refusal to return their

3  firearms is "[a]t the direction of state law and [Harris]."  (ECF No. 12 ¶¶ 54, 189, 201, 210.)

4  Plaintiffs allege that the LEGR application violates the Second Amendment, the Fifth

5  Amendment right against self-incrimination, the Due Process Clause of the Fourteenth

6  Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 12

7  ¶¶ 128, 148.)  Plaintiffs appear to seek injunctive relief that would require the return of their

8  firearms without completing the form or paying the fee required by the California Penal Code.

9  (ECF No. 12 ¶¶ 132, 163, 171.)

10  **II.  STANDARD OF LAW**

11  Federal Rule of Civil Procedure ("Rule") 12(b)(1) allows a party, or the Court on its own

12  initiative, to challenge the court's subject matter jurisdiction at any stage in the litigation.  Fed. R.

13  Civ. P. 12(b)(1) & (h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  "A suit brought by

14  a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal

15  court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*, 386 F.3d

16  1169, 1175 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02

17  (1998)).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule

18  12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction by putting

19  forth "the manner and degree of evidence required" by whatever stage of the litigation the case

20  has reached.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the motion to dismiss

21  stage, Article III standing is adequately demonstrated through allegations of "specific facts

22  plausibly explaining" why the standing requirements are met.  *Barnum Timber Co. v. U.S. EPA*,

23  633 F.3d 894, 899 (9th Cir. 2011).  If the court determines at any time that it lacks subject matter

24  jurisdiction, "the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

25  **III.  ANALYSIS**

26  Plaintiffs brought twelve claims against Harris (Claims One through Twelve) for Second

27  Amendment and Equal Protection challenges to California gun laws, as well as alleged Second,

28  Fourth, and Fifth Amendment violations arising out of multiple and distinct incidents involving

4

**ER-88**

1     purportedly unlawful searches and seizures of firearms and other weapons. Harris moves to

2     dismiss all twelves claims against her on various grounds, including sovereign immunity, failure

3     to comply with Rule 8, failure to establish standing, and failure to state a claim under Rule

4     12(b)(6). Because the Court finds merit in Harris's first three arguments, it does not reach

5     Harris's last argument for failure to state a claim under Rule 12(b)(6).

6                     A.     Sovereign Immunity

7         Harris argues that all of Plaintiffs' Fourth and Fifth Amendment claims against her

8     (Claims Four, Five, Seven, Eight, Ten, and Eleven) are barred under Eleventh Amendment

9     Immunity. The Court agrees. "The Eleventh Amendment erects a general bar against federal

10     lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). However,

11     the *Ex parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity for

12     "prospective declaratory or injunctive relief against state officers in their official capacities for

13     their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

14     1128, 1134 (9th Cir. 2012) (citing *Alden v. Maine*, 527 U.S. 706, 747 (1999); *Ex parte Young*,

15     209 U.S. 123, 155–56 (1907). In making this exception, "it is plain that such officer must have

16     some connection with the enforcement of the act, or else it is merely making him a party as a

17     representative of the State, and thereby attempting to make the State a party." *Snoeck v. Brussa*,

18     153 F.3d 984, 986 (9th Cir. 1998). "This connection must be fairly direct; a generalized duty to

19     enforce state law or general supervisory power over the persons responsible for enforcing the

20     challenged provision will not subject an official to suit." *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697,

21     704 (9th Cir. 1992).

22         Here, Plaintiffs have failed to demonstrate how Harris has any connection to their Fourth

23     and Fifth Amendment claims. Rather, Plaintiffs have merely claimed that Harris's general

24     supervisory role as attorney general makes her subject to Fourth and Fifth Amendment claims

25     involving purportedly unlawful searches and seizures by county and city officers. Plaintiffs

26     simply have not demonstrated any connection between Harris and the allegedly illegal actions of

27     individual officers. Therefore, Plaintiffs have not shown a sufficient connection under *Ex parte*

28     *Young*. Moreover, the Court finds amendment would be futile as Plaintiffs fail to make an

**ER-89**

1    argument that Harris has a direct connection to the allegedly unconstitutional acts carried out by

2    various county and city officers.  Accordingly, the Court dismisses Plaintiffs' Fourth and Fifth

3    Amendment claims (Claims Four, Five, Seven, Eight, Ten, and Eleven) against Harris with

4    prejudice.

5                    B.    Failure to Comply with Rule 8

6            Rule 8(d)(1) requires that "each averment of a pleading shall be simple, concise, and

7    direct."  *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (affirming dismissal of

8    complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").  To

9    comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what

10   relief, and on what theory, with enough detail to guide discovery."  However, even if the factual

11   elements of a cause of action are present, but are scattered throughout the complaint and are not

12   organized into a "short and plain statement of the claim," dismissal for failure to satisfy Rule 8 is

13   proper.  *Id.* at 1178.  Further, "[t]he propriety of dismissal for failure to comply with Rule 8 does

14   not depend on whether the complaint is wholly without merit."  *Id.* at 1179.  Indeed, Rule 8(d)'s

15   requirement that each averment of a pleading be "'simple, concise, and direct,' applies to good

16   claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)."  *Id.*

17           The SAC is anything but simple, concise, and direct.  It consists of an indecipherable mix

18   of potential claims within twelve causes of action brought against Harris regarding guns, knives,

19   and slingshots on behalf of unrelated plaintiffs arising out of unrelated incidents.  The SAC

20   provides long string cites to unconnected portions of the California Penal Code without adequate

21   explanation as to which parts are being challenged and on what basis.  (*E.g.*, ECF No. 12 ¶¶ 116,

22   122, 128, 273; ECF No. 12 at 33–34.)  It includes erroneous or outdated statutory references in

23   multiple places.  (ECF No. 12 ¶ 91 (referencing Cal. Penal Code § 12031(b)); *E.g.*, ECF No. 12

24   ¶¶ 218, 224, 240, 253 (referencing Cal. Penal Code § 12210).)  It references the "Privileges and

25   Immunities Clause of the 14th Amendment," (ECF No. 12 ¶ 142), and the "Privileges or

26   Immunities clause of the Fourteenth Amendment," (ECF No. 12 at 34), but does not purport to

27   bring any of its twelve claims under either the "privileges and immunities" clause of Article IV of

28   the United States Constitution or "the "privileges or immunities" clause of the Fourteenth

                                          6

**ER-90**

1   Amendment.  Likewise, the SAC references the constitutional "right to travel," (ECF No. 12.

2   ¶ 112), without alleging this legal theory as the basis for any of its twelve causes of action.

3   Worse still, the SAC leaves the defendants and the Court to sift through voluminous, extraneous

4   allegations to guess at whether pertinent allegations might be hiding somewhere in the SAC.

5   (*E.g.*, ECF No. 12 ¶ 13 (irrelevant allegations regarding Rodney King riots and Reginald Denny);

6   ECF No. 12 ¶¶ 99–106 (irrelevant allegations regarding officer-involved shootings complete with

7   links to Wikipedia articles).)  It is simply not the Court's job to sift through voluminous

8   allegations to attempt to determine whether there may be a possible hidden cause of action.

9   *Walker v. Bowler*, No. 5:17-cv-01687-AG-JC, 2018 U.S. Dist. LEXIS 88481, at *19 (C.D. Cal.

10  May 24, 2018) (collecting cases) ("It is not the Court's responsibility to hunt through plaintiff's

11  prolix and rambling allegations in an attempt to determine whether plaintiff might have some

12  adequate basis for bringing an action in federal court."); *Cf. United States v. Dunkel*, 927 F.2d

13  955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

14          The disorganized nature of Plaintiffs' scattershot challenges to multiple, separate statutory

15  schemes that deal with unrelated weapons regulation issues leaves Harris guessing as to what

16  constitutional violations have been alleged.  Given this mash of claims, the SAC does not clearly

17  allege "who is being sued, for what relief, and on what theory, with enough detail to guide

18  discovery." *See McHenry*, 84 F.3d at 1178.  Accordingly, on this basis, the Court dismisses

19  Plaintiffs' remaining claims (Claims One, Two, Three, Six, Nine, and Twelve) against Harris

20  without prejudice.

21          C.      Standing

22          In addition to Plaintiffs' failure to comply with Rule 8, Harris argues that Plaintiffs have

23  failed to establish standing.[2]  "To establish standing, a plaintiff must show that '(1) he or she has

24  suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury

25  is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a

---

26  [2]      Harris does not challenge Plaintiffs' standing to assert their Second Cause of Action purportedly challenging

27  the LEGR requirements.  (ECF No. 30 at 8.)  However, as discussed above, the Court finds that the entire SAC
    suffers from Rule 8 deficiencies.  Moreover, Plaintiffs have completely failed to respond to any of Harris's

28  arguments regarding the deficiencies in their Second Cause of Action.  They have simply provided no explanation in
    either the SAC or their opposition explaining why the LEGR requirements violate the Second Amendment.

7

**ER-91**

1    favorable court decision.'" *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154

2    (9th Cir. 2015) (quoting *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225

3    (9th Cir. 2008)). "The party invoking federal jurisdiction bears the burden of establishing these

4    elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs state that this case is a

5    "constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-

6    25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code, §§ 26950,27650)." (ECF No. 12

7    ¶¶ 116, 273.) Harris argues that "Plaintiffs lack standing to obtain equitable relief regarding any

8    of these regulatory schemes because they have not sufficiently alleged a concrete plan or

9    intention to violate any of these laws." (ECF No. 19 at 14.) Plaintiffs, conversely, argue they

10    have established standing because "not a single defendant has stated that they do not and will not

11    enforce the challenged statutes" and "Plaintiffs fear of prosecution and arrest is not misplaced, for

12    each Plaintiff has already been arrested for possession of protected 'arms.'" (ECF No. 22 at 3.)

13        In assessing whether an injury is definite and concrete for standing purposes, "we consider

14    whether the plaintiffs face 'a realistic danger of sustaining a direct injury as a result of the

15    statute's operation or enforcement,' or whether the alleged injury is too 'imaginary' or

16    'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

17    1134, 1139 (9th Cir. 2000) (en banc) (citation omitted) (quoting *Babbitt v. United Farm Workers*

18    *Nat'l Union*, 442 U.S. 289, 298 (1979)). "[N]either the mere existence of a proscriptive statute

19    nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Id.*

20    Rather, "a '*genuine* threat of *imminent* prosecution' . . . is generally required of plaintiffs raising

21    pre-enforcement challenges to criminal statutes outside the First Amendment context." *Wilson v.*

22    *Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016) (quoting *San Diego Cty. Gun Rights Comm. v. Reno*,

23    98 F.3d 1121, 1126 (9th Cir. 1996)). Courts consider the following factors in determining

24    whether there is a genuine threat of prosecution: "(1) 'whether the plaintiffs have articulated a

25    "concrete plan" to violate the law in question,' (2) 'whether the prosecuting authorities have

26    communicated a specific warning or threat to initiate proceedings,' and (3) 'the history of past

27    prosecution or enforcement under the challenged statute.'" *Cal. Sea Urchin Comm'n v. Bean*,

28    883 F.3d 1173, 1180 (9th Cir. 2018) (quoting *Sacks v. Office of Foreign Assets Control*, 466 F.3d

1 | 764, 773 (9th Cir. 2006)).

2 |     The assertion that Plaintiffs "intend to travel in and out of the State of California with

3 | ammunition magazines which hold more than ten rounds, and they intend to purchase, possess,

4 | and use handguns which are not on California's approved list," (ECF No. 12 ¶ 58), is insufficient

5 | to support a finding of an injury in fact. Indeed, the Ninth Circuit has explicitly rejected this type

6 | of ambiguous language, holding that an assertion that plaintiffs "wish and intend to engage in

7 | activities prohibited by" gun control law is too vague to support a finding of an injury in fact.

8 | *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996). "'[S]ome

9 | day' intentions—without any description of concrete plans, or indeed even any specification of

10 | *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our

11 | cases require." *Lujan*, 504 U.S. at 564. Moreover, Plaintiffs have not alleged any past violations

12 | of the laws they are purportedly challenging. Rather, they allege that their firearms were

13 | "illegally seized." (ECF No. 12 ¶ 123; *accord* ECF No. 12 ¶¶ 138–139, 185, 222.) Thus, because

14 | Plaintiffs have failed to allege an imminent, concrete injury, they have failed to establish

15 | standing. Accordingly, the Court also dismisses Plaintiffs' First, Third, Sixth, Ninth, and Twelfth

16 | causes of action against Harris because Plaintiffs fail to establish standing. However, because the

17 | Court finds amendment would not be futile, the Court will allow Plaintiffs leave to amend.

18 |     **IV.**   **CONCLUSION**

19 |     For the foregoing reasons, the Court hereby GRANTS Harris's Motion to Dismiss. (ECF

20 | No. 18.) Accordingly, the Court hereby:

21 |     1. DISMISSES the Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Causes of Action

22 |        with prejudice.

23 |     2. DISMISSES the First, Second, Third, Sixth, Ninth, and Twelfth Causes of Action with

24 |        leave to amend.

25 |     Plaintiff is afforded thirty (30) days from the date of this Order to file an amended

26 | complaint in accordance with this Order.

27 | ///

28 | ///

1     IT IS SO ORDERED.

2   Dated: September 20, 2018

3

4

5                                Troy L. Nunley
                                 United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        10

1  Gary W. Gorski (SBN 166526)
   LAW OFFICES OF GARY W. GORSKI
2  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
3  916-758-1100
   CivilRightsAttorney@outlook.com
4  www.lonewolflaw.com

5  Daniel M. Karalash (SBN 176422)
   Strategic Law Command
6  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
7  (916) 787-1234
   dan@stratlaw.org
8  www.stratlaw.com

9  Attorneys for Plaintiffs
   JAMES EDWARD CUPP and
10 LAWRENCE "WOLF" HAVEN

11

12              THE UNITED STATES DISTRICT COURT

13        IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

14
   JAMES EDWARD CUPP, an individual;        )  **Case No.** 16-CV-00523-TLN-KJN
15 LAWRENCE "WOLF" HAVEN, an individual )
                                            )  PLAINTIFF LAWRENCE "WOLF"
16          Plaintiff,                      )  HAVEN'S NOTICE OF MOTION FOR
                                            )  PRELIMINARY EQUITABLE AND
17     vs.                                  )  INJUNCTIVE RELIEF AGAINST
                                            )  DEFENDANTS KAMALA D. HARRIS (now
18 KAMALA D. HARRIS Attorney General of the )  XAVIER BECERRA) Attorney General of the
   State of California, in her official capacity only; )  State of California, Sacramento Deputy Sheriff
19 et al.                                   )  JESSE BRUCKER, # 512, and SCOTT
                                            )  JONES, in his official capacity as Sheriff of
20          Defendants.                     )  County of Sacramento
                                            )
21 _____        )  **Constitutionality of State Statute Challenge**

22                                          **Date:** May 3, 2018
                                           **Time:** 2:00 p.m.
23                                          **Courtroom:** 2, 15th floor
                                           **Judge:** Hon. Troy L. Nunley
24                                          **Action Filed:** March 11, 2016

25
26     **TO  KAMALA D. HARRIS (now XAVIER BECERRA ) Attorney General of the State**

27 **of California, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, COUNTY OF**

28 **SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of**

                              **- 1 -**

   **Plaintiff's Motion for Preliminary Injunction and Equitable Relief**     **ER-95**

1  Sacramento and their attorneys of record:

2      **PLEASE TAKE NOTICE** that on May 3, 2018, 2:00 p.m., before the Hon. Judge: Hon.

3  Troy L. Nunley, Courtroom 2, 15th floor, in the above entitled court at 501 I Street, Sacramento, CA,

4  Plaintiff Lawrence "Wolf" Haven will be seeking preliminary equitable injunctive relief for the

5  return of his firearms and other property.

6      **Oral Argument is requested**, and is estimated to be approximately one hour.  The relief

7  sought does not require a bond as it involves the return of personal property and a conclusion of law

8  as to the constitutionality of a state statute.

9      Plaintiff moves for a preliminary injunction under rule 65 of the Federal Rules of Civil

10  Procedure. Specifically, Plaintiff will seek an order enjoining Defendants:

11      •    Kamala D. Harris (now Xavier Becerra) Attorney General of the State of California

12      •    Scott Jones as Sheriff of County of Sacramento

13      •    Sacramento Deputy Sheriff Jesse Brucker

14  In their official capacities and their agents, servants, employees, and those working in active concert

15  with them and each other, from enforcing or giving effect to any law or policy which precludes the

16  return of property, including firearms protected under the Second Amendment.

17      Sacramento Deputy Sheriff Jesse Brucker, # 512 is named as it is unknown if he still has

18  custody and control over the firearms seized, to the extent they are in his control, equitable relief is

19  sought against him personally to return the firearms that he removed from Haven's home.

20      Plaintiff Lawrence "Wolf" Haven seeks a preliminary injunction based upon the following

21  **Findings of Fact and Conclusions of Law**:

22  1.    Defendants are hereby enjoined and ordered to cease and desist confiscating

23      lawfully-possessed firearms from Haven and all other citizens, and retaining the firearms

24      without due process.

25  2.    It is further ordered that these defendants return the firearms, ammunition and magazines,

26      which have been confiscated by defendants, and identified as follows:

27      a.    Stevens Model 320 12 gauge Shotgun, serial # 122333P.
    b.    12 gauge shotgun shells loaded in firearm.

28      c.    Colt 1911 MKIV 45. Cal., serial # FG54400.

- 2 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**    **ER-96**

d.    .45 Cal. Bullets loaded in firearm.
e.    2 Colt 1911 Magazines.
f.    Armalite AR-7 .22 Cal., serial # 109802.

3.    An order that Haven and other citizens be able to purchase Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000.) just as California law enforcement officers allowed to purchase said handguns and the standard magazine which the handgun was designed to hold, irrelevant as to any new laws being passed prior to judicial review of this court.

4.    A conclusion of law that California Penal Code Section Penal Code, § 32000 is unconstitutional as it is a prior restraint on arms protected under the Second Amendment, and it violates the Equal Protection Clause of the 14th Amendment. *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078) is controlling.

5.    Irreparable injury in the absence of such an injunction, takes place each day the property is not returned so that Plaintiff my fully exercise his Second Amendment rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").

6.    IT IS HEREBY ORDERED that: Defendant Attorney General Xavier Becerra, and his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, and those duly sworn state peace officers and federal law enforcement officers who gain knowledge of this injunction order or know of the existence of this injunction order, are enjoined from implementing or enforcing California Penal Code sections the Unsafe Handgun Act (Cal. Penal Code §§ 31910, 32015(a)) and its progeny the Crime Gun Identification Act ("CGIA"). Assem. B. 1471, 2007-2008 Leg., Reg. Sess. § 1 (Cal. 2007). Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000.)

7.    Defendant Harris/Becerra shall provide, by personal service or otherwise, actual notice of this order to all law enforcement personnel who are responsible for implementing or enforcing the enjoined statute. The government shall file a declaration establishing proof of such notice.

8.    Plaintiff is likely to succeed on the merits.

- 3 -

9. Plaintiff raises sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward Plaintiff.

10. Plaintiff's burden of establishing irreparable injury in the absence of an injunction is neither remote nor speculative, but actual and imminent and cannot be remedied by an award of monetary damages alone as in order to exercise a right, the necessary tools must be returned to exercise such a right.

11. Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 for injunctive and declaratory relief.

12. The Second Amendment is the only right which requires access and ownership of a specific type of property (i.e. gun, knife, taser, etc.). To exercise this right, it essentially includes the right to have access to "arms" by way of sale or self manufacture. SAC ¶ 2; *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

13. A bond is not necessary the Court can make the determination whether the statute is constitutional as-written and as-applied.

14. On or around February 14, 2016, the following property owned by Lawrence "Wolf" Haven was seized without a warrant, pursuant to state law and municipal policy.

    a.    Stevens Model 320 12 gauge Shotgun, serial # 122333P.
    b.    12 gauge shotgun shells loaded in firearm.
    c.    Colt 1911 MKIV 45. Cal., serial # FG54400.
    d.    .45 Cal. Bullets loaded in firearm.
    e.    2 Colt 1911 Magazines.
    f.    Armalite AR-7 .22 Cal., serial # 109802.

Lawrence "Wolf" Haven Decl. ¶s 12-18, Exhibit "A" property sheet.

15. Haven was not arrested, no criminal complaint was filed, and no crime was ever committed by Lawrence "Wolf" Haven. Haven Decl. ¶ 12-14, 16, 18.

16. Irreparable injury in the absence of such an injunction, takes place each day the property is not returned so that Plaintiff my fully exercise his Second Amendment rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold

-4-

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

**ER-98**

1     that no further showing of irreparable injury is necessary.").

2  17.  Plaintiff is likely to succeed on the merits.

3  18.  Plaintiff raises sufficiently serious questions going to the merits to make them a fair ground

4     for litigation plus a balance of hardships tipping decidedly toward Plaintiff.

5  19.  Plaintiff is entitled to a preliminary injunction that is "'mandatory,' i.e., 'alter[s] the status

6     quo by commanding some positive act ...." and has met the heightened showing is necessary.

7     *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)).

8  20.  Plaintiff's burden of establishing irreparable injury in the absence of an injunction is neither

9     remote nor speculative, but actual and imminent and cannot be remedied by an award of

10     monetary damages alone as in order to exercise a right, the necessary tools must be returned

11     to exercise such a right.

12  21.  Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 for return of property seized.

13  22.  The Second Amendment is the only right which requires access and ownership of a specific

14     type of property (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the

15     right to have access to "arms" by way of sale or self manufacture.  SAC ¶ 2; *Caetano v.*

16     *Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

17  23.  A bond is not necessary since Lawrence "Wolf" Haven is entitled to a return of his property,

18     in addition to the property being necessary to fully exercise his rights to keep and bear arms

19     under the Second Amendment.

20     This motion is based on this notice of motion and motion, the memorandum of points and

21  authorities filed in support, and supporting declarations.  This motion is also based on the pleadings

22  and records already on file, and on any further matters the Court deems appropriate.

23                         Respectfully submitted,
                          LAW OFFICES OF GARY W. GORSKI
24  DATED: April 3, 2018      /s/ Gary W. Gorski
                          GARY W. GORSKI
25                         Attorney for Plaintiff Lawrence "Wolf" Haven

26

27

28

- 5 -

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**

Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA  95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

# THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE | **Case No.** 16-CV-00523-TLN-KJN<br><br>**DECLARATION OF LAWRENCE "WOLF" HAVEN IN SUPPORT OF MOTION FOR PRELIMINARY EQUITABLE AND INJUNCTIVE RELIEF AGAINST DEFENDANTS KAMALA D. HARRIS Attorney General of the State of California (Now XAVIER BECERRA) AND SCOTT JONES, Sheriff of County of Sacramento** |

<div align="center">- 1 -</div>

1   BRUCKER, # 512; COUNTY OF PLACER;
EDWARD N. BONNER, in his official capacity
2   as Sheriff of County of Placer; Placer County
Deputy MASON, # 181; Placer County Deputy
3   HINTZE, # 101.

4            Defendants.

5

6       **DECLARATION OF LAWRENCE "WOLF" HAVEN**

7       **I, LAWRENCE "WOLF" HAVEN, hereby make this declaration under the penalty of**

8 **perjury.**

9   1.      I, LAWRENCE "WOLF" HAVEN, am a competent adult, natural person, and citizen of the

10         United States of America, and at all relevant times a legal resident of California, and a citizen

11         of the state of California. Plaintiff LAWRENCE "WOLF" HAVEN is a legal resident of

12         County of Sacramento, California. All times hereinafter, I will identify myself in the <u>third</u>

13         <u>person</u> as simply HAVEN for ease of reference. .

14   2.      Haven has no criminal record, other than being arrested for a felony (the subject matter of the

15         action against Placer County in this case) and having his DNA and property seized for

16         possession of a horse leash.

17   3.      Haven is a Native American, a Veteran (1979-1983 U.S.N. Honorable Discharge) a hunter, a

18         motorcyclist and owner of firearms which were confiscated by the government without due

19         process or probable cause. As a Veteran and Native-American, Haven belongs to a class

20         which consists of a long tradition of keeping and bearing arms, especially handguns.

21   4.      While serving in the U.S. Navy, the United States entrusted Haven with a security clearance

22         to work on heavy explosives and ordinances without much ado.

23   5.      SCOTT JONES, is named in his official capacity as Sheriff of County of Sacramento, is

24         responsible for executing and administering the laws, customs, practices, and policies of

25         HARRIS complained of in this action. Sacramento Deputy Sheriff JESSE BRUCKER, # 512

26         at all times was acting under color of law and in accord with HARRIS and JONES policies.

27   6.      On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of

28         law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in

- 2 -

1    his official capacity as Sheriff of County of Sacramento, and acting without a warrant or

2    probable cause, illegally entered the residence of Haven and seized three firearms. Attached

3    hereto **Exhibit "A"** is a true and correct copy of the Sacramento County Sheriff's

4    Department Property Receipt/Report, report number 16-43771, dated 2/14/2016.

5   7.    Haven was not present to give a consent and was unaware of the entry of BRUCKER.

6   8.    Haven first became aware of the illegal search when he arrived home, and found **Exhibit**

7    **"A"** in his house and then checking to determine if in fact his firearms were missing – they

8    were.

9   9.    While in Haven's residence without informing Haven of such entry, BRUCKER seized the

10    property of Haven consisting of three firearms, including a shotgun, AR-7 semi-automatic

11    rifle and a standard issue military semi-automatic pistol.

12   10.    Haven was never arrested and no criminal complaint was ever filed; and the government has

13    failed to return Haven's three firearms and ammunition.

14   11.    Haven seeks immediate return of the following property seized by BRUCKER, HARRIS,

15    COUNTY OF SACRAMENTO and SCOTT JONES and acting without consent, a warrant or

16    probable cause:

17      a.    Stevens Model 320 12 gauge Shotgun, serial # 122333P.
     b.    12 gauge shotgun shells loaded in firearm.

18      c.    Colt 1911 MKIV 45. Cal., serial # FG54400.
     d.    .45 Cal. Bullets loaded in firearm.

19      e.    2 Colt 1911 Magazines.
     f.    Armalite AR-7 .22 Cal., serial # 109802.

20   12.    Haven wants to exercise his Second Amendment rights, but California has prevented Haven

21    from purchasing modern firearms which are available to the general public in all other states

22    and California peace officers.  Instead, California has created a system whereby not only are

23    Haven's guns confiscated, they must be replaced and with handguns with antiquated firing

24    mechanisms lacking external thumb safeties.

25   13.    Plaintiff is a law-abiding California resident who seeks to protect himself and his loved ones

26    with pistols owned and in common use by millions of Americans for self-defense. California

27    clearly infringes upon that right by completely barring Haven from acquiring, transferring, or

28

-3-

possessing commonly owned pistols that it pejoratively labels "unsafe handguns" or "dangerous weapons" — non-technical, political terms of ever-changing definition and scope with no connection to the public safety interests that the law purports to serve.

14. It is my experience that California's sweeping "Unsafe Handgun Act" prohibits the most popular handgun models in the country, which are lawfully owned and safely operated by millions of Americans in all states. To achieve such a broad ban, California classifies as "Unsafe Handgun" hundreds of specific, popular handguns by their make and model along with any other newly released handgun. None of these features that qualify a handgun for the State's prohibition have anything to do with rate of fire, ammunition capacity, power, or anything else linked to the handgun's potential to be used in a crime. The term "Unsafe Handgun" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of semi-automatic handguns so as to allow an attack on as many newly released into commerce handguns as possible on the basis of undefined danger exploited for crime. To the contrary, their purpose is to promote ergonomic comfort, accuracy, and safe handling—that is, to make the handguns safer and more effective for the core lawful purpose of self-defense. In sum, California's prohibition of handguns "in common use … for lawful purposes like self-defense" is based on distinctions that have nothing to do with public safety or any other valid government objective.

15. By criminalizing handguns that were lawful when purchased based on arbitrarily selected features—many of which actually make firearms that are commonly owned and used safer and more effective for self-defense—the Unsafe Handgun Act violates the Second Amendment.

16. And by severely constraining the right of firearm owners to transfer lawfully acquired firearms, and eliminating entirely the right of firearms owners "to pass on" their lawfully acquired property to their family members or heirs— "one of the most essential sticks in the bundle of" property rights, which has "been part of the Anglo-American legal system since feudal times"—without compensation, the Unsafe Handgun Act violates the Takings Clause.

17. Desiring to acquire, possess, use, and/or transfer these constitutionally protected firearms for

- 4 -

lawful purposes including self-defense, but justifiably fearing prosecution if they do, Plaintiffs respectfully request this Court: (1) declare that California Penal Code sections and regulatory scheme which results in a band of handguns which are safer, more accurate, and more reliable that what is currently allowed to be sold to plaintiff be declared unconstitutional in that it infringes the general populations constitutional rights; and (2) permanently enjoin Defendants from enforcing each of those sections to the extent they prevent law-abiding Californians, like Haven, from acquiring, possessing, using or transferring constitutionally protected arms.

18. Not only has Haven's Colt 1911 been illegally seized, he is prohibited from purchasing the same model or any other modern firearm which is available to all California active and retired peace officers, such as Sig Sauer p320, and at half the price of California approved antiquated firearms.

19. California and its law enforcement have prohibited the public from purchasing the safest, most technologically advanced striker handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P320, the Taurus 24/7 Series, and the Beretta APX. Instead, Haven is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.

20. It is general public knowledge, however, that California peace officers purchase hundreds of handguns due to their exemptions to California law.

21. Since at least 2011, as stated in **Exhibit "B"** (a copy of an Order for Partially Unsealing Search Warrant and Related Documents and Affidavit in Support of a Search Warrant), California has had knowledge that law enforcement officers were purchasing an unlimited amount of firearms for their own personal use and enjoyment, to the exclusion of Haven and all other citizens who are not law enforcement. Specifically, California has created exemptions for law enforcement to purchase "off-roster" handguns which are not approved by California, and provide them with superior Second Amendment rights without any of the burdens placed upon plaintiff. See https://oag.ca.gov/firearms/exemptpo

**- 5 -**

22. In fact, because of exemptions granted to law enforcement in California, the U.S. Department of Justice issued a "LAW ENFORCEMENT ADVISORY" on March 31, 2017, attached hereto as **Exhibit "C"**, outlining the blatant abuses by California peace officers ability to purchase "off-roster" firearms for their own use and enjoyment, completely unrelated to law enforcement activities.

23. For example, a police lieutenant had in his possession 61 guns, including at least 18 pistols that were "off roster." See **Exhibit "D"** attached hereto.

24. Attached hereto as **Exhibit "E"** is a copy of a news article headlined: "California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement", written by Greg Moran of the San Diego Union Tribune, greg.moran@sduniontribune.com, dated May 4, 2017.

25. As reported in the San Diego Union-Tribune, "California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement", and as noted in the article, the privilege to purchase off-roster handguns was expanded to employees of "water districts", "welfare fraud investigators", and employees of the Department of Motor Vehicles. See **Exhibit "E"** attached hereto. Haven takes this as a California flaunting the privileges bestowed on behalf of employees of government, but yet, as a veteran does not receive the same privileges.

26. Haven is aware of the incident of trucker Reginald Denny being dragged from his vehicle during the 1992 Rodney King riots. http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

27. Haven desires to travel with firearms and other arms, which as a citizen of the United States is legal and a constitutional right. Haven intends to travel in and out the State of California with ammunition magazines which hold more than ten rounds, and they intend to purchase, possess, and use handguns which are not on California's approved list.

28. Haven has called the Sacramento County Sheriff's Department on three occasions, attempting to obtain his firearms. Each time, no one knows anything and he is given the run around.

29. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

- 6 -

30. Haven had his firearms seized from his residences, without a warrant, without being charged, tried or convicted of a crime.

31. The firearms illegally seized have not been returned to plaintiff.

32. By failing to immediately return plaintiff's firearms once it was determined that no crime had been committed, HARRIS has deprived plaintiff's of his ability to exercise his Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech.

33. Plaintiff is even prohibited from purchasing a new Colt 1911 MKIV as California has now banned that particular firearm, and all other Colt products.

34. Plaintiff seeks a positive injunction for HARRIS and JONES to release and return all firearms and ammunition seized and confiscated.

