**Gary W. Gorski CBN: 166526**
**Attorney at Law**
3017 Douglas Blvd., Suite 150
Roseville, CA 95661
Cell: (775) 720-1000
Fax: (916) 520-3930
CivilRightsAttorney@BlackWolfLaw.com

**Daniel M. Karalash (SBN 176422)**
**STRATEGIC LAW COMMAND**
3017 Douglas Blvd. Suite 150
Roseville, CA 95661
(916) 787-1234
dan@stratlaw.org
www.stratlaw.com

Attorneys for Plaintiffs JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS, formerly Attorney General of the State of California, in her official capacity only; XAVIER BECERRA Attorney General of the State of California, in his official capacity; et al.<br><br>Defendants. | CASE NO.: 2:16-CV-00523-TLN-KJN<br><br>**FIRST AMENDED** SUPPLEMENTAL BRIEFING |

Plaintiffs' counsel, Gary W. Gorski, inadvertently submitted a 15 page Supplemental Brief, in violation of this Court's minute order limiting the briefing to 10 pages. Counsel deleted 5 pages from the original submittal to comply with the 10 page limit. <u>No words were added</u>.

1

## INTRODUCTION

This case comes before this Court from an appeal of this Court's final orders granting Defendant's motion to dismiss for failure to state a claim and lack of standing, and a denial of a preliminary injunction. (ER_4, Order of September 28; 2021, ER_47, Order of September 24, 2020; ER_83, Order of October 9, 2018, denying request for preliminary injunction; ER_85, Order of September 21, 2018.)[1]

Plaintiffs' firearms were illegally seized, depriving them of their Second Amendment rights. (ECF No. 65, 103.) Local authorities refused to return the seized firearms due to a requirement that Plaintiffs must first complete the Law Enforcement Gun Release ("LEGR") application required under C.P.C. § 33850. (Id., 106, 108.) The Attorney General enforces C.P.C §§ "33850 (application for return of firearm), 33855 (authority of law enforcement to enforce), 33860, and 33880 (fee)" in violation of the Second Amendment. (Id., 108, 111.)

Additionally, if an individual is seeking the return of a long gun purchased prior to January 1, 2014, a Firearms Ownership Report application (BOF 4542A), is required to be submitted along with the appropriate fees. (ER_23, 5$^{th}$AC, ¶ 56; ER_23, ¶ 61; ER_75, 3$^{rd}$AC, ¶ 107; ER_180, ¶ 106; ER_202, 2$^{nd}$AC ¶ 127.)

There are three operative pleadings, a Second, Third, and Fifth Amended Complaint. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), the United States Supreme Court laid out a new test to be applied in Second Amendment challenges. To determine if a law violates the Second Amendment, a court should: (1) determine whether the Second Amendment's "plain text" covers the individual's challenged conduct; and (2) if the plain

---

[1] "ER" is the Excerpts of Record filed in the Ninth Circuit, which is attached to the Request for Judicial Notice filed concurrently with this supplemental brief for ease of reference for the Court.

2

text of the Second Amendment covers the individual's conduct, the regulation is valid only if the government shows the regulation is "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 213 L. Ed. 2d 387 (2022). In addition to *Bruen*, there are four other Second Amendment decisions cited in *Bruen* further delineating the scope of that right of the Second Amendment and the test to be applied. See *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010) and *Caetano v. Massachusetts*, 577 U.S. 411 (2016)(per curiam). Ninth Circuit Second Amendment jurisprudence has been nullified *Bruen,* especially *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018) which has been cited in this court's previous orders.

*Bruen, Heller*, *McDonald*, and *Caetano* command that the Second Amendment protects an individual right to bear arms outside the home with modern firearms commercially available to the general public within the United States. As made clear in the pleadings in this case, a system of granting rights and privileges to one class of citizens, and denying another class the same rights and privileges, is fraught with obvious abuse. (See exhibits attached to Second Amended Complaint, ER_113 ".. an emerging problem that …. law enforcement officers are purchasing and then selling firearms in possible violation of Federal law [but not California law]."; ER_116_120 "*Here's all of the guns the ATF took from Pasadena Police lieutenant's Sierra Madre home*"; ER_122-124 "*California law that lets cops buy 'off-roster' guns expanded to include more in law enforcement*"; ER_126; ER_232-266 *Search Warrant* for California law enforcement officers purchasing guns on the ban list, and reselling them on the open market allowed per state law.)

