UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, et al., | No. 2:16-cv-00523-TLN-KJN |
| Plaintiffs, | |
| v. | **ORDER** |
| KAMALA HARRIS, et al., | |
| Defendants, | |

This matter is before the Court on remand from the Ninth Circuit regarding Defendants Kamala Harris, Xavier Becerra, and Rob Bonta's (collectively, the "Attorney General"[1]) motion to dismiss Plaintiffs' Fifth Amended Complaint ("FAC"). (ECF Nos. 101, 84.) Plaintiff James Edward Cupp ("Cupp") and Lawrence Haven ("Haven") (collectively, "Plaintiffs") filed an opposition. (ECF No. 86.) The Attorney General filed a reply. (ECF No. 88.)

---

[1] The Attorney General is sued in their official capacity as Attorney General of the State of California. Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor is automatically substituted as a party" when a public officer "ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). The Clerk of the Court is directed to update the docket as necessary. Additionally, for ease of reading and consistency with the Court's prior orders, all three Defendants will be collectively referred to in the singular as the "Attorney General" herein.

In light of the Ninth Circuit's remand, the Court ordered supplemental briefing. (ECF No. 104.) On September 30, 2022, the Attorney General and Plaintiffs filed their supplemental briefs.[2] (ECF Nos. 105, 106, 108.) For the reasons set forth below, the Court GRANTS the Attorney General's motion to dismiss.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this lawsuit on March 11, 2016. (ECF No. 1.) Since then, Plaintiffs have amended five times. (*See* ECF Nos. 5, 12, 65, 80, 83.) The Court has dismissed portions of Plaintiffs' action five times. (*See* ECF Nos. 58, 59, 60, 61, 79.) Plaintiffs filed the operative FAC on November 20, 2020. (ECF No. 83.) In response, the Attorney General filed a motion to dismiss on December 4, 2020. (ECF No. 84.) On September 28, 2021, the Court granted the Attorney General's motion to dismiss without leave to amend. (ECF No. 91.)

Plaintiff filed a notice of appeal on October 26, 2021. (ECF No. 96.) The notice of appeal was "limited to Defendants Kamala Harris and Xavier Becerra, in their capacities as former Attorneys General of the State of California, and Rob Bonta, in his official capacity as Attorney General of the State of California." (*Id.*) On August 19, 2022, the Ninth Circuit granted the parties Joint Motion to vacate and remand and remanded the case to this Court for further proceedings consistent with the United States Supreme Court's decision in *New York Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2228 (2022). (ECF No. 99.) The Ninth Circuit mandate issued on September 12, 2022. (ECF No. 101.) The Court ordered the parties to file supplemental briefing (ECF No. 102), and the parties filed their supplemental briefs on September 30, 2022 (ECF Nos. 105, 106).

Plaintiffs' FAC contains two remaining claims. (ECF No. 83.) First, Plaintiffs allege the Attorney General's enforcement of a statutory scheme that requires Plaintiffs to complete

---

[2]   Plaintiffs' supplemental brief filed on September 30, 2022, exceeded the page limit specified by the Court. (ECF No. 106.) Plaintiffs subsequently filed an amended supplemental brief on October 18, 2022, which complied with the page limit. (ECF No. 108.) Plaintiffs attest the amended brief contains no added words than the timely filed supplemental brief, only deletions. (*Id.*) Defendant filed no objection to the amended brief. The Court accepts Plaintiffs' amended brief and deems it timely filed.

1   California's Law Enforcement Gun Release ("LEGR") application and pay a fee of $20 for the
2   first weapon and $3 for each thereafter, violates their Second Amendment right to bear arms. (*Id.*
3   at ¶ 62.) Second, Haven alleges the Attorney General violated his Second Amendment rights
4   when a Placer County Sheriff's Deputy arrested him for illegally possessing a "slungshot"[3]
5   pursuant to Cal. Pen. Code § 22210. (*Id.* at ¶¶ 88, 94.)

