1  **Gary W. Gorski (CBN: 166526)**
   **Attorney at Law**
2  25025 Blue Ravine Road, # 112-113
3  Folsom, CA  95630
   (406) 266-1000
4  CivilRightsAttorney@BlackWolfLaw.com
   Attorney for Plaintiff JAMES EDWARD CUPP;

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; et al.<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>KAMALA D. HARRIS Attorney General of the State of California, in her official capacity only.<br><br>　　　　　Defendants. | CASE NO.: 2:16-CV-00523-TLN-KJN<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S <u>OPPOSITION</u> TO MOTION FOR SUMMARY JUDGMENT AND <u>COUNTER-MOTION</u> FOR SUMMARY JUDGMENT [Filed pursuant to Fed. R. Civ. P. 56, Fed. R. Civ. P. 78, and E.D. Cal. L.R. 230(c), (e)]**<br><br>Date: October 30, 2025<br>Time: 2:00 p.m.<br>Courtroom: Courtroom 2, 15th Floor<br>Judge: The Honorable Troy L. Nunley<br>Trial Date: None set.<br>Action Filed: March 11, 2016 |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

　　The proverbial pink elephant in the room—conspicuously ignored by the State Defendants—is the complete lack of historical tradition justifying their ongoing retention of Plaintiff's lawfully purchased firearms. If not enjoined, Plaintiff is unable to exercise his Second Amendment right and Defendants will keep Plaintiff's seized arms in perpetuity, this ignoring the

1

Supreme Court's holdings in *United States v. Miller*, 307 U. S. 174 (1939); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 411 (2016); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), the Second Amendment demands that any restriction on the possession of arms be rooted in a well-established historical tradition of regulation. Defendants offer no such justification. Instead, they continue to hold Plaintiff's rifles as "contraband" even after criminal charges were dismissed and no forfeiture or civil petition was filed against him. This is not supported by any historical precedent.

## II.     ARGUMENT

"A facial challenge is a claim that the legislature has violated the constitution, while an as-applied challenge is a claim directed at the execution of the law as to plaintiff." *Young v. Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) (en banc), overruled in part by Bruen. Plaintiff brings an as-applied challenge—and in the alternative a narrow facial challenge—to California's Law Enforcement Release ("LER/LEGR") scheme (Penal Code §§ 33850–33880) insofar as it conditions the return of lawfully owned firearms upon a new application, payment of fees, and a 30-day expiring "clearance letter," even after dismissal and no conviction. (Cupp Decl. ¶¶ 5–13, 19–21, 23–27.)

The Supreme Court has rejected "interest-balancing" and restored a text-and-history test. The Second Amendment "is the very product of an interest balancing by the people" and "elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense; courts must defer to that constitutional balance, not reweigh it. *Heller*, 554 U.S. 570, 635 (2008); *Bruen*. The State therefore bears the burden to identify a well-established, representative historical analogue for its modern burden. It cannot.

The undisputed record is straightforward: Cupp's case was dismissed with prejudice; his knives were handed back in court (not a property room at a police department property room) immediately with no application and no fee; his firearms were withheld unless he paid fees, completed a "new" eligibility review, and beat a 30-day expiration clock—despite DOJ's admission that he was not convicted and is not a prohibited person. (Cupp Decl. ¶¶ 7–13, 19–21, 23–27.) That is a prior restraint on keeping arms in the home, not a commercial regulation or a safety hold tied to an individualized finding of dangerousness.

Just as importantly, Defendants present no evidence—none—that a fee and a second background screening were necessary here. California law enforcement already has instantaneous access to state and federal indices at arrest and booking; DOJ further concedes it knows of no disqualifying record for Cupp. (Cupp Decl. ¶¶ 10–13.) The State identifies no concrete safety datum that LER's fee-paid, expiring letter unearthed that was not immediately knowable at arrest or at dismissal. The record is silent where the State's proof must be loud.

Plaintiff is entitled to judgment declaring LER unconstitutional as applied and enjoining its use to block the return of his lawfully owned firearms after dismissal.

Plaintiff is entitled to judgment declaring LER unconstitutional **as applied** to him and enjoining its use to block the return of his lawfully owned firearms following dismissal.

The only analogous framework on point is federal law under 18 U.S.C. § 924(d)(1) which mandates the prompt return of seized firearms unless possession is prohibited. Plaintiff is not a prohibited person, and his arms were legally acquired and never used unlawfully. Their continued retention by the State is not only unsupported by history and federal law—it directly violates the Second Amendment. Defendants' silence on *Bruen* and *Rahimi* only underscores that their actions cannot survive constitutional scrutiny. The government cannot lawfully condition the exercise of one constitutional right (Second Amendment) on the surrender of another (property rights by

3

paying money ). See *Perry v. Sindermann*, 408 U.S. 593 (1972).

The government bears the burden to justify modern firearm restrictions by pointing to well-established, representative historical analogues that are relevantly similar in how and why they burden the right. Defendant has not met that burden.