35. The standard military side arm of the time Haven was in the Navy was a Colt 1911 .45 Caliber Semi-Automatic pistol, the modern version of which California has now banned and seized. Haven is even prohibited from purchasing an identical replacement of the Colt 1911 seized as California has banned that particular firearm, and most other Colt products; the one exception is that California peace officers are allowed to purchase thousands of handguns, including the Colt 1911, which are not available to the public in violation of the Equal Protection Clause. See **Exhibits "B" through "F".**

36. In sum, Haven owned a Colt 1911 MKIV, not just because it was a for self-defense, but also because it was a curio or relic of a bygone era of firearms which was the first semiautomatic pistol built for the military https://en.wikipedia.org/wiki/M1911_pistol – therefore, it had great sentimental value to him as well. The government enters Haven's house without a warrant, and seizes his Colt 1911 MKIV, for unknown reasons still today. Now, the government takes his 1911 without just compensation and without a warrant or probable cause, and that particular firearm is now banned in California. So, Haven owned a gun which was legal to possess in California, government takes gun, and then government tells him he is not allowed to purchase another Colt 1911 because they are no longer on the DOJ's "Roster of Handguns Certified for Sale" (**Exhibit "F"** is the latest version of the Roster)

- 7 -

1                               VERIFICATION

2       I, LAWRENCE "WOLF" HAVEN, have read the foregoing Declaration and it is true of my

3 own knowledge, except as to those matters stated on information or belief, and as to those matters, I

4 believe them to be true.  I declare under the penalty of perjury under the laws of the State of

5 California and United States that the foregoing is true and correct.

6       Executed on March 30, 2018, in Folsom, California.

7                               LAWRENCE "WOLF" HAVEN

8                               Declarant

- 8 -

**Exhibit "A."**

ER-108

SACRAMENTO COUNTY SHERIFFS DEPARTMENT
PROPERTY RECEIPT/REPORT

# FIREARMS

16-95111

REPORT NUMBER

| SEIZED BY SEARCH WARRANT NO. | | | | RECOVERED STOLEN | EVIDENCE | CONTRABAND & SEE REMARKS | SAFE KEEPING | FOUND |
|---|---|---|---|---|---|---|---|---|
| ASSET FORFEITURE | # OF SUSPECTS | 1 | MARK ONE BOX ONLY → | | | | | ☒ |

FILL IN ALL INFORMATION FOR SAFEKEEPING REPORTS

| REPORTING DATE 2-14-16 | DAY SUNDAY | TIME 0905 | CONNECTED REPORT(S) NUMBER AND TYPE | AUTHORITY AND SECTION PC 245 |
|---|---|---|---|---|

V  NAME (LAST FIRST MIDDLE)  HAKEN  LAURA

| DOB 10/17/63 | AGE 52 | SEX F | RACE W | X-3751934 | |

S  NAME (LAST FIRST MIDDLE)  HAKEN  LAWRENCE

| DOB 5/19/63 | AGE 52 | SEX M | RACE W | OTHER I.D. X-3761992 | |

| ITEM NO'S | | *FIREARMS CAN NOT BE RELEASED IN THE FIELD PER PENAL CODE SECTION 12021.3 | | | PROPERTY WAREHOUSE USE ONLY |
|---|---|---|---|---|---|
| JB1 | ☐ RIFLE ☒ SHOTGUN ☐ REVOLVER ☐ SEMI-AUTOMATIC ☒ LOADED ☐ UNLOADED ☐ OTHER | SERIAL # 1Z2333P | MAKE STEVENS | MODEL 320 | |
| | | CALIBER 12 GA | BARREL LENGTH 19" | COLOR BLACK | |
| | | REMARKS (WHERE AND HOW FOUND, ETC.) FOUND IN S1'S BEDROOM | | | |
| JB2 | ☐ RIFLE ☐ SHOTGUN ☐ REVOLVER ☒ SEMI-AUTOMATIC ☒ LOADED ☐ UNLOADED ☐ OTHER | SERIAL # FG44400 | MAKE COLT | MODEL MKIV (1911) | |
| | | CALIBER 45 | BARREL LENGTH 5" | COLOR BLACK | |
| | | REMARKS (WHERE AND HOW FOUND, ETC.) FOUND IN S1'S BEDROOM | | | |
| | ☒ RIFLE ☐ SHOTGUN ☐ REVOLVER ☐ SEMI-AUTOMATIC ☐ LOADED ☐ UNLOADED ☐ OTHER | SERIAL # 109802 | MAKE ARMALITE AR7 | MODEL AR7 | |
| | | CALIBER .22 | BARREL LENGTH 16" | COLOR BLACK | |
| | | REMARKS (WHERE AND HOW FOUND, ETC.) FOUND IN S1'S BEDROOM | | | |
| | ☐ RIFLE ☐ SHOTGUN ☐ REVOLVER ☐ SEMI-AUTOMATIC ☐ LOADED ☐ UNLOADED ☐ OTHER | SERIAL # | MAKE | MODEL | |
| | | CALIBER | BARREL LENGTH | COLOR | |
| | | REMARKS (WHERE AND HOW FOUND, ETC.) | | | |
| | ☐ RIFLE ☐ SHOTGUN ☐ REVOLVER ☐ SEMI-AUTOMATIC ☐ LOADED ☐ UNLOADED ☐ OTHER | SERIAL # | MAKE | MODEL | |
| | | CALIBER | BARREL LENGTH | COLOR | |
| | | REMARKS (WHERE AND HOW FOUND, ETC.) | | | |

RECOVERED STOLEN FIREARM VALUE $

| I ACKNOWLEDGE RECEIPT OF A COPY OF THE NOTICE ON THE BACK OF THIS FORM. | I WAVE ANY CLAIM TO THE FIREARMS LISTED ABOVE |
|---|---|
| SIGNATURE OF PERSON NOTIFIED | SIGNATURE OF PERSON NOTIFIED |
| DOB | DOB |
| DATE | DATE |

| FIREARMS TAKEN FOR | ☐ MENTAL HEALTH INCIDENTS | ☐ DOMESTIC VIOLENCE INCIDENTS | ☒ OTHER |
|---|---|---|---|

I RECOMMEND SSD PETITION COURT FOR RETENTION OF FIREARMS _____ (INITIALS OF OFFICER)

| NAME OF OFFICER TAKING PROPERTY (PRINT) BOUCHER | BADGE NO. 512 | DIV. NORTH | NAME OF SUPERVISOR (PRINT) | PAGE OF 1 |
|---|---|---|---|---|

COMPLETE REVERSE SIDE OF COPY 1 WHEN BOOKING PROPERTY

7400-076C (7401 FORM 035-2) (REV 1/13)

RECORDS - FORWARD REPORT TO:

| DATE BOOKED 2-14-16 | TIME BOOKED |
|---|---|

**ER-109**

RECEIPT

**Exhibit "B."**

1  BENJAMIN B. WAGNER
   United States Attorney
2  WILLIAM S. WONG
   MICHAEL D. ANDERSON
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile: (916) 554-2900

**ORIGINAL FILED**

JUN 0 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

6  Attorneys for the United States of America

7

8              IN THE UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 IN THE MATTER OF THE SEARCH OF:        CASE NO. 2:11-SW-0498 EFB

12 Snellings' Firearms                    [PROPOSED] ORDER FOR
   2675 Land Avenue                       PARTIALLY UNSEALING SEARCH
13 Sacramento, California                 WARRANT AND RELATED
                                          DOCUMENTS
14

15

16

17

18        The government's request to unseal the redacted affidavit in support of a search warrant,

19 which is attached to this order and is incorporated by reference, is GRANTED.

20 SO ORDERED:

21 DATED: 6-1-2012

22                                        HON. EDMUND F. BRENNAN
                                          U.S. Magistrate Judge
23

24

25

26

27

28

                                          3
                                      Exhibit "D"                              **ER-111**

**Exhibit "C."**

ER-112



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*550 N. Brand Blvd., Suite 800*
*Glendale, CA 91203*

*March 31, 2017*

www.atf.gov

Dear Law Enforcement Partners:

I am writing this letter to ask for your assistance in addressing an emerging problem that the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Los Angeles Field Division has identified. Our concern is that law enforcement officers are purchasing and then selling firearms in possible violation of Federal law. I urge you to pass on the attached "Law Enforcement Advisory" to educate your law enforcement officers about the requirements for obtaining a Federal Firearms License (FFL) before engaging in the business of buying and selling firearms. It is our goal to educate, not investigate, to ensure law enforcement officials comply with federal law in order to avoid unnecessary public embarrassment to themselves and your Department/Agency.

Recently, ATF has discovered that some law enforcement officers who do not have an FFL are purchasing "off roster" firearms (California Law restricts FFLs sales of these firearms to law enforcement only) and reselling those firearms to non-law enforcement entities for a profit. When a firearm is recovered at crime scene, a trace is typically conducted. When an "off roster" firearm is traced, it reveals the officer/agent's name as the original purchaser. In some instances, ATF has discovered officers who purchased more than 100 "off roster" firearms that were subsequently transferred to non-law enforcement individuals. Such transactions potentially constitute violations of federal firearms laws, to include dealing firearms without a FFL, and lying on a federal firearms form when purchasing said firearm—also known as "straw purchasing." When presented with compelling evidence of flagrant violations of federal firearms laws, ATF is obligated to conduct a criminal investigation.

ATF believes with your support, educating is the most effective way to stop the growing trend of law enforcement officials engaging in the business of unlicensed firearms dealings. In addition, ATF can provide in-person training to answer any questions or concerns you or your law enforcement personnel may have about federal firearms laws.

Please understand ATF's primary position is to educate and stop future occurrences to prevent these types of investigations. Feel free to reach out to my Division Counsel or me to request in-person training, or for further information and/or answers to any questions or concerns at 818-265-2500. Thank you for your understanding, time, and attention to this extremely important matter.

Sincerely,

Eric D. Harden
Special Agent in Charge
Los Angeles Field Division

**ER-113**



U.S. Department of Justice

**Bureau of Alcohol, Tobacco,**
**Firearms and Explosives**
**Los Angeles Field Division**
**March-2017**

# *****LAW ENFORCEMENT ADVISORY*****

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is responsible for enforcement of the Federal firearms laws and, as part of that duty, ATF licenses those persons lawfully dealing in firearms and prevents unlicensed dealing in violation of Federal law. We seek the cooperative efforts of the general public in fulfilling this mandate.

Federal firearms laws provide that a "dealer" in firearms includes persons engaged in the business of buying and selling firearms at wholesale and retail. *See* 18 U.S.C. § 921(a)(11). A person engages in business as a dealer in firearms by devoting time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. For example, per 18 U.S.C. § 921(a)(21)(C), **a law enforcement official who regularly acquires "off roster" firearms and sells or disposes of them for a profit is engaging in the business as a dealer of firearms and must be licensed.**

In addition, Title 18, United States Code, Sections 922(a)(6) and 924(a)(1)(A), provide that it is unlawful for any person to make a false statement on a Firearms Transaction Record, ATF Form 4473, when acquiring a firearm from a Federal firearms licensee. For example, it is unlawful to knowingly misrepresent that you are the transferee-buyer of a firearm when you acquire a firearm with the intent to sell or otherwise dispose of that firearm to someone else, <u>even</u> if the subsequent transfer is processed through a Federal firearms licensee. **You are not the actual transferee-buyer of a firearm if you are acquiring the firearm for, or on behalf of, any other person,** unless the firearm is a bona fide gift, or being retrieved after repair.

A person convicted of unlawfully engaging in the business of dealing in firearms without a license is subject to imprisonment for not more than five (5) years and/or a fine of up to $250,000.

Any person convicted of making a false statement to a Federal firearms licensee when acquiring a firearm may be imprisoned for up to ten (10) years for violating Section 922(a)(6), or five (5) years for violating Section 924(a)(1)(A) and/or a fine up to $250,000.

If you have any questions concerning engaging in the business as a dealer, please contact this office at (818) 265-2500.

**Exhibit "D."**

ER-115

# Here's all of the guns the ATF took from Pasadena Police lieutenant's Sierra Madre home

www.sgvtribune.com

4 mins read

More one third of the firearms seized in February from the home of Pasadena Police Lt. Vasken Gourdikian cannot be sold to civilians by gun shops in California, according to a review of the list of weapons by this newspaper.

These handguns can only be purchased by law enforcement officers, or through a private party, because the models do not appear on California's "roster" of guns approved for sale to the general public.

Agents with the Bureau of Alcohol, Tobacco Firearms and Explosives raided Gourdikian's Sierra Madre home in February, taking away a total of 61 guns and gun parts, including at least 18 pistols that were "off roster."

Officers can sell off-roster weapons to civilians, but only if they are not flipping the firearms to make a profit. An ATF notice sent to Southland law enforcement agencies in March called these sales "a growing trend" in the Los Angeles area.

Gourdikian, who served as an aide to Pasadena Police Chief Phillip Sanchez starting in June 2016, has not been charged with a crime in connection to the raid. The ATF has declined to provide details about their investigation.

ER-116

The veteran officer was placed on paid leave by Pasadena's police chief on the day of the raid. Officials have refused to comment, except to say the raid did not relate to Gourdikian's work.

Gourdikian joined the Pasadena Police Department in 1994 and became a lieutenant in 2013.

The $56,000 in firearms seized from his home became public this week through a [forfeiture notice](#) released by the U.S. Department of Justice. The ATF confiscated 32 pistols, 19 rifles, 5 rifle parts, 3 shotguns and 2 revolvers, according to the notice. Some of the assault rifles used large caliber, military-grade ammunition.

The guns found at Gourdikian's home ranged in value from $100 to $3,800. The most expensive firearm seized was a .40-caliber Wilson Combat CQB Pistol, worth $3,800.

The notice did not provide enough information to determine whether an additional eight pistols were on or off the state roster.

Gourdikian does not have a license to sell firearms, but the list of weapons indicated he had several duplicates of off-roster pistols in his possession at the time of the raid, which some experts said could show an intent to sell. For example, Gourdikian had four Springfield Armory Operator pistols, each valued at $950, at his home.

However, two gun shop owners, when presented with the list, said the forfeiture notice did not have enough information to show whether the models listed had any variations that might attract a collector to buy more than one.

A state exemption for officers allows them to buy "off roster" handguns for personal use, but "a growing trend" of officers reselling these firearms for a profit prompted the head of the ATF in Los Angeles to issue an advisory last month to Southland police and sheriff's departments.

**ER-117**

"In some instances, ATF has discovered officers who purchased more than 100 'off roster' firearms that were subsequently transferred to non-law enforcement individuals," wrote Eric Harden, special agent in charge of the ATF in Los Angeles.

Loyola Law School professor Laurie Levenson said that besides educating the police community, the notice would likely serve another purpose.

"They're looking for whether they can show intent to violate or circumvent the law," Levenson said. "Once you put out the warning, it will be much easier to prove that."

Federal prosecutors usually do not charge law enforcement officers unless they have a very strong case, Levenson noted. The fact that Gourdikian hasn't been charged in nearly three months could indicate they are making the case as concrete as possible before filing, she said.

"They don't like going after law enforcement officers, it's not a popular thing to do," Levenson said. "They found a lot of guns, but the real question is, was he flipping them, and how did they know to go after him?"

It's still not known what crime investigators believe Gourdikian committed. The forfeiture notice indicated Gourdikian's firearms were seized because of a violation of federal firearms laws, but does not specify the crime.

ATF Spokeswoman Ginger Colburn wouldn't comment on the ongoing investigations. She also wouldn't say whether the raid of Gourdikian's home was related to investigations mentioned in the advisory issued in March.

"These investigations started through routine, multiple sales and trace reports," Colburn said of the advisory in an email.

Colburn said the ATF's investigation of sales of off-roster weapons began when agents noticed firearms showing up at crime scenes that had been bought less than a decade before.

She said the national "time-to-crime" average for a weapon — the time between the date of the gun's purchase and the date when it was used in a crime — is about 10 years. Guns used in crimes within three years of being purchased raise special consideration from investigators, Colburn said.

"After further investigation, ATF personnel noticed some (law enforcement officers) had made significant purchases and resales," she said.

Officers who purchase and then resell the weapons without a federal firearms license could violate federal law, the agency noted. Any person who sells firearms for "livelihood and profit" must obtain a license under federal law.

In 2016, a Sacramento County Sheriff's Deputy received 18 months in prison and $7,000 fine for dealing firearms without a license and for conspiracy to make a false statement on a firearms record, according to the DOJ. The deputy, Ryan McGowan, used his position as a deputy sheriff to purchase dozens of off-roster firearms, reselling them at inflated prices on the private market.

A firearms licensee who assisted with the sales was also sentenced to a year in prison.

California's already limited and constantly shrinking roster of approved guns has created a high demand, according to C.D. Michel, a California attorney whose clients include the National Rifle Association of America and the California Rifle and Pistol Foundation.

"The only guns that the retailers can buy in this state from the manufacturers are models that are a couple of years old," Michel said.

**ER-119**

A seller might make hundreds or even thousands of dollars in profit off a single off-roster sale.

"The retailer can only sell an off-roster gun to a law enforcement officer, but the law enforcement officer can sell it to a private party," Michel said. "It's not illegal if you buy them for yourself and you go out and shoot it and decide you don't like it, and you want to sell it. You just can't have the intention to sell it to someone else when you buy it."

The seller has to do the transaction through someone with a federal firearms license to avoid breaking the law, but too many sales in a short period might also trigger an investigation.

Though Gourdikian had 56 guns seized, not all necessarily relate to the crime being investigated, Michel said. Agencies sometimes pad their numbers by seizing an entire collection, he added.

"They say if you sell one gun, your entire inventory is contraband," Michel said.

*Staff writers Ruby Gonzales and Brian Day contributed to this story.*

■

**Exhibit "E."**

# California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement

www.sandiegouniontribune.com |

ATF memo warns of law enforcement selling weapons

ATF in Los Angeles sends a memo to police agencies saying there is an "emerging problem" with law enforcement officers selling guns without a federal firearms license. Some sold more than 100 guns.

ATF in Los Angeles sends a memo to police agencies saying there is an "emerging problem" with law enforcement officers selling guns without a federal firearms license. Some sold more than 100 guns.

One day in February, agents from the federal Bureau of Alcohol, Tobacco, Firearms and Explosives searched a home on a quiet street in the Los Angeles County city of Sierra Madre, and left with enough guns to fill two trucks.

The home was owned by Pasadena police Lt. Vasken Gourdikian, the department's spokesman and former top aide to the chief. Federal records show investigators seized 57 firearms from the home, including pistols, rifles and shotguns.

The search also led to a letter six weeks later from the head of the ATF field office to police agencies across California, warning them of an "emerging problem" of police officers who may be illegally selling guns.

The search and letter have shined a light on a little-known provision of the state's gun control measures that allows peace officers to buy weapons the general public can't.

California maintains a list of handguns that can be legally purchased by the public. But the law establishing that list also includes an exemption that allows some members of law enforcement — police officers and sheriff's deputies, for example — to buy "off-roster" guns.

The Sierra Madre search came five months after Gov. Jerry Brown signed an Assembly bill that widely expanded the number of peace officers eligible to purchase weapons that are otherwise unavailable to the public.

The legislation, AB2165, specified sworn peace officers in 19 different agencies qualified for the off-roster exemption. It said that if they passed a three-day basic firearms training course they were covered under the exemption. One gun control advocate said the bill made tens of thousands of peace officers potentially eligible to buy off-roster weapons.

The legislation includes state peace officers in the Parks and Recreation Department, Alcoholic Beverage Control, Department of Motor Vehicles, Department of State Hospitals, and state university and community college systems. It also includes rangers with water districts, county welfare fraud investigators and probation officers.

**ER-122**

The bill, sponsored by Assemblyman Rob Bonta, D-Oakland, does tighten one part of the exemption: It limits the newly exempt officers to reselling the off-roster guns to other law enforcement members only.

That might not be all that it seems.

Brandon Combs, executive director of The Calguns Foundation, a group that advocates for gun owners and gun rights, said the law puts the onus on licensed firearms dealers — who have to broker any sale through a private-party transfer — to verify that the buyer and seller are both in law enforcement and can make the sale.

But Combs said there is no database or any other method available for dealers to verify that information.

"The state doesn't give any mechanism for dealers to understand … are you subjected to this exemption, are you bound to this limitation," he said.

So if a person on the latest list decided to break the rules and sell the weapon to someone who wasn't in law enforcement, the buyer could simply claim to be an employee of one of the many groups that now has permission from the state to buy them — and there's no way for the dealer to check.

Combs said some dealers, concerned they could lose their license or face criminal charges if they unwittingly facilitate an illegal sale, have resorted to obtaining signed declarations promising no laws are being broken from anyone who wants to transfer an off-roster gun.

Opponents of the legislation were concerned about expanding the exemption and questioned whether the state had the ability to enforce the provision limiting resales to other law enforcement officers, said Griffin Dix, co-chairman of the Oakland chapter of the Brady Campaign to Prevent Gun Violence.

"A lot of us in the gun violence prevention camp did not like this," Dix said. "It expanded that exemption for law enforcement to too many people, and for government employees who were really nor primarily police officers."

Since the bill became law, Dix said he has been told the state Bureau of Firearms has said it has the ability to track the sales.

That could not be confirmed. The state attorney general's press office would not answer a question about whether the state can track such sales. In a statement, it said it could "not provide legal analysis or legal opinion."

Bonta's legislation was also sponsored by three large law enforcement groups — the California Statewide Law Enforcement Association, State Coalition of Probation Organizations and the Police Officers Research Association of California.

Another two dozen law enforcement unions and organizations supported the bill, including unions for San Diego police and county probation officers.

Bonta, who has sponsored several gun control bills, said in a statement that AB2165 was designed to allow "certain trained law enforcement officers to continue using their firearms after the state's list of prohibited guns changed."

He also said that after discussions with the Brady campaign the language restricting sales only to other law enforcement officers was added.

Advocates for stricter gun measures contend that each exception to the state's roster undermines the effect and intent of the law. Combs, who advocates for gun owners and who has long argued against the existence of the state's roster and its growing list of exemptions, said he rarely agrees with gun control supporters — except on this issue.

"Every time you create a special exemption, and you say this one over here is better than this person over here because of who they work for, that is undermining equality in our society and it is inherently wrong," Combs said.

The ATF letter sent on March 31 after the search of Gourdakian's home said the agency is concerned about "the growing trend of law enforcement officials engaging in the business of unlicensed firearms dealing."

While private party transfers are limited to five per year, there is no limit on the number of guns that can be sold in each sale. But if officers are buying and reselling multiple weapons for profit as a business, they need a federal firearms license.

Officers selling multiple weapons without a license was one of the concerns ATF identified in its letter. It is unknown if that is what led to the search of Gourdakian's home. The search warrant signed by a federal judge is under seal, and the Pasadena police officer has not been charged.

**Twitter: @gregmoran**

greg.moran@sduniontribune.com

ER-124

**Exhibit "F."**

ER-125

State *of* California Department *of* Justice 



# XAVIER BECERRA

*Attorney General*

Search

Translate Website | Traducir Sitio Web

# Roster of Handguns Certified for Sale

As of January 1, 2001, no handgun may be manufactured within California, imported into California for sale, lent, given, kept for sale, or offered/exposed for sale unless that handgun model has passed firing, safety, and drop tests and is certified for sale in California by the Department of Justice. Private party transfers, curio/relic handguns, certain single-action revolvers, and pawn/consignment returns are exempt from this requirement.

View list of handgun models whose status has changed recently:

- Recently Added Handgun Models, pdf
  Models added recently to the Roster of Handguns certified for sale.
- Recently Removed Handgun Models, pdf
  Handgun models whose certification has expired or otherwise removed
  from the Roster. These models may no longer be sold, offered for sale,
  or manufactured in California.

**ER-126**

1 | Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
2 | 3017 Douglas Blvd. Suite 150
Roseville, CA 95661
3 | 916-758-1100
CivilRightsAttorney@outlook.com
4 | www.lonewolflaw.com

5 | Daniel M. Karalash (SBN 176422)
Strategic Law Command
6 | 3017 Douglas Blvd. Suite 150
Roseville, CA 95661
7 | (916) 787-1234
dan@stratlaw.org
8 | www.stratlaw.com

9 | Attorneys for Plaintiffs
JAMES EDWARD CUPP and
10 | LAWRENCE "WOLF" HAVEN

11

12 | **THE UNITED STATES DISTRICT COURT**

13 | **IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

14

| | | |
|---|---|---|
| 15 | JAMES EDWARD CUPP, an individual; ) <br> LAWRENCE "WOLF" HAVEN, an individual ) | **Case No.** 16-CV-00523-TLN-KJN |
| 16 | Plaintiff, ) | PLAINTIFF LAWRENCE "WOLF" <br> HAVEN'S NOTICE OF MOTION AND <br> MOTION FOR A PRELIMINARY |
| 17 | vs. ) | INJUNCTION AGAINST DEFENDANTS <br> KAMALA D. HARRIS Attorney General of |
| 18 | KAMALA D. HARRIS Attorney General of the ) <br> State of California, in her official capacity only; ) | the State of California (Now XAVIER <br> BECERRA) AND EDWARD N. BONNER, in |
| 19 | et al. ) | his official capacity as Sheriff of County of <br> Placer |
| 20 | Defendants. ) | **Constitutionality of State Law at Issue** |

21

22 | **Date:** May 3, 2018
**Time:** 2:00 p.m.
23 | **Courtroom:** 2, 15th floor
**Judge:** Hon. Troy L. Nunley
24 | **Action Filed:** March 11, 2016

25 | **TO DEFENDANTS KAMALA D. HARRIS Attorney General of the State of California**

26 | **(Now XAVIER BECERRA) AND EDWARD N. BONNER, in his official capacity as Sheriff of**

27 | **County of Placer and their attorneys of record:**

28 | **PLEASE TAKE NOTICE** that on May 3, 2018, 2:00 p.m., before the Hon. Judge: Hon.

**- 1 -**

**Plaintiff's Motion for Preliminary Injunction and Equitable Relief**     **ER-127**

1  Troy L. Nunley, Courtroom 2, 15th floor, in the above entitled court at 501 I Street, Sacramento, CA,

2  Plaintiff Lawrence "Wolf" Haven will be seeking preliminary equitable injunctive relief for the

3  return of his firearms and other property.

4      **Oral Argument is requested**, and is estimated to be approximately one hour.  The relief

5  sought does not require a bond as it involves the a single issue regarding the enforcement and

6  constitutionality of California Penal Code §§ 22210 and 22290 as those sections pertain to a

7  "slungshot" as-written and as-applied.

8      Plaintiff moves for a preliminary injunction under rule 65 of the Federal Rules of Civil

9  Procedure and the Federal Declaratory Judgment Act (28 U.S.C.. §§ 2201 et seq.). Specifically,

10  Plaintiff will seek an order enjoining Defendants:

11      •    Kamala D. Harris (now Xavier Becerra ) Attorney General of the State of California

12      •    Edward N. Bonner, Sheriff of County of Placer

13  In their official capacities and their agents, servants, employees, and those working in active concert

14  with them and each other, from enforcing or giving effect to any law or policy which precludes the

15  return of property, including arms and property protected under the First, Second, Fifth and

16  Fourteenth Amendment, and the mandatory destruction of the property following an arrest.

17      Plaintiff Lawrence "Wolf" Haven seeks a preliminary injunction based upon the following

18  **Findings of Fact and Conclusions of Law**:

19  1.    California Penal Code Section 22210 is unconstitutional as a "leaded cane, or any instrument

20      or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or

21      **slungshot**." are all protected arms under the Second Amendment, especially a "slungshot".

22      *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

23  2.    California Penal Code Section 22290 mandate that any leaded cane or any instrument or

24      weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or

25      **slungshot** be confiscated and summarily destruction whenever found within the state." The

26      Takings Clause of the Fifth Amendment provides "nor shall private property be taken for

27      public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies

28      against the States through the Fourteenth Amendment. See *Lingle v. Chevron U.S.A. Inc.*, 544

- 2 -

1  U.S. 528, 541 (2005); *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015)(leading Taking

2  case regarding personal property).

3  3.  Irreparable injury in the absence of such an injunction, takes place each day the property is

4  not returned so that Plaintiff my fully exercise his Second Amendment rights. *Melendres v.*

5  *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373

6  (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed.

7  1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold

8  that no further showing of irreparable injury is necessary.").

9  4.  Plaintiff is likely to succeed on the merits.

10  5.  Plaintiff raises sufficiently serious questions going to the merits to make them a fair ground

11  for litigation plus a balance of hardships tipping decidedly toward Plaintiff.

12  6.  Plaintiff's burden of establishing irreparable injury in the absence of an injunction is neither

13  remote nor speculative, but actual and imminent and cannot be remedied by an award of

14  monetary damages alone as in order to exercise a right, the necessary tools must be returned

15  to exercise such a right.

16  7.  Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 for injunctive and declaratory

17  relief.

18  8.  The Second Amendment is the only right which requires access and ownership of a specific

19  type of property (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the

20  right to have access to "arms" by way of sale or self manufacture.  SAC ¶ 2;  *Caetano v.*

21  *Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

22  9.  A bond is not necessary the Court can make the determination whether the statute is

23  constitutional as-written and as-applied.

24  This motion is based on this notice of motion, memorandum of points and authorities, and

25  supporting declarations, and the records already on file.

26  Respectfully submitted,
   LAW OFFICES OF GARY W. GORSKI

27  DATED: April 2, 2018  /s/ Gary W. Gorski
   GARY W. GORSKI

28  Attorney for Plaintiff Lawrence "Wolf" Haven

- 3 -

1   Gary W. Gorski (SBN 166526)
    LAW OFFICES OF GARY W. GORSKI
2   3017 Douglas Blvd. Suite 150
    Roseville, CA  95661
3   916-758-1100
    CivilRightsAttorney@outlook.com
4   www.lonewolflaw.com

5   Daniel M. Karalash (SBN 176422)
    STRATEGIC LAW COMMAND
6   3017 Douglas Blvd. Suite 150
    Roseville, CA  95661
7   (916) 787-1234
    dan@stratlaw.org
8   www.stratlaw.com
    Attorneys for Plaintiffs
9   JAMES EDWARD CUPP and
    LAWRENCE "WOLF" HAVEN

10

11          **THE UNITED STATES DISTRICT COURT**

            **IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**
12

13  JAMES EDWARD CUPP, an individual;      )   **Case No.**  16-CV-00523-TLN-KJN
    LAWRENCE "WOLF" HAVEN, an individual   )
14         Plaintiff,                       )
                                            )
15      vs.                                 )
                                            )   **DECLARATION OF LAWRENCE**
16  KAMALA D. HARRIS Attorney General of the )   **"WOLF" HAVEN IN SUPPORT OF**
    State of California, in her official capacity only; )   **MOTION FOR A PRELIMINARY**
17  CITY OF CITRUS HEIGHTS; Citrus Heights   )   **INJUNCTION AGAINST DEFENDANTS**
    Police Department Chief CHRISTOPHER W.  )   **KAMALA D. HARRIS Attorney General of**
18  BOYD, in both his individual and official )   **the State of California (Now XAVIER**
    capacity; Citrus Heights Police Officer  )   **BECERRA) AND EDWARD N. BONNER,**
19  CHRISTIAN BAERRESEN, # 371; Citrus      )   **in his official capacity as Sheriff of County**
    Heights Police Officer THOMAS LAMB, #   )   **of Placer**
20  315; UNKNOWN CITRUS HEIGHTS POLICE )
    OFFICER Badge Number 323;               )
21  UNKNOWN CITRUS HEIGHTS POLICE          )
    OFFICER who prepared Report Number      )
22  CH14-02589 on 03/26/2014; TWO           )
    UNKNOWN NAMED PEACE OFFICERS OF
23  THE CITRUS HEIGHTS POLICE
    DEPARTMENT; COUNTY OF
24  SACRAMENTO; SCOTT JONES, in his
    official capacity as Sheriff of County of
25  Sacramento; Sacramento Deputy Sheriff JESSE
    BRUCKER, # 512; COUNTY OF PLACER;
26  EDWARD N. BONNER, in his official capacity
    as Sheriff of County of Placer; Placer County
27  Deputy MASON, # 181; Placer County Deputy
    HINTZE, # 101.
28

                              **- 1 -**

                                                        **ER-130**

1       Defendants.

2       **DECLARATION OF LAWRENCE "WOLF" HAVEN**

3       **I, LAWRENCE "WOLF" HAVEN, hereby make this declaration under the penalty of**

4 **perjury, and based upon my own personal knowledge.**

5   1.     I, LAWRENCE "WOLF" HAVEN, am a competent adult, natural person, and citizen of the

6         United States of America, and at all relevant times a legal resident of California, and a citizen

7         of the state of California. Plaintiff LAWRENCE "WOLF" HAVEN is a legal resident of

8         County of Sacramento, California.  All times hereinafter, I will identify myself in the <u>third</u>

9         <u>person</u> as simply Haven for ease of reference.

10   2.     Haven has no criminal record, other than being arrested for a felony (the subject matter of

11         this case) and having his DNA and property seized for possession of a horse leash.

12   3.     Haven is a Native American, a Veteran (1979-1983 U.S.N. Honorable Discharge) a hunter, a

13         motorcyclist and owner of firearms which were also confiscated by the government without

14         due process or probable cause (see claim against Sacramento County in this case). As a

15         Veteran and Native-American, Haven belongs to a class which consists of a long tradition of

16         keeping and bearing arms of all types, including a bow and arrow, slingshot, rock, or a rope

17         with a heavy rock or metal ball attached which the government calls a "slungshot".

18   4.     While serving in the U.S. Navy, the United States entrusted Haven with a security clearance

19         to work on heavy explosives and ordinances without much ado.

20   5.     In Haven's common experience in life and in the Navy is that a "slungshot" was a maritime

21         tool consisting of a weight, or "shot," affixed to the end of a long cord. After being arrested

22         for a "slungshot", Haven had research what is a prohibited "slungshot" and his internet

23         research uses the term interchangeably as a tool or arms, but a horse lead is not a slungshot.

24   6.     EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer, is responsible

25         for executing and administering the laws, customs, practices, and policies of HARRIS and

26         the State of California, and HARRIS is the Chief Law Enforcement Officer.

27   7.     California Penal Code Section 22210 states that it is a criminal offense for "any person in this

28         state who ... possesses any leaded cane, or any instrument or weapon of the kind commonly

<div align="center">- 2 -</div>

1    known as a billy, blackjack, sandbag, sandclub, sap, or slungshot."

2    8.    In addition, California Penal Code Section 22290 mandates that any leaded cane or any

3    instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub,

4    sap, or slungshot is a nuisance and "shall be subject to confiscation and summary destruction

5    whenever found within the state."