In dismissing Plaintiffs' case, this Court relied upon the two-step inquiry for determining whether a regulation violates the Second Amendment as set forth in *Pena v. Lindley*, 898 F.3d 969, 975 (9th Cir. 2018). *Pena* has now been overruled. See *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

## ARGUMENT

Plaintiffs seek injunctive relief to enjoin Defendant and the State of California from enforcing laws, rules and regulations which: Limit plaintiffs' ability to purchase, possess, keep, bear, and travel with off-roster handguns, which are legal under federal law. Limit plaintiffs' ability to purchase, possess, transport and purchase standard size handgun and rifle magazines which most exceed 10 rounds, as these are basic parts to modern operational and safe firearms. Limit plaintiffs' ability to travel interstate with magazines which contain more than 10 rounds of ammunition. Limit plaintiffs' ability to carry either a concealed weapon or openly carried weapon, including a slungshot and handgun. (ER_185, 2ndAC ¶s 67, 116, 269, 273-274.)

The key averment pertaining to the Equal Protection claim can be found at ER_185, 2ndAC ¶ 66, which states:

> When it comes to self-defense, providing retired peace officers with superior rights to that of ordinary law-abiding citizens does not further either an important or compelling state interest, and more importantly, since law enforcement can only use reasonable force in self-defense, then the hand-guns they use are presumptively the type of firearm protected by the Second Amendment.

### I. SLUNGSHOT BAN

### § 22210. SAPS AND SIMILAR WEAPONS; PUNISHMENT

> …[A]ny person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any … slungshot, is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170.

Haven was subjected to <u>felony arrest</u> and prosecution for possession of a horse-leash called a slungshot (ER_139; Penal Code § 22210), which is an arm clearly protected by the Second Amendment. (ER_44-46; ER_132, ¶ 15-16; ER_137-147.) See *Caetano v. Massachusetts*, 577 U.S. 411 (2016). His slungshot was destroyed pursuant to Penal Code § 22290. (ER_132, ¶ 8.)

4

A leather leash with a quick detach metal mechanism is an arm which is protected by the Second Amendment. The state has taken the position that a leather lease constitutes a slungshot for enforcement purposes. This statute is unconstitutional as-written, and how it is being applied---a leather decorative leash, which is a curio and relic of the past, being called a slungshot.

Moreover, these types of laws are a relic of discriminatory past used against the poor and freedmen after the adoption of the Fourteenth Amendment, no different than the interracial bans and segregation of the time. See Flack, *The Adoption of the Fourteenth Amendment* 7 (Johns Hopkins 1908).

As Professor Flack points out, for example, Senator Saulsbury of Delaware, opposed the Fourteenth Amendment, the Freedmen's Bureau, and the Civil Rights Bills since they "deprive the state of their police power, and would nullify the laws of his State <u>which forbade negroes to keep arms or ammunition.</u>" Flack at 22, 25, 38 (emphasis added).

In *English v. State*, 35 Tex. 473 (1871), for example, a Texas statute "regulating, and in certain cases prohibiting, the carrying of deadly weapons," including "<u>pistols</u>, dirks, daggers, <u>slungshots</u>, swordcanes, spears, brassknuckles and bowie knives," *id.* at 474, was challenged under the Second Amendment. The Texas Supreme Court's decision focused on all arms that were concealable. It had nothing to do with the type of arm. The court construed "arms" in the Second Amendment and the Texas constitution as referring only to weapons "used for purposes of war." *Id*. At 475.

II. **MAGAZINE BAN**

§ 16740. "LARGE-CAPACITY MAGAZINE"

As used in this part, "large-capacity magazine" means any ammunition feeding device with the capacity to accept more than 10 rounds …

§ 32310. LARGE-CAPACITY MAGAZINES; PROHIBITION; REMOVAL AND SURRENDER REQUIREMENTS; PUNISHMENT

\*\*\*

>(c) … any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, or is guilty of a misdemeanor punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.
>
>(d) Any person who may not lawfully possess a large-capacity magazine commencing July 1, 2017 shall, prior to July 1, 2017: (1) Remove the large-capacity magazine from the state; (2) Sell the large-capacity magazine to a licensed firearms dealer; or (3) Surrender the large-capacity magazine to a law enforcement agency for destruction.