6   **II.    STANDARD OF LAW**

7   A motion to dismiss for failure to state a claim upon which relief can be granted under
8   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.
9   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain
10  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.
11  Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in
12  federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the
13  grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal
14  citation and quotations omitted). "This simplified notice pleading standard relies on liberal
15  discovery rules and summary judgment motions to define disputed facts and issues and to dispose
16  of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

17  On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
18  *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every
19  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail*
20  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege
21  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to
22  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

23  Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of
24  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

---

25  [3]    According to Plaintiffs' FAC, a slungshot is "a maritime tool consisting of a weight, or
26  'shot,' affixed to the end of a long cord." (ECF No. 83 ¶ 86.) Under California law, a slungshot
    is "a small mass of metal or stone fixed on a flexible handle, strap or the like, used as a weapon."
27  *People v. Fannin*, 91 Cal. App. 4th 1399, 1402 (2001) (citing *People v. Williams*, 100 Cal. App.
    149, 151 (1929)). Plaintiff, however, alleges this item was "an ornamental and common 'horse
28  lead'" *not* a slungshot. (ECF No. 83 ¶ 89.)

3

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "[a] district court should grant leave to

1 amend even if no request to amend the pleading was made, unless it determines that the pleading
2 could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130
3 (9th Cir. 2000) (en banc); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009)
4 (finding no abuse of discretion in denying leave to amend when amendment would be futile).
5 Although a district court should freely give leave to amend when justice so requires under Rule
6 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has
7 previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713
8 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th
9 Cir. 2004)).

### III. ANALYSIS

Plaintiffs' FAC contains two remaining claims: (1) a Second Amendment constitutional challenge to California's LEGR regime and accompanying fees established by California Penal Code §§ 33850, 33855, 33860, 33865, 33880; and (2) a Second Amendment constitutional challenge to California Penal Code § 22210's bar on the manufacture, sale, and possession of a slungshot. (ECF No. 83 ¶¶ 25–109.) The Attorney General moves to dismiss both claims for failure to state a claim under Rule 12(b)(6). (ECF Nos. 84, 105.)

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *Bruen*, the Supreme Court announced a new test governing Second Amendment challenges to government statutes and regulations. *Bruen* created a two-part test where a court must: (1) determine whether the Second Amendment's "plain text" covers the individual's challenged conduct; and (2) if the plain text of the Second Amendment covers the individual's conduct, the regulation is valid only if the government shows the regulation is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

*Bruen* step one is a threshold inquiry. It requires a textual analysis, determining whether the challenger is "part of 'the people' whom the Second Amendment protects," whether the weapon at issue is "'in common use' today for self-defense," and whether the "proposed course

1 of conduct" falls within the Second Amendment. *Bruen*, 142 S. Ct. at 2134–35 (citing *Heller*, 554 U.S. at 580); *see also United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023).

Once step one is met, step two requires the "government [] [to] justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. To carry its burden, the government must produce representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation. *Id*. at 2127, 2131–33.

With this legal framework established, the Court turns to Plaintiffs' two claims.

A.   Claim One: Constitutionality of the LEGR Process

i.   *Bruen Step One*

Step one of the *Bruen* analysis requires the Court to determine whether Plaintiffs are "part of 'the people' whom the Second Amendment protects," whether the weapon at issue is "'in common use' today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment. *Bruen*, 142 S. Ct. at 2134–35. The Attorney General does not dispute Plaintiffs are members of "the People" or that Plaintiffs seek to keep "Arms." (ECF No. 105 at 7.) The only remaining question, then, is whether Plaintiffs' proposed course of conduct falls within the Second Amendment.

The Attorney General argues "[t]he answer is no," Plaintiffs' conduct does not fall within the Second Amendment. This is because, as the Attorney General contends, the Supreme Court in *Bruen* recognized that background checks, like those at issue in the instant case, do not impede an individual's right to keep or bear arms. (*Id.*) In other words, the Attorney General asserts, the LEGR law does not "prevent anyone from acquiring firearms for self-defense, keeping them for those purposes, and bearing the firearms for confrontation" because it only requires an application and modest fee for the completion of a background check. (*Id.*) Plaintiffs raise no argument regarding the first prong of the *Bruen* analysis, arguing only the second. (ECF No. 108 at 13–14.)