First, California's LER regime imposes a post-seizure prior restraint on keeping arms the owner already lawfully possesses—conditioning return on a fresh application, a fee, and delays even after dismissal/no charges. That burdens conduct within the Second Amendment's plain text ("keep"), and there is no founding-era tradition of imposing fees/forms/delays as a condition of returning lawfully owned arms after the criminal process does not result in a conviction. Bruen specifically warns that "lengthy wait times" and "exorbitant fees" are constitutionally suspect, even in "objective" licensing regimes; LER is precisely that problem, and worse because it blocks home keeping, not public carry.

There is no genuine dispute of material fact on the dispositive points, and Plaintiff is entitled to judgment as a matter of law on: (i) the as-applied challenge to LER; and (ii) the as-applied to home possession challenge to § 22210.

### III.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In Second Amendment cases post-*Bruen* and *Rahimi*, the analysis is text-then-history: once Plaintiff shows the proposed course of conduct is covered by the Amendment's text, the burden shifts to the government to demonstrate a consistent historical tradition justifying the modern burden. See *Heller; Bruen; Rahimi*.

### IV.    UNDISPUTED BACKGROUND

LER/LEGR mechanics. Penal Code §§ 33850–33880 require an electronic CFARS

application with personal identifiers and fees, DOJ re-vetting, issuance of a 30-day "clearance letter" that expires, and—after all that—separate agency checks for ownership and stolen status before release. No return occurs outside LER. (Cupp Decl. ¶¶ 14–16, 19–21.)

Cupp's dismissal and non-return. Charges were dismissed with prejudice; knives were returned immediately in court; firearms were withheld unless and until Cupp paid fees and cleared the LER "new eligibility" gate, despite DOJ's concession of no conviction and no prohibiting record. (Cupp Decl. ¶¶ 7–13, 23–27.)

## V.     ARGUMENT

On this undisputed record, the State cannot explain why knives were handed back in the courtroom while firearms—owned by a non-prohibited, non-convicted citizen—have been held for years behind a paid, expiring LER gate that duplicates database checks (BFEC/NICS/AFS) already within government reach. (Cupp Decl. ¶¶ 5–9, 10–21, 22–27; Exs. B–C, F.) Federal law reflects the opposite baseline: after dismissal or acquittal, firearms must be returned forthwith absent a legal disability. 18 U.S.C. § 924(d)(1). The State identifies none.

**A. Federal law embodies the governing principle: return seized firearms forthwith absent a legal bar—mirroring our tradition and underscoring the State's lack of justification.**

Congress has long required that when charges are dismissed or an owner is acquitted, "the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor" unless return would itself violate law; any forfeiture proceeding must be initiated within 120 days. (18 U.S.C. § 924(d)(1).) While § 924(d)(1) governs federal seizures, it codifies the constitutional baseline reflected throughout our tradition: government may not warehouse a law-abiding person's arms after the criminal process ends without a conviction and without a prohibitor. There is no contrary tradition the State can cite.

**B. Bruen Step 1 (plain text): LER burdens Cupp's core right to keep his own arms at home.**

5

Cupp seeks to keep his lawfully owned firearms in his home. That conduct is squarely within the Second Amendment's plain text. (Heller, 554 U.S. at 581–82, 628–29; Caetano v. Massachusetts, 577 U.S. 411 (2016).) LER interposes a fee-paid, time-limited permission slip before Cupp may resume possession of what is already his. That is a direct burden on "keep."

### C. Bruen Step 2 (history and tradition): The State offers no analogue for fees, re-vetting, and an expiring letter as a condition of return after dismissal and no conviction.

The State must show a "well-established and representative" analogue that is relevantly similar in **how** and **why** it burdens the right. *Bruen*. It has none. The familiar 19th-century enactments concern public-carry licensing or punishment of misuse—not the **return** of already-owned arms after the criminal process ends without a conviction. Surety laws and targeted disarmament turned on adjudicated dangerousness and were tightly cabined in time and purpose. LER is nothing like that.

*Bruen* also warns that even "objective" systems become unconstitutional when they impose "lengthy wait times" or "exorbitant fees." LER is worse: it is a **post-seizure** prior restraint on home keeping, with built-in fees, a 30-day expiration, and serial reapplications (with new fees) if the window lapses—applied to an owner the State admits is not prohibited. (Cupp Decl. ¶¶ 10–13, 19–21, 23–27.) That is precisely the sort of abusive end Bruen condemns.

### D. The State's showing fails for a more basic reason: it has no evidence that fees or a second background screen were necessary here.

Immediate database access at arrest makes LER's "new" vetting redundant. California concedes that LER re-runs criminal-history and prohibitor indices and, for out-of-state residents, adds clerical steps. (Cupp Decl. ¶¶ 14–16, 18–21.) But the State identifies no result from those repeat checks that was not instantly knowable at arrest and booking—when officers routinely query state and federal databases. DOJ's own admission is dispositive: as of the relevant date, DOJ knew of no record prohibiting Cupp, and he suffered no conviction from the 2014 arrest.