6    9.    On February 8, 2016, Deputy MASON and Deputy HINTZE from the Placer County Sheriff's

7    Department stopped Haven for what they falsely alleged was an "illegal weapon" hanging

8    from the handle bars of his motorcycle, affectionately known as his "iron horse."

9    10.   Haven had attached to his motorcycle an <u>ornamental</u> and common "horse lead" (thick nylon

10    rope with a metal <u>quick release</u> - identical to a dog leash, but sturdier).

11    11.   Deputy MASON and Deputy HINTZE directed a dysphemism toward a simple decorative

12    horse leash describing it as a "slungshot" and thereby arrested Haven, and ensured that a

13    criminal complaint would be filed against Haven.

14    12.   Attached hereto as **Exhibit "A"** is a true and correct copy of the evidence photo as provided

15    to Haven as a result of the Criminal Complaint filed against Haven.  This is a photo which

16    accurately represents the leash hanging off Haven's motorcycle handlebar, except the photo is

17    not a color copy.  The true color was black and red, almost identical to Haven's attorney's

18    dog leash in **Exhibit "C"**.

19    13.   **Exhibit "A"** was a gift to Haven, and had much sentimental value to him.

20    14.   Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed

21    against Haven for "possession" of **Exhibit "A"**.

22    15.   Deputy MASON and Deputy HINTZE arrested Haven for the **<u>felonious</u>** possession of a horse

23    leash, which they called a "slungshot", per California Penal Code Section 22210.

24    16.   Mr. Haven was placed under <u>felony arrest</u> whereby he was incarcerated, his DNA was

25    forcibly removed from his person, and then he had to pay bail to get released.

26    17.   While arresting Haven, deputies HINTZE and MASON made various pejorative comments to

27    Haven that he was a criminal simply by his expressive attire (e.g. leather vest with expressive

28    patches and his buck knife, which was also a gift), stickers on his Harley Davidson (e.g.

- 3 -

1   "Support Your Local Hells Angels", "Support Your Local Boozefighters", "Support Your

2   Local Henchmen", and "Support Your Local Misplaced Souls") and accouterments on his

3   Harley Davidson motorcycle (i.e. iron horse leash/lead which was also a gift); all of which

4   are protected by either the First or Second Amendment, or both.

5   18.   No reasonable officer or person would deem a horse leash or a cord with a quick release as an

6        illegal weapon pursuant to P.C. 22210.  The jail booking officers expressed their shock that

7        Haven was arrested for **Exhibit "A"**, and stated that was a first for them.

8   19.   Haven was also damaged by having to pay for bail and getting his motorcycle out of

9        impound.

10  20.   On March 3, 2016, the Placer County District Attorney filed charges against Haven for

11       violating California Penal Code section 22210.  Haven was arraigned on the charges in Placer

12       County Superior Court.

13  21.   Placer County Deputy Sheriffs were acting under color of law and policy of the Sheriff and

14       State of California's Chief Law Enforcement Officer.

15  22.   Though the Placer County District Attorney dismissed the criminal complaint, at the direction

16       of HARRIS and BONNER pursuant to state laws, policies and regulations, Haven had his

17       ornamental horse leash permanently seized by Placer Deputy Sheriffs, though no crime had

18       been committed, and destroyed pursuant to California Penal Code Section 22290.

19  23.   California and its law enforcement are enforcing laws which criminalize any "potential" arm,

20       including ornamental motorcycle accouterments found at the local feed and equestrian shops,

21       or possessed by horse and dog owners. See **Exhibit "C"** attached hereto are pictures of

22       Haven using so-called slungshots with his friend's horse in Placer County and his attorney's

23       German Shepard in Sacramento County, and the various leads similar to the one seized as

24       depicted in **Exhibit "A"**. **Exhibit "D"** are illustrative examples of protected speech.

25  24.   Because of the threat of repeated arrest, prosecution and confiscation of property, Haven has

26       a legitimate real fear of riding his motorcycle with an ornamental horse lead referred to as a

27       "slungshot" by the Placer County deputies and Sheriff, and the State of California.

28  25.   Haven desires and intends to travel with arms on his motorcycle, including a horse leash

                                        **- 4 -**

referred to as a "slungshot" and other arms, which as a citizen of the United States is legal

and a constitutional right.  See *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016).

26.    The government intends to seize all arms and prosecute Haven for carrying and possessing

arms which California deems prohibited, in total disregard of the Second Amendment.

27.    The Placer County District attorney threatened to prosecute Haven if he did not agree to have

his property (i.e. "arm") destroyed.  Under the threat of prosecution, Haven had no choice but

to agree as the government has unlimited resources to prosecute Haven for a weapons

violation, and thereby making Haven ineligible to ever own a firearm or any other arm

protected by the Second Amendment.

28.    Haven had his property seized and destroyed under the threat of continued prosecution.

29.    By threatening future prosecutions for possession of a horse leash referred to as a "slungshot"

simply because it has a quick release, and injunction is necessary as the threat of arrest,

prosecution and destruction of property will chill Haven's free exercise of his liberty, and his

First and Second Amendment rights.

30.    Instead of the government immediately returning Haven's "arm" once it was determined that

no crime had been committed, HARRIS has deprived Haven's of his ability to exercise his

property rights, and First and Second Amendment rights by taking the very instrument

necessary for exercising such rights.

31.    Haven is even prohibited from purchasing a new leash (dysphemism called a "slungshot") as

California has criminalized possession of any horse lead, regardless of its use.

32.    Haven seeks to enjoin HARRIS (State of California), BONNER, MASON, and HINTZE

from enforcing P.C. 22210 and  22290, regardless as to the nomenclature of an "arm", and

especially as to any horse lead or dog leash being categorized as a "slungshot", and a

declaration that P.C. 22210 and  22290 are unconstitutional as written and/or as applied.

33.    The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for

self-defense purposes, and arms includes more than just firearms; it includes all non-lethal

weapons for purposes of self defense, including a leaded cane, or any instrument or weapon

of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot.

-5-

1

### VERIFICATION

2   I, LAWRENCE "WOLF" HAVEN, have read the foregoing Declaration and it is true of my

3   own knowledge, except as to those matters stated on information or belief, and as to those matters, I

4   believe them to be true. I declare under the penalty of perjury under the laws of the State of

5   California and United States that the foregoing is true and correct.

6   Executed on March 30, 2018, in Folsom, California.

7

LAWRENCE "WOLF" HAVEN

8   Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -

**Exhibit "A."**



**Exhibit "B."**

R. SCOTT OWENS
Placer County District Attorney
State Bar No. 146406
10810 Justice Center Drive, Suite 240
Roseville, CA  95678-6231

Tel: (916) 543-8000
Fax: (916) 543-2550

FILED

SUPERIOR COURT OF CALIFORNIA
COUNTY OF PLACER

MAR 03 2016

JAKE CHATTERS
EXECUTIVE OFFICER & CLERK
By: M. Ryan, Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF PLACER

--oOo--

THE PEOPLE OF THE
STATE OF CALIFORNIA,

Plaintiff,

-vs-

LAWRENCE JACK HAVEN

Defendant.

_____/

DA NO. 16-02-097707

COURT NO. 62-144141

**SPECIFIED MISDEMEANOR
COMPLAINT**

### COUNT ONE

On or about February 8, 2016, in the County of Placer, the crime of POSSESSION OF A DEADLY WEAPON, in violation of Penal Code section 22210, a specified misdemeanor, was committed by LAWRENCE JACK HAVEN, who did unlawfully manufacture, cause to be manufactured, import into the State of California, keep for sale, offer and expose for sale, and give, lend, and possess an instrument

1

**ER-139**

and weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap and slungshot.

### COUNT TWO

On or about February 8, 2016, in the County of Placer, the crime of UNSAFE SPEED, in violation of Vehicle Code section 22350, an infraction, was committed by LAWRENCE JACK HAVEN, who did willfully and unlawfully violate the basic speed law by driving upon a highway at a speed greater than was reasonable and prudent having due regard for existing conditions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 25, 2016, at Roseville, Placer County, California.

R. SCOTT OWENS, DISTRICT ATTORNEY

By: _____
TIMOTHY J. SANDS,
DEPUTY DISTRICT ATTORNEY

---

**NOTICE.**

**PLEASE TAKE NOTICE THAT COUNSEL FOR THE PEOPLE HEREBY MAKE AN INFORMAL DEMAND FOR DISCOVERY (PURSUANT TO PENAL CODE SECTION 1054.3) WITHIN FIFTEEN DAYS.**

---

2

ER-140

**Exhibit "C."**

ER-141



Mac Henderson, Photographer ©





MacHenderson, Photographer ©



Mac Henderson, Photographer ©





**Exhibit "D."**

ER-148















ER-155







ER-158





1  Gary W. Gorski (SBN 166526)
   LAW OFFICES OF GARY W. GORSKI
2  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
3  916-758-1100
   CivilRightsAttorney@outlook.com
4  www.lonewolflaw.com

5  Daniel M. Karalash (SBN 176422)
   Strategic Law Command
6  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
7  (916) 787-1234
   dan@stratlaw.org
8  www.stratlaw.com

9  Attorneys for Plaintiffs
   JAMES EDWARD CUPP and
10 LAWRENCE "WOLF" HAVEN

11

12              **THE UNITED STATES DISTRICT COURT**

13        **IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

14
   JAMES EDWARD CUPP, an individual;      )   **Case No.**  16-CV-00523-TLN-KJN
15 LAWRENCE "WOLF" HAVEN, an individual )
                                          )   PLAINTIFF JAMES EDWARD CUPP'S
16           Plaintiff,                   )   NOTICE OF MOTION FOR PRELIMINARY
                                          )   EQUITABLE AND INJUNCTIVE RELIEF
17      vs.                               )   AGAINST DEFENDANTS XAVIER
                                          )   BECERRA (formerly KAMALA D. HARRIS)
18 KAMALA D. HARRIS Attorney General of the )   Attorney General of the State of California
   State of California, in her official capacity only; )   (Now XAVIER BECERRA); Citrus Heights
19 et al.                                 )   Police Department Chief CHRISTOPHER W.
                                          )   BOYD, in both his individual and official
20           Defendants.                  )   capacity
   ─────────────────────────────────     )
21                                            **Date:** May 3, 2018
                                              **Time:** 2:00 p.m.
22                                            **Courtroom:** 2, 15th floor
                                              **Judge:** Hon. Troy L. Nunley
23                                            **Action Filed:** March 11, 2016

24
        **TO XAVIER BECERRA (formerly KAMALA D. HARRIS) Attorney General of the**
25
   **State of California, Citrus Heights Police Department Chief CHRISTOPHER W. BOYD;**
26
   **COUNTY OF SACRAMENTO and their attorneys of record:**
27
        **PLEASE TAKE NOTICE** that on May 3, 2018, 2:00 p.m., before the Hon. Judge: Hon.
28

                                    **- 1 -**
   ─────────────────────────────────────────────────────────
        **Plaintiff's Motion for Preliminary Injunction and Equitable Relief**          **ER-161**

1    Troy L. Nunley, Courtroom 2, 15th floor, in the above entitled court at 501 I Street, Sacramento, CA,

2    Plaintiff James Edward Cupp will be seeking preliminary equitable injunctive relief for the return of

3    his firearms and other property.

4           **Oral Argument is requested**, and is estimated to be approximately one hour. The relief

5    sought does not require a bond as it involves the return of personal property.

6           Plaintiff moves for a preliminary injunction under rule 65 of the Federal Rules of Civil

7    Procedure. Specifically, Plaintiff will seek an order enjoining Defendants:

8           •      Xavier Becerra (formerly Kamala D. Harris) Attorney General of the State of

9                  California

10          •      Citrus Heights Police Department Chief Christopher W. Boyd

11   In their official capacities and their agents, servants, employees, and those working in active concert

12   with them and each other, from enforcing or giving effect to any law or policy which precludes the

13   return of property, including firearms protected under the Second Amendment.

14          Plaintiff Cupp seeks a preliminary injunction based upon the following **Findings of Fact and**

15   **Conclusions of Law**:

16   1.     Cupp is a citizen of the State of South Dakota. Cupp Decl. ¶ 1.

17   2.     Cupp has no criminal record. Cupp Decl. ¶3

18   3.     As a resident of the state of South Dakota, and fully exercising the rights and privileges

19          thereof as a free person of that state, and under the laws of the State of California, the

20          property and firearms seized by the government were and are legal to possess. Cupp Decl.

21          ¶6; *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

22   4.     On March 25, 2014, Cupp's home was a Fifth Wheel, made by KZ, Escalade. CUPP only

23          lives in his mobile home, and does not own a house affixed to land, nor does he rent any

24          fixed home. Therefore, CUPP continuously travels through California which the possession

25          of certain arms and weapons are not protected, though allowed in every other western state.

26   5.     On or around March 25, 2014, while under arrest, and handcuffed, Defendants agents entered

27          the home of Cupp and seized his property without probable cause, even though they had

28          sufficient time to obtain a warrant and no exigency existed. Cupp's RV was miles away,

                                              **- 2 -**

                    **Plaintiff's Motion for Preliminary Injunction and Equitable Relief**     **ER-162**

1      locked, and unoccupied.  Cupp Decl. ¶s 13-15.

2 6.      On or around March 25, 2014, the following property owned by Cupp was seized without a

3      warrant, pursuant to state law and municipal policy.

4      a.      Winchester 12 gauge Shotgun serial number 159604A.

5      b.      Savage 30.06 Bolt Action Rifle serial number F426673.

6      c.      Marlin .22 Caliber Rifle serial number 06156981.

7      d.      Browning .22 Caliber Pistol serial number 65SNV01591.

8      e.      Raven .22 Caliber Pistol serial number 188422.

9      f.      Smith and Wesson .357 Caliber Pistol serial number BUF2660.

10      g.      Ammo Can containing 260 rounds of 30.06 ammunition.

11      h.      Black Holster.

12      i.      10 rounds of .22 Caliber ammunition.

13      j.      6 rounds of .25 Caliber ammunition. Cupp Decl. ¶s 12, 14, 18, 19, 21, 22, Exhibit "B"

14      property sheet.

15 7.      On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number

16      14M02083) was filed against Cupp for violation of penal code section 21310.  Cupp Decl. ¶

17      5.

18 8.      On 05/30/2014, the case against Cupp was dismissed with prejudice on the Sacramento

19      District Attorney's own motion as the two knives were not daggers nor were they concealed.

20      This fact resulted in an order for return of all property to Cupp which was seized. Cupp Decl.

21      ¶ 18.

22 9.      Plaintiff's two knives were returned to him which were arms protected by the Second

23      Amendment per *Caetano v. Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078),

24      but not his six firearms and other firearm related tools and equipment which were also

25      protected by the Second Amendment. Cupp Decl. ¶ 19; *Caetano v. Massachusetts*, 577 U.S.

26      ___, (March 21, 2016)(No. 14-10078).

27 10.      Irreparable injury in the absence of such an injunction, takes place each day the property is

28      not returned so that Plaintiff my fully exercise his Second Amendment rights. *Melendres v.*

1    *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373

2    (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed.

3    1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold

4    that no further showing of irreparable injury is necessary.").

5    11.    Plaintiff is likely to succeed on the merits.

6    12.    Plaintiff raises sufficiently serious questions going to the merits to make them a fair ground

7          for litigation plus a balance of hardships tipping decidedly toward Plaintiff.

8    13.    Plaintiff is entitled to a preliminary injunction that is "'mandatory,' i.e., 'alter[s] the status

9          quo by commanding some positive act ...." and has met the heightened showing is necessary.

10          *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)).

11    14.    Plaintiff's burden of establishing irreparable injury in the absence of an injunction is neither

12          remote nor speculative, but actual and imminent and cannot be remedied by an award of

13          monetary damages alone as in order to exercise a right, the necessary tools must be returned

14          to exercise such a right.

15    15.    Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 for return of property seized.

16    16.    The Second Amendment is the only right which requires access and ownership of a specific

17          type of property (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the

18          right to have access to "arms" by way of sale or self manufacture.  SAC ¶ 2;  *Caetano v.*

19          *Massachusetts*, 577 U.S. ___, (March 21, 2016)(No. 14-10078).

20    17.    A bond is not necessary since Cupp is entitled to a return of his property, in addition to the

21          property being necessary to fully exercise his rights to keep and bear arms under the Second

22          Amendment.

23          This motion is based on this notice of motion and motion, the memorandum of points and

24    authorities filed in support, and supporting declarations.  This motion is also based on the pleadings

25    and records already on file, and on any further matters the Court deems appropriate.

26                                Respectfully submitted,
                                    LAW OFFICES OF GARY W. GORSKI

27    DATED: March 16, 2018          /s/ Gary W. Gorski___
                                    GARY W. GORSKI

28                                Attorney for Plaintiff Cupp

**- 4 -**

---

Gary W. Gorski (SBN 166526)
LAW OFFICES OF GARY W. GORSKI
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
916-758-1100
CivilRightsAttorney@outlook.com
www.lonewolflaw.com

Daniel M. Karalash (SBN 176422)
Strategic Law Command
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs
JAMES EDWARD CUPP and
LAWRENCE "WOLF" HAVEN

## THE UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual;<br>LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on 03/26/2014; TWO UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS POLICE DEPARTMENT; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE | **Case No.** 16-CV-00523-TLN-KJN<br><br><br>**DECLARATION OF JAMES EDWARD CUPP** |

**- 1 -**

ER-165

1    BRUCKER, # 512; COUNTY OF PLACER;
     EDWARD N. BONNER, in his official capacity
2    as Sheriff of County of Placer; Placer County
     Deputy MASON, # 181; Placer County Deputy
3    HINTZE, # 101.

4            Defendants.

5

6                **DECLARATION OF JAMES EDWARD CUPP**

7        **I, JAMES EDWARD CUPP, hereby make this declaration under the penalty of**

8 **perjury.**

9   1.      I am a competent adult, natural person, and citizen of the United States of America, and at all

10         relevant times a legal resident of Emery, South Dakota, and a citizen of the state of South

11         Dakota. All times hereinafter, I will identify myself in the <u>third person</u> as simply CUPP for

12         ease of reference.

13   2.      CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996),

14         until he changed his residency to South Dakota, which requires no such license as open carry

15         is allowed.

16   3.      CUPP has no criminal record.

17   4.      His home is a Fifth Wheel, made by KZ, Escalade. CUPP only lives in his mobile home, and

18         does not own a house affixed to land, nor does he rent any fixed home. Therefore, CUPP

19         continuously travels through California which the possession of certain arms and weapons

20         are not protected, though allowed in every other western state.

21   5.      CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer,

22         working in the petroleum industry between North Dakota and Texas.

23   6.      As a resident of the state of South Dakota, and fully exercising the rights and privileges

24         thereof as a free person of that state, the only limitation CUPP has on firearm ownership is

25         that which is prohibited by federal law.

26   7.      CUPP presently intends to travel, and has traveled into the state of California with firearms,

27         including firearms with magazines containing more than ten rounds of ammunition, including

28         a semi-automatic handgun with a detachable 11-15 round magazine and a semi-automatic

1     rifle with a detachable 11-30 round magazine, loaded and readily accessible in both in his

2     temporary residence while working in California and loaded in his work vehicle (either

3     concealed or open) while traveling through dangerous areas of California, such as Richmond,

4     Oakland, and Los Angeles.

5  8.    CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the

6     1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving

7     through Los Angeles during a civil protest in the course and scope of his employment as a

8     trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

9  9.    CUPP desires to travel with firearms and knives, which as a citizen of the state of South

10     Dakota is legal, into the state of California to protect himself, his family, his property, and his

11     friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and

12     while performing various other activities such as carrying large sums of money associated

13     with his work.

14  10.   Moreover, CUPP specifically has concern for the safety of himself and his cargo because of

15     truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

16  11.   Attached hereto as **Exhibit "A"** is a true and correct copy of the Sacramento Superior Court

17     case docket noting the charge for PC 21310, carrying a concealed knife and a picture of the

18     visible knife on the outside part of CUPP's leather vest.

19  12.   Attached hereto as **Exhibit "B"** is a true and correct copy of the inventory sheet denoting the

20     firearms confiscated by the police, and incorporated herein.

21  13.   Prior to March 25, 2014, CUPP had physically walked into CITRUS HEIGHTS POLICE

22     DEPARTMENT and into SACRAMENTO SHERIFF'S DEPARTMENT headquarters with

23     the very same knife vest he was later arrested for. The Sheriff's department simply said he

24     has to leave the vest outside. No threat of arrest was ever made.

25  14.   On or around March 25, 2014, approximately employees of the CITY OF CITRUS

26     HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus

27     Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE

28     OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER

<div align="center">- 3 -</div>

1  who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without

2  probable cause, issued him a temporary restraining order, for a concealed weapon, searched

3  his temporary residence without a warrant, which was 8-9 miles away and illegally seized six

4  (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting

5  knives that he carried openly on his person.

6  15.  CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post

7  bail, utilizing a bail bondsman, costing him damages.

8  16.  On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number

9  14M02083) was filed against CUPP for violation of penal code section 21310, which

10  provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2

11  of Title 2, any person in this state who carries concealed upon the person any dirk or dagger

12  is punishable by imprisonment in a county jail not exceeding one year or imprisonment

13  pursuant to subdivision (h) of Section 1170."

14  17.  California Penal Code Section 21310 violates the Second Amendment, Privileges and

15  Immunities Clause of the 14th Amendment.

16  18.  On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento

17  District Attorney's own motion, resulting in an order for return of property to CUPP illegally

18  seized.

19  19.  Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related

20  tools and equipment.

21  20.  At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief

22  CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights

23  Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS

24  LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number

25  323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number

26  CH14-02589 had time to obtain a warrant.

27  21.  To this day, under color of law, Defendants have maintained possession over Plaintiffs'

28  personal property, including ammunition, speed loaders, holsters, and $1,000.

-4-

22. CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

23. In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

24. The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" was created by Defendant HARRIS in or around January 2012.

25. On or about February 27, 2015, CUPP, through his attorney, filed a Claim for Damages (Tort Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

26. In addition, this Claim was also an internal affairs complaint.

27. In a letter dated March 23, 2015 rejecting both CUPP's tort claim and demand for return of his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an unconstitutional law and creating a undue burden on CUPP.

28. Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer acting under color of law in both his individual and official capacities.

29. Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

30. Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this

-5-

1   action.

2   31.  Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official

3        capacities.

4   32.  Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

5        employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

6        HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

7        responsible for enforcing the code sections complained of in this action.

8   33.  Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

9        of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

10       used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

11       this action.

12  34.  UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

13       servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

14       CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. §

15       1983, and is responsible for enforcing the code sections complained of in this action.

16  35.  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

17       02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant

18       CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under

19       color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing

20       the code sections complained of in this action.

21  36.  Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

22       POLICE DEPARTMENT have not been located, but they will be added to this complaint

23       upon uncovering their names through discovery.

24  37.  Plaintiff seeks monetary relief for being deprived of his right and property.

25  38.  Plaintiff seeks inThe Fourth Amendment guarantees law-abiding citizens to be secure in their

26       persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

27       violated, and no warrants shall issue, but upon probable cause, supported by oath or

28       affirmation, and particularly describing the place to be searched, and the persons or things to

- 6 -

1   be seized.

2   39. CUPP was arrested and his property confiscated without probable cause for carrying a

3   concealed weapon, protected by the Second Amendment, and which was not concealed, but

4   instead, carried in a sheath as all fixed blade knives are carried that way.

5   40. The Fifth Amendment guarantees that "due process of law" be part of any proceeding that

6   denies a citizen "life, liberty or property".

7   41. CUPP was arrested and his property confiscated without due process for carrying a concealed

8   weapon, protected by the Second Amendment, and which was not concealed, but instead,

9   carried in a sheath as all fixed blade knives are carried that way.

10  42. However, former government workers have expansive Second Amendment rights, while all

11  others have their rights continuously being stripped with no end in sight.

12  43. Even active duty, part-time and retired Arson-Inspectors are included within the group of

13  those who are not subject to the draconian laws of California.  See **Exhibit "C"** attached.

14  44. As stated in **Exhibit "D"**, law enforcement officers can purchase an unlimited amount of

15  firearms, without restriction or limited to specific type of caliber or capacity, nor are they

16  limited to the safe gun list, exercising their Second Amendment rights without any of the

17  burdens placed the plaintiffs.

18  45. Plaintiffs seeks:

19      a.   To purchase and travel through California with off-roster handguns, which are legal

20           under federal law.

21      b.   To possess and purchase and travel through California with standard size handgun

22           and rifle magazines which most exceed 10 rounds,

23      c.   To travel interstate with magazines which contain more than 10 rounds of

24           ammunition.

25      d.   To either be issued a lifetime CCW upon application at the same cost that retired

26           officers pay or be permitted to carry a weapon openly.

27  46. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal

28  Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950,

**- 7 -**

27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

    a.    Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

    b.    Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

    c.    Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are subjected to (this is especially important since it allows interstate travel with a loaded firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

    d.    If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

    e.    Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense, which they can keep even after their government service is terminated.

47. In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law enforcement for carrying knives in a manner which is legal under California law, open and exposed carry in a sheath.

48. CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun with a 11-15 round capacity in the saddle bag of his motorcycle.

49. Thus, because CUPP is continuously harassed for carrying knives exposed, it is CUPP's position that he wants to carry them concealed on his person so that he is not profiled by law enforcement or that he causes unnecessary worry to citizens carrying constitutional protected arms.

50. CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while

- 8 -

1    traveling into and through California, and taking up temporary residence for purposes of

2    work.

3    51.    CUPP has unconstitutionally been prevented from doing so because of the code sections

4           challenged and complained of herein, and because of Defendants' unconstitutional

5           application and enforcement of those same sections.

6    52.    CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a

7           concealed weapon on his person, in his vehicle, or in his RV without a permit or prior

8           permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and

9           imprisonment if he were to possess of open carried and/or concealed weapon on his person,

10          in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a

11          permit or prior permission authorizing him to do so.

12   53.    Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way

13          to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

14   54.    At all relevant times, CUPP had temporary abode was parked at a friend's house, which was

15          docked, plugged, and his truck was parked in another location.

16   55.    At all relevant times, CUPP was traveling through California with his travel trailer, and only

17          staying temporarily for a few weeks visiting a friend.

18   56.    Plaintiff intends to travel in and out the State of California with ammunition magazines

19          which hold more than ten rounds, and they intend to purchase, possess, and use handguns

20          which are not on California's approved list.

21   57.    However, because of the threat of enforcement, and actual enforcement, plaintiff seeks a

22          permanent injunction enjoining HARRIS and the State of California from enforcing the

23          magazine ban and safe gun list ban.

24   58.    Dealers may not sell any new handgun unless it is listed in the state Department of Justice

25          roster of handguns certified for sale.

26   59.    The prohibition of purchasing and/or transportation of the safest, most technologically

27          advanced handguns, which have manual thumb safeties, such as the Ruger SR Series

28          handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P320, the

**- 9 -**

1      Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead is relegated to purchasing

2      20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual

3      thumb safeties.

4   60.   The lack of these safety features have resulted in an inordinate amount of accidental

5      discharges by law enforcement, including the state's own experts who shot themselves.

6   61.   Plaintiff has the same rights active and retired officers have to purchase (and use for personal

7      self-defense) the best and safest tool for the job.

8   62.   California active and retired officers legally purchased 7,600 banned assault weapons through

9      a legal exemption promulgated by the Attorney General

10      (http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-assault-weapo

11      ns-ill/), and now the municipalities are jumping on the bandwagon of carving rights and

12      privileges for only the chosen few (i.e. retired law enforcement).

13      http://www.washingtontimes.com/news/2015/dec/3/retired-lapd-cops-exempted-ban-high-cap

14      acity-magaz/

15   63.   Plaintiff are seeks:

16      a.     To purchase and travel through California with off-roster handguns, which are legal

17          under federal law.

18      b.     To possess and purchase and travel through California with standard size handgun

19          and rifle magazines which most exceed 10 rounds,

20      c.     To travel interstate with magazines which contain more than 10 rounds of

21          ammunition, and travel through California.

22      d.     To either be issued a lifetime CCW upon application at the same cost that retired

23          officers pay or be permitted to carry a weapon openly.

24   64.   The Second Amendment to the United States Constitution provides:

25      A well regulated Militia being necessary to the security of a free State, the right of the
       people to keep and bear Arms shall not be infringed.

26   65.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry

27      operational handguns and rifles for self-defense.

28

**- 10 -**

66. The Second Amendment is incorporated to the states through the Fourteenth Amendment.

67. The United States Supreme Court has held that the right to keep and bear arms is a fundamental right.

68. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

69. Unlike California, the majority of the population of the United States are armed, and permitted to purchase, transport and carry commonly used handguns and rifles.

70. Semi-Automatic firearms and large capacity ammunition magazines are banned in only five states: California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore) Massachusetts, New Jersey (Camden, Newark, Jersey City), New York (New York) and D.C. (Hawaii's ban applies only to such magazines used with handguns).

71. As a result, these states also have the highest murder rates and crime ridden cities in the U.S.

72. Residents of Washington, D.C., with the lowest private gun ownership rate in the country, are more than five (5) times more likely to be the victim of a violent crime as compared to residents of Wyoming, with the highest private gun ownership rate in the country.

73. In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period."

74. Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

75. The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

76. Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

77. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when

- 11 -

1    confronted by an armed attacker.

2    78.   California Penal Code section 25400 does not prohibit a citizen of the United States over 18
3          years of age who is in lawful possession of a handgun, and who resides or is temporarily in
4          California, from transporting the handgun by motor vehicle provided it is unloaded and
5          stored in a locked container . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

6    79.   It is illegal for any person to carry a handgun concealed upon his or her person or concealed
7          in a vehicle without a license issued pursuant to Penal Code section 26150 . (Pen . Code, §
8          25400)  A firearm locked in a motor vehicle's trunk or in a locked container carried in the
9          vehicle other than in the utility or glove compartment is not considered concealed within the
10         meaning of the Penal Code section 25400; neither is a firearm carried within a locked
11         container directly to or from a motor vehicle for any lawful purpose . (Pen . Code, § 25610)
12         As stated by Defendant HARRIS online.

13   80.   It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place,
14         on any public street, or in any place where it is unlawful to discharge a firearm . (Pen . Code,
15         § 25850, subd . (a))  As stated by Defendant HARRIS online.

16   81.   Nonconcealable firearms (rifles and shotguns) are not generally covered within the provisions
17         of California Penal Code section 25400 and therefore are not required to be transported in a
18         locked container . However, as with any firearm, nonconcealable firearms must be unloaded
19         while they are being transported . A rifle or shotgun that is defined as an assault weapon
20         pursuant to Penal Code section 30510 or 30515 must be transported in accordance with Penal
21         Code section 25610.  As stated by Defendant HARRIS online.

22   82.   Peace officers and honorably retired peace officers having properly endorsed identification
23         certificates may carry a concealed weapon at any time. Otherwise, these exemptions apply
24         only when the firearm is carried within the scope of the exempted conduct, such as hunting or
25         target shooting, or within the course and scope of assigned duties, such as an armored vehicle
26         guard transporting money for his employer. A person who carries a loaded firearm outside the
27         limits of the applicable exemption is in violation of the law, notwithstanding his or her
28         possession of an occupational license or firearms training certificate. (Pen . Code, §

- 12 -

**ER-176**

1      12031(b).) As stated by Defendant HARRIS online.

2   83.   AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic

3         Partner of Peace Officer Killed in the Line of Duty: Provides an exception to the Unsafe

4         Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of

5         duty to purchase their spouse/domestic partner's service weapon and hi-capacity magazines.

6         (Pen . Code, § 32000.)

7   84.   This extends to ammunition, current authority for a city or county to impose a charge relating

8         to the seizure, impounding, storage, or release of a firearm. (Pen . Code, § 33880).

9   85.   Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are

10        "typically used for lawful purposes" and are deemed presumptively reasonable as active duty

11        and retired law enforcement are granted the rights and privileges to use them when applying

12        reasonable force.

13  86.   Widespread law enforcement use of a particular firearm, weapon or magazine, or edged

14        weapon proves that particular arms are common and typically used for lawful purposes,

15        rather than "dangerous and unusual."

16  87.   Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national

17        consensus" against a law which existed in only six states, and not federally); *Kerr v.*

18        *Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws

19        "consider the rarity of state enactments in determining whether they are constitutionally

20        permissible.").

21  88.   Standard magazine bans are dangerous because they reduce typical defensive fire power.

22        They shift risk of injury from violent aggressors to law-abiding innocents.

23  89.   Typically, in an officer shooting of an <u>unarmed</u> civilian, they discharge more than 10 rounds

24        to stop a person.

25  90.   Commencing in the 1999 (the time after when most police switched to semi-automatic pistols

26        from revolvers), there began a spike in the total number of rounds expended by police

27        shooting innocent people.

28  91.   In 1999, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of

                                              **- 13 -**

1   his apartment in New York City. He committed no crime and was unarmed. The shooting

2   death of an <u>unarmed</u> 23-year-old Guinean immigrant in New York City is anything but

3   anomalous in today's America.

4   92.   A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on

5         him following a high-speed chase down an area freeway. The same month, New York police

6         fired at a suspected murderer 84 times.

7   93.   Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on

8         August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at

9         the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

10  94.   Officer Wilson shot Michael Brown in the back 12 times.

11        https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

12  95.   In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two

13        separate incidents in the early morning hours of February 7, 2013, police fired on people who

14        turned out to be unrelated to Dorner and that Dorner (an African-American male) was not

15        present at either incident and no firearms were involved in either incident (i.e. the police

16        victims were unarmed).