There is no question that the standard-capacity ammunition magazines that California has banned are "presumptively protect[ed]" by the Second Amendment. They plainly satisfy the test that *Bruen* reaffirmed governs which "arms" are protected-namely, "they are indisputably in 'common use' for self-defense today." *Id*. at 2143 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)). It is beyond dispute that such magazines are arms. *See Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). It is equally beyond dispute that they are commonly owned by law-abiding citizens for lawful purposes; indeed, they constitute half of all magazines in the United States. The state thus bears the burden to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2130.

The state has had years to survey the comprehensive historical record regarding its gun laws, especially magazine bans; the state cannot produce a historical analog for such a ban. There is no history or tradition in our nation of magazine-capacity limits. Restrictions on firing capacity were nonexistent until well into the twentieth century, and even then, they were rare and "short lived." *Id*. at 2155; see *Duncan v. Becerra*, 970 F.3d 1133, 1150 & n.10 (9th Cir. 2020).

### III.  HANDGUN BAN

> *§ 31910. "UNSAFE HANDGUN"*
>
> As used in this part, "unsafe handgun" means any pistol, revolver, or other firearm capable of being concealed upon the person, for which any of the following is true:

6

   (a) For a revolver:

   (1) It does not have a <u>safety device</u> that, either automatically in the case of a double-action firing mechanism, or by manual operation in the case of a single-action firing mechanism, causes the hammer to retract to a point where the firing pin does not rest upon the primer of the cartridge.

   (2) It does not meet the firing requirement for handguns.

   (3) It does not meet the drop safety requirement for handguns.

   (b) For a pistol: (1) It does not have a <u>positive manually operated safety device</u>… (2) It does not meet the firing requirement for handguns. (3) It does not meet the drop safety requirement for handguns. (4) …it does not have a <u>chamber load indicator</u>. (5) … it does not have a <u>magazine disconnect</u> mechanism if it has a detachable magazine. (6)(A) Commencing July 1, 2022, for all semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it is not designed and equipped with a <u>microscopic array of characters used to identify the make, model, and serial number of the pistol, etched or otherwise imprinted in one or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired</u>… (7) The Department of Justice shall, for each semiautomatic pistol newly added to the roster pursuant to Section 32015, <u>remove from the roster exactly three semiautomatic pistols lacking one or more of the applicable features</u> described in paragraphs (4), (5), and (6) of subdivision (b) and added to the roster before July 1, 2022. …

   **§ 32000. PUNISHMENT FOR MANUFACTURE, IMPORT, SALE, GIFT, OR LOAN OF UNSAFE HANDGUN; EXCEPTIONS [EFFECTIVE JANUARY 1, 2022][2]**

   (b) This section shall not apply to any of the following:

   *** (4) …. This section does not prohibit the sale to, or purchase by, sworn members of these agencies of a handgun.

Plaintiffs assert two claims under 42 U.S.C. § 1983—one for deprivation of their Second Amendment rights, as secured by the Fourteenth Amendment, and one for violation of the Fourteenth Amendment right to equal protection of the laws. This Court based its original decision regarding the handgun ban on *Pena v. Lindley*, 898 F.3d 969 (9th Cir. 2018). This case was in fact filed to challenge that decision. Under *Bruen*, *Pena* is no longer valid and this court is now unrestrained to strike down one of the most draconian handgun bans in America; the likes of which have never been seen in any other state or under federal law.

---

[2] This section has more than one version with varying effective dates.

7

California's *de facto* handgun ban works like this: the Unsafe Handgun Act ("UHA") defines an "unsafe handgun" in California Penal Code § 31910 and requires handguns to have various features in order to be deemed not unsafe. Currently, semiautomatic pistols are required to have a chamber load indicator ("CLI"), magazine detachment mechanism ("MDM"), and microstamping technology. See Cal. Penal Code § 31910(b)(4)-(6).