While the Attorney General is correct that the Supreme Court in *Bruen* did recognize background checks and similar restrictions in "shall issue" regimes do not per se run afoul of the Second Amendment, the Court noted this at step two of the analysis, not step one. Step one is

focused on the individual right to bear arms and whether the law at issue touches that right. Though *Bruen* is not a model of clarity on this point, it appears step one is a threshold question screening out cases that do not involve persons, arms, or Second Amendment questions. To satisfy step one, then, a plaintiff need only establish they are a person, the weapon at issue is an arm, and the proposed course of conduct falls within the Second Amendment. Here, the proposed course of conduct — Plaintiffs' desire to re-possess their guns without paying a fee or filling out a form for a background check — does fall within the scope of the Second Amendment because the course of conduct deals with Plaintiffs' right to "bear" these previously possessed arms.

The Attorney General's argument to the contrary does not square with the text of *Bruen*. The Attorney General asserts the LEGR process "does not prevent an individual from 'keeping' or 'bearing' arms." (*Id.*) This is incorrect. The LEGR regime including the form, fee, and subsequent background check are restrictions on Plaintiffs' right to bear the arms at issue. As outlined in the FAC, but for the LEGR regime, Plaintiffs would bear these arms. (ECF No. 83 at 5–11.) Plaintiffs have thus properly pleaded that the LEGR regime falls within the Second Amendment as it amounts to a restriction on the "bearing" of "arms." It does not necessarily follow, however, that the LEGR regime is unlawful, it simply means the LEGR regime must be analyzed under the second step of the *Bruen* framework, not the first.

       *ii.*   Bruen Step Two

Under the second step of the *Bruen* framework, the government bears the burden to show the prohibition at issue is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. This inquiry will be straightforward in some cases while in others it "will often involve reasoning by analogy." *Id.* at 2131. The Attorney General asserts additional expert discovery is necessary before this Court can reach step two of the *Bruen* analysis. (ECF No. 105 at 8–9.) The Court disagrees.

Plaintiffs argue the state can "produce no historical analog as to why Plaintiffs are required to make an application and pay a fee for the return of their arms when they committed no crime." (ECF No. 108 at 13.) Plaintiffs claim, "there is no historical analog as to why Plaintiffs' property was not returned just as a wallet or knife is returned as personal property." (*Id.* at 14.)

1   Plaintiffs' arguments, however, have a fatal flaw — they fail to account for the narrowest holding
2   of *Bruen*, which speaks to shall-issue style regulations.
3         In applying step two to the New York regulation, the Supreme Court explicitly noted
4   "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States
5   'shall-issue' licensing regimes." *Bruen*, 142 S. Ct. at n. 9. This is because, as the Court
6   explained "shall-issue regimes, which often require applicants to undergo a background check or
7   pass a firearms safety course, are designed to ensure only that those bearing arms in the
8   jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* (internal quotations omitted). This
9   is further outlined by the narrowing concurrence.[4] The concurrence is clear that shall-issue
10  regimes, which may require "fingerprinting, a background check, a mental health records check,
11  and training in firearms handling and in laws regarding the use of force, among other possible
12  requirements" "are constitutionally permissible, subject of course to an as-applied challenge if a
13  shall-issue licensing regime does not operate in that manner in practice." *Id.* at 2162.
14  Accordingly, shall-issue style regulatory regimes that are designed to ensure only law-abiding,
15  responsible citizens bear arms, are lawful.[5] *Id.* This is subject only to an as-applied challenge
16  that the shall-issue regime fails to operate properly in practice. *See id.* ("shall-issue regimes do
17  not grant open-ended discretion to licensing officials and do not require a showing of some
18  special need apart from self-defense. . . shall-issue licensing regimes are constitutionally
19  permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not
20  operate in that manner in practice.")

---

[4] *Bruen* is a six Justice opinion narrowed by a two Justice concurrence authored by Justice Kavanaugh, with whom the Chief Justice joined. *Bruen*, 142 S. Ct. at 2161; *see Marks v. United States*, 430 U.S. 188, 193 (1977) ("the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").