6

(Cupp Decl. ¶¶ 10–13.)

<u>No evidence of public-safety necessity.</u> The State points to no concrete safety rationale advanced by a fee or a 30-day expiry. It offers no affidavit, no data, and no incident showing LER prevented return to a prohibited person in circumstances like Cupp's (dismissal; no prohibitor). Silence on necessity is fatal where the State bears the burden.

<u>The knives/arms disparity shows LER is about firearms, not necessity.</u> The same incident saw Cupp's knives returned instantly in court with no application, no fee, and no background check; only the firearms were singled out for a pay-to-apply, expiring-letter gate. (Cupp Decl. ¶¶ 7, 22–26.) That disparity underscores that LER's burdens are not tied to individualized dangerousness or genuine necessity; they are category-based restrictions on firearms.

**E.  LER also violates foundational property-return principles and imposes an unconstitutional condition.**

Federal courts have long exercised equitable authority to order return of lawfully owned property absent contraband status, forfeiture, or a legal prohibition. *Henderson v. United States*, 575 U.S. 622, 624–26 (2015); *United States v. Martinson*, 809 F.2d 1364, 1366–67 (9th Cir. 1987). Indefinite retention via administrative hurdles after dismissal is alien to that tradition. And conditioning the exercise of a constitutional right on surrendering another—here, paying money and ceding property rights to regain one's Second Amendment rights—is impermissible. P*erry v. Sindermann*, 408 U.S. 593, 597 (1972).

**F.  Narrow, as-applied relief is warranted.**

This is a tight record: dismissal; DOJ admissions of **no** conviction and **no** prohibitor; knives returned instantly; firearms withheld unless Cupp pays fees, re-vets, and races a 30-day clock—repeatedly if the window lapses. (Cupp Decl. ¶¶ 7–13, 19–21, 23–27.) On these facts, California cannot constitutionally interpose LER as a prior restraint on Cupp's home keeping of arms.

7

## VI. REMEDIES

1. **Declaratory relief (as-applied).** Declare that California's LER/LEGR scheme is unconstitutional **as applied** to Plaintiff insofar as it requires a new application, payment of fees, or a 30-day expiring clearance as a condition of returning his lawfully owned firearms following dismissal/no conviction. (Cupp Decl. ¶¶ 7–13, 19–21, 23–27.)

2. **Injunctive relief.** Enjoin Defendant, in his official capacity, from enforcing LER/LEGR against Plaintiff, and the public in general, on those terms and direct return of Plaintiff's firearms without LER fees/forms/delays, subject only to ordinary identity and stolen-property checks consistent with the dismissal. (Cupp Decl. ¶¶ 7–9, 23–27.)

3. **Fees.** Award attorney fees and costs under 42 U.S.C. § 1988, in post-judgment motion.

## VII. CONCLUSION

The State has no history to support LER's fee-paid, expiring-letter prior restraint on Cupp's right to **keep** his own firearms at home. It also has no **evidence** that a second background screen and payment of fees were necessary here, where law enforcement already had immediate database access and DOJ concedes no prohibition and no conviction. Federal law points the other way: return **forthwith** absent a legal bar. The Court should grant Plaintiff's Counter-Motion for Summary Judgment and issue the requested declaratory and injunctive relief.

Dated: August 25, 2025

                                              **LAW OFFICES OF GARY W. GORSKI**

                                              By: /s/*Gary W. Gorski*
                                              Gary W. Gorski
                                              Attorney for Plaintiff

**DECLARATION OF SERVICE BY E-MAIL**

Case Name: *Cupp, James Edward v. Kamala D. Harris, et al.*
Case No.: 2:16-cv-00523-TLN-KJN

I, Gary W. Gorski, declare:

I am a citizen of the United States. My office is in the County of Sacramento, where this e-mailing occurs. I am over the age of 18 years and not a party to the within cause. On the date set forth below, I served the attached document on the following person(s):

ROB BONTA, State Bar No. 202668
Attorney General of California
BENJAMIN M. GLICKMAN, State Bar No. 247907
Supervising Deputy Attorney General
KATRINA UYEHARA, State Bar No. 349378
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7867
Fax: (916) 324-8835
E-mail: Katrina.Uyehara@doj.ca.gov

Attorneys for Rob Bonta, in his official capacity as Attorney General of the State of California

I caused said document to be transmitted by Electronic Mail to the following Attorneys who have agreed to accept Electronic Service of documents to the following email addresses:

Valerie Thompson <Valerie.Thompson@doj.ca.gov>; Katrina Uyehara <Katrina.Uyehara@doj.ca.gov>

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on Monday, August 25, 2025, County of Sacramento, California.

*/s/ Gary W. Gorski*
Gary W. Gorski