17        https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidenti

18        fications

19  96.   Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers

20        for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic

21        females. Remarkably, they survived.

22  97.   Approximately 25 minutes after that incident, officers from the Torrance Police Department

23        struck and opened fire on another vehicle. Like the first shooting, the white male was

24        unarmed and did not match the description of Dorner. Over 30 bullets were fired at him.

25  98.   Therefore, since HARRIS and the State of California have determined that discharging more

26        than 10 rounds for purposes of self defense is a reasonable use of force by law enforcement,

27        then the Second Amendment and 14th Amendment protects the rights of all citizens to posses

28        magazines and firearms holding more than 10 rounds, and no more than 30, since the average

- 14 -

1   magazine for all makes and models of firearms is between 11 to 30 rounds.

2   99.    Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald*

3          *v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass

4          and enforce laws resulting in categorical and constructive bans on firearms and attachments

5          thereto that millions of Americans, veterans, and retired peace officers commonly own for

6          lawful purposes, which then results in constructive ban on the right to travel.

7   100.   Other than California, only six other states (which obviously include Connecticut, New York

8          and New Jersey) have unconstitutional draconian firearms laws which no other state even

9          remotely mandates, including limitations on the carrying or possession of specific weapons

10         and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine

11         bans).

12  101.   Plaintiff seeks injunctive relief to enjoin HARRIS and the State of California from enforcing

13         laws, rules and regulations which:

14         a.      Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are

15                 legal under federal law.

16         b.      Limit plaintiffs' ability to possess, transport and purchase standard size handgun and

17                 rifle magazines which most exceed 10 rounds, as these are basic parts to modern

18                 operational and safe firearms.

19         c.      Limit plaintiffs' ability to travel interstate with magazines which contain more than

20                 10 rounds of ammunition.

21         d.      Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon.

22                 Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

23  102.   Based upon information and belief, plaintiffs' firearms were illegally seized pursuant to this

24         statutory section.  If another section was relied upon, then this challenge is to the offending

25         statute.

26  103.   On January 1, 2005, the Law Enforcement Gun Release (LEGR) process became effective

27         with the addition of Penal Code (PC) section 12021.3.

28  104.   This process requires any person who claims title to any firearm that is in the custody or

- 15 -

1   control of a court or law enforcement agency and who wishes to have the firearm returned to

2   submit a LEGR Application form for a determination by the California Department of Justice

3   (the Department) as to whether he or she is eligible to possess a firearm.

4   105.   Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s)

5   that is in the custody or control of a court or law enforcement agency must submit a LEGR

6   Application along with the appropriate fees to the Department.

7   106.   Additionally, if an individual is seeking the return of a long gun purchased prior to January 1,

8   2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted

9   along with the appropriate fees.

10  107.   In violation of the Second Amendment, Defendant HARRIS and MUNICIPAL

11  DEFENDANTS enforce a statutory scheme pursuant to Penal Code Section Penal Code

12  Section 33850 (application for return of firearm), 33855 (authority of law enforcement to

13  enforce), 33860, 33880 (fee), requiring CUPP to: 1) fill out and sign a document under the

14  penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF

15  FIREARMS Law Enforcement Gun Release Application", and 2) pay a processing fee of

16  $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

17  108.   CUPP had his firearms seized from his residences, without a warrant, without being charged,

18  tried or convicted of a crime.

19  109.   The firearms illegally seized have not been returned to plaintiffs.

20  110.   By failing to immediately return plaintiffs firearms once it was determined that no crime had

21  been committed, HARRIS has deprived plaintiffs of their ability to exercise their Second

22  Amendment rights by taking the very instruments necessary for exercising such a right, akin

23  to confiscating a paper and pen preventing the free exercise of speech.

24  111.   Plaintiffs seek a positive injunction for HARRIS to release and return all firearms and

25  ammunition illegally confiscated. And for an injunction prohibiting enforcement of any

26  magazine law (so called High Capacity Magazine Ban) and handguns which are not included

27  on the Safe Gun list, for example, the Beretta M9a3, and handgun based upon the M9 service

28  pistol with slight modifications geared to men and women with smaller hands.

- 16 -

## VERIFICATION

I, Jim Cupp, have read the foregoing Declaration and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe them to be true. I declare under the penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on Thursday, September 20, 2016, in Roseville, California.

James Cupp
Declarant

- 17 -

ER-181



Public Case Access
Sacramento Superior Court

Your Account | Log Off | Find Order | Document Cart (0)
Welcome gary gorski

Home | Civil | Criminal | Family | Probate | Small Claims | Traffic | Unlawful Detainer

**Criminal Cases**
Search by Name
Search by Case
Search by Xref

**General Info**
How This Site Works
Criminal Home Page on Saccourt
Trial Readiness Notification

## Case Information

| | | | |
|---|---|---|---|
| **Defendant Name** | JAMES EDWARD CUPP | | |
| **Case Number** | 14M02083 | **Charge Document** | Complaint |
| **Xref** | 545808 | **Case Status** | Disposed |
| **Filing Date** | 03/27/2014 | **Court ID** | 34470 |

## Aliases

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| JAMES | E | CUPP | |
| JAMES | EDWARD | CUPP | |

## Related Cases

| | Case Number | Filing Date | Court ID |
|---|---|---|---|
| No related cases found. | | | |

## Charges

| Count | Charge | Severity | Degree | Allegation | Blood Alcohol % |
|---|---|---|---|---|---|
| C001 | PC 21310 | Misdemeanor | N/A | N/A | N/A |

## Future Hearings

| Date | Time | Dept. | Reason | Outcome |
|---|---|---|---|---|
| No future hearings found. | | | | |

## Hearing History

| Date | Time | Dept. | Reason | Outcome |
|---|---|---|---|---|
| 05/30/2014 | 8:30 AM | 04 | BAIL BOND INFORMATION | BOND EXONERATED |
| 05/30/2014 | 8:30 AM | 04 | COUNSEL INFORMATION | PD RELIEVED BY COURT |
| 05/30/2014 | 8:30 AM | 04 | TRIAL READINESS CONFERENCE | DISMISSED |
| 05/16/2014 | 8:30 AM | 04 | TRIAL READINESS CONFERENCE | CONTINUED |
| 04/08/2014 | 8:30 AM | 60 | FURTHER PROCEEDINGS | CONTINUED |
| 04/01/2014 | 1:30 PM | 60 | ARRAIGNMENT | ARRAIGNED |
| 04/01/2014 | 1:30 PM | 60 | COUNSEL INFORMATION | PD APPOINTED |

## Charge Dispositions

| Count | Plea | Charge | Disposition Code | Disposition Date | Severity | Degree |
|---|---|---|---|---|---|---|
| C001 | No Plea | PC 21310 | Dismissed | 05/30/2014 | Misdemeanor | |

## Sentence Summary

| Count | Sentence Type | Sentence Date | Prob. Type | Prob. Status | Prob. Term | Prob. Sup. | Custody Program | Custody Length | Non LT Code | Non LT Time | Non LT Susp. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No sentencing information found. | | | | | | | | | | | |

Contact Us  Use and Privacy Policy  Download Adobe Reader

Exhibit "A"

ER-182



ER-183

## CITRUS HEIGHTS POLICE DEPARTMENT

| | | Page 3 |
|---|---|---|
| 6315 FOUNTAIN SQUARE DR. CITRUS HEIGHTS, CA 95621 916-727-5500 | | |
| FELONY REPORT - PROPERTY | | CH14-02589 |

| ID No. | Status/Disposition | Property Description | Value | Val Recovered | Val Damaged |
|---|---|---|---|---|---|
| 1 | Safekeeping | CMB-1 - 1 Item(s) Black & Brown Winchester 50 Firearm Shotgun - 12 GAGE/ SEMI AUTO/28" BBL/MADE IN USA (159604A) | | | |
| 2 | Safekeeping | CMB-2 - 1 Item(s) Black Savage 116 Firearm Rifle - 30.06 CAL/ BOLT ACTION RIFLE/23" BBL/MADE IN USA (F426673) | | | |
| 3 | Safekeeping | CMB-3 - 1 Item(s) Silver Marlin Firearms 60W .22 Firearm Rifle - .22 CAL/ SEMI AUTO RIFLE/MADE IN USA/22" BBL (06156981) | | | |
| 4 | Safekeeping | CMB-4 - 1 Item(s) Black Browning Buck Mark Firearm Pistol - .22 CAL/ SEMI AUTO BLACK HOLSTER WITH MAGAZINE AND 10 ROUNDS/4"BBL/MADE IN USA (655NV01591) | | | |
| 5 | Safekeeping | CMB-5 - 1 Item(s) Silver Raven P-25 Firearm Pistol - .25 CAL/ SEMI AUTO WITH BLACK HOLSTER AND MAGAZINE WITH 6 ROUNDS/2.5"BBL/MADE IN USA (188422) | | | |
| 6 | Safekeeping | CMB-6 - 1 Item(s) Black Smith And Wesson 566-4 Firearm Revolver - .357 MAG/ REVOLVER BLACK HOLSTER WITH NO ROUNDS/6" BBL/MADE IN USA (BUF2660) | | | |
| 7 | Safekeeping | CMB-7 - 260 Item(s)s 30.06 Fmj Ball M-2 30.06 Ammo - 30.06 AMMO AND AMMON CAN. | | | |
| 8 | Safekeeping | CMB-8 - 1 Item(s) Keys Key - 7 KEYS WITH A KNIFE AND WELLS FARGO CLIP. | | | |
| 9 | Safekeeping | KS-9 - 2 Item(s)s Black Motorcycle Leather Cloth ing | | | |
| 10 | Evidence | KS-10 - 1 Item(s) Black Motorcycle Leather Vest - W/PATCHES AND ATTACHED SHEATHES | | | |
| 11 | Evidence | KS-11 - 2 Item(s)s Black Knife Fixed Blade | | | |

**CONTROLLED RECORD: DUPLICATION/REISSUANCE CONTROLLED BY LAW**

3/27/2014
Released by: R. Brown
CITRUS HEIGHTS POLICE DEPARTMENT
CONTROLLED DOCUMENT
DUPLICATION OR REISSUANCE IS CONTROLLED BY LAW
RELEASED TO: SAC DA

ER-184



1  Gary W. Gorski (SBN 166526)
   LAW OFFICES OF GARY W. GORSKI
2  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
3  916-758-1100
   CivilRightsAttorney@outlook.com
4  www.lonewolflaw.com

5  Daniel M. Karalash (SBN 176422)
   Strategic Law Command
6  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
7  (916) 787-1234
   dan@stratlaw.org
8  www.stratlaw.com

9  Attorneys for Plaintiffs
   JAMES EDWARD CUPP and
10 LAWRENCE "WOLF" HAVEN

11

12

13                THE UNITED STATES DISTRICT COURT

14        IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

15
   JAMES EDWARD CUPP, an individual;    )   **Case No.**  16-CV-00523-TLN-KJN
16 LAWRENCE "WOLF" HAVEN, an individual )
                                        )
17            Plaintiff,                )
                                        )   **SECOND AMENDED COMPLAINT FOR**
18    vs.                               )   **MONETARY DAMAGES,**
                                        )   **DECLARATORY AND INJUNCTIVE**
19 KAMALA D. HARRIS Attorney General of the ) **RELIEF**
   State of California, in her official capacity only; )
20 CITY OF CITRUS HEIGHTS; Citrus Heights )   **(42 U.S.C. § 1983)**
   Police Department Chief CHRISTOPHER W. )
21 BOYD, in both his individual and official )
   capacity; Citrus Heights Police Officer )   **DEMAND FOR JURY TRIAL**
22 CHRISTIAN BAERRESEN, # 371; Citrus )
   Heights Police Officer THOMAS LAMB, # )
23 315; UNKNOWN CITRUS HEIGHTS POLICE )
   OFFICER Badge Number 323;            )
24 UNKNOWN CITRUS HEIGHTS POLICE       )
   OFFICER who prepared Report Number   )
25 CH14-02589 on 03/26/2014; TWO        )
   UNKNOWN NAMED PEACE OFFICERS OF
26 THE CITRUS HEIGHTS POLICE
   DEPARTMENT; COUNTY OF
27 SACRAMENTO; SCOTT JONES, in his
   official capacity as Sheriff of County of
28 Sacramento; Sacramento Deputy Sheriff JESSE

                            **- 1 -**
   _____
                  **Second Amended Complaint**                    **ER-185**

1  BRUCKER, # 512; COUNTY OF PLACER;
   EDWARD N. BONNER, in his official capacity
2  as Sheriff of County of Placer; Placer County
   Deputy MASON, # 181; Placer County Deputy
3  HINTZE, # 101.

4              Defendants.

5

6                    **COMPLAINT**

7            **JURISDICTION AND VENUE**

8  1.   Jurisdiction of this action is founded on 28 U.S.C. § 1331 in that the action arises under the

9       Constitution and laws of the United States of America, and under 28 U.S.C. § 1343(a)(3) and

10      42 U.S.C. § 1983 in that this action seeks to redress the deprivation, under color of the laws,

11      statutes, ordinances, regulations, customs and usages of the State of California and political

12      subdivisions thereof, of rights, privileges or immunities secured by the United States

13      Constitution and by Acts of Congress.

14 2.   The Second Amendment is the only right which requires <u>access</u> and <u>ownership</u> of a tangible

15      item (i.e. gun, knife, taser, etc.).  To exercise this right, it essentially includes the right to

16      have access to "arms" by way of sale or self manufacture.

17 3.   This Court has supplemental jurisdiction over Plaintiffs' state law claims asserted herein

18      under 28 U.S.C. § 1367 because such claims arise out of the same case or controversy as the

19      federal claims.

20 4.   Plaintiffs' seeks declaratory and injunctive relief authorized by 42 U.S.C. § 1983 and 28

21      U.S.C. § 1343.

22 5.   Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1), whereas all Defendants

23      reside in the State of California and Defendant HARRIS resides in this judicial district.

24                   **THE PARTIES**

25 6.   Plaintiff JAMES EDWARD CUPP is a competent adult, natural person, and citizen of the

26      United States of America, and at all relevant times a legal resident of Emery, South Dakota,

27      and a citizen of the state of South Dakota.

28 7.   CUPP previously had a CCW from the State of Oregon for approximately 8 years (1996),

                         **- 2 -**

                **Second Amended Complaint**                    **ER-186**

1    until he changed his residency to South Dakota, which requires no such license as open carry

2    is allowed.

3    8.    CUPP has no criminal record.

4    9.    His home is a Fifth Wheel, made by KZ, Escalade.  Therefore, CUPP continuously travels

5          through California which the possession of certain arms and weapons are not protected,

6          though allowed in every other western state.

7    10.   CUPP is a heavy equipment operator, W-2 employee of Local 370, Operating Engineer,

8          working in the petroleum industry between North Dakota and Texas.

9    11.   As a resident of the state of South Dakota, and fully exercising the rights and privileges

10         thereof as a free person of that state, the only limitation CUPP has on firearm ownership is

11         that which is prohibited by federal law.

12   12.   CUPP presently intends to travel, and has traveled into the state of California with firearms,

13         including firearms with magazines containing more than ten rounds of ammunition,

14         including a semi-automatic handgun with a detachable 11-15 round magazine and a semi-

15         automatic rifle with a detachable 11-30 round magazine, loaded and readily accessible in

16         both in his temporary residence while working in California and loaded in his work vehicle

17         (either concealed or open) while traveling through dangerous areas of California, such as

18         Richmond, Oakland, and Los Angeles.

19   13.   CUPP is aware of the incident of Reginald Denny being dragged from his vehicle during the

20         1992 Rodney King riots and beaten and kicked by a mob of protesters for simply driving

21         through Los Angeles during a civil protest in the course and scope of his employment as a

22         trucker http://en.wikipedia.org/wiki/Attack_on_Reginald_Denny

23   14.   CUPP desires to travel with firearms and knives, which as a citizen of the state of South

24         Dakota is legal, into the state of California to protect himself, his family, his property, and

25         his friends, his vehicle, his recreational vehicle (RV), while working, camping, hunting, and

26         while performing various other activities such as carrying large sums of money associated

27         with his work.

28   15.   Moreover, CUPP specifically has concern for the safety of himself and his cargo because of

**-3-**

1    truckers being hijacked and their cargo being stolen by gangs and drug cartels California.

2    16.    In addition, CUPP rides a Harley Davidson motorcycle and is constantly harassed by law

3    enforcement for carrying knives in a manner which is legal under California law, open and

4    exposed carry in a sheath.

5    17.    CUPP also intends on carrying .380 and/or 9 mm and/or .40 caliber semi-automatic handgun

6    with a 11-15 round capacity in the saddle bag of his motorcycle.

7    18.    Thus, because CUPP is continuously harassed for carrying knives exposed, it is Plaintiffs'

8    position that he wants to carry them concealed on his person so that he is not profiled by law

9    enforcement.

10   19.    CUPP presently intends to exercise his constitutionally guaranteed right to self-defense while

11   traveling into and through California, and taking up temporary residence for purposes of

12   work.

13   20.    CUPP has unconstitutionally been prevented from doing so because of the code sections

14   challenged and complained of herein, and because of Defendants' unconstitutional

15   application and enforcement of those same sections.

16   21.    CUPP fears arrest, criminal prosecution, a fine, and imprisonment if he were to possess a

17   concealed weapon on his person, in his vehicle, or in his RV without a permit or prior

18   permission authorizing him to do so.  CUPP fears arrest, criminal prosecution, a fine, and

19   imprisonment if he were to possess of open carried and/or concealed weapon on his person,

20   in his vehicle, or in his RV with a magazine which holds more than 10 rounds without a

21   permit or prior permission authorizing him to do so.

22   22.    Plaintiff CUPP's mother lives in Citrus Heights, CUPP drives to his mother house on his way

23   to Texas, either in his fifth wheel, or his Harley Davidson motorcycle.

24   23.    At all relevant times, CUPP had temporary abode was parked at a friend's house, which was

25   docked, plugged, and his truck was parked in another location.

26   24.    At all relevant times, CUPP was traveling through California with his travel trailer, and only

27   staying temporarily for a few weeks visiting a friend.

28   25.    Plaintiff LAWRENCE "WOLF" HAVEN is a competent adult, natural person, and citizen of

-4-

ER-188

1    the United States of America, and at all relevant times a legal resident of County of

2    Sacramento, California. He is a Veteran and Native-American, and as such belongs to a

3    class which consists of a long tradition of keeping and bearing arms.

4    26.    Plaintiff is a Native American, Veteran (1979-1983 U.S.N. Honorable Discharge) and an

5           avid hunter and owner of firearms. Veterans and Native Americans have a long tradition of

6           carrying and using California banned and prohibited weapons, especially firearms.

7    27.    While serving in the U.S. Navy, the United States entrusted HAVEN to work on heavy

8           explosives and ordinances.

9    28.    The standard military side arm of the time was a .45 Caliber Semi-Automatic pistol, the type

10          which California now seeks to ban.

11   29.    Defendant KAMALA D. HARRIS is the Attorney General of the State of California whereby

12          the California Constitution Article V, section 13 grants the Attorney General a supervisory

13          role over "every district attorney and sheriff and over such other law enforcement officers as

14          may be designated by law."

15   30.    Article V, section 13 is fleshed out in several California statutes which grants full authority

16          and power to the Attorney General with direct supervisory power over sheriffs and police

17          chiefs, including the power to require written applications and fees regarding firearms.

18   31.    On January 3, 2011, KAMALA D. HARRIS was sworn in as the 32nd Attorney General of

19          the State of California.

20   32.    On November 4, 2014 she was re-elected to a second term in office. As stated on the

21          government's official website, she is the first woman, the first African American, and the

22          first South Asian to hold the office in the history of California. See her website:

23          https://oag.ca.gov/about

24   33.    Defendant HARRIS is the State of California Attorney General, and is the chief law

25          enforcement officer of the State whereby all other named Defendants report to her.

26   34.    Defendant HARRIS is the State of California Attorney General, and as such is responsible

27          for promulgation of administrative rules regarding firearms and weapons used for personal

28          self defense.

**- 5 -**

35. Defendant HARRIS is the State of California Attorney General, and as such is responsible for executing and administering the laws, customs, practices, and policies of the State of California, under whose direction all defendants complained of in this action have acted on behalf of.

36. Defendant HARRIS is an agent, servant, and/or employee of the State of California, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

37. Defendant HARRIS is therefore sued in her official capacity for which only injunctive relief is sought.

38. Defendants CITY OF CITRUS HEIGHTS, COUNTY OF SACRAMENTO, and COUNTY OF PLACER (hereinafter simply "MUNICIPAL DEFENDANTS") are a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983.

39. MUNICIPAL DEFENDANTS are created under the Constitution and Laws of the State of California.

40. Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer acting under color of law in both his individual and official capacities.

41. Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of Police, and as such is responsible for executing and administering the laws, customs, practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this action.

42. Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this action.

43. Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official capacities.

44. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

1    HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

2    responsible for enforcing the code sections complained of in this action.

3    45.    Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

4    of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

5    used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

6    this action.

7    46.    UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

8    servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

9    CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. §

10    1983, and is responsible for enforcing the code sections complained of in this action.

11    47.    UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

12    02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant

13    CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under

14    color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing

15    the code sections complained of in this action.

16    48.    Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

17    POLICE DEPARTMENT have not been located, but they will be added to this complaint

18    upon uncovering their names through discovery.

19    49.    SCOTT JONES, is named in his official capacity as Sheriff of County of Sacramento, is

20    responsible for executing and administering the laws, customs, practices, and policies of

21    HARRIS complained of in this action.

22    50.    Sacramento Deputy Sheriff JESSE BRUCKER, # 512 at all times was acting under color of

23    law.

24    51.    EDWARD N. BONNER is named in his official capacity as Sheriff of County of Placer.

25    52.    At all times, Placer County Deputy MASON, # 181 and Placer County Deputy HINTZE, #

26    101 were acting under color of law.

27    53.    At all times, plaintiffs legally possessed and owned handguns and long-rifles, which were

28    never illegal, even under California law, to possess and own.

<div align="center">**- 7 -**</div>

54. At the direction of state law and HARRIS, plaintiffs had their firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

**FIRST CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

55. Plaintiffs incorporate the above allegations as if set forth fully here.

56. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

57. Plaintiffs are a extremely familiar with firearms and the safe operation thereof, and in particular semi-automatic handguns with magazine capacities greater than 10 rounds and semi-automatic rifles capable of holding magazines containing more than 10 rounds of ammunition

58. Plaintiffs intend to travel in and out the State of California with ammunition magazines which hold more than ten rounds, and they intend to purchase, possess, and use handguns which are not on California's approved list.

59. However, because of the threat of enforcement, and actual enforcement, plaintiffs seek a permanent injunction enjoining HARRIS and the State of California from enforcing the magazine ban and safe gun list ban.

60. Dealers may not sell any new handgun unless it is listed in the state Department of Justice roster of handguns certified for sale.

61. The prohibition of purchasing the safest, most technologically advanced handguns, which have manual thumb safeties, such as the Ruger SR Series handguns, the Springfield Armory 9661HCXD Series of handguns, the Sig Sauer P230, the Taurus 24/7 Series and 92 Series, and the Beretta APX; and instead is relegated to purchasing 20+ year old Sig Sauer's, Glock and 100 year old revolvers, none of which have manual thumb safeties.

62. The lack of these safety features have resulted in an inordinate amount of accidental

**Second Amended Complaint**

1    discharges by law enforcement, including the state's own experts who shot themselves.

2    63.    Plaintiffs have the same rights active and retired officers have to purchase (and use for
3           personal self-defense) the best and safest tool for the job.

4    64.    California active and retired officers legally purchased 7,600 banned assault weapons
5           through a legal exemption promulgated by the Attorney General
6           (http://www.scpr.org/news/2011/12/21/30459/californian-cops-buy-over-7000-assault-weapo
7           ns-ill/), and now the municipalities are jumping on the bandwagon of carving rights and
8           privileges for only the chosen few (i.e. retired law enforcement).
9           http://www.washingtontimes.com/news/2015/dec/3/retired-lapd-cops-exempted-ban-high-ca
10          pacity-magaz/

11   65.    Given this mash of government laws and regulation, this action seeks to put an end to
12          government selecting who gets to exercise their rights under the Second Amendment.  This is
13          the equivalent of the government mandating which books the People can read to exercise
14          their First Amendment Rights.

15   66.    When it comes to self-defense, providing retired peace officers with superior rights to that of
16          ordinary law-abiding citizens does not further either an important or compelling state
17          interest, and more importantly, since law enforcement can only use reasonable force in
18          self-defense, then the hand-guns they use are presumptively the type of firearm protected by
19          the Second Amendment.

20   67.    Plaintiffs are seeking to enjoin the State of California and defendants from enforcing current
21          firearm statutes which infringe upon their constitutional rights as follows (which is clearly
22          stated in the SAC):

23          a.     To purchase off-roster handguns, which are legal under federal law.

24          b.     To possess and purchase standard size handgun and rifle magazines which most
25                 exceed 10 rounds,

26          c.     To travel interstate with magazines which contain more than 10 rounds of
27                 ammunition.

28          d.     To either be issued a lifetime CCW upon application at the same cost that retired

**- 9 -**

**Second Amended Complaint**

1    officers pay or be permitted to carry a weapon openly.

2    68.   The Second Amendment to the United States Constitution provides:

3          A well regulated Militia being necessary to the security of a free State, the right of the
          people to keep and bear Arms shall not be infringed.

4    69.   The Second Amendment guarantees the right of law-abiding citizens to publicly carry

5    operational handguns and rifles for self-defense.

6    70.   The Second Amendment is incorporated to the states through the Fourteenth Amendment.

7    71.   The United States Supreme Court has held that the right to keep and bear arms is a

8    fundamental right.

9    72.   Regulations infringing upon that right must meet heightened scrutiny.

10   73.   Defendants implement policy and enforce laws which militarize law enforcement agencies,

11   arming them in such a manner that they are no longer a police force, but rather a standing

12   army.

13   74.   The Constitution presumes that "The People" are reasonable, and that Government is a

14   "necessary evil" to be curtailed and limited.

15   75.   By definition, criminals do not abide by the laws.

16   76.   Therefore, gun control legislation has only a minimal effect on a violent criminal's ability to

17   obtain and use a firearm.

18   77.   Unlike California, the majority of the population of the United States are armed, and

19   permitted to purchase, transport and carry commonly used handguns and rifles.

20   78.   Semi-Automatic firearms and large capacity ammunition magazines are banned in only five

21   states: California (Oakland, LA, Richmond, Vallejo, Stockton) Maryland (Baltimore)

22   Massachusetts, New Jersey (Camden, Newark, Jersey City), New York (New York) and D.C.

23   (Hawaii's ban applies only to such magazines used with handguns).

24   79.   As a result, these states also have the highest murder rates and crime ridden cities in the U.S.

25   80.   Residents of Washington, D.C., with the lowest private gun ownership rate in the country,

26   are more than five (5) times more likely to be the victim of a violent crime as compared to

27   residents of Wyoming, with the highest private gun ownership rate in the country.

28

**- 10 -**

81. In Vermont, one of the safest states in the country, "citizens can carry a firearm without getting permission ... without paying a fee ... or without going through any kind of government-imposed waiting period."

82. Importantly, only about two percent (2%) of civilian shootings involved an innocent person mistakenly identified as a criminal.

83. The error rate for law enforcement officers is a staggering eleven percent (11%), more than five (5) times as high as the error rate for average citizens.

84. Federal Bureau of Investigation (FBI) reports show that in the fifteen (15) years following the passage of Florida's "shall issue" concealed carry law in 1987, 800,000 CCW permits have been issued and the homicide rate in Florida, which in 1987 was much higher than the national average, fell 52% bringing it below the national average.

85. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker.

86. Accordingly, Plaintiffs seeks declaratory and injunctive relief to enjoin Defendants' unconstitutional enforcement of defendants laws and policies.

87. California Penal Code section 25400 does not prohibit a citizen of the United States over 18 years of age who is in lawful possession of a handgun, and who resides or is temporarily in California, from transporting the handgun by motor vehicle provided it is unloaded and stored in a locked container . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

88. It is illegal for any person to carry a handgun concealed upon his or her person or concealed in a vehicle without a license issued pursuant to Penal Code section 26150 . (Pen . Code, § 25400)  A firearm locked in a motor vehicle's trunk or in a locked container carried in the vehicle other than in the utility or glove compartment is not considered concealed within the meaning of the Penal Code section 25400; neither is a firearm carried within a locked container directly to or from a motor vehicle for any lawful purpose . (Pen . Code, § 25610)  As stated by Defendant HARRIS online.

89. It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place,

- 11 -

1   on any public street, or in any place where it is unlawful to discharge a firearm . (Pen . Code,

2   § 25850, subd . (a))  As stated by Defendant HARRIS online.

3   90.  Nonconcealable firearms (rifles and shotguns) are not generally covered within the

4        provisions of California Penal Code section 25400 and therefore are not required to be

5        transported in a locked container . However, as with any firearm, nonconcealable firearms

6        must be unloaded while they are being transported . A rifle or shotgun that is defined as an

7        assault weapon pursuant to Penal Code section 30510 or 30515 must be transported in

8        accordance with Penal Code section 25610.  As stated by Defendant HARRIS online.

9   91.  Peace officers and <u>honorably</u> retired peace officers having properly endorsed identification

10        certificates <u>may carry a concealed weapon at any time</u>. Otherwise, these exemptions apply

11        only when the firearm is carried within the scope of the exempted conduct, such as hunting

12        or target shooting, or within the course and scope of assigned duties, such as an armored

13        vehicle guard transporting money for his employer. A person who carries a loaded firearm

14        outside the limits of the applicable exemption is in violation of the law, notwithstanding his

15        or her possession of an occupational license or firearms training certificate. (Pen . Code, §

16        12031(b).)  As stated by Defendant HARRIS online.

17  92.  AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic

18        Partner of Peace Officer Killed in the Line of Duty: Provides an exception to the Unsafe

19        Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of

20        duty to purchase their spouse/domestic partner's service weapon and hi-capacity magazines.

21        (Pen . Code, § 32000.)

22  93.  This extends to ammunition, current authority for a city or county to impose a charge relating

23        to the seizure, impounding, storage, or release of a firearm. (Pen . Code, § 33880).

24  94.  Handgun magazines of 16-20 rounds, and standard rifle magazines of 16-30 rounds are

25        "typically used for lawful purposes" and are deemed presumptively reasonable as active duty

26        and retired law enforcement are granted the rights and privileges to use them when applying

27        reasonable force.

28  95.  Widespread law enforcement use of a particular firearm, weapon or magazine, or edged

**- 12 -**

**Second Amended Complaint**

1   weapon proves that particular arms are common and typically used for lawful purposes,

2   rather than "dangerous and unusual."

3   96.   Standard magazine bans are unusual. See *Kennedy v. Louisiana*, 554 U.S. at 426 ("national

4   consensus" against a law which existed in only six states, and not federally); *Kerr v.*

5   *Hickenlooper*, 744 F.3d 1156, 1178 (10th Cir. 2014)(courts evaluating gun control laws

6   "consider the rarity of state enactments in determining whether they are constitutionally

7   permissible.").

8   97.   Standard magazine bans are dangerous because they reduce typical defensive fire power.

9   They shift risk of injury from violent aggressors to law-abiding innocents.

10  98.   Typically, in an officer shooting of an <u>unarmed</u> civilian, they discharge more than 10 rounds

11  to stop a person.

12  99.   Commencing in the 1999 (the time after when most police switched to semi-automatic pistols

13  from revolvers), there began a spike in the total number of rounds expended by police

14  shooting innocent people.

15  100.  In 1999, Amadou Diallo, was shot 41 times by four plain-clothed police officers outside of

16  his apartment in New York City.  He committed no crime and was unarmed.  The shooting

17  death of an <u>unarmed</u> 23-year-old Guinean immigrant in New York City is anything but

18  anomalous in today's America.

19  101.  A month later, Los Angeles Police killed a 19-year-old man after unloading over 90 shots on

20  him following a high-speed chase down an area freeway. The same month, New York police

21  fired at a suspected murderer 84 times.

22  102.  Deandre Brunston's, a 24-year-old shot 22 times by Los Angeles County Sheriff's deputies on

23  August 24, 2003, whereby the deputies had discharged 81 shots and killed the police K-9 at

24  the same time. https://en.wikipedia.org/wiki/Shooting_of_Deandre_Brunston

25  103.  Officer Wilson shot Michael Brown in the back 12 times.

26  https://en.wikipedia.org/wiki/Shooting_of_Michael_Brown

27  104.  In the case of former LA Police Officer Christopher Dorner shootings and manhunt, in two

28  separate incidents in the early morning hours of February 7, 2013, police fired on people who

**- 13 -**

turned out to be unrelated to Dorner and that Dorner (an African-American male) was not present at either incident and no firearms were involved in either incident (i.e. the police victims were unarmed).

https://en.wikipedia.org/wiki/Christopher_Dorner_shootings_and_manhunt#Truck_misidenti fications

105. Emma Hernandez, 71, and her daughter, Margie Carranza, 47, where delivering newspapers for the Los Angeles Times when LAPD officers fired over 102 bullets at the two Hispanic females. Remarkably, they survived.

106. Approximately 25 minutes after that incident, officers from the Torrance Police Department struck and opened fire on another vehicle. Like the first shooting, the white male was unarmed and did not match the description of Dorner. Over 30 bullets were fired at him.