The Unsafe Handgun Act (UHA), Cal. Penal Code § 32000(a) et seq., adds mechanical complexities to handguns which actually make handguns less safe and less reliable. *Pena* did not address the issue of the removal of handguns from the roster, and the enactment of AB 2847 postdates *Pena*.[3]

The UHA's roster scheme prevents individuals from exercising their Second Amendment rights to purchase handguns that are in common use and prevents licensed retailers from selling such handguns to law-abiding adults.

Since the conduct is covered by the Second Amendment's plain text, the government must justify its regulations as consistent with this Nation's tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2126. *Heller* has already established the relevant contours of the tradition: Bearable arms that are presumptively protected by the Second Amendment cannot be banned unless they are both dangerous and unusual. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).

And the Second Amendment's "reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.' " *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582). "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all

---

[3] Plaintiff respectfully requests leave to supplement and amend the pleadings according to proof and change in the law.

instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* (citations omitted).

"Semiautomatic weapons," such as those proscribed under the Handgun Ban, "traditionally have been widely accepted as lawful possessions." *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022) (quoting *Staples v. United States*, 511 U.S. 600, 612 (1994)). Handguns are indisputably in common use for self-defense today. They are, in fact, the "quintessential self-defense weapon." *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 629).

"Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Id.* (citing *Caetano v. Massachusetts*, 577 U.S. 411, 411-412 (2016) (per curiam), concerning stun guns).

There is <u>no analogous history supportive of the State's ban</u>. Under the Supreme Court's precedents, the constitutionally relevant history, and the proper analysis, Plaintiffs must prevail.

**IV.   REFUSAL TO RETURN ARMS WHEN PLAINTIFFS COMMITTED NO CRIME AND WERE NEVER CONVICTED OF A CRIME.**

*§ 33850. APPLICATION FOR RETURN; MISDEMEANOR*

> (a) Any person who claims title to any <u>firearm</u>, <u>ammunition feeding device</u>, or <u>ammunition</u> that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm, ammunition feeding device, or ammunition returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm, ammunition feeding device, or ammunition. The <u>application shall be submitted electronically</u> via the California Firearms Application Reporting System (CFARS) …

Previously, this court judged § 33850 through the lens of a commercial transaction; equating § 33850 with the laws regulating the purchasing of firearms. However, this was not a purchase of a firearm. This was a governmental seizure of protected arms under *Bruen*, and there has never been any other property or right subjected to such regulation. The state can produce no

historical analog as to why Plaintiffs are required to make an application and pay a fee for the return of their arms when they committed no crime.

## V.     OPEN AND CONCEAL CARRY OF LOADED FIREARM

### § 25850. CARRYING LOADED FIREARM IN PUBLIC; PUNISHMENT; PREVIOUS CONVICTION; PROSECUTION UNDER OTHER SECTION; ARREST WITHOUT WARRANT

(a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

### § 25400. CARRYING CONCEALED FIREARM; CARRYING FIREARM OPENLY IN BELT HOLSTER; PUNISHMENT

(a) A person is guilty of carrying a concealed firearm when the person does any of the following: (1) Carries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person. (2) Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person. (3) Causes to be carried concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

*** 

### § 25450. PEACE OFFICERS EXEMPTED FROM CRIME

As provided in this article, Section 25400 does not apply to, or affect, any of the following: (a) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired. (b) Any other duly appointed peace officer. (c) <u>Any honorably retired peace officer listed in subdivision (c) of Section 830.5.</u> (d) <u>Any other honorably retired peace officer who during the course and scope of his or her appointment as a peace officer was authorized to, and did, carry a firearm.</u>

***.

In light of *Bruen,* the Court can issue a summary ruling and injunction as to California law which clearly conflicts with the ability of Plaintiffs to open carry or conceal carry a loaded firearm. California can present no historical analog for the complete banning of arms public.

## CONCLUSION

Under *Bruen*, California shenanigans in the name of public safety are foreclosed. The request for injunctive and declaratory relief should be granted.

Date: October 18, 2022

Respectfully Submitted,
<u>Gary W. Gorski</u>
Gary W. Gorski, Attorney for Plaintiffs