[5] It is unclear from both the majority opinion and the Justice Kavanaugh concurrence whether shall-issue regimes are constitutional because they are "consistent with the Nation's historical tradition of firearm regulation" and thus pass step two of the *Bruen* framework, or whether they simply are, as a matter of law, permissible and thus act as an exemption from the *Bruen* framework generally. Further guidance from Courts of Appeals and the Supreme Court would be helpful to clarify this point. Absent clear direction to the contrary, the Court reviews this issue at step two of the *Bruen* framework.

Guided by this holding, the Court finds Plaintiffs fail to state a claim challenging the LEGR framework, which requires a background check, filling out a form, and paying a nominal fee. The FAC outlines the LEGR process, including the eligibility application requirement (Cal. Penal Code § 33850), the firearm return process requirements (Cal. Penal Code § 33855), and the fee requirements (Cal. Penal Code §§ 33860, 33880.) (ECF No. 83 at 6–7.) The FAC also alleges facts related to Cupp's arrest, seizure of alleged arms, as well as his criminal case and its subsequent dismissal. (*Id.* at 7–8.) The FAC further alleges facts related to Haven's arrest, dismissal of his criminal case, and the seizure of his alleged arms. (*Id.* at 8–12.) Plaintiffs allege "[b]y failing to immediately return Plaintiffs' firearms once it was determined that no crime had been committed, [the Attorney General] has deprived Plaintiffs of their ability to exercise their Second Amendment right. . .." (*Id.* at 10.)

These facts are insufficient to state a claim for relief. The LEGR process mandates that once a firearm or ammunition is in the custody or control of a law enforcement agency or court, the owner of that firearm must proceed through a process to ensure they can lawfully possess that firearm or ammunition before the firearm can be returned. This is made clear from the text of the LEGR regulations which are outlined in the FAC. The LEGR process, therefore, is an analogue to the shall-issue regimes discussed in *Bruen* and for that reason are lawful. To challenge these regulations, the complaint must contain factual allegations that this shall-issue style regime fails to operate properly in practice. *Bruen*, 142 S. Ct. at 2162. Plaintiffs fail to do this. There are no allegations in the FAC that the LEGR process is different in practice than any other shall-issue style regime, no allegations that the LEGR process provides for discretionary decision making by the Attorney General, no allegations that it functions more as a may-issue regulation, and no allegations that it is or was applied to Plaintiffs in an improper way. For these reasons, the FAC fails to state a claim as to a Second Amendment violation.

Accordingly, the Attorney General's motion to dismiss Claim One is GRANTED with leave to amend.

///

///

B.   Claim Two: Constitutionality of the Prohibition on Slungshots

At step one of the *Bruen* analysis, the Court must determine whether Plaintiffs are "part of 'the people' whom the Second Amendment protects," whether the weapon at issue is "'in common use' today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment. *Bruen*, 142 S. Ct. at 2134–35. The Court finds Plaintiffs have failed to state a Second Amendment claim for two reasons: (1) the FAC alleges Haven possessed an ornamental horse lead, and the proposed course of conduct of possessing an ornamental horse lead does not fall within the Second Amendment; and (2) even if the FAC did allege Haven possessed a slungshot, there are insufficient facts to show a slungshot is an "arm" or weapon in common use today for self-defense, and thus the proposed course of conduct — possessing a slungshot — does not fall within the Second Amendment. The Court addresses each reason in turn.

The FAC alleges Haven "had an ornamental horse lead hanging from his handlebars, which the statute describes as a 'slungshot. . ..'" (ECF No. 83 at 12.) The FAC further alleges Haven was stopped by law enforcement "for what they falsely alleged [was] an 'illegal weapon' hanging from the handlebars of his motorcycle, affectionately known as his 'iron horse.'" (*Id.*) The FAC goes on to again describe this item as "an ornamental and common 'horse lead' (thick nylon rope with a metal quick release — identical to a dog leash but thicker)." (*Id.*) The FAC states the "leash was determined by [law enforcement] to be an illegal 'slungshot' and placed H[aven] under felony arrest. . .." (*Id.* at 13.) The FAC also states "[i]n order for the charges to be dropped, H[aven] had to have his *so called* 'slungshot' destroyed by the government." (*Id.* at 14 (emphasis added).)