107. Therefore, since HARRIS and the State of California have determined that discharging more than 10 rounds for purposes of self defense is a reasonable use of force by law enforcement, then the Second Amendment and 14th Amendment protects the rights of all citizens to posses magazines and firearms holding more than 10 rounds, and no more than 30, since the average magazine for all makes and models of firearms is between 11 to 30 rounds.

108. Defendant HARRIS has made her career pushing for more government control over the people of the State of California, and depriving them of their fundamental constitutional rights, privileges and immunities, especially those that the Framers of the Fourteenth Amendment sought to protect the most.

109. At the same time, HARRIS and the State of California have pushed for the militarization of the police state by exempting California Peace Officers (both active and retired) from the very same firearms and magazines prohibited to the rest of the population.

110. Defendant HARRIS has shown a blatant disregard of the rights of citizens to travel with firearms, which was one of the first and most important rights bestowed upon the newly freed slaves of the South after the civil war with the passage of the Fourteenth Amendment.

111. As historian Flack noted in *The Adoption of the Fourteenth Amendment* 7 (Johns Hopkins 1908), written at a time when gun control was not a political issue seized by those in power

1  for political gain; the central theme throughout all the debates over the Fourteenth

2  Amendment focused on the newly freed slaves rights to travel, vote, own property and

3  possess and bear arms to enforce their rights when the government couldn't. See also

4  Antieau, *The Intended Significance of the Fourteenth Amendment* (Wm. Hein, Buffalo, N.Y.

5  1997), citing Royall, *The Fourteenth Amendment: The Slaughter House Cases*, 4 So. L. Rev.

6  (N.S.) 558, 563 (1879). [All of the authorities the Supreme Court's central holding in"

7  *District of Columbia v. Heller*, 554 U. S. 570 (2008), was "that the Second Amendment

8  protects a personal right to keep and bear arms for lawful purposes, most notably for

9  self-defense within the home." *McDonald v. Chicago*, 561 U. S. 742, 780 (2010) (plurality

10  opinion). And in *McDonald*, the Supreme Court recognized that the Second Amendment

11  applies fully against the States as well as the Federal Government. *Id.*, at 750; id., at 805

12  (THOMAS, J., concurring in part and concurring in judgment).]

13  112.  Despite the holdings in *District of Columbia v. Heller*, 554 U. S. 570 (2008) and *McDonald

14      v. Chicago*, 561 U. S. 742, 780 (2010), the State of California and HARRIS continues to pass

15      and enforce laws resulting in categorical and constructive bans on firearms and attachments

16      thereto that millions of Americans, veterans, and retired peace officers commonly own for

17      lawful purposes, which then results in constructive ban on the right to travel.

18  113.  Other than California, only six other states (which obviously include Connecticut, New York

19      and New Jersey) have unconstitutional draconian firearms laws which no other state even

20      remotely mandates, including limitations on the carrying or possession of specific weapons

21      and their accouterments (e.g. semi-automatic firearm bans, handgun bans and magazine

22      bans).

23  114.  Defendant HARRIS is the top ranking law enforcement official in the state of California,

24      promulgating rules and regulations which deprived Plaintiff of right to keep and bear arms as

25      protected under the Second Amendment, and enforced laws which deprived Plaintiff of his

26      property rights in his firearms, and denied him equal protection of the law.

27  115.  Plaintiffs seek an order which would enjoin defendants from enforcing laws which would not

28      otherwise be enforced against them had they been active or retired peace officers, since

**- 15 -**

**Second Amended Complaint**

**ER-199**

officers are afforded the full panoply of protections afforded by the Second Amendment, Fourth Amendment, and Equal Protection Clause as bestowed upon other government officials, such as retired peace officers, spouses of peace officers, retired correctional officers, and other members of the government.

116. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

    a.    Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

    b.    Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

    c.    Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are subjected to (this is especially important since it allows interstate travel with a loaded firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

    d.    If a peace officer is honorably retired, California law requires that the agency from which he retired issue the officer an identification certificate containing an endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

    e.    Allows officers to purchase semi-automatic rifles not otherwise available to the public for self defense, which they can keep even after their government service is terminated.

117. Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing laws, rules and regulations which:

    a.    Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are legal under federal law.

**- 16 -**

**ER-200**

b. Limit plaintiffs' ability to possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms.

c. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition.

d. Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon. Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

118. Further, plaintiffs request a positive injunction to either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

119. Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

120. Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SECOND CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Second Amendment Right to Keep and Bear Arms**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Unconstitutional Statute - Confiscation of Firearms)
(Injunctive and Declaratory Relief Only For Return of Firearms)

121. Plaintiffs incorporate the above allegations as if set forth fully here.

122. Penal Code Sections 18250-18275 allow law enforcement officers to confiscate firearms without any form of due process, even for false allegations of a crime being committed.

123. Based upon information and belief, plaintiffs' firearms were illegally seized pursuant to this statutory section. If another section was relied upon, then this challenge is to the offending statute.

124. On January 1, 2005, the Law Enforcement Gun Release (LEGR) process became effective with the addition of Penal Code (PC) section 12021.3.

125. This process requires any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned to submit a LEGR Application form for a determination by the California Department of Justice (the Department) as to whether he or she is eligible to possess a firearm.

**- 17 -**

**Second Amended Complaint**

**ER-201**

126. Per the LEGR Application Submission Process, individuals seeking the return of a firearm(s) that is in the custody or control of a court or law enforcement agency must submit a LEGR Application along with the appropriate fees to the Department.

127. Additionally, if an individual is seeking the return of a long gun purchased prior to January 1, 2014, a Firearms Ownership Report application (BOF 4542A), is required to be be submitted along with the appropriate fees.

128. In violation of the Second Amendment, Defendant HARRIS and MUNICIPAL DEFENDANTS enforce a statutory scheme pursuant to Penal Code Section Penal Code Section 33850 (application for return of firearm), 33855 (authority of law enforcement to enforce), 33860, 33880 (fee), requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application", and 2) pay a processing fee of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

129. Both plaintiffs have had their firearms seized from their residences, without a warrant, without being charged, tried or convicted of a crime.

130. The firearms illegally seized have not been returned to plaintiffs.

131. By failing to immediately return plaintiffs firearms once it was determined that no crime had been committed, HARRIS has deprived plaintiffs of their ability to exercise their Second Amendment rights by taking the very instruments necessary for exercising such a right, akin to confiscating a paper and pen preventing the free exercise of speech.

132. Plaintiffs seek a positive injunction for HARRIS to release and return all firearms and ammunition illegally confiscated.

133. Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

134. Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

### THIRD CLAIM FOR RELIEF:
### CONSTITUTIONAL CHALLENGE TO STATE LAW
### Second Amendment

(Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;

**- 18 -**

ER-202

UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589
only)
(Confiscation of Firearms and Knives)
(Declaratory, Injunctive and Monetary relief)

135.  Plaintiffs incorporate the above allegations as if set forth fully here.

136.  Only injunctive relief is sought against HARRIS.

137.  At all times, the law was well established as to the Second Amendment.

138.  Attached hereto as **Exhibit "A"** is a true and correct copy of the Sacramento Superior Court case docket noting the charge for PC 21310, carrying a concealed knife and a picture of the visible knife on the outside part of CUPP's leather vest.

139.  On or around March 25, 2014, approximately employees of the CITY OF CITRUS HEIGHTS (i.e. Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;  UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 on or about 03/26/2014) falsely arrested, without probable cause, issued him a temporary restraining order, for a concealed weapon, searched his temporary residence without a warrant, which was 8-9 miles away and illegally seized six (6) firearms legally, ammunition, magazines owned by CUPP, and two non-folding hunting knives that he carried openly on his person.

140.  CUPP was handcuffed and booked in the Sacramento County Jail, whereby he had to post bail, utilizing a bail bondsman, costing him damages.

141.  On or about 03/27/2014, a criminal complaint (*People v. Cupp*, Sacramento Case Number 14M02083) was filed against CUPP for violation of penal code section 21310, which provides.  "Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."

142.  California Penal Code Section 21310 violates the Second Amendment, Privileges and Immunities Clause of the 14th Amendment.

- 19 -

**Second Amended Complaint**

**ER-203**

143. On 05/30/2014, the case against CUPP was dismissed with prejudice on the Sacramento District Attorney's own motion, resulting in an order for return of property to CUPP illegally seized.

144. Plaintiffs' two knives were returned to him, but not his six firearms and other firearm related tools and equipment.

145. At all times, CITY OF CITRUS HEIGHTS; Citrus Heights Police Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323; UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589 had time to obtain a warrant.

146. To this day, under color of law, Defendants have maintained possession over Plaintiffs' personal property, including ammunition, speed loaders, holsters, $1,000.

147. CUPP owns multiple firearms, and possesses them within his home, for both sporting use and self-defense purposes.

148. In violation of the Second Amendment, Fifth Amendment right against self incrimination, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Defendants HARRIS, CITY OF CITRUS HEIGHTS, and Chief CHRISTOPHER W. BOYD enforce a statutory scheme pursuant to Penal Code Section 33855 requiring CUPP to: 1) fill out and sign a document under the penalty of perjury called the "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" (See Exhibit "1" attached hereto and incorporated herein.), and 2) pay a fine called a "processing fee" in the amount of $20.00 for the first firearm (long gun or handgun), and $3.00 for each additional gun.

149. The "CALIFORNIA DEPARTMENT OF JUSTICE BUREAU OF FIREARMS Law Enforcement Gun Release Application" was created by Defendant HARRIS in or around January 2012.

150. On or about February 27, 2015, CUPP, through his attorney, filed a Claim for Damages (Tort

- 20 -

1       Claim) with the Defendant CITY OF CITRUS HEIGHTS for the return of the firearms.

2  151.   In addition, this Claim was also an internal affairs complaint.

3  152.   In a letter dated March 23, 2015 rejecting both CUPP's tort claim and demand for return of

4       his property, City Defendants reiterate Defendant HARRIS' policy of enforcing an

5       unconstitutional law and creating a undue burden on CUPP.

6  153.   Citrus Heights Police Department Chief CHRISTOPHER W. BOYD is a sworn peace officer

7       acting under color of law in both his individual and official capacities.

8  154.   Defendants CHRISTOPHER W. BOYD is the CITY OF CITRUS HEIGHTS Chief of

9       Police, and as such is responsible for executing and administering the laws, customs,

10       practices, and policies of Defendant CITY OF CITRUS HEIGHTS complained of in this

11       action.

12  155.   Defendant CHRISTOPHER W. BOYD is an agent, servant, and/or employee of Defendant

13       CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42

14       U.S.C. § 1983, and is responsible for enforcing the code sections complained of in this

15       action.

16  156.   Defendant CHRISTOPHER W. BOYD is therefore sued in both his individual and official

17       capacities.

18  157.   Citrus Heights Police Officer CHRISTIAN BAERRESEN, # 371 is an agent, servant, and/or

19       employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS

20       HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. § 1983, and is

21       responsible for enforcing the code sections complained of in this action.

22  158.   Citrus Heights Police Officer THOMAS LAMB, # 315 is an agent, servant, and/or employee

23       of Defendant CITY OF CITRUS HEIGHTS, acting under color of state law as that phrase is

24       used in 42 U.S.C. § 1983, and is responsible for enforcing the code sections complained of in

25       this action.

26  159.   UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323 is an agent,

27       servant, and/or employee of Defendant CHRISTOPHER W. BOYD and Defendant CITY OF

28       CITRUS HEIGHTS, acting under color of state law as that phrase is used in 42 U.S.C. §

**- 21 -**

1      1983, and is responsible for enforcing the code sections complained of in this action.

2    160.    UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-

3          02589 on or about 03/26/2014 is an agent, servant, and/or employee of Defendant

4          CHRISTOPHER W. BOYD and Defendant CITY OF CITRUS HEIGHTS, acting under

5          color of state law as that phrase is used in 42 U.S.C. § 1983, and is responsible for enforcing

6          the code sections complained of in this action.

7    161.    Defendants UNKNOWN NAMED PEACE OFFICERS OF THE CITRUS HEIGHTS

8          POLICE DEPARTMENT have not been located, but they will be added to this complaint

9          upon uncovering their names through discovery.

10    162.    Plaintiff seeks monetary relief for being deprived of his right and property.

11    163.    Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

12          property.

13    164.    Plaintiff has been damaged according to proof.

14    165.    HARRIS is named only for purposes of injunctive and declaratory relief only.

15    166.    Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

16 <div align="center">

**FOURTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Fourth Amendment**
</div>

17 (Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police

18 Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus
Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS

19 LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;
UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589

20 only)
(Arrest, Confiscation of Firearms and Knives, without probable cause)

21 (Declaratory, Injunctive and Monetary relief)

22    167.    Plaintiffs incorporate the above allegations as if set forth fully here.

23    168.    The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses,

24          papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

25          warrants shall issue, but upon probable cause, supported by oath or affirmation, and

26          particularly describing the place to be searched, and the persons or things to be seized.

27    169.    CUPP was arrested and his property confiscated without probable cause for carrying a

28          concealed weapon, protected by the Second Amendment, and which was not concealed, but

<div align="center">

**- 22 -**

_____

**Second Amended Complaint**
</div>

1    instead, carried in a sheath as all fixed blade knives are carried that way.

2    170.    Plaintiff seeks monetary relief for being deprived of his right and property.

3    171.    Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

4            property.

5    172.    Plaintiff has been damaged according to proof.

6    173.    HARRIS is named only for purposes of injunctive and declaratory relief only.

7    174.    Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

8                            **FIFTH CLAIM FOR RELIEF:**
                    **CONSTITUTIONAL CHALLENGE TO STATE LAW**
9                                **Fifth Amendment**
     (Plaintiff CUPP and Defendants HARRIS; CITY OF CITRUS HEIGHTS; Citrus Heights Police
10   Department Chief CHRISTOPHER W. BOYD, in both his individual and official capacity; Citrus
     Heights Police Officer CHRISTIAN BAERRESEN, # 371; Citrus Heights Police Officer THOMAS
11   LAMB, # 315; UNKNOWN CITRUS HEIGHTS POLICE OFFICER with Badge Number 323;
     UNKNOWN CITRUS HEIGHTS POLICE OFFICER who prepared Report Number CH14-02589
12                                    only)
                 (Confiscation of Firearms and Knives, without due process)
13                   (Declaratory, Injunctive and Monetary relief)

14   175.    Plaintiffs incorporate the above allegations as if set forth fully here.

15   176.    The Fifth Amendment guarantees that "due process of law" be part of any proceeding that

16           denies a citizen "life, liberty or property".

17   177.    CUPP was arrested and his property confiscated without due process for carrying a

18           concealed weapon, protected by the Second Amendment, and which was not concealed, but

19           instead, carried in a sheath as all fixed blade knives are carried that way.

20   178.    Plaintiff seeks monetary relief for being deprived of his right and property.

21   179.    Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other

22           property.

23   180.    Plaintiff has been damaged according to proof.

24   181.    HARRIS is named only for purposes of injunctive and declaratory relief only.

25   182.    Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

26                           **SIXTH CLAIM FOR RELIEF:**
                    **CONSTITUTIONAL CHALLENGE TO STATE LAW**
27                             **Second Amendment**
     (Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in
28   his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE

                                        **- 23 -**

     _____
                            **Second Amended Complaint**                    **ER-207**

BRUCKER, # 512; only)
(Confiscation of Firearms)
(Declaratory, Injunctive and Monetary relief)

183. Plaintiffs incorporate the above allegations as if set forth fully here.

184. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

185. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

186. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

187. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

188. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

189. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

190. Plaintiff seeks monetary relief for being deprived of his right and property.

191. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

192. Plaintiff has been damaged according to proof.

193. HARRIS is named only for purposes of injunctive and declaratory relief only.

194. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**SEVENTH CLAIM FOR RELIEF:**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Fourth Amendment**
(Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512; only)
(Arrest, Confiscation of Firearms and Knives, without due process)

**- 24 -**

ER-208

(Declaratory, Injunctive and Monetary relief)

195. Plaintiffs incorporate the above allegations as if set forth fully here.

196. The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

197. On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, illegally entered the residence of HAVEN.

198. HAVEN was not present to give a consent and was unaware of the entry of BRUCKER.

199. While in HAVEN's residence without informing HAVEN, BRUCKER seized the property of HAVEN consisting of three firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911.

200. No criminal charges were ever filed, and the government has failed to return HAVEN's three firearms and ammunition.

201. At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

202. Plaintiff seeks monetary relief for being deprived of his right and property.

203. Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

204. Plaintiff has been damaged according to proof.

205. HARRIS is named only for purposes of injunctive and declaratory relief only.

206. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**EIGHT CLAIM FOR RELIEF:**
**Fifth Amendment**
(Plaintiff HAVEN and Defendants HARRIS; COUNTY OF SACRAMENTO; SCOTT JONES, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff JESSE BRUCKER, # 512 only)

**- 25 -**

(Arrest, Confiscation of Firearms and Knives, without due process)
(Declaratory, Injunctive and Monetary relief)

207.   Plaintiffs incorporate the above allegations as if set forth fully here.

208.   The Fifth Amendment guarantees that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property". In this case, there was never a proceeding.

209.   On February 14, 2016, Sacramento Deputy Sheriff JESSE BRUCKER, # 512, acting color of law and the authority of HARRIS, COUNTY OF SACRAMENTO and SCOTT JONES, in his official capacity as Sheriff of County of Sacramento, and acting without a warrant or probable cause, deprived HAVEN of his property without due process.

210.   At the direction of state law and HARRIS, plaintiff had his firearms confiscated by HARRIS and law enforcement officers, though no crime had been committed. To this date, the arms have not been returned.

211.   Plaintiff seeks monetary relief for being deprived of his right and property.

212.   Plaintiff seeks injunctive and declaratory relief for the return of his firearms, and other property.

213.   Plaintiff has been damaged according to proof.

214.   HARRIS is named only for purposes of injunctive and declaratory relief only.

215.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

**NINTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
**Violation of the Second Amendment Right to Keep and Bear Arms**
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in
his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer
County Deputy HINTZE, # 101 only)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

216.   Plaintiffs incorporate the above allegations as if set forth fully here.

217.   The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

218.   P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

219.   Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed

**- 26 -**

**ER-210**

1    against plaintiff, along with pictures of the purported "Slungshot", none of which could be

2    mistaken for an illegal weapon.

3  220.  Before the pirates of the Caribbean, Butch Cassidy, the Spanish Conquistadores, and the

4    Peloponnesian Wars, man's weapon of choice was rock with a rope attached to it.

5  221.  A slungshot is a maritime tool consisting of a weight, or "shot," affixed to the end of a long

6    cord, which pre-existed the founding of the United States.  It was a simple weapon, which

7    itself had been modified to become a slingshot.  In sum, it was an "arm" used prior to the

8    invention of gunpowder.

9  222.  On February 8, 2016, deputies from the Placer County Sheriff's Department stopped

10    Defendant HAVEN for what they falsely alleged an "illegal weapon" hanging from the

11    handle bars of his motorcycle, affectionately known as his "iron horse."

12  223.  HAVEN had attached to his motorcycle an ornamental and common "horse lead" (thick

13    nylon rope with a metal quick release - identical to a dog leash but thicker).

14  224.  Deputy MASON and his partner Deputy HINTZE arrested HAVEN for the illegal possession

15    of a slungshot in violation of P.C. 12210.

16  225.  A leash was determined by these Deputies to be an illegal "slungshot" and placed Mr.

17    HAVEN under felony arrest, booked, and had to pay bail, in violation of this Fourth

18    Amendment rights.

19  226.  While arresting HAVEN, HINTZE and MASON made various threatened comments to

20    HAVEN that he was a associated with outlaw motorcycle gangs by his appearance and

21    various bumper stickers on his motorcycle.

22  227.  No reasonable officer or person would deem a horse leash as an illegal weapon.

23  228.  The deputies motive for arresting HAVEN was his personal appearance and his various

24    stickers, both protected by the First Amendment.

25  229.  Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out

26    of impound.

27  230.  On or about March 3, 2016, the Placer County District Attorney filed charges against

28    Defendant HAVEN for violating California Penal Code section 22210.  Defendant HAVEN

- 27 -

**Second Amended Complaint**

ER-211

1     was arraigned on the charges in the above-entitled court.

2 231.   On or about March 21, 2016 the Supreme Court of the United States rendered its unanimous

3     per curium opinion in *Jaime Caetano v. Massachusetts* 577 U.S. ___ (2016) No. 14-10078;

4     decided March 21, 2016. The holding of *Caetano* reiterated prior precedent and stated that

5     the State's arguments for supporting draconian laws borders on the "frivolous", but yet, in

6     2016, California has only enhanced its draconian enforcement of arms of all types.

7 232.   Prior to *Caetano*, the law was clearly established that the Second Amendment protects all

8     "arms", and is not just applicable to firearms.

9 233.   Plaintiff seeks monetary relief for being deprived of his right and property.

10 234.   Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

11 235.   Plaintiff has been damaged according to proof.

12 236.   HARRIS is named only for purposes of injunctive and declaratory relief only.

13 237.   Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

14
**TENTH CLAIM FOR RELIEF**
**CONSTITUTIONAL CHALLENGE TO STATE LAW**
15 **Violation of the Fourth Amendment**
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in
16 his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer
County Deputy HINTZE, # 101 only)
17 (P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)
18

19 238.   Plaintiffs incorporate the above allegations as if set forth fully here.

20 239.   The Fourth Amendment guarantees law-abiding citizens to be secure in their persons, houses,

21     papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

22     warrants shall issue, but upon probable cause, supported by oath or affirmation, and

23     particularly describing the place to be searched, and the persons or things to be seized.

24 240.   P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self

25     defense.

26 241.   Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed

27     against plaintiff, along with pictures of the purported "Slungshot", none of which could be

28     mistaken for an illegal weapon.

**- 28 -**

242.  No reasonable officer or person would deem a horse leash as an illegal weapon, and as such, defendants lacked probable cause to seize plaintiff and his property.

243.  Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

244.  On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210. Defendant HAVEN was arraigned on the charges in the above-entitled court.

245.  The Second Amendment protects all "arms", and is not just applicable to firearms.

246.  Plaintiff seeks monetary relief for being deprived of his right and property.

247.  Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

248.  Plaintiff has been damaged according to proof.

249.  HARRIS is named only for purposes of injunctive and declaratory relief only.

250.  Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

Section 1988.

### ELEVENTH CLAIM FOR RELIEF
### CONSTITUTIONAL CHALLENGE TO STATE LAW
#### Violation of the Fifth Amendment
(Plaintiff HAVEN and Defendant HARRIS; COUNTY OF PLACER; EDWARD N. BONNER, in his official capacity as Sheriff of County of Placer; Placer County Deputy MASON, # 181; Placer County Deputy HINTZE, # 101 only)
(P.C. 12210 - as written and as applied challenge)
(Monetary, Declaratory and Injunctive Relief)

251.  Plaintiffs incorporate the above allegations as if set forth fully here.

252.  The Fifth Amendment guarantees that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property". In this case, there was never a proceeding as to the confiscation of the horse/dog leash.

253.  P.C. 12210 interferes with the right to possess non-lethal weapons for purposes of self defense.

254.  Attached hereto as **Exhibit "B"** is a true and correct copy of the Criminal Complaint filed against plaintiff, along with pictures of the purported "Slungshot", none of which could be mistaken for an illegal weapon.

- 29 -

ER-213

255. No reasonable officer or person would deem a horse leash as an illegal weapon, and as such, defendants lacked probable cause to seize plaintiff and his property.

256. Plaintiff was damaged by having to pay for bail, an attorney, and getting his motorcycle out of impound.

257. On or about March 3, 2016, the Placer County District Attorney filed charges against Defendant HAVEN for violating California Penal Code section 22210. Defendant HAVEN was arraigned on the charges in the above-entitled court.

258. The Second Amendment protects all "arms", and is not just applicable to firearms.

259. Plaintiff seeks monetary relief for being deprived of his right and property.

260. Plaintiff seeks injunctive and declaratory relief for the return of his horse leash.

261. Plaintiff has been damaged according to proof.

262. HARRIS is named only for purposes of injunctive and declaratory relief only.

263. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1988.

<div align="center">

**TWELFTH CLAIM FOR RELIEF**
**UNCONSTITUTIONALITY**
**Violation of the Equal Protection Clause of the Fourteenth Amendment**
(Plaintiffs HAVEN, CUPP and Defendant HARRIS only)
(Open or Conceal Carry, Safe-Gun List and Magazine Ban)
(Declaratory and Injunctive Relief Only)

</div>

264. Plaintiffs incorporate the above allegations as if set forth fully here.

265. The Second Amendment guarantees law-abiding citizens the right to keep and bear arms for self-defense purposes.

266. However, former government workers have expansive Second Amendment rights, while all others have their rights continuously being stripped with no end in sight.

267. Even active duty, part-time and retired Arson-Inspectors are included within the group of those who are not subject to the draconian laws of California. See **Exhibit "C"** attached.

268. As stated in **Exhibit "D"**, law enforcement officers can purchase an unlimited amount of firearms, without restriction or limited to specific type of caliber or capacity, nor are they limited to the safe gun list, exercising their Second Amendment rights without any of the burdens placed the plaintiffs.

<div align="center">

**- 30 -**

</div>

269. Plaintiffs are seeking to enjoin the HARRIS and the State of California and defendants from enforcing current firearm statutes which infringe upon their constitutional rights as follows:

a. To purchase off-roster handguns, which are legal under federal law.

b. To possess and purchase standard size handgun and rifle magazines which most exceed 10 rounds,

c. To travel interstate with magazines which contain more than 10 rounds of ammunition.

d. To either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly.

270. Regulations infringing upon that right must meet heightened scrutiny.

271. The Constitution presumes that "The People" are reasonable, and that Government is a "necessary evil" to be curtailed and limited.

272. California's current firearm laws denies law-abiding citizens their constitutional right to protect themselves and their families and places them at a significant disadvantage when confronted by an armed attacker, while at the same time law enforcement and retirees are permitted to pick and choose the weapon of choice to be used for self defense.

273. This is a constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030(Pen. Code, §§ 26950, 27650) which results in a **massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers** in several very specific ways:

a. Allows officers to purchase and sell off-roster handguns, and keep those weapons after retirement. Non-Roster Handguns (Unsafe Handguns) (Penal Code, § 32000, subd. (b)(4).) Penal Code § 32000 does not prohibit the sale to, or purchase by, peace officers, and in turn, these officers may sell the firearms on the open market.

b. Allows officers to possess and purchase standard size handgun and rifle magazines which exceed 10 rounds, called Large Capacity Magazines, and keep them after retirement. (Penal Code § 32405)

c. Grants a lifetime CCW, without the costs and associated regulations Plaintiffs are

- 31 -

1    subjected to (this is especially important since it allows interstate travel with a loaded
2    firearm under federal law).  Penal Code §§ 25450, 25475, 12031(b)

3    d.    If a peace officer is honorably retired, California law requires that the agency from
4          which he retired issue the officer an identification certificate containing an
5          endorsement to carry a concealed firearm.  Penal Code §§ 25455, 25465, 12031(b)

6    e.    Allows officers to purchase semi-automatic rifles not otherwise available to the
7          public for self defense, which they can keep even after their government service is
8          terminated.

9    274.  Plaintiffs seek injunctive relief to enjoin HARRIS and the State of California from enforcing
10         laws, rules and regulations which:

11   a.    Limit plaintiffs' ability to keep, bear, and travel with off-roster handguns, which are
12         legal under federal law.

13   b.    Limit plaintiffs' ability to possess, transport and purchase standard size handgun and
14         rifle magazines which most exceed 10 rounds, as these are basic parts to modern
15         operational and safe firearms.

16   c.    Limit plaintiffs' ability to travel interstate with magazines which contain more than
17         10 rounds of ammunition.

18   d.    Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon.
19         Plaintiffs' concede if concealed carry is prohibited, then open carry is not.

20   275.  Further, plaintiffs request a positive injunction to either be issued a lifetime CCW upon
21         application at the same cost that retired officers pay or be permitted to carry a weapon
22         openly.

23   276.  Declaratory and Injunctive relief as to the offending statutory provisions relied upon.

24   277.  Plaintiffs seeks attorney fees pursuant to 42 U.S.C. Section 1988.

25   278.  As a direct and proximate result of Defendants' violation of Plaintiffs' Equal Protection
26         rights under the Fourteenth Amendment, Plaintiffs have suffered irreparable and immediate
27         harm and are entitled to declaratory and injunctive relief under 42 U.S.C. §§ 1983, 2201 and
28         2202.

**- 32 -**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered in his favor and against Defendants as follows:

1.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Second Amendment to the United States Constitution.

2.) A declaration that California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Second Amendment to the United States Constitution.

3.) A declaration that Defendants' enforcement of California Penal Code section §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 *et al.* violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

4.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

5.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

6.) A declaration that California Penal Code §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

7.) A declaration that Defendants' enforcement of the Law Enforcement Officers Safety Act violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

8.) A declaration §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* violates the Constitution and laws of the State of

- 33 -

**ER-217**

California.

9.) A declaration C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850 violates the Constitution and laws of the State of California.

10.) A declaration that Defendants application and enforcement of C.P.C. §§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850, *et al.* violates Plaintiffs' right to travel guaranteed by both Article IV, Section 2 of the United States Constitution and the Privileges or Immunities clause of the Fourteenth Amendment.

11.) A declaration that Defendants application and enforcement of C.P.C. §§ 12050, *et al.* and 12025 violate Plaintiffs' right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

12.) An injunction permanently enjoining Defendants from enforcing C.P.C.§§ 16150, subd. (b), 30305, 32310; Pen. Code, §§ 25400-25700, 26150-26225; Penal Code § 33850.

13.) For remedies available pursuant to 42 U.S.C. § 1983 and for an award of reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

14.) An order mandating that Defendants turn over all firearms and their accessories which were illegally seized by Defendants.

15.) Damages for deprivation of a rights, property, and privileges, and such other relief as this Court deems just and equitable, including general and specific damages.


Dated: August 15, 2016                    THE LAW OFFICES OF GARY W. GORSKI
                                          Respectfully Submitted,
                                           /s/ Gary W. Gorski_____
                                          Gary W. Gorski
                                          Attorney for Plaintiffs



Public Case Access
Sacramento Superior Court

Your Account | Log Off | Find Order | Document Cart (0)
Welcome gary gorski

Home | Civil | Criminal | Family | Probate | Small Claims | Traffic | Unlawful Detainer

**Criminal Cases**
- Search by Name
- Search by Case
- Search by Xref

**General Info**
- How This Site Works
- Criminal Home Page on Saccourt
- Trial Readiness Notification

## Case Information

| | | | |
|---|---|---|---|
| **Defendant Name** | JAMES EDWARD CUPP | | |
| **Case Number** | 14M02083 | **Charge Document** | Complaint |
| **Xref** | 545808 | **Case Status** | Disposed |
| **Filing Date** | 03/27/2014 | **Court ID** | 34470 |

## Aliases

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| JAMES | E | CUPP | |
| JAMES | EDWARD | CUPP | |

## Related Cases

| | Case Number | Filing Date | Court ID |
|---|---|---|---|
| No related cases found. | | | |

## Charges

| Count | Charge | Severity | Degree | Allegation | Blood Alcohol % |
|---|---|---|---|---|---|
| C001 | PC 21310 | Misdemeanor | N/A | N/A | N/A |

## Future Hearings

| Date | Time | Dept. | Reason | Outcome |
|---|---|---|---|---|
| No future hearings found. | | | | |

## Hearing History

| Date | Time | Dept. | Reason | Outcome |
|---|---|---|---|---|
| 05/30/2014 | 8:30 AM | 04 | BAIL BOND INFORMATION | BOND EXONERATED |
| 05/30/2014 | 8:30 AM | 04 | COUNSEL INFORMATION | PD RELIEVED BY COURT |
| 05/30/2014 | 8:30 AM | 04 | TRIAL READINESS CONFERENCE | DISMISSED |
| 05/16/2014 | 8:30 AM | 04 | TRIAL READINESS CONFERENCE | CONTINUED |
| 04/08/2014 | 8:30 AM | 60 | FURTHER PROCEEDINGS | CONTINUED |
| 04/01/2014 | 1:30 PM | 60 | ARRAIGNMENT | ARRAIGNED |
| 04/01/2014 | 1:30 PM | 60 | COUNSEL INFORMATION | PD APPOINTED |

## Charge Dispositions

| Count | Plea | Charge | Disposition Code | Disposition Date | Severity | Degree |
|---|---|---|---|---|---|---|
| C001 | No Plea | PC 21310 | Dismissed | 05/30/2014 | Misdemeanor | |

## Sentence Summary

| Count | Sentence Type | Sentence Date | Prob. Type | Prob. Status | Prob. Term | Prob. Sup. | Custody Program | Custody Length | Non LT Code | Non LT Time | Non LT Susp. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No sentencing information found. | | | | | | | | | | | |

Contact Us | Use and Privacy Policy | Download Adobe Reader

Exhibit "A"



ER-220

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF PLACER

MAR 03 2016

JAKE CHATTERS
EXECUTIVE OFFICER & CLERK
By: M. Ryan, Deputy

R. SCOTT OWENS
Placer County District Attorney
State Bar No. 146406
10810 Justice Center Drive, Suite 240
Roseville, CA  95678-6231

Tel: (916) 543-8000
Fax: (916) 543-2550

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF PLACER

--oOo--

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | DA NO. 16-02-097707 |
| | COURT NO. 62-144141 |
| Plaintiff, | **SPECIFIED MISDEMEANOR COMPLAINT** |
| -vs- | |
| LAWRENCE JACK HAVEN | |
| Defendant. | |

## COUNT ONE

On or about February 8, 2016, in the County of Placer, the crime of POSSESSION OF A DEADLY WEAPON, in violation of Penal Code section 22210, a specified misdemeanor, was committed by LAWRENCE JACK HAVEN, who did unlawfully manufacture, cause to be manufactured, import into the State of California, keep for sale, offer and expose for sale, and give, lend, and possess an instrument

1

Exhibit "B"

**ER-221**

and weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap and slungshot.