The FAC does not allege Haven ever possessed a slungshot. Rather, the FAC goes to great lengths to allege Haven did *not* possess a slungshot, asserting the item was an "ornamental and common horse lead" that was only identified by law enforcement as a slungshot. The FAC provides no allegations that Haven currently owns a slungshot or ever owned a slungshot. Despite the dearth of allegations regarding his ownership of a slungshot, Haven seeks to nullify the law prohibiting them. This is improper. There are no factual allegations that the Second

1  Amendment protects the ownership of an ornamental horse lead, and thus, Plaintiffs' claim that
2  he has a Second Amendment right to possess this ornamental horse lead is misplaced. Moreover,
3  the statute at issue here, California Penal Code § 22210, does not prohibit the ownership of an
4  ornamental horse lead. Accordingly, Plaintiffs' proposed course of conduct does not fall within
5  the Second Amendment and thus this claim fails at step one.

6  Even if Plaintiffs did allege Haven possessed a slungshot, this claim would still fail. The
7  Attorney General argues Plaintiffs' challenge to the State's slungshot prohibition fails at step one
8  of the *Bruen* framework. (ECF No. 105 at 8.) The Attorney General asserts this prohibition on
9  "dangerous and unusual weapons," which includes slungshots, falls outside the scope of the
10 Second Amendment. Plaintiffs disagree and argue "[a] leather leash with a quick detach metal
11 mechanism is an arm which is protected by the Second Amendment." (ECF No. 108 at 7.)

12 Turning to whether a slungshot is a weapon in common use today, *Bruen* reaffirmed "the
13 Second Amendment protects only the carrying of weapons that are those in common use at the
14 time, as opposed to those that are highly unusual in society at large." *Bruen*, 142 S. Ct. at 2143
15 (internal quotations omitted). The adequacy of this claim turns on whether Plaintiffs have
16 pleaded facts sufficient to establish that a slungshot is a commonly used weapon and not a
17 dangerous and usual weapon. Plaintiffs have failed to do this. As the Attorney General notes,
18 California has long banned possession of slungshots for use as a weapon, as have other states.
19 *Fannin*, 91 Cal. App. 4th at 1402–03; *see Peruta v. Cnty. of San Diego*, 824 F.3d 919, 937–38
20 (9th Cir. 2016) (en banc) (citing *English v. State*, 35 Tex. 473 (1871); *State v. Workman*, 35
21 W.Va. 367 (1891)). Plaintiffs' assertions to the contrary are unpersuasive and unsupported by
22 factual allegations in the FAC. The FAC alleges, and Plaintiffs argue in their supplemental filing,
23 the slungshot has a long tradition and history of use as an arm protected by the Second
24 Amendment. (*See* ECF No. 83 at 12–13; ECF No. 108 at 7–8.) The FAC, however provides no
25 factual allegations regarding the common use of the slungshot today, or any factual assertions that
26 would support such an allegation. Because Plaintiffs fail to plead *facts* tending to show the
27 slungshot is a weapon in common use today for self-defense, the Court finds Plaintiffs fail to state
28 a claim. *See* Rule 12(b)(6).

1    While the Court has serious doubts as to Plaintiffs' ability to plead a viable claim here, the
2 Court will give Plaintiffs a final opportunity to amend.  The Court cautions, however, that any
3 amendment Plaintiffs file must cure the above outlined deficiencies "without contradicting any of
4 the allegations of [the] [FAC]."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).
5 In other words, any subsequently amended complaint must not allege facts inconsistent with the
6 challenged pleading here.  *Id*. at 296–97.
7    Accordingly, the Attorney General's motion to dismiss Claim Two is GRANTED with
8 leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Attorney General's motion to dismiss with leave to amend.  (ECF No. 84.)  Plaintiffs may file a sixth amended complaint not later than thirty (30) days from the electronic filing date of this Order.  The Attorney General shall file a responsive pleading not later than twenty-one (21) days from the electronic filing date of Plaintiff's amended complaint.  If Plaintiff opts not to file an amended complaint, the Court will dismiss this action and close the case.

IT IS SO ORDERED.

Date:  August 23, 2023

_____
Troy L. Nunley
United States District Judge

12