### COUNT TWO

On or about February 8, 2016, in the County of Placer, the crime of UNSAFE SPEED, in violation of Vehicle Code section 22350, an infraction, was committed by LAWRENCE JACK HAVEN, who did willfully and unlawfully violate the basic speed law by driving upon a highway at a speed greater than was reasonable and prudent having due regard for existing conditions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 25, 2016, at Roseville, Placer County, California.

R. SCOTT OWENS, DISTRICT ATTORNEY

By: _____
TIMOTHY J. SANDS,
DEPUTY DISTRICT ATTORNEY

---

**NOTICE.**

**PLEASE TAKE NOTICE THAT COUNSEL FOR THE PEOPLE HEREBY MAKE**

**AN INFORMAL DEMAND FOR DISCOVERY (PURSUANT TO PENAL CODE**

**SECTION 1054.3) WITHIN FIFTEEN DAYS.**

---

2

**ER-222**



ER-223





**Red Black**







**ER-228**





80 Ops. Cal. Atty. Gen. 100                                                     Page 1 of 4

Case 2:16-cv-05235-TLN-KJN Document 10-2 Filed 09/38/25 Page 233 of 290

80 Ops. Cal. Atty. Gen. 100, 1997 WL 206244 (Cal.A.G.)

Office of the Attorney General
State of California
Opinion No. 96-904

*1 April 25, 1997

THE HONORABLE BILL LEONARD
MEMBER OF THE CALIFORNIA STATE ASSEMBLY

THE HONORABLE BILL LEONARD, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1. Are full-time and part-time arson investigators of a local fire department eligible to receive identification certificates with concealed weapons endorsements when they retire?

2. If so, who is authorized to issue the identification certificates with the concealed weapons endorsements to qualified arson investigators?

CONCLUSIONS

1. Full-time arson investigators of a local fire department are eligible to receive identification certificates with concealed weapons endorsements when they retire if they were authorized to carry firearms and in fact did so during the course and scope of their employment. Part-time arson investigators of a local fire department are eligible to receive identification certificates with concealed weapons endorsements when they retire if their employing agency authorized them to act as peace officers while performing their primary duties, i.e., enforcing fire prevention or suppression laws, and they were authorized to carry firearms and in fact did so during the course and scope of their employment.

2. The fire chief is authorized to issue the identification certificates with concealed weapons endorsements to qualified arson investigators.

ANALYSIS

Penal Code section 12025 [FN1] sets forth the circumstances under which the crime of carrying a concealed weapon is committed. Exemptions to the prohibition on carrying a concealed weapon are found in section 12027, which in relevant part provides:

"Section 12025 does not apply to, or affect, any of the following:
"(a)(1)(A) Any peace officer, listed in Section 830.1 or 830.2, whether active or honorably retired, other duly appointed peace officers, honorably retired peace officers listed in subdivision (c) of Section 830.5, *other honorably retired peace officers who during the course and scope of their employment as peace officers were authorized to, and did, carry firearms . . . . Any peace officer described in this paragraph who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired. The issuing agency* may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this subdivision. As used in this section and Section 12031, the term 'honorably retired' includes all peace officers who have qualified for, and have accepted, a service or disability retirement. For purposes of this section and Section 12031, the term 'honorably retired' does not include an officer who has agreed to a service retirement in lieu of termination.
"(B) Any officer . . . shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a concealed firearm.

Exhibit "C"

**ER-231**

1  BENJAMIN B. WAGNER
   United States Attorney
2  WILLIAM S. WONG
   MICHAEL D. ANDERSON
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA  95814
   Telephone: (916) 554-2700
5  Facsimile: (916) 554-2900

6  Attorneys for the United States of America

7

8              IN THE UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 IN THE MATTER OF THE SEARCH OF:        CASE NO.  2:11-SW-0498 EFB

12 Snellings' Firearms                    [PROPOSED] ORDER FOR
   2675 Land Avenue                       PARTIALLY UNSEALING SEARCH
13 Sacramento, California                 WARRANT AND RELATED
                                          DOCUMENTS
14

15

16

17

18        The government's request to unseal the redacted affidavit in support of a search warrant,

19 which is attached to this order and is incorporated by reference, is GRANTED.

20 SO ORDERED:

21 DATED: 6-1-2012

22                                        HON. EDMUND F. BRENNAN
                                          U.S. Magistrate Judge
23

24

25

26

27

28

                                    3

ORIGINAL
FILED

JUN 0 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

## Affidavit in Support of a Search Warrant

1. I, Special Agent Sara M. Lewis, Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice, being duly sworn on oath, depose and say:

2. I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Department of Justice. I have been so employed since July 2002. I have a Bachelors degree in Criminal Justice from California State University, Fresno, and a Masters degree in Criminal Justice from California State University, Fresno. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Program and the Bureau of Alcohol, Tobacco, Firearms and Explosives, New Professional Training (NPT), Special Agent Academy.

3. I have investigated no less than 100 cases involving federal firearms violations including straw purchase violations. I have spoken to several straw purchasers about how and why they committed the act of straw purchasing. I have received training regarding straw purchase investigations. I have spoken to more experienced investigators about how people commit straw purchases and other federal firearm violations. I have assisted on investigations involving people engaged in the firearms business of selling firearms without a Federal Firearms License (FFL). I have received training on federal violations of people engaged in the firearms business without an FFL. I have spoken with experts and more experienced investigators that have conducted investigations of people who have engaged in the business of selling firearms without an FFL. I have interviewed subjects who were engaged in the business of selling firearms without an FFL.

## Federal Firearm Licensing Related Laws and Definitions

4. I am familiar with federal laws and know that it is a violation of Title 18, United States Code, Section 371, if two or more persons conspire to commit any offense against the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy.

5. It is a violation of Title 18, United States Code, Section 922(a)(1)(A), for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business, to ship, transport, or receive any ammunition in interstate or foreign commerce.

6. It is a violation of Title 18, United States Code, Section 922(a)(6), for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition

**ER-233**

from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious or misrepresented identification, intended or likely to deceive such importer manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearms or ammunition.

7. It is a violation of Title 18, United States Code, Section 924(a)(1)(A) to knowingly make any false statement or representation with respect to the information required by Chapter 44 of Title 18 to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief of disability under the provisions of this chapter.

8. It is a violation of Title 18, United States Code, Section 924(a)(3)(A) for any licensed dealer, licensed importer, licensed manufacturer, or licensed collector who knowingly makes any false statement or representation with respect to the information required by the provisions of Chapter 44 of Title 18 to be kept in the records of a person licensed under this chapter.

9. Title 18, United States Code, Section 921(a)(3), defines a firearm as any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon.

10. A Federal Firearms License (FFL) is a license that enables an individual or a company to engage in the business pertaining to the manufacture and/or sales of firearms and ammunition.[1] Having an FFL is a prerequisite to be "engaged in the business" of firearm sales.

11. Title 18 United States Code, Section 921(a)(11)(A) defines the term "dealer" as meaning any person engaged in the business of selling firearms at wholesale or retail.

12. Title 18, United States Code, Section 921(C) defines "engaged in the business" as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection for a hobby, or who sells all or part of his personal collection.

---

[1] The term FFL is used to mean both a federal firearms license and a federal firearms licensee. The term will be used interchangeably throughout this affidavit.

ER-234

13. Title 18, United States Code, Section 921(22) states that the term "with the principle objective of livelihood and profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal collection: *Provided*, the proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

## California Law and Off Roster Firearms

14. California Penal Code Section 12125 and 12126 address the definition of "off roster firearms." In summary, a handgun sold by an FFL must be on the approved roster of firearms in the State of California. However there is an exemption that allows peace officers to purchase off roster firearms.

15. During the course of this investigation, Supervising Special Agent Blake Graham assisted in the process of determining which firearms are "off roster" firearms. Supervising Agent Graham explained to your affiant and TFO Halstead how to determine which firearms are "off roster" firearms by utilizing a link on the California Department of Justice website (http://certguns.doj.ca.gov). Supervising Agent Blake Graham is a sworn California peace officer employed by the California Department of Justice (DOJ). Agent Graham is assigned to the Bureau of Firearms where his duties include, but are not limited to, conducting investigations on violations of California's firearms statutes and criminal investigations involving businesses with a federal firearms license (FFL). Agent Graham is involved in the process of approving what handguns may be sold in the State of California and amending the roster of approved handguns certified for sale in California. With the assistance of Agent Blake Graham, ATF TFO Greg Halstead and I utilized the California Department of Justice website to determine whether a handgun or pistol was an "off roster" firearm. In this Affidavit where it is noted that a handgun or pistol is an "off roster" firearm, that determination was made by TFO Halstead and myself. Additionally, all photographs of firearms contained in this Affidavit were determined to be "off roster" handguns except the photograph of the rifle contained on page 36.

16. Therefore, this affiant believes that there is substantial demand in the firearms market to obtain off roster handguns as only peace officers may purchase the new handguns.

17. California Penal Code Section 12070(a) states that no person shall sell, lease, or transfer firearms unless he or she has been issued a license pursuant to Section 12071. Any person who violates this section is guilty of a misdemeanor. However, this section does not prohibit the "infrequent" sale and/or transfers of firearms.

**ER-235**

18. California Penal Code Section 12070(c)(1) defines "infrequent" sales or transfers of pistols , revolvers, and other firearms capable of being concealed upon the person, as less than 6 transactions per calendar year. For this purpose "transaction" means a single sale, lease, or transfer of any number of pistols, revolvers, or any other firearm capable of being concealed upon the person.

19. Ryan McGOWAN is in violation of California Penal Code Section 12070(a). McGOWAN has conducted 10 private party transactions in 2010 and 8 private party transactions in 2011.

20. Thomas LU is in violation of California Penal Code Section 12070(a). LU has conducted 9 private party transactions in 2011.

21. The selling, lending and/or giving of a high capacity magazine is a felony violation of the California Penal Code Section 12020 (Unlawful carrying and Possession of Weapons). A high capacity magazine is a magazine capable of holding more than 10 rounds of ammunition.

## Scope of Requested Search Warrant

22. The information set forth in this Affidavit is based, in part, upon my own personal knowledge, but it is also based upon information provided to me by other law enforcement officers and reports generated by other law enforcement personnel. Because this Affidavit is presented for the limited purpose of setting forth probable cause for the requested search warrant, I have not necessarily included every fact known to me through this investigation. I have set forth only those facts necessary to establish probable cause to believe that contraband, fruits of the crimes, and other items illegally possessed, property designed for use, intended for use, or used in committing the offenses outlined in this Affidavit and in particular, those items listed in Attachment B will be found at the locations requested to be searched more fully described, and incorporated by reference in Attachment A to this Affidavit.

23. Based on the evidence set forth in this affidavit there is probable cause to believe that evidence of the foregoing crimes are likely to be found on or at the following persons, vehicles, lockers and residences, each of which is more particularly described in Attachment A, which is incorporated in the search warrant as though fully set forth herein:

    a. **Persons:**

        Ryan McGOWAN, (hereinafter "McGOWAN"), date of birth,

The residence of Robert SNELLINGS, ███████████, Rancho Murieta, California;

The residence of Christopher LENERT, ███████████, Sacramento, California;

The residence of Christopher KJELLBERG, ███████████, Rocklin, California;

e. **Business**:

The business premises of SNELLINGS' FIREARMS, 2675 Land Avenue, Sacramento, California;

24. It is my belief that those items listed on Attachment B-1 through B-23 attached hereto may be found on the persons and locations described in Attachment A attached hereto. I base this belief on the information set forth in this Affidavit, my training and experience, and the experience of the law enforcement officers with whom I have consulted.

## Primary Subjects of Investigation

25. Ryan McGOWAN is a 30 year old male employed the Sacramento County Sheriff's Department as a deputy sheriff. MCGOWAN has utilized the screen names "SacDep" and "dldeguz" on the CalGuns website. MCGOWAN has sold three firearms to ATF undercover agents.

26. Thomas LU is a 41 year old male employed by the Sacramento County Sheriff's Department as a deputy sheriff. LU has utilized the screen name "Teabag" on the CalGuns website. LU has sold nine firearms to an ATF undercover agent.

27. Robert SNELLINGS is a 62 year old male who possesses a Federal Firearm Licensee (FFL) for SNELLINGS' FIREARMS. SNELLINGS has sold and/or transferred 33 firearms to MCGOWAN and 29 firearms to LU between 2008 to the present.

28. Darryl DEGUZMAN is a 31 year old male employed by the Sacramento County Sheriff's Department as a deputy sheriff. DEGUZMAN has utilized a screen name of "dldeguz" on the CalGuns website.

29. Christopher KJELLBERG is a 40 year old male employed by the Roseville Police Department as an officer. KJELLBERG has private party transferred five off roster firearms to individuals who could not otherwise legally purchase the firearms.

30. Christopher LENERT is a 30 year old male who is employed by the Sacramento Police Department as an officer. LENERT has private party transferred 2 off roster firearms to individuals who could not otherwise legally purchase the firearms.

### Overview of Investigation

31. On July 1, 2011, ATF Task Force Officer (TFO) Greg Halstead and your affiant spoke with the owner of a gun store who is an FFL located in Sacramento County.

32. The owner stated that he/she wanted to advise TFO Halstead and your affiant about an individual who had conducted an unusual amount of private party transfers (PPT) of firearms at his/her business.

33. The owner provided TFO Halstead and your affiant with copies of internal store documents summarizing the transactions made by an individual named Ryan McGOWAN. Included in the photocopies were a Sacramento County Sheriff's identification card and a California DMV driver's license belonging to Ryan McGOWAN.

34. The documents revealed that Ryan McGOWAN has private party transferred 9 firearms between July 2009 and June 2011 through the FFL that contacted us.

35. Ryan McGOWAN is identified per the Sacramento County Known Person File (KPF) as follows: ▆ male, ▆ approximately ▆ pounds, ▆ hair and ▆ eyes, with a date of birth of ▆.

36. Further investigation revealed that McGOWAN is employed as a Deputy Sheriff with the Sacramento County Sheriff's Department (SSD). McGOWAN has been employed by SSD since 2008 and is currently assigned at the Rio Consumes Correctional Center (RCCC).

37. A query of AFS (Automated Firearms System) indicates that McGOWAN has purchased 41 (handguns) firearms since 2008. Of the 41 firearms, McGOWAN has private party transferred 25 firearms. Nineteen were private party transferred within one year of the initial purchase and of the 19 firearms, 5 of the firearms were private party transferred within 4 weeks of the purchase.

38. Dealer Record of Sale (DROS) records show that 33 of the 41 firearms obtained by McGOWAN were transferred to him through SNELLINGS' FIREARMS.

39. The AFS system maintains records for purchases and transfers of handguns sales only. There is no automated record keeping system that records the purchases and/or transfers of rifles. Based on the lack of an automated database, your affiant is unable to determine the number of purchases and subsequent transfer, if any, of long guns, by McGOWAN and Thomas LU.

40. ATF Area Supervisor Roger Root is a Supervisor for Industry Operations Investigators. The duties of an Industry Operation Investigator (IOI) include qualification and compliance inspections to determine if the Federally licensed entities in the firearms and explosives industries are following the laws and regulations that affect their respective industries. ATF IOI Supervisor Root reviewed ATF records and verified that McGOWAN does not possess a Federal Firearms License.

### www.CalGuns.net

41. www.CalGuns.net is a social media website that is designed for the firearm community in California. It contains a variety of forums in which people can post information, questions, and sales of firearms. One of the forums is titled "private firearm sales."

### McGOWAN and "SacDep"

42. During the course of the investigation, TFO Halstead checked the Calguns website to see if he could locate any posting for firearms by McGOWAN. While searching the website TFO Halstead discovered a subject posting under the screen name "SacDep." There were several postings by "SacDep" of firearms that were the same kind owned by McGOWAN. Some of the dates for firearms listed by "SacDep" for sale are close in time to when DROS records indicate McGOWAN private party transferred the same type of firearm. "SacDep" also listed his location as Sacramento and his occupation was listed as "Sacramento Department of Human Waste." It is my opinion and the opinion of TFO Halstead that "SacDep" is short for Sacramento Deputy, since McGOWAN is a Sacramento County Sheriff's Deputy. The CalGuns website is divided up into numerous forum topics. The forums are divided up into threads. A thread is an online conversation discussing a particular topic. A thread is started when someone begins a new topic on the forum. There were approximately 25 new threads started by "SacDep" in a variety of different forums. I will include some of the postings by "SacDep" that led TFO Halstead

and I to believe that the person posting under the screen name "SacDep" was Ryan McGOWAN.

43. One of the forums is titled "CalGuns LEO'S." LEO is a well known acronym for Law Enforcement Officer. I located a thread started on the CalGuns LEO'S forum by "SacDep." The posting was dated 06-09-2009 and titled "off-list pistols" and the following text was written:

*What is the rule/law for selling? Is there a time that has to pass or a certain number of pistols every year? If you know of the penal code that explains it please let me know. thank you*

44. On 09-04-2009, in the "California handguns" forum, "SacDep" started the following thread:
*Scenario: Cop buys off list gun and keeps it for a month. Cop decides to sell gun to non cop buddy (PPT). Non cop buddy keeps gun for a month. Non cop buddy decides to sell gun to non cop CalGuns member. Two non cops go to FFL to do PPT...*

*Does the gun need to be single shot for the transfer? Please only comment if you are 100% sure of what you are talking about. Thanks in advance.*

45. On 02-22-2010, in the "Private Firearms Sales" forum, "SacDep" started a thread where numerous firearms were advertised over a period of time. The thread started on 02-22-2010 and the last posting on the thread by "SacDep" was on 10-01-2010. I copied some of the postings and pictures from the forum added them below:
*I also have a NIB GSG-5PK for sale. It is available for PPT in Sacramento Area for $479. It does not have a maglock. You will need to acquire a maglock or accept separated in a couple pieces. Comes with factory case and accessories.*

*Springfield XD .45 GAP-Used. shoots great. im not sure how many rounds I have put through it. Ammo is a tad expensive so it sits in the safe. comes with everything pictured $400*
*I will travel for PPT for the right price.*

*\*\*Buyer pays DROS for all transactions\*\**



\*\*Photograph of firearm posting listed above\*\*



\*\*Photograph of firearm posting listed above\*

46. Based on DROS records which I have reviewed, I know that at the time of this posting McGOWAN owned a GSG-5PK pistol and Springfield XD .45 caliber pistol. McGOWAN purchased one of the GSG 5PK pistols on 07-30-2009 and the second one he didn't purchase until 03-25-2010, not long after this ad was posted.

**ER-241**

47. On 03-16-2010, at 2:53 PM, "SacDep" posted: *"btt new gun added."* The next posting is by a CalGuns member with screen name "Friar Tuck". On 03-16-2010, at 3:05 PM, "Friar Tuck" posted: *"How much for the 5.7??"* The next posting is by "SacDep" on 03-16-2010, at 3:35 PM, where he posted: *"trade-something equally awesome."* On 03-18-2010 "SacDep" posted: *"added a PLR-16 to the table."*

48. Sometime between 02-22-2010 and 03-29-2010, "SacDep" added the following post and pictures:

*Originally Posted by SacDep* 

*OMG still for sale? Yes. It is a used but in great condition Intratec AB-10 with non threaded/shrouded barrel. comes with a 30 round rebuild kit which will have to be converted to a 10/30 round. PPT only in Sacramento area (not at The Gunroom (they suck), or WildBill's (won't DROS)). Please make sure you have an FFL who will DROS this gun. River City and Snellings are the only two I know who will do it. Willing to trade for something equally awesome but I prefer to sell. 579 firm!!!! Thanks for looking. this is how the gun looks now.*

**Photograph of firearm posting listed above**

**ER-242**

*USED Keltec PLR-16 .223 pistol. does not come with Eotech or 10/30 magazine. It will come with a 10 round magazine and everything else shown minus the carpet. Sounds amazing. Trade*



*\*\*Photograph of firearm posting listed above\*\**

*Slightly used FN 5.7. Works and looks great. Comes with everything you see. Mags will need to be made to 10 rounders. Trade*



**Photograph of firearm posting listed above**

*Also, Magnum Research Micro Desert Eagle. Gently used. Great condition. Im pricing it along with the others I have seen for sale around here. Comes with original case and whatnot $750 OBO NO TRADES*



\*\*Photograph of firearm posting listed above\*\*

**ER-245**

49. On 03-21-2010, "SacDep" updates the thread by posting: *"btt. prices added."* On 03-22-2010, "SacDep" posted: *"5.7 SPF."* On 03-23-2010, "SacDep" posted: *"FN 5.7 sold novanryder."*

50. I know that SPF stands for "sold pending funds" and the 5.7 is referring to the FN 5.7 pistol. This posting also led me to believe that "SacDep" was the screen name being used by McGOWAN. DROS records show that McGOWAN did a private party transfer of his FN 5.7 pistol on 03-23-2010 one day after "SacDep" posted the gun was sold. After McGOWAN sold this FN 5.7 pistol, he purchased a second one on 04-12-2010. McGOWAN later private party transferred the second FN 5.7 pistol on 06-29-2011. Purchasing a second FN 5.7 pistol within three weeks of selling the first one is unusual unless you are engaged in the business of selling firearms.

51. On 03-28-2010, "SacDep" posted: *"92d sold and added the MPA 930 aka the bumbfire king!"* DROS records show that McGOWAN did a private party transfer of a Beretta, model 92D, on 03-31-2010. DROS records show that at the time of this posting McGOWAN also owned a MPA 930 pistol.

52. On 04-05-2010, "SacDep" posted: *"bump with 2 new guns."* There were no photographs of the firearms on the thread at the time TFO Halstead discovered the posting. A person posting on the thread has the ability to delete or modify their postings. It is common for some posters to delete their posting once their firearms are sold. Based on the information in the next three paragraphs, I believe the posting on 04-05-2010 for two new guns by "SacDep" was for an H&K pistol and a Springfield model XDM 9mm pistol.

53. On 04-05-2010, a person with the screen name, manuelcardenas77 posted: *"Nice guns bro!. I like the HK but tooooooo far."* The next posting is by a person with screen name, jlh95811, which states: *"Just out of curiosity what caliber is the XDm 3.8?"* The next posting is by "SacDep", which he replies: *"Sorry..9mm".* On 04-06-2010, "SacDep" posted: "XDm SPF" (sold pending funds). On 04-07-2010, someone with the screen name "killzone45" posted the following question: *"SO is the XDm actually sold or just pending?* To which "SacDep" responded by posting on 04-07-2010: *"Sold today to a great buyer! Ill let you know if my buddy decides to get rid of his."* DROS records show that McGOWAN did a private party transfer of a Springfield XDM pistol on 04-07-2010. DROS records show McGOWAN purchased the Springfield XDM approximately 12 days earlier on 03-25-2010. It is unusual for someone to buy a firearm and then sell the firearm 12 days later, unless you are engaged in the business of selling firearms.

54. It should be noted that DROS records show McGOWAN purchased a second Springfield XDM on 04-12-2010, only five days after selling the first XDM. The purchasing of a

**ER-246**

second Springfield XDM just five days after selling the first one is unusual unless you are engaged in the business of selling firearms. On 06-29-2010, "SacDep" added the second Springfield XDM by posting: *"9mm XDm 3.8 added!"* On 08-08-2010, "SacDep" posted: *"XDM sold."* DROS records show the second Springfield XDM was private party transferred by McGOWAN on 08-07-2010.

55. On 04-07-2010, *"SacDep"* posted: *"HK SPF to mlatino"*. This posting shows the HK was sold pending funds to the person with screen name Mlatino. On 04-08-2010, "SacDep" posted: *"HK sold."* DROS records show that McGOWAN private party transferred an H&K pistol to a Matthew Latino on 04-08-2010. I believe the screen name Mlatino belongs to Matthew Latino and this further supports the conclusion that "SacDep" is the screen name used by McGOWAN.

56. On 06-28-2010, "SacDep" posted: *"Micro desert eagle sold. Chrome .50AE sold. I have a black .50AE available. No pics yet."* Based on the DROS records, I know that McGOWAN did a private party transfer of Micro Desert Eagle pistol on 06-27-2010 and one chrome .50 caliber pistol on 07-10-2010.

## July 15, 2011 - UC Meet With MCGOWAN

57. On July 2, 2011, acting in an undercover capacity, ATF TFO Halstead made contact with an individual later identified as McGOWAN on the CalGuns website. ATF TFO Halstead expressed interest in an Uzi pistol via private messaging. The screen name listed on CalGuns was "dldeguz." On July 10, 2011, "dldeguz" accepted an offer of $1300 for an off roster Vector Arms, 9 millimeter pistol. "dldeguz" stated on private message that his name is Ryan and could be contacted at 209-481-0968.

58. On July 15, 2011, acting in an undercover (UC) capacity, an ATF Special Agent (hereinafter referred to as UC#1) met McGOWAN at River City Gun Exchange in the City of Sacramento in the parking lot, which was videotaped/recorded. UC #1 viewed a DMV photograph of McGOWAN prior to meeting him at the store and subsequently positive identified the person he met in the parking lot as McGOWAN. McGOWAN told UC #1 that he was running late because he just sold a rifle to someone else just before his meeting with UC #1. McGOWAN allowed UC #1 to view and manipulate the Uzi. McGOWAN gave disassembled magazines capable of holding 25 rounds of ammunition to UC#1. McGOWAN informed UC #1 that he could transfer a high capacity magazine as long as it was not put together. McGOWAN provided instructions to UC #1 on how to assemble the magazines so they had the capacity to hold more than 10 rounds of ammunitions and then told UC #1 to place the magazines in his vehicle before they

**ER-247**

entered River City Gun Exchange. McGOWAN assembled one of the high capacity magazines together and gave it to UC #1 intact. California law prohibits the transferring of high capacity magazines. Transferring high capacity magazines is a felony violation of California Penal Code 12020(a)(2).

59. When UC #1 attempted to walk with the firearm towards the entrance of River City Gun Exchange, McGOWAN informed him that a transfer of money inside the store would result in taxes collected by the store for the sale of the firearm. UC #1 consented to paying McGOWAN $1300 in cash for the Vector Arms, Model HR4332, 9mm pistol, serial number 507102 in the parking lot and then entered the store with McGOWAN to complete the private party transfer.

60. After the transfer was completed at River City Gun Exchange, UC #1 and McGOWAN exited the store. An unidentified Asian male exited the store and walked up to McGOWAN and expressed interest in purchasing a Vector Arms. The Asian male identified himself as "Ton" and then asked McGOWAN how he was able to procure the Uzi pistol. McGOWAN informed Ton that he was a "cop" so he could procure these items and transfer them to UC #1. McGOWAN continued to inform Ton that disassembled high capacity magazines are ok to transfer. Moreover, McGOWAN stated that it was up to the "transferee" what they wanted to do once they were in possession of the high capacity magazines. McGOWAN took Ton's phone number and said he would put him in contact with his friend that has similar Uzi type pistols for sale.

\*\*Firearm purchased on July 15th 2011\*



**ER-248**



**Purchase on August 4th 2011**

## September 9, 2011 - UC Meeting with McGOWAN

65. On September 7, 2011, acting in an undercover capacity, TFO Halstead made contact with McGOWAN on behalf of UC #2 on the CalGuns website communicating via private messages with the screen name "dldeguz". McGOWAN posting under the screen name "dldeguz" listed an off roster Desert Eagle, gold plated with tiger stripes, .50 caliber pistol for $3000. TFO Halstead negotiated the price down to $2950 utilizing private messaging on the CalGuns website for the Desert Eagle, .50 caliber pistol.

66. On September 9, 2011, an ATF undercover agent (hereinafter referred to as UC #2), met with McGOWAN at Wild Bill's Old West Trading Company located at 10490 East Stockton Blvd in Elk Grove, California. McGOWAN arrived in a 2006 black, Lexus 4 door sedan, with California license plate [redacted] Per the California Department of Motor Vehicles (DMV), the vehicle is registered to Ryan McGOWAN.

67. McGOWAN gave UC #2 a discounted price of $2900 (instead of $2950) for a Magnum Research, Desert Eagle, .50 caliber pistol, serial number 36205661, while in the parking lot, which was videotaped/recorded. McGOWAN told UC #2 that the business would charge sales tax if the sale is conducted inside the business. After MCGOWAN counted out the cash, UC #2 and McGOWAN entered Wild Bill's Old West Trading Company and completed a private party transfer of the firearm from McGOWAN to UC #2.

ER-249

68. A query of AFS shows that McGOWAN purchased the Magnum Research, Desert Eagle, .50 caliber pistol, serial number 36205661, from Personal Defense Weapons on August 16, 2011. Considering the California 10 day waiting period, McGOWAN would not have been able to pick up the firearm from Personal Weapons Defense until August 26, 2011. He posted it for sale on CalGuns for $3000 under the screen name of "dldeguz" on September 7, 2011. Hence, McGOWAN could have only possessed the firearm for no more than 13 days before posting it for sale.

69. TFO Halstead contacted an employee named "Dan" from Personal Defense Weapons via telephone. Dan stated that the above listed firearm is listed for approximately $1877 at this time. Dan stated that this type of firearm needs to be custom ordered.

70. Based on my training and experience and information relayed to me by agents/detectives, I know that persons who purchase firearms retain the firearms for indefinite periods of time because of their intrinsic and monetary value. McGOWAN possessed the above listed firearm for a very short period of time which would be more common for someone who is engaged in the business of firearm sales. In this specific case, McGOWAN was able to make a profit from the sale of this off roster firearm due to the difficulty of obtaining this firearm by non law enforcement personnel.



**Purchased on September 9th 2011**

75. On 09-02-2010, McGOWAN purchased an IMI, .50 caliber Desert Eagle, gold in color, handgun from SNELLINGS' FIREARMS. McGOWAN private party transferred (PPT) the same firearm on 04-08-2011. It appears this .50 caliber was listed for sale on the CalGuns website under the screen name "dldeguz." The ad was posted on 04-07-2011, at 3:56 AM, and the postings indicate it was sold a short time later at 6:16 AM. There was a picture of the firearm and the following text in the ad:

*"THIS GUN IS STILL AVAILABLE UNLESS OTHERWISE NOTED. $2600 OBO Titanuim Gold Tiger Stripe Desert Eagle in like new condition. Only shot one magazine through it. Not a scratch on it. Comes with box, paper work and fired shell from factory. You can not buy these new right now. If you think you can, go ahead and try. PPT in Sac area. Buyer pays DROS. Thanks for looking."*



**Firearm posting as listed above**

76. On 07-22-2010, McGOWAN purchased an IMI, .50 caliber Desert Eagle, gold in color, handgun from SNELLINGS' FIREARMS. McGOWAN private party transferred the same firearm on 03-26-2011.

77. On 05-24-2010, McGOWAN purchased an IMI, .50 caliber Desert Eagle, black in color, handgun from SNELLINGS' FIREARMS. McGOWAN private party transferred the same firearm on 08-04-2010.

**ER-251**

high capacity magazine is a magazine capable of holding more than 10 rounds of ammunition. The condition in which LU transferred the high capacity magazines to UC #1 is a felony violation of California Penal Code section 12020 because the magazines were not permanently modified to hold 10 rounds or less.

125. During the meeting, UC #1 asked LU if he was on www.CalGuns.net. LU stated that he was on www.CalGuns.net under screen name "Teabag." LU stated that he had some other guns he wanted to sell. Specifically, LU indicated that he had "Norinco AKs" for sale.

126. While filling out the private party transfer paperwork, LU provided his California identification card to the employee at River City Gun Exchange. The identification card stated his name was Thomas LU. When the transfer paperwork was complete, UC #1 and LU exited the River City Gun Exchange. LU informed UC #1 that he had a few more firearms in his vehicle. LU informed UC #1 that he had a Mossberg shotgun and another Uzi. UC #1 asked if the firearms were online. LU indicated that they weren't online because you can't put too much stuff online.



**Purchased on August 11th 2011**

## August 26, 2011-Purchase of two off roster firearms from LU

127. On August 16, 2011, TFO Halstead, acting in an undercover capacity began conversing with LU on the CalGuns website on behalf of UC #1. LU has an account with the screen name "Teabag" (which he identified as his screen name on the August 11 meeting). TFO Halstead expressed interest in purchasing an off roster Lancaster AK pistol (manufactured by Nodan Spud LLC) and an off roster Kel-Tec PLR 16 pistol. LU requested UC #1's private email account so that he could email photos, a list of 6 firearms and the corresponding sale prices that he had for sale. LU sent an email to UC #1 from an email account titled sac_thug4u@yahoo.com on August 22, 2011, with the above information. (See Attachment C for email conversation).

128. On August 26, 2011, UC #1 met with LU at the River City Gun Exchange to purchase a Nodac Spud, LLC, Model NDS-3, 7.62 caliber, serial number M006659, and a Kel Tec, PLR16, .223 caliber pistol, serial number P4Y17, for $1550 which was videotaped/recorded. LU led UC #1 to his vehicle to show UC #1 the firearms. LU was driving a white, 4-door, Lexus sedan, California license plate ███████. A query through DMV revealed that the 4-door, Lexus sedan, California license plate ███████ is registered to LU. LU opened the trunk of the vehicle, which contained boxes and firearm cases. UC #1 successfully purchased the above listed firearms from LU.

129. LU provided a few other firearms for UC #1 to review while they were still at his vehicle. LU provided UC #1 with a GSG5 pistol, a Norinco Uzi pistol with a wooden stock, and an AK-47 style rifle. UC #1 manipulated the action on each firearm and reviewed other features such as manufacturer markings and the bullet buttons. A bullet button is a magazine locking device. UC #1 ultimately told LU he would check to see if he knew anyone interested in the other firearms.

130. While filling out the transfer documents at the River City Gun Exchange, UC #1 overheard an employee of the gun store ask LU if he had recently received the Lancaster (manufactured by Nodac Spud, LLC) pistol. UC #1 observed the Lancaster pistol in a postal box. LU indicated that he had recently received the firearm. Additionally, LU indicated the firearm was delivered in the same postal box. UC #1 asked if LU bought the rifle online. LU responded affirmatively.

131. LU informed UC #1 about regulatory issues concerning the purchase of ammunition and handguns. LU indicated that purchasing a handgun in a gun dealer, such as River City Gun Exchange, was regulated to one gun a month. However, LU indicated that the type of transfer he and UC #1 were engaged in could be as many as 10 transfers.

**ER-253**

132. Due to the fact that LU is a peace officer, he is not restricted to the amount of firearms he may purchase monthly. A private citizen can only purchase one new handgun a month per California law.



**Purchased on August 26th 2011**

### September 7, 2011 - Meeting With LU

133. On September 6, 2011, TFO Halstead acting in an undercover capacity on behalf of UC #1 conversed with LU via email (Sac_thug4u@yahoo.com) regarding the purchase of four firearms (see attachment C for email). LU stated that he had the following firearms for sale: Interdynamics KG-9, 9 millimeter pistol for $ 1,500 (off roster); Kel Tec PF-9 pistol for $400 (off roster); Intratec, TECDC 9, 9 millimeter pistol, serial number D029008, for $500 (off roster); and a Norinco, Model 320, 9 millimeter rifle serial number A10709, for $700. TFO Halstead told LU that he was interested in purchasing the four firearms for $3100. The meeting was set up for September 7, 2011, at River City Gun Exchange.

**ER-254**



**Purchased on September 7th 2011**

### Suspicious Firearms Transactions made by LU
#### A. Multiple Purchases on Same Date

138. On numerous occasions, Deputy Thomas LU has purchased multiple handguns on the same day. People engaged in the business of dealing firearms or trafficking firearms will often purchase multiple firearms at once. California law prohibits a person from buying more than one handgun from a FFL within any 30 day period. However, peace officers in California are exempt from the law and therefore can purchase as many handguns as they wish within a 30 day period. A review of the DROS and AFS records show the following multiple handgun sales made by LU:

### November 22nd, 2010
- MasterPiece Arms, model MPA30 (off roster handgun)
- Taurus, model Raging Bull (off roster handgun)

### October 18th, 2010
- Intratec, model DC-9 (off roster handgun)
- Intratec, model DC-9 (off roster handgun)

### October 4th, 2010
- MasterPiece Arms, model MPA380 (off roster handgun)
- DSA, model TP9US (off roster handgun)

**ER-255**

### September 23rd, 2010
- Interdynamic, model KG9 (off roster handgun)
- Kel Tec, model PF9 (off roster handgun)

### September 2nd, 2010
- IMI, model Micro Desert Eagle (off roster handgun)
- Masterpiece Arms, model MP10 (off roster handgun)
- Intratec, model Tec-DC9 (off roster handgun)

### August 12th, 2010
- IMI, model Micro Desert Eagle (off roster handgun)
- Kel Tec, model P3AT (off roster handgun)
- Kel Tec, model PF9 (off roster handgun)

### July 22nd, 2010
- Interdynamic, model KG99 (off roster handgun)
- Intratec, model Tec-DC9 (off roster handgun)

### B. Multiple Purchases of Same Make, Model, and Caliber

139. Deputy Thomas LU has also purchased multiple firearms that are the same make, model and caliber. People engaged in the business of selling or trafficking firearms often will purchase multiple firearms of the same make, model and caliber. Below is a summary of the transactions:

### Norinco, 1911A1

140. LU purchased three Norinco, model 1911A1 handguns from SNELLINGS' FIREARMS. He purchased them on the following dates: 08-05-2010, 08-14-2010 and 10-07-2010. LU private party transferred the handgun he purchased on 10-07-2010 to another person on 07-28-2011.

### IMI, Desert Eagle

141. LU purchased two IMI/Magnum Research, Desert Eagle, .50 caliber handguns. He purchased one from SNELLINGS' FIREARMS on 12-02-2010 (gold in color) and later private party transferred it to another person on 08-17-2011. LU purchased a second IMI, Desert Eagle, .50 caliber handgun on 09-03-2011 from Personal Defense Weapons.

ER-256

## IMI, Micro Desert Eagle

142. LU purchased three Micro Desert Eagles, .380 caliber handguns from SNELLINGS FIREARMS. LU purchased one on 07-09-2009 and later private party transferred it to another person on 07-29-2011. LU purchased the second one on 08-12-2010 and later private party transferred it to another person on 09-03-2011. LU purchased the third one on 09-02-2010 and later private party transferred it to another person on 03-21-2011.

## Kel Tec, P3AT

143. LU purchased two Kel Tec, P3AT handguns, one from SNELLINGS' FIREARMS on 08-12-2010 and one from River City Gun Exchange on 11-04-2008. The firearm he purchased on 11-04-2008 was later private party transferred to another person on 07-31-2010.

## Kel Tec, PF9

144. LU purchased two Kel Tec, PF9 handguns from SNELLINGS' FIREARMS. He purchased one on 08-12-2010 and later private party transferred it to another person on 03-21-2011. He purchased the second one on 09-23-2010 which he sold and private party transferred to UC #1 on 09-07-2011.

## Intratec, Tec-DC9

145. LU purchased six Intratec, TEC-DC9 handguns from SNELLINGS' FIREARMS. LU has private party transferred four of the six handguns after he purchased them.

146. LU purchased one of the handguns on 05-20-2010 and he later private party transferred it to another person on 04-23-2011.

147. LU purchased the second handgun on 06-07-2010 and he later sold it to UC #1 on 09-07-2011.

148. LU purchased the third handgun on 07-22-2010 and the fourth handgun 09-02-2010.

149. LU purchased the fifth and sixth handguns on 10-18-2010. LU sold one of them to UC #1 on 08-11-2011. He private party transferred the other handgun to another person on 04-23-2011.

## LU residence, ███████████, Elk Grove, California

150. On August 26, 2011, I queried the registered owner's information of a Lexus sedan, license plate ████████ (vehicle present on August 16 and September 7 meet with UC

#1). The vehicle is registered to LU at an address of ███████████, Elk Grove, California.

151. On September 7, 2011, LU listed the address of ███████████, Elk Grove, California on his private party transfer paperwork on Elk Grove, California.

152. On September 27, 2011, a query of Accurint indicated the most current address for LU is ███████████, Elk Grove, California.

153. On September 30, 2011, TFO Halstead and I observed the white Lexus sedan which is registered to LU parked outside of ███████████, Elk Grove.

154. On October 31, 2011, Sacramento County Sheriff's Department (SSD) Detective T. Koontz provided the address of ███████████, Elk Grove as the home address of LU per information provided by SSD records.

## Darryl DEGUZMAN

155. Darryl DEGUZMAN has been identified as a Sacramento County Sheriff's Deputy. Per the Sacramento County Known Person Files (KPF), DEGUZMAN is identified as a ████ male, approximately ██ pounds, ██ hair and ██ eyes with a date of birth of ████

## DEGUZMAN'S involvement

156. ATF TFO Halstead reviewed a multitude of private sale postings located in the "private firearms sales" on the CalGuns website listed by other screen names. ATF TFO Halstead discovered that a CalGuns user listed as "dldeguz" had posted off roster firearms that were consistent with the same type of firearms posted by "SacDep".

157. On July 23, 2009, "dldeguz" posted a photo of brand new Micro Desert Eagle, .380 caliber pistol for sale on the CalGuns website. TFO Halstead was able to identify the serial numbers located on the firearm in the picture as ME03936. TFO Halstead queried the serial number ME03936 in AFS and discovered a DROS showing that Darryl DEGUZMAN, with date of birth 09-09-1980, purchased the Micro Desert Eagle pistol on 07-02-2009. On July 29, 2009, the ad for sale was updated by "dldeguz" with the following posting: *"Sold!!!"* DROS records show DEGUZMAN private party transferred the firearm to a German Vasquez on July 29th, 2009.

158. On April 14, 2011, "dldeguz" posted a FHN, FN, 5.7 caliber pistol for sale. TFO Halstead was able to identify the serial number as 386118807 from the picture posted on

CalGuns. A query conducted on AFS revealed that the above listed firearm was originally purchased by McGOWAN on April 12, 2010 and private party transferred by McGOWAN on June 29, 2011.

159. The firearm posted for sale on CalGuns with the screen name of "dldeguz" combined with UC #1's interactions with McGOWAN on three occasions utilizing the screen name "dldeguz" suggests that McGOWAN is posting his firearms for sale under DEGUZMAN's screen name on the CalGuns website.

160. Sacramento County Sheriff's Detective T. Koontz checked SSD records which verified that DEGUZMAN, LU, and McGOWAN work on the same floor and same shift at the Rio Consumnes Correctional Center (RCCC).

### DEGUZMAN Residence, ████████████, Elk Grove, California

161. On September 27, 2011, a query of Accurint listed ████████████ Elk Grove, California as the residence of DEGUZMAN.

162. On September 30, 2011, TFO Halstead and I observed a gold in color 2003 Toyota truck, license plate ██████ parked outside of ████████████, Elk Grove, California. A query of the DMV database states that the Toyota truck is registered to DEGUZMAN.

163. On October 31, 2011, Sacramento County Sheriff's Department (SSD) Detective T. Koontz provided the address of ████████████, Elk Grove as the home address of DEGUZMAN per information provided by SSD records.

### Robert SNELLINGS

164. Per the Sacramento County Known Person Files (KPF), SNELLINGS is identified as a white male, 5'10, approximately 180 pounds, brown hair and hazel eyes, with a date of birth of ████

165. SNELLINGS presently possesses an FFL (FFL # 9-68-067-01-1D-17587) for SNELLINGS' FIREARMS located at 2675 Land Avenue in Sacramento, California. LG FIREARMS (FFL) is located in the same business space as SNELLINGS' FIREARMS. Christopher LENERT and Brent Gentilcore are listed as the Federal Firearms licensees on LG Firearms FFL.

166. FFL'S are required by ATF regulations to maintain Records of Receipt and Disposition Book(s) (commonly referred to as A&D book). This book is a ledger recording the

**ER-259**

specifics of the firearm, the date the FFL acquired the firearm and the name and address of whom they acquired the firearm from. The disposition is the date the FFL transferred the firearm and the name and address of who they transferred it to.

## Robert SNELLINGS/SNELLINGS' FIREARMS

167. During the course of this investigation TFO Halstead was contacted by supervising Special Agent Blake Graham. Blake Graham is a sworn California peace officer employed by the California Department of Justice (DOJ). Agent Graham is assigned to the Bureau of Firearms where his duties include, but are not limited to, conducting investigations on violations of California's firearms statutes and criminal investigations involving businesses with a federal firearms license (FFL). Agent Graham is involved in the process of approving what handguns may be sold in the State of California and amending the roster of approved handguns certified for sale in California. Agent Graham has access to Dealer Records of Sales (DROS) for firearms transactions that occur within the State of California.

168. Agent Graham informed TFO Halstead that he discovered some suspicious transactions conducted through the business SNELLINGS' FIREARMS, located at 2675 Land Ave, Sacramento, California. The suspicious transactions involved firearms not on the roster of approved handguns, being purchased by California peace officers. The transactions identified by Agent Graham were suspicious because after the handguns were purchased by the peace officers they were private party transferred in a short period of time to Robert SNELLINGS as a private person, not to the business SNELLINGS' FIREARMS (FFL). Agent Graham was able to determine each of the purchasers were peace officers because of an exemption code, entered on the DROS when the sale is to a peace officer. A DROS is started on the date of purchase and/or transfer, even though the person may not pick up the firearm for ten days because of California's ten day waiting period for a background check.

169. California law enforcement officers are exempt from the waiting period if they have a letter signed by the head of the agency or commanding officer, stating they are full time paid peace officers authorized to carry a firearm in the performance of their duties and authorizing the purchase.

170. Since Robert SNELLINGS is not a peace officer, he is limited to the same restrictions as all California residents that wish to purchase a handgun from an FFL. A handgun can only be imported into the state and sold by a gun dealer (FFL) if the handgun is on the roster of approved and certified for sale list of firearms. If Robert SNELLINGS, as a private person, wanted to acquire a new handgun that is not on the roster of approved

ER-260

handguns, he could do so if he had a peace officer illegally straw purchase it for him. If Robert SNELLINGS could get a peace officer to buy the off roster handgun, the peace officer would then have to private party transfer it to Robert SNELLINGS as a private person. In essence, SNELLINGS would have to have the handgun laundered through the peace officer(s) and then private party transferred through an FFL to him. Since Robert SNELLINGS also has an FFL, he is able to more discreetly complete the straw purchase through his business and then complete the private party transfer of the firearm back to himself, again using his own business (FFL) to complete the transfer.

171. Below is a list of the suspicious transactions conducted by peace officers, through SNELLINGS' FIREARMS (FFL) where the guns were then transferred back to Robert SNELLINGS, the private person. The information was obtained by reviewing the records provided by Agent Graham. The records are copies of the Dealer's Record of Sales (DROS) and records of the entries in the State of California's Automated Firearm System (AFS).

172. **On 08-12-2010,** Sacramento Police Officer Christopher LENERT, DOB ▇▇▇▇▇ started the DROS process for a semiautomatic, Carl Walther, model PK380, ".38 caliber" handgun, with serial number **PK038993.** The FFL that conducted the DROS was listed as Robert SNELLINGS. I believe the entry of the caliber on the DROS form, dated 08-12-2010, as a "38", is not correct and may have been a typo or may have been done intentionally by the FFL in an attempt to disguise the transaction or make the transaction less suspicious. I reviewed Carl Walther's website and located the product details for the PK380 model. They only offer it for sale in .380 caliber, thus the reason for the model being called "PK380". This handgun is not on the roster of approved handguns for sale in California and can only be purchased from an FFL by a peace officer.

173. **On 09-13-2010,** approximately 32 days later, Christopher LENERT, with date of birth ▇▇▇▇▇, private party transferred a semiautomatic, Carl Walther, model PK380, .380 caliber handgun, with serial number **PK038993,** to Robert SNELLINGS as a private person. The firearm was transferred to Robert SNELLINGS, using Robert SNELLINGS' business (FFL) to conduct the transfer.

174. On 09-16-2011, TFO Halstead spoke with Sacramento Police Department Lieutenant James Beezley to see if Officer LENERT was ever given a letter to waive the ten day waiting period for the purchase of this firearm. Lieutenant Beezley is assigned to the Personnel Division, which is the division of the police department that issues letters to waive the ten day waiting period. Lieutenant Beezley stated that if a letter is issued, a copy of it is kept in the Personnel Division. Lieutenant Beezley stated he checked the records and Officer LENERT was never issued a letter to waive the ten day waiting

**ER-261**

period for the purchase of the Carl Walther handgun listed above. This means the earliest Officer LENERT could have obtained the firearm from the gun store (SNELLINGS' FIREARMS) was on **08-22-2010**, which means he transferred the firearm to Robert SNELLINGS as a private person, after owning it for approximately 22 days.

175. On **07-09-2009**, Roseville Police Officer Christopher Tait KJELLBERG, with date of birth ⬛⬛⬛⬛⬛, started the DROS process for a semiautomatic, .40 caliber Smith & Wesson, model PPS handgun, with serial number **AD3719**. The FFL that conducted the DROS was listed as Robert SNELLINGS. This firearm is not on the approved list of handguns for sale to California residents and can only be purchased from an FFL by a peace officer.

176. On **08-04-2009**, approximately 26 days later, Christopher Tait KJELLBERG, with the date of birth ⬛⬛⬛⬛⬛, private party transferred a "10 caliber" Smith & Wesson, model PPS handgun, with serial number **AD3719**, to Robert SNELLINGS as a private person, not Robert SNELLINGS the FFL. The firearm was transferred to Robert SNELLINGS, as a private person, using Robert SNELLINGS, the FFL, to complete the transfer. It is my opinion that this is the same firearm Christopher KJELLBERG obtained from SNELLINGS, the FFL, the month prior. I believe the entry of the caliber on 08-04-2009 as a "10" is not correct and may have been a typo or may have been done intentionally by the FFL in an attempt to disguise the transaction or make the transaction less suspicious. I reviewed Smith & Wesson's website and located the product details for the PPS. They only offer it for sale in 9mm and .40 caliber.

177. On 09-14-2011, Sacramento County Sheriff's Detective Tom Koontz informed TFO Halstead that Robert SNELLINGS has been issued a Carry Concealed Weapons permit (CCW) by the Sacramento County Sheriff. Detective Koontz checked Robert SNELLINGS'S CCW records to determine which firearms he is authorized to carry. One of the firearms listed on Robert SNELLINGS'S CCW is a .40 caliber, model PPS, with serial number **AD3719**.

178. Detective Koontz stated Robert SNELLINGS submitted his application to the Sacramento County Sheriff's Department for a CCW on **07-16-2009**. At the time Robert SNELLINGS submitted his application he listed a .40 caliber, model PPS, with serial number **AD3719**, as a firearm he wanted listed on his CCW permit. This is a significant fact because according to the DROS records, Officer KJELLBERG hadn't even started the transfer process for the firearm to Robert SNELLINGS. The DROS records show Officer KJELLBERG didn't transfer the firearm to Robert SNELLINGS until **08-04-2009**. It is my opinion that Christopher KJELLBERG acted as a straw purchaser when he bought the .40 caliber, model PPS firearm and that he purchased it with the intent to

ER-262

private party transfer it to Robert SNELLINGS as a private person. If Robert SNELLINGS desired this new firearm for his CCW he could only obtain it if a peace officer acted as straw purchaser and thus laundered the firearm into the state of California.

179. On **04-30-2009**, a California Highway Patrol Officer started the DROS process for a semiautomatic, made in Germany, model 5PK, .22 caliber handgun, with serial number **A294392**. The FFL that conducted the DROS was listed as Robert SNELLINGS. This firearm is not on the roster of approved handguns for sale in California.

180. On **06-01-2009**, approximately 32 days later, the same California Highway Patrol Officer, private party transferred a semiautomatic, made in Germany, model 5PK, .22 caliber handgun, with serial number **A294392**, to Robert SNELLINGS as a private person. The firearm was transferred to Robert SNELLINGS, using Robert SNELLINGS, the FFL, to complete the transfer.

181. On **07-02-2009**, Sacramento County Sheriff's Deputy Ryan McGOWAN, with date of birth █████████, started the DROS process for a semiautomatic, Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37182507**. The FFL that conducted the DROS was listed as Robert SNELLINGS. This handgun is not on the roster of approved handguns for sale in California.

182. On **07-13-2009**, approximately 11 days later, Ryan McGOWAN, with date of birth ███ ████, private party transferred the semiautomatic, Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37182507**, to Robert SNELLINGS as a private person. The firearm was transferred to Robert SNELLINGS, using Robert SNELLINGS, the FFL, to complete the transfer.

183. Approximately 14 days later on **07-27-2009**, Robert SNELLINGS private party transfers the semiautomatic, Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37182507**, to a William Perparos, with date of birth █████████. The firearm was transferred to William Perparos, using Robert SNELLINGS, the FFL, to complete the transfer.

184. Sacramento County Sheriff's Detective Tom Koontz informed TFO Halstead that William Perparos had been issued a CCW. When William Perparos applied for the CCW on 04-20-2011, he listed the Sturm & Ruger LCP with serial number **37182507**, as one of the firearms he desired to carry.

**ER-263**

185. This Sturm & Ruger LCP was transferred four times in less than 30 days. It is my opinion and the opinion of other firearms experts I have spoken to about this, that this purchase and subsequent transfers to different people within such a short period of time shows a conspiracy to straw purchase between Deputy Ryan McGOWAN and Robert SNELLINGS.

## Christopher KJELLBERG

186. Per the California Department of Motor Vehicles, KJELLBERG is identified as a  male, ▮ approximately ▮ pounds, ▮ hair and ▮ eyes, with a date of birth of ▮

## Suspicious Transactions Completed at SNELLINGS' FIREARMS (FFL) by Christopher KJELLBERG

187. In reviewing the DROS transactions completed through SNELLINGS FIREARMS (FFL), TFO Halstead and I identified several suspicious transaction involving peace officers purchasing off roster (non approved) handguns from SNELLINGS, the FFL, and transferring them within a short period of time to a third party, using SNELLINGS, the FFL, to complete the private party transfer. The following are the suspicious transactions:

188. On **09-21-2009**, Roseville Police Officer Christopher KJELLBERG started the DROS process for a Colt, model New Agent, .454 caliber handgun, with serial number **GTO4886**. This transaction was completed by SNELLINGS FIREARMS (FFL). This firearm is not on the approved list of handguns for sale in California.

189. On **10-03-2009**, approximately 12 days later, Christopher KJELLBERG private party transferred the Colt, model New Agent, with serial number **GTO4886**, to a Craig Glasere. The private party transfer was completed through SNELLINGS' FIREARMS (FFL).

190. On **03-29-2010**, Roseville Police Officer Christopher KJELLBERG started the DROS process for a Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37351117**. This firearm is not on the approved list of handguns for sale in California. This transaction was completed at the D&L Engineering, located in Garden Valley, CA.

191. Approximately 65 days later, on **06-04-2010**, Christopher KJELLBERG private party transferred the Sturm & Ruger, model LCP .380 caliber handgun, with serial number **37351117**, to a Joseph O'Farrell. Joseph O'Farrell is a retired police officer from the Roseville Police Department. However, it is unknown when he retired from the police department.

**ER-264**

192. On **04-29-2010**, Roseville Police Officer Christopher KJELLBERG started the DROS process for Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37300127**. This transaction was completed by SNELLINGS Firearms (FFL). This firearm is not on the approved list of handguns for sale in California and can only be purchased from a FFL by a peace officer.

193. On **05-27-2010**, approximately 28 days later, Christopher KJELLBERG private party transferred the Sturm & Ruger, model LCP, .380 caliber handgun with serial number **37300127**, to a Ulysses Early. The private party transfer was completed through SNELLINGS' FIREARMS (FFL).

194. On **07-19-2011**, Roseville Police Officer Christopher KJELLBERG started the DROS process for a Glock, model 21Gen4, .45 caliber handgun, with serial number **RPH618**. The Glock 21, model Gen4 is the newest version of the Glock 21 and is not on the approved list of handguns for sale in California. This transaction was completed at Sacramento Black Rifle, a FFL, located in Rocklin, California.

195. Approximately 28 days later, on **08-16-2011**, Christopher KJELLBERG private party transferred the Glock, model 21 Gen4, .45 caliber handgun, with serial number **RPH618**, to a Ulysses Early. It should be noted that Christopher KJELLBERG and Ryan McGOWAN have private party transferred firearm(s) to Ulysses Early on other dates.

196. AFS records indicate that Ulysses Early owned a Glock model 21, .45 caliber handgun, but that he private party transferred it to another person on **07-16-2011**, just 3 days before Christopher KJELLBERG started the DROS on the newest model of the Glock 21, which he subsequently transferred to Ulysses Early. The history of these two firearms transactions leads me to believe that Ulysses Early wanted to update to the newest model of the Glock 21 (Gen 4), so he sold his older model and then had Christopher KJELLBERG straw purchase him the newer model, which was only available to peace officers.

## Christopher LENERT

197. Per the Sacramento County Known Person Files (KPF), LENERT is identified as a male, approximately ▮ pounds, ▮ hair and ▮ eyes, with a date of birth of ▮

198. LENERT presently possesses an FFL (FFL # 9-68-067-01-4D-02777). LG FIREARMS (FFL) is located in the same business space as SNELLINGS' FIREARMS at 2675 Land

**ER-265**

Avenue in Sacramento, California.   Christopher LENERT and Brent Gentilcore are listed as the Federal Firearms licensees on LG Firearms FFL.

### Suspicious Transactions completed at SNELLINGS FIREARMS (FFL) by Christopher LENERT

199. On **06-17-2010,** Sacramento Police Officer Christopher LENERT started the DROS process for two Sturm & Ruger, model LCP, .380 caliber handguns with serial number **37437161 and 37437405.** This transaction was completed by SNELLINGS' FIREARMS (FFL). These firearms are not on the approved list of handguns for sale in California and can only be purchased from a FFL by a peace officer.

200. Approximately 19 days later on **07-05-2010,** Christopher LENERT private party transferred the Sturm & Ruger, model LCP, .380 caliber handgun, with serial number **37437161,** to a Brent Gentilcore. The private party transfer was completed through SNELLINGS' FIREARMS (FFL).

201. On 09-16-2011, TFO Halstead spoke with Sacramento Police Department Lieutenant James Beezley to see if Officer LENERT was ever given a letter to waive the ten day waiting period for the purchase of this firearm. Lieutenant Beezley is assigned to the Personnel division, which is the division of the police department that issues letters to waive the ten day waiting period. Lieutenant Beezley stated that if a letter is issued, a copy of it is kept in the Personnel Division. Lieutenant Beezley stated he checked the records and Officer LENERT was never issued a letter to waive the ten day waiting period for the purchase of the Sturm & Ruger handgun listed above. This means the earliest Officer LENERT could have obtained the firearm from the gun store (SNELLINGS' FIREARMS) was on **06-27-2010,** which means he transferred the firearm to Brent Gentilcore after owning it for approximately 9 days.

202. The purchase of two firearms that are the exact make, model and caliber on the same day and the subsequent transfer of one of the firearms 19 days later to Gentilcore is consistent with this being a straw purchase.

203. As mentioned earlier in this affidavit, LENERT was involved in the following transaction, **on 08-12-2010,** LENERT started the DROS process for a semiautomatic, Carl Walther, model PK380, ".38 caliber" handgun, with serial number **PK038993.** The FFL that conducted the DROS was listed as Robert SNELLINGS. I believe the entry of the caliber on 08-12-2010 as a "38" is not correct and may have been a typo or may have been done intentionally by the FFL in an attempt to disguise the transaction or make the transaction less suspicious. I reviewed Carl Walther's website and located the product details for the PK380 model. It is only offered for sale in a .380 caliber, thus the reason

**ER-266**

1  Gary W. Gorski (SBN 166526)
   LAW OFFICES OF GARY W. GORSKI
2  3017 Douglas Blvd. Suite 150
   Roseville, CA  95661
3  (775) 720-1000
   CivilRightsAttorney@BlackWolfLaw.com
4
   Daniel M. Karalash (SBN 176422)
5  STRATEGIC LAW COMMAND
   3017 Douglas Blvd. Suite 150
6  Roseville, CA  95661
   (916) 787-1234
7  dan@stratlaw.org
   www.stratlaw.com
8
   Attorneys for Plaintiffs
9  JAMES EDWARD CUPP and
   LAWRENCE "WOLF" HAVEN
10

11              THE UNITED STATES DISTRICT COURT

12          IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14  JAMES EDWARD CUPP, an individual;    )   **Case No.**  16-CV-00523-TLN-KJN
    LAWRENCE "WOLF" HAVEN, an individual )
15                                       )
                  Plaintiff,             )
16                                       )   **NOTICE OF APPEAL TO THE UNITED**
          vs.                            )   **STATES COURT OF APPEAL FOR THE**
17                                       )   **NINTH CIRCUIT**
    KAMALA D. HARRIS; *et al.*           )
18                                       )
                  Defendants.            )
19  _____ )

20       **NOTICE IS HEREBY GIVEN** that Plaintiffs JAMES EDWARD CUPP and LAWRENCE

21  "WOLF" HAVEN appeal to the United States Court of Appeals for the Ninth Circuit from the <u>final</u>

22  <u>judgment</u> of the District Court, entered in this case on **October 1, 2021**, and in accordance with the

23  District Court's order filed on **September 28, 2021**, and all previously entered interlocutory orders

24  and decisions of the court including, but not limited to, ECF No. 79, Order signed by District Judge

25  Troy L. Nunley on **September 23, 2020** Granting Motion to Dismiss (Entered: 09/24/2020); ECF

26  No. 63 Order Signed by District Judge Troy L. Nunley on **October 9, 2018** Denying Plaintiffs'

27  Motions for Preliminary Injunctions (Entered: 10/09/2018); and, ECF No. 61, Order Signed by

28

                              **- 1 -**
      _____
                          **Notice of Appeal**                        **ER-267**

1  District Judge Troy L. Nunley on **September 20, 2018** Granting Motion to Dismiss (Entered:

2  09/21/2018).

3      This Notice of Appeal is <u>limited to</u> Defendants Kamala Harris and Xavier Becerra, in their

4  capacities as former Attorneys General of the State of California, and Rob Bonta, in his official

5  capacity as Attorney General of the State of California (collectively, the "Attorney General").  See

6  ECF No. 91, page 1, footnote 1 wherein the District Court states:

7      Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor
       is automatically substituted as a party" when a public officer "ceases to hold office
8      while the action is pending." Fed. R. Civ. P. 25(d). The Clerk of the Court is directed
       to update the docket as necessary. Additionally, for ease of reading and consistency
9      with the Court's prior orders, all three Defendants will be collectively referred to in
       the singular as the "Attorney General" herein.

10     Other than the "Attorney General", there are no other parties related or named as to this

11 appeal.

12     Dated: October 26, 2021          THE LAW OFFICES OF GARY W. GORSKI
13                                       Respectfully Submitted,

14                                        _/s/ *Gary W. Gorski*_____
                                          Gary W. Gorski
15                                        Attorney for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form06instructions.pdf

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

JAMES EDWARD CUPP, an individual;
LAWRENCE "WOLF" HAVEN, an individual

Name(s) of counsel (if any):

Gary W. Gorski (SBN 166526)
Daniel M. Karalash (SBN 176422)

Address: 3017 Douglas Blvd. Suite 150, Roseville, CA 95661

Telephone number(s): (775) 720-1000; (916) 787-1234

Email(s): CivilRightsAttorney@BlackWolfLaw.com dan@stratlaw.org

Is counsel registered for Electronic Filing in the 9th Circuit?   ⦿ Yes   ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Kamala Harris and Xavier Becerra, in their capacities as former Attorneys General of the State of California, and Rob Bonta, in his official capacity as Attorney General of the State of California

Name(s) of counsel (if any):

Anthony Paul O'Brien
Attorney General's Office for the State of California
Department of Justice

Address: 1300 I Street

Telephone number(s): Sacramento, CA 94244-2550

Email(s): anthony.obrien@doj.ca.gov

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 6**                    *1*                    *New 12/01/20* ER-269

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?  ○ Yes  ○ No

## **Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**　　　　　　　*2*　　　　　　*New 12/01/20* **ER-270**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2021, I electronically filed the foregoing with the United States District Court, Eastern District of California by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Law Offices of Gary W. Gorski

Date:   October 26, 2021          /s/ *Gary W. Gorski*
                                 Gary W. Gorski
                                 Attorney for Plaintiffs

**- 3 -**

CIVIL,APPEAL,CLOSED

# U.S. District Court
## Eastern District of California - Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:16-cv-00523-TLN-KJN

| | |
|---|---|
| Cupp v. Harris, et al. | Date Filed: 03/11/2016 |
| Assigned to: District Judge Troy L. Nunley | Date Terminated: 10/01/2021 |
| Referred to: Magistrate Judge Kendall J. Newman | Jury Demand: Plaintiff |
| Case in other court: 9th Circuit Court of Appeals, 21-16809 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **James Edward Cupp** | represented by | **Daniel M. Karalash** |
| | | Strategic Law Command |
| | | 3017 Douglas Blvd. |
| | | Suite 150 |
| | | Roseville, CA 95661 |
| | | 916-787-1234 |
| | | Fax: 916-520-3920 |
| | | Email: dan@stratlaw.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Gary William Gorski** |
| | | Law Offices of Gary W. Gorski |
| | | 3017 Douglas Blvd. |
| | | Suite 150 |
| | | Roseville, CA 95661 |
| | | 916-758-1100 |
| | | Email: CivilRightsAttorney@outlook.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Lawrence Haven** | represented by | **Gary William Gorski** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

**ER-272**

V.

**Defendant**

**Kamala Harris**                    represented by **Anthony Paul O'Brien**
Attorney General's Office for the State of
California
Department of Justice
1300 I Street
PO Box 944255
Sacramento, CA 94244-2550
916-210-6002
Fax: 916-324-5205
Email: anthony.obrien@doj.ca.gov
*LEAD ATTORNEY*

**Kevin A. Calia**
California Department Of Justice
1300 I Street
Sacramento, CA 95814
916-210-6047
Fax: 916-324-8835
Email: Kevin.Calia@doj.ca.gov
*TERMINATED: 03/23/2018*

**Defendant**

**City of Citrus Heights**           represented by **John A. Lavra**
*TERMINATED: 09/21/2018*           Longyear Odea & Lavra, LLP
3620 American River Drive
Suite 230
Sacramento, CA 95864
916-974-8500 x103
Fax: 916-974-8510
Email: lavra@longyearlaw.com
*LEAD ATTORNEY*

**Amanda Lynn McDermott**
Longyear & Lavra, LLP
3620 American River Drive
Suite 230
Sacramento, CA 95864-5923
916-974-8500
Fax: 916-974-8510
Email:

**ER-273**

mandy.mcdermott@farmersinsurance.com

**Mark P. O'Dea**
Gavrilov & Brooks
2315 Capitol Ave.
Sacramento, CA 95816
916-504-0529
Fax: 916-727-6877
Email: mark@odealitigation.com

**Defendant**

**Christopher W. Boyd**          represented by   **John A. Lavra**
*TERMINATED: 09/21/2018*                          (See above for address)
                                                  *LEAD ATTORNEY*

                                                  **Amanda Lynn McDermott**
                                                  (See above for address)

                                                  **Mark P. O'Dea**
                                                  (See above for address)

**Defendant**

**Christian Baerresen**          represented by   **John A. Lavra**
*TERMINATED: 10/01/2021*                          (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Amanda Lynn McDermott**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Mark P. O'Dea**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas Lamb**                  represented by   **John A. Lavra**
*TERMINATED: 10/20/2020*                          (See above for address)
                                                  *LEAD ATTORNEY*

                                                  **Amanda Lynn McDermott**
                                                  (See above for address)

**Mark P. O'Dea**
(See above for address)

**Defendant**

**Unknown Citrus Heights
Police Officer**
*Badge Number 323*
*TERMINATED: 10/20/2020*

**Defendant**

**Unknown Citrus Heights
Police Officer**
*who prepared Report
Number Ch14-02589 on
3/26/2014*
*TERMINATED: 10/20/2020*

**Defendant**

**Unknown Citrus Heights
Police Officer No. 1**
*TERMINATED: 10/20/2020*

**Defendant**

**Unknown Citrus Heights
Police Officer No. 2**
*TERMINATED: 10/20/2020*

**Defendant**

**County of Sacramento**                    represented by **Wendy M. Motooka**
*TERMINATED: 09/21/2018*                    Rivera Hewitt Paul LLP
                                            11341 Gold Express Drive
                                            Suite 160
                                            Gold River, CA 95670
                                            916-922-1200
                                            Fax: 916-922-1303
                                            Email: WMotooka@rhplawyers.com
                                            *LEAD ATTORNEY*

**Defendant**

**Scott Jones**                             represented by **Wendy M. Motooka**
*TERMINATED: 09/21/2018*                    (See above for address)
                                            *LEAD ATTORNEY*

**ER-275**

**Defendant**

| | | |
|---|---|---|
| **Jesse Brucker**<br>*TERMINATED: 09/21/2018* | represented by | **Wendy M. Motooka**<br>(See above for address)<br>*LEAD ATTORNEY* |

**Defendant**

| | | |
|---|---|---|
| **County of Placer**<br>*TERMINATED: 09/21/2018* | represented by | **Julia Reeves**<br>Placer County Counsel<br>175 Fulweiler Ave<br>Auburn, CA 95603<br>530-889-4044<br>Email: jreeves@placer.ca.gov<br>*LEAD ATTORNEY*<br><br>**David K. Huskey**<br>Placer County Counsel's Office<br>175 Fulweiler Ave.<br>Auburn, CA 95603<br>530-889-4044<br>Fax: 530-889-4069<br>Email: countycounsel@placer.ca.gov<br>*TERMINATED: 08/02/2017* |

**Defendant**

| | | |
|---|---|---|
| **Edward N. Bonner**<br>*TERMINATED: 09/21/2018* | represented by | **Julia Reeves**<br>(See above for address)<br>*LEAD ATTORNEY*<br><br>**David K. Huskey**<br>(See above for address)<br>*TERMINATED: 08/02/2017* |

**Defendant**

| | | |
|---|---|---|
| **Mason**<br>*Placer County Deputy # 181*<br>*TERMINATED: 09/21/2018* | represented by | **Julia Reeves**<br>(See above for address)<br>*LEAD ATTORNEY*<br><br>**David K. Huskey**<br>(See above for address)<br>*TERMINATED: 08/02/2017* |

**Defendant**

**Hintze**
represented by **Julia Reeves**
*Placer County Deputy # 101*
(See above for address)
*TERMINATED: 09/21/2018*
*LEAD ATTORNEY*

**David K. Huskey**
(See above for address)
*TERMINATED: 08/02/2017*

**Defendant**

**Xavier Becerra**
represented by **Anthony Paul O'Brien**
*TERMINATED: 09/28/2021*
(See above for address)
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/11/2016 | 1 | COMPLAINT against all defendants by plaintiff James Edward Cupp; DEMAND for Jury Trial. (Filing fee $ 400, receipt number 0972-6363253) (Gorski, Gary) (Entered: 03/11/2016) |
| 03/11/2016 | 2 | CIVIL COVER SHEET by James Edward Cupp (Gorski, Gary) (Entered: 03/11/2016) |
| 03/11/2016 | 3 | SUMMONS ISSUED as to *Christian Baerresen; Christopher W. Boyd; City of Citrus Heights; Kamala D. Harris; Thomas Lamb; Unknown Citrus Heights Police Officer, Badge Number 323; Unknown Citrus Heights Police Officer, who prepared Report Number CH 14-02589 on 3/26/2014; Unknown Citrus Heights Police Officer No. 1; Unknown Citrus Heights Police Officer No. 2* with answer to complaint due within *21* days. Attorney *Gary W. Gorski* *Law Offices of Gary W. Gorski* *3017 Douglas Boulevard, Suite 150* *Roseville, CA 95661* (Marciel, M) (Entered: 03/11/2016) |
| 03/11/2016 | 4 | CIVIL NEW CASE DOCUMENTS ISSUED (Attachments: # 1 Consent Form, # 2 VDRP) (Marciel, M) (Entered: 03/11/2016) |
| 06/03/2016 | 5 | FIRST AMENDED COMPLAINT against All Defendants by James Edward Cupp, Lawrence Haven. Attorney Gorski, Gary William added. (Gorski, Gary) (Entered: 06/03/2016) |
| 06/06/2016 | 6 | SUMMONS ISSUED as to *Edward N. Bonner, Jesse Brucker, County of Placer, County of Sacramento, Hintze, Scott Jones, Mason* with answer to complaint due within *21* days. Attorney *Gary W. Gorski* *Law Offices of Gary W. Gorski* *3017 Douglas Blvd., Suite 150* *Roseville CA 95661*. (Zignago, K.) (Entered: 06/06/2016) |

| 06/27/2016 | 7 | STIPULATION *To Extend Defendants' Time to Respond to First Amended Complaint* by Jesse Brucker, County of Sacramento, Scott Jones. Attorney Motooka, Wendy M. added. (Motooka, Wendy) (Entered: 06/27/2016) |
|---|---|---|
| 07/25/2016 | 8 | STIPULATION and PROPOSED ORDER for Extension of Time to Respond by James Edward Cupp, Lawrence Haven. (Gorski, Gary) (Entered: 07/25/2016) |
| 07/29/2016 | 9 | STIPULATION and ORDER signed by District Judge Troy L. Nunley on 7/28/16 ORDERING the current date of 7/25/16, for filing a response to the First Amended Complaint is hereby vacated; Plaintiffs shall email a proposed Second Amended Complaint to defendants on or before 8/1/16; If consensus is reached, the parties will stipulate for leave to file a Second Amended Complaint, with the Second Amended Complaint to be filed no later than 8/15/16; Defendants' responses (to either the FAC or SAC) shall be due on 9/15/16; the current date for filing the Joint Status Report is hereby vacated; and the parties shall file a Joint Status Report on or before 10/1/16. (Becknal, R) (Entered: 07/29/2016) |
| 08/09/2016 | 10 | STIPULATION and PROPOSED ORDER for Allowng Plaintiffs to File Proposed Second Amended Complaint by Jesse Brucker, County of Sacramento, Scott Jones. (Motooka, Wendy) (Entered: 08/09/2016) |
| 08/12/2016 | 11 | ORDER signed by District Judge Troy L. Nunley on 8/11/2016 ORDERING that Plaintiffs shall have leave to file the proposed Second Amended Complaint, due by 8/15/2016; and Defendants shall have until 9/15/2016 to respond to the Second Amended Complaint.(Reader, L) (Entered: 08/12/2016) |
| 08/15/2016 | 12 | SECOND AMENDED COMPLAINT, with Jury Demand, against all defendants by James Edward Cupp, Lawrence Haven. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Gorski, Gary) Modified on 8/16/2016 (Michel, G.). (Entered: 08/15/2016) |
| 09/12/2016 | 13 | STIPULATION and PROPOSED ORDER for Extending Time to Respond to Second Amended Complaint by Kamala D. Harris. Attorney Calia, Kevin A. added. (Calia, Kevin) (Entered: 09/12/2016) |
| 09/16/2016 | 14 | STIPULATION and ORDER signed by District Judge Troy L. Nunley on 9/15/16 ORDERING Defendants response to Second Amended Complaint is due by 9/30/2016.(Washington, S) (Entered: 09/16/2016) |
| 09/29/2016 | 15 | MOTION to DISMISS by Jesse Brucker, County of Sacramento, Scott Jones. Motion Hearing set for 11/3/2016 at 02:00 PM in Courtroom 2 |

| | | |
|---|---|---|
| | | (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities, # 2 Declaration)(Motooka, Wendy) (Entered: 09/29/2016) |
| 09/30/2016 | 16 | MOTION to DISMISS by Christian Baerresen, Christopher W. Boyd, City of Citrus Heights, Thomas Lamb. Attorney McDermott, Amanda Lynn added. Motion Hearing set for 11/17/2016 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Memorandum)(McDermott, Amanda) (Entered: 09/30/2016) |
| 09/30/2016 | 17 | MOTION to DISMISS by Edward N. Bonner, County of Placer, Hintze, Mason. Motion Hearing set for 11/17/2016 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities)(Huskey, David) (Entered: 09/30/2016) |
| 09/30/2016 | 18 | MOTION to DISMISS by Kamala D. Harris. Motion Hearing set for 11/17/2016 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Calia, Kevin) (Entered: 09/30/2016) |
| 09/30/2016 | 19 | MEMORANDUM by Kamala D. Harris in SUPPORT of 18 MOTION to DISMISS. (Calia, Kevin) (Entered: 09/30/2016) |
| 09/30/2016 | 20 | DECLARATION of Kevin A. Calia in SUPPORT OF 18 MOTION to DISMISS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Calia, Kevin) Modified on 10/12/2016 (Zignago, K.). (Entered: 09/30/2016) |
| 10/03/2016 | 21 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 10/3/2016: On the Court's own motion, the hearing on Defendants Jesse Brucker, County of Sacramento, and Scott Jones' Motion to Dismiss (ECF No. 15 ) is hereby RESET for 11/17/2016 at 2:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. All further briefing shall be filed in accordance with Local Rule 230 and the new hearing date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 10/03/2016) |
| 11/03/2016 | 22 | OPPOSITION by James Edward Cupp, Lawrence Haven to 18 Motion to Dismiss. (Gorski, Gary) (Entered: 11/03/2016) |
| 11/03/2016 | 23 | OPPOSITION by James Edward Cupp, Lawrence Haven to 16 Motion to Dismiss. (Gorski, Gary) (Entered: 11/03/2016) |
| 11/03/2016 | 24 | OPPOSITION by James Edward Cupp, Lawrence Haven to 15 Motion to Dismiss. (Gorski, Gary) (Entered: 11/03/2016) |
| 11/03/2016 | 25 | OPPOSITION by James Edward Cupp, Lawrence Haven to 17 Motion |

to Dismiss. (Gorski, Gary) (Entered: 11/03/2016)

| 11/10/2016 | 26 | REPLY by Edward N. Bonner, County of Placer, Hintze, Mason re 25 Opposition to Motion. (Huskey, David) (Entered: 11/10/2016) |
|---|---|---|
| 11/10/2016 | 27 | REPLY by Christian Baerresen, Christopher W. Boyd, City of Citrus Heights, Thomas Lamb re 16 Motion to Dismiss, 23 Opposition to Motion. (McDermott, Amanda) (Entered: 11/10/2016) |
| 11/10/2016 | 28 | REPLY by Jesse Brucker, County of Sacramento, Scott Jones re 24 Opposition to Motion, 15 Motion to Dismiss. (Motooka, Wendy) (Entered: 11/10/2016) |
| 11/10/2016 | 29 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 11/10/2016: On the Court's own motion, Defendants' Motions to Dismiss (ECF Nos. 15 , 16 , 17 and 18 ) are hereby SUBMITTED without oral argument. Accordingly, the hearing set for 11/17/2016 is VACATED. If the Court determines oral argument is necessary, it will be scheduled at a later date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 11/10/2016) |
| 11/10/2016 | 30 | REPLY by Kamala D. Harris re 22 Opposition to Motion, 20 Declaration, 19 Memorandum in Support of Motion, 18 Motion to Dismiss. (Calia, Kevin) (Entered: 11/10/2016) |
| 01/10/2017 | 31 | STATEMENT of Supplemental Authority in Support of 18 Motion to Dismiss by Defendant Kamala D. Harris. (Calia, Kevin) Modified on 1/11/2017 (Kaminski, H). (Entered: 01/10/2017) |
| 08/02/2017 | 32 | DESIGNATION of COUNSEL FOR SERVICE adding Attorney Julia Reeves for Defendants County of Placer, Edward N. Bonner, Eric Hintz and Michael Mason. Attorney David K. Huskey TERMINATED. (Reeves, Julia) Modified on 8/3/2017 (Kastilahn, A). (Entered: 08/02/2017) |
| 10/17/2017 | 33 | STATEMENT of Supplemental Authority in Support of Attorney General's Motion to Dismiss by Defendant Kamala Harris re 18 Motion to Dismiss. (Calia, Kevin) (Entered: 10/17/2017) |
| 10/23/2017 | 34 | NOTICE of APPEARANCE by Anthony Paul O'Brien on behalf of Kamala Harris. Attorney O'Brien, Anthony Paul added. (Attachments: # 1 Notice)(O'Brien, Anthony) (Entered: 10/23/2017) |
| 03/16/2018 | 35 | MOTION for PRELIMINARY INJUNCTION by James Edward Cupp. Motion Hearing set for 5/3/2018 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Gorski, Gary) Modified on 3/19/2018 (Washington, S). (Entered: 03/16/2018) |

| 03/16/2018 | 36 | MEMORANDUM by James Edward Cupp in SUPPORT of 35 Motion for Preliminary Injunction. (Gorski, Gary) Modified on 3/19/2018 (Washington, S). (Entered: 03/16/2018) |
|---|---|---|
| 03/16/2018 | 37 | DECLARATION of James Cupp in support of 35 Motion for Preliminary Injunction. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Gorski, Gary) Modified on 3/19/2018 (Washington, S). (Entered: 03/16/2018) |
| 03/22/2018 | 38 | NOTICE of WITHDRAWAL of ATTORNEY Kevin A. Calia by Kamala Harris. (O'Brien, Anthony) (Entered: 03/22/2018) |
| 04/02/2018 | 39 | MOTION for PRELIMINARY INJUNCTION Against Defendants Kamala D. Harris (Now Xavier Becerra) and Edward N. Bonner by Lawrence Haven. Motion Hearing set for 5/3/2018 at 10:00 AM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities, # 2 Declaration Haven, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D)(Gorski, Gary) Modified on 4/4/2018 (Zignago, K.). (Entered: 04/02/2018) |
| 04/03/2018 | 40 | MOTION for PRELIMINARY EQUITABLE and INJUNCTIVE RELIEF Against Defendants Kamala D. Harris (Now Xavier Becerra), Sacramento Deputy Sheriff Jesse Brucker, and Scott Jones by Lawrence Haven. Motion Hearing set for 5/3/2018 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities, # 2 Declaration Of Lawrence "Wolf" Haven, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F)(Gorski, Gary) Modified on 4/4/2018 (Zignago, K.). (Entered: 04/03/2018) |
| 04/03/2018 | 41 | PROPOSED ORDER re Granting 35 , 39 and 40 Motions for Preliminary Injunction. (Gorski, Gary) Modified on 4/4/2018 (Zignago, K.). (Entered: 04/03/2018) |
| 04/19/2018 | 42 | OPPOSITION by Kamala Harris to 35 , 39 , 40 Motions for Preliminary Injunction. (Attachments: # 1 [SEALED per 51 Order] Declaration) (O'Brien, Anthony) Modified on 4/19/2018 (Becknal, R). Modified on 5/7/2018 (Zignago, K.). (Entered: 04/19/2018) |
| 04/19/2018 | 43 | OPPOSITION by Jesse Brucker, County of Sacramento, Scott Jones to 40 Motion for Preliminary Equitable and Injunctive Relief. (Attachments: # 1 Declaration)(Motooka, Wendy) (Entered: 04/19/2018) |
| 04/19/2018 | 44 | OPPOSITION by Edward N. Bonner to 39 Motion for Preliminary Injunction. (Attachments: # 1 Declaration of Julia M. Reeves)(Reeves, |

Juliay Modified on 4/20/2018 (Beckhal, R). (Entered: 04/19/2018)

| 04/19/2018 | 45 | OPPOSITION by Christian Baerresen, Christopher W. Boyd, City of Citrus Heights, Thomas Lamb to 35 Motion for Preliminary Injunction. Attorney O'Dea, Mark added. (Attachments: # 1 [SEALED per 52 Order] Declaration)(O'Dea, Mark) Modified on 5/7/2018 (Zignago, K.). (Entered: 04/19/2018) |
|---|---|---|
| 04/26/2018 | 46 | REPLY by James Edward Cupp, Lawrence Haven re 45 Opposition to Motion, 44 Opposition to Motion, 43 Opposition to Motion. (Gorski, Gary) (Entered: 04/26/2018) |
| 04/26/2018 | 47 | MOTION to STRIKE and OBJECTIONS by James Edward Cupp to Turcotte Declaration. (Gorski, Gary) Modified on 4/30/2018 (Benson, A.). (Entered: 04/27/2018) |
| 04/27/2018 | 48 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 4/27/2018: On the Court's own motion, Plaintiff's Motions for Preliminary Injunction (ECF Nos. 35 and 39 ) and Motion for Permanent Injunction (ECF No. 40 ) are hereby SUBMITTED without oral argument. Accordingly, the hearing set for 5/3/2018 is VACATED. If the Court determines oral argument is necessary, it will be scheduled at a later date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 04/27/2018) |
| 04/27/2018 | 49 | NOTICE of Request to Seal Document(s) pursuant to L.R. 141 by Kamala Harris. (O'Brien, Anthony) (Entered: 04/27/2018) |
| 04/30/2018 | 50 | NOTICE of Request to Seal Document(s) pursuant to L.R. 141 by Christian Baerresen, Christopher W. Boyd, City of Citrus Heights, Thomas Lamb. (O'Dea, Mark) (Entered: 04/30/2018) |
| 05/07/2018 | 51 | ORDER signed by District Judge Troy L. Nunley on 5/7/2018 GRANTING 49 Request to Seal Documents. The Declaration of Teresa Peterson in Support of Attorney General Becerra's Opposition to Plaintiffs' Motions for Preliminary Injunction, filed on 4/19/2018 as Document No. 42-1, is placed under SEAL. Counsel shall re-file the Declaration with any references to individual birth dates redacted. (Zignago, K.) (Entered: 05/07/2018) |
| 05/07/2018 | 52 | ORDER signed by District Judge Troy L. Nunley on 5/7/2018 GRANTING 50 Request to Seal Documents. The Declaration of Lieutenant Alex Turcotte, and Exhibit A attached thereto, in support of Opposition to Plaintiff James Cupp's Motion for Preliminary Injunction, filed on 4/19/2018, CM/ECF No. 45-1 is placed under SEAL. Counsel |

| | | |
|---|---|---|
| | | shall re-file the Declaration and Exhibit A attached thereto, with appropriate redactions. (Zignago, K.) (Entered: 05/07/2018) |
| 05/07/2018 | 53 | SEALED EVENT (Attachments: # 1 Sealed Event, # 2 Sealed Event) (Zignago, K.) (Entered: 05/07/2018) |
| 05/07/2018 | 54 | SEALED EVENT (Attachments: # 1 Sealed Event, # 2 Sealed Event) (Zignago, K.) (Entered: 05/07/2018) |
| 05/07/2018 | 55 | DECLARATION of Alex Turcotte in opposition to 35 Motion for Preliminary Injunction. (O'Dea, Mark) (Entered: 05/07/2018) |
| 05/07/2018 | 56 | DECLARATION of Teresa Peterson in opposition to 39 Motion for Preliminary Injunction, 40 Motion for Preliminary Equitable and Injunctive Relief, 35 Motion for Preliminary Injunction. (O'Brien, Anthony) Modified on 5/7/2018 (Benson, A.). (Entered: 05/07/2018) |
| 08/09/2018 | 57 | NOTICE of CHANGE of ADDRESS by Wendy M. Motooka. (Motooka, Wendy) (Entered: 08/09/2018) |
| 09/21/2018 | 58 | ORDER signed by District Judge Troy L. Nunley on 9/20/18 GRANTING in part and DENYING in part 15 Motion to Dismiss and GRANTING 15 Motion to Sever. Defendants County of Sacramento and Scott Jones DISMISSED. Plaintiff is afforded thirty (30) days from the date of this Order to file a severed and amended complaint for the Sixth and Seventh Causes of Action against Defendant Brucker. (Kaminski, H) (Entered: 09/21/2018) |
| 09/21/2018 | 59 | ORDER signed by District Judge Troy L. Nunley on 9/20/18 GRANTING 17 Motion to Dismiss. Defendants County of Placer, Edward N. Bonner, Hintze and Mason DISMISSED. (Kaminski, H) (Entered: 09/21/2018) |
| 09/21/2018 | 60 | ORDER signed by District Judge Troy L. Nunley on 9/20/18 GRANTING in part and DENYING in part 16 Motion to Dismiss. Defendant Christopher W. Boyd and City of Citrus Heights DISMISSED. (Kaminski, H) (Entered: 09/21/2018) |
| 09/21/2018 | 61 | ORDER signed by District Judge Troy L. Nunley on 9/20/18 GRANTING 18 Motion to Dismiss. Plaintiff is afforded thirty (30) days from the date of this Order to file an amended complaint in accordance with this Order. (Kaminski, H) (Entered: 09/21/2018) |
| 10/03/2018 | 62 | STIPULATION and PROPOSED ORDER re: Response to Second Amended Complaint by Christian Baerresen, Thomas Lamb. Attorney Lavra, John A. added. (Lavra, John) (Entered: 10/03/2018) |
| 10/09/2018 | 63 | ORDER signed by District Judge Troy L. Nunley on 10/09/18 |

| | | |
|---|---|---|
| | | DENYING 35 , 39 , 40 Plaintiffs' Motions for Preliminary Injunctions and DENYING 47 Motion to Strike as moot. (Benson, A.) (Entered: 10/09/2018) |
| 10/11/2018 | 64 | ORDER signed by District Judge Troy L. Nunley on 10/10/2018 IT IS SO ORDERED Based upon the Stipulation of the plaintiff and the Citrus Heights individual Defendants, said Defendants are not required to respond to the current Second Amended Complaint, but shall respond to the Third Amended Complaint within 14 days of service of the complaint. (Reader, L) (Entered: 10/11/2018) |
| 10/22/2018 | 65 | THIRD AMENDED COMPLAINT against All Defendants by James Edward Cupp, Lawrence Haven.(Gorski, Gary) (Entered: 10/22/2018) |
| 10/25/2018 | 66 | SUMMONS ISSUED as to *Xavier Becerra* with answer to complaint due within *21* days. Attorney *Gary William Gorski* *Law Offices of Gary W. Gorski* *3017 Douglas Blvd. Suite 150* *Roseville, CA 95661*. (Washington, S) (Entered: 10/25/2018) |
| 11/03/2018 | 67 | STIPULATION and PROPOSED ORDER to Modify 64 Order, by Thomas Lamb. (Lavra, John) Modified on 11/5/2018 (Kaminski, H). (Entered: 11/03/2018) |
| 11/05/2018 | 68 | ANSWER with Jury Demand by Thomas Lamb.(Lavra, John) (Entered: 11/05/2018) |
| 11/05/2018 | 69 | STIPULATION *to Extend Time to Respond to Plaintiffs' Third Amended Complaint* by Xavier Becerra, Kamala Harris. Attorney O'Brien, Anthony Paul added. (Attachments: # 1 Declaration, # 2 Proposed Order)(O'Brien, Anthony) (Entered: 11/05/2018) |
| 11/07/2018 | 70 | STIPULATION and ORDER signed by District Judge Troy L. Nunley on 11/6/18 RESCINDING in part the order of 10/11/18 64 to require only Defendant Lamb, and not Defendant Baerresen to respond to the Third Amended Complaint no later than 11/5/2018 and that the previous order is RESCINDED as to Defendant Baerresen. (Mena-Sanchez, L) (Entered: 11/07/2018) |
| 11/07/2018 | 71 | ORDER signed by District Judge Troy L. Nunley on 11/6/18 GRANTING Defendants' Request to file their responses to Plaintiffs' Third Amended Complaint by 11/20/2018. (Mena-Sanchez, L) (Entered: 11/07/2018) |
| 11/20/2018 | 72 | MOTION to DISMISS by Xavier Becerra, Kamala Harris. Motion Hearing set for 12/20/2018 at 02:00 PM before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities)(O'Brien, Anthony) (Entered: 11/20/2018) |

| 11/20/2018 | 73 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 11/20/2018: The Court is in receipt of Defendants Harris and Becerra's Motion to Dismiss (ECF No. 72 . The Motion as filed is deficient and Counsel for Defendants is directed to re-notice the Motion in compliance with Local Rule 230(a). Accordingly, the 12/20/2018 hearing date is VACATED. Counsel may refer to the Court's website for available law and motion dates. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 11/20/2018) |
|---|---|---|
| 11/20/2018 | 74 | MOTION to DISMISS by Xavier Becerra, Kamala Harris. Motion Hearing set for 1/24/2019 at 02:00 PM before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities)(O'Brien, Anthony) (Entered: 11/20/2018) |
| 11/26/2018 | 75 | [DISREGARD FILED IN INCORRECT CASE, SHOULD BE IN 2:18-CV-02587-TLN-KJN] ANSWER with Jury Demand by Jesse Brucker. (Motooka, Wendy) Modified on 11/27/2018 (Washington, S). (Entered: 11/26/2018) |
| 01/10/2019 | 76 | OPPOSITION by James Edward Cupp, Lawrence Haven to 74 Motion to Dismiss. (Gorski, Gary) (Entered: 01/10/2019) |
| 01/17/2019 | 77 | REPLY by Xavier Becerra, Kamala Harris re 74 Motion to Dismiss. (O'Brien, Anthony) (Entered: 01/17/2019) |
| 01/17/2019 | 78 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 1/17/2019: On the Court's own motion, Defendants' Motion to Dismiss (ECF No. 74 ) is hereby SUBMITTED without oral argument. Accordingly, the hearing set for 1/24/2019 is VACATED. If the Court determines oral argument is necessary, it will be scheduled at a later date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 01/17/2019) |
| 09/24/2020 | 79 | ORDER signed by District Judge Troy L. Nunley on 9/23/2020 GRANTING 74 Motion to Dismiss. Plaintiffs' Third Amended Complaint 65 as it is asserted against Defendants Harris and Becerra is DISMISSED with leave to amend only as to Claims Two and Nine. Plaintiffs may file an amended complaint not later than 21 days after the date of electronic filing of this Order. (Kastilahn, A) (Entered: 09/24/2020) |
| 10/15/2020 | 80 | FOURTH AMENDED COMPLAINT against Xavier Becerra, Kamala Harris by James Edward Cupp, Lawrence Haven. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Gorski, Gary) (Entered: 10/15/2020) |

| 10/23/2020 | 81 | STIPULATION and PROPOSED ORDER for Filing A Fifth Amended Complaint by Thomas Lamb. (McDermott, Amanda) (Entered: 10/23/2020) |
|---|---|---|
| 10/26/2020 | 82 | STIPULATION and ORDER signed by District Judge Troy L. Nunley on 10/23/2020 GRANTING plaintiffs until 11/23/2020 to file a 5th Amended Complaint that complies with 79 Order. Defendant's response is due 14 days after the 5th Amended Complaint is filed. (Coll, A) (Entered: 10/26/2020) |
| 11/20/2020 | 83 | FIFTH AMENDED COMPLAINT against All Defendants by James Edward Cupp, Lawrence Haven. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Gorski, Gary) (Entered: 11/20/2020) |
| 12/04/2020 | 84 | MOTION to DISMISS by Xavier Becerra, Kamala Harris. Motion Hearing set for 1/21/2021 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Memorandum of Points and Authorities)(O'Brien, Anthony) Modified on 12/7/2020 (Coll, A). (Entered: 12/04/2020) |
| 12/04/2020 | 85 | MOTION to DISMISS by Thomas Lamb. Motion Hearing set for 1/21/2021 at 02:00 PM in Courtroom 2 (TLN) before District Judge Troy L. Nunley. (Attachments: # 1 Points and Authorities, # 2 Request for Judicial Notice)(McDermott, Amanda) Modified on 12/7/2020 (Coll, A). (Entered: 12/04/2020) |
| 01/05/2021 | 86 | OPPOSITION by James Edward Cupp, Lawrence Haven to 84 Motion to Dismiss,. (Gorski, Gary) (Entered: 01/05/2021) |
| 01/05/2021 | 87 | OPPOSITION by James Edward Cupp to 85 Motion to Dismiss,. (Gorski, Gary) (Entered: 01/05/2021) |
| 01/14/2021 | 88 | REPLY BRIEF in support of 84 Motion to Dismiss by Xavier Becerra, Kamala Harris. (O'Brien, Anthony) Modified on 1/15/2021 (Huang, H). (Entered: 01/14/2021) |
| 01/14/2021 | 89 | REPLY by Thomas Lamb re 87 Opposition to Motion. (McDermott, Amanda) (Entered: 01/14/2021) |
| 01/14/2021 | 90 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 1/14/2021: On the Court's own motion, Defendants' Motions to Dismiss the Fifth Amended Complaint (ECF Nos. 84 and 85 ) are hereby SUBMITTED without oral argument. Accordingly, the hearing set for 1/21/2021 is VACATED. If the Court determines oral argument is necessary, it will be scheduled at a later date. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 01/14/2021) |

| 09/28/2021 | 91 | ORDER signed by District Judge Troy L. Nunley on 09/27/21 GRANTING Attorney General's and Officer Lamb's 84 85 Motions to Dismiss without leave to amend. Plaintiffs' 83 Fifth Amended Complaint as it is asserted against Defendants Rob Bonta, Kamala Harris, Xavier Becerra, and Thomas Lamb is DISMISSED without leave to amend. (Benson, A.) (Entered: 09/28/2021) |
|---|---|---|
| 09/29/2021 | 92 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 9/29/2021: The only currently remaining Defendant in this case is Citrus Heights Police Officer Christian Baerresen, who is named in Plaintiffs' third claim in their Fifth Amended Complaint alleging a violation of the Second Amendment. (ECF No. 83 at 1416.) Christian Baerresen is directed to file a responsive pleading within twenty-one (21) days of this Minute Order. (TEXT ONLY ENTRY) (Krueger, M) (Entered: 09/29/2021) |
| 10/01/2021 | 93 | NOTICE of VOLUNTARY DISMISSAL by James Edward Cupp. (Gorski, Gary) (Entered: 10/01/2021) |
| 10/01/2021 | 94 | MINUTE ORDER issued by Courtroom Deputy M. Krueger for District Judge Troy L. Nunley on 10/1/2021: Pursuant to the Notice of Voluntary Dismissal (ECF No. 93 ) and FRCP 41(a)(1)(A)(i), Defendant Christian Baerresen is hereby DISMISSED and this CASE is CLOSED. (Text Only Entry) (Krueger, M) (Entered: 10/01/2021) |
| 10/01/2021 | 95 | JUDGMENT dated *09/28/2021* pursuant to order signed by District Judge Troy L. Nunley on 10/1/2021 in favor of Defendants against Plaintiffs. (Krueger, M) (Entered: 10/01/2021) |
| 10/26/2021 | 96 | NOTICE of APPEAL by James Edward Cupp, Lawrence Haven. (Filing fee $ 505, receipt number ACAEDC-9894940) (Gorski, Gary) (Entered: 10/26/2021) |
| 10/27/2021 | 97 | APPEAL PROCESSED to Ninth Circuit re 96 Notice of Appeal filed by James Edward Cupp, Lawrence Haven. Notice of Appeal filed *10/26/2021*, Complaint filed *3/11/2016* and Appealed Order / Judgment filed *9/28/2021*. ** *Fee Status: Paid on 10/26/2021 in the amount of $505.00* (Attachments: # 1 Appeal Information) (Kaminski, H) (Entered: 10/27/2021) |
| 10/28/2021 | 98 | USCA CASE NUMBER 21-16809 for 96 Notice of Appeal filed by James Edward Cupp, Lawrence Haven. (Coll, A) (Entered: 10/28/2021) |

**PACER Service Center**

| **Transaction Receipt** | | | |
|---|---|---|---|
| 01/23/2022 17:53:17 | | | |
| **PACER Login:** | CivilRightsAttorney | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-cv-00523-TLN-KJN |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |